🚩 KeyCite Yellow Flag

Distinguished by  Dobronski v. CHW Group, Inc.,   E.D.Mich.,   August 21, 2025

2023 WL 6393480
Only the Westlaw citation is currently available.
United States District Court, S.D. New York.

Eitan BARR, Plaintiff,
v.
MACYS.COM, LLC, Defendant.

1:22-cv-07867 (ALC)
|
Signed September 29, 2023

**Attorneys and Law Firms**

Avi Kaufman, Kaufman P.A., Coral Gables, FL, Stefan Louis Coleman, Coleman, PLLC, New York, NY, for Plaintiff.

Althea Daley, Brian Alexander Turetsky, Ballard Spahr LLP, New York, NY, for Defendant.

## OPINION & ORDER

ANDREW L. CARTER, JR., District Judge:

**\*1**  Plaintiff Eitan Barr brings this class action against Defendant retailer Macy.com LLC for alleged violations of the Telephone Consumer Protection Act, 🚩 47 U.S.C. § 227 ("TCPA") and its implementing regulation 🚩 47 C.F.R. 64.1200(d), as well as the Florida Telephone Solicitation Act ("FTSA"), 🚩 Fla. Stat. § 501.059.

Plaintiff initiated this action on September 15, 2022. ECF No. 1, Compl. Plaintiff alleges he received unauthorized telemarketing text messages from Defendant. *Id.* at ¶ 26. He seeks injunctive relief requiring the Defendant to cease from violating the TCPA and the FTSA, as well as an award of statutory damages to the members of the TCPA and the FTSA Classes ("Proposed Classes") and costs. *Id.* at ¶ 17. On December 21, 2022, Defendant filed a motion to dismiss the Complaint with prejudice for failure to state a claim pursuant to Federal Rules of Civil Procedure 12(b)(6). ECF No. 20. In the alternative, Defendant seeks to transfer the action to the District Court for the Middle District of Florida. On January 11, 2023 Plaintiff filed a response in opposition to the Defendant's motion. ECF No. 22. On January 18, 2023 Defendant filed a reply. ECF No. 23.

After careful consideration, Defendant Macys.com, LLC's motion to dismiss the TCPA claim for failure to state a claim is hereby **GRANTED**. Since the Court lacks original jurisdiction over the FTSA claim and declines to exercise supplemental jurisdiction over that claim, the FTSA claim is dismissed for lack of jurisdiction. Because the Court has dismissed all claims, it does not need to reach Defendant's motion to transfer.

## BACKGROUND

Plaintiff is an active cell phone user and in July 2022, he began receiving solicitation text messages from Defendant Macys.com, LLC.[1] Compl. at ¶ 19. Plaintiff is a resident of Brandon, Florida. *Id.* at ¶ 1. Defendant Macys is an Ohio limited liability

company headquartered in New York. *Id.* at ¶ 2. On July 16, 2022 and in accordance with Defendant's instructions for opting out, Defendant replied "STOP" to Defendant's text to stop Defendant from sending text messages to Plaintiff's cell phone. *Id.* at ¶¶ 20, 25. Plaintiff received an acknowledgment of his request to stop the solicitation: "Macy's: Sorry to see you go! You're unsubscribed and will no longer receive promotional texts from Macy's." *Id.* On July 19, 2022, three days and one business day from the request, Plaintiff received another solicitation text message from Defendant. *Id.* at ¶ 22. On this occasion Defendant sent Plaintiff a text to "Get Shopping" and included a shortened URL link to its website. *Id.* Plaintiff alleges that receiving a solicitation text from Defendant after he requested to unsubscribe harmed him "in the form of annoyance, nuisance, and invasion of privacy, occupation of his phone line and disturbance of the use and enjoyment of his phone, wear and tear on the phone's hardware[.]" *Id.* at ¶ 26. Under 47 C.F.R. § 64.1200(d)(1):

> No person or entity shall initiate any artificial or prerecorded-voice telephone call pursuant to an exemption under paragraphs (a)(3)(ii) through (v) of this section or any call for telemarketing purposes to a residential telephone subscriber *unless* such person or entity has instituted procedures for maintaining a list of persons who request not to receive such calls made by or on behalf of that person or entity.

**\*2** *Id.* (emphasis added). The statute lists the minimum standards for these Internal DNC procedures, including maintaining a written policy, training personnel, and recording DNC requests. 47 C.F.R. § 64.1200(d)(1)-(6). Plaintiff alleges that at the time Defendant contacted him, it did not maintain an internal Do Not Call ("DNC") registry, in violation of 47 C.F.R. § 64.1200(d)(1). Compl. at ¶ 36.

Pursuant to Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3), Plaintiff seeks to represent two classes: (1) the Internal DNC Class under 47 U.S.C. § 227, (2) and the Florida Stop Request Class under Fla. Stat. § 501.059. *Id.* at ¶ 28. Plaintiff seeks certification of the Classes, with certain exclusions: [2]

- **Internal DNC Class:** All persons in the United States who from four years prior to the filing of this action through trial (1) Defendant texted more than one time, (2) within any 12-month period, (3) for substantially the same reason that Defendant texted Plaintiff, (4) including at least once after the person requested that Defendant or its agent to stop calling.

- **Florida Stop Request Class:** All persons in Florida, who, on or after July 1, 2021, (1) Defendant (or an agent acting on behalf of the Defendant) called or texted (2) at least one time after they requested Defendant or its agent to stop calling or texting.

*Id.* Plaintiff alleges the Proposed Classes share multiple common questions, including receiving at least one unwanted text message from Defendant after requesting Defendant to stop, and whether the messages violated the TCPA and the FTSA. *Id.* at ¶ 31. For Defendant's alleged violation of the FTSA and TCPA, Plaintiff seeks damages and injunctive relief for the Proposed Classes. *Id.* at ¶¶ 17, 44.

## STANDARD OF REVIEW

### I. Federal Rule of Civil Procedure 12(b)(6)

When considering a motion to dismiss under Federal Rules of Civil Procedure 12(b)(6), a court should "draw all reasonable inferences in [the plaintiff's] favor, assume all well-pleaded factual allegations to be true, and determine whether they plausibly give rise to an entitlement to relief." *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (internal quotation marks omitted). Thus, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state

a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

The Court's function on a motion to dismiss is "not to weigh the evidence that might be presented at a trial but merely to determine whether the complaint itself is legally sufficient." *Goldman v. Belden*, 754 F.2d 1059, 1067 (2d Cir. 1985). The Court should not dismiss the complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Moreover, "the tenet that a court must accept a complaint's allegations as true is inapplicable to threadbare recitals of a cause of action's elements, supported by mere conclusory statements." *Id.* at 663.

**\*3** Deciding whether a complaint states a plausible claim is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 678–79 (2009) (quoting *Twombly*, 550 U.S. at 570).

## II. Federal Rule of Civil Procedure 12(b)(1)

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000).

In reviewing a motion to dismiss under Rule 12(b)(1), a court "must take all facts alleged in the complaint as true and draw all reasonable inferences in favor of plaintiff, but jurisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it." *Morrison v. Nat'l Australia Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008) (citation and internal quotation marks omitted). Rather, "[t]he plaintiff bears the burden of proving subject matter jurisdiction by a preponderance of the evidence." *Aurecchione v. Schoolman Transp. Sys., Inc.*, 426 F.3d 635, 638 (2d Cir. 2005). Courts "may consider affidavits and other materials beyond the pleadings to resolve the jurisdictional issue, but [the Court] may not rely on conclusory or hearsay statements contained in the affidavits." *J.S. ex rel. N.S. v. Attica Cent. Schs.*, 386 F.3d 107, 110 (2d Cir. 2004).

## III. Motion to Transfer

Section 1404(a) provides that, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). In deciding a motion to transfer venue, the Court must first consider whether this case could have been brought in the transferee district. If venue would have been proper in the transferee district, the Court next considers whether transfer is in the interests of convenience and justice. *Barry v. United States*, No. 21-CV-7684 (BCM), 2022 WL 4467504, at \*4 (S.D.N.Y. Sept. 26, 2022).

To make this determination, district courts consider several factors:

> (1) the locus of the operative facts; (2) convenience of the parties; (3) the convenience of the witnesses; (4) the location of relevant documents and relative ease of proof; (5) the relative means of the parties; (6) the availability of process to compel attendance of unwilling witnesses; (7) a forum's familiarity with

**Barr v. Macys.com, LLC, Not Reported in Fed. Supp. (2023)**

Case 1:26-cv-00659-KM    Document 7-3    Filed 05/19/26    Page 4 of 80

the governing law; (8) the weight accorded to plaintiff's choice of forum; and (9) trial efficiency and the interests of justice based on the totality of the circumstances.

*Id.*

## DISCUSSION

### I. Telephone Consumer Protection Act ("TCPA")

The TCPA, 47 U.S.C. § 227(a)(1), was enacted to protect consumers from unsolicited and unwanted telephone calls. "Voluminous consumer complaints about abuses of telephone technology—for example, computerized calls dispatched to private homes—prompted Congress to pass the TCPA." *Mims v. Arrow Fin. Serv., LLC*, 565 U.S 368, 370–71 (2012). The TCPA principally prohibits four practices in telemarketing which includes "using artificial or prerecorded voice messages to call residential telephone lines without prior express consent." *Id.* at 373. *See also* 47 U.S.C. § 227(b)(1)(B). The TCPA, in part, makes it:

> **\*4** unlawful ... to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system ... to any telephone number assigned to a ... cellular telephone service, ... unless such call is made solely to collect a debt owed to or guaranteed by the United States.

47 U.S.C. § 227(b)(1)(A)(iii). The TCPA defines an "automatic telephone dialing system" ("ATDS") as "equipment which has the capacity (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1). Unsolicited advertisement is defined under the act as "any material advertising the commercial availability or quality of any property goods, or services which is transmitted to any person without that person's prior express invitation or permission, in writing or otherwise." 47 U.S.C. § 227(a)(5). The TCPA grants citizens a private right of action against parties that violate Section 227(c) of the act. 47 U.S.C. § 227(c)(5). It "creates a private right of action, providing for statutory damages in the amount of $500 for each violation as well as injunctive relief against future violations." *Physicians Healthsource, Inc. v. Boehringer Ingelheim Pharm., Inc.*, 847 F.3d 92, 94–95 (2d Cir. 2017).

### a. Plaintiff's Complaint Fails to Allege Facts Sufficient to Hold Defendant in Violation of the TCPA.

A plaintiff bringing a TCPA claim must allege that: "(1) a call was placed to a cell or wireless phone; (2) by the use of any automatic dialing system [and/or leaving an artificial or prerecorded message] and (3) without prior consent of the recipient." *Echevvaria v. Diversified Consultants, Inc.*, No. 13 Civ. 4980 (LAK) (AJP), 2014 WL 929275, at \*4 (S.D.N.Y. Feb. 28, 2014) (citation omitted); 47 U.S.C. § 227(b)(1). In its motion to dismiss, Defendant challenges Plaintiff's TCPA claim on two bases: (1) failure to allege that Defendant lacks an internal DNC policy in violation of 47 C.F.R. § 64.1200(d)(1); and (2) the thirty-day rule under 47 C.F.R. § 64.1200(d)(3) bars Plaintiff's claim.

Case 1:26-cv-00659-KM    Document 7-3    Filed 05/19/26    Page 5 of 80

Barr v. Macys.com, LLC, Not Reported in Fed. Supp. (2023)

For a TCPA claim under ⚑ 47 C.F.R. § 64.1200(d) to survive a motion to dismiss, "a plaintiff must show that the entity placing the calls failed to institute the proper procedures *prior* to the initiation of the call." ⚑ *Simmons v. Charter Commc'ns, Inc.*, 222 F. Supp. 3d 121, 131 (D. Conn. 2016), *aff'd*, 686 F. App'x 48 (2d Cir. 2017) (emphasis added). *See also Benzion v. Vivint, Inc.*, No. 12-61826-CIV, 2014 WL 11531368, at *5 (S.D. Fla. Jan. 17, 2014) (same). Subsection (d) "simply requires the institution of certain procedures prior to the initiation of telemarketing calls.... If the procedures required by (d) are not in place prior to a call being made, the caller can be held liable." ⚑ *Gulden v. Quicken Loans Inc.*, No. CV-16-00960-PHX-ROS, 2016 WL 9525223, at *3 (D. Ariz. May 31, 2016) (citing ⚑ *Simmons*, 222 F. Supp. 3d at 131) (quotation marks omitted). "There is no statutory safe harbor for a violation of the requirement to have procedures in place prior to the initiation of a call." ⚑ *Simmons*, 222 F. Supp. 3d at 131.

Plaintiff may request a copy of defendant's Internal DNC to bolster his claim. *Perrong v. Brief Call Inc.*, No. 22-CV-04128 (PGG)(SN), 2023 WL 6005963, at *4 (S.D.N.Y. Aug. 7, 2023) (taking into account that plaintiff requested a copy of defendant's Internal DNC and relevant policies). A plaintiff did "not plausibly allege an internal do not call list violation" when he "did not request a copy of the Do Not Call Registry from Defendants." *Rahimian v. Adriano*, No. 2:20-cv-02189-GMN-VCF, 2022 WL 798371, at *3 (D. Nev. Mar. 16, 2022) (dismissing plaintiff's ⚑ § 64.1200(c) claim for failure to state a claim).

**\*5** Under ⚑ 47 C.F.R. § 64.1200(d)(3), defendants will be held liable for failure to comply with a DNC request to not be called within a reasonable time, despite having procedures in place:

> Persons or entities making such calls (or on whose behalf such calls are made) must honor a residential subscriber's do-not-call request within a reasonable time from the date such request is made. This period may not exceed 30 days from the date of such request. If such requests are recorded or maintained by a party other than the person or entity on whose behalf the call is made, the person or entity on whose behalf the call is made will be liable for any failures to honor the do-not-call request.

*Id.* Additionally, defendants "must maintain a record of a consumer's request not to receive further calls. A do-not-call request must be honored for 5 years from the time the request is made." ⚑ 47 C.F.R. § 64.1200(d)(4). The thirty-day provision under ⚑ section 64.1200(d)(3) has been interpreted to mean defendants have a thirty-day period to comply with the request. ⚑ *Simmons*, 222 F. Supp. 3d at 139; *see also Orsatti v. Quicken Loans, Inc.*, No. 2:15-CV-09380 (SVW) (AGR), 2016 WL 7650574, at *7 (C.D. Cal. Sept. 12, 2016) (same); *Wagner v. CLC Resorts & Devs., Inc.*, 32 F. Supp. 3d 1193, 1198 (M.D. Fla. 2014) (characterizing the provision as a "30–day grace period"); ⚑ *Ott v. Mortg. Invs. Corp. of Ohio*, 65 F. Supp. 3d 1046, 1065 (D. Or. 2014) (same). Other courts have declined to determine the reasonableness of contacting plaintiff during the thirty-day period. ⚑ *Buja v. Novation Cap., LLC*, No. 15-81002-CIV, 2017 WL 10398957, at *6 (S.D. Fla. Mar. 31, 2017); *see also Nece v. Quicken Loans, Inc.*, No. 8:16-CV-2605-T-23CPT, 2018 WL 1326885, at *7 (M.D. Fla. Mar. 15, 2018) ("a jury must decide whether Quicken honored Nece's do-not-call request in a reasonable time.").

The court will evaluate the quantity of unwanted messages plaintiff received after his request to not be contacted. In *Simmons*, the court declined to find a violation of the TCPA when defendant thrice contacted plaintiff in the 30 days following plaintiff's request to not be contacted. ⚑ 222 F. Supp. 3d at 140–41. The *Simmons* court found "[n]o authority holds that subsection (d)(3) punishes single violations of an entity's otherwise proper procedures." *Id.*

Case 1:26-cv-00659-KM    Document 7-3    Filed 05/19/26    Page 6 of 80

Barr v. Macys.com, LLC, Not Reported in Fed. Supp. (2023)

Here, Plaintiff sets forth a conclusory allegation that at the time Defendant contacted him, it violated 47 C.F.R. § 64.1200(d)(1) because it failed to "implement[ ] internal procedures for maintaining" and internal DNC registry and/or failed to "implement[ ] procedures that [met] the minimum requirements to allow the Defendant or its agent to initiate telemarketing calls." Compl. at ¶ 36. Plaintiff has failed to state a claim that Defendant violated subsection (d)(1). *Rahimian*, 2022 WL 798371, at *3; *see also Perrong*, 2023 WL 6005963, at *4. A plaintiff may bolster her subsection (d)(1) allegation by requesting an Internal DNC list from defendant. *Id.* There is no evidence Plaintiff made such a request. Other than his conclusory allegation that Defendant lacked an Internal DNC, Plaintiff has failed to adequately dispute the existence of Defendant's Internal DNC list and policies, or that Defendant's procedures were lacking in any way.

**\*6** Neither has Plaintiff significantly alleged a violation of subsection (d)(3) for failure to honor Plaintiff's request to not be contacted. Compl. at ¶¶ 16–17, 28. Plaintiff texted his request to not be contacted to Defendant on July 16, 2022. *Id.* at ¶ 20. He alleges Defendant contacted him on July 19, 2022, three days and one business day after his request. *Id.* at ¶ 22. But "[t]he mere fact that he received a call after his [ ] request is not a subsection (d)(3) violation." *Simmons*, 222 F. Supp. 3d at 140 (finding no violation where plaintiff was contacted thrice by defendant during the thirty-day period). Under 47 C.F.R. § 64.1200(d)(3), a defendant must comply with a DNC request within 30 days. As long as Defendant had a proper procedure in place to "implement its DNC policy, no reasonable jury could find for [Plaintiff] on his claim of a violation of subsection (d)(3)." *Simmons*, 222 F. Supp. 3d at 140. Here, the Court struggles to see how failure to comply with Plaintiff's DNC request within one business day could be unreasonable. *See Wolfkiel v. Intersections Ins. Servs. Inc.*, 303 F.R.D. 287, 292 (N.D. Ill. 2014) (dismissing plaintiff's subsection (d)(3) claim because "one day is a reasonable grace period"). Again, Plaintiff has also not put forward evidence that Defendant lacked a proper procedure at the time the contact was made. Therefore, Plaintiff's TCPA claims must be dismissed.

## II. Florida Telephone Solicitation Act ("FTSA")

The FTSA prohibits initiating "an outbound telephone call, text message, or voicemail transmission to a consumer ... who has previously communicated to the telephone solicitor or other person that he or she does not wish to receive" that form of communication "made by or on behalf of the seller whose goods or services are being offered." Fla. Stat. § 501.059 (5)(a).

An aggrieved party may bring suit to enjoin a violation of the FTSA and to recover damages of $500. § 501.059(10)(a). To recover damages under the statute, a plaintiff must notify the telephone solicitor that they do not wish to be contacted by texting "STOP" to the solicitor, and "[w]ithin 15 days after receipt of such notice, the telephone solicitor shall cease sending text message solicitations to the called party[.]" § 501.059(10)(a)(2)(c). Plaintiff may file a suit for damages under the FTSA "only if the called party does not consent to receive text messages from the telephone solicitor and the telephone solicitor continues to send text messages to the called party 15 days." *Id.* There is no 15-day period for plaintiffs seeking injunctive relief.

In his Complaint, Plaintiff alleges "[t]he Court has supplemental jurisdiction over the FTSA claims, as they arise out of the same telemarketing campaign as the TCPA claim." Compl. at ¶ 3. However, in this case, the Court has dismissed the federal TCPA claim. [3] "When a district court dismisses, pursuant to Rule 12(b)(6), all claims over which it properly has original subject–matter jurisdiction, the district court may still, under § 1367(c), exercise its discretion to retain supplemental jurisdiction over related state–law claims. *Cohen v. Postal Holdings, LLC*, 873 F.3d 394, 399 (2d Cir. 2017) (citing *Valencia ex rel. Franco v. Lee*, 316 F.3d 299, 305 (2d Cir. 2003)). Typically courts decline to exercise supplemental jurisdiction when the federal claims are dismissed. *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966) ("Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer–footed reading of applicable law. Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well.") (internal footnotes omitted).

"When all federal claims are eliminated before trial, the balance of factors to be considered—including judicial economy, convenience, fairness, and comity—typically points towards declining to exercise supplemental jurisdiction over any remaining state-law claims." *Lawtone-Bowles v. City of N.Y., Dep't of Sanitation*, 22 F. Supp. 3d 341, 352 (S.D.N.Y. 2014) (citing *Kolari v. N.Y.-Presbyterian Hosp.*, 455 F.3d 118, 122–24 (2d Cir. 2006)). *See also* ⚑*Catzin v. Thank You & Good Luck Corp.*, 899 F.3d 77, 85 (2d Cir. 2018) (courts must continue to "balance the traditional values of judicial economy, convenience, fairness, and comity."). The court in *Lawtone-Bowle*s found it was appropriate to decline to exercise supplemental jurisdiction over state-law claims at an "early stage in the litigation." 22 F. Supp. 3d at 352.

**\*7**  This case is in its early stages and no party has asked the court to exercise supplemental jurisdiction in the absence of the TCPA claim. Because this case is in its early stages, declining to exercise jurisdiction over the state law claim is not unfair to the parties. Dismissal of the state claim would not "require[e] the parties to expend additional years as well as dollars re-litigating in state court." ⚑*Catzin, 899 F.3d at 86*. A district court's "pressure to close cases must not overshadow the federal courts' paramount role of being a forum where disputes are efficiently and fairly resolved." *Id*. Fairness and comity weigh strongly against exercising supplemental jurisdiction.

As such, Plaintiff's state law claim is **DISMISSED**.

### III. Motion to Transfer

Because the Court has granted Defendant's motion to dismiss in full, it does not need to reach Defendant's motion to transfer.

### CONCLUSION

For the reasons set forth by the Court, Defendant Macys.com, LLC's motion to dismiss the TCPA claim for failure to state a claim is hereby **GRANTED**. Since the Court lacks original jurisdiction over the FTSA claim and declines to exercise supplemental jurisdiction over that claim, the FTSA claim is dismissed for lack of jurisdiction. Because the Court has dismissed all claims, it does not need to reach Defendant's motion to transfer. The Clerk of Court is directed to close this case.

**SO ORDERED.**

**All Citations**

Not Reported in Fed. Supp., 2023 WL 6393480

---

### Footnotes

1       Defendant used the short code 62297 for solicitation text messages to Plaintiff.

2       Compl. at ¶ 29.

3       Plaintiff's FTSA claim does not raise a federal question, nor does the claim meet the $75,000 amount in controversy threshold for diversity jurisdiction. Under the FTSA, a plaintiff may "recover actual damages or $500, whichever is greater." ⚑Fla. Stat. Ann. § 501.059. This is not sufficient to satisfy the diversity threshold.

**End of Document**

© 2026 Thomson Reuters. No claim to original U.S. Government Works.

Case 1:26-cv-00659-KM     Document 7-3     Filed 05/19/26     Page 8 of 80

**Barr v. Macys.com, LLC, Not Reported in Fed. Supp. (2023)**

KeyCite Yellow Flag

Declined to Extend by Andrade v. Marceno, M.D.Fla., March 29, 2021

2017 WL 10398957

Only the Westlaw citation is currently available.

United States District Court, S.D. Florida.

Kevin BUJA, individually and on behalf of others similarly situated, Plaintiff,

v.

NOVATION CAPITAL, LLC, a foreign limited liability company; Novation Ventures, LLC, a foreign limited liability company; Novation Funding, LLC each doing business as "Novation Settlement Solutions," an unregistered fictitious entity, Defendants.

CASE NO. 15-81002-CIV-MARRA

|

Signed 03/30/2017

|

Entered 03/31/2017

## Attorneys and Law Firms

Keith James Keogh, Pro Hac Vice, Keogh Law, Ltd., Chicago, IL, Patrick Christopher Crotty, Sean Martin Holas, Scott David Owens, The Law Office of Scott D. Owens, Hollywood, FL, for Plaintiff.

Blaine C. Kimrey, Pro Hac Vice, Bryan K. Clark, Pro Hac Vice, Vedder Price, PC, Chicago, IL, Dana Jane McElroy, Thomas & LoCicero PL, Fort Lauderdale, FL, for Defendants.

## ORDER

KENNETH A. MARRA, United States District Judge

**\*1** This Cause is before the Court upon Plaintiff's Renewed Motion for Leave to File a Second Amended Complaint ("Motion" and "Motion to Amend"). (DE 54) The proposed Second Amended Complaint is attached to the Motion as Exhibit A. (DE 54-1.) Defendants filed a Response in opposition to the Motion (DE 55), and Plaintiff filed a Reply (DE 58). In addition, with leave of Court, Defendants filed a Supplemental Reply (DE 63) and supporting deposition transcript (DE 63-1), and Plaintiff filed a Reply thereto (DE 66) and a supporting errata sheet (DE 66-1). On October 28, 2016, Defendants filed a Motion to Strike Errata Sheet (DE 67). Plaintiff filed a Response in opposition to the Motion to Strike Errata Sheet (DE 68), and Defendants filed a Reply (DE 69). The Court has carefully considered the argument of counsel and is otherwise fully advised in the premises.

In the proposed Second Amended Complaint, Plaintiff seeks to add a clam under 47 U.S.C. § 227(c), asserting a violation of the Telephone Consumer Protection Act ("TCPA") based upon Defendants' alleged failure to establish proper practices and procedures regarding do-not-call ("DNC") requests, contrary to 47 C.F.R. § 64.1200(d). For the reasons stated below, the Motion to Amend is granted insofar as Plaintiff seeks to add the DNC claim based upon a proper statutory and regulatory basis but is otherwise denied.

## I. BACKGROUND

Case 1:26-cv-00659-KM    Document 7-3    Filed 05/19/26    Page 10 of 80

Buja v. Novation Capital, LLC, Not Reported in Fed. Supp. (2017)

### A. The Parties

Plaintiff Kevin Buja, a resident of Collier County, Florida, agreed to a structured settlement at some point prior to the filing of his complaint to resolve an unrelated legal matter. (DE 54-1, Proposed Second Amended Complaint ("SAC") ¶¶ 3, 16.)

Defendants are in the business of purchasing structured settlements and annuities for a lump sum of cash. (*Id.* ¶ 8.) To obtain clients, Defendants use a variety of means to identify recipients of structured settlements and/or annuities and then place telephone calls to them. (*Id.* ¶ 17.)

### B. Defendants' Do-Not-Call Policy

Defendants maintain a list of the names of individuals who do not wish to be called, referred to as a "Do Not Call List" or "Internal DNC List" ("IDNC list"). (*Id.* ¶ 25.) Defendants' Do-Not-Call policy mandates that any person whom Defendants call that expresses a desire not to receive telephone calls from Defendants must be added to Defendants' IDNC list. (*Id.* ¶ 26.)

### C. May 2014 Call

On May 8, 2014, Defendants called Plaintiff or caused Plaintiff to be called on his cellular telephone ("May 2014 call"). (*Id.* ¶ 28.) During the May 2014 call, Plaintiff "made it clear he did not desire to receive calls from or on behalf of Defendants," and Plaintiff then terminated the call. (*Id.* ¶ 26.) Following the May 2014 call, Defendants failed to add Plaintiff's name to Defendants' IDNC list pursuant to Defendants' Do-Not-Call Policy. (*Id.* ¶ 32.) Between the May 2014 call and July 1, 2015, Defendants called Plaintiff, or caused Plaintiff to be called, at least thirteen more times. (*Id.* ¶ 31.)

### D. July 1, 2015 Call

During a telephone call from Defendants on or about July 1, 2015 ("July 1, 2015 call"), Plaintiff told Defendants to include his name on Defendants' IDNC list. (*Id.* ¶ 35.) Following the July 1, 2015 call to Plaintiff, Defendants failed to add Plaintiff's name to Defendants' IDNC list or at the very least failed to refer to the IDNC list when making subsequent calls. (*Id.* ¶ 36.) Following the July 1, 2015 call to Plaintiff, Defendants called Plaintiff, or caused Plaintiff to be called, at least two more times. (*Id.* ¶ 38.)

### E. The Proposed DNC Claim in the SAC

**\*2** In the proposed SAC, Plaintiff seeks to add a clam under ⚑47 U.S.C. § 227(c), relating to Defendants' alleged failure to establish proper practices and procedures regarding DNC requests. Plaintiff alleges that Defendants called persons who asked to be placed on Defendants' IDNC list. (*Id.* ¶ 61.) Plaintiff alleges that "Defendants did not have reasonable practices and procedures in place to effectively prevent telephone solicitations ... as evidenced by its calls to Plaintiff who repeatedly requested Defendants stop calling." (*Id.* ¶ 62.)

### F. Plaintiff's Previously-filed Motion to Amend and Related Proposed Complaint

Plaintiff previously filed a Motion to Amend to add a DNC claim but erroneously based the claim upon a violation of ⚑16 C.F.R. § 310.4(b)(1)(iii)(A), which does not apply. The Court granted Plaintiff leave to file a revised Motion to Amend to add a DNC claim based upon a proper statutory basis. (DE 53.) The Court also permitted Plaintiff to delete the claim that Defendants placed calls featuring a prerecorded or artificial voice. (*Id.*) The Court did not permit any other amendments, and the deadline for amending pleadings, which was May 2, 2016, has passed. (DE 33, Scheduling Order.)

### G. Plaintiff's Motion to Amend to Add the DNC Claim and Related Briefing

In the Motion to Amend dated August 26, 2016, which is presently before the Court (DE 54), Plaintiff asks the Court for leave to add the DNC claim. In support of the Motion to Amend to add the DNC claim, Plaintiff points to audio recordings produced

by Defendants that are in the record (DE 46, Notice of Filing Audio Recordings), as evidence that Plaintiff requested inclusion on Defendants' IDNC list on multiple occasions. (DE 54, Motion to Amend at 2 n.2.) Plaintiff has also added several changes to the proposed SAC (DE 54-1) that were not contained within the original proposed SAC (DE 41-1), and do not relate to the correction of the statutory basis for the DNC claim ("New Changes").

In response to the Motion to Amend, Defendants make a number of arguments, including that the proposed amendment is made in bad faith and would be futile. In support of their futility argument, Defendants argue that the allegations are insufficient to state a DNC claim and, like Plaintiff, rely in part upon an audio recording in the record. (DE 55, Defendants' Resp. at 12-13 ("Plaintiff's allegation that he asked to be placed on Defendants' IDNC List on May 8, 2014 is demonstrably false.").) Defendants also emphasize that Plaintiff did not receive any phone calls more than thirty days after Plaintiff's DNC request during the July 1, 2015 call, thus contending that they did not violate the applicable regulation. *See* 47 C.F.R. § 64.1200(d) ("Persons or entities making calls for telemarketing purposes (or on whose behalf such calls are made) must honor a residential subscriber's do-not-call request within a reasonable time from the date such request is made. *This period may not exceed thirty days from the date of such request.*" (emphasis added) ). Defendants also argue that the DNC claim must fail because Defendants are not "telemarketers" or "sellers" for purposes of the TCPA. Defendants assert that the class allegations are also futile. In addition, Defendants argue that Plaintiff has offered no justification for the New Changes in the proposed SAC.

In his Reply, Plaintiff insists that the allegations are sufficient to state a DNC claim and argues that the entries in Defendants' call log, which Plaintiff placed in the record (DE 45-4, Sealed Call Log), demonstrate that Plaintiff's statement during the telephone call was a sufficient DNC request. (DE 58, Pl.'s Reply at 2.) As to the thirty-day grace period, Plaintiff emphasizes that the regulations require telemarketers to honor DNC requests within "a reasonable time," and suggests that Defendants did not honor Plaintiff's DNC request within a reasonable time. Further, Plaintiff argues that Defendants' own documents support the fact that their calls are telemarketing. (*Id.*; *see* DE 43.) Plaintiff contends that Defendants' arguments attacking the certifiability of the putative class remain premature. Plaintiff fails to address Defendants' argument that he has not offered any justification for the New Changes in the proposed SAC.

 **\*3**  With leave of Court, Defendants filed a Supplemental Reply, attaching a transcript of Plaintiff's deposition under seal to show that Plaintiff did not make a DNC request during the May 2014 call. (DE 63-1, Sealed Deposition Transcript.) Plaintiff filed a Reply to Defendants' Supplemental Reply. (DE 66.)

## II. LEGAL STANDARD

Rule 15(a) of the Federal Rules of Civil Procedures provides that a party may amend the party's pleading "only with the opposing party's written consent or the court's leave" and states that the court should "freely give leave when justice so requires." Fed. R. Civ. P. 15(a). In construing Rule 15(a), the Supreme Court has held as follows:

> In the absence of any apparent or declared reason–such as undue delay, bad faith, or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of the allowance of the amendment, futility of amendment, etc.– the leave sought should, as the rules require, be "freely given."

*Foman v. Davis*, 371 U.S. 178, 182 (1962). District courts have "limited discretion in denying leave to amend, and should grant a motion to amend unless there are substantial reasons to deny it." *Bowers v. U.S. Parole Comm'n, Warden*, 760 F.3d 1177, 1185 (11th Cir. 2014) (citation, internal quotation marks, and alterations omitted).

Buja v. Novation Capital, LLC, Not Reported in Fed. Supp. (2017)

Case 1:26-cv-00659-KM    Document 7-3    Filed 05/19/26    Page 12 of 80

"A proposed amendment may be denied for futility when the complaint as amended would still be properly dismissed." *Coventry First, LLC v. McCarty*, 605 F.3d 865, 870 (11th Cir. 2010) (citation and internal quotation marks omitted). Leave to amend a complaint is also futile in an appropriate case when the complaint would "be immediately subject to summary judgment for the defendant." *Cockrell v. Sparks*, 510 F.3d 1307, 1310 (11th Cir. 2007). [1]

Here, the Court will assess whether Plaintiff's proposed amended complaint would be futile under both the Rule 12(b)(6) motion-to-dismiss standard and the standard of Rule 56, i.e. whether the proposed DNC claim could survive a motion for summary judgment brought by Defendants.

## III. DISCUSSION

### A. Defendants' Futility Argument Concerning the DNC Claim

**\*4** Plaintiff asks this Court for leave to amend the Complaint to add a claim under 47 U.S.C. § 227(c), concerning "Defendants' systemic failure to stop calling persons who requested to be included on Defendants' Do-Not-Call List." (DE 54, Motion at 1.) Defendants assert that amendment would be futile because the allegations concerning Defendants' do-not-call procedures are not sufficient to state a DNC claim under the TCPA and are contradicted by the evidence in the record.

Pursuant to the authority granted to the Federal Communications Commission ("FCC") under the TCPA, *see* 47 U.S.C. § 227(c)(1), the FCC promulgated regulations that prohibit a person or entity from making a call for telemarketing purposes to a residential telephone subscriber "unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity." 47 C.F.R. § 64.1200(d). Further, the aforementioned rule set forth in paragraph (d) is applicable to "any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers to the extent described in the Commission's Report and Order, CG Docket No. 02-278, FCC 03-153, Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991." 47 C.F.R. § 64.1200(e) (internal quotation marks omitted).

As provided in 47 C.F.R. § 64.1200(d), telemarketers must institute procedures that meet the following minimum standards (among others):

> Recording, disclosure of do-not-call requests. If a person or entity making a call for telemarketing purposes (or on whose behalf such a call is made) *receives a request from a residential telephone subscriber not to receive calls from that person or entity*, the person or entity must record the request and place the subscriber's name, if provided, and telephone number on the do-not-call list at the time the request is made. *Persons or entities making calls for telemarketing purposes (or on whose behalf such calls are made) must honor a residential subscriber's do-not-call request within a reasonable time from the date such request is made. This period may not exceed thirty days from the date of such request.* If such requests are recorded or maintained by a party other than the person or entity on whose behalf the telemarketing call is made, the person or entity on whose behalf the telemarketing call is made will be liable for any failures to honor the do-not-call request. A person or entity making a call for telemarketing purposes must obtain a consumer's prior express permission to share or forward the consumer's request not to be called to a party other than the person or entity on whose behalf a telemarketing call is made or an affiliated entity.

47 C.F.R. § 64.1200(d) (3) (emphasis added).

As aptly explained by one court, "[a] subsection (d)(3) violation is based on the fact that a telemarketer failed to implement certain procedures prior to the initiation of a phone call." *Simmons v. Charter Commc'ns, Inc.*, No. 3:15-CV-317 (SRU), 2016 WL 1257815, at *13 (D. Conn. Mar. 30, 2016); *Charvat v. GVN Michigan, Inc.*, 561 F.3d 623, 632 (6th Cir. 2009) ("The 'violation of the regulations' is therefore the initiation of the phone call without having implemented the minimum procedures."). "The regulations do not prohibit 'actually calling an individual after the individual has requested placement on a do-not-call list ... nor do the regulations specifically proscribe failing to record an individual's request to be placed on a do-not-call list.' " *Simmons*, 2016 WL 1257815, at *13 (citing *Charvat v. DFS Servs. LLC*, 781 F. Supp. 2d 588, 592 (S.D. Ohio 2011) ). "Thus, in order to prove a subsection (d)(3) violation, a plaintiff cannot rely solely on the fact that a provider failed to record or honor an individual's request to be placed on a DNC list. Rather, the plaintiff must establish that the calls he or she received were initiated prior to the implementation of proper procedures." *Simmons*, 2016 WL 1257815, at *13 (internal citation omitted).

### 1. The DNC Claim Would Survive a Motion to Dismiss

**\*5** "A plain reading of § 64.1200(d) reveals that any cause of action under it must include allegations that the consumer received a phone call from the telemarketer when the telemarketer did not have proper procedures in place to make such a phone call." *Benzion v. Vivint, Inc.*, No. 12-61826-CIV, 2014 WL 11531368, at *5 (S.D. Fla. Jan. 17, 2014). The proposed DNC claim in the SAC here does just that. Plaintiff alleges that Defendants called persons who asked to be placed on Defendants' IDNC list. (*Id.* ¶ 61.) Plaintiff alleges that "Defendants did not have reasonable practices and procedures in place to effectively prevent telephone solicitations ... as evidenced by its calls to Plaintiff who repeatedly requested Defendants stop calling." (*Id.* ¶ 62.) These factual allegations are sufficient to "raise a right to relief above the speculative level" and state a plausible DNC claim. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citation and alteration omitted).

Defendants argue that Plaintiff failed to allege the particular provision in 47 C.F.R. § 64.1200(d) that was allegedly violated. There are six basic procedures that a caller must have in placed before placing a telemarketing call. *See* 47 C.F.R. § 64.1200(d)(1)-(6) ( (1) written policy for maintaining DNC list, available on demand, (2) adequate training of personnel, (3) recording, disclosure, and honoring of DNC requests, (4) identification of sellers/telemarketers, (5) application of DNC requests to affiliated entities, (6) maintenance of records of a DNC list); *see also Simmons*, 2016 WL 1257815, at *12. There is no doubt that Plaintiff's allegations center upon a violation of paragraph (d)(3), relating to the recording and honoring of DNC requests, and, if necessary, Plaintiff may otherwise narrow his § 64.1200(d) claim through discovery.

Based upon the allegations of the SAC, the Court concludes that the allegations would survive a motion to dismiss, and, therefore, the Court rejects Defendants' futility argument to the extent that it is based upon the four corners of the complaint.

### 2. The DNC Claim Would Survive a Motion for Summary Judgment

Defendants argue that Plaintiff's claim that Defendants failed to implement proper DNC practices and procedures fails because there is no evidentiary support for Plaintiff's allegations that Defendants failed to honor a DNC request made by Plaintiff on a timely basis.

Case 1:26-cv-00659-KM    Document 7-3    Filed 05/19/26    Page 14 of 80

Buja v. Novation Capital, LLC, Not Reported in Fed. Supp. (2017)

#### a. The May 2014 Call was not a DNC Request

Defendants argue that an audio recording in the record demonstrates that Plaintiff cannot prevail on a DNC claim. (DE 55, Defendants' Resp. at 12-13 ("Plaintiff's allegation that he asked to be placed on Defendants' IDNC List on May 8, 2014 is demonstrably false.").) In the proposed complaint, Plaintiff alleges that in May 2014, during a telephone call made by Defendants, "Plaintiff made it clear he did not desire to receive calls from or on behalf of Defendants, and Plaintiff then terminated the May 2014 call." (DE 30, SAC ¶ 30.) However, Defendants have presented undisputed evidence in the form of audio recordings that the only statement that Plaintiff made during the May 2014 telephone call was "No, uh, thanks a lot by goodbye." (DE 55, Resp. at 9.)

The TCPA regulations state that if a person makes a "request ... not to receive [a] call" from a telemarketer, the telemarketer must place that person on its IDNC list and not call that person without consent. 47 C.F.R. § 64.1200(d)(3). Neither the TCPA nor its regulations define what constitutes "a request." *Krakauer v. Dish Network L.L.C.*, 311 F.R.D. 384, 389 (M.D.N.C. 2015).

While Plaintiff is correct that no magic words are required to constitute a request not to receive calls, the Court easily concludes that Plaintiff's terse words during the May 2014 call do not constitute such a request. Unlike the case in *Krakauer*, where the evidence demonstrated that the plaintiff wanted the telemarketer to "stop" calling him, *see id.* at 390, Plaintiff's brief words during the May 2014 call, i.e. "no, uh, thanks a lot by goodbye," and termination of the call did not amount to a directive for Defendants to do anything, much less stop calling him. Although Plaintiff points to certain comments made by Defendants' in their call log, Defendants' comments alone cannot change the substance of Plaintiff's statement during the call, which was not a DNC request. Thus, the Court concludes that the May 2014 call did not amount to a DNC request, but, as more fully discussed below, the Court nevertheless concludes that the evidence in the record still supports a DNC claim.

#### b. The Reasonableness as to the Time it took Defendants to Honor the July 1, 2015 DNC Request is a Question of Fact

**\*6** The evidence in the record indicates that Plaintiff made a proper DNC request during the July 1, 2015 call with Defendants. Defendants claim that Plaintiff did not receive any phone calls more than thirty days after Plaintiff's DNC on July 1, 2015. However, as provided in 47 C.F.R. § 64.1200(d), "[p]ersons or entities making calls for telemarketing purposes (or on whose behalf such calls are made) must honor a ... do-not-call request *within a reasonable time from the date such request is made.* This period may not exceed thirty days from the date of such request." *See* 47 C.F.R. § 64.1200(d)(3) (emphasis added).[2]

Here, the record demonstrates that the two calls that Plaintiff received after the DNC request were on July 14, 2015 (approximately two weeks after the DNC request) and July 23, 2015 (approximately three weeks after the DNC request). (DE 63-1, Sealed Deposition Transcript at 162, 169.) Based upon the evidence in the current record, this Court cannot conclude at this time that Defendants' taking two or three weeks to honor a DNC request is reasonable as a matter of law. *Martin v. Comcast Corp.*, No. 12 C 6421, 2013 WL 6229934, at *6 (N.D. Ill. Nov. 26, 2013) (declining to decide as a matter of law that one or two weeks for a telemarketer to honor a plaintiff's DNC request was a reasonable amount of time as a matter of law). There is no evidence in the record concerning the capability and practices of Defendants in connection with processing a DNC request. Therefore, the evidence in the present record would survive a rule 56 motion for summary judgment, and, therefore, the Court rejects Defendants' futility argument to the extent that it is based upon the evidence in the record.

### B. Defendants' Futility Argument Pertaining to the Definition of Telemarketers

Buja v. Novation Capital, LLC, Not Reported in Fed. Supp. (2017)

Case 1:26-cv-00659-KM    Document 7-3    Filed 05/19/26    Page 15 of 80

Defendants argue that the DNC claim must fail because Defendants are not "telemarketers" or "sellers" for purposes of the TCPA. The term "telemarketing" means "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person." 47 C.F.R. § 64.1200(f)(12). The term "telemarketer" means "the person or entity that initiates a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person." 47 C.F.R. § 64.1200(f)(11).

Defendants base their argument on the allegation in the SAC that "Defendants are in the business of purchasing structured settlements and annuities for a lump sum of cash." (DE 54-1, SAC ¶ 8.) Emphasizing the word "purchasing," Defendants argue that they are purchasers of structured settlements, not sellers of any goods or services. However, Defendants' argument ignores the many services they provide as part of the structured-settlement transfer transaction.

**\*7** As explained in the SAC, a structured settlement is a settlement which provides in whole or in part for periodic payments. (*Id.* ¶ 16 n.2.) Pursuant to the structured settlement, the annuitant must receive their money in payments over time. As purchasers of structured settlements, Defendants offer potential clients the option to obtain their money in a lump-sum rather than over a period of time. (DE 45-2 at 7.)

As part of the transaction, a structured-settlement company, such as Defendants, may perform a number of services to effectuate the transaction (for a fee charged to the payee [3] ), including the following: (i) process the payee's application; (ii) compute the prevent value of the structured settlement; (iii) comply with underwriting requirements; (iv) prepare and process the contract; and (v) comply with applicable disclosure laws and other laws pertaining to court approval. [4] (*See e.g.*, DE 45-2, Defendants' Sales Manual, at 10 (present value); 17, 68 (contract processing); 20, 68 (application and underwriting processing); 21-22, 68 (court approval).)

Because Defendants initiated telephone calls to Plaintiff "for purpose of encouraging the purchase of ... services" provided by Defendants, as set forth in 47 C.F.R. § 64.1200(f)(11), (12), the Court concludes that Defendants and the calls they made fall within the purview of the TCPA. Accordingly, the Court is not persuaded by Defendants' argument that leave to amend should be denied based upon futility.

### C. Defendants' Bad-Faith Argument

Defendants argue that Plaintiff's assertion of false allegations in support of the DNC claim constitutes bad faith, justifying denial of the Motion to Amend. Although, as discussed above, Plaintiff's brief statement during the May 2014 call did not constitute a proper DNC request, the Court has concluded that the other allegations of the SAC state a viable DNC claim and could survive a motion for summary judgment based upon the evidence in the record. The Court does not find any bad-faith motive on the part of Plaintiff, and therefore refuses to deny the Motion to Amend on that basis.

### D. Defendants' Argument Concerning the Class Allegations

Defendants argue that Plaintiff has failed to plead a viable DNC class. However, as the Court stated in its Order dated January 8, 2016, "[t]he Court finds this inquiry to be premature. The issues raised by Defendants are more properly addressed when Plaintiff brings his motion to certify the class." (DE 32, Order at 3-4.)

### E. Defendants' Argument Concerning Unauthorized and Unjustified Amendments

Defendants argue that the proposed SAC makes a number of changes that are not within the scope of the Court's Order authorizing Plaintiff to file a revised motion to amend to add a DNC claim based upon a proper statutory basis. Defendants delineate the New Changes in Section C of their Response to the Motion to Amend. (DE 55, Defendants' Resp. at 18-22.) As

noted above, when Plaintiff originally filed a motion to amend to add a DNC claim, Plaintiff erroneously based the claim upon a violation of ⚑16 C.F.R. § 310.4(b)(1)(iii)(A), which does not apply. The Court granted Plaintiff leave to file a revised Motion to Amend to add a DNC claim under a proper statutory basis. (DE 53.) The Court also permitted Plaintiff to delete the claim that Defendants placed calls featuring a prerecorded or artificial voice. (*Id.*) Other than the addition of a corrected DNC claim and the deletion of another claim, the Court did not permit any other amendments, and the deadline for amending pleadings, which was May 2, 2016, had passed by the time Plaintiff filed his revised Motion to Amend. (DE 33, Scheduling Order.)

**\*8**  Because Plaintiff has not demonstrated (or even attempted to demonstrate) the requisite diligence in seeking to make any of the New Changes delineated by Defendants in Section C of their Response (DE 55, Defendants' Resp. at 18-22), including the expanded injunctive relief, the Court denies Plaintiff's Motion to Amend. It would be unfair to Defendants for Plaintiff to take advantage of the courtesy the Court extended to him by making unprecedented changes to the First Amended Complaint when the Court only permitted him the option to file a revised motion to amend to correct the basis of his DNC claim.

## IV. CONCLUSION

Based upon the foregoing, this Court concludes that leave to amend the First Amended Complaint to add a DNC claim is granted. Leave to amend is denied to the extent that Plaintiff seeks to make unauthorized and unjustified New Changes, as defined herein.

Based upon the foregoing, it is **ORDERED AND ADJUDGED** as follows:

1. Plaintiff's Renewed Motion for Leave to File a Second Amended Complaint (DE 54) is **GRANTED IN PART AND DENIED IN PART.**

2. Plaintiff's request to amend insofar as he requests to add a DNC claim based upon a violation of ⚑47 U.S.C. § 227(c)(1) and ⚑47 C.F.R. § 64.1200(d) is granted. Leave to amend is denied to the extent that Plaintiff seeks to make any New Changes, as defined herein and set forth in Section C of Defendants' Response (DE 55).

3. Pursuant to this Court's Administrative Procedures, Plaintiff shall electronically **REFILE** the amended complaint consistent with the dictates of this Order, within five (5) days of the date of this Order.

4. Defendants' Motion to Strike Errata Sheet (DE 67) is **DENIED** as moot.

**DONE AND SIGNED** in Chambers at West Palm Beach, Palm Beach County, Florida, this 30 th day of March, 2017.

## All Citations

Not Reported in Fed. Supp., 2017 WL 10398957

---

### Footnotes

1       "Where ... the parties have engaged in discovery and rely heavily on ... evidence [outside the pleadings] in making their arguments, the court must determine whether the proposed amendment would be futile under the summary judgment standard." ⚑*Sotheby's Int'l Realty, Inc. v. Black,* No. 06 CIV. 1725 (GEL), 2007 WL 4438145, at \*1 (S.D.N.Y. Dec. 17, 2007) (internal citations and quotation marks omitted). Here, the parties have engaged in discovery concerning the proposed DNC claim, and both have extensively relied on materials outside of the proposed complaint in arguing the futility issue. In support of his Motion to Amend, Plaintiff filed audio recordings produced by Defendants (DE 46, Notice

Case 1:26-cv-00659-KM    Document 7-3    Filed 05/19/26    Page 17 of 80

of Filing Audio Recordings; DE 54, Motion to Amend at 2 n.2), as well as Defendants' call log (DE 43-7; DE 45-4, Sealed Call Log). Defendants filed Plaintiff's deposition transcript. (DE 63-1, Sealed Deposition Transcript.) Plaintiff was the first party to submit evidence outside the four corners of the complaint, and neither party has argued that the Court should not consider matters outside the pleadings in addressing the Motion to Amend. Rather, it appears both parties seek to have the Court rule on the futility of the amended complaint based upon the parties' submissions, in addition to the allegations of the proposed SAC.

2 The FCC issued the following interpretive Report and Order concerning the amount of time for telemarketers to process a DNC request:

> We note that the Commission's rules require that entities must record company-specific do-not-call requests and place the subscriber's telephone on the do-not-call list at the time the request is made. Therefore, telemarketers with the capability to honor such company-specific do-not-call requests in less than thirty days must do so. We believe this determination adequately balances the privacy interests of those consumers that have requested not to be called with the interest of the telemarketing industry. Consumers expect their requests not to be called to be honored in a timely manner, and thirty days should be the maximum administrative time necessary for telemarketers to process that request.

In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, 18 F.C.C.R. 14014, 14,069, ¶ 94 (July 3, 2003) (footnotes omitted).

3 For example, Florida law requires the transferee of a structured-settlement transfer to provide the payee "[a]n itemized listing of all brokers' commissions, service charges, application fees, processing fees, closing costs, filing fees, referral fees, administrative fees, legal fees, and notary fees and other commissions, fees, costs, expenses, and charges payable by the payee or deductible from the gross amount otherwise payable to the payee." Fla. Stat. § 626.99296(3)(a)(2)(e).

4 Transfers of structured settlement payment rights are regulated by statute and court approval is required before a transfer may go forward. *See Rapid Settlements, Ltd. v. Dickerson*, 941 So. 2d 1275, 1276 (Fla. 4th DCA 2006).

---

**End of Document**

© 2026 Thomson Reuters. No claim to original U.S. Government Works.

2014 WL 4354070
Only the Westlaw citation is currently available.
NOT FOR PUBLICATION
United States District Court, D. New Jersey.

Michael DOBKIN, individually and on behalf of all others similarly situated, Plaintiff,

v.

ENTERPRISE FINANCIAL GROUP, INC., a Texas corporation, and Precise Enterprises
LLC d/b/a Precise Auto Protection, a California limited liability company, Defendants.

Civ. No. 2:14–cv–01989 (WHW)(CLW).
|
Signed Sept. 3, 2014.

**Attorneys and Law Firms**

Stefan Louis Coleman, Lakewood, NJ, Ari J. Scharg, John C. Ochoa, Mark S. Eisen, Edelson PC, Chicago, IL, for Plaintiff.

Michael R. McDonald, Justin Taylor Quinn, Gibbons PC, Newark, NJ, for Defendants.

### OPINION

WALLS, Senior District Judge.

**\*1** Defendant Enterprise Financial Group, Inc. ("EFG") moves to dismiss the complaint under Federal Rule of Civil Procedure 12(b) (6). This motion, decided without oral argument under Federal Rule of Civil Procedure 78(b), is denied.

### FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff Michael Dobkin brings this action individually and on behalf of a putative class of similarly situated people against EFG and Precise Enterprises LLC ("Precise") for violations of the Telephone Consumer Protection Act (the "TCPA"), 47 U.S.C. § 227(c), and related regulations. Compl. ¶¶ 3, 41–49, ECF No. 1.

Plaintiff is a New Jersey citizen whose landline telephone number is registered with the national Do Not Call Registry. *Id.* ¶¶ 6, 31. Defendant EFG is a Texas corporation that sells financial products and services related to automobiles, such as auto warranties. *Id.* ¶¶ 1, 7. Defendant Precise is a California limited liability company that markets and sells EFG's products and services to consumers. *Id.* ¶¶ 2, 8.

Plaintiff alleges that Precise is EFG's "telemarketing agent" and places "outbound telemarketing calls to consumers' telephones" to market EFG's products. *Id.* ¶¶ 14–15. Plaintiff contends that, during these calls, Precise's representatives promote EFG's auto warranties and sometimes "identify themselves as calling from EFG, or on behalf of EFG, or for the purpose of selling EFG's products." *Id.* ¶ 15. These warranties are described on both Precise's and EFG's websites. *Id.* ¶¶ 17–18. Plaintiff asserts that Precise and EFG "jointly benefit from these calls through a revenue sharing agreement." *Id.* ¶ 14.

Plaintiff also claims that Precise is one of EFG's "clients," to whom EFG provides various consulting and training services. *Id* . ¶¶ 19–20. As such, EFG is "heavily involved with Precise Enterprises's sales practices and marketing procedures, and has full visibility into Precise Enterprises's telemarketing practices." *Id.* ¶ 21.

Beginning in or around February 2014, Plaintiff alleges he "began receiving calls to his landline" phone from Precise without his consent. *Id.* ¶¶ 26–30. Plaintiff and his wife answered many of these calls and requested that they stop. *Id.* ¶ 27. When the calls did not stop, Plaintiff asked the caller about the company making the calls. *Id.* ¶ 28. The caller's supervisor said he was calling from "Precise Auto Protection" to offer Plaintiff the "Choice" auto warranty package for $3,600. *Id.* Plaintiff requested a website to get more information about the warranty, and the supervisor directed him to "TheTechChoice.com." *Id.* ¶ 29. This web address automatically redirects visitors to the website "TechChoice.EFGcompanies.com," which is a part of EFG's website. *Id.* ¶ 16. Plaintiff alleges that in total he received "numerous, and no less than four, phone calls from Defendants." *Id.* ¶ 32.

**\*2** Drawing on this experience, Plaintiff asserts that "Defendants made (and continue to make) these telemarketing calls" to consumers who have registered their numbers on the national Do Not Call Registry and who have requested that the calls stop, *id.* ¶¶ 22–23, thereby inflicting unwanted aggravation, nuisance, invasion of privacy, and phone service charges. *Id.* ¶ 4.

Plaintiff seeks to represent a class of "[a]ll individuals in the United States (1) who had his or her telephone number(s) registered with the National Do Not Call Registry for at least thirty days; (2) who received more than one telephone call made by or on behalf of Defendants that promoted Defendants' products or services; (3) within a 12–month period; and (4) for whom Defendants had no current record of consent to place such calls to him or her." *Id.* ¶ 34. Plaintiff supports the existence of this class by asserting that "consumer complaints online regarding unwanted phone calls from Defendants ... are legion." *Id.* ¶ 24. Plaintiff cites several websites that aggregate complaints about phone calls from numbers potentially used by Defendants. *Id* .

Alleging these facts, Plaintiff maintains that Defendants violated the TCPA and related Federal Communications Commission ("FCC") regulations. *Id.* ¶¶ 40–49. First, Plaintiff claims that Defendants violated the FCC rule codified at 47 C.F.R. § 64.1200(c) (2013) by initiating telephone solicitations to telephone subscribers who registered their phone numbers on the national Do Not Call Registry. *Id.* ¶ 45. Second, Plaintiff claims that Defendants violated the FCC rule codified at 47 C.F.R. § 64.1200(d) by initiating telemarketing calls without maintaining a list of persons who request not to receive calls. *Id.* ¶ 47.

Finally, based on these predicate violations of the FCC regulations, Plaintiff contends that Defendants violated the TCPA, 47 U.S.C. § 227(c)(5), and seeks an injunction, actual and statutory damages, and attorneys' fees and costs. *Id.* ¶ 48.

Defendant EFG moves to dismiss Plaintiff's complaint under Federal Rule of Civil Procedure 12(b)(6). EFG argues that the complaint does not state a plausible claim that EFG is directly or vicariously liable for the calls Plaintiff received. EFG also asserts that the TCPA's private right of action incorporates New Jersey state law and that this has the effect of foreclosing Plaintiff's class action claim. Finally, EFG argues that Plaintiff's request for relief arising from calls made to wireless phones must be dismissed because Plaintiff does not allege that he received a call on a wireless phone. EFG's arguments are considered in turn.

### STANDARD OF REVIEW

On a motion to dismiss, the court is required to "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Broadcom Corp. v. Qualcomm Inc.,* 501 F.3d 297, 306 (3d Cir.2007). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

**\*3** "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Twombly,* 550 U.S. at 563 (2007) (citations omitted). It follows that "a district court weighing a motion to dismiss asks 'not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims.' " *Id.* at 563 n. 8 (quoting *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974)).

## DISCUSSION

### A. Direct Liability

EFG argues that the complaint fails to establish EFG's direct liability for the alleged unlawful calls because it asserts that Precise, not EFG, made the calls. Def.'s Br. in Supp. of Mot. to Dismiss ("Def.'s Br.") 6–9, ECF No. 17–1. The Court agrees that Plaintiff has failed to state a plausible claim for EFG's direct liability.

The FCC's TCPA regulations make it unlawful to "initiate" telemarketing calls to phone numbers registered on the national Do Not Call Registry or without maintaining a list of persons who request not to receive calls. [1] Interpreting the meaning of the word "initiate" in its TCPA regulations, the FCC has clarified that a "person or entity 'initiates' a telephone call when it takes the steps necessary to physically place a telephone call." *In re Dish Network, LLC,* 28 F.C.C. Rcd. 6574, 6582–83 (2013). The FCC's interpretation of its regulations implementing the TCPA merits substantial deference. *Thomas Jefferson Univ. v. Shalala,* 512 U.S. 504, 512, 114 S.Ct. 2381, 129 L.Ed.2d 405 (1994) (reviewing courts "must give substantial deference to an agency's interpretation of its own regulations"). Because Plaintiff's complaint alleges only that Precise, and not EFG, placed unlawful phone calls, it follows that Plaintiff has not adequately alleged that EFG is directly liable for any unlawful calls. [2] *See also* *Thomas v. Taco Bell Corp.,* No. 12–56458, 2014 WL 2959160, at \*1 (9th Cir. July 2, 2014) (finding that direct liability for TCPA violation was inapplicable to seller when actual sender of unlawful text message solicitation was a third party).

Without disputing that Precise placed the alleged unlawful calls, Plaintiff argues that EFG can still be directly liable for initiating them because it was highly involved in Precise's telemarketing efforts. Pl.'s Opp. to Mot. to Dismiss ("Pl.'s Opp.") 6, ECF No. 27. To support this argument, Plaintiff relies on the FCC's comment that "one can imagine a circumstance in which a seller is so involved in the placing of a specific telephone call as to be directly liable for initiating it—by giving the third party specific and comprehensive instructions as to the timing and the manner of the call, for example." *In re Dish Network, LLC,* 28 F.C.C. Rcd. at 6583. This argument fails because Plaintiff's complaint does not indicate that this circumstance exists here.

Plaintiff has not alleged that EFG was directly involved in placing any specific phone call to Plaintiff or a putative class member. Rather, Plaintiff alleges that EFG "outsourced the telesales of its products to Defendant Precise Enterprises," Compl. ¶ 21, and that it was Precise's distinct role to "market [ ] EFG's products and services through widespread telemarketing." *Id.* ¶ 13. Although Plaintiff states that EFG was "heavily involved with Precise Enterprises's sales practices and marketing procedures" and assisted Precise with various types of consulting and training, *id.* ¶¶ 19–21, Plaintiff never alleges that EFG was involved in placing any particular phone call. Given the FCC's emphasis that one "initiates" a phone call by physically placing it, and the existence of vicarious liability for sellers who engage third parties to make unlawful telemarketing calls, Plaintiff's allegations that EFG oversaw and advised Precise's telemarketing do not suffice to bring EFG's actions within the ambit of direct liability. As such, Plaintiff has not stated a plausible claim for EFG's direct liability.

### B. Vicarious Liability

**\*4** EFG also argues that Plaintiff has failed to assert a plausible theory of vicarious liability. EFG does not dispute that a seller can be vicariously liable under the TCPA for a third party agent's unlawful telemarketing calls. Def.'s Br. 9–10. Instead, EFG argues that it cannot be held vicariously liable for Precise's telemarketing calls because Plaintiff failed to plead facts establishing

that Precise was EFG's agent. *Id.* at 10. The Court disagrees. Plaintiff has pled enough facts to make it plausible that Precise had actual authority from EFG when it made the telemarketing calls at issue, thereby creating vicarious liability for EFG.

The Third Circuit has held that "[a]n agency relationship is created when one party consents to have another act on its behalf, with the principal controlling and directing the acts of the agent." *Covington v. Int'l Ass'n of Approved Basketball Officials,* 710 F.3d 114, 120 (3d Cir.2013) (internal citations omitted). "Vicarious liability due to an agency relationship can be based on the agent's actual authority. An agent acts with actual authority when, at the time of taking action that has legal consequences for the principal, the agent reasonably believes, in accordance with the principal's manifestations to the agent, that the principal wishes the agent so to act." *Id.* (citing Restatement (Third) of Agency § 2.01 (2006)).

Plaintiff's allegations suffice to make out a claim that Precise had actual authority to sell EFG's products through telemarketing calls when it made the alleged unlawful calls. Plaintiff asserts that EFG "outsourced the telesales of its products" to Precise and that EFG and Precise "jointly benefit from these calls through a revenue sharing agreement where each is paid when an EFG product is sold by Precise." Compl. ¶¶ 14, 21. The complaint also states that EFG's and Precise's websites display the same product information, *id.* ¶¶ 17–18, and that Precise offered to sell Plaintiff the "Choice" warranty package that appears on both websites. *Id.* ¶ 28. Taken as true, these facts substantiate an outsourcing arrangement in which Precise had actual authority to sell EFG's products through telemarketing calls. The complaint also exhibits Precise's actual authority with assertions that Precise representatives viewed themselves as EFG's agents and would sometimes identify themselves as calling from or on behalf of EFG when they spoke with consumers. *Id.* ¶ 15.

Beyond the indications of actual authority, Precise's status as EFG's agent is supported by Plaintiff's assertions that Precise was acting under EFG's control and direction. As example, Plaintiff alleges that EFG was "heavily involved with Precise Enterprises's sales practices and marketing procedures" and maintained "full visibility into Precise Enterprises' telemarketing practices." *Id.* ¶ 21. Similarly, Plaintiff's allegation that Precise representatives directed consumers to a website which automatically rerouted to EFG's website suggests that EFG exerted control over Precise's telemarketing strategy. *Id.* ¶ 16. Plaintiff has adequately pled facts to make it plausible that EFG could be vicariously liable for Precise's alleged unlawful calls.

**\*5** Because Plaintiff has sufficiently alleged EFG's vicarious liability under an actual authority theory, this Court need not consider the adequacy of Plaintiff's complaint with regard to other bases of vicarious liability.

### C. The TCPA's Private Right of Action

Defendant EFG also contends that Plaintiff's complaint must be dismissed because the TCPA's private right of action incorporates New Jersey state law and New Jersey law prohibits TCPA class actions. *See* Def.'s Br. 15–24.

The TCPA's relevant private right of action clause provides that a person "may, if otherwise permitted by the laws or rules of court of a State bring in an appropriate court of that State" an action for an injunction and monetary damages. 47 U.S.C. § 227(c)(5). Defendant EFG argues that TCPA class actions are not "otherwise permitted" under New Jersey state law and that, consequently, the statute's plain language requires this Court to dismiss Plaintiff's case. Def.'s Br. 15–18. In opposition, Plaintiff contends that the Supreme Court's interpretation of the TCPA in *Mims v. Arrow Financial Services,* —— U.S. ——, 132 S.Ct. 740, 181 L.Ed.2d 881 (2012), dictates that federal law, not state law, governs TCPA class actions brought in federal court. Pl.'s Opp. 17–22. This Court, in keeping with the many federal courts that have considered this issue, agrees with Plaintiff that federal law governs TCPA class actions brought in federal court.

In *Mims,* the Supreme Court held that state and federal courts have concurrent jurisdiction over TCPA claims. *Mims,* 132 S.Ct. at 745. Analyzing 47 U.S.C. § 227(b)(3), a separate private right of action clause in the TCPA statute that is nearly identical to the one relevant here, 47 U.S.C. § 227(c)(5), the Court stated that the clause provides a "permissive grant of

jurisdiction to state courts," and that "[n]othing in the permissive language of § 227(b)(3) makes state-court jurisdiction exclusive, or otherwise purports to oust federal courts of their 28 U.S.C. § 1331 jurisdiction over federal claims." *Id.* at 745, 749. The Court found that "by providing that private actions may be brought in state court 'if otherwise permitted by the laws or rules of court of [the] State,' Congress arguably gave States leeway they would otherwise lack to decide whether to entertain TCPA claims." *Id.* at 751 (internal citations omitted). It follows that the Supreme Court interpreted the statute's "if otherwise permitted" language as giving states discretion over their own state court TCPA enforcement, not as tethering TCPA enforcement in federal courts to state laws.

The Supreme Court also noted that subjecting federal court TCPA cases to each state's TCPA policies would undermine Congress's intent to establish "uniform, federal substantive prescriptions" for telemarketing. *Id.* ("Congress' design would be less well served if consumers had to rely on 'the laws or rules of court of a State,' ... or the accident of diversity jurisdiction, to gain redress for TCPA violations"). The Supreme Court's construction of the TCPA's "if otherwise permitted" language as simply giving states their own TCPA enforcement discretion and its conclusion that Congress intended to install uniform TCPA enforcement in federal courts together instruct that federal law should govern TCPA claims brought in federal court. Although the Third Circuit has not addressed this issue, the Second Circuit has reached the same conclusion, finding that *Mims* "emphasizes that Congress had a strong federal interest in uniform standards for TCPA claims in federal court" and holding that "Federal Rule of Civil Procedure 23, not state law, governs when a federal TCPA suit may proceed as a class action." *Bank v. Independence Energy Grp. LLC,* 736 F.3d 660, 661 (2d Cir.2013). This is also far from the first time the District of New Jersey has considered this issue and arrived at this result. *See City Select Auto Sales, Inc. v. David Randall Associates, Inc.,* 296 F.R.D. 299, 312 (D.N.J.2013); *Fitzgerald v. Gann Law Books, Inc.,* 956 F.Supp.2d 581, 584–87 (D.N.J.2013); *Landsman & Funk, P.C. v. Skinder–Strauss Associates,* No. CIV.A. 08–3610 KSH, 2012 WL 6622120, at \*6–8 (D.N.J. Dec.19, 2012); *Goodrich Mgmt. Corp. v. Afgo Mech. Servs., Inc.,* No. CIV. 09–43 WJM, 2012 WL 6554221, at \*3 (D.N.J. Dec.14, 2012); *Bais Yaakov of Spring Valley v. Peterson's Nelnet, LLC,* Civ. 11–00011, 2012 WL 4903269, at \*7 (D.N.J. Oct.17, 2012).

**\*6** Despite *Mims* and its progeny, EFG argues that a plain reading of the TCPA's "if otherwise permitted" language compels the application of New Jersey state law. Def.'s Br. 16–17. The Court disagrees. The Supreme Court explained in *Mims* that federal courts' jurisdiction in TCPA cases is derived from the "familiar default rule" that "[f]ederal courts have § 1331 jurisdiction over claims that arise under federal law." *Mims,* 132 S.Ct. at 753. Federal subject matter jurisdiction over Plaintiff's TCPA claim arises because the TCPA is a federal statute, not from the statute's permissive grant of jurisdiction to state courts. Because federal question jurisdiction arises not from the TCPA's text but from its federal provenance, the "if otherwise permitted" language is properly read as applying to actions brought in state courts. *See also Landsman & Funk,* 2012 WL 6622120, at \*8 (finding that "the restrictive language applies to actions brought in courts of a state"); *Bais Yaakov of Spring Valley,* 2012 WL 4903269, at \*7 (finding that "there is no direct conflict between Rule 23 and state law such as to imply a congressional limitation on Rule 23, because the section at issue applies to a suit brought in state court, not federal").

This Court agrees with the others which have determined that federal law, not New Jersey law, applies to Plaintiff's TCPA class action claim in federal court. New Jersey's treatment of TCPA class action claims is inapplicable.

### D. Alleged Calls to Wireless Telephones

EFG's remaining argument is that Plaintiff's complaint should be dismissed to the extent it seeks relief from calls made to wireless telephones because Plaintiff does not allege that he received such calls. Def.'s Br. 15. The Court finds this argument unavailing.

Plaintiff's complaint does not seek individual relief for calls made to a wireless phone. Rather, it states a claim to individual relief from alleged unlawful calls to Plaintiff's landline. [3] Plaintiff's failure to allege that he received unlawful calls to a wireless phone does nothing to undermine his pleading.

Second, it is too early to resolve class certification questions. Plaintiff seeks to represent a class of "[a]ll individuals in the United States" who had their phone numbers registered with the national Do Not Call Registry but still received multiple telemarketing calls from Defendants in a twelve month period without consent. Compl. ¶ 34. On its face, Plaintiff's complaint indicates that Plaintiff shares the same claim as putative class members. The complaint's only references to wireless phone calls serve to allege that the relevant FCC TCPA regulations do not distinguish between telemarketing calls to wireless and landline phones. *Id.* ¶¶ 43, 45, 47.

While EFG's argument points to a difference between Plaintiff's claim and those of other potential class members, in that class members may have received unlawful calls to wireless phones instead of landline phones, this issue is best addressed at the class certification stage. The Third Circuit has emphasized that "rigorous analysis" is required before a district court makes class certification decisions. *Landsman & Funk PC v. Skinder–Strauss Associates,* 640 F.3d 72, 93 (3d Cir.2011) (finding that the district court's class certification decision on motion to dismiss, where there had been no motion for class certification and no discovery, was premature). Accordingly, district courts in the Third Circuit commonly deny motions to strike class allegations prior to the class certification stage. *See P.V. ex rel. Valentin v. Sch. Dist. of Philadelphia,* 2:11–CV–04027, 2011 WL 5127850, at *3–6 (E.D.Pa. Oct.31, 2011); *Humphreys v. Budget Rent A Car Sys. Inc.,* 10–CV–1302, 2014 WL 1608391, at *11 (E.D.Pa. Apr.22, 2014). Given that EFG's challenge to Plaintiff's class action allegations precedes a motion for certification as well as any pre-certification discovery, it is premature.

 **\*7** Plaintiff's failure to allege that he received unlawful calls to a wireless phone does not undermine his pleading or necessitate dismissal of his class allegations.

## CONCLUSION

The Court denies Defendant EFG's motion to dismiss. An appropriate order follows.

**All Citations**

Not Reported in F.Supp.3d, 2014 WL 4354070

## Footnotes

1    FCC regulations 47 C.F.R. §§ 64.1200(c) and (d), which Plaintiff claims EFG violated, make it unlawful, subject to certain statutory exceptions, for any person or entity to "initiate any telephone solicitation" to any telephone subscriber who has registered his or her phone number on the national Do Not Call Registry, 47 C.F.R. § 64.1200(c), and to "initiate any call for telemarketing purposes" without instituting procedures for maintaining a list of persons who request not to receive such telemarketing calls, 47 C.F.R. § 64.1200(d).

2      Where Plaintiff's complaint alleges that "Defendants" made the telemarketing calls without differentiating the Defendants by name, Compl. ¶¶ 12, 22, 23, 25, the Court does not interpret these allegations as asserting that EFG physically placed the calls because the complaint elsewhere indicates that Precise placed the calls. *Id.* ¶¶ 13, 14, 21, 28.

3      Because Plaintiff has adequately stated an individual claim for relief, EFG's reference to *Paldo Sign & Display Co. v. Hansen,* 2011 U.S. Dist. LEXIS 49585 (N.D.Ill. May 6, 2011), in which the plaintiff did not have a viable individual claim against the defendant, is inapposite.

**End of Document**

© 2026 Thomson Reuters. No claim to original U.S. Government Works.

Case 1:26-cv-00659-KM    Document 7-3    Filed 05/19/26    Page 25 of 80

2023 WL 3984951
Only the Westlaw citation is currently available.
United States District Court, D. New Jersey.

Robert DOYLE, et al.
v.
GOHEALTH, LLC

Civil Action No. 22-04291
|
Signed March 30, 2023

**Attorneys and Law Firms**

Ross H. Schmierer, Kazerouni Law Group, APC, Mount Laurel, NJ, for Robert Doyle, et al.

Matthew F. Bruno, Manatt, Phelps & Phillips, LLP, New York, NY, for GoHealth, LLC.

### <u>LETTER ORDER</u>

MADELINE COX ARLEO, United States District Judge

**\*1** Dear Litigants:

Before the Court is Defendant GoHealth, LLC's ("Defendant") Motion to Dismiss the First Amended Complaint ("FAC") pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). ECF No. 8. Plaintiff Robert Doyle ("Plaintiff"), individually and on behalf of all others similarly situated, opposes the Motion. ECF No. 16. For the reasons set forth below, the Motion is **GRANTED**.

## I. BACKGROUND [1]

This case arises out of an unsolicited telemarketing phone call Plaintiff received to his cell phone on November 4, 2021. FAC ¶¶ 24-29, ECF No. 4. The call came from an unknown number, (689) 209-1190, and a "pre-recorded voice" identified the caller as "Sarah, a Medicare Specialist." Id. ¶¶ 29-30. Plaintiff was able to determine that he was not speaking to a live representative at the outset of the call, and that the message was prerecorded because of the "generic content ... [and] the tone, cadence and inflection of the voice message." Id. ¶¶ 42-43. A live person, Jason, then began speaking, and told Plaintiff he was a "licensed Medicare specialist." Jason told Plaintiff that "GoHealth" and "GoMedicare" are the same company, and that he wanted to speak with Plaintiff about their program. Id. ¶¶ 32-33. Jason read Plaintiff "some type of disclaimer," and told Plaintiff that "their website was GoHealth.com" before he transferred Plaintiff to a woman named Jocelyn. Id. ¶¶ 34-36.

Jocelyn explained that she "works for GoHealth," and "listed a bunch of insurance companies that her company works with." Id. ¶¶ 36-37. After Jocelyn, an individual Dennis Hunter began speaking, and told Plaintiff his phone number was (855) 673-3578, extension 4363. Id. ¶¶ 38-39. Dennis Hunter also emailed Plaintiff to confirm that he was calling from GoHealth. Id. ¶ 40. The call was not for emergency purposes, and Plaintiff did not provide any express written consent to receive the call to his cell phone. Id. ¶¶ 46-47.

Plaintiff seeks to represent the following class of persons pursuant to Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3):

Case 1:26-cv-00659-KM   Document 7-3   Filed 05/19/26   Page 26 of 80

Doyle v. GoHealth, LLC, Not Reported in Fed. Supp. (2023)

> All persons within the United States who received any telephone call/s from Defendant, its employees and/or agents, for the purpose promoting Defendant's goods or services, to said person's cellular telephone made through the use of an artificial or prerecorded voice and such person had not previously consented in writing to receiving such calls within the four years prior to the filing of this action.

FAC ¶ 54. Plaintiff maintains that Defendant "has called thousands of wireless telephone customers" without their consent, and he corroborates this allegation by asserting that Defendant is the subject of "several TCPA lawsuits and class actions complaining of unsolicited marketing calls." Id. ¶¶ 50-51.

Plaintiff argues the phone call invaded his privacy and expressly violated 47 U.S.C. § 227(b)(1). He filed his first Complaint in this Court on June 27, 2022. ECF No. 1. He later filed the FAC on July 18, 2022, alleging two counts: (1) negligent violations of the Telephone Consumer Protection Act (the "TCPA") 47 U.S.C. § 227, et seq. (Count I), and (2) knowing and/or willful violations of the TCPA, 47 U.S.C. § 227, et seq. (Count II). See FAC ¶¶ 70-82. The instant Motion followed.

## II. STANDARD OF REVIEW

**\*2** Under Rule 12(b)(1), Plaintiff bears the burden of persuading the Court that subject matter jurisdiction exists. Kehr Packages, Inc. v. Fidelcor, Inc., 926 F.2d 1406, 1409 (3d Cir. 1991). In resolving a Rule 12(b)(1) motion, a court must first determine whether the motion presents a "facial" or "factual" attack. See Constitution Party of Pa. v. Aichele, 757 F.3d 347, 357 (3d Cir. 2014). A facial attack argues that a claim on its face "is insufficient to invoke the subject matter jurisdiction of the court," id. at 358, and "does not dispute the facts alleged in the complaint," Davis v. Wells Fargo, 824 F.3d 333, 346 (3d Cir. 2016). A court reviewing a facial attack must "consider the allegations of the complaint and documents referenced therein and attached thereto, in the light most favorable to the plaintiff." Constitution Party of Pa., 757 F.3d at 358. Here, Defendant's motion to dismiss is a facial attack because it asserts Plaintiff lacks Article III standing, and thus the Court lacks subject matter jurisdiction over the matter. See Society Hill Towers Owners' Ass'n v. Rendell, 210 F.3d 168, 175 (3d Cir. 2000). "Although 'general factual allegations of injury resulting from the defendant's conduct may suffice,' the complaint must still 'clearly and specifically set forth facts sufficient to satisfy' Article III." Reilly v. Ceridian Corp., 664 F.3d 38, 41 (3d Cir. 2011).

In resolving a Rule 12(b)(6) motion to dismiss, the Court accepts all pleaded facts as true, construes the complaint in the plaintiff's favor, and determines "whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Phillips v. Cnty. of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008) (internal quotation marks and citations omitted). To survive a motion to dismiss, the claims must be facially plausible, meaning that the pleaded facts "allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). The allegations must be "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).

## III. ANALYSIS

Defendant moves to dismiss the FAC on several grounds. Defendant first alleges that Plaintiff's FAC must be dismissed under Rule 12(b)(1) because Plaintiff lacks Article III standing. Def. Mem. at 5-9. Second, Defendant argues the FAC should be dismissed under Rule 12(b)(6) for failure to state a claim, as Plaintiff fails to plead facts supporting direct or vicarious liability

under the TCPA, and he does not establish any willful or knowing violation of the TCPA. Def. Mem. at 9-22. The Court addresses each in turn, after a brief background on the relevant portions of the TCPA.

The TCPA restricts certain telemarketing and robocalls. Specifically, the statute prohibits making: "any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system ["ADTS"] or an artificial or prerecorded voice ... to any telephone number assigned to a ... cellular telephone service." 47 U.S.C. § 227(b)(1)(A)(iii). To state a claim under the TCPA, a plaintiff must plead that the defendant "(1) made a non-emergency call without prior express consent, (2) using an ATDS or artificial or prerecorded voice, (3) to a cell phone." Johnson v. Comodo Grp., Inc., No. 16-4469, 2020 WL 525898, at *5 (D.N.J. Jan. 31, 2020) (emphasis removed).

### A. Article III Standing

Defendant moves to dismiss Plaintiff's FAC for lack of Article III standing, arguing that Plaintiff has failed to plead facts establishing his injury is fairly traceable to Defendant, and therefore cannot be redressed by Defendant. See Def. Mem. at 5-8. Plaintiff counters that he has plausibly alleged his injury is traceable to Defendant because two agents with whom he spoke indicated they were working for or calling on behalf of Defendant. Pl. Opp. at 5. The Court agrees with Plaintiff.

**\*3**  To establish Article III standing, the plaintiff has the burden of establishing three elements: "(1) [he] suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." Spokeo, Inc. v. Robins, 578 U.S. 330, 338 (2016). The Third Circuit addressed the "injury in fact" component of Article III standing in this context in Susinno v. Work Out World, Inc., 862 F.3d 346, 350-51 (3d Cir. 2017). There, the Court held that the "nuisance and invasion of privacy resulting from a single prerecorded telephone call" qualify as "the very harm that Congress sought to prevent." Id. (internal quotation marks omitted).

Defendant challenges the second element of standing, traceability, and argues Plaintiff's FAC fails to establish any link between the prerecorded call Plaintiff received and Defendant's business. Def. Mem. at 6. To show traceability, "there must be a causal connection between the injury and the conduct complained of—the injury has to be fairly ... traceable to the challenged action of the defendant and not ... th[e] result [of] the independent action of some third party not before the court." Lujan v. Defs. of Wildlife, 504 U.S. 555, 560-61 (1992) (quoting Simon v. Eastern Ky. Welfare Rights Organization, 426 U.S. 26, 41-42 (1976) (alterations in original)). Defendant maintains Plaintiff has failed to plead that the initial call from "Sarah, a Medicare Specialist" had any connection to Defendant, and that the subsequent transfers to live agents are insufficient to tie Defendant to the initial prerecorded call. Def. Mem. at 6.

Plaintiff relies on Bank v. GoHealth, No. 19-5459, 2021 WL 2323282 (E.D.N.Y. May 11, 2021). Pl. Opp. at 5-6. There, the plaintiff received a similar prerecorded call claiming to offer discounts for Medicare Supplement plans, and after being transferred to two live agents, the third live person with whom he spoke identified himself as a "licensed agent of [the defendant]." Bank, 2021 WL 2323282, at *1. Although, like here, the plaintiff did not allege that the initial call identified defendant, the Court concluded that the facts pled "suffice[d] to allege that plaintiff's injury is traceable to the defendant and, if proven, make it likely that the injury would be redressable if there were a favorable outcome in the case." Id. at *6.

The Court sees no reason to depart from Bank's logic with respect to Article III standing and traceability. Here, the FAC alleges that "[u]pon information and belief ... Defendant called Plaintiff using a pre-recorded message," FAC ¶ 41. The FAC also alleges that the first live person with whom Plaintiff spoke named the Defendant business – a closer connection than the third live person in Bank. Although the allegations may not be sufficient to eventually establish liability, they are enough to support standing. See Bank, 2021 WL 2323282, at *10-12 (finding the plaintiff failed to allege plausible facts to support liability under the TCPA); Perrong v. Quotewizard.com, LLC, No. 20-2506, 2020 WL 5039445, at *4 (E.D. Pa. Aug. 26, 2020) (finding plaintiff pled

Doyle v. GoHealth, LLC, Not Reported in Fed. Supp. (2023)

Case 1:26-cv-00659-KM    Document 7-3    Filed 05/19/26    Page 28 of 80

sufficient facts to establish Article III standing even though he could not directly connect the initial prerecorded call to the defendant).

### B. Liability Under the TCPA

Defendant next argues that Plaintiff fails to plead facts to support direct or vicarious liability under the TCPA. Def. Mem. at 9-20. Plaintiff, on the other hand, maintains that he has alleged facts plausibly supporting a reasonable inference that Defendant is either directly or vicariously responsible for the robocall he received. Pl. Opp. at 11-23. The Court agrees with Defendant.

**\*4**  Under the TCPA, a plaintiff establishes direct liability by showing that the defendant was the person or entity that "initiated" the telemarketing call.[2] A person or entity "initiates" a telephone call when "it takes the steps necessary to physically place a telephone call." In re Joint Petition filed by Dish Network, LLC, 28 F.C.C.R. 6574, 6583 ¶ 26 (2013). Accordingly, an entity "is not directly liable for a violation of the TCPA unless it initiates a call." Id. at 6582 ¶ 24. In addition to direct liability, the TCPA " 'creates a form of vicarious liability making an entity liable when a third party sends unsolicited communications on its behalf in violation of the Act.' " City Select Auto Sales, Inc. v. David/Randall Assocs., Inc., 96 F. Supp. 3d 403, 419 (D.N.J. 2015) (quoting Brodsky v. HumanaDental Ins. Co., No. 10–C–3233, 2014 WL 2780089, at *6 (N.D. Ill. June 12, 2014)). Federal common law principles of vicarious liability are applicable where the plaintiff establishes an agency relationship between the defendant and a third-party caller. See Campbell-Ewald Co. v. Gomez, 577 U.S. 153, 168 (2016); Cunningham v. Cap. Advance Sols., LLC, No. 17-13050, 2018 WL 6061405, at *6 (D.N.J. Nov. 20, 2018).

It is well established that vicarious liability may be established under three agency theories: actual authority, apparent authority, and ratification. "An agent acts with actual authority when, at the time of taking action that has legal consequences for the principal, the agent reasonably believes, in accordance with the principal's manifestations to the agent, that the principal wishes the agent so to act." Covington v. Int'l Ass'n of Approved Basketball Officials, 710 F.3d 114, 120 (3d Cir. 2013) (citation and quotations omitted). Apparent authority, on the other hand, can be shown "in those situations where the principal causes persons with whom the agent deals to reasonably believe that the agent has authority despite the absence of an actual agency relationship." Id. (citation and quotations omitted). Finally, "[r]atification is the affirmance of a prior act done by another, whereby the act is given effect as if done by an agent acting with actual authority." Restatement Third of Agency, § 4.01 (2006).

Here, the Court is not convinced that Plaintiff has alleged direct liability under the TCPA. Plaintiff acknowledges that the initial telemarketing call he received only identified the caller as "Sarah, a Medicare Specialist," and he does not allege that the number associated with the call – 629-209-1190 – belonged to Defendant. FAC ¶¶ 29-30; see also Camunas v. Nat'l Republican Senatorial Comm., 541 F. Supp. 3d 595, 602 (E.D. Pa. 2021) (dismissing the plaintiff's claims on direct liability grounds where plaintiff did not allege the number that sent unsolicited text messages was owned or operated by the defendant); Smith v. Vision Solar LLC, No. 20-2185, 2020 WL 5632653, at *3 (E.D. Pa. Sept. 21, 2020) (dismissing plaintiff's claims as insufficient to support direct liability under the TCPA where the plaintiff did " 'not show plausibly that defendant actually, physically initiated the telephone calls at issue' ") (quoting Aaronson v. CHW Group, Inc., No. 18-1533, 2019 WL 8953349, at *2 (E.D. Va. Apr. 15, 2019)). As such, direct liability is not established because there are no facts to support the conclusion that Defendant "physically placed" the call. In re Dish Network, LLC, 28 F.C.C.R. at 6583 ¶ 26.

**\*5**  Neither has Plaintiff pled sufficient facts to allow the Court to "draw the reasonable inference" that Defendant is vicariously liable for the telemarketing call Plaintiff received. See Iqbal, 556 U.S. at 678. Plaintiff relies upon Landy v. Nat. Power Sources, LLC, in which an unidentified operator utilizing ADTS called the plaintiff's cell phone and made a generic solicitation regarding solar panels. No. 3:21-00425, 2022 WL 797967, at *1 (D.N.J. Mar. 16, 2022) (hereinafter, "Landy II"). The plaintiff was then transferred to a live agent associated with a third-party named "US Home Solar," before a second live agent identified

herself as the defendant's agent. Id. There, the Court held that the plaintiff had pled sufficient facts to plausibly plead vicarious liability on the part of the defendant. Id. at *3. The Court determined that the "description of the process of the call" established "circumstantial evidence that by accepting the call, and following up with an e-mail after the call, [defendant] demonstrated consent to the use of ATDS." Id. (internal quotation marks omitted). The Court further reasoned that "an agency relationship [could] be inferred from ... the smooth transfer from the initial ATDS contact to" the two live agents, which showed "a cooperative relationship from which one may infer authority or apparent authority of [defendant] to the initial contact by ATDS." Id.

In Landy II, however, the plaintiff amended his complaint after an initial dismissal for failure to state a claim, to include new factual allegations regarding the "nature of the services" initially offered to plaintiff, and specifically "allege[d] that the initial ATDS contact was made to market [defendant's] products." Id. at *1. The amended complaint further supplemented the original by adding that "the initial call was made at the direction of [defendant], and that [defendant] knew the initial caller utilized an ATDS to generate customers for [defendant]." Id. at *3. Plaintiff here has not alleged any such facts.

First, Plaintiff does not provide any details regarding Defendant's relationship to Sarah and Jason, and he does not explain Jason's relationship to Jocelyn. [3] While the FAC states that Jason, the first live agent with whom Plaintiff spoke, indicated that "GoHealth and GoMedicare are the same company," FAC ¶ 33, Plaintiff does not allege any agency relationship between GoHealth and Jason, nor whether and how GoMedicare is related to Defendant. See Landy v. Nat. Power Sources, LLC, No. 3:21-00425, 2021 WL 3634162, at *4 (D.N.J. Aug. 17, 2021) ("Landy I") (dismissing the plaintiff's TCPA claims where he did "not allege that the initial caller referenced [defendant], t[ell] him to expect contact from [defendant], or otherwise indicate[ ] a relationship with [defendant]"); Klein v. Just Energy Grp., Inc., No. CV 14-1050, 2016 WL 3539137, at *9-13 (W.D. Pa. June 29, 2016) (rejecting plaintiff's vicarious liability allegations as based on speculation that the defendant "accepted or received any benefit" from the call, and where plaintiff offered no evidence of defendant's affirmance, assent, or consent to the call).

Moreover, Plaintiff failed to allege that Sarah and Jason were attempting to sell him GoHealth-specific Medicare services, and "the purported interrelatedness" of GoHealth to Medicare is not explained anywhere in the Complaint. See Doyle v. Matrix Warranty Sols., Inc., No. 22-3198, 2023 WL 1794838, at *5 (D.N.J. Feb. 6, 2023). While Plaintiff presented proofs demonstrating GoHealth's Medicare business for the first time when he opposed Defendant's Motion to Dismiss, those exhibits are "not appropriately considered as part of the Court's Rule 12(b)(6) analysis." Id. Plaintiff may not attempt to make such a connection via his briefing, as "the Complaint may not be amended by the briefs in opposition to a motion to dismiss." Pennsylvania ex rel. v. Zimmerman v. Pepsico, 836 F.2d 173, 181 (3d Cir. 1988). [4]

**\*6** Accordingly, the FAC makes insufficient allegations for this Court to infer that Defendant bears responsibility for the initial telemarketing call. [5]

## IV. CONCLUSION

Defendant's Motion to Dismiss pursuant to Rule 12(b)(6), ECF No. 8, is accordingly **GRANTED**. Plaintiff may amend his Complaint within 30 days of this Order to cure any deficiencies identified herein.

**All Citations**

Not Reported in Fed. Supp., 2023 WL 3984951

Doyle v. GoHealth, LLC, Not Reported in Fed. Supp. (2023)

Case 1:26-cv-00659-KM    Document 7-3    Filed 05/19/26    Page 30 of 80

## Footnotes

1    These facts are principally drawn from the FAC.

2    Plaintiff has satisfied the TCPA requirement that the caller use an artificial or prerecorded voice, and the parties do not dispute this. See Pl. Opp. at 9-10; Somogyi v. Freedom Mortg. Corp., No. 17-6546, 2018 WL 3656158, at *7 (D.N.J. Aug. 2, 2018) (The "complaint must include some factual allegations beyond "the call had a prerecorded voice," such as descriptions of the voice's "clarity and cadence" or "the absence of anything specific" to a live person such as saying "the name of the person being called.").

3    Plaintiff's attempts to explain that the use of the word "their" website indicates that Jason was associated with GoHealth are unavailing, and as noted below, are after-the-fact explanations that were not included in Plaintiff's pleadings, and will therefore not be considered at this stage. Pl. Opp. at 15-17.

4    The Court similarly rejects Plaintiff's request for judicial notice of Defendant's website, as "courts generally consider only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record" at the motion to dismiss stage. Pension Ben. Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993).

5    At this stage, the Court also declines to issue an order certifying the matter as a class action with Plaintiff as Class Representative, FAC ¶ 82(a). Plaintiff may bring a formal motion to certify the class if he so chooses.

**End of Document**    © 2026 Thomson Reuters. No claim to original U.S. Government Works.

KeyCite Yellow Flag

Distinguished by    Schmitendorf v. Juicy's Vapor Lounge, Inc.,    D.Kan.,    March 6, 2024

2023 WL 2163775
Only the Westlaw citation is currently available.
For Online Publication Only
United States District Court, E.D. New York.

Adam GILLAM, individually and on behalf of all others similarly situated, Plaintiff,

v.

RELIANCE FIRST CAPITAL, LLC, Defendant.

21-CV-4774 (JMA) (JMW)
|
Signed February 22, 2023

**Attorneys and Law Firms**

Avi Robert Kaufman, Pro Hac Vice, Kaufman P.A., Coral Gables, FL, Stefan Louis Coleman, Coleman, PLLC, New York, NY, for Plaintiff.

Anthony J. Staltari, Quinn Emanuel Urquhart & Sullivan, LLP, New York, NY, John W. McGuinness, Manatt, Phelps & Phillips, Washington, DC, Paul Heeringa, Pro Hac Vice, Manatt, Phelps & Phillips, LLP, Chicago, IL, for Defendant.

## ORDER

AZRACK, United States District Judge:

**\*1** Before the Court is the motion filed by Defendant Reliance First Capital, LLC ("RFC" or "Defendant") that seeks dismissal for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure ("Fed. R. Civ. P."), or in the alternative, to strike certain allegations from the Complaint pursuant to Fed. R. Civ. P. 12(f). (See ECF No. 19 (Defendant's Motion)). For the reasons set forth herein, the Court GRANTS Defendant's motion, and dismisses the Complaint with prejudice.

## I. BACKGROUND

The following facts, set forth in the Complaint and the attached exhibits, are presumed true for purposes of Defendant's motion to dismiss.

Plaintiff Adam Gillam ("Gillam" or "Plaintiff") is an individual who resides in Elwood, Indiana. (See Complaint ("Compl.") ECF No. 1, ¶ 1.) Defendant RFC is a Delaware-registered limited liability company headquartered in Melville, New York. (Id. ¶ 2.) RFC is a telemarketing company that "sell[s] home loans and refinancing plans to consumers." (Id. ¶¶ 16-17.)

Plaintiff alleges that, on or about February 22, 2017, he registered his cell phone number [1] on the National Do Not Call ("DNC") registry. [2] (Id. ¶ 23.) According to Gillam, his cell phone number "is not associated with a business, has never been held out by Plaintiff to the public, and is primarily for personal use." (Id. ¶ 24.) Between January 20 and August 3, 2021, Plaintiff received, but did not answer, any of the approximately seventeen (17) calls originating from the same number – (877) 271-3082. (Id. ¶ 26.) On or about August 4, 2021, Gilliam received another call from the same phone number, but this time answered the call

Case 1:26-cv-00659-KM    Document 7-3    Filed 05/19/26    Page 32 of 80

Gillam v. Reliance First Capital, LLC, Not Reported in Fed. Supp. (2023)

and "spoke to an agent who was soliciting refinancing products and identified their company as [Defendant]." (Id. ¶ 28.) Gillam instructed the agent to "stop calling him," which RFC did. (Id.)

Plaintiff initiated this action on August 24, 2021. (See Compl.) The Complaint asserts a single claim on behalf of Gillam and a putative class [3] against RFC, for its purported violation of their rights under Section 227(c)(5) of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, et seq. (Id.) In the Complaint, Gillam seeks injunctive, statutory, compensatory, and declaratory relief. (Id.)

**\*2** For the following reasons, the Court finds that Plaintiff has failed to sufficiently plead facts to support his TCPA cause of action. The Court grants Defendant's motion to dismiss and dismisses Plaintiff's Complaint with prejudice.

## II. DISCUSSION

### A. Legal Standard

To survive a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a plaintiff must allege sufficient facts "to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). A claim is facially plausible only "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Twombly, 550 U.S. at 556). Mere labels and legal conclusions will not suffice. Twombly, 550 U.S. at 555. In reviewing a motion to dismiss, the Court must accept the factual allegations set forth in the complaint as true and draw all reasonable inferences in favor of the plaintiff. See Dobroff v. Hempstead Union Free School Dist., No. 21-cv-1567, 2022 WL 4641128, at *4 (E.D.N.Y. Sept. 30, 2022) (citing Cleveland v. Caplaw Enters., 448 F.3d 518, 521 (2d Cir. 2006)). A court may also consider materials attached to the complaint, materials integral to the complaint, and materials incorporated into the complaint by reference. See Sira v. Morton, 380 F.3d 57, 67 (2d Cir. 2004).

### B. Plaintiff's Telephone Consumer Protection Act Claim

Under the TCPA, it is generally unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice—to any ... cellular telephone service [or] residential telephone line[.]" 47 U.S.C. § 227(b)(1)(A)-(B); Jennings v. Cont. Serv. Group, Inc., 239 F. Supp. 3d 662, 665 (W.D.N.Y. 2017) (quoting Physicians Healthsource, Inc. v. Boehringer Ingelheim Pharm., Inc., 847 F.3d 92, 94-95 (2d Cir. 2017)) ("The [TCPA] creates a private right of action, providing for statutory damages in the amount of $500 for each violation as well as injunctive relief against future violations.").

Where, as here, a plaintiff asserts a cause of action pursuant to Section 227(c)(5) of the TCPA ("Section 227(c)(5)"), that plaintiff must allege that the defendant: (1) initiated more than one "telephone solicitation call" within a 12-month period; (2) to a "residential telephone subscriber who has registered his or her telephone number" on the National DNC registry; (3) without the prior consent of the recipient. See Sterling v. Securus Tech., Inc., No. 18-cv-1310, 2019 WL 3387043, at *5-6 (D. Conn. Jul. 26, 2019) (citing Jennings, 239 F. Supp. 3d at 665); 47 U.S.C. § 227(b)(1)(A)-(B), (c)(5); 47 C.F.R. § 64.1200(c)(2).

Defendant seeks dismissal of the Complaint based on Plaintiff's purported failure to sufficiently allege that he: (1) received more than one RFC-initiated "telephone solicitation" in a 12-month period; and (ii) is a "residential telephone subscriber" under Section 227(c)(5). The Court agrees and dismisses Plaintiff's Complaint with prejudice.

**1. Plaintiff Does Not Plausibly Allege That He Received More Than One "Telephone Solicitation" in a 12-Month Period**

**\*3** Defendant initially contends that Gillam's TCPA claim should be dismissed with prejudice based on his failure to sufficiently allege that he received more than one RFC-initiated "telephone solicitation" in a 12-month period. See 47 C.F.R. § 64.1200(c). Under the TCPA's promulgating regulations, a "telephone solicitation" means "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services." Id. § 64.1200(f)(15). A telephone solicitation does not, however, include "a[ny] call or message [t]o any person with that person's express invitation or permission, [or] [t]o any person with whom the caller has an established business relationship." Id. §§ 64.1200 (f)(5) & (f)(15). A review of the Complaint reveals Plaintiff's failure to adequately plead these facts. Indeed, the Complaint does not allege that: (1) Plaintiff had not previously invited or permitted Defendant to call him and that (2) he and RFC lacked an "established business relationship" prior to the receipt of any calls from RFC's agent(s).[4] See Compl. ¶ 17.

Plaintiff has similarly failed to allege sufficient facts regarding the content of the calls from which the Court could infer that the purpose of the calls was to encourage "the purchase or rental of, or investment in, property, goods, or services." 47 C.F.R. § 64.1200 (f)(15). Rather, Plaintiff merely concludes, without any factual support, that an RFC agent "solicit[ed] refinancing products" on the August 4, 2021 telephone call. Compl. ¶ 28. When faced with similarly deficient complaints, courts within and outside of this Circuit have dismissed the complaints without prejudice, and with leave to amend. See Sterling, 2019 WL 3387043, at \*10 (dismissing TCPA claim without prejudice and with leave to file an amended complaint, assuming "Plaintiffs [could] cure the deficiencies of their TCPA claims."); Gulden v. Consol. World Travel Inc., No. 16-cv-01113, 2017 WL 3841491, at \*3 (D. Ariz. Feb. 15, 2017) (same); Jackson v. Caribbean Cruise Line, Inc., 88 F. Supp. 3d 129, 140 (E.D.N.Y. 2015) (same).

Additionally, while Plaintiff alleges receiving multiple calls, he only alleges answering one call and having one conversation with an RFC representative. See Compl. ¶¶ 25-28. Even if the Court were to assume arguendo that Plaintiff had sufficiently pled receipt of a telephone solicitation on August 4, 2021, his failure to plausibly plead receipt of at least one additional telephone solicitation from an RFC agent within the requisite 12-month period is fatal to his Section 227(c)(5) cause of action. See 47 U.S.C. § 227(c)(5); 47 C.F.R. § 64.1200(f)(15). Plaintiff's contention that the Court should consider the other calls received by Gillam as "telephone solicitations" because they were allegedly "close in time to and from the same telephone numbers" as the August 4, 2021 telephone solicitation, is unavailing. See ECF No. 21 (Pl. Opp.) at 2; Nicholas Greene v. Select Funding, LLC, No. 2:20-cv-7333, 2021 WL 4926495, at \*5 (C.D. Cal. Feb. 5, 2021) (dismissing plaintiff's complaint because he "only alleged one telephone solicitation" because "more than one telephone solicitation is needed to trigger a violation" and the plaintiff failed to allege "the content of the other calls that would allow the Court to reasonably infer that these other calls were solicitations.") Even assuming the accuracy of the screenshot of the call log included in Plaintiff's Complaint, Gillam did not actually engage with any of RFC's purported representatives until the August 4, 2021 call. See Compl. ¶ 26. Specifically, the call log shows, with the exception of the August 4, 2021 call, that the other calls were "blocked," "missed call[s]" or "declined call[s]." As such, Plaintiff has not plausibly alleged that these prior calls were "telephone solicitation[s]" under Section 227(c)(5). See Greene, 2021 WL 4926495, at \*5. As Plaintiff has failed to plausibly allege this element of his claim, the Court grants Defendant's motion to dismiss.

**2. Plaintiff Does Not Plausibly Allege That He is a "Residential Telephone Subscriber"**

**\*4** On its face, Section 227(c) applies only to "residential" telephone subscribers. See 47 U.S.C. § 227(c)(5); 47 C.F.R. § 64.1200(c). While multiple federal courts have found that a cellular telephone subscriber may satisfy Section

Case 1:26-cv-00659-KM Document 7-3 Filed 05/19/26 Page 34 of 80

Gillam v. Reliance First Capital, LLC, Not Reported in Fed. Supp. (2023)

227(c)'s "residential telephone subscriber" element, a plaintiff must plausibly allege facts establishing that his cellular telephone is actually used for "residential purposes." See, e.g., Marks v. Unique Lifestyle Vacations, LLC, No. 20-cv-4915, 2021 WL 5495778, at *3 (E.D. Pa. Nov. 22, 2021) ("A plaintiff may provide specific facts to support his allegation that his cell phone is residential under the TCPA. However, it is not required that a plaintiff provide extensive detail to state a plausible claim as to the residential character of his cell phone."); Strange v. ABC Co., No. 19-cv-1361, 2021 WL 798870, at *4 (W.D. La. Mar. 1, 2021) (citing Cunningham v. McDonald, No. 15-cv-215, 2018 WL 6737418, *2 (M.D. Tenn. Nov. 5, 2018) ("While a person utilizing a cellular phone may fall within the definition of a 'residential telephone subscriber' under the act, Plaintiff's pleadings allege only that calls were made to his cellular phone and he has pled no facts or offered evidence sufficient for the court to draw the conclusion that he has stated a cause of action under subsection (c)(5)")). A plaintiff's failure to do so renders his Section 227(c)(5) claim(s) vulnerable to dismissal. See Kemen v. Cincinnati Bell Tel. Co. LLC, No. 22-cv-152, 2023 WL 361136, at *5 (S.D. Ohio Jan. 23, 2023) (finding a TCPA claim inadequately pled without allegations showing residential use); Hicks v. Alarm.com, Inc., No. 20-cv-532, 2020 WL 9261758, at *5 (E.D. Va. Aug. 6, 2020) (same).

Based on the above caselaw, the Court finds that Gillam has failed to sufficiently plead that he was, at the time of the calls in question, a "residential telephone subscriber." Here, Plaintiff's Complaint contains conclusory allegations that his cell phone number was not "associated with a business, has never been held out by Plaintiff to the public, and is primarily for personal use," he fails to specifically allege any facts from which the Court could infer that the phone number is used for residential purposes. (See Compl. ¶ 24). This deficiency is similar to the plaintiff's pleading miscues in Hicks, where that court dismissed the plaintiff's Section 227(c) claim based on the plaintiff's failure to articulate – despite his allegations that the subject cell phone number was "not associated with a business" and was "for personal use" – any factual support for the "residential telephone subscriber" element of his Section 227(c) claim. Hicks, 2020 WL 9261758, at *5. The Court similarly finds that Gillam has failed to sufficiently plead this additional element of his Section 227(c) claim. Accordingly, the Court grants Defendant's motion to dismiss. [5]

## CONCLUSION

For the foregoing reasons, the Court finds that Plaintiff has failed to allege sufficient facts to support his one-count TCPA Complaint. The Court grants Defendant's motion to dismiss and dismisses Plaintiff's Complaint with prejudice.

**SO ORDERED.**

**All Citations**

Not Reported in Fed. Supp., 2023 WL 2163775

---

**Footnotes**

1     Plaintiff does not include his cell phone number in the Complaint or his opposition to Defendant's motion to dismiss.

2     The National DNC Registry allows consumers to register their telephone numbers and thereby indicate their desire not to receive telephone solicitations at those numbers. See Compl. ¶ 6; 47 C.F.R. § 64.1200(c)(2).

3     Gillam seeks to certify the "Do Not Call Registry Class" ("DNC Registry Class"), consisting of "[a]ll persons in the United States who from four years prior to the filing of this action through trial (1) Defendant (or an agent acting on behalf of the Defendant) called more than one time, (2) within any 12-month period, (3) where the person's telephone number had been listed on the National Do Not Call Registry for at least thirty days, (4) for substantially the same reason Defendant called Plaintiff." Compl. ¶ 31.

4     Plaintiff's reliance on paragraphs 19-21 of the Complaint is misplaced. Specifically, those paragraphs contain general allegations about the class and do not specifically address Plaintiff.

5     Based on the Court's above findings and dismissal of Plaintiff's Complaint with prejudice, it is unnecessary to address Defendant's motion to strike certain portions of the Complaint, which the Court denies as moot. See Kemen, 2023 WL 361136, at *5; Smith v. Direct Bldg Supplies, LLC, No. 20-cv-3583, 2021 WL 4623275, at *4 (E.D. Pa. Oct. 7, 2021).

---

**End of Document**         © 2026 Thomson Reuters. No claim to original U.S. Government Works.

Case 1:26-cv-00659-KM    Document 7-3    Filed 05/19/26    Page 36 of 80

2016 WL 3539137
Only the Westlaw citation is currently available.
United States District Court, W.D. Pennsylvania.

Jeffrey Frank KLEIN, Plaintiff,

v.

JUST ENERGY GROUP, INC., et al., Defendants.

Civil Action No. 14-1050
|
Signed 06/29/2016

**Attorneys and Law Firms**

Adam G. Vahanian, The Chiurazzi Law Group, Pittsburgh, PA, for Plaintiff.

Erin Lucas Hamilton, Buchanan Ingersoll & Rooney, Thomas E. Sanchez, Louis A. Depaul, Eckert Seamans Cherin & Mellott, LLC, Scott A. Millhouse, Meyer, Darragh, Buckler, Bebenek & Eck, Pittsburgh, PA, Daniel R. Wilson, Neuens Mitchell Bonds, PLLC, Tulsa, OK, for Defendants.

## <u>MEMORANDUM OPINION</u>

CONTI, Chief District Judge

## I. <u>INTRODUCTION</u>

**\*1** Pending before the court is a motion for summary judgment (ECF No. 57) filed on behalf of defendants Just Energy Group, Inc., Just Energy Limited, Just Energy Pennsylvania Corp., and Just Energy Ohio, LLC (collectively the "Just Energy Defendants"). This court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1367. In his second amended complaint (ECF No. 51), plaintiff Jeffrey Frank Klein ("Klein") claims that numerous telephone calls made to him by or on behalf of the Just Energy Defendants violated the Telephone Consumer Protection Act of 1991 ("TCPA"), 47 U.S.C. § 227 *et seq.*, constituted negligence and invaded his privacy. Specifically, Klein sues the Just Energy Defendants for a) violation of the TCPA (Count I), b) common law invasion of privacy under intrusion upon seclusion theory (Count II), c) negligence (Count IV), and d) "vicarious liability" for the negligence of defendants Collectcents, Inc. ("Collectcents") and Data Exchange, Inc. ("Data Exchange") as alleged against defendants Collectcents and Data Exchange under other counts (Count VI).[1] The Just Energy Defendants also filed a brief in support of their motion, (ECF No. 58), their concise statement of material facts, (ECF No. 59), an appendix, (ECF No. 60), a reply brief, (ECF No. 66), and a reply concise statement of material facts, (ECF No. 67). Klein filed a response in opposition (ECF No. 62), containing a "statement of undisputed facts" that appears also to identify certain disputed facts. (ECF No. 62 at 3). In accordance with this court's procedures, the parties filed a Combined Concise Statement of Material Facts ("CCSMF"). (ECF No. 68). Their Combined Concise Statement of Material Facts indicates uncontested facts, disputes about certain facts and disputes about whether the response of Klein to certain of the facts asserted by Just Energy Defendants in their Concise Statement of Material Facts is adequate to dispute those facts under the Local Rules of the United States District Court for the Western District of Pennsylvania and the Chambers' Rule of this court. See e.g., (ECF No. 68 at 6 (citing LCvR 56.C.1.a and this court's Chambers' Rule 3.F.c.ii)). This matter is fully briefed and ripe for disposition. As more fully explained below, the motion for summary judgment will be granted as to Count I because there is insufficient evidence in the record to connect the Just Energy Defendants to the plaintiff's federal claim under the TCPA. The motion for summary judgment also will be granted on the remaining state law claims against the Just Energy Defendants on the same grounds.

## II. PROCEDURAL BACKGROUND

On August 13, 2014, this court granted plaintiff, who was proceeding *pro se* at that time, leave to proceed *in forma pauperis*. The Just Energy Defendants responded to the *pro se* complaint by filing a partial motion to dismiss the complaint, seeking dismissal of Count II for common law private nuisance under Pennsylvania law and Count IV for negligence undr Pennsylvania law for failure to state a claim. (ECF No. 17). By order dated May 27, 2015, this court granted Just Energy Defendants' motion to dismiss the counts in the original complaint for private nuisance and negligence without prejudice, holding in its Memorandum Opinion that Pennsylvania does not recognize private nuisance claims outside the land context, and that, with respect to the negligence claim, Klein failed to set forth sufficient factual allegations to invoke any of the four scenarios under which a claim for negligent infliction of emotional distress can proceed under Pennsylvania law and also failed to allege the required physical manifestation of his emotional distress. (ECF Nos. 21 at 8-9; 22). In the May 27, 2015 order, this court granted Klein leave to file an amended complaint. Klein, who was still proceeding *pro se*, filed the amended complaint on June 12, 2015. (ECF No. 24).

**\*2** On November 16, 2015, counsel for Klein entered his appearance and Klein no longer proceeded *pro se.* (ECF No. 42). On January 20, 2016, with leave of court, Klein through his counsel filed his second amended complaint and added Collectcents and Data Exchange as defendants to this action. (ECF No. 51). The Just Energy Defendants filed their answer to the second amended complaint on January 26, 2016. (ECF No. 52). After filing that answer and concluding discovery, on February 26, 2016, the Just Energy Defendants filed the present motion for summary judgment. (ECF No. 57).

## III. FACTUAL BACKGROUND [2]

At the outset, the court is constrained to address certain issues about the parties' filings with respect to their required statements of material facts. The Just Energy Defendants filed their Concise Statement of Material Facts in accordance with LCvR 56.B.1. (ECF No. 59). Klein did not file a separate concise statement. Instead, Klein responded by filing his opposition containing a section entitled "Statement of Undisputed Facts," in which he indicates that he does not dispute Fact Nos. 1-21, 28, 29, 34, 35, 37, 40, 41 and 44. (ECF No. 62 at 7-8). In that section, he also indicates certain facts that he does not admit in one fashion or another. With respect to Fact Nos. 22, 23, 31, and 38, he asserts that he disputes the "independent contractor" characterization with respect to certain third parties "to the extent it implies lack of agency." (ECF No. 62 at 7-8). With respect to Fact Nos. 24 and 25, he indicates that he admits those facts to the extent the statement is that the Just Energy Defendants "did not physically place the calls," but argues that the calls were placed on the Just Energy Defendants' behalf and for their benefit with "callers identifying themselves as 'Just Energy' " on the call. (ECF No. 62 at 7). Klein asserts that Fact Nos. 26, 27, 30, 33, 36, 39, 40, 43, and 45, are neither admitted nor denied, but rather he "lacks knowledge as to the truth of this allegation." (ECF No. 62 at 7-8). Regarding Fact Nos. 45-51, he does not indicate that he adopts those facts or disputes those facts except to direct the court to section 3 of his opposition regarding his argument that the TCPA applies to calls made to his free Google voice over Internet Protocol ("VoIP") service number ending in 0702 ("Klein's VoIP number") and to restate his allegation that the calls to his VoIP number were charged to him based on his assertion that they were sent from his VoIP service to the Verizon Wireless phone account for which he pays. (ECF No. 62 at 8). Regarding Fact No. 45, Klein "neither admits nor denies" that fact and directs the court to section 3 of his opposition, addressing that fact number twice in response.

Given the manner in which Klein provided his opposition, a discussion of the applicable local rules is appropriate. Local Civil Rule of Court 56.B.1 requires the party moving for summary judgment to file a separate concise statement of material facts and requires that the party cite "to a particular pleading, deposition, answer to interrogatory, admission on file or other part of the record supporting the party's statement, acceptance, or denial of the material fact." LCvR 56.B.1. In further support, the moving party must file an appendix with the documents supporting that party's concise statement of material facts. LCvR 56.B.3. The opposing party also is to provide a separately filed concise statement admitting or denying the facts in the moving party's concise statement, LCvR 56.C.1.a, setting forth the basis for a denial of the moving party's concise statement with reference to the record, LCvR 56.C.1.b, and providing any additional material facts that are necessary for the court's ruling on the motion. LCvR 56.C.1.c. This court's Chambers' Rule 3.F.c.ii requires that the opposing party file a separate document in response to the moving party's concise statement indicating which facts are disputed and citing and attaching the evidence in support of any disputed facts. Local Civil Rule of Court 56.E specifically provides that the facts claimed to be undisputed and material

Case 1:26-cv-00659-KM    Document 7-3    Filed 05/19/26    Page 38 of 80

Klein v. Just Energy Group, Inc., Not Reported in Fed. Supp. (2016)

in a party's concise statement "will for the purpose of deciding the motion for summary judgment be deemed admitted unless specifically denied or otherwise controverted by a separate concise statement of the opposing party." LCvR 56.E.

**\*3** With respect to the Just Energy Defendants' concise statement of material facts, Klein's responses that Fact Nos. 26, 27, 30, 33, 36, 39, 40, 43, and 45 are neither admitted nor denied are wholly inadequate under the local rules. The Just Energy Defendants supported their concise statement with cites to the record and provided record materials in their Appendix, (ECF No. 60), in compliance with Local Civil Rule of Court 56.B.1 and 56.B.3. Under these circumstances, for purposes of the present motion for summary judgment Fact Nos. 26, 27, 30, 33, 36, 39, 40, 43 and 45 will be deemed admitted. With respect to the disputes regarding the distinction between the calls being physically placed by any of the Just Energy Defendants and the characterization of certain entities as independent contractors, the court will further address these matters.

### A. Just Energy Defendants, Other Just Energy Entities and Master Services Agreements

Defendant Just Energy Group, Inc., a Canadian corporation, is a natural gas and electricity retailer. CCSMF ¶¶ 14, 18. Defendant Just Energy Group, Inc. has several present and former affiliated entities, CCSMF ¶¶ 19, 20, 21, including defendants Just Energy Limited, Just Energy Pennsylvania Corp., and Just Energy Ohio, LLC. CCSMF ¶ 18. Defendant Just Energy Ohio is a former affiliate and is no longer in existence, having dissolved effective in 2010 under the authority of the Texas Comptroller. CCSMF ¶ 17; (ECF No. 60-2). Just Energy Corporation, which is not a defendant in this lawsuit, was formerly known as Ontario Energy Savings Corporation and also is an affiliate of Defendant Just Energy Group, Inc. CCSMF ¶ 21. Commerce Energy, Inc. d/b/a Just Energy, also not a defendant, likewise is an affiliate of Defendant Just Energy Group, Inc. CCSMF ¶ 20.

Just Energy Corporation, when it was known as Ontario Energy Savings Corporation, entered into a Master Collection Agency Services Agreement dated September 10, 2008 ("collection MSA") with defendant Collectcents operating as Credit Bureau of Canada Collections. CCSMF ¶ 37. Defendant Collectcents provides debt collection services to Commerce Energy, Inc. d/b/a Just Energy for its customer accounts. CCSMF ¶ 37. Just Energy Corporation also entered into a Master Services Agreement effective July 21, 2009 with Quick Response Outsourcing, LLC ("QRO") under which QRO provided customer verification and information services to Just Energy Corporation and its affiliates ("customer verification MSA"). CCSMF ¶¶ 27-29.

### B. Account of P.S. [3] and Customer Call and Verification Process

Cedric Frisco ("Frisco"), who worked as an independent contractor [4] for Just Energy Marketing Corporation, which is not a defendant here, signed up P.S. as a customer of Commerce Energy, Inc. d/b/a Just Energy. CCSMF ¶¶ 26, 43. As part of the process of signing up P.S. as a customer, Frisco provided to QRO the correct phone number for P.S. during a verification call with QRO. CCSMF ¶¶ 27, 29, 30, 32, 33. It is alleged by Klein, and apparently not challenged in the present summary judgment motion, that defendant Data Exchange is the successor in interest to QRO (referred to collectively as "Data Exchange/QRO" for present purposes), [5] (ECF No. 51 ¶ 28), the third-party verification services company that operated a verification call center. CCSMF ¶¶ 27, 29, 30, 32, 33. The individual from QRO participating in the verification call with Frisco regarding the Commerce Energy, Inc. d/b/a Just Energy account of P.S. incorrectly recorded the phone number for P.S. CCSMF ¶¶ 32, 33, 34. The number recorded was instead Klein's VoIP number ending in 0702, which was assigned to him for his Google VoIP service. CCSMF ¶¶ 34, 35; (ECF No. 51 ¶¶ 22, 23). Klein's Google VoIP service is a free service. CCSMF ¶ 45.

**\*4** None of the Just Energy Defendants directly place calls to consumers for the purpose of verifying customer information when marketing energy to customers or for the purpose of debt collection on delinquent accounts. CCSMF ¶¶ 22-25. The Just Energy Defendants and all of defendant Just Energy Group, Inc.'s affiliates and subsidiaries use third parties, such as defendant Data Exchange/QRO, to verify customer information and use third parties, such as defendant Collectcents, for the purpose of debt collection on delinquent accounts. CCSMF ¶¶ 22-25. [6]

Klein v. Just Energy Group, Inc., Not Reported in Fed. Supp. (2016)

Case 1:26-cv-00659-KM    Document 7-3    Filed 05/19/26    Page 39 of 80

### C. Voluminous Phone Calls to Klein's VoIP number

In September 2013, the account of P.S. with Commerce Energy, Inc. d/b/a Just Energy became delinquent. CCSMF ¶ 36. Commerce Energy, Inc. d/b/a Just Energy utilizes Collectcents for debt collection services with respect to delinquent accounts and Collectcents performed all debt collection activities related to the account of P.S, pursuant to the collection MSA. CCSMF ¶¶ 37, 40. Because Klein's VoIP number had been erroneously recorded as the number for P.S., Commerce Energy, Inc. d/b/a Just Energy provided Klein's VoIP number to Collectcents for the purpose of collecting on the amount owing on the account of P.S. CCSMF ¶ 39. Collectcents made the debt collection calls that were related to the account of P.S., but placing the calls to Klein's VoIP number. CCSMF ¶ 41. Klein claims that the offending calls came from a number ending in 7575 or a blocked number as indicated on his caller identification. (ECF No. 51 ¶ 46). The number ending in 7575 is neither associated with the Just Energy Defendants nor any affiliates or subsidiaries of defendant Just Energy Group, Inc. CCSMF ¶ 43).

Klein contends that over 200 calls were made to Klein's VoIP number without his permission using an autodialer or pre-recorded voice and were made to attempt to collect a debt of P.S. (ECF No. 51 ¶¶ 25, 37, 43, 44). The Just Energy Defendants indicate that they dispute the number and timing of the alleged 200 calls, but admit that the actual number of calls is immaterial for purposes of their present motion. (ECF No. 57 at 1 ¶ 2). As acknowledged by the Just Energy Defendants, the records of Collectcents readily support a finding of at least 90 calls. (ECF Nos. 58 at 12; 60-6). There appears to be no dispute that numerous [7] calls were made to Klein's VoIP number.

## IV. SUMMARY JUDGMENT STANDARD

Summary judgment may only be granted where the moving party shows that there is no genuine dispute as to any material fact, and that judgment as a matter of law is warranted. FED. R. CIV. P. 56(a). Pursuant to Federal Rule of Civil Procedure 56, the court must enter summary judgment against a party who fails to make a showing sufficient to establish an element essential to his or her case, and on which he or she will bear the burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). In evaluating the evidence, the court must interpret the facts in the light most favorable to the nonmoving party, drawing all reasonable inferences in his or her favor. Watson v. Abington Twp., 478 F.3d 144, 147 (3d Cir. 2007).

**\*5** The burden on a motion for summary judgment is initially on the moving party to demonstrate that the evidence contained in the record does not create a genuine issue of material fact. Conoshenti v. Pub. Serv. Elec. & Gas Co., 364 F.3d 135, 140 (3d Cir. 2004); Aman v. Cort Furniture Rental Corp., 85 F.3d 1074, 1080 (3d Cir. 1996). A dispute is "genuine" if the evidence is such that a reasonable trier of fact could render a finding in favor of the nonmoving party. McGreevy v. Stroup, 413 F.3d 359, 363 (3d Cir. 2005). Where the nonmoving party will bear the burden of proof at trial, the moving party may meet its burden by showing that the admissible evidence contained in the record would be insufficient to carry the nonmoving party's burden of proof or that there is an absence of evidence to support the nonmoving party's case. Celotex Corp., 477 U.S. at 322, 325; Marten v. Godwin, 499 F.3d 290, 295 (3d Cir. 2007).

Once the movant meets its burden, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial" and to present sufficient evidence demonstrating that there is indeed a genuine and material factual dispute for a jury to decide. Fed. R. Civ. P. 56(e); see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986); Celotex, 477 U.S. at 323–25. The nonmoving party must go beyond his or her pleadings and designate specific facts by the use of affidavits, depositions, admissions or answers to interrogatories showing that there is a genuine issue of material fact for trial. Id. at 324. The nonmoving party cannot defeat a well-supported motion for summary judgment by simply reasserting

unsupported factual allegations contained in his or her pleadings. Williams v. Borough of West Chester, 891 F.2d 458, 460 (3d Cir. 1989).

One of the principal purposes of summary judgment is to isolate and dispose of factually unsupported claims or defenses. Celotex, 477 U.S. at 323–24. The summary judgment inquiry asks whether there is a need for trial—"whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Liberty Lobby, 477 U.S. at 250. In ruling on a motion for summary judgment, the court's function is not to weigh the evidence, make credibility determinations or to determine the truth of the matter, but only to determine whether the evidence of record is such that a reasonable jury could return a verdict for the nonmoving party. Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150–51 (2000) (citing decisions); Liberty Lobby, 477 U.S. at 248–49; Simpson v. Kay Jewelers, Div. of Sterling, Inc., 142 F.3d 639, 643 n. 3 (3d Cir. 1998). The mere existence of a factual dispute, however, will not necessarily defeat a motion for summary judgment. Only a dispute over a material fact—that is, a fact that would affect the outcome of the suit under the governing substantive law—will preclude the entry of summary judgment. Liberty Lobby, 477 U.S. at 248.

A defendant who moves for summary judgment is not required to refute every essential element of the plaintiff's claim; rather, the defendant must only point out the absence or insufficiency of plaintiff's evidence offered in support of one or more those elements. Celotex, 477 U.S. at 322–23. If the evidence the nonmovant produces is "merely colorable, or is not significantly probative," the moving party is entitled to judgment as a matter of law. Liberty Lobby, 477 U.S. at 249. The nonmoving party must "do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). To survive summary judgment, the nonmoving party must "make a showing sufficient to establish the existence of [every challenged] element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322. Furthermore, "[w]hen opposing summary judgment, the non-movant may not rest upon mere allegations, but rather must 'identify those facts of record which would contradict the facts identified by the movant.'" Corliss v. Varner, 247 Fed.Appx. 353, 354 (3d Cir. 2007) (quoting Port Auth. of N.Y. and N.J. v. Affiliated FM Ins. Co., 311 F.3d 226, 233 (3d Cir. 2002)). Inferences based upon speculation or conjecture do not create a material factual dispute sufficient to defeat a motion for summary judgment. Robertson v. Allied Signal, Inc., 914 F.2d 360, 382 n.12 (3d Cir. 1990).

## V. DISCUSSION

**\*6** Just Energy Defendants argue that all of Klein's claims against them fail because: 1) he cannot show as required for his TCPA claim that he is charged for his VoIP service; 2) there is no liability of the Just Energy Defendants for the calls, either directly or vicariously, where they did not make the calls to Klein's VoIP number and do not otherwise have sufficient connection to the challenged calls; 3) he cannot show that there was an intentional invasion of his privacy by the Just Energy Defendants; and 4) he cannot show a duty owed to him by or that was breached by the Just Energy Defendants and cannot sufficiently establish damages caused by any such breach. (ECF No. 55 at 10, 22). For the most part, the dispute here centers on two matters: 1) whether under the TCPA's "charged call provision" a call to Klein's VoIP number constitutes a call "to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call," 47 U.S.C. § 227(b)(1)(A)(iii); and 2) whether any of the Just Energy Defendants had any connection to P.S. or the calls made to Klein.

### A. TCPA Claim (Count I)

Case 1:26-cv-00659-KM    Document 7-3    Filed 05/19/26    Page 41 of 80

Klein v. Just Energy Group, Inc., Not Reported in Fed. Supp. (2016)

Klein seeks to hold the Just Energy Defendants liable under the TCPA for violation of ⚑ § 227(b)(1)(A)(iii). (ECF Nos. 51 ¶ 42; 62 at 2, 12). The TCPA provides in pertinent part:

**(b) Restrictions on use of automated telephone equipment**

(1) Prohibitions. **It shall be unlawful** for any person within the United States, or any person outside the United States if the recipient is within the United States—

**(A) to make any call**(other than a call made for emergency purposes or made with the prior express consent of the called party) **using any automatic telephone dialing system or an artificial or prerecorded voice**—

(i) to any emergency telephone line ...;

(ii) to the telephone line of any guest room or patient room of a hospital, health care facility, elderly home, or similar establishment; or

(iii) **to any telephone number assigned to** a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or **any service for which the called party is charged for the call** ....

⚑ 47 U.S.C. § 227(b)(1) (emphasis added).

The TCPA provides a private right of action for violation of ⚑ 47 U.S.C. § 227(b)(1) as follows:

(3) Private right of action. A person or entity may, if otherwise permitted by the laws or rules of court of a State, bring in an appropriate court of that State—

(A) an action based on a violation of this subsection or the regulations prescribed under this subsection to enjoin such violation,

(B) an action to recover for actual monetary loss from such a violation, or to receive $500 in damages for each such violation, whichever is greater, or (C) both such actions.

If the court finds that the defendant willfully or knowingly violated this subsection or the regulations prescribed under this subsection, the court may, in its discretion, increase the amount of the award to an amount equal to not more than 3 times the amount available under subparagraph (B) of this paragraph.

⚑ 47 U.S.C. § 227(b)(3).

⚑ 47 U.S.C. § 227(c) relates to residential telephone subscribers and governs calls to the National Do-Not-Call Registry, *see* ⚑ 47 U.S.C. § 227(c)(1) (authorizing the FCC to initiate rulemaking concerning the privacy rights of residential telephone subscribers). ⚑ Section 227(c)(5) provides for a private right of action for ⚑ § 227(c) violations where a person has received more than one telephone call "by or on behalf of" the same entity in violation of ⚑ § 227(c). ⚑ 47 U.S.C. § 227(c)(5).

To prevent evasion of the TCPA's call prohibitions, the Federal Communications Commission ("FCC") has treated calls made by a third party on behalf of a company as if the company itself made the call, whether in relation to collection and solicitations calls subject to ⚑ § 227(b) or further rules governing solicitation calls addressed in ⚑ § 227(c). Indeed, with respect to collection calls under ⚑ § 227(b)(1)(A)(iii) made to wireless numbers, the FCC explained:

To ensure that creditors and debt collectors call only those consumers who have consented to receive autodialed and prerecorded message calls, we conclude that the creditor should be responsible for demonstrating that the consumer provided prior express consent. The creditors are in the best position to have records kept in the usual course of business showing such consent, such as purchase agreements, sales slips, and credit applications.... [A] creditor on whose behalf an autodialed or prerecorded message call is made to a wireless number bears the responsibility for any violation of the Commission's rules. Calls placed by a third party collector on behalf of that creditor are treated as if the creditor itself placed the call.

**\*7** In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991: Request of ACA International for Clarification and Declaratory Ruling, 23 FCC Rcd. 559, 564 ¶ 10 (2008) (footnotes omitted). In its ruling, the FCC noted that the prohibitions on the use of autodialers in § 227(b)(1)(A)(iii) apply regardless of the content of the call, as opposed to the separate restrictions of § 227(c) on "telephone solicitations" that do not apply to calls solely for the purpose of collecting a debt. 23 FCC Rcd. at 565 ¶ 11.

As a remedial consumer protection statute, Gager v. Dell Financial Services, LLC, 727 F.3d 265, 271 (3d Cir. 2013), the TCPA's language is to be construed "broadly to effect its purpose." Lesher v. Law Offices of Mitchell N. Kay, P.C., 650 F.3d 993, 997 (3d Cir. 2011). If proposed interpretations of the TCPA are equally plausible, the scales tip in favor of the consumer. Leyse v. Bank of America Nat. Ass'n, 804 F.3d 316, 327 (3d Cir. 2015).

Regarding the TCPA, the Supreme Court has explained:

Voluminous consumer complaints about abuses of telephone technology—for example, computerized calls to private homes—prompted Congress to pass the Telephone Consumer Protection Act of 1991 (TCPA or Act), 47 U.S.C. § 227....The Act bans certain practices invasive of privacy and directs the Federal Communications Commission (FCC or Commission) to prescribe implementing regulations.

Mims v. Arrow Fin. Servs., LLC, ___ U.S. ____, 132 S. Ct. 740, 744 (2012). The Court of Appeals for the Third Circuit observed that "Congress passed the TCPA to protect individual consumers from receiving intrusive and unwanted calls." Gager, 727 F.3d at 268 (citations omitted).

The legislative history of the TCPA refers to prerecorded calls as "an intrusive invasion of privacy" and indicates that the TCPA is aimed at protecting individuals' privacy rights while balancing legitimate telemarketing practices. Leyse, 804 F.3d at 325-26 (citing Telephone Consumer Protection Act of 1991, Pub.L. No. 102–243, § 2(5)-(6), (10), 105 Stat. 2394 (note following 47 U.S.C. § 227); § 2(9), (12)-(13)). Debt collection calls as well as telemarking calls are within the TCPA's purview. Gager, 727 F.3d at 273; Fenescey v. Diversified Consultants, Inc., Civ. Act. No. 14-347, 2014 WL 252651, at \*2 (M.D. Pa. June 4, 2014)No. 14-347, 2014 WL 252651, at \*2 (M.D. Pa. June 4, 2014); Forrest v. Genpact Services, LLC, 962 F. Supp. 2d 734, 736 (M.D. Pa. 2013) (holding plaintiff stated a claim under both the TCPA and the FDCPA for excessive debt collection calls).

Case 1:26-cv-00659-KM    Document 7-3    Filed 05/19/26    Page 43 of 80

Klein v. Just Energy Group, Inc., Not Reported in Fed. Supp. (2016)

For purposes of the TCPA, it does not matter that P.S. was the intended recipient of the calls. In Leyse, the Court of Appeals for the Third Circuit held that the individual who answers the robocall [8] has standing to sue. 804 F.3d at 327. The aggrieved persons under the TCPA's provisions include the actual recipient of the telephone call, 804 F.3d at 325-326, because "[i]t is the actual recipient, intended or not, who suffers the nuisance and invasion of privacy." Leyse, 804 F.3d at 326.

VoIP service, like the service used by Klein, is provided over broadband connection, cable modem, fiber to the premises (FTTP), digital subscriber line (DSL) or other wireline, and fixed wireless or other connections. FCC Releases New Local Telephone Competition Data: Third Collection to Comprehensively Include Interconnected VoIP, 2011 WL 97677, at *1-2 (FCC Jan. 11, 2011). VoIP service is becoming more common. Id.

> **\*8**  Interconnected VoIP service represents an important and rapidly growing part of the U.S. voice service market. [It] enables voice communications over a broadband connection and allows users both to receive calls from, and place calls to, the public switched telephone network, like traditional phone service. Providers of the service include companies like Vonage as well as cable and telephone companies that own their own networks.

Id.

There is no dispute that the challenged calls were made to Klein's VoIP number. The Just Energy Defendants, however, dispute that any of them can be held liable for the calls.

### 1. Direct Liability

As a threshold matter, the court considers the Just Energy Defendants' argument that they are not liable because they are not sufficiently connected to the challenged calls. They argue that they are not directly liable under the TCPA for any of the challenged calls because they did not make any of the calls and the prohibition of § 227(b)(1)(A)(iii) by its express language provides for the liability of the party making the call. (ECF No. 58 at 16).

> The plain language of section 227(b)(1)(A)(iii) imposes liability upon persons that "make" a telephone call or text. 47 U.S.C. § 227(b)(1)(A)(iii).... [M]any of the courts that have considered this provision have held that the verb "make" imposes civil liability only on the party that places the call or text.

Melito v. American Eagle Outfitters, Inc., Civ. Act. Nos. 14-02240, 15-39, and 15-2370, 2015 WL 7736547, at *4 (S.D. N.Y. Nov. 30, 2015) (summarizing decisions).

The court agrees with the Just Energy Defendants. The uncontroverted evidence shows that the calls were not made by or on behalf of the Just Energy Defendants and instead were made by Collectcents on behalf of Commerce Energy, Inc. d/b/a Just Energy, the entity with which P.S. contracted. Thus, the calls were neither made by or on behalf of the Just Energy Defendants.

Klein argues that direct liability under the TCPA extends not only to a party on whose behalf the call is made but also extends to a party who stands to benefit from the call, citing Hartley-Culp v. Credit Management Co., Civ. Act. No. 14-282, 2014 WL 4630852 (M.D. Pa. Sept. 15, 2014). (ECF No. 62 at 11). It appears that Klein intended to cite Hartley-Culp v. Green Tree Servicing, LLC, 52 F. Supp. 3d 700, 703 (M.D. Pa. 2014) (holding TCPA imposes direct and vicarious liability on an entity on whose behalf the call is placed), as Credit Management Co. addressed bifurcation issues. Despite Klein's representation, neither Credit Management Co. nor Green Tree Servicing, LLC suggest the broad sweeping extension of liability, whether direct or vicarious, to parties merely because they "stand to benefit" from the call. The FCC expressed in In the Matter of the Joint Petition filed by Dish Network, LLC, 28 FCC Rcd. 6574 (2013) (Declaratory Ruling): "in sum, under our current rules and administrative precedent interpreting and implementing sections 227(b) and 227(c), we do not think that an action taken for the benefit of a seller by a third-party retailer, without more, is sufficient to trigger the liability of a seller under ... either section 227(c) or section 227(b)." 28 FCC Rcd. at 6593 ¶ 47. The court is persuaded that a party is not liable merely because they stand to benefit from the call. Even if that determination is incorrect, Klein still would not prevail because he did not point to evidence sufficient for a reasonable jury to find that the Just Energy Defendants stood to benefit.

**\*9** Accordingly, the Just Energy Defendants are entitled to summary judgment on the claim for direct violation of the TCPA because the calls were not made by or on behalf of them.

### 2. Vicarious Liability under the TCPA

Klein relies on various FCC rulings to assert that the Just Energy Defendants are vicariously liable for violations of the TCPA under an agency theory, citing to an FCC Ruling addressing the liability of third-party telemarketers. According to the FCC, federal common law agency principles providing for vicarious liability for calls initiated by a third party advance the goals of the TCPA. In the Matter of the Joint Petition Filed by Dish Network, LLC., 28 FCC Rcd at 6587 ¶ 35. The United States Supreme Court in Campbell-Ewald Co. v. Gomez held that a party may be liable under the TCPA in accordance with tort-related vicarious liability rules. Campbell-Ewald Co. v. Gomez, 136 S.Ct. 663, 674 (2016) (the Court had no cause to question the FCC's ruling that vicarious liability applies under the TCPA).

"[W]hen Congress creates a tort action, it legislates against a legal background of ordinary tort-related vicarious liability rules and consequently intends its legislation to incorporate those rules." Meyer v. Holley, 537 U.S. 280, 285, 123 S.Ct. 824, 828 (2003). "It is well established that traditional vicarious liability rules ordinarily make principals or employers vicariously liable for acts of their agents or employees in the scope of their authority or employment." 537 U.S. at 285, 123 S.Ct. at 829. Thus, a seller or creditor cannot shield itself from liability simply by outsourcing telemarketing or collection calls to a third party. Gomez v. Campbell-Ewald Co., 768 F.3d 871, 877 (9th Cir. 2014), aff'd 136 S.Ct. 663 (2016). "[A] defendant may be held vicariously liable for TCPA violations where the plaintiff establishes an agency relationship, as defined by federal common law, between the defendant and a third-party caller." Gomez, 768 F.3d at 879. Vicarious liability under the TCPA may be established under a broad range of agency theories, including formal agency, apparent authority and ratification. 28 FCC Rcd. at 6582 ¶ 24, 6584 ¶ 28, 6588 ¶37. The relationship between the parties is paramount in determining whether there is vicarious liability. Gomez, 768 F.3d at 878.

#### a) Independent Contractor Status

Case 1:26-cv-00659-KM    Document 7-3    Filed 05/19/26    Page 45 of 80

Klein v. Just Energy Group, Inc., Not Reported in Fed. Supp. (2016)

In their concise statement and in the parties' Combined Concise Statement of Material Facts, the Just Energy Defendants refer to the third parties used to verify customer information and for debt collection purposes as "independent contractors." (ECF NO. 59 ¶¶ 22-25); CCSMF ¶¶ 22-25. The Just Energy Defendants argue that they cannot be held liable for the acts of independent contractors, citing Marshall v. Southeastern Pennsylvania Transp. Authority, 587 F. Supp. 258, 261-62 (E.D. Pa. 1984) ("As a general rule, the employer of an independent contractor is not liable for physical harm caused another by an act or omission of the contractor or his servants."), and Woolfolk v. Duncan, 872 F. Supp. 1381, 1392 (E.D. Pa. 1995) ("Under Pennsylvania law, an employer may be liable for the intentional torts committed by a servant, but not for those committed by an independent contractor."). (ECF No. 58 at 19). Klein disputes the use of the term "independent contractor" to refer to the status of Collectcents, Data Exchange and any entities and individuals physically placing the challenged calls or recording customer phone numbers to the extent the term's use is intended to imply a lack of agency. (ECF No. 62 at 7); CCSMF ¶¶ 22, 23, 24, 25.

**\*10** The collection MSA pursuant to which Collectcents performs debt collection services, including debt collection calls, and the verification MSA pursuant to which Data Exchange/QRO provides customer information verification services label the status of Collectcents and Data Exchange/QRO as an "independent contractor" and likewise disavow agency status. (ECF Nos. 60-4 § 10.1; 60-5 ¶¶ 1, 6). A label or express denial of status by the parties to a contract is not alone determinative and the court must consider the actual practice between the parties. Zeno v. Ford Motor Co., Inc., 480 F. Supp. 2d 825, 841-848 (W.D. Pa. 2007) (discussing no-agency clause in contract between automobile dealer and manufacturer and citing Restatement (Third) of Agency § 1.02 ("Parties' Labeling and Popular Usage Not Controlling") cmt. b. ("The parties' agreement may negatively characterize the relationship as not one of agency, or as one not intended by the parties to create a relationship of agency or employment. Although such statements are relevant to determining whether the parties consent to a relationship of agency, their presence in an agreement is not determinative and does not preclude the relevance of other indicia of consent.")); see Beckman v. Vassall-Dillworth Lincoln-Mercury, Inc., 468 A.2d 784, 790-91 (Pa. Super. 1983) (considering "no-agency" clause and lack of evidence as to express, implied or apparent authority in rejecting plaintiff's assertion of agency relationship).

In Zeno, this court denied without prejudice a motion for summary judgment with respect to the issue of agency and pursuant to Federal Rule of Civil Procedure 56(f) (now Rule 56(d)) permitted discovery requested by the nonmoving party about direction and control. 480 F. Supp. 2d at 848. The parties in Zeno submitted the sales and service agreement between the manufacturer and the dealer and also "superficially" discussed facts relevant to the inquiry about agency, but did not analyze either the agreement or the facts in the record "in sufficient detail" to enable the court to determine whether there was a triable issue of fact regarding the agency relationship. 480 F. Supp. 2d at 848. Similarly, in the case sub judice, Just Energy Defendants provide the master services agreements with the verification company and the collection company, cite the "independent contractor" and "no-agency" provisions, but do not undertake an analysis of the facts vis a vis agency principles. See Myzkowski v. Penn Stroud Hotel, Inc., 634 A.2d 622, 625 (Pa. Super. Ct. 1993) (discussing principal and agent in context of master-servant and independent contractor relationship and indicating that "the focus of our inquiry should be whether the alleged master has day-to-day control over the manner of the alleged servant's performance.").

The agreements referring to Collectcents and QRO as independent contractors, (ECF 60-4 at 11 Art. 10 § 10.1 [Master Services Agreement]; ¶60-5 at 2 ¶ 6 [Master Collection Agency Services Agreement]), also provide procedures to be followed. That evidence, however, is not sufficient for a reasonable jury to conclude that there was a master-servant relationship between the Just Energy Defendants and Collectcents or QRC. There appears to be insufficient evidence in the record of control over the manner of work. See e.g. (ECF 60-5 at 2 ¶¶ 1, 2). Whether an individual or entity is an "independent contractor" such that the party contracting with that individual or entity would not be liable for the conduct of that individual or entity or an "agent" such that the Just Energy Defendants would be liable for the conduct of its agent depends on the facts and circumstances of each case. Castle Cheese, Inc. v. MS Produce, Inc., Civ. Act. No. 04-878, 2008 WL 4372856, at \*6-9 (W.D. Pa. Sept. 19, 2008)(discussing distinction between independent contractor, principal-agent and master-servant relationship and observing that status of agent and independent contractor are not mutually exclusive). Despite their dispute, neither party attempts any analysis about the possible independent contractor status of Collectcents and Data Exchange/QRO. As a result of the moving

Case 1:26-cv-00659-KM    Document 7-3    Filed 05/19/26    Page 46 of 80

Klein v. Just Energy Group, Inc., Not Reported in Fed. Supp. (2016)

parties' failure to engage in the analysis, the court declines to accept their characterization of Collectcents and Data Exchange/ QRO as independent contractors for purposes of resolving the summary judgment motion.

### b) **Apparent Authority**

**\*11**  Klein asserts that the Just Energy Defendants are vicariously liable for the calls made by Collectcents under apparent authority jurisprudence, citing to FCC rulings under the TCPA, ⚑Richardson v. John F. Kennedy Memorial Hosp., 838 F. Supp. 979, 985 (E.D. Pa. 1993) (citing Volunteer Fire Co. v. Hilltop Oil Co., 602 A.2d 1348, 1351-52 (Pa. Super. Ct. 1992)), and the Restatement 3d of Agency § 4.01. (ECF No. 62 at 9-10). Klein points to a statement made during the calls. Klein provided twelve recorded voice mail messages, presumably representing the general nature of the offending calls. (ECF No. 62-1). [9] These voice messages appear to be messages that were left on Klein's free Google VoIP's message service. Compare (ECF No. 60-7), (ECF NO. 60-9) and (ECF No. 62-1). [10]  In the statement made on these calls, the Collectcents' caller identifies herself as "Just Energy" or "Just Energy Ohio." [11]  (ECF No. 62 at 14, 62-1). From this, Klein asserts that Collectcents had apparent authority to make the call on behalf of presumably all the Just Energy Defendants and perhaps even any entity that uses the name "Just Energy." Klein's argument stretches agency principles and ignores the authority on agency on which he relies.

In the case of telemarketing calls challenged under ⚑§ 227(b), the FCC found "illustrative" certain examples of apparent authority rendering the seller of goods or services vicariously liable for the telemarketing company's calls, stating:

> To provide guidance in this area, we find the following are illustrative examples of evidence that may demonstrate that the telemarketer is the seller's authorized representative with apparent authority to make the seller vicariously liable for the telemarketer's ⚑section 227(b) violations. For example, ... that the seller allows the outside sales entity access to information and systems that normally would be within the seller's exclusive control ... as well as the authority to use the seller's trade name, trademark and service mark may also be relevant. It may also be persuasive that the seller approved, wrote or reviewed the outside entity's telemarketing scripts.

⚑In the Matter of the Joint Petition filed by Dish Network, LLC, 28 FCC Rcd. at 6592 ¶ 46.

As stated in Richardson, "[a]n agent can bind his principal where the agent has actual or apparent authority.... Apparent authority exists *where the principal, by words or conduct, leads people with whom the alleged agent deals to believe* that the principal has granted the agent the authority he purports to exercise." ⚑838 F.Supp at 985 (internal citations omitted) (emphasis added). In Volunteer Fire Co. of New Buffalo v. Hilltop Oil Co., 602 A.2d 1348 (Pa. Super. Ct. 1992), the court commented that "[a]gency 'cannot be assumed from the mere fact that one does an act for another.' " 602 A.3d at 1351 (quoting Bross v. Varner, 48 A.2d 880, 881 (Pa. Super. Ct. 1946)). The alleged agent cannot create the agency relationship or bind the principal by the agent's acts alone.

**\*12**  Richardson involved whether a sub-agent had authority to bind a corporation. In Richardson, where the executive director/ president directed the plaintiff to deal with the sub-agent regarding the contract, and the hospital's by-laws vested the president and executive director with authority to enter contracts on the hospital's behalf. The court found under those circumstances there was sufficient evidence from which a reasonable jury could find that the executive director/president had authority to enter into a contract without hospital board approval and that the "special assistant to the president" likewise had such authority.

Klein v. Just Energy Group, Inc., Not Reported in Fed. Supp. (2016)

Case 1:26-cv-00659-KM    Document 7-3    Filed 05/19/26    Page 47 of 80

🚩Richardson, 838 F.Supp at 985-86. Thus, the parties' cross-motions for summary judgment on plaintiff's claim for breach of contract were denied.

Klein argues that because Collectcents identified itself as "Just Energy" in the phone calls, the Just Energy Defendants either must have granted Collectcents that right or were aware that Collectcents' callers identified themselves as such to call recipients and thus Collectcents had the apparent authority to make the calls on behalf of the Just Energy Defendants. (ECF No. 62 at 14). The record evidence at most might support that Collectcents had authority on behalf of Commerce Energy d/b/a Just Energy to make the calls regarding the account of P.S. The evidence does not in any way show a relationship between Collectcents and any of the Just Energy Defendants regarding the account of P.S. or show that the Just Energy Defendants by their words or conduct led Klein to believe the calls were on behalf of any of the Just Energy Defendants.

While it is true as Klein argues that this court need not conclude that a reasonable jury could find that any of the Just Energy Defendants directly communicated with Klein in order to hold them liable, it is not true that the Just Energy Defendants all can be held liable under agency theory where there is no evidence that the calls made to Klein's VoIP number by Collectcents regarding the account of P.S. were made on behalf of any Just Energy Defendant. Klein's argument and theory are insufficient to defeat the motion for summary judgment. Klein did not adduce sufficient evidence for a reasonable juror to find that Collectcents was acting as the agent of any of the Just Energy Defendants in making the calls to Klein in order for them to be held vicariously liable.

### c) Ratification

Klein asserts that the Just Energy Defendants ratified the acts of Collectcents and QRO. Klein cites to the Restatement (Third) of Agency, Ratification Defined, which provides:

(1) Ratification is the affirmance of a prior act done by another, whereby the act is given effect as if done by an agent acting with actual authority.

(2) A person ratifies an act by

(a) manifesting assent that the act shall affect the person's legal relations, or

(b) conduct that justifies a reasonable assumption that the person so consents.

RESTATEMENT (THIRD) OF AGENCY, § 4.01(b). Klein cites the portion of comment d to that section, which notes that acceptance of the benefit of the transaction ratifies the act of entering into the transaction even though the party may manifest dissent to being bound by the legal consequences of the act. RESTATEMENT (THIRD) OF AGENCY, § 4.01(b), cmt. d, ¶ 2; (ECF No. 62 at 11). Klein argues that the Just Energy Defendants can be liable by virtue of the fact that the calls *presumably* would have allowed them to collect money owed to them. (ECF No. 62 at 11).

This argument, however, ignores both the authority Klein cites and the record evidence. Comment d makes clear that "[r]atification requires an objectively or externally observable indication that a person consents that another's prior act shall affect the person's legal relations." RESTATEMENT (THIRD) OF AGENCY, § 4.01, cmt. d. Klein did not point to any observable indication that any of the Just Energy Defendants, as opposed to Commerce Energy d/b/a Just Energy, consented to the prior acts of Collectcents in calling Klein's VoIP number, much less that the Just Energy Defendants accepted or received any benefit. These calls at most would have been for the benefit of Commerce Energy d/b/a Just Energy. Klein neither provides nor points to any evidence of ratification by the Just Energy Defendants in the form of an act manifesting affirmance of the calls, manifesting assent for the calls, or justifying a reasonable assumption that any Just Energy Defendant consented. *See* RESTATEMENT 3D OF AGENCY, § 4.01. Klein's arguments involve speculation and conjecture, which are insufficient for a jury to render a verdict in his favor on this argument. *See* 🚩Robertson, 914 F.2d at 382 n.12.

Case 1:26-cv-00659-KM    Document 7-3    Filed 05/19/26    Page 48 of 80

Klein v. Just Energy Group, Inc., Not Reported in Fed. Supp. (2016)

**\*13**  In arguing vicarious liability, Klein also cites to the FCC's indication that the seller in the telemarketing context, and presumably the creditor in the debt collection context, would be in the best position to monitor and police third-party compliance with the law and liability would give the seller and creditor the best incentive to ensure compliance with the law. (ECF 62 at 8-9). Klein misses the point that in the context of this case, the named Just Energy Defendants simply are not in the position of creditor or seller vis-a-vis Klein because non-party Commerce Energy, Inc. d/b/a Just Energy is the entity with which P.S. opened the account.

### 3. Lack of Relationship of Just Energy Defendants to the Challenged Calls

The Just Energy Defendants assert that there is no evidence in the record of any relationship, agency or otherwise, between defendants Collectcents and Data Exchange/QRO on the one hand and the just Energy Defendants on the other with respect to the calls made to Klein's VoIP number or with respect to the account of P.S. (ECF No. 58 at 2, 16, 18-20). Klein does not point to any evidence regarding this matter in his opposition.

Defendants Just Energy Limited, Just Energy Ohio, LLC and Just Energy Pennsylvania Corporation are present or former affiliates of Defendant Just Energy Group, Inc. The Just Energy Defendants produced uncontroverted evidence that the entity known as Just Energy Ohio, LLC, ceased to exist prior to any of the calls at issue. Just Energy Limited is a holding company that conducts no business and there is no evidence that it engaged in any conduct related to this action. Similarly, with respect to Just Energy Pennsylvania Corp., there is no evidence that it engaged in any conduct related to this action.

Klein alleges in his second amended complaint that the Just Energy Defendants are closely-related entities, (ECF No. 51 at 6 ¶ 40), but offers no facts, basis or argument for finding liability of one for the other, or any analysis which would support a finding of liability of any Just Energy defendant. In opposition to summary judgment, Klein states in a footnote that Commerce Energy, Inc. d/b/a Just Energy is an affiliate of Just Energy Group, Inc. (ECF 62 at 5 n.1), yet there is no allegation in his second amended complaint to support that statement and Klein adduced no evidence that could establish any basis for an affiliate to cause the Just Energy Defendants to be liable for the conduct of Commerce Energy, Inc. d/b/a Just Energy with respect to the account of P.S. and the calls made to Klein's VoIP number.

The Just Energy Defendants acknowledge that "Just Energy Group, Inc. is the parent corporation of all the Just Energy entities relevant to this lawsuit." (ECF No. 57 at 8 ¶ 41). They do not indicate precisely what they mean by "Just Energy entities relevant to this lawsuit." The court will assume for the purpose of resolving this motion that they mean that Just Energy Group, Inc. is the parent corporation of the other Just Energy Defendants as well as Commerce Energy, Inc. d/b/a Just Energy. As a general principle, a parent corporation is a separate entity from its subsidiaries. Kiehl v. Action Mfg. Co., 535 A.3d 571, 575 (Pa. 1987). Klein provides no argument or evidence to justify disregarding the corporate veil, and therefore, the separate nature of the Just Energy Defendants and other Just Energy entities will be respected. See Kiehl, 535 A.3d at 575 (refusing to pierce the corporate veil); Culbreth v. Amosa (Pty) Ltd., 898 F.2d 13, 15 (3d Cir. 1990) (observing that in Pennsylvania to disregard the separate entities and pierce the corporate veil on an alter-ego theory, a party must show that controlling corporation so dominated and controlled the other's affairs that the separate existence is a mere sham).

**\*14**  In sum, the evidence adduced in this case is not sufficient to support a finding by a reasonable jury that Collectcents was acting as an agent (whether under actual authority, apparent authority or ratification theories) for any of the Just Energy Defendants in making any of the calls mistakenly placed to Klein's VoIP number instead of the number of P.S. The Just Energy Defendants are entitled to summary judgment in their favor on Klein's claim that those defendants are vicariously liability under the TCPA. Because of the court's determination that Klein failed to adduce sufficient evidence connecting the Just Energy Defendants to the challenged calls, the court need not resolve and leaves for another day whether the calls to Klein's VoIP number are subject to the TCPA under the charged call provision of 47 U.S.C. § 227(b)(1)(A)(iii) because Klein's particular VoIP service from Google is free.

Case 1:26-cv-00659-KM    Document 7-3    Filed 05/19/26    Page 49 of 80

Klein v. Just Energy Group, Inc., Not Reported in Fed. Supp. (2016)

### B. Remaining State Law Claims

Because the court grants summary judgment on the only federal claim by Klein against the Just Energy Defendants, the TCPA claim, pursuant to 28 U.S.C. § 1367(c)(3), the court must consider whether it will exercise supplemental jurisdiction over Klein's state law claims against the Just Energy Defendants for invasion of privacy, negligence and vicarious liability for the conduct of Collectcents and Data Exchange, Angeloni v. Diocese of Scranton, 135 Fed.Appx. 510, 514 (3d Cir. 2005), even though the case continues against defendants Collectcents and Data Exchange. 5J Oilfield Services, LLC v. Pecha, 2013 WL 3458163 (W.D. Pa. July 9, 2013) (declining supplemental jurisdiction as to one party only with case continuing against other defendants); Bangura v. City of Philadelphia, 2007 WL 3376676 (E.D. Pa. Oct. 15, 2007) (same).

Although Klein, who is domiciled in and a legal resident of Pennsylvania, (ECF No. 51, at ¶¶ 1, 2), avers that the court has both federal question and diversity jurisdiction, (ECF No. 51, at ¶¶ 14, 15), the evidence submitted on summary judgment shows that the parties are not completely diverse. Klein's second amended complaint provides that defendant Just Energy Pennsylvania Corp. is a Delaware Corporation doing business in Pennsylvania, but does not identify its principal place of business. (ECF No. 51, at ¶¶ 1, 2). The Affidavit of Jennifer Johnston submitted by the Just Energy Defendants in support of summary judgment clarifies that Defendant Just Energy Pennsylvania Corp. is a Delaware corporation with a principal place of business in Pennsylvania. (ECF 60-1, at ¶ 7). Thus, the parties are not completely diverse as required for diversity jurisdiction. 28 U.S.C. § 1332(c)(1) ("a corporation shall be deemed to be a citizen of every State ... by which it has been incorporated and of the State ... where it has its principal place of business."); Grand Union Supermarkets of the Virgin Islands, Inc. v. H.E. Lockhart Management, Inc., 316 F.3d 408, 410 (3d Cir. 2003) ("Jurisdiction under 28 U.S.C. § 1332(a)(1) ... requires complete diversity of the parties; that is, no plaintiff can be a citizen of the same state as any of the defendants.")

Defendants Collectcents and Data Exchange were added to the case relatively recently by the filing of the second amended complaint. (ECF No. 51). A motion to dismiss by defendant Data Exchange is now pending (ECF No. 77), defendant Collectcents just filed its answer on June 21, 2016, (ECF No. 85), and the discovery deadline regarding the claims against defendants Collectcents and Data Exchange has not been set. Thus, the case against Data Exchange and Collectcents is procedurally in the earlier stage. The case has proceeded through discovery, however, regarding the claims against the Just Energy Defendants and the state law claims have been fully litigated on the Just Energy Defendants' summary judgment motion. The vicarious liability claims against the Just Energy Defendants in Count VI are intertwined with the remaining claims against defendants Collectcents and Data Exchange because Count VI is premised on liability of Collectcents and Data Exchange for their alleged negligent conduct.

*15 More importantly, the Just Energy Defendants are entitled to summary judgment on the claims for invasion of privacy, negligence and vicarious liability regarding the challenged calls for the very same reason that summary judgment will be granted on the TCPA claim, namely that there is no connection between these entitles and the challenged calls. Assuming Klein can otherwise establish a claim for invasion of privacy, which requires an intentional rather than accidental invasion, O'Donnell v. United States, 891 F.2d 1079, 1083 (3d Cir. 1989), Klein has failed to adduce evidence connecting the calls to the Just Energy Defendants. Klein's negligence claim [12] requires that he show the Just Energy Defendants owed him a duty and breached that duty, Kleinknecht v. Gettysburg College, 989 F.2d 1360, 1366 (3d Cir. 1993), which Klein cannot show because of the lack of connection of the Just Energy Defendants to the challenged calls. Finally, without ruling on the pending claims for negligence against defendants Collectcents and Data Exchange, the court observes that Klein must adduce sufficient evidence of a connection of the Just Energy Defendants to the challenged calls and to the conduct of defendants Collectcent and Data Exchange in order to hold the Just Energy Defendants vicariously liable, which he failed to do on this record. In this posture, the considerations of judicial economy, convenience, fairness and comity, weigh in favor of supplemental jurisdiction regarding the state law claims against the Just Energy Defendants. Cindrich v. Fisher, 341 Fed.Appx. 780, 790 (3d Cir. 2009). Accordingly, supplemental jurisdiction over these claims will be exercised and summary judgment will be entered in favor of Just Energy

Case 1:26-cv-00659-KM    Document 7-3    Filed 05/19/26    Page 50 of 80

Klein v. Just Energy Group, Inc., Not Reported in Fed. Supp. (2016)

Defendants on the state law claims in Counts II, IV and VI because no reasonable jury could render a verdict in favor of Klein and against the Just Energy Defendants on these claims.

### C. Possible Amendment in Response to Motion for Summary Judgment

Perhaps recognizing the lack of evidentiary connection between the Just Energy Defendants and the challenged calls, Klein states in a footnote in his opposition that "[t]o the extent necessary, Plaintiff intends to request leave of Court to add 'Commerce Energy, Inc. d/b/a Just Energy' as a named Defendant and also to explore the dismissal of some of the existing named Just Energy Defendants, if appropriate." (ECF 62 at 5 n.1). A contention in a brief does not substitute for sufficient evidence justifying denial of summary judgment. Cf. United States ex rel. Zizic v. Q2Administrators, LLC, 728 F.3d 228, 243 (3d Cir. 2013)(bare request in opposition to motion to dismiss insufficient); Kowal v. MCI Commc'ns Corp., 16 F.3d 1271, 1280 (D.C. Cir. 1994) ("bare request in an opposition to a motion to dismiss—without any indication of the particular grounds on which amendment is sought...—does not constitute a motion within the contemplation of rule 15(a)."); Williams v. New Castle County, 970 F.2d 1260, 1266 n. 4 (3d Cir. 1992); Zampogna v. Sheriff of Westmoreland County, PA, Civ. A. No. 13-233, 2013 WL 1909146, at *1 (W.D. Pa. May 8, 2013). Even if a motion or proposed amendment may be forthcoming as suggested, it does not forestall summary judgment in favor of the Just Energy Defendants on the TCPA claim. See Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc., 482 F.3d 247, 252 (3d Cir. 2007) (request for leave to amend without submitting a draft amended complaint is fatal to the request). The Motion for Summary Judgment was filed on February 26, 2016, Klein has filed a response in opposition, the Just Energy Defendants have filed their Reply, and the issue has been joined. Klein's " 'just you wait and see" approach will not be countenanced at this juncture. See FED. R. CIV. P. 1 (2015) (The Federal Rules of Civil Procedure "should be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding).' " Lee v. Sixth Mount Zion Baptist Church of Pittsburg, Civ. Act. No. 15-1599, 2016 WL 2344529, at *6 (W.D. Pa. May 4, 2016) (denying informal and unsupported request for leave to amend).

**\*16** If Klein intends to file a motion to amend referred to, he will be required to satisfy Federal Rule of Civil Procedure 15 or 16, as applicable, regarding any such motion. See Alston v. Parker, 363 F.2d 229, 235 (3d Cir. 2004).

As a result of the lack of evidence showing a connection between any of the Just Energy Defendants to the calls, the Just Energy Defendants are entitled to summary judgment with respect to Klein's state law claims against them.

### VI. CONCLUSION

Viewing the evidence in the light most favorable to Klein, the court concludes that Klein failed to adduce sufficient evidence for a reasonable jury to find that any of the Just Energy Defendants either made the calls, that any of the calls were made on their behalf, or that they had any relevant connection to the calls. On this record a reasonable factfinder could not find the Just Energy Defendants liable on Klein's claims against them for violation of the TCPA, invasion of privacy, negligence or vicarious liability for the negligence of Collectcents and Data Exchange. The Just Energy Defendants' motion for summary judgment on Counts I, II, IV and VI will be granted. Judgment will be entered against Klein and in favor of the Just Energy Defendants on all counts against them.

An appropriate order follows.

**All Citations**

Not Reported in Fed. Supp., 2016 WL 3539137

Case 1:26-cv-00659-KM    Document 7-3    Filed 05/19/26    Page 51 of 80

Klein v. Just Energy Group, Inc., Not Reported in Fed. Supp. (2016)

**Footnotes**

1    Klein sues defendant Collectcents for negligence under Pennsylvania law in Count III and sues defendant Data Exchange for negligence under Pennsylvania law in Count V.

2    The factual background is taken from the undisputed evidence of record, including the parties' Combined Statement of Material Facts, which synthesizes as noted the Just Energy Defendants' Concise Statement of Material Facts with Klein's responses stated in his opposition, (ECF No. 68); evidence not properly disputed on the record; and the disputed evidence of record viewed in the light most favorable to the nonmoving party. See ⚑ Anderson v. Liberty Lobby, Inc. 477 U.S. 242, 255 (1986).

3    The individual who signed up as a customer of Commerce Energy, Inc. d/b/a Just Energy is not a party to or involved in this suit and the validity of her debt is not at issue. The court will refer to her simply as P.S.

4    Klein does not dispute the independent contractor status of Frisco.

5    Klein added Data Exchange as a defendant to this action with the filing of his second amended complaint. (ECF No. 51). The status of Data Exchange as successor to QRO is, in part, the subject of the motion to dismiss filed by Data Exchange, (ECF No. 78), but is not raised as an issue relative to the present motion for summary judgment.

6    Given Klein's dispute regarding the Just Energy Defendants' characterization of Collectcents, Data Exchange and QRO as independent contractors, for purposes of the undisputed facts that the court relies on in ruling on this motion for summary judgment the court will not refer to them as independent contractors.

7    Ninety calls by any fair characterization would constitute numerous calls for the purpose of the court's analysis. See ⚑ Leahey v. Franklin Collection Serv., Inc., 756 F.Supp.2d 1322, 1328 (N.D. Ala. 2010) (referring to 29 calls as numerous); see also ⚑ Hoover v. Monarch Recovery Mgmt., Inc., 888 F. Supp. 2d 589, 588-89 (E.D. Pa. 2012) (allegation that ten calls a week for eleven weeks was sufficient to survive motion to dismiss on the issue of intent to annoy, abuse or harass).

8    Automatically dialed calls are commonly referred to as "robocalls." See ⚑ Leyse, 804 F.3d at 322.

9    Audio recordings of twelve phone calls were intended to be filed as Appendix 1 to plaintiff's opposition. The Appendix, however, appeared to be merely a scan of a page listing the recordings. (ECF No. 62-1). Pursuant to an order of the court (ECF No. 71), plaintiff provided copies of the audio files for the court's review.

10   The court reviewed additional records related to the challenged calls and compared them with the audio call records as submitted by Klein. (ECF No. 62-1). Ten of the twelve calls appear to be reflected on Klein's Google VoIP service records that he provided to the Just Energy Defendants in discovery as Google Voice or Text messages. (ECF No. 60-9). The pages from Klein's Google VoIP service that presumably would include the dates of the other two calls, the voice messages provided by Klein for a February 7, 2014 call and a March 24, 2014 call, are not in the record for the court's review.

11   With respect to the statement made on the voice messages that the call is "from Just Energy Ohio," (ECF No. 62-1), whatever the reason for the statement, based on the uncontroverted evidence the call was made for Commerce Energy,

Case 1:26-cv-00659-KM    Document 7-3    Filed 05/19/26    Page 52 of 80

Inc. d/b/a Just Energy and not Just Energy Ohio, LLC, sued here, and Just Energy Ohio, LLC had dissolved effective in 2010 well prior to the time when the calls were made. CCMSF ¶¶ 17, 26, 43

12    The court dismissed Klein's claim for negligence against the Just Energy Defendants in his original complaint because Klein failed to make any factual allegations a) that would be sufficient to plausibly implicate any of the four scenarios for recovery of emotional distress; and b) that he suffered physical manifestation of his emotional distress. (ECF No. 21 at 9). Although Klein's second amended complaint alleges that he suffered physical manifestation of emotional distress, (ECF No. 51 ¶ 39), as with the original complaint addressed in the court's prior opinion, (ECF 21 at 8-9), Klein failed to adduce sufficient evidence to support any of the four factual scenarios required under Pennsylvania law. Daly v. New Century Trans, Inc., No. 11-2037, 2012 WL 4060687, at *7 (M.D. Pa. Sept. 14, 2012) (citing Toney v. Chester Cnty. Hosp., 961 A.2d 192, 197-98 (Pa. Super. Ct. 2008)). Klein did not allege any of the four factual scenarios required for negligent infliction of emotional distress or adduce sufficient evidence for purposes of summary judgment. On this basis alone the Just Energy Defendants are entitled to summary judgment on the count for negligence and the count for vicarious liability of the Just Energy Defendants for the alleged negligence of defendants Collectcents and Data Exchange/QRO.

---

**End of Document**

© 2026 Thomson Reuters. No claim to original U.S. Government Works.

Case 1:26-cv-00659-KM    Document 7-3    Filed 05/19/26    Page 53 of 80

Landy v. Natural Power Sources, LLC, Not Reported in Fed. Supp. (2021)

🚩 KeyCite Yellow Flag

Distinguished by  Atkinson v. Choice Home Warranty,   D.N.J.,   January 11, 2023

2021 WL 3634162
Only the Westlaw citation is currently available.
United States District Court, D. New Jersey.

Brennan LANDY, Plaintiff,

v.

NATURAL POWER SOURCES, LLC d/b/a Suntuity, Defendant.

Case No. 3:21-cv-00425
|
Filed 08/17/2021

**Attorneys and Law Firms**

Jeffrey Steven Arons, Arons & Arons LLC, South Orange, NJ, for Plaintiff.

Adlai J.J. Small, Spiro LLC, Short Hills, NJ, for Defendant.

**MEMORANDUM AND ORDER GRANTING MOTION TO
DISMISS AND ALLOWING PLAINTIFF TO AMEND COMPLAINT**

PETER G. SHERIDAN, U.S.D.J.

### I. Introduction

**\*1** This matter comes before the Court on Defendant Natural Power Sources, LLC d/b/a Suntuity's ("Suntuity" or "Defendant") motion to dismiss Brennan Landy's ("Plaintiff" or "Landy") class action complaint under the Telephone Consumer Protection Act ("TCPA"), 42 U.S.C. § 227. (ECF No. 7.) The Court heard oral argument on July 20, 2021. For the reasons that follow, Defendant's motion to dismiss is granted without prejudice.

### II. Background

On or around October 29, 2020, Landy received a call on his cell phone from an unknown caller who solicited him to purchase green energy products. (Compl. ¶¶ 18-20, ECF No. 1.) Landy heard a pause and click before an operator came on the line, which allegedly indicates the use of an automatic telephone dialing system ("ATDS"). (Compl. ¶ 19.)

Then, Landy was transferred to an operator named Steve who identified himself as working for US Home Solar. (Compl. ¶ 21.) Landy alleges he heard a beep – but not a pause or click – before being connected with Steve. (*Id.*) Steve also solicited Landy to purchase green energy products. (*Id.*)

After speaking with Steve, Landy alleged he was transferred via a "warm transfer" [1] to a third operator named Evelyn, from Suntuity, who solicited Landy to purchase Suntuity's solar energy products. (Compl. ¶¶ 7, 22.) Landy does not allege that he heard a pause and click before being connected to Evelyn. After the call with Evelyn concluded, Landy received a follow-up email from Brendan McGrane, another Suntuity representative, who solicited Suntuity's products. (Compl. ¶ 23.)

Case 1:26-cv-00659-KM    Document 7-3    Filed 05/19/26    Page 54 of 80

Landy v. Natural Power Sources, LLC, Not Reported in Fed. Supp. (2021)

Landy claims he never consented to the initial call and, therefore, it was made in violation of the TCPA. (Compl. ¶¶ 24-26). He alleges Suntuity is vicariously liable for that violation because it "knew about the calls, received the benefits of the calls, directed the calls to be placed, and ratified the calls." (Compl. ¶ 16).

Landy asserts that he and the proposed class members sustained injuries in the form of aggravation, nuisance, invasion of privacy, monies paid to the wireless caller for the receipt of unwanted calls, interference with the use and enjoyment of their phones, depletion of battery life, and wear and tear on their phones. (Compl. ¶¶ 27, 42.) He defines the proposed class as follows:

> **No Consent Class:** All persons in the United States who (1) from the date four years prior to the filing of this Complaint through the date notice is sent to the Class; (2) received at least one call from Defendant, or a third person acting on behalf of Defendant; (3) on the person's cellular telephone; (4) for the purpose of selling Defendant's solar products and services; (5) using the same equipment that was used to call the Plaintiffs; and (6) for whom Defendant claims it obtained prior express written consent in the same manner as Defendant claims it obtained prior express written consent to call the Plaintiffs.

(Compl. ¶ 29.) Landy alleges that his claims are typical of the class members, he can adequately represent the class, there are common questions of law and fact, Defendant's conduct is common to all class members, and the class members are too numerous to be individually joined. (Compl. ¶¶ 31-35.)

 **\*2** Landy timely filed his complaint on January 8, 2021. *See* 28 U.S.C. § 1658; *Weitzner v. Sanofi Pasteur Inc.*, 909 F.3d 604, 608 (3d Cir. 2018). He seeks an injunction against further unauthorized calls, as well as statutory damages and attorneys' fees for class members under the TCPA's private right of action provision, 47 U.S.C. § 227(b)(3)(B). (Compl. ¶¶ 28, 42.)

### III. Jurisdiction & Venue

This Court has original jurisdiction over this matter pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332, "because each of the alleged Classes consists of over 100 persons, there is minimal diversity, and the claims of the class members when aggregated together exceeds $5 million." (Compl. ¶ 5.) Venue is proper under 28 U.S.C. § 1391(b) because Suntuity's headquarters are in New Jersey. (Compl. ¶ 7.)

### IV. Legal Standard

Under Fed. R. Civ. P. 8(a)(2), a complaint "requires only a short and plain statement of the claim showing that the pleader is entitled to relief." A motion to dismiss asserts a "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss, the complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Burch v. Milberg Factors, Inc.*, 662 F.3d 212, 220 (3d. Cir. 2011) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). This standard requires showing more than just the possibility that the defendant acted unlawfully. *Id.*

In reviewing a motion to dismiss, the Court "accept[s] as true all allegations in the plaintiff's complaint as well as all reasonable inferences that can be drawn from them, and we construe them in a light most favorable to the non-movant." *Monroe v. Beard*, 536 F.3d 198, 205 (3d. Cir. 2008). The court should disregard legal conclusions and "recitals of the elements of a cause

Case 1:26-cv-00659-KM    Document 7-3    Filed 05/19/26    Page 55 of 80

Landy v. Natural Power Sources, LLC, Not Reported in Fed. Supp. (2021)

of action, supported by mere conclusory statements." [flag]*Santiago v. Warminster Township*, 629 F.3d 121, 128 (3d. Cir. 2010) (quoting [flag]*Iqbal*, 556 U.S. at 678, 129 S.Ct. 1937).

The Third Circuit set forth a three-part test for determining whether or not a complaint may survive a motion to dismiss for failure to state a claim:

> First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." Finally, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief."

*Id.* at 130 (alteration in original) (quoting [flag]*Iqbal*, 556 U.S. at 675, 679, 129 S.Ct. 1937).

## V. Discussion

### A. TCPA Claim

"To assert a claim under the TCPA's autodialer provision, [flag]47 U.S.C. § 227(b)(1)(A)(iii), a plaintiff must show that the defendant: (1) called her cell phone; (2) using an automatic telephone dialing system ("ATDS"); (3) without her prior express consent." [flag]*Valdes v. Century 21 Real Estate, LLC*, No. CV 2:19-05411, 2019 WL 5388162, at *2 (D.N.J. Oct. 22, 2019). Pursuant to the TCPA's restrictions on use of automated telephone equipment:

> **\*3**  (1) Prohibitions. It shall be unlawful for any person within the United States, or any person outside the United States if the recipient is within the United States—

> (A) to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice—

> [...]

> (iii) to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call, unless such call is made solely to collect a debt owed to or guaranteed by the United States.

U.S.C. § 227(b)(1)(A)(iii).

Landy alleges that he was called on his cell phone without his consent. (Compl. ¶¶ 10-11.) The identity of the initial caller is unknown. (Compl. ¶ 18-20.) However, Landy alleges that because he was eventually transferred to Suntuity, the previous callers acted on Suntuity's behalf and at its direction, thereby establishing vicarious liability. (Compl. ¶ 16.)

### 1. Direct Liability

Courts have held that under the TCPA, 47 U.S.C. § 277(b)(1)(A)(iii), liability is imposed on the party that places the call or text. *See Klein v. Just Energy Grp., Inc.*, No. CV 14-1050, 2016 WL 3539137, at *8 (W.D. Pa. June 29, 2016) (citing *Melito v. Am. Eagle Outfitters, Inc.*, Civ. Act. Nos. 14-02240, 15-39, and [flag]Nos. 15-2370, 2015 WL 7736547, at *4 (S.D.N.Y. Nov. 30, 2015)). Here, Landy does not allege that Suntuity placed the initial call to Landy; he only alleges the initial caller used an ATDS to call him without his consent. Once that call was initiated, he was transferred to US Home Solar and Suntuity. Therefore, Landy can only pursue a TCPA claim against Suntuity on a vicarious liability theory.

## 2. Vicarious Liability

An entity cannot be held liable under the TCPA "merely because they stand to benefit from the call." *Id.* at \*8; *In re Dish Network, LLC,* 28 FCC Rcd. 6574, 6593 (F.C.C. 2013). Instead, a defendant that is not the initial caller can be held vicariously liable under the TCPA based on common law agency principles. *Klein v. Com. Energy, Inc.*, 256 F. Supp. 3d 563, 584 (W.D. Pa. 2017). Vicarious liability can be established through actual authority, apparent authority, or ratification. *Cunningham v. Cap. Advance Sols., LLC*, Civil Action No. 17-13050 (FLW), 2018 U.S. Dist. LEXIS 197590, at \*6, 2018 WL 6061405 (D.N.J. Nov. 20, 2018). The following subsections will discuss each of those theories.

### i. Actual Authority

Landy does not allege facts that establish an agency theory through actual authority. "An agent acts with actual authority when, at the time of taking action that has legal consequences for the principal, the agent reasonably believes, in accordance with the principal's manifestations to the agent, that the principal wishes the agent so to act." *Cunningham* 2018 WL 6061405, at \*17 (quoting *Covington v. Int'l Ass'n of Approved Basketball Offs.*, 710 F.3d 114, 120 (3d Cir. 2013)).

A plaintiff sufficiently pleads actual authority when the allegations establish that the defendant consented to or directed the agent to act on its behalf. *Cunningham*, 2018 WL 6061405, at \*18. In *Cunningham*, the plaintiff alleged that, pursuant to a contract, Capital Advance Solutions, LLC ("Capital"), placed telemarketing calls on behalf of the bank defendants and received a commission for each successful loan solicitation. *Id.* at \*7. Further, Capital allegedly facilitated the submission of loan applications to the bank defendants, as acknowledged in the approval and rejection letters the defendants sent to loan applicants. *Id.* Based on those allegations, the court could "reasonably infer that the Bank Defendants exercised a certain level of control over, or, at a minimum, were aware of, Capital's telemarketing efforts." *Id.*

**\*4** Landy does not allege any facts that establish the initial caller had actual authority to make telemarketing calls on Suntuity's behalf. Unlike *Cunningham*, in which the plaintiff alleged specific facts indicating the defendants directed or consented to solicitation via Capital, Landy simply alleges that because he was transferred to Suntuity, the initial caller was acting at Suntuity's direction. He does not plead facts to support his argument that Suntuity authorized the initial caller, directed them, or was aware of their conduct. As such, the complaint does not sufficiently allege an actual authority relationship between Suntuity and the initial caller.

### ii. Apparent Authority

Landy does not allege enough facts to establish vicarious liability under apparent authority. "[A]pparent authority arises in those situations where the principal causes persons with whom the agent deals to reasonably believe that the agent has authority despite the absence of an actual agency relationship." *Cunningham,* 2018 WL 6061405, at \*6 (quoting *Covington,* 710 F.3d at 120). In a declaratory ruling, the Federal Communications Commission stated that:

> Apparent authority may be supported by evidence that the seller allows the outside sales entity access to information and systems that normally would be within the seller's exclusive control, including: access to detailed information regarding the nature and pricing of the seller's products and services or to the seller's customer information. The ability by the outside sales entity to enter consumer information into the seller's sales or customer systems, as well as the authority to use the seller's trade name, trademark and

Case 1:26-cv-00659-KM    Document 7-3    Filed 05/19/26    Page 57 of 80

Landy v. Natural Power Sources, LLC, Not Reported in Fed. Supp. (2021)

service mark may also be relevant. It may also be persuasive that the seller approved, wrote, or reviewed the outside entity's telemarketing scripts.

*In re Dish Network, LLC*, 🚩 28 F.C.C. Rcd. at 6593.

A plaintiff sufficiently pleads apparent authority "when a third party reasonably believes that the ... agent had authority to act on behalf of the principal and that belief can be traced to the principal's own manifestations." 🚩*Valdes*, 2019 WL 5388162 at *4 (omission in original) (quoting *In re Fresh & Process Potatoes Antitrust Litig.*, 834 F. Supp. 2d 1141, 1167–68 (D. Idaho 2011)). In *Valdes*, the plaintiff alleged that defendant Century 21 was "heavily involved in realtors' unsolicited calls," including directing and training realtors on how to make solicitation calls and what to say. *Id.* Further, the defendant allegedly told callers "to identify themselves as calling on behalf of Century 21, to offer the Century 21 pledge," and it "facilitated realtors' access to lead lists and autodialers." *Id.* Those allegations were sufficient for the court to hold that a third party could reasonably believe that the realtors had authority to act on behalf of Century 21, thereby establishing apparent authority. *Id.*

Unlike the plaintiff in *Valdes*, Landy does not plead any facts that indicate Suntuity's conduct led him to reasonably believe the initial caller had authority to act on Suntuity's behalf. He merely alleges that, because he was transferred to Suntuity and was solicited to buy green energy products, Suntuity must have directed the initial call and known about the initial caller's TCPA violation. Landy's complaint, however, does not assert facts that suggest the initial caller had any relationship with Suntuity, or that would lead a reasonable person to believe the initial caller had authority to act on Suntuity's behalf.

Further, Landy's allegation that Suntuity sent a follow-up email to solicit its products does not support an apparent authority theory. In *Smith v. Vision Solar*, the plaintiffs received telemarketing calls from an Exchange Energy representative, who attempted to sell solar products and stated that Vision Solar would contact them to follow up. 🚩*Smith v. Vision Solar LLC,* No. CV 20-2185, 2020 WL 7230975, at *1-2 (E.D. Pa. Dec. 8, 2020). After the initial call from Exchange Energy, Vision Solar called at least one plaintiff to follow up about the solar products. *Id.* Apparent authority was established because the plaintiff alleged that the "purported principal followed-up with the plaintiff after she provided information to the telemarketer, thereby demonstrating that the principal knew of and benefited from the marketing calls." *Id.* at *3. By contrast, Landy does not allege that the initial caller referenced Suntuity, told him to expect contact from Suntuity, or otherwise indicated a relationship with Suntuity.

### iii. Ratification

**\*5**  Finally, Landy does not plead facts that support an agency theory based on ratification.

(1) Ratification is the affirmance of a prior act done by another, whereby the act is given effect as if done by an agent acting with actual authority.

(2) A person ratifies an act by

(a) manifesting assent that the act shall affect the person's legal relations, or

(b) conduct that justifies a reasonable assumption that the person so consents.

Restatement (Third) Of Agency § 4.01 (2006).

A plaintiff must plead facts that indicate the defendant consented to the initial caller making calls on the defendant's behalf. *Just Energy*, 2016 WL 3539137, at *12. In *Just Energy*, the plaintiff alleged that the defendant ratified telemarketing and debt collection calls made by Collectcents employees, who identified themselves as "Just Energy" during the phone calls. *Id.* at *4,

Case 1:26-cv-00659-KM   Document 7-3   Filed 05/19/26   Page 58 of 80

Landy v. Natural Power Sources, LLC, Not Reported in Fed. Supp. (2021)

12. The court rejected the plaintiff's argument that the defendant consented to Collectcents' conduct simply because it might have received a benefit from the calls. *Id.* at *12. Because the plaintiff's allegation was based on speculation that the defendants could be receiving a benefit, and there was no evidence of defendant's affirmation, assent, or consent, the facts pleaded were insufficient to support a ratification theory. *Id.*

Similarly, Landy's complaint does not include facts that show Suntuity manifested assent to the initial caller calling on its behalf. Like the plaintiff in Just Energy, Landy speculates that because he was eventually transferred to Suntuity and solicited to buy green energy products, Suntuity must have assented to and received a benefit from the prior callers' actions. Such speculative allegations are insufficient to allege an agency relationship based on ratification.

In sum, Landy's complaint does not allege enough facts to indicate that there was an agency relationship between the initial caller and Suntuity. As such, he has failed to allege that Suntuity can be held vicariously liable for the initial caller's TCPA violations.

### B. ATDS

To support a claim under the TCPA, the plaintiff must demonstrate the nonconsensual call was made using an ATDS. *See* 47 U.S.C § 227(b)(1)(A)(iii). The TCPA defines an ATDS as "equipment which has the capacity — (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1). In the Third Circuit, pleading that there was a brief pause or silence before the operator speaks is sufficient to allege the use of an ATDS. *Hazan v. Wells Fargo Home Mortg.*, No. CV1810228 (MAS/TJB), 2020 WL 919183, at *3 (D.N.J. Feb. 26, 2020). Thus, Landy's allegation that he heard a pause before the operator of the initial call came on the line is sufficient to allege that an ATDS was used. (*See* Compl. ¶ 19.)

### C. Consent

To allege a violation under the TCPA, the call must be made without the called party's prior express consent. 47 U.S.C. § 227(b)(1)(A); *Valdes*, 2019 WL 5388162 at *2. Suntuity argues that, because Landy admitted he was transferred to Evelyn via a "warm transfer," he consented to speak to Suntuity. However, neither party defines the term "warm transfer." A warm transfer occurs when the first operator stays on the line with the called party during a transfer until the second operator answers. *See, e.g.*, *Reeves v. Nuvox Commc'ns*, No. C.A.6:08-4031(HMH/WMC), 2009 WL 4016617, at *5 (D.S.C. Nov. 18, 2009), *aff'd sub nom. Reeves v. Nuvox Commc'ns, Inc.*, 384 F. App'x 255 (4th Cir. 2010); *Tate v. Washington Mut.*, No. 02 C 5853, 2004 WL 1794924, at *1 (N.D. Ill. Aug. 10, 2004). That definition does not imply that the called party consented to speak to either operator.

### VI. Conclusion

 **\*6**  Because Landy does not provide enough facts to plausibly allege a claim against Suntuity under the TCPA, Defendant's motion to dismiss shall be granted without prejudice. Landy shall have 30 days to file an amended complaint if he wishes to do so. Defendant may move to dismiss the amended complaint in accordance with the timeframes set forth in the Federal Rules of Civil Procedure.

### ORDER

**THIS MATTER** having come before the Court on a motion to dismiss filed by Defendant Natural Power Sources, LLC d/b/a Suntuity (ECF No. 7); and the Court having carefully reviewed and taken into consideration the submissions of the parties, as well as the arguments and exhibits therein presented; and for good cause shown; and for all of the foregoing reasons,

Case 1:26-cv-00659-KM    Document 7-3    Filed 05/19/26    Page 59 of 80

**IT IS** on this 16th day of August, 2021,

**ORDERED** that Defendants' motion to dismiss is **granted without prejudice**, and it is further

**ORDERED** that Landy will have 30 days to file an amended complaint.

**All Citations**

Not Reported in Fed. Supp., 2021 WL 3634162

---

**Footnotes**

1       Neither Plaintiff nor Defendant defines this term. Its significance will be discussed in Section V.C.

---

**End of Document**                    © 2026 Thomson Reuters. No claim to original U.S. Government Works.

Case 1:26-cv-00659-KM    Document 7-3    Filed 05/19/26    Page 60 of 80

Nece v. Quicken Loans, Inc., Not Reported in Fed. Supp. (2018)

2018 WL 1326885
Only the Westlaw citation is currently available.
United States District Court, M.D. Florida,
Tampa Division.

Eileen NECE, Plaintiff,

v.

QUICKEN LOANS, INC., Defendant.

Case No. 8:16–cv–2605–T–23CPT
|
Signed 03/15/2018

**Attorneys and Law Firms**

David P. Mitchell, Richard David Giglio, Maney & Gordon, PA, Tampa, FL, Gregory S. Duncan, Pro Hac Vice, Gregory S. Duncan, Esq., Charlottesville, VA, Joseph S. Tusa, Pro Hac Vice, Tusa P.C., Southold, NY, for Plaintiff.

Brooks R. Brown, Pro Hac Vice, Keith Eric Levenberg, Pro Hac Vice, William Kyle Tayman, Pro Hac Vice, Goodwin Procter, LLP, Washington, DC, James Kirby McDonough, Steven Douglas Knox, Quarles & Brady, LLP, Tampa, FL, for Defendant.

## ORDER

STEVEN D. MERRYDAY, UNITED STATES DISTRICT JUDGE

**\*1** At 6:06 a.m. on December 7, 2012, Eileen Nece submitted a form on Quicken Loans' website. The form (Doc. 117–1 at 9) requires a prospective mortgagor to provide her name and a phone number and asks the prospective mortgagor several questions about her "mortgage goals," including the amount she aspires to borrow. Although some confusion appears about the exact content of her submission, Nece undisputedly provided her name and the number for her residential landline, which ends in 7355. During the next thirty minutes, Nece submitted either the same form or a similar form four more times. At 6:28 a.m., Nece e-mailed Quicken:

> Do you have any local offices in Pinellas County, Florida? I prefer dealing with a Mortgage Broker who has a local office. I live in Palm Harbor, Florida.
>
> Found a house I like in my area, zip 34685 for $139,900. Will need a 30 Year Fixed Mortgage...
>
> Can you help me, as I need Pre–Approval [first], before a Realtor will work with me.
>
> Thank you.
>
> Eileen A. Nece [ ] 727–785–7355

(Doc. 40–2 at 40)

At 10 a.m., Quicken employee Brandon Pach called the 7355 number (Doc. 40–2 at 21), and a transcript (Doc. 40–2 at 42) shows that Pach introduced himself and Quicken. Nece immediately asked whether Quicken operated a local branch; Pach said "no" but attempted several times to inform Nece about a mortgage. After stating that she preferred to deal with a local lender and after mentioning the frequent Better Business Bureau complaints against Quicken, Nece said, "I'm not interested in the rates. I just don't want to deal with you at all right now," and Pach ended the call.

Soon after 4 p.m., Quicken employee Alex Dobija called Nece. (Doc. 40–2 at 44) After Dobija identified himself, Nece said, "I'm actually not interested in Quicken Loans anymore." Again, Nece mentioned the lack of a local branch and the frequent BBB complaints. Dobija responded, but Nece interjected, "[I]f you have complaints against you and it's that many, I don't even want to deal with you." Nece ended the call by saying, "I don't want to get involved [with Quicken] so I'm not going to waste your time and don't waste mine."

Two hours later, Quicken employee Ryan Matthey called. (Doc. 40–2 at 46) After Matthey identified himself, Nece repeated her reasons for preferring not to "get involved" with Quicken. Nece ended the call by stating, "I don't want to waste your time and I'd rather you didn't waste mine."

Three days later, on December 10, 2012, Quicken employee Alex Malinowski left a voicemail for Nece and invited Nece to call Malinowski for a quote. An hour after the voicemail, Nece returned Malinowski's call and repeated her reasons for preferring not to borrow from Quicken. Malinowski's attempt to explain the BBB rating produced this exchange:

> Nece: Well, hold it right there. Over a thousand [complaints] in three years is an outrageous amount and I just don't want to deal with Quicken Loans. I'm busy. I really don't want to be bothered further. [I'm] just giving you a courtesy call saying I got your message and I'm no longer interested...

> Malinowski: Sure.

> **\*2** Nece:...so thanks and goodbye.

> Malinowski: Did you read online...

> Nece: [Line Disconnected]

> Malinowski:...about our three consecutive JD Power and Associate awards for customer satisfaction?

The calls persisted for at least another day, and Nece continued to rebuff Quicken. On December 10, Quicken employee Matthew Sucharski called and introduced himself. (Doc. 40–2 at 52) Nece immediately said, "I just want to tell you that I changed my mind about loans with Quicken." After repeating her reasons for preferring not to borrow from Quicken, Nece said, "I don't want to waste your time, I don't want to have my time wasted either so I'm just not interested. But thank you for calling."

Around 11:30 in the morning on December 11, Quicken employee Kevin Bell called Nece. (Doc. 40–2 at 54) Following a familiar pattern, Nece immediately told Bell, "Before you go any further I've talked to about ten people from Quicken Loans and I told them I'm just no longer interested." After a brief conversation in which Nece repeated her reasons for preferring not to borrow from Quicken, Nece said:

> I prefer to go with [a local lender] and I wish you'd just make a note of it. Not[e] for your representative not to keep calling me because it's getting really annoying.

> ....

> I don't want to waste my time, I don't want to be bothered, I don't want you or your co-workers ... to please keep... stop calling me.

Around 11:30 a.m. the next day, Quicken employee Elma Eminovic left a voicemail for Nece. Quicken's records show five more calls to Nece between December 12 and 14, but none resulted in a conversation or a voicemail. (Doc. 40–2 at 21)

On December 11, Nece penned a letter to Quicken's chief executive officer "RE: HARASSMENT AND STALKING." The letter says:

Case 1:26-cv-00659-KM    Document 7-3    Filed 05/19/26    Page 62 of 80

Nece v. Quicken Loans, Inc., Not Reported in Fed. Supp. (2018)

> Each time one of your representatives called me, I told them I was not interested and preferred to deal locally. That did not stop them from calling me daily, regardless of how many times I told them I do not want to deal with your company so <u>stop</u> calling me, it did not do any good. Your staff persisted in harassing and stalking me daily, even though I told them I was busy and to <u>stop</u> calling me.

(Doc. 1 at 35 (underlining original) ) No record evidence shows when or if Quicken received the December 11 letter.

Additionally, Nece complained to the Florida Department of Agriculture and Consumer Services about Quicken. In the December 13, 2012 departmental complaint (Doc. 1 at 36), which asks a person to identify "one date of call per complaint," Nece reported that Quicken called on December 13 at a quarter after one in the afternoon and that the call was not pre-recorded. In the comment section of the departmental complaint, Nece wrote: "Have gotten over [two] dozen phone calls from Quicken Loans after I told them I was not interested in one weeks' time."

Suing under the TCPA, Nece alleges (Doc. 1) that Quicken called with an artificial or pre-recorded voice (count one), that Quicken violated the prohibition in 47 C.F.R. § 64.1200(c) on a "telephone solicitation" to a number on the national do-not-call registry (count two), and that Quicken violated several provisions in 47 C.F.R. § 64.1200(d), which requires a company to "institut[e]" six "procedures" before calling a residential landline (count three). Quicken moves (Docs. 40 and 117) [1] for summary judgment on all three counts, and Nece moves (Doc. 99) for summary judgment on counts two and three. Also, Nece moves (Docs. 100 and 108) for leave to amend the complaint.

### DISCUSSION

### I. Motion for leave to add a wiretapping claim

 **\*3**  A year after a November 21, 2016 order (Doc. 33 at 1) cautioned Nece that a motion for leave to amend the complaint is "distinctly disfavored after issuance of this order" and nine months after Quicken moved for summary judgment, Nece moves (Doc. 108) for leave to amend the complaint to assert a claim under Section 934.03(1), which prohibits the intentional interception of "any wire, oral, or electronic communication." The motion warrants denial for three reasons.

First, the proposed amendment (Doc. 100–3) is futile. *See* *Foman v. Davis*, 371 U.S. 178, 182 (1962) (explaining that an order need not allow a "futil[e]" amendment). Nece alleges that Quicken "recorded" Nece's calls using a third-party program, CallCopy. Liability under Section 934.03(1) requires that the defendant "intercept" a call, but the Florida Statutes provide a "business extension exception." A company incurs no liability under Section 934.03(1) if the company intercepts the call through a telephone or telephone equipment furnished by a "provider of wire or electronic communication service" and if the interception occurs in the "ordinary course of business." Applying the statutory definition of "intercept," *Royal Health Care Services., Inc. v. Jefferson–Pilot Life Ins. Co.*, 924 F.2d 215 (11th Cir. 1991), holds that a telephone, not a recording device, "intercepts" a call. 924 F.2d at 217 ("[The plaintiff] contends, however, that the interception was actually made by the tape recorder, not the telephone. We disagree. We believe the telephone extension intercepted the call.").

In this action, AT&T provided the telephone number at which Quicken called Nece (and on one occasion, at which Quicken received Nece's call). (Doc. 98–4) Like the defendant in *Royal Health*, Quicken recorded Nece's calls "pursuant to a standard [ ] policy." (Courtney Depo. at 29) The transcripts that result from the recordings show that each intercepted call occurred in the ordinary course of business. In each call, Quicken attempted to solicit Nece's business. (Doc. 106 at 7) Because AT&T, a "provider of wire or electronic communication" service, furnished the telephone number through which Quicken intercepted

Case 1:26-cv-00659-KM    Document 7-3    Filed 05/19/26    Page 63 of 80

Nece v. Quicken Loans, Inc., Not Reported in Fed. Supp. (2018)

Nece's calls and because Quicken intercepted the calls in the ordinary course of business, the "business extension" provisions except Quicken from liability under Section 934.03(1).

Nece attempts to distinguish *Royal Health* by arguing that in *Royal Health* the telephone company provided the tape recorder that intercepted the call. But *Royal Health* says nothing about who supplied the tape recorder, and nothing in *Royal Health* suggests that the meaning of "intercept" varies based on who supplies the recording device. The Eleventh Circuit recently confirmed that *Royal Health* remains binding on the district courts within the Eleventh Circuit. *Stallely v. ADS Alliance Data Sys., Inc.*, 602 Fed.Appx. 732 (11th Cir. Mar. 3, 2015) (per curiam) (observing that no decision of the Supreme Court or the Florida courts undermines *Royal Health* and rejecting a plaintiff's request that the Eleventh Circuit overrule *Royal Health*). *Royal Health* compels the conclusion that Nece's proposed amendment is futile.

Second, Nece unduly delayed moving for leave to amend. *See* *Foman*, 371 U.S. at 182 (explaining that "undue delay" warrants denying leave to amend). Nece discovered in January 2017 that Quicken recorded the calls. (Doc. 40–1 at 2–3) Under Nece's (erroneous) interpretation of Section 934.03, the unauthorized and undisclosed recording established a claim (Doc. 108 at 7), but Nece fails to explain persuasively the ten-month delay in moving for leave to assert that claim. Nece attributes the delay to the August 2017 depositions of Quicken's corporate representatives, who purportedly "confirmed" Quicken's violation of Section 934.03, but Nece identifies no new information uncovered through the depositions. [2] For example, Nece argues that Quicken employee Amy Courtney's deposition "confirmed...that Plaintiff was not told the calls were being recorded." (Doc. 108 at 4 (italics omitted) ) But the transcripts that Quicken provided to Nece six months before the deposition confirm that Quicken never told Nece about the recording (that is, the transcripts show no mention by Quicken of the recording).

**\*4**  Third, the proposed amendment unduly prejudices Quicken by prolonging the resolution of this action. *See* *Foman*, 371 U.S. at 182 (explaining that "undue prejudice" warrants denying leave to amend). Discovery closes on March 2, 2018, and the trial begins in July. Dependent on different facts than the TCPA claims, the wiretapping claim almost certainly will require extending discovery by several months and likely will require continuing the trial until 2019.

**II. Count one (claim under Section 227(b)(1)(B) )**
Section 227(b)(1)(B) of the TCPA prohibits a call "using an artificial or prerecorded voice" without the "prior express consent" of the called party. Quicken moves for summary judgment and argues that Nece provides insufficient evidence to establish a genuine dispute whether Quicken called Nece with a pre-recorded voice. Quicken employee James Wade affirms that Quicken deploys no artificial or pre-recorded voice in telemarketing. (Doc. 40–3 at 3)

Although Nece responds vigorously in opposition to Quicken's motion for summary judgment on counts two and three, Nece devotes two paragraphs to count one. (Doc. 106 at 18–19) Nece cites two items: Nece's declaration and a complaint from an unrelated action. In the declaration, Nece attests to receiving "prerecorded calls touting a mortgage from Quicken Loans." (Doc. 90–1 at 3) According to the declaration, "these calls were from an (800) or (888) phone number" and "Quicken Loans' name appeared on my caller ID." As Nece acknowledges, the declaration "does not state that these calls were from Quicken Loans." (Doc. 95 at 3 (internal quotation omitted) ) Viewed favorably to Nece, the appearance of Quicken's name on the caller ID permits (at most) an inference that Quicken called Nece. [3]

Also, Nece submits an unverified complaint from another action, but an unverified complaint is not evidence and cannot contribute to the resolution of a motion for summary judgment. *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968) (citing Rule 56(e) ). A party establishes a genuine dispute of material fact by proffering an affidavit, a deposition, or other verified factual content, not by recycling allegations.

In response to a subpoena that commanded AT&T to produce every call from Quicken to the 7355 number between November 2012 and the present, AT&T produced the call records. Quicken observes—and Nece conspicuously fails to rebut—that Nece

identifies no evidence in the AT&T records of a pre-recorded call from Quicken to Nece. Under Rule 56(e)(2) and in this order, that the AT&T records evidence no pre-recorded call from Quicken to Nece remains undisputed.

Through thirteen months of discovery, Nece's capable counsel failed to uncover any evidence that Quicken called Nece with a pre-recorded voice. (Doc. 98–3 at 5) Nece submits no copy or transcript of a pre-recorded message, no telephone records to show a flurry of (800)- or (888)- calls in early 2013, and no affidavit from another person who overheard the pre-recorded calls in Nece's voicemail. In this circumstance, the inference raised by Nece's declaration amounts to no more than a "mere...scintilla of evidence" insufficient to establish a genuine dispute. *See* Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986). Viewing the record favorably to Nece, no reasonable jury could find that Quicken called Nece with a pre-recorded message.

### III. Count two (claim under Section 64.1200(c) )

**\*5** 47 C.F.R. § 64.1200(c)(2) prohibits a "telephone solicitation" to a person whose number appears on the national do-not-call registry. The former assignee of the 7355 number registered the number on the national do-not-call registry in 2007, and Nece confirmed in January 2012 that the 7355 number remained on the national do-not-call registry. (Nece Depo. at 169) The number "was never taken off the do-not-call list at any time." (Nece Depo. at 169)

By providing the 7355 number through the Quicken website and through the e-mail, Nece admittedly invited Quicken to call. In a deposition, Nece agrees that she provides her number when she "want[s] someone to call [her]." (Nece Depo. at 48–49) Despite Nece's agreeing that she provides a number so that a company can call, Nece now denies consenting to a call from Quicken. (Doc. 106 at 7 n.8) *Schweitzer v. Comenity Bank*, 866 F.3d 1273 (11th Cir. 2017), states that "consent ends when the actor knows or has reason to know that the person is no longer willing to allow certain conduct." 866 F.3d at 1279. Citing *Schweitzer*, Nece argues that she consented "conditional on Quicken Loans having 'local offices in Pinellas County, Florida.' " (Doc. 106 at 7 n.8 (quoting the December 7 e-mail to Quicken) ) In fact, the e-mail asks whether Quicken operates a branch in Pinellas County but includes no suggestion that the absence of a Pinellas County branch will abruptly terminate Nece's interest and prohibit Quicken's calling Nece. If Nece intended to permit a call from Quicken only if Quicken operated locally, Nece never clearly expressed that intention to Quicken. In short, Nece acquiesced to Quicken's calling.

Nece argues that the revocation of consent by a person on the national do-not-call registry triggers liability under Section 64.1200(c) for every call after the revocation of consent. Quicken interprets Section 64.1200(d)(3) as affording Quicken a "reasonable time" within which to honor the do-not-call request.

The applicable definitions support Quicken's argument. Section 64.1200(c)(2) prohibits a "telephone solicitation" to a number on the national do-not-call registry. A "telephone solicitation" means a call that encourages the purchase of goods or services, but Section 64.1200(f)(14) excludes from the definition of telephone solicitation a call "[t]o any person with that person's prior express invitation or permission" or "[t]o any person with whom the caller has an established business relationship." In turn, Section 64.1200(f)(5) defines "established business relationship" as a relation formed by a person's "inquiry or application regarding products or services offered by the entity within the three months immediately preceding the date of the call, which relationship has not been previously terminated by either party." Section 64.1200(f)(5)(i) provides that a person can terminate the established business relation by requesting—"as set forth in [ Section 64.1200(d)(3)]"—that the company stop calling, even if the person continues to transact business with the company. [4] Section 64.1200(d)(3) requires a company to implement procedures to ensure that the company "honor[s] a residential subscriber's do-not-call request within a reasonable time," which "may not exceed thirty days."

Case 1:26-cv-00659-KM    Document 7-3    Filed 05/19/26    Page 65 of 80

Nece v. Quicken Loans, Inc., Not Reported in Fed. Supp. (2018)

**\*6**  In plainer English, the do-not-call regulations establish this sensible scheme: A company generally may not call a person on the national do-not-call registry. If a person on the national do-not-call registry inquires about the company's services and provides a phone number, the company may call the person for three months after the inquiry. To accommodate a request that the company stop calling, the company must implement a policy mechanism to add the number to the company's do-not-call registry at the time of the request and to honor the request within a reasonable time.

Nece's argument, which subjects a company to liability under 🚩 Section 64.1200(c) if the company calls even a day after the request to stop calling, produces a discordant result. Under 🚩 Section 64.1200(d)(3), a telemarketer must implement a procedure to honor a do-not-call request in a reasonable time, not immediately. If successfully implemented, the procedure necessarily results in the company's honoring a do-not-call request in a reasonable time, not immediately. Requiring a telemarketer to stop calling immediately after a do-not-call request, Nece's interpretation tees up most telemarketers for a violation of 🚩 Section 64.1200(c). To the extent Nece argues that 🚩 Section 64.1200 "provides its own defenses," the presence of the "erroneous" call defense in 🚩 Section 64.1200(c)(2)(i) fails to alter the conclusion that Quicken must honor a do-not-call request in a reasonable time, not immediately. The incorporation of 🚩 Section 64.1200(d)(3)'s "reasonable time" standard through 🚩 Section 64.1200(f)(5)(i) means that a call initiated within a reasonable time after a person on the national do-not-call registry ends the established business relation is not a "telephone solicitation." In short, Quicken is not liable for violating 🚩 Section 64.1200(c) if Quicken honored Nece's do-not-call request within a reasonable time.

At least two predominant disputes of material fact preclude summary judgment for either party in count two. First, the record reveals uncertainty about when Nece revoked consent to a call. To withdraw consent, a person must "clearly express[ ] a desire not to receive further messages." 🚩 *Van Patten v. Vertical Fitness Grp., LLC*, 847 F.3d 1037, 1048 (9th Cir. 2017) (applying 🚩 *In re Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991*, 30 F.C.C. Rcd. 7961, 7997 at ¶ 67) (July 10, 2015) ).[5] Nece argues that Quicken's records prove a clear revocation of consent on December 7. That day, Quicken employee Ryan Matthey answered "NO" to the question "Contact in future?" in "LOLA." (Doc. 40–2 at 33) Although probative, one employee's subjective interpretation of Nece's comments fails to compel the conclusion that on December 7 Nece directed Quicken to stop calling. Additionally, Matthey might have decided that Nece's comments showed that she likely would borrow money from another mortgagee. In that instance, a telephonic solicitation after December 7 might prove fruitless but lawful.

Except for the December 11 call, Nece's comments appear susceptible to more than one reasonable interpretation. Nece repeatedly says that she "do[esn't] want to get involved" with Quicken. On other occasions, Nece states that she "d[idn't] want to waste [Quicken's] time" and that she "d[idnt'] want [Quicken] to waste [her] time." Viewing the record favorably to Quicken, a reasonable jury might conclude that the comments, which conspicuously omit a phrase equivalent to "remove me from the call list" or "stop calling me," clearly expressed Nece's preference to borrow from another lender but failed to direct Quicken to stop calling. Viewing the record favorably to Nece, a reasonable jury might find in those comments a clear expression of Nece's desire that Quicken stop calling. In short, a genuine dispute of material fact about the clarity of Nece's comments (other than in the December 11 call) precludes summary judgment for either party.[6]

**\*7**  Second, a jury must decide whether Quicken honored Nece's do-not-call request in a reasonable time.[7] That decision depends partly on when Nece directed Quicken to stop calling. If the jury finds that Nece clearly requested on December 7 that Quicken stop calling, the jury might find unreasonable the persistence of Quicken's calls for a week. Conversely, if Nece clearly requested no earlier than December 11 that Quicken stop calling, a jury might find reasonable the three-day delay in failing to honor Nece's do-not-call request.

Also, Nece's repeated submissions inform the reasonableness of Quicken's response. As Nece explains, Quicken "opened multiple, internal 'leads' " after Nece submitted the website forms and sent the e-mail to Quicken. (Doc. 107 at 3, at which

Nece identifies by "jacket number" several of the leads) Quicken's records reveal that Quicken successfully identified and consolidated some but not all of the leads generated by Nece's repeated submissions. Courtney affirms that, for at least one lead, Quicken added Nece's number to the company's do-not-call registry on December 7. (Doc. 117–1 at 1) As Quicken correctly observes (Doc. 117 at 8 n.8), the "unique facts [of Nece's repeated submissions]" contribute to a genuine dispute about the reasonableness of Quicken's response.

## IV. Count three ( 🚩 Sections 64.1200(d) and 🚩 (e) )

🚩 Section 64.1200(d) prohibits a company's "initiating any call [to a residential landline] for telemarketing purposes...unless [the company] has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls." 🚩 Section 64.1200(d)(1) through (6) details the procedures a company must "institute[ ]" before calling a residential landline to market a good or service. Even viewed favorably to Nece, the record evidence shows no genuine dispute of material fact. Quicken is entitled to summary judgment on the alleged violations of 🚩 Sections 64.1200(d) and 🚩 (e).

### A. Written policy

🚩 Section 64.1200(d)(1) requires a company to establish a "written policy, available upon demand, for maintaining a do-not-call list." Quicken established a written policy for maintaining a do-not-call list (Doc. 90–5 at 2–3). Nece never requested Quicken's do-not-call policy (Nece Depo. at 168), but in any event, no evidence shows that Quicken refuses to provide the policy to a person who demands a copy. Quicken employee Gary Weingarden affirms that the policy "was available to Quicken Loans' clients and potential clients upon request." (Doc. 117–2 at 2)

Also, Nece argues that Quicken's written policy violates 🚩 Section 64.1200(d)(1) because the policy omits a requirement that an employee disclose his name, Quicken's name, and Quicken's telephone number or address, but 🚩 Section 64.1200(d)(1) requires only that Quicken maintain a "written policy, available upon demand, for maintaining a do-not-call list." 🚩 Section 64.1200(d)(1) contains no requirement that the written policy repeat the language of 🚩 Section 64.1200(d)(4).

### B. Employee training

 **\*8** 🚩 Section 64.1200(d)(2) states that an employee who telemarkets a product must "be informed and trained in the existence and use of the do-not-call list." Weingarden affirms that Quicken trains every employee engaged in telemarketing about Quicken's do-not-call policy. (Doc. 117–2 at 2) No evidence shows that Quicken called a residential landline before "institut[ing]" a procedure to inform an employee about the do-not-call list and to train an employee about the use of the list. [8]

### C. Recording and honoring of a do-not-call request

If a person directs a company to stop calling, 🚩 Section 64.1200(d)(3) requires adding the person's number to the company's do-not-call list "at the time the request is made" and requires honoring the request within a reasonable time. Unlike 🚩 Section 64.1200(c)(2), which establishes liability for a "telephone solicitation" to a person on the national do-not-call registry, success on a claim under 🚩 Section 64.1200(d)(3) requires proof that the company called before "institut[ing] procedures" to add a number to the do-not-call registry and to honor the do-not-call request. When Quicken called Nece, Quicken's policy required adding a number to the company's do-not-call list at the time of the request. Consistent with that policy, Quicken excluded the number from "any future telephone solicitations for the sale of the Company's products and services." (Doc. 117–2 at 7) Weingarden affirms that, at the time Quicken called Nece, Quicken trained employees about the do-not-call list and that Quicken employees "followed and complied" with Quicken's do-not-call policy. (Doc. 117–2 at 2)

Nece v. Quicken Loans, Inc., Not Reported in Fed. Supp. (2018)

Case 1:26-cv-00659-KM    Document 7-3    Filed 05/19/26    Page 67 of 80

The record in this action reveals one unambiguous request by Nece that Quicken stop calling. Through thirteen months of discovery (including several depositions of Quicken's corporate representatives), Nece uncovered no evidence that Quicken failed to implement a do-not-call procedure compliant with Section 64.1200(d)(3). An isolated failure to timely record a do-not-call request establishes no genuine dispute whether Quicken called Nece before instituting a sufficient do-not-call policy. *Simmons v. Charter Comms, Inc.*, 222 F.Supp.3d 121, 139–141 (D. Conn. 2016) (Underhill, J.). Even if Nece directed Quicken to stop calling in more than one conversation, in this instance the sporadic or scattered non-compliance purportedly evidenced by a handful of calls falls short of establishing a genuine dispute whether Quicken called Nece before "institut[ing]" a procedure compliant with Section 64.1200(d)(3).

### D. Telephone number or address

Section 64.1200(d)(4) states that a telemarketer must "provide the called party with the name of the individual caller...and a telephone number or address at which the [caller] may be contacted." The parties disagree whether a private plaintiff can sue for an alleged violation of Section 64.1200(d)(4). Sections 227(b) and (c) of the TCPA provide a private right of action, but Congress declined to provide a private right of action for a violation of Section 227(d). That section, titled "technical and procedural standards," prohibits a call through an "automatic telephone dialing system" and prohibits a call using an "artificial or prerecorded" voice unless the call complies with the FCC's regulations. Concluding that the FCC enacted Section 64.1200(d)(4) under Section 227(c), a handful of decisions hold that a private plaintiff can sue for a violation of Section 64.1200(d)(4). *See, e.g.,* *Charvat v. NMP, LLC*, 656 F.3d 440, 444 (6th Cir. 2011) (Moore, J.). Other decisions conclude that the FCC promulgated Section 64.1200(d)(4) under Section 227(d), which provides no private right of action. *See, e.g.,* *Worsham v. Travel Options, Inc.*, 2016 WL 4592373 (D. Md. Sept. 2, 2016) (rejecting *Charvat*); *Burge v. Ass'n Health Care Mgmt., Inc.*, 2011 WL 379159 (S.D. Ohio. Feb. 2, 2011).

**\*9** Even if Congress provided a private right to sue for an alleged violation of Section 64.1200(d)(4), the unrebutted evidence shows that Quicken's policy required the disclosure of an employee's name, Quicken's name, and a telephone number for Quicken. Weingarden affirms that "Quicken's policy was to instruct and train its team members involved in outbound calls to...identify themselves, to state they were calling from Quicken Loans, and to provide a callback number." (Doc. 117–2 at 3)

As Nece acknowledges, the violation of Section 64.1200(d)(4) results not from an employee's failure in a particular call to provide a name, the company's name, and a telephone number or address but rather from the initiation of the call absent the company's "having implemented the minimum procedures required by this regulation." (Doc. 106 at 11 (collecting decisions) ) Nece presents insufficient evidence to show a genuine dispute whether Quicken called Nece before "institut[ing]" a disclosure policy compliant with Section 64.1200(d)(4). [9]

### E. Call to a "wireless telephone number"

Section 64.1200(e) extends Section 64.1200(d)'s requirements to a telemarketer's call to a "wireless telephone number." The evidence shows no call other than to the 7355 number, Nece's landline.

### V. Other items

### A. Motion for leave to reply to Quicken's opposition to an amended complaint

Local Rule 3.01(d) prohibits moving in a paper longer than three pages for leave to reply and prohibits the motion's including the proposed argument "as an attachment or otherwise." Nece moves in a six-page paper for leave to submit a five-page reply; five pages of the motion rebut Quicken's opposition. The motion warrants striking for failure to comply with Local Rule 3.01(d).

### B. Class discovery and certification

An August 28, 2017 order (Doc. 89) suspends the deadline to move for class-certification. If Nece elects to move for class certification, the parties must promptly confer about the time within which Nece may move to certify a class. No later than **FEBRUARY 19, 2018**, Nece must move to establish the deadline to move for class certification. If Quicken opposes the deadline proposed in Nece's motion, Quicken must respond no later than **FEBRUARY 22, 2018**.

### C. Mediation

No later than **MAY 1, 2018**, the parties must mediate before Robert Daisley. The parties must submit a notice of mediation no later than **FEBRUARY 19, 2018**.

### CONCLUSION

A prospective mortgagor, Nece submitted several inquiries to Quicken on December 7 and provided her phone number to Quicken at least twice. Over the next week, Quicken called Nece about a dozen times. After learning that Quicken operated no branch in Pinellas County and after discovering the frequent Better Business Bureau complaints against Quicken, Nece repeatedly told Quicken that she "changed [her] mind" about Quicken, that she "prefer[red] to deal" with a local lender, and that she "d[idn't] want to waste [Quicken's] time and d[idn't] want [Quicken] to waste" her time. The parties dispute the effect of Nece's comments, which appear susceptible to more than one reasonable interpretation. If Nece directed Quicken on December 7 to stop calling, Quicken's repeated calls might prove unreasonable. Conversely, Quicken's response might prove reasonable if Nece directed Quicken on December 11 to stop calling. In sum, at least two genuine disputes of material fact preclude summary judgment for either party on count two. Even viewed favorably to Nece, the record reveals evidence insufficient to establish a genuine dispute whether Quicken called Nece with an "artificial or prerecorded voice" or whether Quicken called Nece before "institut[ing]" procedures compliant with Sections 64.1200(d) and (e).

**\*10**  Quicken's motion (Docs. 40 and 117) for summary judgment is **GRANTED–IN–PART** and **DENIED–IN–PART**. Quicken is entitled to summary judgment on counts one and three. Nece's motion (Docs. 99 and 107) for summary judgment on counts two and three is **DENIED**. Nece's motion (Docs. 100 and 108) to add a wiretapping claim is **DENIED**. Nece's motion (Doc. 113) for leave to reply to Quicken's opposition to the motion to amend the complaint is **STRICKEN**, and Nece's motion (Doc. 119) for leave to reply to Quicken's opposition to Nece's motion for summary judgment is **DENIED**. Quicken's motion (Doc. 104) to suspend the time within which to respond to Nece's motion for summary judgment is **DENIED AS MOOT**.

ORDERED in Tampa, Florida, on March 15, 2018.

### All Citations

Not Reported in Fed. Supp., 2018 WL 1326885

---

**Footnotes**

---

Nece v. Quicken Loans, Inc., Not Reported in Fed. Supp. (2018)

Case 1:26-cv-00659-KM    Document 7-3    Filed 05/19/26    Page 69 of 80

A February 5, 2018 order explains that the parties' divergent interpretations of a January 3, 2017 order (Doc. 37) produce an anomaly. Quicken interprets the January 3 order to dismiss every claim in count three other than the claim under 47 C.F.R. § 64.1200(d)(3), while Nece interprets the order as permitting the claims in count three under 47 C.F.R. § 64.1200(d)(1), (2), (4) and 47 C.F.R. § 64.1200(e). Because Quicken's response (Doc. 117) in opposition to Nece's motion for summary judgment appeared to show Quicken's entitlement to summary judgment on the claims under Section 64.1200(d)(1), (2), (4) and Section 64.1200(e), in accord with Rule 56(f), Federal Rules of Civil Procedure, the February 5, 2018 order permits Nece an opportunity to proffer evidence sufficient to show a genuine dispute of material fact about those claims. Nece responds in Doc. 126.

To the extent Nece suggests the depositions "confirmed" Quicken's use of the CallCopy program, Nece offers no explanation for the failure to diligently request an admission or propound an interrogatory after Nece learned about the recordings.

Quicken attacks the declaration as "self-serving," but nothing in the Federal Rules of Civil Procedure permits disregarding a "self-serving" affidavit. As *United States v. Estelle Stein*, —— F.3d ——, 2018 WL 635960 (11th Cir. Jan. 31, 2018), explains, most (if not all) affidavits submitted by a party support that party's claim or defense. 2018 WL 635960 at *4 (holding that a self-serving and uncorroborated affidavit "can" create a genuine dispute of material fact in some circumstances).

Silent about the form or content of a do-not-call request, Section 64.1200(d)(3) describes the procedure with which a company must comply after receiving a do-not-call request.

Although the FCC issued the order after Quicken's calls to Nece, the order can aid in the resolution of this action because the FCC order clarifies rather than alters the applicable law. *See* *Scheweitzer v. Comenity Bank*, 866 F.3d 1273, 1277 n.1 (11th Cir. 2017).

Even viewing the record favorably to Quicken, one call clearly expresses Nece's desire that Quicken stop calling. On December 11, Nece asked Bell to "not[e] for your representative not to keep calling me because it's getting really annoying" and told Bell, "I don't want to be bothered." But as explained elsewhere in this order, a jury might find reasonable the brief delay in failing to honor Nece's request.

Quicken argues that Section 64.1200(d)(3) establishes conclusively the reasonableness of a call less than thirty days after a do-not-call request, but the section establishes as a matter of law only the converse (that is, the unreasonableness of a call more than thirty days after the request). *See, e.g.,* *Wolfkiel v. Intersections Ins. Serv. Inc.*, 303 F.R.D. 287, 292 (N.D. Ill. 2014); *Martin v. Comcast Corp.*, 2013 WL 6229934 (N.D. Ill. Nov. 26, 2013). *But see, e.g.,* *Simmons*, 222 F.Supp.3d at 139, *aff'd mem.*, 686 Fed.Appx. 48 (2d Cir. Apr. 7, 2017); *Orsatti v. Quicken Loans, Inc.*, 2016 WL 7650674 at *7 (C.D. Cal. Sept. 12, 2016).

Nece harps on the word "can" in a training document (Bates No. QL–NECE000319) and argues that Quicken's policy allows but fails to require an employee to record a do-not-call request. Even viewed favorably to Nece, the document (which explains the technical procedure for entering an opt-out request) fails to establish a genuine dispute about the existence or adequacy of Quicken's training.

Additionally, Nece argues unpersuasively that Section 64.1200(d)(4) requires an employee to disclose his "full name" in a call, but the provision says "name," not "full name," "legal name," or "first and last name." A first name is a name. In any event, the disclosure requirements secure a person's ability to identify and respond to a caller, and each employee who left Nece a voicemail included a callback number in the voicemail. (Doc. 40–2 at 48 and 57) Also, two employees

**Nece v. Quicken Loans, Inc., Not Reported in Fed. Supp. (2018)**

Case 1:26-cv-00659-KM    Document 7-3    Filed 05/19/26    Page 70 of 80

named Alex called Nece, one left a voicemail, and the callback number in the voicemail permitted Nece to identify the employee who called.

---

**End of Document**

© 2026 Thomson Reuters. No claim to original U.S. Government Works.

Weingrad v. Top Healthcare Options Insurance Agency Co., Not Reported in Fed....

Case 1:26-cv-00659-KM    Document 7-3    Filed 05/19/26    Page 71 of 80

🚩 KeyCite Yellow Flag

Distinguished by  BRANDON BINETTI, individually and on behalf of all others similarly situated, Plaintiff, v. COLORADO TECHNICAL UNIVERSITY, INC., Defendants.,  D.Or.,  January 21, 2026

2024 WL 4228149
Only the Westlaw citation is currently available.
United States District Court, E.D. Pennsylvania.

Leon WEINGRAD

v.

TOP HEALTHCARE OPTIONS INSURANCE AGENCY CO.

CIVIL ACTION NO. 23-5114
|
Filed September 17, 2024

**Attorneys and Law Firms**

Andrew Roman Perrong, Perrong Law LLC, Glenside, PA, Anthony I. Paronich, Paronich Law, P.C., Hingham, MA, for Leon Weingrad.

Matthew E. Selmasska, Richard J. Perr, Monica M. Littman, Kaufman Dolowich Voluck LLP, Philadelphia, PA, Jeffrey B. Pertnoy, Akerman LLP, Miami, FL, for Top Healthcare Options Insurance Agency Inc.

**MEMORANDUM**

KEARNEY, District Judge

**\*1**  Our elected national and Pennsylvania representatives recognize the potential abuse from telemarketers calling persons to sell identified products. Congress allows offended call recipients who placed their phone numbers on the National Do Not Call Registry to sue telemarketers for more than one call seeking to sell a specific product or service. The Pennsylvania General Assembly requires telemarketers calling Pennsylvania phone numbers to register or face review by the Pennsylvania Attorney General. We today address a claim by a Pennsylvanian who placed his number on the Do Not Call Registry and then answered one call from an alleged Florida telemarketer on December 15, 2023. The Pennsylvanian claims the Florida telemarketer violated federal and state law. But the Pennsylvanian alleges he answered one call last December from the telemarketer seeking to sell "health insurance" with no further facts. We dismiss the federal claim with leave to amend as one answered call does not make a federal case and the call recipient needs to plead more facts about the call contents and to show willful conduct. We dismiss the Pennsylvania claim with prejudice as the General Assembly allows only the Attorney General to prosecute a claim for engaging in telemarketing calls in Pennsylvania without being registered here.

**I. Alleged Facts**

Leon Weingrad placed his residential telephone number on the National Do Not Call Registry sometime before December 2022.[1]  A Florida health insurance marketer Top Healthcare Options Insurance Agency Co. still called him nine times on December 13, 2023 and December 15, 2023 from different phone numbers:[2]

| Date | Caller ID |
| --- | --- |
| 12/13/2023 | (267)282-3676 |

Case 1:26-cv-00659-KM Document 7-3 Filed 05/19/26 Page 72 of 80

Weingrad v. Top Healthcare Options Insurance Agency Co., Not Reported in Fed....

| 12/13/2023 | (267)413-8938 |
|---|---|
| 12/13/2023 | (267)313-6263 |
| 12/15/2023 | (267)429-8460 |
| 12/15/2023 | (267)465-5225 |
| 12/15/2023 | (267)465-5220 |
| 12/15/2023 | (267)313-6305 |
| 12/15/2023 | (267)200-9620 |
| 12/15/2023 | (267)465-5198 |

Mr. Weingrad answered one call from Top Healthcare Options, caller ID (267)465-5198, on December 15, 2023. [3] The caller claimed to work for "National Health Enrolment Centre" and "the purpose of the call was to sell [Mr. Weingrad] health insurance." [4] Mr. Weingrad considered the call unwanted. [5]

## II. Analysis

And he then decided to sue. He alleges Top Healthcare Options violated the Telephone Consumer Protection Act by making calls to his phone number on the national Do Not Call Registry. [6] Mr. Weingrad sues on behalf of a nationwide class of persons who had registered their telephone numbers on the Do Not Call Registry for at least thirty-one days, but who received more than one telemarketing call from or on behalf of Top Healthcare Options, within a twelve-month period in the previous four years. [7]

Mr. Weingrad also alleges Top Healthcare Options violated the Pennsylvania Telemarketer Registration Act by making telemarketing calls without registering with the Office of Attorney General at least thirty days prior to making the calls. [8] Mr. Weingrad sues on behalf of all Pennsylvanians who received a telephone call from or on behalf of Top Healthcare Options acting as a "telemarketer" but not licensed as a "telemarketer" with the Pennsylvania Office of Attorney General. Mr. Weingrad limits this class by a two-year cutoff. [9]

**\*2** Top Healthcare Options now moves to dismiss. [10] Top Healthcare Options argues (1) the Telephone Consumer Protection Act claim is deficient because Mr. Weingrad admits he is speculating about the content of all of the calls except for one, (2) there is no private cause of action under the Pennsylvania Telemarketer Registration Act, (3) the Pennsylvania Telemarketer Registration Act claim is deficient because Mr. Weingrad does not allege he "purchased or leased goods" as required by the Act and he has no allegations of harm, (4) Mr. Weingrad lacks standing to seek injunctive relief, and (5) Mr. Weingrad does not plead facts showing a "willful" or "knowing" violation of the Telephone Consumer Protection Act. [11]

We dismiss Mr. Weingrad's Telephone Consumer Protection Act claim without prejudice because he does not plead he received multiple telephone solicitations and does not plead the contents of the calls he received. We dismiss Mr. Weingrad's claim for treble damages without prejudice as he does not plead a knowing or willful violation of the law. We dismiss Mr. Weingrad's Pennsylvania Telemarketer Registration Act claim with prejudice because there is no private right of action under the Act. And we dismiss Mr. Weingrad's claim for injunctive relief without prejudice as Mr. Weingrad does not plead threat of future harm.

### A. Mr. Weingrad does not state a claim under the Telephone Consumer Protection Act.

Weingrad v. Top Healthcare Options Insurance Agency Co., Not Reported in Fed....

Case 1:26-cv-00659-KM    Document 7-3    Filed 05/19/26    Page 73 of 80

**\*3** We dismiss the Telephone Consumer Protection Act claim without prejudice. Mr. Weingrad did not plead multiple telephone solicitations and did not adequately allege the content of the calls.

### 1. Mr. Weingrad does not allege he received "more than one" telephone call.

Top Healthcare Options argues Mr. Weingrad does not allege he received more than one telephone solicitation from Top Healthcare Options in a twelve-month period, as he makes no allegations about the other eight phone calls he received. [12] Mr. Weingrad pleads he received nine calls from Top Healthcare Options's phone numbers and we must infer those calls were telephone solicitations at this stage. [13]

Congress enacted the Telephone Consumer Protection Act of 1991 in response to consumer complaints about telemarketing calls. [14] Congress through the Act prohibits and restricts violating a consumer's request to not receive calls. [15] Consumers who do not want to receive unsolicited telemarketing calls can register their numbers on the national Do Not Call Registry. [16] Companies engaged in telemarketing must have procedures in place to avoid calling numbers on the Do Not Call Registry. [17] Once a number is registered, businesses have thirty-one days to update their records. [18]

Congress through the Telephone Consumer Protection Act provides "[a] person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection" may assert a claim. [19] Congress provides "no person or entity shall initiate any telephone solicitation to ... a residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the Federal Government." [20] Mr. Weingrad must plead (1) he received more than one telephone solicitation call within twelve months, (2) by or on behalf of the same entity, (3) on a residential phone registered on the Do Not Call Registry. [21]

Top Healthcare Options claims he does not and cannot plead these facts. It relies on Judge Azrack's analysis in *Gillam v. Reliance First Cap., LLC.* [22] In *Gillam*, the call recipient alleged he had registered his cell phone number on the nationwide Do Not Call Registry in February 2017. [23] The call recipient alleged the home loan and refinancing plan marketing company called him seventeen times from the same number between January 2021 and August 2021. [24] The call recipient alleged he answered one call in August 2021 and the caller marketed refinancing products to the call recipient. [25] The home loan company moved to dismiss arguing the call recipient failed to sufficiently allege he received more than one telephone solicitation in the twelve-month period. [26] Judge Azrack agreed and found the call recipient did not "plausibly plead receipt of at least one additional telephone solicitation from [defendant] within the requisite 12-month period [wa]s fatal to his Section 227(c)(5) cause of action." [27] Judge Azrack rejected the call recipient's argument she should consider the other calls as "telephone solicitations" because they came from the same telephone number and close in time to the August 2021 call. [28] Judge Azrack dismissed the complaint with prejudice, reasoning the call recipient failed to plausibly state a claim because blocked, missed, or declined calls are not "telephone solicitations" under the Act. [29]

**\*4** Top Healthcare Options placed nine calls to Mr. Weingrad. [30] But Mr. Weingrad only answered one of these calls. [31] Mr. Weingrad does not allege more than one telephone solicitation within a twelve-month period. He does not presently allege Top Healthcare Options violated the Telephone Consumer Protection Act.

Weingrad v. Top Healthcare Options Insurance Agency Co., Not Reported in Fed....

Case 1:26-cv-00659-KM    Document 7-3    Filed 05/19/26    Page 74 of 80

**2. Mr. Weingrad does not allege the contents of the one call.**

Top Healthcare Options argues Mr. Weingrad pleads insufficient information about the single call he answered.[32] Mr. Weingrad argues we can infer the purpose of the call from the name Top Healthcare Options used, the "National Health Enrolment Centre," and the timing of the call falling in "ObamaCare's Open Enrolment period."[33]

A telephone solicitation violates the Telephone Consumer Protection Act if the purpose of the call encourages "the purchase or rental of, or investment in, property, goods, or services."[34] Call recipients must do more than allege the calls in question were telephone solicitations. Returning again to Judge Azrack's *Gillam* analysis, the call recipient "failed to allege sufficient facts regarding the content of the calls from which the Court could infer ... the purpose of the calls" because plaintiff only stated defendant solicited refinancing products.[35] Judge Azrack noted other courts considering similarly deficient pleadings dismiss with leave to amend.[36] Judge Humetewa reached a similar conclusion in *Gulden v. Consolidated World Travel Inc.*[37] The call recipient in *Gulden* alleged the telemarketer placed calls for the purpose of soliciting products and services but did not provide "factual support that would allow the court to draw a reasonable inference that this is true."[38] Judge Humetewa found the pleading to be "nothing more than a conclusion, which *Twombly* specifically prohibits."[39]

We reviewed Judge Vazquez's early 2023 decision in *Atkinson v. Choice Home Warranty* finding the call recipient sufficiently pleaded the call's contents by alleging "Defendant began calling Ms. Atkinson on her cellular telephone to sell Plaintiff a home warranty plan," the calls were made "for telemarketing purposes," and "Defendant placed calls to Ms. Atkinson on numerous occasions attempting to solicit Plaintiff a home warranty plan that Plaintiff had no interest in."[40] But Judge Vazquez reviewed allegations of further conversations which specifically identified the caller and provided Ms. Atkinson with a website to purchase Choice Home Warranty's products.[41] And our colleagues allow allegations with fulsome information about solicitation calls to proceed into discovery.[42]

Mr. Weingrad only pleads "the purpose of the call was to sell the Plaintiff health insurance."[43] He does not plead a statutory violation without "further factual enhancement."[44] He presently falls short of the required level.

**3. Mr. Weingrad does not allege a "willful" or "knowing" violation.**

**\*5** Top Healthcare Options argues Mr. Weingrad does not allege facts allowing us to plausibly infer Top Healthcare Options willfully violated the Telephone Consumer Protection Act.[45] Mr. Weingrad argues Top Healthcare Options made calls under an illegal fake name, "National Health Enrolment Centre," and used multiple phone numbers to contact Mr. Weingrad because the company knew its actions were illegal.[46]

We may triple the statutory damages if the fact-finder determines Top Healthcare Options "willfully or knowingly violated" the Telephone Consumer Protection Act.[47] Top Healthcare Options must know it performed violative conduct because "[i]f we interpreted the statute to require only that the violator knew he was making a 'call' or sending a fax, the statute would have almost no room for violations that are not 'willful or knowing.' "[48] Mr. Weingrad alleges only "Defendant's violations were negligent, willful or knowing" and Top Healthcare Options called under a false name.[49] This is insufficiently pleaded and Mr. Weingrad, without more, cannot seek trebled damages.[50]

Weingrad v. Top Healthcare Options Insurance Agency Co., Not Reported in Fed....

We dismiss Mr. Weingrad's Telephone Consumer Protection Act claim without prejudice. He does not plead he received multiple telephone solicitations and does not plead the contents of the calls he received. We dismiss Mr. Weingrad's claim for treble damages without prejudice as he does not plead a knowing or willful violation of the law.

**B. Mr. Weingrad does not and cannot state a claim under the Pennsylvania Telemarketer Registration Act.**

Mr. Weingrad sues Top Healthcare Options for engaging in telemarketing in Pennsylvania without registering in the Commonwealth. Top Healthcare Options moves to dismiss this claim arguing there is no private right of action under the Pennsylvania Telemarketer Registration Act. [51] Mr. Weingrad admits the Pennsylvania mandate. But he then suggests the alleged Pennsylvania Telemarketer Registration Act violation can constitute a predicate claim under the Pennsylvania Unfair Trade Practices and Consumer Protection Law. [52]

The Pennsylvania General Assembly vested the authority to enforce the Pennsylvania Telemarketer Registration Act with Pennsylvania's Attorney General. [53] "[W]here the General Assembly commits the enforcement of a regulatory statute to a government body or official, this precludes enforcement by private individuals." [54] There is no private cause of action under the Pennsylvania Telephone Registration Act. [55]

**\*6** Mr. Weingrad cannot sidestep the General Assembly's policy by presenting his Pennsylvania Telemarketer Registration Act claim as a predicate claim under Pennsylvania's Unfair Trade Practices and Consumer Protection Law because "the UTPCPL's private action applies only to a 'person who purchases or leases goods or services primarily for personal, family or household purposes and thereby suffers any ascertainable loss of money or property, real or personal' as a result of covered unlawful practices." [56] Mr. Weingrad did not do so. [57]

We dismiss Mr. Weingrad's Pennsylvania Telemarketer Registration Act claim with prejudice because there is no private right of action under the Act.

**C. Mr. Weingrad cannot seek injunctive relief.** [58]

Mr. Weingrad seeks injunctive relief even though there is no basis to find a call after December 2023 or risk of a call. [59] Top Healthcare Options argues Mr. Weingrad is not entitled to injunctive relief because he has not pleaded threat of future harm. [60] Mr. Weingrad argues he must only plead a statutory violation to establish standing to seek injunctive relief. [61]

Standing must be shown "for each claim ... and for each form of relief [sought] (for example, injunctive relief and damages)." [62] Mr. Weingrad must plead facts from which we can plausibly find he is "likely to suffer future injury" from Top Healthcare Option's conduct to have standing to seek injunctive relief. [63] He must plead "continuing, present adverse effects" and may not rely solely on "[p]ast exposure to illegal conduct." [64] And "[i]njunctive relief cannot automatically be granted upon a finding of statutory violation." [65]

**\*7** Mr. Weingrad does not plead threat of future harm. [66] We dismiss Mr. Weingrad's claim for injunctive relief without prejudice.

**III. Conclusion**

We grant Top Healthcare Options's motion. We dismiss the Telephone Consumer Protection Act claim, as well as a claim for injunctive relief, without prejudice to timely amend. Mr. Weingrad may be able to plead facts under federal law but cannot

Case 1:26-cv-00659-KM    Document 7-3    Filed 05/19/26    Page 76 of 80

Weingrad v. Top Healthcare Options Insurance Agency Co., Not Reported in Fed....

allege a separate claim for injunctive relief. Equitable relief is part of a remedy for a violation. We dismiss the Pennsylvania Telemarketer Registration Act claim with prejudice as there is no private right of action under the Act.

**All Citations**

Not Reported in Fed. Supp., 2024 WL 4228149

---

**Footnotes**

1 ECF 12 ¶ 20.

2 *Id.* ¶ 30. Top Healthcare Options is a Florida health insurance marketing corporation. *Id.* ¶¶ 6, 29. Top Healthcare Options is not registered as a telemarketer with the Attorney General of Pennsylvania. *Id.* ¶ 18.

3 *Id.* ¶ 32.

4 *Id.*

5 *Id.* ¶ 33.

6 *Id.* ¶¶ 56–60.

7 *Id.* ¶ 41.

8 *Id.* ¶¶ 61–64.

9 *Id.* ¶ 41.

10 A complaint must state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). The purpose of Rule 12(b)(6) is to test the sufficiency of the factual allegations in a complaint. *Sanders v. United States*, 790 F. App'x 424, 426 (3d Cir. 2019). If a plaintiff is unable to plead "enough facts to state a claim to relief that is plausible on its face," the court should dismiss the complaint. *Id.* (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Kajla v. U.S. Bank Nat'l Ass'n as Tr. for Credit Suisse First Boston MBS ARMT 2005-8*, 806 F. App'x 101, 104 n.5 (3d Cir. 2020) (quoting *Warren Gen. Hosp. v. Amgen Inc.*, 643 F.3d 77, 84 (3d Cir. 2011)). "A claim is facially plausible 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.' " *Klotz v. Celentano Stadtmauer and Walentowicz LLP*, 991 F.3d 458, 462 (3d Cir. 2021) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). While "[t]he plausibility standard is not akin to a 'probability requirement,' " it does require the pleading show "more than a sheer possibility ... a defendant has acted unlawfully." *Riboldi v. Warren Cnty. Dep't of Human Servs. Div. of Temp. Assistance & Soc. Servs.*, 781 F. App'x 44, 46 (3d Cir. 2019) (quoting *Iqbal*, 556 U.S. at 678). "A pleading that merely 'tenders naked assertion[s] devoid of further factual enhancement' is insufficient." *Id.* (quoting *Iqbal*, 556 U.S. at 668).

In determining whether to grant a Rule 12(b)(6) motion, "we accept all well-pleaded allegations as true and draw all reasonable inferences in favor of the plaintiff" but "disregard threadbare recitals of the elements of a cause of action, legal conclusions, and conclusory statements." *Robert W. Mauthe, M.D., P.C. v. Spreemo, Inc.*, 806 F. App'x 151, 152 (3d Cir. 2020) (quoting *City of Cambridge Ret. Sys. v. Altisource Asset Mgmt. Corp.*, 908 F.3d 872, 878–79 (3d Cir. 2018)). Our Court of Appeals requires us to apply a three-step analysis to a 12(b)(6) motion: (1) we " 'tak[e] note of the

Case 1:26-cv-00659-KM    Document 7-3    Filed 05/19/26    Page 77 of 80

Weingrad v. Top Healthcare Options Insurance Agency Co., Not Reported in Fed....

elements a plaintiff must plead to state a claim' "; (2) we "identify allegations that ... 'are not entitled to the assumption of truth' because those allegations 'are no more than conclusion[s]' "; and, (3) " '[w]hen there are well-pleaded factual allegations,' we 'assume their veracity' ... in addition to assuming the veracity of 'all reasonable inferences that can be drawn from' those allegations ... and, construing the allegations and reasonable inferences 'in the light most favorable to the [plaintiff]' ..., we determine whether they 'plausibly give rise to an entitlement to relief.' " *Oakwood Lab'ys LLC v. Thanoo*, 999 F.3d 892, 904 (3d Cir. 2021) (internal citations omitted); *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016).

11  ECF 24-1.

12  *Id.* at 4–8.

13  ECF 30 at 4–11.

14  Pub. L. No. 102-243, 105 Stat. 2394 (1991) (codified at 47 U.S.C. § 227).

15  *Id.* at § 227(c)(3).

16  47 C.F.R. § 64.1200(c)(2).

17  *Id.* at § 64.1200(c)(2), (e), (f).

18  *Id.* at § 64.1200(c)(2)(i)(D).

19  47 U.S.C. § 227(c)(5).

20  47 C.F.R. § 64.1200(c)(2).

21  *Camunas v. Nat'l Republican Senatorial Comm.*, 541 F. Supp. 3d 595, 604 (E.D. Pa. 2021) (quoting *Smith v. Vision Solar LLC*, No. 20-2185, 2020 WL 5632653, at *3 (E.D. Pa. Sept. 21, 2020)).

22  No. 21-4774, 2023 WL 2163775 (E.D.N.Y. Feb. 22, 2023).

23  *Id.* at *1.

24  *Id.*

25  *Id.*

26  *Id.* at *2–3.

27  *Id.* at *3 (citing 47 U.S.C. § 227(c)(5); 47 C.F.R. § 64.1200(f)(15)).

28  *Id.*

29  *Id.* at *3–4; *see also Greene v. Select Funding, LLC*, No. 20-7333, 2021 WL 4926495, at *5 (C.D. Cal. Feb. 5, 2021) (emphasis in original) ("[W]hile [plaintiff] alleges that he received eight calls from Defendant's number within a one-year period, he only answered one of these calls—on April 10, 2020. Thus, at best, Plaintiff has only alleged *one*

Case 1:26-cv-00659-KM    Document 7-3    Filed 05/19/26    Page 78 of 80

Weingrad v. Top Healthcare Options Insurance Agency Co., Not Reported in Fed....

telephone solicitation ... [and] has not alleged the content of the other calls that would allow the Court to reasonably infer that these other calls were solicitations.").

Not all courts have reached the same conclusion, but on distinguishable facts. In *Whittaker v. Freeway Insurance Services Am., LLC*, Judge Campbell rejected telemarketer's argument the call recipient failed to allege more than one telephone solicitation reasoning "[m]ultiple calls from the same telephone number over the course of a few days suggests a common purpose in the calls, and the recorded voicemail clearly suggests the purpose of the calls." No. 22-8042, 2023 WL 167040, at *2 (D. Ariz. Jan. 12, 2023). But the call recipient before Judge Campbell not only received four calls and a voicemail from the same number; but also affirmatively called the company back and spoke with the company about the calls' purpose. *Id.* at *1. Mr. Weingrad received calls from nine different numbers allegedly associated with Top Healthcare Options. *Cf. Atkinson v. Choice Home Warranty*, No. 22-4464, 2023 WL 166168, at *5 (D.N.J. Jan. 11, 2023) (distinguishing *Greene*, 2021 WL 4926495) (call recipient answered three calls from company and received repeated calls from the same number); *Spurlark v. Dimension Serv. Corp.*, No. 21-3803, 2022 WL 2528098, at *1 (S.D. Ohio July 7, 2022) (call recipient received voicemails on ignored calls and ultimately answered an incoming call and spoke with a representative for the company); *Bird v. Pro Star Builders, Inc.*, No. 22-3610, 2022 WL 18216007, at *1 (C.D. Cal. Nov. 28, 2022) (all calls to call recipient, including the call the recipient answered, came from the same telephone number); *Chapman v. Nat'l Health Plans & Benefits Agency, LLC*, 619 F. Supp. 3d 788, 790 (E.D. Mich. 2022) (same); *Toney v. Quality Res., Inc.*, 75 F. Supp. 3d 727, 732 (N.D. Ill. 2014) (same).

30    ECF 12 ¶¶ 30–31.

31    *Id.* ¶ 32.

32    ECF 24-1 at 6 n.2.

33    ECF 30 at 4–5.

34    47 C.F.R. § 64.1200(f)(15).

35    *Gillam*, 2023 WL 2163775, at *3.

36    *Id.*

37    No. 16-01113, 2017 WL 3841491 (D. Ariz. Feb. 15, 2017).

38    *Id.* at *3.

39    *Id.* (citing *Twombly*, 550 U.S. at 555).

40    No. 22-4464, 2023 WL 166168, at *5 (D.N.J. Jan. 11, 2023).

41    *Id.* at *1.

42    *See, e.g., Dudley v. Vision Solar, LLC*, No. 21-659, 2021 WL 3077557, at *1 (E.D. Pa. July 21, 2021) (plaintiff pleading detailed allegations about the content of telephone solicitation calls).

43    ECF 12 ¶ 32.

44    *Twombly*, 550 U.S. at 557.

Weingrad v. Top Healthcare Options Insurance Agency Co., Not Reported in Fed....

Case 1:26-cv-00659-KM    Document 7-3    Filed 05/19/26    Page 79 of 80

45    ECF 24-1 at 13–14.

46    ECF 30 at 13–15.

47    🚩 47 U.S.C. § 227(b)(3)(C).

48    🚩 *Lary v. Trinity Physician Fin. & Ins. Servs.*, 780 F.3d 1101, 1107 (11th Cir. 2015).

49    ECF 12 ¶¶ 6, 58, 63.

50    *See, e.g., Blair v. Assurance IQ LLC,* No. 23-16, 2023 WL 6622415, at *4 (W.D. Wash. Oct. 11, 2023) (dismissing trebled damages from a Telephone Consumer Protection Act case for insufficient pleading); *Fania v. Verified Docu Serv., Inc.*, No. 22-2652, 2024 WL 1012963, at *4–5 (M.D. Fla. Mar. 8, 2024) (same).

51    ECF 24-1 at 8–10.

52    ECF 30 at 15–20.

53    73 PA. CONS. STAT. § 2245.2(k)(1).

54    🚩 *Shelton v. FCS Cap. LLC*, No. 18-3723, 2019 WL 6726404, at *3 (E.D. Pa. Dec. 11, 2019) (quoting *Lerro ex rel. Lerro v. Upper Darby Twp.*, 798 A.2d 817, 822 (Pa. Commw. Ct. 2002)).

55    *Id.* ("[T]he PTRA's language demonstrates the General Assembly's intent to commit enforcement of the PTRA to the Attorney General. Shelton therefore cannot maintain such a claim as a matter of law.").

56    *Perrong v. CMI Mktg. Rsch. Inc.*, No. 22-3733, 2023 WL 6277299, at *3 (E.D. Pa. Sept. 26, 2023) (quoting 73 PA. CONS. STAT. § 201-9.2(a)) (holding a violation of the Pennsylvania Telemarketer Registration Act could not serve as a predicate claim under Pennsylvania's Unfair Trade Practices and Consumer Protection Law).

57    Mr. Weingrad responds arguing he can show ascertainable loss by highlighting the battery power and data storage space he loses by receiving unwanted phone calls. ECF 30 at 15–20. But Mr. Weingrad ignores the General Assembly's requirement Unfair Trade Practices and Consumer Protection Law claimants must show ascertainable loss tied to "purchase[d] or lease[d] goods or services" as a result of the covered unlawful practice. 73 Pa. Stat. § 201-9.2. Mr. Weingrad does not allege that he purchased his phone, electricity, or phone data from Top Healthcare Options.

58    Mr. Weingrad argues Top Healthcare Options should have challenged standing under Federal Rule of Civil Procedure 12(b)(1). ECF 30 at 11. But we "have an independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party." 🚩 *Hartig Drug Co. Inc. v. Senju Pharm. Co.*, 836 F.3d 261, 267 (3d Cir. 2016) (quoting 🚩 *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006)).

59    ECF 12 at 12.

60    ECF 24-1 at 10–13.

61    ECF 30 at 11–13. Mr. Weingrad relies on 🚩 *Abramson v. AP Gas & Elec. (PA), LLC*, No. 22-1299, 2023 WL 1782728 (W.D. Pa. Feb. 6, 2023). In *Abramson*, the defendant-caller was sued for using automated voice messages, not for a Do Not Call Registry violation, and defendant had been earlier sued for the same statutory violation. *Id.* at *4–5.

62    🚩 *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021) (citations omitted).

Weingrad v. Top Healthcare Options Insurance Agency Co., Not Reported in Fed....

Case 1:26-cv-00659-KM    Document 7-3    Filed 05/19/26    Page 80 of 80

63    🚩*McNair v. Synapse Group Inc.*, 672 F.3d 213, 223 (3d Cir. 2012) (quoting 🚩*City of Los Angeles v. Lyons*, 461 U.S. 95, 105 (1983)).

64    🚩*O'Shea v. Littleton*, 414 U.S. 488, 495–96 (1974).

65    *Int'l Union, United Auto. Aerospace & Agr. Implement Workers of Am., AFL-CIO v. Amerace Corp.*, 740 F. Supp. 1072, 1086 (D.N.J. 1990) (citing 🚩*Weinberger v. Romero–Barcelo*, 456 U.S. 305, 312 (1982); 🚩*Natural Resources Defense Council, Inc. v. Texaco Refining and Marketing, Inc.*, 906 F.2d 934 (3d Cir. 1990)).

66    Our colleagues dismiss injunctive relief remedies for Telephone Consumer Protection Act claims where plaintiffs fail to plead future harm. *See, e.g., Zononi v. CHW Grp., Inc.*, No. 22-14358, 2023 WL 2667941, at *5 (S.D. Fla. Mar. 7, 2023) (dismissing injunctive relief from Telephone Consumer Protection Act claim); 🚩*Schaevitz v. Braman Hyundai, Inc.*, 437 F. Supp. 3d 1237, 1251–52 (S.D. Fla. 2019) (same).

---

**End of Document**

© 2026 Thomson Reuters. No claim to original U.S. Government Works.