**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| KELLY BLAND, individually and on behalf of all others similarly situated, | |
| *Plaintiff*, | Case No. 1:26-CV-00659-KM |
| *v.* | HON. KAROLINE MEHALCHICK |
| HUMANA INC. | |
| *Defendant*. | |

**DEFENDANT HUMANA INC.'S MEMORANDUM OF LAW
IN SUPPORT OF ITS MOTION TO STRIKE CLASS ALLEGATIONS**

## TABLE OF CONTENTS

I.    INTRODUCTION ...................................................................................1

II.   PROCEDURAL STATEMENT......................................................................2

III.  STATEMENT OF QUESTIONS INVOLVED ...............................................2

IV.   FACTUAL ALLEGATIONS........................................................................3

V.    LEGAL STANDARD ...............................................................................4

VI.   ARGUMENT—PLAINTIFF'S PROPOSED CLASS DEFINITIONS
      MUST BE STRICKEN BECAUSE THEY ARE FACIALLY
      UNCERTIFIABLE AS A MATTER OF LAW. ..............................................7

   A.   The Proposed Classes Are Overly Broad As Defined. ...............................7

      1.   The National DNC Class Is Overly Broad Because It Improperly
           Includes Individuals Who Have Not Personally Registered Their
           Telephone Numbers On The National DNC Registry............................9

      2.   The National DNC Class and Internal DNC Class are Overly Broad
           Because They Include Individuals Who Consented To Receive Calls
           Or Had An Established Business Relationship With Humana..............13

   B.   The Proposed Class Members Lack Commonality..................................14

   C.   The Proposed Classes Are Uncertifiable Because They Are Not
        Defined On Objective Criteria And Instead Depend On Resolution of
        Merits Inquiries.....................................................................16

VII.  CONCLUSION.....................................................................................19

ii

# TABLE OF AUTHORITIES

**Cases**

*A Custom Heating & Air Conditioning, Inc. v. Kabbage, Inc.*,

2018 WL 488257 (N.D. Ill. Jan. 18, 2018)..........................................................7

*Abdul–Akbar v. McKelvie,*

239 F.3d 307 (3d Cir.2001).........................................................................10

*Barnes v. Coca-Cola Co.*,

2025 WL 1027431 (E.D. Cal. Apr. 7, 2025) ...................................................7, 13

*Bell Atl. Corp. v. Twombly*,

550 U.S. 544 (2006)......................................................................................5

*Blades v. Monsanto Co.*,

400 F.3d 562 (8th Cir. 2005) .......................................................................14

*Brashear v. Perry Cnty., Ky.*,

2007 WL 1434876 (E.D. Ky. May 14, 2007).................................................13

*Broking v. Green Brook Buick GMG Suzuki*,

2017 WL 3610490 (D.N.J. Aug. 22, 2017) ...................................................18

*Brown v. Electrolux Home Products, Inc.*,

817 F.3d 1225 (11th Cir. 2016) ...................................................................17

*Brown v. Nano Hearing Tech Opco, LLC*,

2024 WL 3367536 (S.D. Cal. July 9, 2024) ............................................. 12, 13

*Bynum v. Red River Talc, LLC*,

2026 WL 242063 (D.N.J. Jan. 29, 2026).........................................................5

*Byrd v. Aaron's Inc.,*

784 F.3d 154 (3d Cir. 2015).........................................................................16

*Daniel v. Five Stars Loyalty, Inc.*,

2015 WL 7454260 (N.D. Cal. Nov. 24, 2015) ...............................................18

*de Lacour v. Colgate-Palmolive Co.*,

    338 F.R.D. 324 (S.D.N.Y. 2021.................................................................................16

*Dobrek v. Phelan,*

    419 F.3d 259 (3d Cir. 2005).....................................................................................10

*DuRocher v. Nat'l Collegiate Athletic Ass'n*,

    2015 WL 1505675 (S.D. Ind. Mar. 31, 2015) ........................................................8

*Ebert v. Gen. Mills, Inc.*,

    823 F.3d 472 (8th Cir. 2016) .................................................................................14

*Garlanger v. Verbeke*,

    223 F. Supp. 2d 596 (D.N.J. 2002)..........................................................................4

*Gen. Tel. Co. of Sw. v. Falcon*,

    457 U.S. 147 (1982)...............................................................................................14

*Harleysville Mut. Ins. Co. v. GE Reinsurance Corp.*,

    2002 WL 922148 (E.D. Pa. May 6, 2002).................................................................4

*In re Armstrong World Indus., Inc.*,

    432 F.3d 507 (3d Cir. 2005)...................................................................................10

*In re Philadelphia Newspapers, LLC*,

    418 B.R. 548 (E.D. Pa. 2009) .............................................................................9, 10

*Jamison v. First Credit Servs.*,

    2013 WL 3872171 (N.D. Ill. July 29, 2013)...........................................................12

*Kamm v. California City Dev. Co.*,

    509 F.2d 205 (9th Cir. 1975) ...................................................................................5

*Kohen v. Pac. Inv. Mgmt. Co. LLC & PIMCO Funds*,

    571 F.3d 672 (7th Cir. 2009) ........................................................................ 6, 7, 8

*Lackawanna Chiropractic P.C. v. Tivity Health Support, LLC*,

    2019 WL 7195309 (W.D.N.Y. Aug. 29, 2019).......................................................6

iv

*Leon v. Loandepot.com, LLC*,

    2025 WL 2632396 (C.D. Cal. Aug. 22, 2025) ...................................................12

*Manning v. Boston Med. Ctr. Corp.*,

    725 F.3d 34 (1st Cir. 2013).........................................................................................4

*Martin v. Struthers*,

    319 U.S. 141 (1943)..................................................................................................11

*Martinez v. TD Bank USA, N.A.*,

    2017 WL 2829601 (D.N.J. June 30, 2017).........................................................12

*McElhaney v. Eli Lilly & Co.*,

    93 F.R.D. 875 (D.S.D. 1982) ....................................................................................7

*McInerney v. Moyer Lumber and Hardware, Inc.*,

    244 F. Supp. 2d 393 (E.D. Pa. 2002) ....................................................................4

*Messner v. Northshore Univ. Health Sys.*,

    699 F.3d 802 (7th Cir. 2012) ...................................................................................14

*Mira v. Nuclear Measurements Corp.*,

    107 F.3d 466 (7th Cir.1997) ....................................................................................17

*MSP Recovery Claims v. Plymouth Rock Assur. Corp., Inc.*,

    404 F. Supp. 3d 470 (D. Mass. 2019) ...................................................................17

*PFT of Am., Inc. v. Tradewell, Inc.*,

    1999 WL 179358 (S.D.N.Y. Mar. 31, 1999).........................................................7

*Pilgrim v. Universal Health Card, LLC*,

    660 F.3d 943 (6th Cir.2011) ...............................................................................4, 5

*Rikos v. Procter & Gamble Co.*,

    799 F.3d 497 (6th Cir. 2015) ...................................................................................16

*Rivera v. Harvest Bakery Inc.*,

    312 F.R.D. 254 (E.D.N.Y. 2016).............................................................................7

*Rombough v. Robert D. Smith Ins. Agency, Inc.*,

    2022 WL 2713278 (N.D. Iowa June 9, 2022) ...............................................9, 15

*Saf-T-Gard Int'l, Inc. v. Wagener Equities, Inc.*,

    251 F.R.D. 312 (N.D. Ill. 2008)...............................................................17

*Sandusky Wellness Ctr., LLC v. Medtox Sci., Inc.*,

    821 F.3d 992 (8th Cir. 2016) ..................................................................16

*Semenko v. Wendy's Int'l, Inc.*,

    2013 WL 1568407 (W.D. Pa. Apr. 12, 2013).......................................................5

*Sowders v. Scratch Fin., Inc.*,

    2023 WL 7525900 (S.D. Ohio Nov. 14, 2023) ..................................................17

*Spine & Sports Chiropractic, Inc. v. ZirMed, Inc.*,

    2014 WL 2946421 (W.D. Ky. June 30, 2014).......................................................7

*St. Louis Heart Ctr., Inc. v. Vein Centers for Excellence, Inc.*,

    2017 WL 2861878 (E.D. Mo. July 5, 2017)................................................. 16, 17

*TransUnion LLC v. Ramirez*,

    594 U.S. 413 (2021)...............................................................................13

*Ung v. Universal Acceptance Corp.*,

    319 F.R.D. 537 (D. Minn. 2017)..................................................................12

*United States v. Ron Pair Enters., Inc.*,

    489 U.S. 235 (1989)...............................................................................10

*Vega v. T-Mobile USA, Inc.*,

    564 F.3d 1256 (11th Cir. 2009) ..................................................................14

*Vigus v. Southern Illinois Riverboat/Casino Cruises, Inc.*,

    274 F.R.D. 229 (S.D. Ill. 2011) ..................................................................6

*Walewski v. Zenimax Media, Inc.*,

    502 F. App'x 857 (11th Cir. 2012) ................................................................6

*Wal-Mart Stores, Inc. v. Dukes*,

    564 U.S. 338 (2011)...............................................................................4, 14

*Warnick v. Dish Network LLC*,

    301 F.R.D. 551 (D. Colo. 2014) .......................................................................12

*Weister v. Vantage Point AI, LLC*,

    2022 WL 3139373 (M.D. Fla. Aug. 3, 2022) .....................................................18

*Yagman v. Allianz Ins.*,

    2015 WL 5553460 (C.D. Cal. May 11, 2015) .....................................................6

**Statutes and Rules**

47 C.F.R. § 64.1200 ...................................................................... 9, 10, 13, 15

47 U.S.C. § 227.............................................................................................8

Fed. R. Civ. P. 12 .........................................................................................4

Fed. R. Civ. P. 23 .........................................................................................5

**Other Authorities**

*In re Rules & Reguls. Implementing the Tel. Consumer Prot. Act of 1991*,

    18 FCC Rcd. 14014 (2003)..............................................................................11

Defendant Humana Inc. ("Humana"), by and through its undersigned counsel, hereby moves this Honorable Court for an Order striking the class allegations[1] of the Plaintiff Kelly Bland's ("Plaintiff") Complaint.

## I.  INTRODUCTION

Plaintiff seeks to represent three facially uncertifiable classes in a manner that discovery cannot cure. This Court should strike the proposed class definitions here and now, rather than allowing the parties and the Court to expend valuable time and resources on discovery.

Plaintiff's proposed classes are overly broad and lack commonality because they indiscriminately include individuals who received calls regardless of whether those calls were made to individuals with an established business relationship ("EBR"). This defect also destroys the requisite Rule 23 commonality, as individualized mini-trials into personal registration, consent, and EBR status would overwhelm any potential common questions.

---

[1] Opposing counsel has informed counsel for Humana that he is under the belief that the Motion to Dismiss and Motion to Strike must be filed as a single document. However, filing separate motions is a common and understood practice in this jurisdiction, and neither the Local Rules nor the Court's Individual Practices preclude it. To the extent the Court determines the motions should be consolidated, Humana respectfully request leave to amend and refile them as a single document. See e.g. Friel v. Line 5, LLC, et al, No. 3:24-cv-01866 (M.D. Pa.); Caldiero v. Missouri Higher Education Loan Authority et al, No. 3:24-cv-00315 (M.D. Pa.); and Shoemaker et al v. Zeitlin et al, No. 1:21-cv-01668 (M.D. Pa.).

Additionally, the proposed class definitions are impermissibly merits-based. Membership in the National DNC Class, the Internal DNC Class, and the Telemarketing Caller ID Class explicitly depends on whether an individual received "telemarketing" calls. This requires the Court to make a substantive liability determination on the content of every single call just to identify who is in the class— a prohibited practice that violates the rule against one-way intervention.

Because these fatal flaws make certification impossible as a matter of law, the class allegations should be stricken in their entirety.

## II.    PROCEDURAL STATEMENT

On or about March 16, 2026, Plaintiff filed the instant action asserting claims against Humana alleging violations of the Telephone Consumer Protection Action. Dkt. 1.

## III.    STATEMENT OF QUESTIONS INVOLVED

1.    Whether the Court should strike the class allegations where the proposed classes are overly broad?

2.    Whether the Court should strike the class allegations where the proposed class members lack commonality?

3.    Whether the Court should strike the class allegations where the proposed classes are not defined on objective criteria?

## IV.   FACTUAL ALLEGATIONS

Plaintiff alleges that she received calls on her personal residential number from a call center hired by Humana on February 1, 2025, September 18, 2025, and October 16, 2025, despite her number being listed on the National DNC Registry. Complaint ("Compl.") at ¶¶ 32-34, 36. Plaintiff alleges to have received a first call on February 1, 2025, from a caller representing a fictitious company called the "Medicare Help Centre" while using a spoofed caller ID (208-252-3862). *Id*. at ¶ 33. Plaintiff alleges she instructed the caller to stop calling. *Id*. On September 18, 2025, Plaintiff missed a call from an alleged spoofed caller ID (817-786-1954). *Id*. at ¶34. On October 16, 2025, Plaintiff alleges that she received another call from a different spoofed caller ID (817-786-1166) with the caller again claiming to be representing "Medicare Help Centre." *Id*. at ¶¶ 36-37. This call was ultimately transferred to Hassan Rashid ("Mr. Rashid"), a licensed Humana Medicare agent who attempted to sell Plaintiff a Humana Medicare insurance policy. *Id*. at ¶ 42. Plaintiff admits that when she then confronted the Humana agent about the calls, the agent explained that he hired a telemarketing vendor that "went rogue." *Id*. at ¶ 43.

Plaintiff further alleges that her counsel "dipped" the Caller ID database, which revealed that the September and October calls were from telemarketers utilizing inaccurate Caller ID Name ("CNAM") functionality (e.g., "POCATELLO ID," "MPHASIS," and "PRIVATE") to hide its identity. *Id*. at ¶¶ 46-47. Plaintiff

3

alleges that these numbers prevented her from calling back and lodging a DNC request. *Id*. at ¶ 49.

Based on those allegations, Plaintiff seeks to represent the following nationwide classes:

> **National DNC Class**: All persons in the United States whose (1) telephone numbers were on the National Do Not Call Registry for at least 31 days, (2) but who received more than one telemarketing call from or on behalf of Defendant encouraging the purchase of Humana Inc.'s goods or services, (3) within a 12-month period (4) at any time in the period that begins four years before the date of filing this Complaint to trial.

> **Telemarketing Caller ID Class**: All persons within the United States to whom: (1) Defendant (or a third-party acting on behalf of Defendant) sent (2) two or more telemarketing calls in a 12-month period, (3) which either (a) did not transmit caller identification information that included either CPN or ANI and the Defendant's or telemarketer's name, (b) did not transmit a valid CPN or ANI at all, or (c) transmitted a CPN or ANI that would not have allowed an individual to make a do not call request during regular business hours, (4) within the four years prior to the filing of the Complaint.

> **Internal Do Not Call Class**: All persons within the United States to whom: (1) Defendant (or a third-party acting on behalf of Defendant) sent (2) two or more telemarketing calls in a 12-month period, (3) who were not current customers of the Defendant at the time of the calls, (4) who had previously asked for the calls to stop, and (5) within the four years prior to the filing of the Complaint.

*Id*. at ¶ 56.

## V.    **LEGAL STANDARD**

Federal Rule of Civil Procedure 12(f) provides that a "court may strike from a pleading...any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). "The purpose of a motion to strike is to clean up the pleadings,

streamline litigation, and avoid unnecessary forays into immaterial matters." *McInerney v. Moyer Lumber and Hardware, Inc.*, 244 F. Supp. 2d 393, 402 (E.D. Pa. 2002) (citing *Garlanger v. Verbeke*, 223 F. Supp. 2d 596, 609 (D.N.J. 2002)). While motions to strike are not favored, they will be granted where "the allegations have no possible relation to the controversy and may cause prejudice to one of the parties." *Id.* (citing *Harleysville Mut. Ins. Co. v. GE Reinsurance Corp.*, No. CIV. A. 02-171, 2002 WL 922148, *6-7 (E.D. Pa. May 6, 2002)).

A class action complaint must plead "the existence of a group of putative class members whose claims are susceptible of resolution on a classwide basis." *Manning v. Boston Med. Ctr. Corp.*, 725 F.3d 34, 59 (1st Cir. 2013) (citing *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011)). "If it is obvious from the pleadings that the proceeding cannot possibly move forward on a classwide basis, district courts use their authority under Federal Rule of Civil Procedure 12(f) to delete the complaint's class allegations." *Id.* (citing *Pilgrim v. Universal Health Card, LLC,* 660 F.3d 943, 949 (6th Cir.2011) (affirming the district court's judgment striking the class allegations prior to close of discovery and motion to certify class)).

Decisions on class certification should be made "[a]t an early practicable time after a person sues." Fed. R. Civ. P. 23(c)(1)(A); *see also Pilgrim*, 660 F.3d at 949 ("[E]ither plaintiff or defendant may move for a determination of whether the action may be certified under Rule 23(c)(1).") (citations omitted).

Striking a class definition at the pleadings stage is particularly appropriate when it is facially uncertifiable in a manner that discovery cannot resolve. *Bynum v. Red River Talc, LLC*, No. 24-7065 (MAS) (RLS), 2026 WL 242063, at *3 (D.N.J. Jan. 29, 2026) ("A district court may strike class action allegations without permitting discovery or waiting for a certification motion where the complaint and any affidavits clearly demonstrate that the plaintiff cannot meet the requirements for a class action."). "District courts have broad discretion to control the class certification process, and '[w]hether or not discovery will be permitted ... lies within the sound discretion of the trial court.'" *Semenko v. Wendy's Int'l, Inc.*, No. 2:12-CV-0836, 2013 WL 1568407, at *3 (W.D. Pa. Apr. 12, 2013) (quoting *Kamm v. California City Dev. Co.*, 509 F.2d 205, 209 (9th Cir. 1975)).

Indeed, courts have recognized the dangers of allowing a facially uncertifiable class to proceed to discovery. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558-59 (2006) (emphasizing the expense and burden of discovery in class actions and stressing that neither "careful case management," nor "careful scrutiny of [the] evidence at the summary judgment stage," will protect defendant from incurring enormous discovery costs) (citation omitted); *see also Yagman v. Allianz Ins.*, No. LACV1500921JAKJCX, 2015 WL 5553460, at *4 (C.D. Cal. May 11, 2015) (failing to strike plaintiff's class allegations "would inject significant uncertainty as to the scope of discovery and other pretrial proceedings").

**VI.   ARGUMENT—PLAINTIFF'S PROPOSED CLASS DEFINITIONS MUST BE STRICKEN BECAUSE THEY ARE FACIALLY UNCERTIFIABLE AS A MATTER OF LAW.**

**A. The Proposed Classes Are Overly Broad As Defined.**

A class is overbroad and uncertifiable where it contains a large number of potential members who have "no grievance" with the defendant. *Kohen v. Pac. Inv. Mgmt. Co. LLC & PIMCO Funds*, 571 F.3d 672, 678 (7th Cir. 2009) ("[A] class should not be certified if it contains a great many of persons who have suffered no injury."); *Walewski v. Zenimax Media, Inc.,* 502 F. App'x 857, 861 (11th Cir. 2012) (affirming denial of class certification where proposed class definition "impermissibly include[d] members who have no cause of action"); *Lackawanna Chiropractic P.C. v. Tivity Health Support, LLC*, No. 18-CV-00649-LJV-JJM, 2019 WL 7195309, at 3 (W.D.N.Y. Aug. 29, 2019), report and recommendation adopted, No. 18-CV-649, 2019 WL 7194525 (W.D.N.Y. Dec. 26, 2019) (citing *Vigus v. Southern Illinois Riverboat/Casino Cruises, Inc.*, 274 F.R.D. 229, 235 (S.D. Ill. 2011) (holding that when a proposed class includes a substantial number of people who voluntarily gave their numbers and have no grievance, their inclusion renders it overbroad and unfit for certification)); *Rivera v. Harvest Bakery Inc.*, 312 F.R.D. 254, 268 (E.D.N.Y. 2016) (holding that the proposed class definition was overbroad).

This is true because some class members do not "share a viable claim." *A*

7

*Custom Heating & Air Conditioning, Inc. v. Kabbage, Inc.*, No. 16 C 2513, 2018 WL 488257, at 4 (N.D. Ill. Jan. 18, 2018); *see Spine & Sports Chiropractic, Inc. v. ZirMed, Inc.*, No. 3:13-CV-00489-TBR, 2014 WL 2946421, at 10 (W.D. Ky. June 30, 2014) (holding the class definition is overbroad in that it includes persons who have no claim under the TCPA.); *McElhaney v. Eli Lilly & Co.*, 93 F.R.D. 875, 878 (D.S.D. 1982) ("The definition of a class cannot be so broad as to include individuals who are without standing to maintain the action on their own behalf."). And where overbreadth is apparent at the pleadings stage, a class is properly stricken. *PFT of Am., Inc. v. Tradewell, Inc.*, No. 98 Civ. 6413, 1999 WL 179358, at *1 (S.D.N.Y. Mar. 31, 1999) (striking class claims where the class was not sufficiently defined).

Allowing an overbroad class to proceed past the pleadings stage creates an inherent unfairness to the defendant in view of the "in terrorem character of a class action." *Kohen*, 571 F.3d at 678; *see also Barnes v. Coca-Cola Co.*, No. 1:22-CV-01511-KJM-EPG, 2025 WL 1027431, at *5 (E.D. Cal. Apr. 7, 2025) ("Coca-Cola—like all defendants facing suit—is 'entitled to know the class definition being alleged against them.'") (citing *DuRocher v. Nat'l Collegiate Athletic Ass'n*, No. 13-01570, 2015 WL 1505675, at *7 (S.D. Ind. Mar. 31, 2015)). This is particularly true in TCPA class actions where the statute provides for a minimum of $500 in statutory damages per violation. 47 U.S.C. § 227(b)(3); 47 U.S.C. § 227(c)(5); *see also Kohen*, 571 F.3d at 677-78 ("When the potential liability created by a lawsuit is very great,

8

even though the probability that the plaintiff will succeed in establishing liability is slight, the defendant will be under pressure to settle rather than to bet the company, even if the betting odds are good.") (citations omitted).

Here, Plaintiff's proposed National DNC Class, Internal DNC Class, and Telemarketing Caller ID Class are overly broad because they indiscriminately encompass individuals who lack any valid legal claim against Humana. The National DNC Class is overly broad because it includes individuals who did not personally register their telephone numbers on the National DNC Registry and individuals who consented to receive calls or had an established business relationship ("EBR") with Humana. Additionally, the National DNC Class and Internal DNC Class definitions fail to exclude the significant number of individuals who provided consent or had an established business relationship ("EBR") with the caller.

As such, striking the class definitions at this stage is warranted for each of these reasons alone.

### 1. The National DNC Class Is Overly Broad Because It Improperly Includes Individuals Who Have Not Personally Registered Their Telephone Numbers On The National DNC Registry.

The threshold requirement for bringing a claim under the TCPA's Do Not Call (DNC) provisions is clear and unambiguous: relief is only for a "residential telephone subscriber *who has registered his or her telephone number*." 47 C.F.R. § 64.1200(c) (emphasis added).

9

In *Rombough*, the Court confirmed that this language must be applied as written, holding that personal registration of the phone number on the National DNC Registry is a prerequisite to standing. *Rombough v. Robert D. Smith Ins. Agency, Inc.*, No. 22-CV 15-CJW-MAR, 2022 WL 2713278, at *2 (N.D. Iowa June 9, 2022). The court in *Rombough* explained that "[t]he plain language of Section 64.1200(c) indicates that Section 227(c)(5)'s private action exists only for a residential telephone subscriber *who has registered his or her telephone number* on the national do-not-call registry." *Id*. (emphasis added). The regulation's use of the phrase "registered his or her telephone number" plainly contemplates that the person bringing suit must have been the one to place the number on the registry. *Id*.

Where a statute or regulation's language is plain, courts must give effect to that plain meaning. *In re Philadelphia Newspapers, LLC*, 418 B.R. 548, 559 (E.D. Pa. 2009), *aff'd,* 599 F.3d 298 (3d Cir. 2010), *as amended* (May 7, 2010) ("This plain meaning rule dictates that where the meaning of the relevant statutory language is clear then no further inquiry is required." (citing *In re Armstrong World Indus., Inc.,* 432 F.3d 507, 512 (3d Cir. 2005); *Abdul–Akbar v. McKelvie,* 239 F.3d 307, 313 (3d Cir.2001) (en banc)).

For interpreting a statute, a court must first "determine[s] whether the language at issue has a plain and unambiguous meaning." *In re Philadelphia Newspapers, LLC*, 418 B.R. at 559 (quoting *Dobrek v. Phelan,* 419 F.3d 259, 263

10

(3d Cir. 2005)). Here, the regulation's text expressly mandates personal registration. 47 C.F.R. § 64.1200(c). The explicit use of the personal pronouns "his or her" combined with the active verb phrase "has registered" leaves no room for alternate interpretations. *Id*. It definitively restricts the private right of action to the specific individual who took the affirmative step to place the number on the registry, legally foreclosing claims by subsequent subscribers who merely inherited a previously registered number.

Second, if the statutory language appears to be unambiguous, a court must look beyond that plain language where a literal interpretation would lead to an absurd result, or would otherwise produce a result "demonstrably at odds with the intentions of the drafters." *In re Philadelphia Newspapers, LLC*, 418 B.R. at 559 (quoting *United States v. Ron Pair Enters., Inc*., 489 U.S. 235, 242 (1989)). Applying the literal, plain-text interpretation of § 64.1200(c) does not lead to an absurd result, nor does it contradict the drafters' intentions. To the contrary, strictly enforcing the personal registration requirement perfectly aligns with the statute's design. The DNC framework is built entirely upon individual consumer choice. It is neither absurd nor contrary to legislative intent to require a new subscriber to assert their own privacy preferences rather than allowing them to automatically inherit the distinct, personal privacy choices of a stranger who previously held the phone number.

Thus, standing under the TCPA depends upon the individual's own affirmative act of placing the number on the National DNC Registry. Legislative history indicates that Congress envisioned consumers proactively placing their numbers on the DNC list to obtain protection. *In re Rules & Reguls. Implementing the Tel. Consumer Prot. Act of 1991*, 18 FCC Rcd. 14014, 14, 038-39 (2003). Nothing suggests that the protections flow automatically to a new subscriber who did not personally register the number. This interpretation is also consistent with First Amendment principles underlying the DNC framework, which empower individuals to opt in to restrictions on protected speech. *See Martin v. Struthers*, 319 U.S. 141, 148-49 (1943).

Plaintiff's proposed National DNC Class definition ignores this mandatory prerequisite. The class is improperly defined to include countless individuals who have no standing because they merely acquired phone numbers that were previously registered by someone else. By including those who never performed the affirmative act of registering their own number, the definition contravenes the plain language of 47 C.F.R. § 64.1200(c). Because the National DNC Class definition fails to limit membership to individuals who personally registered their telephone numbers, it necessarily encompasses numerous individuals with no standing to sue. This overbreadth warrants striking the class allegations.

12

**2. The National DNC Class and Internal DNC Class are Overly Broad Because They Include Individuals Who Consented To Receive Calls Or Had An Established Business Relationship With Humana.**

Courts routinely reject class definitions that include members for whom issues of individualized defenses arise. *See Leon v. Loandepot.com, LLC*, No. 2:25-CV-01787-JLS-AGR, 2025 WL 2632396, at *3 (C.D. Cal. Aug. 22, 2025) (striking class as overly broad because it included individuals who consented and had an EBR); *see also Ung v. Universal Acceptance Corp.*, 319 F.R.D. 537, 540 (D. Minn. 2017) (noting individualized proof prevents the class from being cohesive); *Brown v. Nano Hearing Tech Opco, LLC*, No. 3:24-CV-00221-BTM-JLB, 2024 WL 3367536, at *8-9 (S.D. Cal. July 9, 2024) (finding that the plaintiff's class was flawed because it included individuals who lacked standing under the TCPA); *see also Martinez v. TD Bank USA, N.A.*, No. CV 15-7712(JBS/AMD), 2017 WL 2829601, at *12 (D.N.J. June 30, 2017); *Warnick v. Dish Network LLC*, 301 F.R.D. 551, 559 (D. Colo. 2014) (denying class certification and finding that the class was overbroad); *Jamison v. First Credit Servs.*, 2013 WL 3872171, at *8 (N.D. Ill. July 29, 2013) (explaining that the proposed class potentially included thousands of individuals who had no grievance under the TCPA, making the class overly broad).

Under the TCPA's implementing regulations, the term "telephone solicitation" is defined to expressly exclude calls made to individuals who have an EBR with the caller. *See* 47 C.F.R. § 64.1200(f)(15). Consequently, individuals

13

who had an EBR with Humana suffered no legal injury and lacked Article III standing. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021) ("Every class member must have Article III standing in order to recover individual damages. 'Article III does not give federal courts the power to order relief to any uninjured plaintiff, class action or not.'"). "[A] proposed class m[a]y be deemed overly broad if it 'would include members who have not suffered harm at the hands of the [d]efendant and are not at risk to suffer such harm.'" *Brashear v. Perry Cnty., Ky.*, No. CIV.A. 6:06-143 DCR, 2007 WL 1434876, at *2 (E.D. Ky. May 14, 2007).

Here, Plaintiff's proposed National DNC Class and Internal DNC Class broadly capture anyone who received telemarketing calls, without carving out those who had an EBR. Because the definitions indiscriminately sweep in uninjured individuals, they are fatally overbroad. *See Barnes*, 2025 WL 1027431, at *5; *Brown*, 2024 WL 3367536, at *8. Because the proposed classes do not exclude such individuals, a potentially large portion of its members possess no viable claim, making it incurably overbroad.

As such, the Court may properly strike this class definition.

**B. The Proposed Class Members Lack Commonality.**

"The commonality requirement [of Federal Rule of Civil Procedure 23] demands only that there be 'questions of law or fact common to the class.'" *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1268 (11th Cir. 2009) (citation omitted). A class

14

that lacks commonality is also not certifiable. *Ebert v. Gen. Mills, Inc.*, 823 F.3d 472, 477-78 (8th Cir. 2016) ("Under Rule 23(a), a district court may certify a class only if it 'is satisfied, after a rigorous analysis,' that the four threshold requirements are met" which includes "commonality of legal or factual questions.") (citing *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 161 (1982)). "If, to make a prima facie showing on a given question, the members of a proposed class will need to present evidence that varies from member to member, then it is an individual question. If the same evidence will suffice for each member to make a prima facie showing, then it becomes a common question." *Messner v. Northshore Univ. Health Sys.*, 699 F.3d 802, 815 (7th Cir. 2012) (quoting *Blades v. Monsanto Co.*, 400 F.3d 562, 566 (8th Cir. 2005)). In other words, there must be at least one "common contention" that "is central to the validity" of the claims and that can be resolved "in one stroke*." Dukes*, 564 U.S. at 350.

Here, the same defects that render the proposed classes overly broad also cause the class members to lack the requisite Rule 23 commonality. First, for the National DNC Class, standing itself is an individual issue. The Court would have to determine whether each class member personally registered their telephone number on the National DNC Registry—an inquiry which cannot be answered with common proof. *See* 47 C.F.R. § 64.1200(c); *Rombough*, 2022 WL 2713278 at *2.

15

Second, the National DNC Class lacks commonality because it impermissibly includes individuals who provided the requisite consent to receive calls from Humana. Whether a class member provided prior express consent is a classic individualized issue that depends on the specific interactions between that person and Humana, thereby splintering any potential common question. Furthermore, because the National DNC Class and Internal DNC Class definitions indiscriminately include individuals regardless of whether those calls were made to persons with an EBR, determining class membership and liability cannot be resolved "in one stroke." Instead, assessing whether each class member had an EBR with Defendant is a classic individualized inquiry. It requires a member-by-member factual analysis of specific past interactions, transactions, or inquiries between that individual and Humana, instantly splintering any potential common questions.

Because the claims will depend on evidence that varies from member to member, commonality is absent in a manner that discovery cannot cure. As such, the class allegations must be stricken.

**C. The Proposed Classes Are Uncertifiable Because They Are Not Defined On Objective Criteria And Instead Depend On Resolution of Merits Inquiries.**

A class must be defined using administratively feasible, objective-based criteria. *Sandusky Wellness Ctr., LLC v. Medtox Sci., Inc.*, 821 F.3d 992, 996 (8th Cir. 2016) (citing *Rikos v. Procter & Gamble Co.*, 799 F.3d 497, 525 (6th Cir. 2015)

16

(For "a class to be sufficiently defined, the court must be able to resolve the question of whether class members are included or excluded from the class by reference to objective criteria."); *Byrd v. Aaron's Inc.,* 784 F.3d 154 (3d Cir. 2015), as amended (Apr. 28, 2015) (explaining that a class must be defined with reference to objective criteria in order to be ascertainable); *see also de Lacour v. Colgate-Palmolive Co.*, 338 F.R.D. 324, 339 (S.D.N.Y. 2021), *lv. to app. den.*, No. 21-1234, 2021 WL 5443265 (2d Cir. Sept. 16, 2021) ("[A] class must be sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member, and must be defined by objective criteria that are administratively feasible, such that identifying its members would not require a mini-hearing on the merits of each case.") (internal quotation marks omitted) (citation omitted). A class defined based upon the merits of a claim is simply not certifiable. *St. Louis Heart Ctr., Inc. v. Vein Centers for Excellence, Inc.*, No. 4:12 CV 174 CDP, 2017 WL 2861878, at *5-6 (E.D. Mo. July 5, 2017) (decertifying class where class was based on objective criteria and therefore, not ascertainable).

This is so because merits determinations must not be made at the certification stage—yet a class defined based upon the merits of a claim assures that all members of a class have already won on a critical substantive issue. *MSP Recovery Claims v. Plymouth Rock Assur. Corp., Inc.*, 404 F. Supp. 3d 470, 485 (D. Mass. 2019); *see also Brown v. Electrolux Home Products, Inc.*, 817 F.3d 1225, 1234 (11th Cir. 2016)

17

(explaining that a "district court can consider the merits 'only' to the extent 'they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied.'") (citation omitted). A class must therefore be ascertainable without inquiring into the merits of the case. *St. Louis Heart Ctr., Inc.*, 2017 WL 2861878 at *5 ("There is no objective criterion available to accurately identify potential class members, making the class unascertainable."); *Saf-T-Gard Int'l, Inc. v. Wagener Equities, Inc.*, 251 F.R.D. 312, 314 (N.D. Ill. 2008) ("The court must assess the appropriateness of class certification without regard to the merits of the case.") (quoting *Mira v. Nuclear Measurements Corp.*, 107 F.3d 466, 474 (7th Cir.1997)); *Sowders v. Scratch Fin., Inc.*, No. 3:23-CV-56, 2023 WL 7525900, at *9-10 (S.D. Ohio Nov. 14, 2023) (granting the defendant's motion to strike the plaintiff's class allegations where the proposed class definition included those who received a fax "not including the opt-out notice required by 47 U.S.C. § 227(b)(2)(D)" because this definition improperly predicated class membership on the ultimate legal conclusion of the claim).

Here, Plaintiff's proposed National DNC Class and Internal DNC Class are impermissibly defined by ultimate merits determinations rather than objective, administratively feasible criteria. Specifically, class membership hinges entirely on whether an individual received a "telemarketing" call. To simply identify who belongs in the classes, this Court would be forced to conduct a massive,

18

individualized review of the specific content and context of every single communication to determine if it legally constitutes "telemarketing" under the TCPA. These are plainly merit determinations. *Weister v. Vantage Point AI, LLC*, No. 8:21-CV-1250- SDM-AEP, 2022 WL 3139373, at *7-8 (M.D. Fla. Aug. 3, 2022), motion to certify appeal denied, No. 8:21-CV-1250-SDM-AEP, 2022 WL 7026495 (M.D. Fla. Oct. 12, 2022) (considering whether the at-issue calls are "telemarketing" a merits challenge); *Broking v. Green Brook Buick GMG Suzuki*, No. CV151847BRMLHG, 2017 WL 3610490, *5-6 (D.N.J. Aug. 22, 2017) (finding that the at-issue call from the defendant did not violate the TCPA because it did not constitute telemarketing); *Daniel v. Five Stars Loyalty, Inc*., No. 15-CV-03546-WHO, 2015 WL 7454260, *6-7 (N.D. Cal. Nov. 24, 2015) (dismissing a complaint where the text sent by defendant did not violate the TCPA because it was not telemarketing).

The assumption that any merit has been met by allowing, rather than striking, these class definitions would be highly prejudicial to Humana. Because this defect is incurable and apparent on the face of the Complaint, this Court should strike the class allegations here and now.

## VII.  <u>CONCLUSION</u>

For the foregoing reasons, Humana respectfully requests the Court strike Plaintiff's class allegations in their entirety.

Dated: May 19, 2026

*/s/ V. Amanda Witts*
V. Amanda Witts
Mitchell Sandler PLLC
2020 K Street NW
Suite 760
Washington, DC 20006
Tel: 202.886.5267
v.awitts@mitchellsandler.com

*Attorneys for the Defendant, Humana, Inc.*

20

## **CERTIFICATE OF COMPLIANCE WITH WORD COUNT LIMIT**

Pursuant to Local Rule 7.8(b)(2), I hereby certify that this brief complies with the type-volume limitation set forth by the Local Rules of this Court. Excluding the parts of the brief exempted by the Local Rules (such as table of contents, table of authorities, and exhibits), this brief contains 4,573 words as counted by the word-processing system used to prepare this brief.

Dated:        May 19, 2026                          */s/ V. Amanda Witts*
                                                 V. Amanda Witts

21

## <u>CERTIFICATE OF CONFERENCE</u>

Pursuant to Local Rule 7.1, the undersigned counsel for Defendant Humana Inc. certifies that it met and conferred with counsel for Plaintiff, Kelly Bland on May 19, 2026 in good faith prior to the filing of this Motion to Strike Class Allegations.

Dated:        May 19, 2026                          <u>*/s/ V. Amanda Witts*</u>
                                                     V. Amanda Witts

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on May 19, 2026, a copy of the foregoing was filed with the Clerk of Court for the United States District Court for the Middle District of Pennsylvania via the CM/ECF system and to all counsel of record via the CM/ECF system.

> */s/ V. Amanda Witts*
> V. Amanda Witts

23