Case 1:26-cv-00659-KM    Document 15-1    Filed 05/20/26    Page 1 of 49

2008 WL 5278393
Only the Westlaw citation is currently available.

**This decision was reviewed by West editorial staff and not assigned editorial enhancements.**

United States District Court,
M.D. Pennsylvania.

Gbolagade BABALOLA, Plaintiff

v.

DONEGAL MUTUAL INSURANCE COMPANY, Defendant.

Civil Action No. 1:08-CV-621.
|
Dec. 18, 2008.

**Attorneys and Law Firms**

Olugbenga O. Abiona, Philadelphia, PA, for Plaintiff.

Cory A. Iannacone, Thomas A. French, Rhoads & Sinon, LLP, Harrisburg, PA, for Defendant.

## ORDER

YVETTE KANE, Chief Judge.

**\*1 THE BACKGROUND OF THIS ORDER IS AS FOLLOWS:**

Plaintiff Gbolagade Babalola filed the instant action on April 7, 2008, alleging that Defendant Donegal Mutual Insurance Company breached the terms of a homeowners insurance policy (the "policy") that the Plaintiff had purchased from them. (Doc. No. 1.) Specifically, the Plaintiff claims that the Defendant improperly and in bad faith refused to defend him in a separate lawsuit pending before this Court. (*Id.*) The underlying action for which Plaintiff sought coverage is *Bickford v. Babalola,* No. 1:07-CV-2169 (hereinafter Bickford or the "underlying action"), brought against him by his former co-worker Kelly Bickford and her husband Warren Bickford.

The Defendant initially moved to dismiss the Plaintiff's complaint, claiming that there was no coverage for the claims asserted against Plaintiff in the underlying action. (Doc. No. 4 ¶ 2.) The Court agreed with this contention and granted the Defendant's motion in a memorandum and order issued on August 26, 2008, holding: "claims of negligence and negligent infliction of emotional distress in the underlying action were not brought against Plaintiff 'for damages because of bodily injury,' as defined by the policy." (Doc. No. 20 at 9.) Despite this, the Court granted the Plaintiff an opportunity to amend the complaint to include claims for coverage on other claims that he believed may fall under the insurance policy. (*Id.* at 9-10.) The Plaintiff filed his amended complaint on August 28, 2008 (Doc. No. 21), which the Defendant has also moved to dismiss (Doc. No. 22.) The Defendant has separately moved to stay discovery pending resolution of the second motion to dismiss. (Doc. No. 24.)

The decision to stay discovery pending resolution of a potentially dispositive motion is within the discretion of the district court. *See, e.g.,* *Coastal States Gas Corp. v. Department of Energy,* 84 F.R.D. 278, 282 (D.Del.1979); *In re Orthopedic Bone Screw Product Liability Lit.,* 264 F.3d 344, 365 (3d Cir.2001). A stay of discovery is not appropriate solely because a motion to dismiss is pending. *19th Street Baptist Church v. St. Peters Episcopal Church,* 190 F.R.D. 345, 349 (E.D.Pa.2000). But, a stay can be proper "where the likelihood that such motion may result in a narrowing or an outright elimination of discovery

outweighs the likely harm to be produced by the delay." *Id.* (quoting *Weisman v. Mediq, Inc.,* No. 95-1831 1995 WL 2736678 at *2 (E.D.Pa.1995)). The balance favors granting the stay where the pending motion to dismiss disposes of the entire case and where no discovery is needed to rule on such a motion. *Weisman,* 1995 WL 2736678 at *2 *Weisman,* 1995 WL 2736678 at *2 (citing *Rae v. Union Bank,* 725 F.2d 478, 481 (9th Cir.1984)). As such, the Court will undertake to balance the competing interests of each party to determine whether the benefits of such a stay outweigh the likely harm to the Plaintiff.

After preliminary review of the pending motion to dismiss and consideration of the parties' competing interests, the Court finds that the balance favors granting a stay of discovery pending resolution of the motion to dismiss. If granted, the pending motion to dismiss would dispose of the entire case against the Defendant, thereby eliminating the need to engage in the costly discovery that would likely be required to proceed with this action. Additionally, no further discovery is needed to resolve the contract interpretation issues raised in the motion to dismiss.

**\*2** The Plaintiff cites no authority in support of his opposition to this motion, and does not sufficiently explain any harm or prejudice that would result from staying discovery. The Plaintiff only touches on the subject of potential harm or prejudice in one sentence, stating that "in light of the fact that this matter is related to the Underlying Action, Defendant is simply trying to delay this litigation ...." (Doc. No. 33 at 2.) The Court acknowledges the importance of this case with regard to resolution of the underlying action, but the potential delay will do little to prejudice Plaintiff at this point in the proceedings. Further, delaying discovery now may help streamline the process after the motion, ultimately resulting in less delay until final resolution of the case. As such, delay alone will not harm the Plaintiff such that it outweighs the benefits of staying the discovery deadlines at this time.

Rather than focus on potential harm, the Plaintiff mainly argues that the Defendant's request should be denied because the Court verbally denied a similar request at the case management conference prior to resolution of the first motion to dismiss. (*Id.* at 1.) Despite this, the Court's prior determination does not control resolution of the issue at this juncture. Based on the current circumstances of the case and preliminary review of the pending motion to dismiss, the balance weighs in favor of a stay of discovery at this time.

**ACCORDINGLY,** this 18th of December 2008, having considered the Defendant's motion for a stay of discovery (Doc. No. 24), **IT IS HEREBY ORDERED THAT** the Defendant's motion is **GRANTED.** Discovery is stayed pending resolution of the Defendant's motion to dismiss Plaintiff's amended complaint. (Doc. No. 22.)

**All Citations**

Not Reported in F.Supp.2d, 2008 WL 5278393

---

**End of Document**

© 2026 Thomson Reuters. No claim to original U.S. Government Works.

Case 1:26-cv-00659-KM    Document 15-1    Filed 05/20/26    Page 3 of 49

BROTHERHOOD MUTUAL INSURANCE CO., Plaintiff, v...., Not Reported in Fed....

2024 WL 7004405
Only the Westlaw citation is currently available.
United States District Court, E.D. Pennsylvania.

BROTHERHOOD MUTUAL INSURANCE CO., Plaintiff,

v.

FIRST PRESBYTERIAN CHURCH OF BETHLEHEM, et al. Defendants.

Civ. No. 23-678
|
Filed 02/23/2024

**Attorneys and Law Firms**

Patrick J. Furlong, Peter R. Kulp, John Philip Morgenstern, O'Hagan Meyer, Philadelphia, PA, for Plaintiff.

Richard Eugene Santee, Shay Santee & Kelhart, Bethlehem, PA, for Defendant First Presbyterian Church of Bethlehem.

James C. Haggerty, Hgsk, Philadelphia, PA, Jeffrey Stanton, Haggerty Goldberg Schleifer & Kupersmith PC, Philadelphia, PA, for Defendants Glen Adelsberger, Linda Bartholomew, Sue Boehret, Willard Jones II, Jessica Manno, Randy Stonesifer, Cabot Thomas, Warren Waite, Terry Cline, Tom Lubben, Mike Baitinger, John Edwards, Steve Follett, Eric Huber, Liz Kidney, Mark Lang, Dianne McAloon, Audrey Ney, Steve Rowbottom, Vickie Clark, Ryan Harting, Robert V. Littner, James Omdahl, Peter Young, P. Charles Walter, John Lewis, Clark Ruthrauff, Robert Price, Susan Stevens, Cindy Wiseman.

Kevin Burns, Pro Se.

## ORDER

Paul S. Diamond, J.

**\*1** This suit arises from a coverage dispute between Plaintiff Brotherhood Mutual Insurance Company and its insured—31 individual defendants in an action in the Northhampton County Common Pleas Court. Plaintiff seeks a declaratory judgment that under the insurance policy it issued to Defendant First Presbyterian Church of Bethlehem, it has no duty to defend and/or indemnify the individual defendants in the Northhampton lawsuit. (Doc. No. 1.) Defendants have asserted affirmative defenses, including estoppel and waiver, and a bad faith counterclaim. (Doc. Nos. 44, 47.) Plaintiff has moved to dismiss the counterclaim. (Doc. No. 53.)

Defendants served Plaintiff with requests for production of documents. (See Doc. No. 52-3.) Plaintiff produced the full Insurance Policy but objected to all other requests for production as not related to its sole claim for declaratory judgment. (Doc. Nos. 52-4 (initial responses and objections), 52-7 (amended responses and objections, showing production of additional documents).) Plaintiff then filed a Motion for a Protective Order—which has since been amended—arguing the same. (Doc. No. 39; Doc. No. 54-1 at 8.) Defendants move to compel production, arguing that although the documents sought may not pertain to Plaintiff's claim, they are relevant to Defendants' counterclaim and affirmative defenses. (Doc. No. 52.) I agree. The documents Defendants request will likely shed light on both. For example, Plaintiff's communications are discoverable under Rule 26 as they are relevant to Plaintiff's understanding of the Policy and its coverage; information and defenses it was aware of and did not assert as related to bad faith, waiver, and estoppel; and the timeline and timeliness of the investigation, issuance of the Reservation of Rights letter, and filing of this action as related to bad faith and claims under Pennsylvania's Unfair Claims Settlement Practice Guidelines.

Case 1:26-cv-00659-KM    Document 15-1    Filed 05/20/26    Page 4 of 49

BROTHERHOOD MUTUAL INSURANCE CO., Plaintiff, v...., Not Reported in Fed....

Plaintiff asks me to stay discovery until I resolve its Motion to Dismiss. (Doc. No. 54.) I decline to do so. Courts are reluctant to stay discovery. A stay may be appropriate, however, where the likelihood that resolution of the motion to dismiss "may result in narrowing or an outright elimination of discovery outweighs the likely harm to be produced by delay." Flores v. Pa. Dept. of Corrs., No. 12-cv-1149, 2013 WL 2250214, at *1 (M.D. Pa. May 22, 2013) (citing 19th Street Baptist Church v. St. Peters Episcopal Church, 190 F.R.D. 345, 349 (E.D. Pa. 2000)). I am not convinced that a decision favorable to Plaintiff would eliminate or significantly narrow discovery here. As I discussed, the documents sought appear relevant to *both* the bad faith counterclaim and several of Defendants' affirmative defenses, including estoppel and waiver. Accordingly, even if I were to dismiss Defendants' counterclaim, the documents may very well remain relevant and discoverable under Rule 26.

**AND NOW**, this 23rd day of February, 2024, it is **ORDERED** that Defendants' Motion to Compel (Doc. No. 52) is **GRANTED**. In addition, Plaintiff's Amended Motion for a Protective Order or to Stay Discovery (Doc. No. 54) is **DENIED**. Plaintiff **SHALL** produce responsive documents by March 1, 2024.

**\*2  IT IS SO ORDERED.**

**All Citations**

Not Reported in Fed. Supp., 2024 WL 7004405

---

**End of Document**

© 2026 Thomson Reuters. No claim to original U.S. Government Works.

Case 1:26-cv-00659-KM Document 15-1 Filed 05/20/26 Page 5 of 49

Channing Bete Company, Inc. v. Greenberg, Not Reported in Fed. Supp. (2021)

2021 WL 4398510
Only the Westlaw citation is currently available.
United States District Court, D. Massachusetts.

CHANNING BETE COMPANY, INC., Plaintiff,
v.
Mark T. GREENBERG and PATHS Education Worldwide, LLC, Defendants.
Mark T. Greenberg and PATHS Education Worldwide, LLC, Defendants and Third-Party Plaintiffs
v.
PATHS Program Holding, LLC (AZ), PATHS Program, LLC (AZ), LearningSEL, LLC (AZ),
PATHS Program Holding, LLC (MA), and LearningSEL, LLC (NJ), Third-Party Defendants.

Case No. 3:19-cv-30032-MGM
|
Signed 09/27/2021

**Attorneys and Law Firms**

Elizabeth S. Zuckerman, Bulkley Richardson & Gelinas, Springfield, MA, Kevin C. Maynard, Bulkley Richardson & Gelinas, Boston, MA, for Plaintiff.

John T. McInnes, McInnes & McLane, LLP, Worcester, MA, Alissa A. Digman, McInnes & McLane, Chicago, IL, Jodi-Ann McLane, McInnes & McLane, LLP, Providence, RI, for Defendant and Third-Party Plaintiff Mark T. Greenberg.

Emily E. Smith-Lee, SLN Law, LLC, Sharon, MA, Jodi-Ann McLane, McInnes & McLane, LLP, Providence, RI, for Defendant and Third-Party Plaintiff PATHS Education Worldwide, LLC.

Elizabeth S. Zuckerman, Bulkley Richardson & Gelinas, Springfield, MA, Kevin C. Maynard, Bulkley Richardson & Gelinas, Boston, MA, for ThirdParty Defendants PATHS Program Holding, LLC (MA), PATHS Program Holding, LLC (AZ), PATHS Program, LLC (AZ), LearningSEL, LLC (NJ), LearningSEL, LLC (AZ).

Jonathan W. Fitch, Fitch Law Partners LLP, Boston, MA, for ThirdParty Defendants PATHS Program Holding, LLC (MA), LearningSEL, LLC (NJ).

MEMORANDUM AND ORDER REGARDING THIRD-PARTY DEFENDANTS'
MOTION FOR PROTECTIVE ORDER REGARDING DISCOVERY

(Dkt. No. 92)

ROBERTSON, U.S.M.J.

I. INTRODUCTION

**\*1** Before the court is the motion of third-party defendants, PATHS Program Holding, LLC (AZ), PATHS Program, LLC (AZ), LearningSEL, LLC (AZ), PATHS Program Holding, LLC (MA), and LearningSEL, LLC (NJ) (collectively, "PPH"), for a protective order to stay discovery until after their pending motions to dismiss the third-party complaints of Mark T. Greenberg, Ph.D. and PATHS Education Worldwide ("PEW") (now SEL Worldwide) (collectively, "Third-Party Plaintiffs"). The case has been referred to the undersigned for pretrial management and the motions to dismiss have been referred for report and recommendation (Dkt. No. 111). *See* 28 U.S.C. § 636(b)(B). For the reasons that follow, PPH's motion for a stay of discovery

is GRANTED as to both Third-Party Plaintiffs and will expire on the later of: (1) fifteen days from the issuance of this court's report and recommendation on PPH's motions to dismiss the Third-Party Plaintiffs' complaints if there are no objections to the report and recommendation(s); or (2) if a party objects to a report and recommendation, the date on which the presiding District Judge issues his ruling on the objections if he adopts the report and recommendation.

## II. RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

Familiarity with the complex facts of the case is assumed. Channing Bete Company, Inc. ("CBC") filed suit against Dr. Greenberg and PEW on March 7, 2019, claiming that Dr. Greenberg and PEW had tortiously interfered with CBC's business relations, infringed on CBC's trademark, and breached non-disclosure confidentiality agreements, that Dr. Greenberg breached a non-compete agreement and violated Mass. Gen. Laws ch. 93A, and that PEW breached its trademark license agreement with CBC (Dkt. Nos. 1, 30). Dr. Greenberg and PEW asserted counterclaims against CBC (Dkt. No. 36, 37). On August 6, 2021, CBC, Dr. Greenberg, and PEW stipulated to the dismissal, with prejudice, of the claims and counterclaims between CBC, Dr. Greenberg, and PEW (Dkt. No. 124).

In his third-party complaint against PPH, Dr. Greenberg claims that CBC could not lawfully assign licenses to works he copyrighted to PPH without his consent and that PPH's calculations of his royalty payments are inaccurate (Dkt. No. 59 ¶¶ 125-128, 142-147). For its part, PEW's third-party complaint against PPH alleges that while the sale of the licenses was pending and after their sale to PPH, PEW's customers experienced difficulties acquiring curricula and supplies from PPH MA (Dkt. NO. 41 ¶¶ 55, 91). After the sale, individuals associated with PPH purportedly provided false and misleading information to PEW's clients and prospective clients concerning PEW in order to divert training business from PEW to the PPH (Dkt. No. 41 ¶¶ 62-90). On September 4, 2020, PPH moved for a preliminary injunction to enjoin PEW from making any unauthorized use of or reference to the training Mark that was registered with the USPTO on January 8, 2013 (Dkt. No. 74). On July 27, 2021, the presiding District Judge adopted this court's recommendation that PPH's motion for a preliminary injunction be denied (Dkt. No. 119).

## IV. STANDARD

**\*2** "The court has broad discretion to stay discovery pending resolution of a motion to dismiss." *Dicenzo v. Mass. Dep't of Corr.*, Case No. 3:15-cv-30152-MGM, 2016 WL 158505, at \*1 (D. Mass. Jan. 13, 2016) (citing *Landis v. North Am. Co.*, 299 U.S. 248, 254 (1936)). "[F]ederal courts possess the inherent power to stay proceedings for prudential reasons." *Microfinancial, Inc. v. Premier Holidays Int'l, Inc.*, 385 F.3d 72, 77 (1st Cir. 2004) (citations omitted). However, "stays cannot be cavalierly dispensed: there must be good cause for their issuance; they must be reasonable in duration; and the court must ensure that competing equities are weighed and balanced." *Marquis v. F.D.I.C.*, 965 F.2d 1148, 1155 (1st Cir. 1992). "The moving party bears the burden of showing good cause and reasonableness for a stay of discovery, which is akin to a protective order under Fed. R. Civ. P. 26(c)(1)." *Dicenzo*, 2016 WL 158505, at \*1. *See* *Pub. Citizen v. Liggett Grp., Inc.*, 858 F.2d 775, 789 (1st Cir. 1988).

## V. ANALYSIS

According to PPH's motion for a protective order to stay discovery, Dr. Greenberg has served requests for production of documents, requests for admissions, and first sets of interrogatories on each of the five PPH third-party defendants (Dkt. No. 93 at 5-6). Contending that their responses will "require the expenditure of an enormous amount of time and resources" and that much, if not all, of the discovery that they are being asked to produce will not be necessary if their dispositive motions are allowed either in full or in part, PPH is seeking to stay discovery pending resolution of its motions to dismiss all counts of the third-party complaints (Dkt. Nos. 92, 93 at 5-7).

A pending dispositive motion may constitute good cause for a stay of discovery. *See, e.g.,* *Kolley v. Adult Protective Servs.*, 725 F.3d 581, 587 (6th Cir. 2013) (a plaintiff is not entitled to discovery prior to the court ruling on a motion to dismiss for

failure to state a claim); *Petrus v. Bowen*, 833 F.2d 581, 583 (5th Cir. 1987) ("[a] trial court has broad discretion and inherent power to stay discovery until preliminary questions that may dispose of the case are determined"); *Chavous v. D.C. Fin. Responsibility & Mgmt. Assistance Auth.*, 201 F.R.D. 1, 5 (D.D.C. 2001) (a stay of discovery pending a decision on a dispositive motion that would fully resolve the case is a proper exercise of discretion; it "furthers the ends of economy and efficiency, since if [the motion] is granted, there will be no need for discovery."). In view of the good cause created by the pending motions to dismiss all claims, holding discovery in abeyance until such time as the rulings on the dispositive motions become final will not unreasonably delay the litigation. *See Dicenzo*, 2016 WL 158505, at *2 ("relatively brief delay" until the disposition of dispositive motions is reasonable).

Dr. Greenberg's third-party complaint alleges that CBC had no right to transfer six PATHS licenses to PPH without his consent. Dr. Greenberg argues that the equities weigh in his favor because, even if the court finds that that the assignments of the copyrights were valid and dismisses the three counts of his third-party complaint that are related to that issue, his contract claim may survive and he will be harmed by the delay in obtaining discovery (Dkt. No. 100 at 5-6). *See* Fed. R. Civ. P. 26(c). However, the possibility that a single claim will survive does not preclude granting a motion for a stay. *See Steward Health Care Sys. LLC v. Southcoast Health Sys., Inc.*, Civil Action No. 15-14188-MLW, 2016 WL 11004353, at *2 (D. Mass. June 15, 2016) ("it makes little sense to force either side to go through expensive discovery where all, or part, of the case may be dismissed.").

 **\*3** PEW argues that PPH's request for a stay should be denied because PEW's claims are "riddled with factual disputes" and, therefore, PPH has failed to demonstrate that its motion to dismiss is likely to succeed (Dkt. No. 101 at 8-9). In view of the nature of the claims, PPH has persuasively represented that responding to discovery will be costly. Furthermore, while the initial complaint was filed in March 2019, PEW's third-party complaint against PPH was not filed until May 2020. While the court understands that delaying resolution of the parties' dispute may affect PEW's business, the delay will be limited and PEW's losses would continue even if discovery proceeded because PEW did not seek injunctive relief. If the case remains pending after the court's ruling on PPH's motions to dismiss, the impact of delay can be considered when the discovery schedule is set. On balance, the possible prejudice to PEW of some further delay in this litigation does not justify the costs of requiring the parties to engage in discovery at least some of which may be avoided depending on the court's ultimate rulings on the motions to dismiss.

### VI. CONCLUSION

For the above-stated reasons, PPH's motion for a protective order to stay discovery is GRANTED (Dkt. No. 92). If no objections are filed to this court's reports and recommendations on PPH's motions to dismiss, the stay of discovery will automatically expire fifteen days after the filing of the reports and recommendation(s). If a party objects to a report and recommendation, the stay of discovery will automatically expire upon the issuance of the presiding District Judge's ruling on the motions to dismiss if the District Judge adopts the report and recommendation(s).

It is so ordered.

**All Citations**

Not Reported in Fed. Supp., 2021 WL 4398510

---

Case 1:26-cv-00659-KM    Document 15-1    Filed 05/20/26    Page 8 of 49

2025 WL 671112
Only the Westlaw citation is currently available.
United States Court of Appeals, Third Circuit.

Nedal ELFAR, Appellant

v.

TOWNSHIP OF HOLMDEL; Michael Sasso; Matthew Menosky; John Mioduszewski

No. 24-1353
|
Argued: November 4, 2024
|
(Filed: March 3, 2025)

On Appeal from the United States District Court for the District of New Jersey (D.C. Civil No. 3-22-cv-05367), District Judge: Honorable Robert Kirsch

**Attorneys and Law Firms**

Justin D. Santagata [Argued], Cooper Levenson, 1125 Atlantic Avenue, 3rd Floor, Atlantic City, NJ 08401, Counsel for Appellant

David A. Schwartz [Argued], Schwartz & Posnock, 99 Corbett Way, Suite 203, Eatontown, NJ 07724, Counsel for Appellees

Before: KRAUSE, SCIRICA, and RENDELL, Circuit Judges.

OPINION [*]

SCIRICA, Circuit Judge

 **\*1**  In this malicious prosecution and municipal liability action based on a series of trials in New Jersey state court, plaintiff-appellant Nedal Elfar challenges the District Court's orders granting defendants-appellees' motion to dismiss, denying Elfar's motion for partial summary judgment, and staying discovery. The court held Elfar failed to state a claim under 42 U.S.C. § 1983 because it determined his initial conviction was *not* vacated pending retrial, rendering any deprivations of liberty he suffered during retrial "post-conviction restrictions" rather than seizures under the Fourth Amendment. *Elfar v. Twp. of Holmdel*, No. 22-5367, 2024 WL 415691, at \*8 (D.N.J. Feb. 5, 2024) ("[N]othing ... suggests [Elfar's] municipal court conviction [was] vacated pending appeal .... [T]he Court finds that the restrictions imposed on [Elfar's] liberty *after* his conviction in municipal court cannot provide a basis for his malicious prosecution claim.").

But the parties dispute whether Elfar's conviction was vacated pending his retrial, and one state court judge believed Elfar's initial conviction *had* been vacated. Because we construe the complaint in the light most favorable to Elfar under Federal Rule of Civil Procedure 12(b)(6), and this case's procedural history is uniquely murky, we will assume his conviction was vacated pending retrial. Accordingly, Elfar has sufficiently pled a seizure—his deprivations of liberty suffered during retrial—and we will reverse the court's holding on that issue, vacate its order granting the motion to dismiss, and remand for further consideration of downstream issues, including whether Elfar sufficiently pled his claims' other elements. We will affirm the court's orders denying partial summary judgment and staying discovery.

Case 1:26-cv-00659-KM    Document 15-1    Filed 05/20/26    Page 9 of 49

Elfar v. Township of Holmdel, Not Reported in Fed. Rptr. (2025)

I.

Because we write principally for the parties, who are familiar with this case's factual and legal history, we will set forth only those facts necessary to our analysis.

In 2016, two police officers, defendants Matthew Menosky and Michael Sasso, stopped Elfar for minor traffic violations in Holmdel, New Jersey. The officers were equipped with an audio-video recording system. The officers quickly discovered marijuana in Elfar's vehicle upon a purported plain-view search and performed a field sobriety test, the outcome of which the parties dispute. After the test, the officers muted their recording system, a violation of municipal policy, to discuss probable cause for a potential arrest. They subsequently arrested Elfar for DWI and related offenses. Officers detained Elfar to process his charges, though Elfar contends he was held for "at least one hour" after officers issued his summons. App. 140–41.

Elfar was tried and convicted in Holmdel Municipal Court in February 2017, his license was suspended, and he was ordered to participate in a remedial course. Elfar filed a *de novo* appeal to New Jersey's Superior Court, and, in March 2017, Elfar and the prosecutor's office entered a consent order partially restoring Elfar's driving privileges during the pendency of his appeal. The order permitted Elfar to drive "for business and family obligations" between 6:00 a.m. and 11:00 a.m. and between 5:00 p.m. and 10:00 p.m. App. 803–04. [1]  The order remained in place when, in October 2017, the parties agreed to remand the case to municipal court for retrial in light of newly discovered evidence. The case was remanded, and Elfar motioned for a new trial under the parties' agreement. While Elfar's motion was pending, the prosecutor informed Elfar that Holmdel's former police chief—defendant John Mioduszewski—had spoken to the judge *ex parte* and wanted the case to "run it's [sic] course" even though the prosecutor "would love to resolve" the charges. App. 129.

**\*2**  The Municipal Court granted Elfar's motion for a new trial under N.J. Mun. Ct. R. 7:10-1, though the record does not contain an order independently vacating Elfar's conviction. A new judge was assigned for retrial, Elfar was again convicted in December 2018, and his original sentence was reimposed in place of his consent order. Elfar again *de novo* appealed to New Jersey's Superior Court, which ultimately acquitted Elfar of all charges in August 2022. The Superior Court held, *inter alia*, Elfar's arresting officers acted without probable cause, the plain view doctrine did not support the warrantless search, and no reasonable officer could have concluded Elfar was impaired the night of his arrest. Reflecting on Elfar's second municipal trial, which had adopted legal rulings made in the first, the Superior Court opined, "It is not clear how [Elfar] could be granted a new trial and be bound by the legal rulings made in a trial that was vacated and made by a Judge who recused herself." App. 171.

Elfar filed this action in 2022, which consists of § 1983 and common law malicious prosecution claims against his arresting officers and the former police chief and a municipal liability claim against defendant Township of Holmdel ("Holmdel"). The District Court stayed discovery pending dispositive motions and subsequently: (1) granted appellees' motion to dismiss, reasoning Elfar failed to plausibly plead (a) the requisite seizure for malicious prosecution and (b) a basis for municipal liability, and (2) denied Elfar's motion for partial summary judgment against Holmdel, which sought to use non-mutual offensive issue preclusion to bar Holmdel from contesting facts established in Elfar's criminal appeal. As relevant to Elfar's malicious prosecution claim, the court reasoned the necessary "seizure" for such a claim cannot consist solely of "having to attend one's own trial" and "does not include *post*-conviction [restrictions]." *Elfar*, 2024 WL 415691, at *7.

II. [2]

On appeal, Elfar challenges the court's orders dismissing his complaint, denying his motion for partial summary judgment, and staying discovery. Elfar contends the court erred in holding (1) Elfar's mandatory appearances in his first trial were not a "seizure" sufficient to support a claim for malicious prosecution, (2) Elfar's driving restrictions, which remained in effect during his retrial, were not a seizure as they occurred before his first conviction was purportedly vacated, and (3) Holmdel was not

Case 1:26-cv-00659-KM    Document 15-1    Filed 05/20/26    Page 10 of 49

Elfar v. Township of Holmdel, Not Reported in Fed. Rptr. (2025)

in privity with Elfar's municipal prosecutor, barring the court from applying non-mutual offensive issue preclusion. Elfar also contends the court abused its discretion in staying discovery.

We review the court's order granting the motion to dismiss *de novo.* ⚑*Black v. Montgomery Cnty.*, 835 F.3d 358, 364 (3d Cir. 2016). Under Rule 12(b)(6), we must deny a motion to dismiss where a complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." ⚑*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citations omitted). We must "accept all factual allegations as true" and "construe the complaint in the light most favorable to the plaintiff." ⚑*Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (internal quotation marks omitted) (quoting ⚑*Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002)).

While we review *de novo* the court's order denying Elfar's motion for partial summary judgment, *see Canada v. Samuel Grossi & Sons*, 49 F.4th 340, 345 (3d Cir. 2022), we review its decision not to apply non-mutual offensive issue preclusion for abuse of discretion, *see* ⚑*Jean Alexander Cosms., Inc. v. L'Oreal USA, Inc.*, 458 F.3d 244, 248–49 (3d Cir. 2006).

**\*3** We review the court's stay of discovery for abuse of discretion. *See In re Orthopedic Bone Screw Prod. Liab. Litig.*, 264 F.3d 344, 365 (3d Cir. 2001).

## III.

This case largely turns on whether Elfar has pled a seizure under the Fourth Amendment, a requisite element of his ⚑§ 1983 malicious prosecution claim. ⚑*DiBella v. Borough of Beachwood*, 407 F.3d 599, 601 (3d Cir. 2005); *see also* ⚑*Chiaverini v. City of Napoleon*, 602 U.S. 556, 558 (2024) ("To succeed on such a claim, a plaintiff must show that a government official charged him without probable cause, *leading to an unreasonable seizure of his person.*" (emphasis added) (citation omitted)).

If Elfar has pled a seizure, the court erred in (1) dismissing his ⚑§ 1983 malicious prosecution claim without considering the claim's other elements, (2) holding Elfar's malicious prosecution claim could not serve as the basis for his municipal liability claim, and (3) declining to exercise supplemental jurisdiction over Elfar's common law malicious prosecution claim as it had dismissed all federal claims. Because Elfar sufficiently pled a seizure, we will vacate and remand for reconsideration of these downstream issues. We will affirm the court's other orders.

## A.

To prevail on a malicious prosecution claim under ⚑§ 1983, a plaintiff must separately establish: "(1) the defendant[s] initiated a criminal proceeding; (2) the criminal proceeding ended in [his] favor; (3) the defendant[s] initiated the proceeding without probable cause; (4) the defendant[s] acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) [he] suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding." ⚑*Zimmerman v. Corbett*, 873 F.3d 414, 418 (3d Cir. 2017) (alteration in original) (internal quotation marks omitted) (quoting ⚑*Halsey v. Pfeiffer*, 750 F.3d 273, 296–97 (3d Cir. 2014)). Because the District Court held Elfar failed to plead a seizure and, accordingly, did not reach malicious prosecution's other elements, the operative question on appeal is whether Elfar was seized within the meaning of the Fourth Amendment. Elfar identifies two potential seizures: (1) his license restrictions and mandatory appearances during his retrial, and (2) his post-arrest, one-hour detention and mandatory appearances during his first trial. An embedded issue within Elfar's first potential seizure is whether deprivations of liberty suffered during retrial may constitute a seizure.

Case 1:26-cv-00659-KM    Document 15-1    Filed 05/20/26    Page 11 of 49

Elfar v. Township of Holmdel, Not Reported in Fed. Rptr. (2025)

A seizure generally must occur before conviction. *See* 🚩*DiBella,* 407 F.3d at 603 ("[T]he Fourth Amendment does not extend beyond the period of *pretrial* restrictions." (emphasis added)); 🚩*Donahue v. Gavin,* 280 F.3d 371, 381 (3d Cir. 2002) ("[C]onsistent with our language in Johnstone, we conclude that post-conviction incarceration cannot be a seizure within the meaning of the Fourth Amendment ...." (citation omitted)); 🚩*Torres v. McLaughlin,* 163 F.3d 169, 174 (3d Cir. 1998) ("We conclude that the limits of Fourth Amendment protection relate to the boundary between arrest and *pretrial* detention." (emphasis added)). Two recent Supreme Court cases leave that requirement undisturbed. *See* 🚩*Manuel v. City of Joliet,* 580 U.S. 357, 369 n.8 (2017) ("[O]nce a trial has occurred, the Fourth Amendment drops out ...."); 🚩*Chiaverini,* 602 U.S. at 562–64 ("Under [the Fourth Amendment], a *pretrial* detention ... must be based on probable cause.... [A] Fourth Amendment malicious-prosecution suit depends not just on an unsupported charge, but on that charge's causing a *seizure*—like the arrest and three-day detention here." (emphasis added)).

 **\*4** But deprivations of liberty suffered during retrial, *after a defendant's conviction has been vacated*, also qualify as seizures under the Fourth Amendment. That is, once a defendant's conviction is vacated and the government elects to proceed with a new trial, the conviction has become a legal nullity, and the defendant necessarily returns to a *pretrial* status. *See* 🚩*Weyant v. Okst,* 101 F.3d 845, 854 (2d Cir. 1996) ("Even a conviction that has been merely vacated, ... with the matter remanded for a new trial, ... is 'null and void, and the parties are left in the same situation as if no trial had ever taken place.' " (quoting *United States v. Ayres,* 76 U.S. (9 Wall.) 608, 610 (1869))). Restrictions imposed after a conviction is vacated and while retrial is pending are accordingly "pretrial deprivations of liberty" subject to the principles animating *Manuel*: "the Framers drafted the Fourth Amendment to address the matter of *pretrial* deprivations of liberty, and the Amendment thus provides standards and procedures for the detention of suspects *pending trial*." 🚩580 U.S. at 369 n.8 (citations omitted) (internal quotation marks omitted); *see also* 🚩*Torres,* 163 F.3d at 174 ("[T]he Framers of the Constitution drafted the Fourth Amendment to quell *pretrial* deprivations of liberty.").

Accordingly, Elfar's deprivations of liberty suffered during retrial might qualify as a seizure *if his conviction was vacated.* But it is unclear whether Elfar's conviction was vacated pending his retrial. On one hand, it appears no order was entered independently vacating his conviction before retrial. On the other hand, the local rule under which Elfar's retrial was granted provides that an order granting a retrial "may vacate the judgment if already entered," N.J. Mun. Ct. R. 7:10-1, and the New Jersey Superior Court judge who ultimately exonerated Elfar seemingly believed his conviction had been vacated pending retrial, *see* App. 171 ("It is not clear how [Elfar] could be granted a new trial and be bound by the legal rulings made in a trial that was *vacated* and made by a Judge who recused herself." (emphasis added)). In sum, while no independent legal ruling vacated Elfar's conviction, the order granting Elfar's retrial *may* have had that effect. Because we must construe the complaint in the light most favorable to the non-movant on a motion to dismiss, and the status of Elfar's conviction pending retrial is murky, we will presume Elfar's conviction *was* vacated, rendering his deprivations of liberty suffered during retrial a potential seizure. [3]

Though not all pretrial deprivations of liberty rise to a seizure under the Fourth Amendment, Elfar's mandatory appearances combined with his driving restrictions, as pleaded, rise to a seizure. Merely having to attend one's trial, without more, is not a seizure. 🚩*DiBella,* 407 F.3d at 603; *see also* 🚩*Gallo v. City of Philadelphia,* 161 F.3d 217, 222 (3d Cir. 1998) (holding it was a "close question" whether the following restrictions, together, amounted to a seizure: "[Plaintiff] had to post a $10,000 bond, he had to attend all court hearings including his trial and arraignment, he was required to contact Pretrial Services on a weekly basis, and he was prohibited from traveling outside New Jersey and Pennsylvania"). But, where a defendant is both compelled to attend their trial *and* suffers onerous travel restrictions, they are seized within the meaning of the Fourth Amendment. *See* 🚩*Black,* 835 F.3d at 362–63, 368 (3d Cir. 2016) (finding pretrial restrictions rose to a seizure where a plaintiff "was released on $50,000 unsecured bail" and was compelled to fly from her home in "California to Pennsylvania for twelve out of fourteen pre-trial conferences, .... presumably at great expense"). Here, Elfar pleads he was required to appear in court no less than

seventeen times and that his driving restrictions "up-ended" his life and resulted in threats of arrest despite his compliance with the restrictions. App. 137. Together, these mandatory appearances and onerous travel restrictions rise to a seizure under *Black, Gallo*, and *DiBella*. [4]

**\*5** Because Elfar has adequately pled a seizure under the Fourth Amendment, the District Court erred in declining to consider whether he satisfied malicious prosecution's other elements, including whether defendants initiated the criminal proceeding against Elfar without probable cause. Accordingly, the court also erred in holding Elfar's malicious prosecution claim could not serve as the basis for his municipal liability claim and in declining to exercise supplemental jurisdiction over Elfar's common law malicious prosecution claim. Rather than reach these issues, we will remand for the court to consider (1) whether Elfar has sufficiently pled malicious prosecution's other elements, (2) if he has, whether malicious prosecution might serve as the basis for his municipal liability claim, and (3) based on the answers to these questions, whether the court should exercise supplemental jurisdiction over Elfar's common law malicious prosecution claim.

### B.

The District Court properly denied Elfar's motion for partial summary judgment against Holmdel based on its decision not to apply non-mutual offensive issue preclusion, also known as collateral estoppel. When considering whether to give preclusive effect to a state court judgment, federal courts look to the adjudicating state's law. *Greenleaf v. Garlock, Inc.*, 174 F.3d 352, 357 (3d Cir. 1999). In New Jersey, in addition to fairness considerations, "there are five identified conditions precedent to the application of the collateral estoppel doctrine: ... (1) the issue to be precluded is identical to the issue decided in the prior proceeding; (2) the issue was actually litigated in the prior proceeding; (3) the court in the prior proceeding issued a final judgment on the merits; (4) the determination of the issue was essential to the prior judgment; and (5) the party against whom the doctrine is asserted was a party to or in privity with a party to the earlier proceeding." *N.J. Div. of Youth & Fam. Servs. v. R.D.*, 23 A.3d 352, 368 (N.J. 2011) (internal quotation marks omitted) (quoting *Olivieri v. Y.M.F. Carpet, Inc.*, 897 A.2d 1003, 1009 (N.J. 2006)).

The District Court held condition five was not satisfied as Holmdel was not in privity with the municipal prosecutor in Elfar's prior criminal proceeding—*i.e.*, the prosecutor was not Holmdel's "virtual representative," allowing Holmdel to "control" the litigation. *Allen v. V&A Bros.*, 26 A.3d 430, 445 (N.J. 2011) (citation omitted). This holding was not an abuse of discretion. As the court reasonably concluded, although Holmdel employed the municipal prosecutor, she was not Holmdel's virtual representative. Her client was the State of New Jersey, *see Matter of Segal*, 617 A.2d 238, 244 (N.J. 1992) ("[T]he State is the municipal prosecutor's client ...."), and New Jersey had divergent interests from Holmdel as a potential § 1983 claim posed no danger to New Jersey given its state immunity, *see Will v. Mich. Dept. of State Police*, 491 U.S. 58, 66 (1989) ("Section 1983 ... does not provide a federal forum for litigants who seek a remedy against a *State* for alleged deprivations of civil liberties." (emphasis added)). The same is true for the county prosecutor who prosecuted the case against Elfar on appeal. *See Coleman v. Kaye*, 87 F.3d 1491, 1505 (3d Cir. 1996) ("When [New Jersey] county prosecutors engage in classic law enforcement and investigative functions, they act as officers of the State."). Accordingly, we will affirm the court's denial of Elfar's motion for partial summary judgment.

### C.

The District Court did not abuse its discretion in staying discovery pending the resolution of dispositive motions. District courts retain broad discretion to manage the docket and resolve discovery disputes. *See In re Fine Paper Antitrust Litig.*, 685 F.2d

Case 1:26-cv-00659-KM    Document 15-1    Filed 05/20/26    Page 13 of 49

Elfar v. Township of Holmdel, Not Reported in Fed. Rptr. (2025)

810, 817 (3d Cir. 1982) ("[M]atters of docket control and conduct of discovery are committed to the sound discretion of the district court."). And courts may reasonably stay discovery pending a motion to dismiss where the motion may render discovery futile. *See* ⚑*Iqbal*, 556 U.S. at 686 ("Because respondent's complaint is deficient under Rule 8, he is not entitled to discovery, cabined or otherwise."). Because the court stayed discovery pending dispositive motions to conserve judicial resources, it acted within its discretion, and we will affirm these orders.

IV.

**\*6** For the foregoing reasons, we will vacate the court's order granting the motion to dismiss and remand for further consideration on whether (1) Elfar has sufficiently pled malicious prosecution's non-seizure elements under ⚑§ 1983, (2) malicious prosecution might serve as a basis for municipal liability, and (3) the court should exercise supplemental jurisdiction over Elfar's common law malicious prosecution claim. We will affirm the court's orders denying the motion for partial summary judgment and staying discovery.

Krause, Circuit Judge, concurring.

I agree with my colleagues that the District Court erred in dismissing the complaint, given that it sufficiently pleads a pretrial deprivation of liberty that constitutes a "seizure" for purposes of a Fourth Amendment malicious-prosecution claim. I write separately, however, to bring clarity to two issues implicated here, both of which have clear resolutions that flow neatly from our existing case law and bedrock constitutional principles.

First, because "the Fourth Amendment does not extend beyond the period of *pretrial restrictions*," ⚑*DiBella v. Borough of Beachwood*, 407 F.3d 599, 603 (3d Cir. 2005) (emphasis added), deprivations of liberty suffered while awaiting appeal cannot satisfy the "seizure" element of a Fourth Amendment malicious-prosecution claim. Whether the appellate court's standard of review is *de novo*, as was the case here, or more deferential, an appeal is an appeal, so a restriction imposed on a defendant while his appeal is pending is by definition a "post-conviction" restriction and thus "cannot be a seizure within the meaning of the Fourth Amendment." ⚑*Torres v. McLaughlin*, 163 F.3d 169, 174 (3d Cir. 1998); ⚑*Donahue v. Gavin*, 280 F.3d 371, 381 (3d Cir. 2002) (same).

Second, when a new trial is granted in a criminal case, the initial conviction is vacated as a matter of law, regardless of whether the order explicitly says so. That is because the Double Jeopardy Clause explicitly prohibits the government from retrying someone for a crime if their initial conviction remains intact, *see* U.S. Const. amend. V ("No person shall ... be subject for the same offense to be twice put in jeopardy of life or limb ...."), making it "elementary in our law that a person can be tried a second time for an offense" only "when his prior conviction for that same offense has been set aside," ⚑*Burks v. United States*, 437 U.S. 1, 9 (1978) (quoting ⚑*Forman v. United States*, 361 U.S. 416, 425 (1960)); ❓*North Carolina v. Pearce*, 395 U.S. 711, 717 (1969) (explaining that the Double Jeopardy Clause "protects against a second prosecution for the same offense after conviction"). The necessary corollary, long recognized by the Supreme Court, is that an "order granting [a] new trial has the effect of vacating the former judgment, and to render it null and void, and the parties are left in the same situation as if no trial had ever taken place in the cause." *United States v. Ayres*, 76 U.S. 608, 610 (1869). We, too, have considered it "settled that the granting of a new trial has the effect of vacating an existing judgment in the cause." *Allegheny Cnty. v. Maryland Cas. Co.*, 132 F.2d 894, 896 (3d Cir. 1943). Thus, for purposes of a Fourth Amendment malicious-prosecution claim, the grant of a new trial wipes the slate clean, effectively resetting the clock to the pretrial stage.

What that means here is that Elfar could not have been forced to stand for a second trial, consistent with the Double Jeopardy Clause, if he simultaneously remained convicted of the offenses for which he was being retried. *See* U.S. Const. amend. V. Nor could he have been convicted and sentenced at his retrial unless his initial conviction and sentence were annulled. *See*

*Burks*, 437 U.S. at 9; *Pearce*, 395 U.S. at 717. Thus, Elfar's first conviction was vacated as a matter of basic constitutional law once his motion for a new trial was granted, *see Ayres*, 76 U.S. at 610; *Allegheny Cnty.*, 132 F.2d at 896, meaning that the deprivations of liberty he suffered while his retrial was pending were necessarily pretrial and, hence, cognizable seizures for purposes of his malicious-prosecution claim.

**\*7** With these understandings and the guidance they may provide on remand, I join the majority opinion.

**All Citations**

Not Reported in Fed. Rptr., 2025 WL 671112

---

### Footnotes

| | |
|---|---|
| \* | This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent. |
| 1 | Contrary to the language of the consent order itself, Elfar's complaint contends he was permitted to drive for "limited reasons" between 9:00 am. and 5:00 p.m. App. 128. Either way, Elfar pleads the State restricted his ability to drive. |
| 2 | The District Court had jurisdiction under 28 U.S.C. § 1331 and § 1367, and we have jurisdiction under 28 U.S.C. § 1291. |
| 3 | Our inference that Elfar's conviction was vacated pending his retrial depends on our deferential Rule 12(b)(6) review and this case's uniquely murky procedural history. We make no holding on whether, as a matter of New Jersey state law, an order granting a retrial under N.J. Mun. Ct. R. 7:10-1 necessarily vacates a conviction in every case, or on whether New Jersey's *de novo* appeal procedure has any bearing on the status of an appealed conviction. |
| 4 | Because we hold Elfar's mandatory appearances and driving restrictions, as pleaded, rise to a seizure, we need not evaluate whether his deprivations of liberty suffered during his first trial independently constitute a seizure. |

---

**End of Document**

© 2026 Thomson Reuters. No claim to original U.S. Government Works.

2024 WL 4372307
Only the Westlaw citation is currently available.
United States District Court, M.D. Pennsylvania.

Michael FERNSLER, Plaintiff,
v.
SWATARA TOWNSHIP POLICE DEPARTMENT, et al., Defendants.

Civil No. 1:24-CV-1253
|
Signed October 2, 2024

**Attorneys and Law Firms**

Michael Fernsler, Coal Township, PA, Pro Se.

Anthony R. Sherr, Sherr Law Group, LLC, Norristown, PA, for Defendants Swatara Township Police Department, Darrell Reider, Timothy Shatto.

Scott P. Stedjan, Killian & Gephart, LLP, Harrisburg, PA, for Defendant Robert Daniels.

Coryn D. Hubbert, Donald L. Carmelite, Marshall Dennehey, P.C., Camp Hill, PA, for Defendant Deanna Muller.

Benjamin P. Novak, Gregory S. Hirtzel, Fowler, Hirtzel, McNulty & Spaulding, LLP, Lancaster, PA, for Defendant Gerry Cassel.

**MEMORANDUM AND ORDER**

Daryl F. Bloom, Chief United States Magistrate Judge

## I. Introduction

**\*1** Pending before the court are several discovery motions and motions for default judgment filed by the plaintiff (Docs. 24, 35-37, 40, 42), as well as a motion to stay discovery filed by one of the defendants. (Doc. 38). For the following reasons, we will grant the motion to stay discovery, and the plaintiff's motions will be denied.

## II. Discussion

This is a civil action initially filed in the Court of Common Pleas of Dauphin County and removed to this Court. (Doc. 1). The plaintiff, Michael Fernsler, is a state inmate incarcerated in the Pennsylvania Department of Corrections ("DOC"). He filed this action in county court against the defendants, asserting claims of civil rights violations pursuant to 42. U.S.C. § 1983.

The case was removed to this Court (Doc. 1), and Fernsler filed an amended complaint. (Doc. 21).[1] The amended complaint alleges violations of the Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution, as well as violations of the Pennsylvania Constitution and state law defamation claims arising from his state criminal convictions for Involuntary Deviate Sexual Intercourse with a Child and other related crimes. *See Commonwealth v. Fernsler*, CP-22-CR-0002173-2006.[2] All but one of the defendants have filed motions to dismiss the amended complaint. (Docs. 27, 29, 31, 33). For his part, Fernsler has filed various motions seeking discovery from the defendants, as well as two identical motions for default judgment. (Docs. 24, 35-37, 40, 42). Additionally, Defendant Cassel has filed a motion to stay discovery until the pending motions to dismiss are resolved. (Doc. 38).

We first address the defendant's motion to stay discovery. In determining whether a stay of discovery is appropriate, courts typically consider the following factors:

> (1) "whether a stay would unduly prejudice or present a clear tactical disadvantage to the non-moving party"; (2) "whether denial of the stay would create a clear case of hardship or inequity for the moving party"; (3) "whether a stay would simplify the issues and the trial of the case"; and (4) "whether discovery is complete and/or a trial date has been set."

*Clarity Sports International LLC v. Redland Sports*, 400 F. Supp. 3d 161, 182 (M.D. Pa. 2019) (quoting *Akishev v. Kapustin*, 23 F. Supp. 3d 440, 446 (D.N.J. 2014) (internal quotation marks and citations omitted)). A decision to stay discovery lies within the broad discretion of the Court, given "the [C]ourt's 'inherent power to conserve judicial resources by controlling its own docket.' " *Id.* (quoting *Peschke Map Techs., LLC v. J.J. Gumberg Co.*, 40 F. Supp. 3d 393, 395-96 (D. Del. 2014) (internal quotation marks omitted)).

**\*2**  While the filing of a dispositive motion does not automatically entitle the defendants to a stay, "[i]n certain circumstances it may be appropriate to stay discovery while evaluating a motion to dismiss where, if the motion is granted, discovery would be futile." *Mann v. Brenner*, 375 F. App'x 232, 239 (3d Cir. 2010) (collecting cases). Additionally, "a stay is proper where the likelihood that such motion may result in a narrowing or an outright elimination of discovery outweighs the likely harm to be produced by the delay." *19th Street Baptist Church v. St. Peters Episcopal Church*, 190 F.R.D. 345, 349 (E.D. Pa. 2000) (citation and internal quotation marks omitted).

Here, we find that these factors weigh in favor of staying discovery in this matter until the pending motions to dismiss are resolved. The amended complaint was filed on September 6, 2024, and the motions to dismiss were filed shortly thereafter. All of the pending motions move, in part, to dismiss this action on statute-of-limitations grounds. Thus, we conclude that a stay is appropriate because, not only has discovery not yet begun at this early stage, but resolution of these pending motions is likely to reduce or eliminate the need for discovery if the motions are granted. *See e.g.*, *North American Communications, Inc. v. InfoPrint Solutions Co., LLC*, 2011 WL 4571727, at \*3-4 (W.D. Pa. July 13, 2011); *McLafferty v. Deutsche Lufthansa A.G.*, 2008 WL 4612856, at \*2 (E.D. Pa. Oct. 15, 2008). This is so particularly given the statute of limitations arguments raised by the defendants. We further conclude that a brief stay pending resolution of the dispositive motions will not prejudice the plaintiff. *See Baquero v. Mendoza*, 2019 WL 13250988, at \* n.3 (D.N.J. March 13, 2019) (finding that a stay of discovery after the "case only recently commenced" would not prejudice the plaintiff and, rather, "would simplify issues for discovery because a ruling on the pending motion to dismiss may streamline the scope of discovery.")

Because we have determined that a stay of discovery would be appropriate in this case, it follows that the plaintiffs' pending motions to compel discovery (Docs. 24, 35-37) must be denied. However, these motions will be denied without prejudice to the plaintiff refiling any appropriate motions after the resolution of the pending motions to dismiss.

Finally, we address Fernsler's motions for default judgment. (Docs. 40, 42). These motions appear to request a default judgment against many of the defendants who have filed motions to dismiss, arguing that "no answer or other defense has been filed by the defendants[.]" (Doc. 40 at 1; Doc. 42 at 1). At the outset, we note for the plaintiff that prior to moving for a default judgment, there must be an entry of default against the defendants. *See* Fed. R. Civ. P. 55(a); *Nationwide Mut. Ins. Co. v. Starlight Ballroom Dance Club, Inc.*, 175 F. App'x 519, 521 n.1 (3d Cir. 2006) ("Prior to obtaining a default judgment under either Rule 55(b)(1) or Rule 55(b)(2), there must be an entry of default as provided by Rule 55(a).") (internal citation and quotation marks omitted). While Fernsler's motions contend that "default was entered in the civil docket of the office of this clerk on the 4th day of August, 2024[,]" the docket shows no such entry of default by the clerk.

More fundamentally, however, an entry of default or a default judgment is appropriate "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise[.]" Fed. R. Civ. P. 55(a). Here, with the exception of Defendant Dauphin County Court, all of the defendants have filed motions

Case 1:26-cv-00659-KM    Document 15-1    Filed 05/20/26    Page 17 of 49

Fernsler v. Swatara Township Police Department, Not Reported in Fed. Supp. (2024)

to dismiss the amended complaint. Accordingly, as to these defendants, Fernsler has no basis to request an entry of default or default judgment.

**\*3** With respect to Defendant Dauphin County Court, no appearance has been entered on behalf of this defendant, despite service of the Notice of Removal of this action by Defendant Cassel. (*See* Doc. 1 at 6). Accordingly, as to Defendant Dauphin County Court, we will order this defendant to show cause as to why a default should not be entered against it in this matter pursuant to ⚑Federal Rule of Civil Procedure 55(a).

### III. Order

Accordingly, IT IS HEREBY ORDERED THAT:

1. Defendant Cassel's motion to stay discovery (Doc. 38) is GRANTED, and discovery will be stayed pending the resolution of the motions to dismiss;

2. Fernsler's motions to compel discovery and for miscellaneous relief (Docs. 24, 35-37) are DENIED without prejudice to Fernsler filing appropriate discovery motions following the resolution of the pending motions to dismiss;

3. Fernsler's motions for default judgment (Docs. 40, 42) are DENIED;

4. Defendant Dauphin County Court is ordered to show cause **on or before October 11, 2024,** as to why a default should not be entered against it in this matter pursuant to ⚑Federal Rule of Civil Procedure 55(a); and

5. Fernsler's request for an extension of time to respond to the pending motions to dismiss (Doc. 43) is GRANTED, and the plaintiff shall respond to these motions **on or before October 21, 2024**.

SO ORDERED, this 2nd day of October 2024.

**All Citations**

Not Reported in Fed. Supp., 2024 WL 4372307

---

**Footnotes**

1    The plaintiff obtained leave of court to file an amended complaint, but subsequently, filed a second amended complaint without leave of court or consent of the parties. Accordingly, his second amended complaint (Doc. 25) will be stricken. Fed. R. Civ. P. 15(a)(2).

2    A review of the state court docket indicates that in 2008, Fernsler pleaded guilty to Involuntary Deviate Sexual Intercourse with a Child, Indecent Assault Person Less than 13 Years of Age, two counts of Corruption of Minors, and Unlawful Contact with a Minor.

---

**End of Document**    © 2026 Thomson Reuters. No claim to original U.S. Government Works.

2018 WL 3727365
Only the Westlaw citation is currently available.
United States District Court, D. Massachusetts.

HILLSIDE PLASTICS, INC., Plaintiff

v.

DOMINION & GRIMM U.S.A., INC., and Dominion & Grimm, Inc., Defendants

Civil Action No. 3:17-cv-30037-MAP
|
Signed 08/06/2018

**Attorneys and Law Firms**

Cindy Chang, Goodwin Procte LLP, New York, NY, Ira J. Levy, Caroline S. Brownworth, Robert D. Carroll, Goodwin Procter, LLP, Boston, MA, for Plaintiff.

Matthew C. Hurley, Nicholas W. Armington, Mintz, Levin, Cohn, Ferris, Glovsky & Popeo, PC, Boston, MA, Meaghan H. Kent, Thai-Hoa X. Nguyen, Venable LLP, Washington, DC, Ralph A. Dengler, Venable LLP, New York, NY, for Defendants.

MEMORANDUM AND ORDER REGARDING DEFENDANTS' MOTION TO STAY DISCOVERY

(Dkt. No. 49)

KATHERINE A. ROBERTSON, UNITED STATES MAGISTRATE JUDGE

## I. INTRODUCTION

**\*1** Referred to this court for decision is the motion of Defendants Dominion & Grimm U.S.A., Inc. and Dominion & Grimm, Inc. ("Defendants") to stay discovery until the resolution of their pending motion for judgment on the pleadings under Fed. R. Civ. P. 12(c), which has been referred to the undersigned for a report and recommendation. For the reasons that follow, Defendants' motion to stay discovery is GRANTED and will expire on the later of: (1) the date fifteen days from the issuance of this court's report and recommendation on Defendants' motion for judgment on the pleadings if there are no objections to the report and recommendation; or (2) if a party objects to the report and recommendation, the date the presiding District Judge issues his ruling on the objections if he adopts the report and recommendation.

## II. RELEVANT BACKGROUND

Plaintiff Hillside Plastics, Inc. ("Plaintiff") owns the registered trademark ("Mark") for the design of its blow-molded plastic Sugarhill Jug. On March 31, 2017, Plaintiff filed suit claiming Defendants violated federal and state unfair competition laws by producing and selling blow-molded plastic jugs for maple syrup that infringed Plaintiff's registered Mark (Dkt. No. 1). On the same date, Salbro, the manufacturer of Defendants' allegedly infringing jugs who is not a party to this action, petitioned the Trademark Trial and Appeal Board ("TTAB") to cancel Plaintiff's registration for the Mark on the ground that the claimed trade dress was purely functional (Dkt. No. 23 at 15 ¶ 33). On June 7, 2017, Plaintiff moved to suspend the TTAB proceeding (Dkt. No. 23 at 15 ¶ 34). On June 26, 2017, Defendants moved to stay this court's action pending the TTAB's adjudication (Dkt. No. 21). After the TTAB granted Plaintiff's motion to suspend its action (Dkt. No. 23 at 15 ¶ 36), Defendants filed their counterclaim along with their answer to Plaintiff's complaint (Dkt. No. 23). Defendants' motion to stay the instant action was denied on September 21, 2017 (Dkt. Nos. 21, 32). On November 1, 2017, the undersigned entered a scheduling order stating that non-expert discovery is to be completed by July 31, 2018 (Dkt. No. 44).

Case 1:26-cv-00659-KM   Document 15-1   Filed 05/20/26   Page 19 of 49

Hillside Plastics, Inc. v. Dominion & Grimm U.S.A., Inc., Not Reported in Fed. Supp. (2018)

On November 7, 2017, Defendants moved for dismissal of all counts with prejudice (Dkt. No. 46), *see* Fed. R. Civ. P. 12(c), and moved to stay discovery (Dkt. No. 49). Defendants are seeking dismissal on the grounds that Plaintiff's trademark is functional and, even if it is non-functional, Defendants have not infringed Plaintiff's trademark. Plaintiff has opposed both motions; Defendants have responded to Plaintiff's oppositions; and Plaintiff has replied to Defendants' response to Plaintiff's opposition to the motion to stay discovery (Dkt. Nos. 53, 54, 57, 61, 65). Plaintiff's sur-reply appended Defendants' Responses and Objections to Plaintiff's First Set of Requests for Production of Documents and Defendants' Responses and Objections to Plaintiff's First Set of Requests for Interrogatories, which Plaintiff alleges were served in accordance with the court's scheduling order (Dkt. Nos. 65 at 1-2, 65-2, 65-3). In response to all discovery requests, Defendants objected on the ground that the instant motion to stay discovery was pending and reserved all substantive objections (*id.*).

**\*2** On December 19, 2017, Defendants' motions were referred to the undersigned who heard the parties' arguments on Defendants' motion for judgment on the pleadings and motion to stay discovery. During the hearing, the court stayed discovery pending a ruling on Defendants' motions. The undersigned has issued a separate report recommending that Defendants' motion for judgment on the pleadings be denied.

## III. STANDARD

"The court has broad discretion to stay discovery pending resolution of a motion to dismiss." *Dicenzo v. Mass. Dep't of Corr.,* Case No. 3:15-cv-30152-MGM, 2016 WL 158505, at \*1 (D. Mass. Jan. 13, 2016) (citing *Landis v. North Am. Co.*, 299 U.S. 248, 254 (1936) ). "[F]ederal courts possess the inherent power to stay proceedings for prudential reasons." *Microfinancial, Inc. v. Premier Holidays Int'l, Inc.*, 385 F.3d 72, 77 (1st Cir. 2004) (citations omitted). However, "stays cannot be cavalierly dispensed: there must be good cause for their issuance; they must be reasonable in duration; and the court must ensure that competing equities are weighed and balanced." *Marquis v. F.D.I.C.*, 965 F.2d 1148, 1155 (1st Cir. 1992). "The moving party bears the burden of showing good cause and reasonableness for a stay of discovery, which is akin to a protective order under Fed. R. Civ. P. 26(c)(1)." *Dicenzo*, 2016 WL 158505, at \*1. *See* *Pub. Citizen v. Liggett Grp., Inc.*, 858 F.2d 775, 789 (1st Cir. 1988).

## IV. DISCUSSION

Defendants are seeking a stay pending resolution of their motion to dismiss all counts of the complaint. Notwithstanding this court's recommendation that Defendants' motion be denied, the report and recommendation does not constitute a final order. *See* 28 U.S.C. § 636(b)(1)(B); Fed. R. Civ. P. 72(b)(3). Consequently, the motion will remain pending until the presiding District Judge resolves objection(s) to the decision, if any. *Id.* A pending dispositive motion constitutes good cause for a stay of discovery. *See, e.g., See* *Kolley v. Adult Protective Servs.*, 725 F.3d 581, 587 (6th Cir. 2013) (a plaintiff is not entitled to discovery prior to the court ruling on a motion to dismiss for failure to state a claim); *Petrus v. Bowen*, 833 F.2d 581, 583 (5th Cir. 1987) ("[a] trial court has broad discretion and inherent power to stay discovery until preliminary questions that may dispose of the case are determined"); *Chavous v. D.C. Fin. Responsibility & Mgmt. Assistance Auth.,* 201 F.R.D. 1, 5 (D.D.C. 2001) (a stay of discovery pending decision on a dispositive motion that would fully resolve the case is a proper exercise of discretion; it "furthers the ends of economy and efficiency, since if [the motion] is granted, there will be no need for discovery."). In view of good cause, holding discovery in abeyance until such time as a ruling on the dispositive motion becomes final will not unreasonably delay the litigation. *See Dicenzo*, 2016 WL 158505, at \*2 ("relatively brief delay" until the disposition of dispositive motions is reasonable).

The weighing of the equities presents a closer question. Defendants have demonstrated that responding to Plaintiff's discovery requests will require the expenditure of significant time and expense. *See* Fed. R. Civ. P. 26(c)(1). Defendants' burden outweighs the cost to Plaintiff from its purported loss of customers due to Defendants' marketing and selling the allegedly infringing

jugs. Although the court is cognizant that delay of the litigation may exacerbate Plaintiff's losses, Defendants' production and sale of their allegedly infringing jugs and Plaintiff's concomitant loss of business will continue even if discovery proceeds because Plaintiff has not moved for a preliminary injunction. If the court case advances, the impact of delay on Plaintiff's business can be considered when setting a discovery schedule. On balance, "avoiding potentially unnecessary discovery costs—and if the motion to dismiss succeeds, then all discovery costs would have been unnecessary—will not significantly prejudice [Plaintiff], and may indeed even operate to its benefit." *Dillinger, L.L.C. v. Elec. Arts, Inc.*, No. 1:09-cv-01236-SEB-JM, 2010 WL 1945739, at *1-2 (S.D. Ind. May 11, 2010) (granting stay of discovery in trademark infringement case pending resolution of the defendant's motion to dismiss).

## V. CONCLUSION

**\*3**  Accordingly, Defendants' motion to stay is GRANTED. If no objections are filed to the report and recommendation on Defendants' motion for judgment on the pleadings, the stay of discovery will automatically expire fifteen days after the filing of the report and recommendation. If either party files objections to the report and recommendation, however, the stay of discovery will automatically expire upon the issuance of the presiding District Judge's ruling on Defendants' motion for judgment on the pleadings if the District Judge adopts the Report and Recommendation.

It is so ordered.

**All Citations**

Not Reported in Fed. Supp., 2018 WL 3727365

---

**End of Document**

© 2026 Thomson Reuters. No claim to original U.S. Government Works.

1990 WL 39311
Only the Westlaw citation is currently available.
United States District Court, E.D. Pennsylvania.

Arthur JACKSON

v.

NORTHERN TELECOM, INC., Michael Lopiano, Ralph Papa, Peter Depierro, Nancy Galligan, and John Kilcoyne.

CIV. A. No. 90–0201.
|
March 30, 1990.

**Attorneys and Law Firms**

Arthur Jackson, Philadelphia, Pa., for plaintiff.

Bertrand Pogrebin, Alan C. Becker, Richard G. Kass, Rains & Pogrebin, P.C., Mineola, N.Y., pro hac vice, for Northern Telecom; Michael Lopiano; Ralph Papa, Pete Dipierro; Nancy Galligan; John Kilcoyne.

*MEMORANDUM AND ORDER*

EDWIN E. NAYTHONS, United States Magistrate.

**\*1** Presently before the court are plaintiff's motion to compel discovery and defendants' cross-motion to stay discovery until defendants' motion to dismiss the complaint is ruled upon. For the reasons which follow, defendants' motion to stay discovery is granted. The court will reserve its ruling on plaintiff's discovery motion until such time as this court rules upon defendants' motion to dismiss.

*DISCUSSION*

A district court may properly exercise broad discretion in discovery matters. *Scroggins v. Air Cargo, Inc.,* 534 F.2d 1124, 1133 (5th Cir.1976). *See, e.g., Swanner v. United States,* 406 F.2d 716, 719 (5th Cir.1969). In particular, a United States Magistrate is given broad discretion to stay discovery pending decision on a dispositive motion. *Panola Land Buyers Ass'n v. Shuman,* 762 F.2d 1550, 1560 (11th Cir.1985); *Scroggins, supra,* at 1133 ("no possible abuse of discretion in order staying general discovery until the court could determine whether the case would be resolved at summary judgment stage"); *Swanner, supra,* at 719. *See, e.g., Ingram Corp. v. J. Ray McDermott & Co.,* 698 F.2d 1295, 1304 n. 13 (5th Cir.1983) ( "decision to prevent unnecessary discovery because the case could well be decided on the parties' motions"). An exception is made when a party would be denied discovery which relates to the dispositive motion. *See Scroggins, supra,* at 1133. However, that circumstance is not present in the instant matter.

In the present matter, defendants have informed the court that they "will serve their motion to dismiss the complaint on April 6, 1990," *see,* March 27, 1990 letter to the court from Richard G. Kass, Esquire, and that all discovery relevant to such a motion has been completed. *See,* defendants' reply brief, at 2. Therefore, in the interest of judicial economy, and with a view toward preventing possibly unnecessary and expensive discovery, this court will grant defendants' motion to stay discovery. *See Ingram Corp., supra,* at 1304 n. 13; *Scroggins, supra,* at 1133. *Cf. McDonnell Douglas Corp. v. Polin,* 429 F.2d 30 (3d Cir.1970).

Case 1:26-cv-00659-KM    Document 15-1    Filed 05/20/26    Page 22 of 49

An appropriate order follows.

ORDER

AND NOW, this 29th day of March, 1990, upon consideration of defendants' cross-motion to stay discovery until defendants' motion to dismiss is ruled upon, it is hereby ORDERED that defendants' motion is GRANTED. All discovery is hereby stayed until such time as the court rules upon defendants' motion to dismiss the complaint, said motion to be made by April 6, 1990.

**All Citations**

Not Reported in F.Supp., 1990 WL 39311

---

**End of Document**
© 2026 Thomson Reuters. No claim to original U.S. Government Works.

2011 WL 4571727
Only the Westlaw citation is currently available.
United States District Court,
W.D. Pennsylvania.

NORTH AMERICAN COMMUNICATIONS, INC., Plaintiff,

v.

INFOPRINT SOLUTIONS COMPANY, LLC, International
Business Machines Corporation, and IBM Credit LLC, Defendants.

Civil Action No. 3:08–288.
|
July 13, 2011.

**Attorneys and Law Firms**

Robert J. Tribeck, Rhoads & Sinon LLP, Harrisburg, PA, for Plaintiff.

Robert N. Feltoon, Conrad O'Brien, Philadelphia, PA, for Defendants.

### *MEMORANDUM AND ORDER OF COURT*

GIBSON, District Judge.

## I. SYNOPSIS

**\*1** This matter comes before the Court on Defendant International Business Machines Corporation's ("IBM's") "Motion to Stay Further Discovery" (Doc. No. 67) pending resolution of IBM's Motion to Dismiss the Third Amended Complaint (the "TAC") and Plaintiff's Motion for Reconsideration (the "Motion for Reconsideration") of this Court's dismissal, with prejudice, of the claims against Defendant InfoPrint Solutions Company, LLC ("InfoPrint")" (*See* Doc. No. 58). The Plaintiff, North American Communications, Inc., opposes the Motion to Stay Further Discovery (the "Motion to Stay"). Doc. No. 69. For the reasons that follow, the Motion to Stay is **GRANTED.**

## II. BACKGROUND

This case arises out of Plaintiff's lease of two (2) high speed copier machines/printers (the "Machines" or the "Printers"), manufactured by Defendant IBM and rented/leased by Plaintiff, and with the related finance and maintenance contracts entered into by Plaintiff and former Defendants IBM Credit and InfoPrint, respectively. Doc. 31–2 at 3. There are 3 written contracts which are at the heart of this dispute:

1) A contract between Plaintiff and Defendant International Business Machines Corporation, entitled "IBM Customer Agreement" (the "Customer Agreement"), dated July 17, 2006 (Doc. 31–2, Exhibit A);

2) A contract between Plaintiff and Defendant IBM Credit, entitled "Term Lease Master Agreement" (the "Finance Agreement"), dated July 17, 2006 (Doc. 31–2, Exhibit B); and

Case 1:26-cv-00659-KM    Document 15-1    Filed 05/20/26    Page 24 of 49

North American Communications, Inc. v. InfoPrint Solutions..., Not Reported in...

3) An agreement for service of IBM machines/software, comprised of a "Schedule for ServiceElite", a "Master Services Attachment for ServiceElite", and a "Change Authorization for ServiceElite" (the "Service Agreement") (Doc. 31–2, Exhibit C). Each of the subparts of this document is signed by Plaintiff's representative. A signature block also appears for Defendant IBM Corporation, although no signature is present. The parties have acknowledged that IBM Corporation's "business partner", Defendant InfoPrint, was a party to this contract.

Plaintiff's Second Amended Complaint alleged that the Machines failed to function properly at any point after their delivery and installation. Doc. 31–1 at 5. Plaintiff further alleged that Defendants knew the usage intended by Plaintiff, specifically the need to be able to run Magnetic Ink Character Recognition ("MICR") software (Doc. 31–1 at 5), and that the Machines never met their intended usage. Doc. 31–1 at 4. Plaintiff alleges that as a result of Defendants' "material breach" of contract, it has been deprived of the usage and value of the machines. Doc. 31–1 at 4–6. In its Second Amended Complaint ("SAC"), Plaintiff alleged breach of contract by Defendants IBM and InfoPrint, and breach of warranty by Defendant IBM. Doc. 31–1 at 4–6.

Plaintiff also requested that this Court enter a declaratory judgment pursuant to ⚐28 U.S.C. § 2201 et. seq. Doc. 31–1 at 11. Lastly, Plaintiff sought rescission of contract and a resulting entitlement to recovery of lease payments to date, consequential and incidental damages, and reasonable attorney's fees. Doc. 31–1 at 12.

**\*2** On January 13, 2011, this Court entered a "Memorandum and Order of Court" (Doc. No. 58) which granted Defendants' Motion to Dismiss: the Defendants' Motion was granted with prejudice as to Defendants IBM Credit and InfoPrint, and granted without prejudice as to Defendant IBM Corporation, with leave for Plaintiff to re-file against the latter within ten (10) days *if* Plaintiff believed in good faith that there was a valid basis for a claim of fraudulent concealment. [1]

On January 21, 2011 Plaintiff filed with this Court a Motion for Reconsideration (Doc. No. 60) of this Court's order dismissing the complaint (Doc. No. 58). Also on January 21, 2011, the Plaintiff filed its Third Amended Complaint ("TAC"), again naming all the same Defendants, and noting that its Motion for Reconsideration was pending and that the TAC as submitted was intended to preserve all appellate rights as to this Court's previous dismissal of several counts of the SAC. Doc. No. 59 at 11, 14 and 16. Further, in the TAC the Plaintiff attempts to establish the basic elements of a fraudulent concealment charge, as Plaintiff was given leave to do by this Court's Order of January 13, 2011. [2]

On February 18, 2011 Defendant IBM filed the instant Motion to Stay Further Discovery (Doc. No. 67) pending resolution of the Defendant's Motion to Dismiss, filed on January 31, 2011 (Doc. No. 62).

## IV. JURISDICTION AND VENUE

The Court has jurisdiction over Plaintiffs' claims pursuant to ⚐28 U.S.C. §§ 1332. Venue is proper because the Plaintiff has its principal place of business in Duncansville, Blair County, Pennsylvania.

## V. STANDARD OF REVIEW

### A. Motions to Stay/Discovery

Management of the discovery process is left to the discretion of the trying court, and a decision to stay discovery pending resolution of a potentially dispositive motion is within the discretion of the district court. *See In re Orthopedic Bone Screw Prod. Liab. Litig.,* 264 F.3d 344, 365 (3d Cir.Pa.2001); *see also Ball v. Counselor Hartman,* 2010 U.S. Dist. LEXIS 1899, *13 (M .D. Pa.2010)* ("The decision to stay discovery pending resolution of a potentially dispositive motion is within the discretion of the district court. [*internal citations omitted* ]. A stay of discovery is not appropriate solely because a motion to dismiss is pending. [*internal citations omitted* ]. But, a stay can be proper 'where the likelihood that such motion may result in a narrowing

North American Communications, Inc. v. InfoPrint Solutions..., Not Reported in...

Case 1:26-cv-00659-KM    Document 15-1    Filed 05/20/26    Page 25 of 49

or an outright elimination of discovery outweighs the likely harm to be produced by the delay.' "); *quoting Weisman v. Mediq, Inc., No. 95–1831,* 1995 U.S. Dist. LEXIS 5900, 1995 WL 2736678 at *2 (E.D.Pa.1995); *see also Weeks v. Leeward Islands Apothecaries,* L.L.C., 2010 U.S. Dist. LEXIS 52637 (D.V.I. May 26, 2010) (It is generally accepted that 'a district court has broad discretion 'to stay discovery until preliminary questions that may dispose of the case are determined.' [*internal citations omitted* ]. Such a stay is not, however, automatically granted whenever a motion to dismiss is pending.' "); *citing* ⚑*Petrus v. Bowen,* 833 F.2d 581, 582 (5th Cir.1987).

**\*3** Further, the Third Circuit has upheld district court decisions to stay discovery pending the outcome of a Rule 12(b)(6) motion. *Mann v. Brenner,* 375 Fed. Appx. 232, 239 (3d Cir.2010); *citing and quoting* ⚑*Rutman Wine Co. v. E. & J. Gallo Winery,* 829 F.2d 729, 738 (9th Cir.1987) ("[T]he purpose of F.R. Civ. P. 12(b) (6) is to enable defendants to challenge the legal sufficiency of complaints without subjecting themselves to discovery."); [3] *see also In re Orthopedic Bone Screw Prod. Liab. Litig.,* 264 F.3d 344, 365 (3d Cir.Pa.2001).

## VI. DISCUSSION

As noted above, Defendants request that discovery be stayed pending resolution by this Court of the open Motion of Defendant International Business Machines Corporation to Stay Further Discovery (the "Motion to Stay") (Doc. No. 67). Defendants argue that discovery should be stayed while the pending Motion to Dismiss is being considered, as this is a dispositive motion and to conduct further discovery when the case may be dismissed would be wasteful. Further, Defendants argue that Plaintiff's sense of urgency as to discovery is a bit disingenuous in light of Plaintiff's past lack of diligence in fulfilling discovery obligations in this case. In support of this argument, Defendants argue that 1) the Plaintiff did not serve its first set of document requests and interrogatories on the Defendants until twenty months after this case began; and 2) Plaintiff took two months to give any response to the Defendants' first set of document requests, and at that time Defendants promised to further supplement the documents they produced, but did not do so until three and a half months later. Doc. Nos. 67, 70.

Defendants also argue that a Plaintiff may not rely on discovery to support an otherwise deficient fraud claim. In addition, Defendants argue that before discovery continues, this Court should first consider whether the Plaintiff has pled a facially valid defense of fraud sufficient to overcome the statute of limitations. Doc. Nos. 67, 70.

Plaintiff argues that staying discovery would be against the rationale of eliminating undue burden or expense before discovery begins, as all discovery in this case is done except for two depositions. (Notably, the parties differ on this estimate: Defendants argue that fourteen depositions remain to be taken. *See* Doc. No. 67). Further, Plaintiff argues that "[i]t is the practice of this Court that discovery proceed 'unless the right to relief under the dispositive motion is clear or there is some other good reason.' " Doc. 69. The Plaintiff argues that in this case the Defendants' right to relief (under its Motion to Dismiss) is *not* clear because the Plaintiff *has* stated facts in its TAG which would support a tolling of the statute of limitations under the exception of fraudulent concealment.

We find that it is appropriate to stay discovery pending the outcome of Defendants' Motion to Dismiss, which is in part a 12(b)(6) motion. Plaintiff argues that the rationale for delaying the start of discovery pending a Rule 12(b)(6) motion does not apply to this case because discovery has already begun in this case. However, the fact that discovery was in process at the time of this Court's Dismissal on January 13, 2011 (Doc. No. 58) does not eliminate considerations of litigation costs from the analysis. Although motions to dismiss under Rule 12(b)(6) will usually occur closer in time to the initial filing, this motion to dismiss is occurring at this point in time because Plaintiff was specifically given leave to file an amended complaint *if* Plaintiff believed that it had enough evidence to support fraud. Plaintiff has done so. Therefore, it is not due to any fault of Defendants that we are faced with this issue three years after this litigation has begun, and the fact that Defendants complied with the required discovery process in this case in the past should not now preclude Defendants' request to stay discovery. The rationale for staying discovery

which has not yet begun-for the purposes of avoiding undue cost and waste of time and effort, and recognizing the possibility that the pending Motion to Dismiss *could* potentially dispose of this case—is applicable to the circumstances at hand.

**\*4**  It is unclear how Plaintiff has arrived at the conclusion that it is the practice of this Court *not* to stay discovery. However, again, this Court notes the discretionary aspect of discovery management. As succinctly stated by our sister court in the Middle District, "[t]he decision to stay discovery pending resolution of a potentially dispositive motion is within the discretion of the district court. [*internal citations omitted* ]. A stay of discovery is not appropriate solely because a motion to dismiss is pending. [*internal citations omitted* ]. But, a stay can be proper 'where the likelihood that such motion may result in a narrowing or outright elimination of discovery outweighs the likely harm to be produced by the delay.' " 2010 U.S. Dist. LEXIS 1899, \*13 (M.D.Pa.2010). Such is the case here. [4]

The argument in favor of staying discovery until the Motion to Dismiss is resolved is particularly compelling in light of Defendant's assertions in Court on February 15, 2011, that travel expenses would be required to take these depositions (Doc. Nos.67, 70), and that several of the witnesses no longer work for the Defendant (or Defendants, if Plaintiff's Motion for Reconsideration were successful). In addition, any potential burden imposed on the Plaintiff by having to wait a few more months at this stage in the litigation, is minimal. The Court notes that the parties have previously requested an extension of the discovery period twice, the second extension setting a deadline of more than a year after the initial deadline. *See* Doc. Nos. 19, 25, 26, 57. The Court also recognizes Defendant's argument that Plaintiff has caused delay in this litigation by filing the initial claim at such a late stage and by its slow responses to discovery. In light of the fact that discovery has already been stretched out over a period of a year and a half, there is minimal harm, if any, in delaying for a short period longer until the Motion for Reconsideration (Doc. No. 60) and the Motion to Dismiss the Third Amended Complaint (Doc. No. 62), have been decided.

## VII. CONCLUSION

For the reasons stated above, the Motion to Stay (Doc. 67) is **GRANTED.** An appropriate order follows.

## *ORDER*

**AND NOW,** this 13th day of July, 2011, this matter coming before the Court on Defendant International Business Machines Corporation's Motion to Stay (Doc. 67), **IT IS HEREBY ORDERED** that the Defendant's Motion is **GRANTED.**

**All Citations**

Not Reported in F.Supp.2d, 2011 WL 4571727

## Footnotes

1    If there was such a basis to plead fraudulent concealment, and the charge was adequately stated in the complaint, this would allow the complaint to survive dismissal based on the Statute of Limitations defense argued by Defendants.

2    We do not comment on whether the TAC is adequate in this regard, as that issue will be covered in a future order addressing Plaintiff's Motion for Reconsideration (Doc. No. 60) and Defendant IBM's Motion to Dismiss the Third Amended Complaint (Doc. No. 62).

Case 1:26-cv-00659-KM    Document 15-1    Filed 05/20/26    Page 27 of 49

North American Communications, Inc. v. InfoPrint Solutions..., Not Reported in...

3       In *Mann,* the Third Circuit noted that the Plaintiff's argument that further discovery would allow him to substantiate his claim "misse[d] the mark", as the argument that discovery *may* provide additional support for a claim is not a valid consideration in analyzing a motion under Rule 12(b)(6) and Rule 8. *Mann v. Brenner* at 239; *citing* *Mitchell v. McNeil,* 487 F.3d 374, 379 (6th Cir.2007).

4       Indeed, a simple search of Lexis revealed numerous cases by sister district courts in Pennsylvania staying discovery pending resolution of a motion to dismiss. *See, e.g., Kimberly–Clark Worldwide, Inc. v. First Quality Baby Products, LLC, et al.,* 2011 U.S. Dist. Lexis 46147 (M.D.Pa.2011); *see also Anita Wicker, et al. v. Robert Shannon, et al.,* 2010 U.S. Dist. LEXIS 60611 (M.D.Pa.2010) ("Given the potentially dispositive nature of the pending motion to dismiss, the court will grant defendants' motion to stay discovery pending resolution of their motion to dismiss. However, if the motion to dismiss does not dispose of all claims, defendants will have thirty (30) days from the date of the court's order to respond to plaintiff's properly served discovery.").

---

**End of Document**                                             © 2026 Thomson Reuters. No claim to original U.S. Government Works.

2011 WL 3330376
Only the Westlaw citation is currently available.
United States District Court,
E.D. Pennsylvania.

Jeffrey E. PERELMAN

v.

Raymond G. PERELMAN, et al.

Civil Action No. 10–5622.
|
Aug. 3, 2011.

**Attorneys and Law Firms**

James T. Smith, Rebecca D. Ward, Blank Rome LLP, Philadelphia, PA, Paul A. Friedman, Blank Rome LLP, New York, NY, for Jeffrey E. Perelman.

Marjorie M. Obod, Dilworth Paxson LLP, Michael S. Doluisio, Dechert, Price & Rhoads, Philadelphia, PA, Andrew J. Levander, Dechert LLP, New York, NY, Jamie P. Yadgaroff, Law Offices of Jamie P. Yadgaroff, Barry L. Katz, Bala Cynwyd, PA, for Raymond G. Perelman, et al.

*MEMORANDUM*

PADOVA, District Judge.

**\*1**  In this ERISA action, Plaintiff Jeffrey Perelman alleges that Defendants, the trustees and administrators of the General Refractories Company Plan for Salaried Employees (the "Plan"), invested Plan assets in Revlon corporate bonds for improper purposes and failed to make complete and accurate disclosures to Plan participants, in breach of their fiduciary and statutory duties.[1] Plaintiff seeks an order directing Defendants to restore to the Plan any losses suffered by the Plan and any profits realized by Defendants, as well as various forms of injunctive relief. Before the Court is Defendants' Motion to Stay Discovery pending a decision on Defendants' Motion for Summary Judgment, which asserts that Plaintiff lacks standing to bring this suit. For the reasons that follow, we grant Defendants' Motion to Stay insofar as it seeks to limit discovery to the issue of standing until we have decided Defendants' Motion for Summary Judgment.

"The decision to stay discovery pending resolution of a potentially dispositive motion is within the discretion of the district court." *Babalola v. Donegal Mut. Ins. Co.,* Civ. A. No. 08–612, 2008 WL 5278393, at \*1 (M.D.Pa. Dec.18, 2008) (citing *Coastal States Gas Corp. v. Dep't of Energy,* 84 F.R.D. 278, 282 (D.Del.1979), and *In re Orthopedic Bone Screw Prod. Liab. Litig.,* 264 F.3d 344, 365 (3d Cir.2001)). The burden is on the party seeking the stay to show "good cause." *19th Street Baptist Church v. St. Peters Episcopal Church,* 190 F.R.D. 345, 348 (E.D.Pa.2000) (citation omitted); *see also* Fed.R.Civ.P. 26(c). In the end, "a stay is proper where the likelihood that [the pending] motion may result in a narrowing or outright elimination of discovery outweighs the likely harm to be produced by the delay." *Weisman v. Mediq, Inc.,* Civ. A. No. 95–1831, 1995 WL 273678, at \*2 (E.D.Pa.1995) (citation omitted). In order to measure the likelihood that a pending motion may result in a narrowing or outright elimination of discovery, we need not "form[ ] an opinion as to the merits" of the motion. *Id.* Rather, we consider the scope of the motion and ask whether it "may potentially lead to" the end of the case, and whether it will provide the parties with "full knowledge as to which claims are viable and, correspondingly, as to what discovery need occur." *Id.* We "balance the competing interests of each party to determine whether the benefits of [the] stay outweigh the likely harm to the

plaintiff." *Babalola,* 2008 WL 5278393, at * 1. In deciding whether the balance of factors favors a stay, we consider (1) the scope of the pending motion; (2) the breadth of the non-party discovery underway; (3) the harm and expense to which continued discovery would subject the movant or third parties; and (4) the harm that a delay in discovery would cause for the non-movant. *See Weisman,* 1995 WL 273678, at *2.

Defendants argue that a stay is warranted because Plaintiff has been mounting "a wide-ranging and abusive discovery campaign" against not only Defendants but also "any entity even remotely associated with the Plan," including Defendants' various "businesses and charitable foundations." (Defs.' Mem. in Support of Mot. to Stay at 2.) Defendants state that Plaintiff has served 120 document requests on Defendants and has served 18 third-party subpoenas. (*Id.* at 4.) Defendants argue that "the substance of [Plaintiff's] third-party subpoenas demonstrates that he is using this case—and the broad subpoena powers enjoyed by a litigant in a federal lawsuit—as a means to burden anyone associated with the Plan," as part of a larger effort to "pressure his father and brother into resolving other legal actions pending between the parties." (*Id.* at 5.) For example, Defendants state that Plaintiff has served "[a] subpoena to New York Life, which administers an annuity contract purchased by the Plan in the mid–1980s and as to which there is no allegation of wrongdoing," as well as "[s]ubpoenas nominally directed to two charitable foundations that, in substance, request every communication between those foundations and various entities with which [Defendant] Ronald Perelman is associated, without any limit as to subject matter." (*Id.* at 5.) Defendants argue that "[s]taying discovery would prevent [Plaintiff] from abusing the discovery process and avoid the significant expenses—and discovery disputes—that [Plaintiff's] scorched earth discovery campaign no doubt will engender." (*Id.* at 2.) Defendants principally seek an order staying all discovery but argue, in the alternative, that discovery should be limited to the issue of standing until the Motion for Summary Judgment is decided.

 **\*2**  Plaintiff opposes Defendants' Motion to Stay Discovery on several grounds. Plaintiff argues that he has directed his discovery toward information that is relevant either to the Plan's assets and liabilities or to the theories of recovery set forth in Plaintiff's Second Amended Complaint, which is now the operative Complaint. Plaintiff further argues that discovery has not been unduly burdensome to third parties. Plaintiff states that, of the eighteen third parties served with subpoenas, only six have asserted blanket objections, and all six are represented by the attorneys who represent Defendants in this matter. Plaintiff also states that he has worked amicably to resolve objections raised in connection with other third party subpoenas. Plaintiff also argues that a temporary stay would only delay but could not eliminate the costs and expenses of discovery, because at least some of his claims are likely to survive summary judgment.

As we discussed above, we need not determine, at this juncture, whether any of Plaintiff's claims are likely to survive summary judgment. *See Weisman,* 1995 WL 273678, at *2. We ask merely whether Defendants' Motion for Summary Judgment could narrow the issues in this case and correspondingly narrow discovery. *Id.* Accordingly, we consider the scope of the Motion, without forming an opinion as to its merits. *Id.* In the Motion for Summary Judgment, Defendants argue that Plaintiff only has standing if there is some risk that he will not be paid his monthly pension benefit as it comes due, that record evidence conclusively establishes that the Plan is fully funded, and that consequently Plaintiff lacks standing to proceed. In opposition to Defendants' Motion for Summary Judgment, Plaintiff argues that he is entitled to discovery with respect to the funding status of the Plan, that the documents already turned over demonstrate that there is a genuine issue of material fact with respect to the funding status of the Plan, and that he can proceed on his requests for injunctive relief even if record evidence does establish that the Plan is fully funded.

Having reviewed the Motion for Summary Judgment, we conclude that, even if the Motion is not granted in its entirety, a partial grant of summary judgment may potentially narrow the issues in this case and correspondingly narrow discovery. While we express no opinion on the merits of the Motion at this time, if we were to conclude that Plaintiff is required to make a showing of individual harm in order to seek restitution and disgorgement to the Plan, and if we were further to conclude that Plaintiff cannot make such a showing, the resulting partial grant of summary judgment could eliminate the need for discovery on losses suffered by the Plan and profits made by the fiduciaries. Accordingly, we conclude that the scope of Defendants' Motion for Summary Judgment weighs in favor of the conclusion that a stay is warranted. *See Weisman,* 1995 WL 273678, at *2 (concluding that a

stay was warranted where resolution of dispositive motion could "potentially lead to" the end of the case and would certainly provide the parties with "full knowledge as to which claims are viable and, correspondingly, as to what discovery need occur").

**\*3** With respect to the breadth of non-party discovery underway, Defendants argue that Plaintiff's non-party discovery has been not only broad but "abusive." (Defs.' Mem. in Support of Mot. to Stay at 2.) A motion to stay discovery is not the proper vehicle in which to challenge the appropriateness of Plaintiff's discovery requests to third parties. We do note, however, that Plaintiff has engaged in broad non-party discovery, that six of eighteen third parties served with subpoenas have asserted blanket objections, and that, accordingly, a stay "will potentially save time and money for all concerned." *Id.* Accordingly, we conclude that both the breadth of non-party discovery underway and the expense of continued discovery weigh in favor of the conclusion that a stay is warranted.

Finally, we consider the harm or prejudice that a stay would create for Plaintiff. Plaintiff emphasizes, both in his response to Defendants' Motion to Stay Discovery and in his response to Defendants' Motion for Summary Judgment, that he has not yet received sufficient discovery to demonstrate his standing. [2] Because Defendants have chosen to challenge Plaintiff's standing by means of a motion for summary judgment pursuant to Federal Rule of Civil Procedure 56, Plaintiff is entitled to discovery that is "essential to justify [his] opposition." *See* Fed.R.Civ.P. 56(d). As we discussed above, Defendants' Motion for Summary Judgment may require us to determine whether there is a genuine issue of material fact with respect to the Plan's ability to pay Plaintiff's monthly pension benefit as it comes due. Plaintiff is entitled to discovery on that factual issue. *See* Fed.R.Civ.P. 56(d). Accordingly, we conclude that a general stay of all discovery is not appropriate. *C.f. Weisman,* 1995 WL 273678, at \*2 (concluding that a stay should "not allow defendants to avoid their responsibility to produce their self-executing discovery" because the plaintiff was "entitled" to such discovery). However, Plaintiff has not made any argument that he would be prejudiced by a stay of all discovery not pertaining to the funding status of the Plan until the standing issue is resolved, and we can perceive no basis for such an argument. Accordingly, we conclude that the final factor—the likely harm or prejudice to Plaintiff—weighs in favor of the conclusion that a limited stay is warranted. *C.f. id.* (concluding that a stay of all discovery other than the defendants' self-executing disclosures was appropriate where the Court "d[id] not find that plaintiff will be prejudiced ... in any significant way" by such a stay).

For the foregoing reasons, we conclude that a temporary, limited stay of discovery is appropriate in these circumstances. "Indeed, such a procedure is an eminently logical means to prevent wasting the time and effort of all concerned, and to make the most efficient use of judicial resources." *Coastal States Gas Corp. v. Dep't of Energy,* 84 F.R.D. 278, 282 (D.Del.1979) (citations omitted). Discovery may continue only as it pertains to the factual issue of whether there is a genuine issue of material fact with respect to the Plan's ability to pay Plaintiff's monthly pension benefit as it comes due. [3] All other discovery shall halt until further Order of this Court.

**\*4** An appropriate Order follows.

**All Citations**

Not Reported in F.Supp.2d, 2011 WL 3330376

---

**Footnotes**

1    In the interest of precision, we note that Plaintiff also complains of a February 1, 2008 investment of $2.7 million in Revlon corporate debt.

2    Plaintiff states that he has not yet had an opportunity to depose the purported experts whose affidavits Defendants attached to their Motion for Summary Judgment, and that he also has not yet received a number of documents from third parties.

3    Although summary judgment will also involve the legal issue of whether Plaintiff is required to show that there is some risk he will not be paid his pension benefit as it comes due—that is, whether Plaintiff is required to show individual harm—in order to seek restitution and disgorgement to the Plan and in order to seek injunctive relief, we see no need for discovery on that issue.

---

**End of Document**                                        © 2026 Thomson Reuters. No claim to original U.S. Government Works.

2018-1 Trade Cases P 80,292

2018 WL 1071932

United States District Court, E.D. Pennsylvania.

PFIZER INC., Plaintiff,

v.

JOHNSON & JOHNSON and Janssen Biotech, Inc., Defendants.

CIVIL ACTION No. 17-cv-4180

|

Filed 02/27/2018

**Attorneys and Law Firms**

Bryan Daniel Gant, Michael J. Gallagher, Robert A. Milne, Ross E. Elfand, White & Case LLP, New York, NY, Elliott E. Dionisio, White & Case LLP, Los Angeles, CA, H. Robert Fiebach, Cozen O'Connor, Philadelphia, PA, for Plaintiff.

Adeel A. Mangi, Jamison Davies, Jonathan H. Hatch, Sara A. Arrow, William F. Cavanaugh, Jr., Patterson Belknap Webb & Tyler LLP, New York, NY, Ashley E. Bass, Thomas O. Barnett, Covington & Burling LLP, Washington, DC, Leslie E. John, Matthew Vahey, Ballard Spahr Andrews & Ingersoll LLP, Philadelphia, PA, Jayne A. Goldstein, Shepherd Finkelman Miller & Shah LLP, Media, PA, for Defendants.

**MEMORANDUM**

Joyner, District Judge

**\*1** Presently before the Court are Defendants' Motion to Stay Discovery (Doc. No. 39) and Plaintiff's Response in Opposition thereto (Doc. No. 43). [1] For the following reasons, Defendants' Motion is GRANTED.

**I. BACKGROUND**

Plaintiff Pfizer Inc. ("Pfizer") filed the instant action on September 20, 2017. Pfizer alleges that Johnson & Johnson and Janssen Biotech, Inc. (collectively, "Defendants") engaged in anticompetitive conduct to protect their biologic drug, Remicade, from competing with biosimilars, such as Pfizer's Inflectra, in violation of federal antitrust laws. (Compl. ¶¶ 6, 12, 47, 55, 67, 82, 100, 102 (Doc. No. 1)).

On November 28, 2017, Defendants moved to dismiss Pfizer's Complaint. (Doc. No. 27). Shortly thereafter, Defendants moved to stay discovery until the Court resolves their pending Motion to Dismiss. (Doc. No. 39). The parties have since completed briefing on both Motions. Our focus now is only on Defendants' Motion to Stay Discovery.

**II. DISCUSSION**

Rule 26(c) of the Federal Rules of Civil Procedure empowers district courts to impose a stay of discovery on a showing of good cause. Fed. R. Civ. P. 26(c). The decision of whether to stay discovery while considering a motion to dismiss is within the court's sound discretion. In re Orthopedic Bone Screw Prod. Liab. Litig., 264 F.3d 344, 365 (3d Cir. 2001). Although the court should not automatically stay discovery because a party has filed a motion to dismiss, " 'a stay is proper where the likelihood that [the motion to dismiss] may result in a narrowing or an outright elimination of discovery outweighs the likely harm to be produced by the delay.' " 19th St. Baptist Church v. St. Peters Episcopal Church, 190 F.R.D. 345, 349 (E.D. Pa. 2000)

2018-1 Trade Cases P 80,292

(quoting Weisman v. Mediq, Inc., Civ. No. 95-1831, 1995 WL 273678, at *2 (E.D. Pa. May 3, 1995)). "In other words, the court should carefully balance the relative benefit and harm that would ensue to each party from the grant or denial of a stay." Id.

Having reviewed Defendants' Motion to Dismiss, without having formed an opinion on its merits, the Motion does have the potential to dispose of the entire case and eliminate the need for discovery. In such a case, the balance will generally lean in favor of staying discovery. Weisman, 1995 WL 273678, at *2.

**\*2**  We also consider the scope of the proposed discovery. As with many antitrust cases, the scope of discovery in this case will likely be enormous. In the parties' joint Rule 26(f) report, Pfizer notes that it will need discovery from Defendants and various third parties, including insurers, group purchasing organizations, hospitals, and clinics. (Joint Rule 26(f) Report at 6 (Doc. No. 38)). Among other areas, Pfizer intends to explore Defendants' contracts with these third parties relating to Remicade, Defendants' pricing and sales strategies for Remicade, Defendants' communications with third parties about the sale of Remicade, Defendants' strategies for responding to the launch of biosimilars to Remicade, and evaluations of the relevant market. Id. In order to facilitate this scope of discovery, Pfizer requested a discovery plan that could result in the parties taking upwards of 110 depositions. Id. at 8-10. And while we understand Pfizer's position that many of the third-party depositions may be cross-designated and count against each party's cap, it nevertheless stands that discovery will be a large and costly undertaking in this case. We therefore find that this factor weighs in favor of granting the stay.

We also consider, and do not take lightly, Pfizer's interest in a speedy resolution of this case. Beyond this interest, however, we find that Defendants' requested stay of discovery will not prejudice Pfizer in a significant way. For example, the stay does not threaten Pfizer's ability to collect time sensitive evidence. [2] See Texaco, Inc. v. Borda, 383 F.2d 607, 609 (3d Cir. 1967); 19th St. Baptist Church, 190 F.R.D. at 349-50. While Pfizer's interest in a speedy resolution weighs against granting the stay, the absence of a particularized harm to Pfizer reduces its weight.

In considering these above factors, we find that the benefit of staying discovery outweighs the burden it places on Pfizer. We are therefore satisfied that good cause exists to stay discovery until we resolve Defendants' Motion to Dismiss.

**III.CONCLUSION**

For the foregoing reasons, Defendants' Motion to Stay Discovery is GRANTED and discovery is STAYED pending the resolution of their Motion to Dismiss. An accompanying order will follow.

**All Citations**

Not Reported in Fed. Supp., 2018 WL 1071932, 2018-1 Trade Cases P 80,292

---

**Footnotes**

1    Direct purchasers (the "Class Action Plaintiffs") have filed a parallel class action against Defendants for much of the same conduct that Pfizer alleges here. That parallel class action is also before this Court. In re: Remicade, Civ. No. 2:17-cv-4326-JCJ. Having filed their Amended Complaint on February 21, 2018, the Class Action Plaintiffs lag shortly behind Pfizer's progress in this case. Defendants have noted that they will move to dismiss the parallel class action, as they have done here. Knowing this, the Class Action Plaintiffs filed a response to Defendants' instant Motion to Stay Discovery. (Doc. No. 41). Moreover, the Class Action Plaintiffs and Defendants have stipulated that they will be bound by the Court's resolution of the instant Motion. (Class Action Plaintiffs and Defendants' Joint Rule 26(f) Report

Pfizer Inc. v. Johnson & Johnson, Not Reported in Fed. Supp. (2018)
2018-1 Trade Cases P 80,292

at 4 (Doc. No. 52 on Civ. No. 2:17-cv-4326-JCJ)). Accordingly, we have also considered the Class Action Plaintiffs' Response in Opposition to Defendants' Motion to Stay Discovery.

2       If this situation does arise, we invite Pfizer to seek the Court's permission to lift the stay so that it may collect such evidence.

---

**End of Document**                                           © 2026 Thomson Reuters. No claim to original U.S. Government Works.

KeyCite Yellow Flag

Declined to Follow by   Nichols v. eHealthInsurance Services, Inc.,   N.D.Cal.,   March 3, 2025

2022 WL 2713278
Only the Westlaw citation is currently available.
United States District Court, N.D. Iowa, Cedar Rapids Division.

Caitlin ROMBOUGH, on behalf of herself and others similarly situated, Plaintiff,

v.

ROBERT D. SMITH INSURANCE AGENCY, INC., and State Farm Mutual Automobile Insurance Co., Defendants.

No. 22-CV-15-CJW-MAR
|
Signed June 9, 2022

**Attorneys and Law Firms**

Eric David Puryear, Puryear Law, PC, Davenport, IA, Aaron David Radbil, Pro Hac Vice, Greenwald Davidson PLLC, Boca Raton, FL, for Plaintiff.

James Gaughan, Pro Hac Vice, Riley Safer Holmes & Cancila LLP, Chicago, IL, J. Michael Weston, Lederer Weston & Craig PLC, Cedar Rapids, IA, for Defendants.

**ORDER**

C.J. Williams, United States District Judge

**I. INTRODUCTION**

**\*1**  This matter is before the Court on defendants' April 15, 2022, motion to dismiss plaintiff's complaint. (Doc. 15). Plaintiff timely filed a resistance. (Doc. 18). Defendants timely filed a reply. (Doc. 20). For the following reasons, defendants' (Doc. 15) motion is **granted** and this case is **dismissed with prejudice**.

**II. BACKGROUND**

Plaintiff's claim arises out of defendants' unwanted contact with her via telephone, both by voice message and text message. The following facts are from plaintiff's complaint. (Doc. 1). Plaintiff is an Iowa resident. (*Id.*, at 2). Defendant Robert D. Smith Insurance Agency, Inc. is an Iowa insurance company, which assists customers in obtaining insurance from defendant State Farm Mutual Automobile Insurance Co. ("State Farm"). (*Id.*, at 2–3). Defendant State Farm is an Illinois insurance company. (*Id.*, at 3).

On October 25, 2021, defendants delivered a voice message and text message marketing State Farm insurance to plaintiff's personal residential telephone number, which had been registered with the national do-not-call registry since April 7, 2017. (*Id.*, at 4–6). The message was intended for a recipient other than plaintiff. (*Id.*, at 6). Plaintiff did not request information from either defendant and is not, and never has been, a State Farm customer. (*Id.*). She suffered actual harm in the form of invasion of privacy, intrusion, and a private nuisance. (*Id.*).

Case 1:26-cv-00659-KM     Document 15-1     Filed 05/20/26     Page 36 of 49

Rombough v. Robert D. Smith Insurance Agency, Inc., Not Reported in Fed. Supp. (2022)

On February 21, 2022, plaintiff brought suit against defendants, on behalf of herself and others similarly situated, (*Id.*, at 1), and alleges that class certification is proper for her claim. (*Id.*, at 7–10). Plaintiff asserts one claim, alleging that defendants violated the Telephone Consumer Protection Act ("TCPA"), ⚑ Title 47, United States Code, Section 227, by delivering messages as prohibited by ⚑ Title 47, Code of Federal Regulations, Section 64.1200(c). (*Id.*, at 10–12).

On April 15, 2022, defendants filed their motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). (Doc. 15).

### III. APPLICABLE LAW

A complaint filed in federal court must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). Rule 8 does not require "detailed factual allegations." ⚑ *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Nevertheless, it "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." ⚑ *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint that relies on "naked assertion[s]" devoid of "further factual enhancement," "labels and conclusions," or "a formulaic recitation of the elements of a cause of action will not do." ⚑ *Twombly*, 550 U.S. at 555, 557.

Before filing an answer, a defendant may move to dismiss a complaint for "failure to state a claim upon which relief can be granted" under Federal Rules of Civil Procedure 12(b)(6). To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter ... to 'state a claim to relief that is plausible on its face.' " ⚑ *Iqbal*, 556 U.S. at 678 (citation omitted). "[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint." ⚑ *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). The Court must also grant "all reasonable inferences" from the pleadings "in favor of the nonmoving party." ⚑ *Crumpley-Patterson v. Trinity Lutheran Hosp.*, 388 F.3d 588, 590 (8th Cir. 2004) (citation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." ⚑ *Iqbal*, 556 U.S. at 678. Plausibility is not equivalent to probability, but it is something "more than a sheer possibility that a defendant has acted unlawfully." *Id.* "The question ... is not whether [a plaintiff] might at some later stage be able to prove [its claims]; the question is whether [a plaintiff] has adequately asserted facts (as contrasted with naked legal conclusions) to support his claims." ⚑ *Whitney v. Guys, Inc.*, 700 F.3d 1118, 1129 (8th Cir. 2012).

### IV. DISCUSSION

**\*2** Plaintiff alleges that defendants violated ⚑ Section 227(c)(5) by violating ⚑ Section 64.1200(c), causing her harm. (Doc. 1). In its motion to dismiss, defendants argue plaintiff's claim fails to meet the federal pleading standard because she does not plausibly allege an existing cause of action. (Doc. 15). Specifically, defendants argue plaintiff fails to allege that she personally registered her telephone number with the do-not-call registry, as required by ⚑ Section 64.1200(c). (*Id.*, at 3, 6–7).

For the following reasons, the Court finds plaintiff fails to state a claim based on the plain language of ⚑ Section 64.1200(c). Plaintiff's arguments in support of another interpretation are unavailing. Further, the Court declines plaintiff's request to amend her complaint.

#### A. Plain Language

Case 1:26-cv-00659-KM   Document 15-1   Filed 05/20/26   Page 37 of 49

Rombough v. Robert D. Smith Insurance Agency, Inc., Not Reported in Fed. Supp. (2022)

"Congress enacted the TCPA to protect consumers from the 'proliferation of intrusive [telemarketing] calls to their homes.' " *Golan v. Veritas Entm't, LLC*, 788 F.3d 814, 819 (8th Cir. 2015) (alteration in original) (quoting *Mims v. Arrow Fin. Servs.*, LLC, 565 U.S. 368, 372 (2012)). The key provision of the TCPA applicable to this case is Section 227(c)(5).

Section 227(c)(5) provides, in pertinent part, a private right of action to "[a] person who has received more than one telephone call [1] within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under [Section 227(c)]." Section 227(c) requires rulemaking and regulations based on that rulemaking "concerning the need to protect residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object." Section 64.1200(c) is one such regulation. Section 64.1200(c) prohibits all telephone solicitations to "[a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry[.]" Thus, Section 227(c) provides a private action based on the circumstances in Section 64.1200(c).

The plain language of Section 64.1200(c) indicates that Section 227(c)(5)'s private action exists only for a residential telephone subscriber *who has registered his or her telephone number* on the national do-not-call registry. "[T]he fact that a federal statute has been violated and some person harmed does not automatically give rise to a private cause of action in favor of that person." *Touche Ross & Co. v. Redington*, 442 U.S. 560, 568 (1979). "If the statute itself does not display an intent to create a private remedy, then a cause of action does not exist." *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1856 (2017) (internal quotations omitted). Section 227(c)(5) only displays an intent to create a private remedy where its promulgated regulations so provide. Section 64.1200(c) was promulgated under Section 227(c)(5). But Section 61.1200(c) does not include a private remedy for a residential telephone subscriber who has not registered his or her telephone number on the national do-not-call registry. The regulation's plain language provides no distinction for a telephone number that had previously been registered on the national do-not-call registry by someone else.

When "the words of a statute are unambiguous, the judicial inquiry is complete." *Babb v. Wilkie*, 140 S. Ct. 1168, 1177 (2020) (cleaned up); *see* *Solis v. Summit Contractors, Inc.*, 558 F.3d 815, 823 (8th Cir. 2009) (discussing regulations). As discussed, the plain language of Section 61.1200(c) states that a violation occurs only when a person or entity initiates a telephone solicitation to a residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry. The Court finds no ambiguity in this language. Thus, the Court limits its interpretation to the plain language of Section 64.1200(c). [2]

**\*3** Here, plaintiff alleges that "[s]ince April 7, 2017, [her] telephone number (319) XXX-3342 has been registered with the DNC Registry." (Doc. 1, at 4). Plaintiff does not allege, either directly or indirectly, that *she* registered her telephone on the do-not-call registry. Although plaintiff alleges defendants violated Section 64.1200(c), thereby entitling her to recovery under Section 227(c)(5), she does not allege that she registered her telephone number on the do-not-call-registry. [3] Further, Section 227(c)(5) does not display an intent to create a private remedy as plaintiff alleges it. *Ziglar*, 137 S. Ct. at 1856. Thus, plaintiff fails to state a claim that defendants violated Section 64.1200(c), as her complaint alleges. [4] *See* *Iqbal*, 556 U.S. at 678; *Whitney*, 700 F.3d at 1129.

### B. Plaintiff's Arguments

Case 1:26-cv-00659-KM    Document 15-1    Filed 05/20/26    Page 38 of 49

Rombough v. Robert D. Smith Insurance Agency, Inc., Not Reported in Fed. Supp. (2022)

Plaintiff argues that other statutory language and policy consideration show that dismissal of her claim is inappropriate despite Section 64.1200(c)'s plain language. The Court is not persuaded by these arguments.

Plaintiff argues she can properly state a claim under Section 64.1200(c) because Section 227(c)(5) allows "a person," not just a "subscriber," to bring a claim. (Doc. 18, at 9–10). There are two problems with this argument. First, although plaintiff alleges defendants violated Section 227(c)(5) based on Section 64.1200(c), (Doc. 1, at 11), for the reasons discussed, plaintiff fails to sufficiently allege a Section 64.1200(c) violation. Section 227(c)(5)'s terminology does not change this. Second, even if Section 64.1200(c) did allow for plaintiff to bring a claim on someone else's behalf, plaintiff fails to allege that she does so here. Plaintiff alleges that defendants called her telephone number attempting to reach "Kevin" and she alleges that her telephone number was registered to the do-not-call registry, (Doc. 1, at 4–5), but she does not allege that Kevin registered the telephone number such that defendants' calls could be viewed as "initiat[ing] ... telephone solicitation to" a residential telephone subscriber who has registered his or her telephone number with the do-not-call registry, as required by Section 64.1200(c).

 **\*4**  Plaintiff's corresponding analogy to the court's analysis of the Federal Trade Commission's Telemarketing Sales Rule ("TSR") in *United States v. Dish Network, LLC*, 75. F. Supp. 3d 916 (C.D. Ill. 2014), is likewise unavailing. Plaintiff argues that because the *Dish Network* court found "[t]he TSR does not say the call must be initiated to the person who registered the number on the [do-not-call] Registry," the Court should similarly interpret Section 64.1200(c). (Doc. 18, at 10–11). But "the TSR states that it is a violation of that rule to initiate 'any outbound telephone call to a person' when '[t]hat person's telephone number is on [the Registry].' " *Dish Network*, 75 F. Supp. 3d. at 935 (citing 16 C.F.R. § 310.4(b)(1)(iii)(B)). Here, plaintiff alleges a Section 64.1200(c) violation, not a TSR violation. (Doc. 1). And unlike the TSR, Section 64.1200(c) expressly limits its violation to telephone solicitations made to "[a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry." Thus, Section 64.1200(c) plainly requires that the call to be initiated to the person who registered the number on the registry—even if the TSR does not.

Plaintiff also argues policy considerations should prevent the Court from dismissing her claim. Plaintiff first argues that re-registration of a telephone number on the do-not-call registry is impossible. (Doc. 18, at 19–21). Although the do-not-call registry website is confusing, plaintiff herself demonstrates that she was able to register her telephone number. (*Id.*, at 20 n.4). She states that when she attempted to register "[f]or the sake of example," she nevertheless received a confirmation email thanking her for registering her telephone number. (*Id.*). Though the date of registration did not update from her telephone number's earlier registration, which seemingly occurred while it was assigned to someone else, she nevertheless *could* register, according to the website and its confirmation. (*See id.*). Second, website registration is not the only way a subscriber can register for the do-not-call registry; a subscriber can call a toll-free number. *See National Do Not Call Registry FAQs*, FTC, https://consumer.ftc.gov/articles/national-do-not-call-registry-faqs (last visited June 9, 2022). There, registration of an already registered telephone number results in a confirmation with no mention of the previous registration date. Third, the FTC website and phone registration emphasize the need for "you" to register "your new number" when obtaining a new telephone number. *See National Do Not Call Registry*, FTC, https://www.donotcall.gov/register.html (last visited June 9, 2022). The website registration is less clear, though it includes the modifier "your" in both verification and registration. This language, coupled with the actual ability to re-register the same telephone number via both the website and toll-free number, suggests that a subscriber can register a telephone number that was already registered. Further, the do-not-call registry statute provides that reassigned numbers will be periodically taken off the list, suggesting that a telephone subscriber who finds their telephone number already registered cannot rely on that previous registration for protection. 15 U.S.C. § 6155. In sum, the Court does not find plaintiff's policy arguments based on re-registration availing.

Plaintiff then argues the Court should liberally construe Section 64.1200(c) because the TCPA is a remedial statute. (Doc. 18, at 21–22). A court cannot liberally construe a statute when it finds the plain language is unambiguous and therefore does

Case 1:26-cv-00659-KM    Document 15-1    Filed 05/20/26    Page 39 of 49

not engage in statutory construction. *See* Brown v. J.B. Hunt Transport Servs., Inc., 586 F.3d 1079, 1086 (8th Cir. 2009); Babb, 140 S. Ct. at 1177. Here, because the Court has found the regulation's plain language unambiguous, the Court does not engage in statutory construction. Thus, the Court declines to follow plaintiff's policy argument based on liberal construction.

**\*5** In sum, despite plaintiff's arguments to the contrary, she fails to state a claim that defendants violated Section 64.1200(c).

### C. Amendment

Alternatively, plaintiff requests that the Court permit her to amend her complaint to add adequate facts. (Doc. 18, at 24). The Court declines plaintiff's request for several reasons. First, plaintiff's request does not comply with Local Rules because she failed to attach her proposed amended complaint. *See* LR 15. Second, plaintiff had the right to amend her complaint as a matter of course within "21 days after service of a motion under Rule 12(b)"—that is, a motion to dismiss. *See* FED. R. CIV. P. 15; FED. R. CIV. P. 12. Here, defendants filed their motion to dismiss on April 15, 2022, and plaintiff was served on that date. (Doc. 15). This means plaintiff could have amended her Complaint through May 6, 2022, without the Court's permission. *See* FED. R. CIV. P. 6. But plaintiff did not.

Finally, although the Court could find that justice requires that the Court allow plaintiff to amend her complaint, *See* FED. R. CIV. P. 15, it does not find that justice requires amendment here. This Court has allowed amendment of a complaint when "dismissal of the plaintiff's present pleadings is appropriate," but there is "no reason to believe that the plaintiff[ ] cannot adequately plead, as opposed to have not adequately pleaded, a factual basis for [her claim]." *Moller v. Tyson Foods, Inc.,* No. C 14-4056-MWB, 2014 WL 4437548, at \*4 (N.D. Iowa Sept. 9, 2014). When arguing for amendment, plaintiff states "if necessary, Plaintiff can amend her complaint to allege that she is the subscriber" to her telephone number. (Doc. 18, at 24). But the issue here is not whether plaintiff is a subscriber. The issue is whether she was the subscriber who registered her telephone number with the do-not-call registry, such that she can state a claim that defendants violated Section 64.1200(c) when they called her. Further, even if plaintiff means to say that she is a subscriber who registered, it appears plaintiff only registered her telephone number with the do-not-call registry as "for the sake of example" in her argument, and had not registered at the time defendants called her. (*See id.*, at 20 n.4). As such, the Court has reason to believe plaintiff cannot adequately plead, as opposed to has not adequately pleaded, a factual basis for her claim. *See Moller*, 2014 WL 4437548, at \*4. Thus, the Court declines plaintiff's request to amend her complaint.

For these reasons, the Court grants defendants' motion. [5]

### V. CONCLUSION

For these reasons, defendants' motion to dismiss (Doc. 15) is **granted**. This case is **dismissed with prejudice**. The Clerk of Court is directed to **enter judgment** in favor of defendants and against plaintiff.

**IT IS SO ORDERED** this 9th day of June, 2022.

**All Citations**

Not Reported in Fed. Supp., 2022 WL 2713278

---

**Footnotes**

1    It is undisputed that a text message is a call under the TCPA.

2    Accordingly, the Court does not consider the parties' arguments relating to extratextual sources. (Docs. 18, at 22–23; 20, at 4–5).

3    In Count I of her complaint, plaintiff alleges that defendants violated ⚑Section 64.1200(c) "by initiating, or causing to be initiated, telephone solicitations to telephone subscribers such as Plaintiff and the class members who registered their respective residential telephone numbers with the [do-not-call] Registry[.]" (Doc. 1, at 11). But in her factual allegations and her briefing, plaintiff does not state that *she* registered her telephone number with the do-not-call registry. (*See* Doc. 1, at 4 ("Since April 7, 2017, [plaintiff's telephone number] has been registered with the [do-not-call] Registry.")). Further, plaintiff argues whether she or someone else registered the number with the do-not-call registry is of no consequence. (*See generally* Doc. 18). The Court disagrees.

Plaintiff also argues other courts have found allegations like hers sufficient to state a claim under the TCPA in motions to dismiss, motions for default judgment, and bench trials. (Doc. 18, at 11–19). Plaintiff notes that defendants do not "reference a single decision adopting their argument." (*Id.* at 5). The decisions that plaintiff cites, however, are from district courts, meaning they are non-binding on this Court. Further, these decisions are from district courts outside the Eighth Circuit Court of Appeals, which detracts from them even being persuasive. For the reasons discussed in this order, the Court declines to follow these courts.

4    That ⚑Section 64.1200(c) requires "such do-not-call registrations must be honored indefinitely," makes no difference here because this language appears in the context of the violation the Court has found plaintiff does not adequately allege. (*See* Doc. 20, at 4).

5    Thus, the Court does not reach the parties' arguments about plaintiff's proposed class. (Docs. 15-1, at 3 n.4; 18, at 7 n.1).

---

**End of Document**                                    © 2026 Thomson Reuters. No claim to original U.S. Government Works.

U.S. ex rel. Spay v. CVS Caremark Corp., Not Reported in F.Supp.2d (2012)

Case 1:26-cv-00659-KM    Document 15-1    Filed 05/20/26    Page 41 of 49

2012 WL 11948492
Only the Westlaw citation is currently available.
United States District Court,
E.D. Pennsylvania.

UNITED STATES of America, ex rel. Anthony R. SPAY, Plaintiff,

v.

CVS CAREMARK CORPORATION; Caremark Rx, LLC (f/k/a CaremarK Rx, Inc .;
Caremark, LLC (f/k/a Caremark, Inc.; Silverscript, LLC (f/k/a Silverscript Inc., Defendants.

Civil Action No. 09–4672.
|
Signed July 11, 2012.

**Attorneys and Law Firms**

Adam D. Miller, Paul A. Traina, Engstrom Lipscom & Lack, Los Angeles, CA, Marc S. Raspanti, Matthew Mitchell Oates, Michael A. Morse, Pamela Coyle Brecht, Pietragallo Gordon Alfano Bosick & Raspanti, LLP, Philadelphia, PA, Michael I. Leonard, Leonard Law Offices, Chicago, IL, for Plaintiff.

Enu Mainigi, Grant A. Geyerman, Holly M. Conley, Kevin M. Lovecchio, Patricia Louise Richman, Colleen M. McNamara, Williams & Connolly LLP, Washington, DC, Thomas M. Gallagher, Barry H. Boise, Kate A. Stanley, Robin P. Sumner, Pepper Hamilton LLP, Philadelphia, PA, for Defendants.

### *ORDER*

RONALD L. BUCKWALTER, Senior District Judge.

 **\*1** **AND NOW,** this *11th* day of *July,* 2012, upon consideration of Defendants CVS Caremark Corporation; Caremark Rx, LLC (f/k/a Caremark Rx, Inc.); Caremark, LLC (f/k/a Caremark, Inc.); and Silverscript, LLC (f/k/a Silverscript Inc.) to Stay Discovery Pending Resolution of Defendants' Motion to Dismiss (Docket No. 47) and Plaintiff United States of America, ex rel. Anthony R. Spay's Opposition (Docket No. 53), it is hereby **ORDERED** that the Motion is **GRANTED.** [1] Discovery shall be temporarily stayed until the Court issues a decision on Defendants' pending Motion to Dismiss.

It is so **ORDERED.**

**All Citations**

Not Reported in F.Supp.2d, 2012 WL 11948492

---

**Footnotes**

1       Management of the discovery process and a decision to stay discovery pending resolution of a potentially dispositive motion remains within the discretion of the trial court. *See In re Orthopedic Bone Screw Prod. Liab. Litig.,* 264 F.3d 344, 365 (3d Cir.2001). Although the mere pendency of a motion to dismiss does not justify a stay, a stay may be proper

Case 1:26-cv-00659-KM    Document 15-1    Filed 05/20/26    Page 42 of 49

U.S. ex rel. Spay v. CVS Caremark Corp., Not Reported in F.Supp.2d (2012)

"where the likelihood that such motion may result in a narrowing or an outright elimination of discovery outweighs the likely harm to be produced by the delay." *N. Am. Commc'ns, Inc. v. InfoPrint Solutions Co., LLC,* No. Civ.A.08–288, 2011 WL 4571727, at *2 (W.D.Pa. July 13, 2011) (quotations omitted). The Third Circuit has upheld district court decisions to stay discovery pending the outcome of such motions to dismiss. *See Mann v. Brenner,* 375 F. App'x 232, 239 (3d Cir.2010); *Orthopedic Bone Screw,* 264 F.3d at 365.

No party in the present action disputes that this case will involve significant and intense discovery. Moreover, while the parties contest the validity of Defendants' arguments in support of their pending Motion to Dismiss, neither side disputes that the issues raised have the potential of either disposing of or resulting in the significant narrowing of this case. Having reviewed the briefs on both sides, the Court finds that Plaintiff will suffer no clear prejudice from a temporary delay in discovery while the Court, in the ordinary course of business, disposes of the Motion to Dismiss.

---

**End of Document**

© 2026 Thomson Reuters. No claim to original U.S. Government Works.

---

RICO Bus.Disp.Guide 8802

1995 WL 273678
United States District Court,
E.D. Pennsylvania.

WEISMAN
v.
MEDIQ, INC., et al.

Civ. A. No. 95-1831.
|
May 3, 1995.

**Attorneys and Law Firms**

Brian P. Kenney, Mark J. Schwemler, Elliott, Reihner, Siedzikowski, North & Egan, P.C., Blue Bell, PA, for plaintiff.

David H. Pittinsky, Ballard, Spahr, Andrews and Ingersoll, Philadelphia, PA, for Defendant Mediq, Inc.

Michael J. Holston, Philadelphia, PA, for defendants Mediq Imaging Services, Inc., American Cardiovascular Imaging Labs, Inc., Mediq Mobile X-Ray and EKG, Inc.

MEMORANDUM

RENDELL, District Judge.

**\*1** Before the Court are (1) plaintiff's Motion for Leave to Take Expedited Discovery; (2) defendants' Motion to Stay Discovery; and (3) plaintiff's Motion to Compel Non-Party Mediq Mobile X-Ray and EKG, Inc. to Comply with Subpoena. For the following reasons, plaintiff's motions will be denied and defendants' motion will be granted.

I. Background

Plaintiff filed the instant action on March 29, 1995, alleging various acts of misconduct relating to fraudulent Medicare overcharges in violation of the Racketeering Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962, *et seq.,* the whistleblower provision of the False Claims Act, 31 U.S.C. § 3730(h), and various state laws. Defendants filed a motion to dismiss on May 2, 1995.

Prior to the filing of the motion to dismiss, the parties filed the three discovery motions now before the Court. Plaintiff's two motions respectively seek leave to take expedited discovery of both defendants and non-parties, and to compel one non-party to comply with a subpoena previously issued by plaintiff. Defendants' motion seeks a stay of discovery during the pendency of the motion to dismiss.

II. Discussion

As grounds for its motion to expedite, plaintiff contends that defendants are currently engaged in a whitewashing scheme to disguise their alleged misconduct, which scheme may include destruction of evidence, attempts to mislead potential witnesses, and other like acts. Plaintiff offers no evidence of such a scheme, other than two letters authored by defendant Stephen Doppelt, an executive of Mediq Imaging Services, Inc. ("MIS"), in which Mr. Doppelt, writing to MIS clients, addresses certain of the issues raised in plaintiff's complaint. While plaintiff construes these letters as a deceptive attempt to cover up acts of wrongdoing,

defendants characterize the letters as a sincere effort to clarify proper billing procedures in light of the concerns previously raised by plaintiff. [1]

These arguments on the issue of expedited discovery must be considered in conjunction with the arguments presented by the parties in regard to defendants' motion to stay discovery. In fact, the motion to expedite is now technically moot. On March 30, 1995, plaintiff provided defendants with its self-executing disclosures pursuant to the Eastern District's Civil Justice Expense and Delay Reduction Plan ("District Plan") Section 4:01, and at that time made a written demand for early disclosure from defendants pursuant to Section 4:01(a)(1)(D); thirty days having passed since plaintiff's disclosure and demand, plaintiff is now entitled to "seek discovery" from both defendants and non-parties. District Plan, Section 4:01(b). Thus, the relevance of the aforementioned arguments is now directed toward the issue of whether discovery should be stayed rather than whether it should be expedited.

In regard to the motion to stay discovery, courts are empowered under the Federal Rules of Civil Procedure to impose a stay of discovery on a showing of good cause. Fed. R. Civ. P. 26(c); *Howard v. Galesi,* 107 F.R.D. 348 (S.D.N.Y. 1985). In the instant case, defendants argue that their motion to dismiss, now pending, may dispose of the entire action and therefore constitutes good cause for staying the broad discovery sought by plaintiff--as to both defendants and non-parties--until the motion is decided. Plaintiffs respond with three arguments: (1) that defendants cannot ensure that their employees will preserve potentially incriminating evidence (i.e. the arguments raised in support of the motion to expedite); (2) that dismissal of the entire case is unlikely; and (3) that non-party discovery is of no moment to defendants.

 **\*2** While a court should not automatically stay discovery when a motion to dismiss is filed, a stay is proper where the likelihood that such motion may result in a narrowing or outright elimination of discovery outweighs the likely harm to be produced by the delay. *See Coca-Cola Bottling Co. v. Grol,* 1993 U.S. Dist. LEXIS 3734, at \*6-7 (E.D.Pa). Where a pending motion to dismiss may dispose of the entire action and where discovery is not needed to rule on such motion, the balance generally favors granting a motion to stay. *See* *Rae v. Union Bank,* 725 F.2d 478, 481 (9th Cir. 1984) (affirming stay where dispositive motion decided strictly on pleadings); *Jackson v. Northern Telecom, Inc.,* 1990 WL 39311, at \*1 (E.D.Pa.) (granting stay under same circumstances); *cf. United Mine Workers of America v. Arch Mineral Corp.,* 145 F.R.D. 3, 7 (D.D.C. 1992) (denying stay where discovery relevant to disposition of motion).

Applying these standards to the case at hand, I conclude that a stay of discovery is appropriate. Having reviewed the motion to dismiss, but without having formed an opinion as to the merits, I find that the comprehensive motion--which challenges both federal claims as well as all state claims--may be decided on the pleadings and may potentially lead to dismissal of the entire action. The motion is now before me and, assuming that both parties submit response and reply briefs in a timely fashion, will be decided in the near future. By imposing a stay while ruling on the motion, when discovery proceeds the parties will have full knowledge as to which claims are viable and, correspondingly, as to what discovery need occur. In short, the stay will potentially save time and money for all concerned.

Conversely, I do not find that plaintiff will be prejudiced by a stay in any significant way. More specifically, I am not persuaded by plaintiff's contention that a delay will result in loss or alteration of potential evidence or witness testimony. Such conduct would constitute a serious breach of ethics and a possible violation of law. [2] This case is no different from the tens of hundreds of cases where a plaintiff accuses a defendant of fraudulent acts; such accusation does not carry with it a presumption that evidence will be destroyed, nor is the argument proffered by plaintiff, without evidentiary support, either direct or by inference, sufficiently compelling to create such a presumption.

In regard to the scope of the stay, I will not allow defendants to avoid their responsibility to produce their self-executing discovery in accordance with the District Plan; plaintiff has fulfilled his duty of disclosure, made his demand, and is entitled to reciprocity. I will extend the stay to all non-self-executing discovery, which includes defendants and non-parties alike. Defendants have argued that allowing non-party discovery to proceed will effectively subject defendants to potentially needless expenses--by

way of participation and monitoring of non-party discovery--which the stay is intended to prevent. While I am aware that at least one court has ruled that such burdens do not constitute "good cause" for staying discovery, *see Howard,* 107 F.R.D. at 350, I find that the breadth of non-party discovery sought by plaintiff, combined with the other factors addressed above, warrants granting a stay across the board.

**\*3** Accordingly, the motion to expedite will be denied as moot and the motion for a stay of discovery will be granted. In light of the stay to be imposed, the motion to compel non-party compliance with subpoena will be denied without prejudice to plaintiff's ability to refile the motion if and when the stay is lifted.

*ORDER*

AND NOW, this 3rd day of May, 1995, upon consideration of (1) plaintiff's Motion for Leave to Take Expedited Discovery; (2) defendants' Motion to Stay Discovery; and (3) plaintiff's Motion to Compel Non-Party Mediq Mobile X-Ray and EKG, Inc. to Comply with Subpoena, and all responses and replies thereto, for the reasons addressed in an accompanying Memorandum, it is hereby ORDERED:

1. Plaintiff's Motion for Leave to Take Expedited Discovery is DENIED AS MOOT.

2. Defendants' Motion to Stay Discovery is GRANTED, in that all non-self-executing discovery is hereby STAYED, as to defendants and non-parties alike, until further ordered by this Court.

3. Plaintiff's Motion to Compel Non-Party Mediq Mobile X-Ray and EKG, Inc. to Comply with Subpoena is DENIED WITHOUT PREJUDICE. Should circumstances warrant the refiling of this motion if and when discovery is reopened, plaintiff is granted leave to do so.

**All Citations**

Not Reported in F.Supp., 1995 WL 273678, RICO Bus.Disp.Guide 8802

---

**Footnotes**

1    Plaintiff also argues that expedited discovery is warranted in light of defendants' alleged current attempt to buy out all of its shareholders and take the company "private." I view this argument as a red herring. Plaintiff fails to articulate any valid reason why such a restructuring should be deemed justification for expedited discovery. A corporation's conversion from public to private status certainly does not entitle it to dispose of documents which may prove relevant to a lawsuit.

2    As mentioned in plaintiff's response brief, defendant Mediq, Inc.'s annual report to the Securities and Exchange Commission acknowledges an ongoing criminal investigation of non-party Mediq Mobile X-Ray relating to improper billing practices, noting its cooperation with authorities. In light of such investigation, defendants are clearly aware of the seriousness of such allegations and the importance of preserving documents and other evidence that may pertain to such matters.

---

**End of Document**                                    © 2026 Thomson Reuters. No claim to original U.S. Government Works.



16 Wage & Hour Cas.2d (BNA) 1773

⚑ KeyCite Yellow Flag

Distinguished by  Murdock-Alexander v. Tempsnow Employment,   N.D.Ill.,   November 21, 2016

2010 WL 4962838
Only the Westlaw citation is currently available.
United States District Court,
N.D. Illinois,
Eastern Division.

Syreeta WRIGHT, Individually and on Behalf of All Others Similarly Situated, Plaintiff,

v.

FAMILY DOLLAR, INC., a foreign corporation, Defendant.

No. 10 C 4410.
|
Nov. 30, 2010.

**Attorneys and Law Firms**

Robert H. Rosenfeld, Robert H. Rosenfeld & Associates, LLC, Terrence Buehler, Touhy, Touhy, Buehler & Williams, LLP, Chicago, IL, for Plaintiff.

John Anthony Ybarra, Amy Schaefer Ramsey, Todd M. Church, Littler Mendelson, P.C., Chicago, IL, for Defendant.

### MEMORANDUM OPINION AND ORDER

ROBERT W. GETTLEMAN, District Judge.

**\*1** Plaintiff Syreeta Wright filed a two-count putative class action complaint in the Circuit Court of Cook County, alleging that her former employer, defendant Family Dollar, failed to pay actual and overtime compensation to her and other "associates" (non-exempt, store-level employees) in violation of the Illinois Wage Payment & Collection Act, 820 ILCS § 115, *et seq.* (Count I), and the Illinois Minimum Wage Law, 820 ILCS § 105, *et seq.* (Count II). Defendant removed the case to federal district court pursuant to the Class Action Fairness Act, 28 U.S.C. § 1453. Defendant has filed the instant motion to strike class allegations pursuant to ⚑Fed.R.Civ.P. 23(c)(1)(A) and (d)(1)(D), contending that plaintiff cannot establish typicality and adequacy of representation, ⚑Fed.R.Civ.P. 23(a)(3)-(4). For the following reasons, defendant's motion is granted.

### BACKGROUND

Plaintiff alleges that defendant withheld compensation from associates by giving its store managers unfeasibly low payroll budgets which, despite defendant's official policy prohibiting managers from requiring associates to work without compensation, effectively forced all managers to do exactly that. Plaintiff's putative class consists of "all individuals who were employed by the Defendant as an Associate in any Illinois store at any time during the relevant statute of limitations period who: 1) were not paid for regular hours worked; or 2) worked more than forty (40) hours in a week, but did not receive overtime pay." The complaint alleges that, during the limitations period, plaintiff worked as an Associate (from September 2008 through January 2009) and then as a Store Manager (from February 2009 through May 2009).

## *DISCUSSION*

### I. Motions to Strike Class Allegations

Defendant brings its motion to strike class allegations pursuant to ⚑Rule 23(c)(1)(A) and (d)(1)(D). ⚑Rule 23(c)(1)(A) provides that the court, "[a]t an early practicable time ..., must determine by order whether to certify the action as a class action."

⚑Rule 23(d)(1)(D) provides that, "[i]n conducting an action under this rule, the court may issue orders that ... require that the pleadings be amended to eliminate allegations about representation of absent persons and that the action proceed accordingly." District courts, both within this district and others, have held that a motion to strike class allegations, made pursuant to these provisions, is an appropriate device to determine whether the case will proceed as a class action. *E.g.,* ⚑*Muehlbauer v. General Motors Corp.,* 431 F.Supp.2d 847, 870 (N.D.Ill.2006); *Cornette v. Jenny Garton Ins. Agency, Inc.,* No. 2:10–CV–60, 2010 U.S. Dist. LEXIS 52809, at *4 (N.D.W.Va. May 27, 2010).

Plaintiff argues that motions to strike class allegations are disfavored, and that the proper course of action is to oppose the plaintiff's motion for class certification. *E.g.,* ⚑*Thorpe v. Abbott Laboratories, Inc.,* 534 F.Supp.2d 1120, 1125 (N.D.Cal.2008); ⚑*Korman v. Walking Co.,* 503 F.Supp.2d 755, 762 (E.D.Pa.2007). It is true that where the dispute is factual and discovery is needed to determine whether a class should be certified, it may be premature to strike class allegations. But when the defendant advances a legal argument based on the pleadings, discovery is not necessary for the court to evaluate whether a class action may be maintained. Particularly given that ⚑Rule 23(c)(1)(A) instructs courts to determine whether a class may be certified "[a]t an early practicable time," courts may—and should—address the plaintiff's class allegations when the pleadings are facially defective and definitively establish that a class action cannot be maintained.

### II. Legal Standards

**\*2** ⚑Rule 23 requires a two-step analysis to determine whether class certification is appropriate. First, plaintiffs must satisfy all four requirements of ⚑Rule 23(a): (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation. Failure to meet any one of these four requirements precludes class certification. ⚑*Oshana v. Coca–Cola Co.,* 472 F.3d 506, 513 (7th Cir.2006). Further, plaintiffs must satisfy at least one provision of ⚑Rule 23(b). In the instant case, plaintiff seeks monetary damages and therefore must satisfy ⚑Rule 23(b)(3), which requires the plaintiff to establish that questions of law or fact common to class members do not predominate over any questions affecting only individual class members.

In determining whether class certification is appropriate, a district court does not presume that all well-pleaded allegations are true and can look beneath the surface of a complaint to conduct the inquiries ⚑Rule 23 requires. ⚑*Szabo v. Bridgeport Machs., Inc.,* 249 F.3d 672, 677 (7th Cir.2001). Even when the defendant initiates the court's review of class allegations, the burden remains on the plaintiff to establish that the suit may be maintained as a class action. *See* ⚑*Oshana,* 472 F.3d at 513, *citing* ⚑*Trotter v. Klincar,* 748 F.2d 1177, 1184 (7th Cir.1984) ("it is the plaintiff's burden to prove the class should be certified"); *but see Ramos v. U.S. Bank Nat. Ass'n,* No. CV 08–1150–PK, 2009 WL 3834035 (D.Oreg. Nov. 16, 2009) ("[I]n the context of a motion to *strike* class allegations, in particular where such a motion is brought in advance of the close of class discovery, it is properly the defendant who must bear the burden of proving that the class is not certifiable."); *Romano v. Motorola, Inc.,* No. 07–CIV–60517, 2007 WL 4199781, at *2 (S.D.Fla. Nov.26, 2007) ("Defendants, in contending that class certification in this case is precluded as a matter of law, have the burden of demonstrating from the face of plaintiffs' complaint that it will be impossible to certify the classes alleged by the plaintiffs regardless of the facts the plaintiffs may be able to prove.") (internal citation and quotation omitted).

16 Wage & Hour Cas.2d (BNA) 1773

### III. Analysis

Defendant argues that plaintiff can establish neither adequacy of representation nor typicality. Because the court agrees, defendant's motion to strike class allegations is granted.

### A. Adequacy of Representation

Defendant correctly contends that, as it is clear from the complaint that the putative class is permeated by conflicts of interest, plaintiff's counsel will not be able to adequately represent all the members of that class. Two distinct varieties of conflict exist. The first is between those associates who were promoted to managers, and the associates who worked under those managers. The most obvious example, based on the pleadings, is plaintiff (who was an associate and then became a manager within the relevant limitations period) but an identical conflict will also arise between any other associates who were promoted to manager and the associates who worked for those managers. [1] The complaint alleges that requiring associates to work off-the-clock was the "only solution" to the manager's dilemma and that this practice was "rampant." Therefore, based on the pleadings, plaintiff, along with other managers, must have required associates to work off-the-clock when she worked as a store manager. As a result, any member of the putative class who reported to plaintiff would be claiming that plaintiff acted in violation of the law and of defendant's policies (and any class member who reported to another class member would be accusing that class member of identical unlawful conduct).

**\*3** The second type of conflict is between all putative class members who, like plaintiff, are no longer employed by defendant, and putative class members who presently work as managers. The conflict arises because plaintiff alleges that managers violated both defendant's policies and Illinois law, which could have a negative effect on current store managers' employment.

The court agrees with defendant that conflicts in the putative class prevent plaintiff from establishing adequacy of representation. Because plaintiff became a manager who allegedly participated in the wrongful conduct at issue, her counsel cannot adequately represent a class of associates. *See Mateo v. V.F. Corp.,* No. C 08–05313, 2009 U.S. Dist. LEXIS 105921, \*13 (N.D.Cal. Oct. 27, 2009) (denying certification under the FLSA because the putative class included the plaintiff and those she supervised, and the defendant's defense that the plaintiff worked employees off-the-clock during their breaks in violation of the defendant's policy brought into question the adequacy of the named plaintiff's representation), *quoting* ⚑*J.H. Cohn & Co. v. Am. Appraisal Assocs., Inc.,* 628 F.2d 994, 999 (7th Cir.1980)*; Sample v. Aldi,* No. 93 C 3094, 1994 U.S. Dist. LEXIS 1518, at \*13 (N.D.Ill. Feb. 15, 1994) ("[I]t is generally true that supervisory and nonsupervisory employees should not be placed in the same class.").

Plaintiff argues that no conflict exists because she does not seek damages for the period of time she was a manager; she further notes that the existence of potential wage and hour claims she might have for her tenure as a manager do not destroy adequacy of representation. Because the conflict is not based on any claims plaintiff may have for the time she worked as a manager, plaintiff's arguments are irrelevant and nonresponsive.

### B. Typicality

Defendant also correctly argues that, because it has unique defenses against plaintiff and any other class member who became a manager, the pleadings show plaintiff cannot establish typicality. Under the typicality analysis, "a plaintiff against whom the defendants have a defense not applicable to other members of the class is not a proper class representative." ⚑*Hardy v. City Optical Inc.,* 39 F.3d 765, 770 (7th Cir.1994)*; see Robles v. Corporate Receivables, Inc.,* 220 F.R.D. 306, 309 (N.D.Ill.2004) (finding that unique defenses destroy typicality because "the defenses against the named representatives are likely to usurp a significant portion of the litigant's time and energy, and there is a danger that the absent class members will suffer if their representative is preoccupied with defenses unique to it") (internal citations and quotations omitted). One of defendant's theories is that managers who promoted off-the-clock work did so without defendant's knowledge and in violation of its official policy; thus, defendant's litigation strategy will force plaintiff and any other members of the putative class who became managers to

16 Wage & Hour Cas.2d (BNA) 1773

defend their own conduct. Defendant has offered two affirmative defenses that implicate this issue. The first is: "Plaintiff is not a proper class representative, as she was a Store Manager during part of her employment with Defendant. As Store Manager, Plaintiff would have been responsible for the failure to pay overtime and the requirement to work off-the-clock as alleged in the Complaint." The second is that "[a]ny Store Manager who required employee[s] to work off the clock did so in violation of Family Dollar's policy prohibiting off the clock work and without Family Dollar's knowledge." These defenses, unique as to plaintiff and any other manager in the putative class, prevent plaintiff from establishing typicality and therefore from showing that she will be able to maintain a class action.

*CONCLUSION*

**\*4** For the reasons discussed above, the court grants defendant's motion to strike class allegations.

**All Citations**

Not Reported in F.Supp.2d, 2010 WL 4962838, 16 Wage & Hour Cas.2d (BNA) 1773

---

**Footnotes**

1    An affidavit provided by defendant shows that, from June 11, 2005, to June 11, 2010, 13 associates at the store where plaintiff worked were promoted to store manager, one of whom is still employed as a store manager.

---

**End of Document**                                    © 2026 Thomson Reuters. No claim to original U.S. Government Works.