# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

**KELLY BLAND,** individually and on behalf of all others similarly situated,

      *Plaintiff*,

*v.*

**HUMANA INC.**

      *Defendant.*

Case No.
1:26-cv-00659

**CLASS ACTION**

**JURY TRIAL DEMANDED**

## PLAINTIFF'S OPPOSITION TO THE
## MOTION TO DISMISS

# TABLE OF CONTENTS

INTRODUCTION ......................................................................................................1

STATEMENT OF QUESTIONS INVOLVED.......................................................2

FACTUAL BACKGROUND....................................................................................4

LEGAL STANDARD...............................................................................................6

ARGUMENT .............................................................................................................7

   I.  Plaintiff Adequately Alleges That Humana Is Liable for the Calls, and Agency Is a Fact-Bound Question Unsuited to Resolution on the Pleadings. ......7

      A.  Plaintiff plausibly alleges actual (including implied actual) authority........9

      B.  Plaintiff plausibly alleges apparent authority.............................................11

      C.  Plaintiff plausibly alleges ratification. ......................................................12

      D.  Independently, Humana is liable under § 227(c)(5)'s statutory "on behalf of" test. ...................................................................................................13

   II.  Plaintiff Plausibly Alleges More Than One Call By or On Behalf of Humana, and the Spoofing Allegations Move the Claim From Possible to Plausible........14

   III.  Count III States a Claim Under 47 C.F.R. § 64.1200(d). ............................17

CONCLUSION.......................................................................................................20

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*Abramson v. AP Gas & Elec. (PA), LLC*, No. CV 22-1299, 2023 WL 1782728 (W.D. Pa. Feb. 6, 2023)...................................................................................17

*Aranda v. Caribbean Cruise Line, Inc.*, 179 F. Supp. 3d 817 (N.D. Ill. 2016).......13

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009)........................................................................6

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)......................................................6

*Bilek v. Fed. Ins. Co.*, 8 F.4th 581 (7th Cir. 2021) ................................................6, 8

*Bird v. Pro Star Builders, Inc.*, No. 222CV03610JLSJEM, 2022 WL 18216007 (C.D. Cal. Nov. 28, 2022)................................................................15

*Bradshaw v. CHW Grp., Inc.*, 2025 WL 306783 (D.N.J. Jan. 24, 2025) ................15

*Buja v. Novation Cap., LLC*, No. 15-81002-CIV, 2017 WL 10398957 (S.D. Fla. Mar. 31, 2017) ..............................................................................19

*Carr v. Humana Inc.*, No. 3:25-cv-00476-DJH, ECF No. 28 (W.D. Ky. Mar. 23, 2026) .............................................................................................passim

*Connelly v. Lane Constr. Corp.*, 809 F.3d 780 (3d Cir. 2016) ................................6

*Consol. Grain & Barge, Inc. v. Anny*, No. CIV.A. 11-2204, 2013 WL 486687 (E.D. La. Feb. 6, 2013) ..............................................................................7

*Cunningham v. Watts Guerra, LLP*, No. SA-22-CV-363-OLG (HJB), 2024 WL 3100773 (W.D. Tex. May 23, 2024) ............................................................17

*Ewing v. Freedom Forever LLC*, No. 20-cv-880-JLS (AHG), 2021 WL 1087100 (S.D. Cal. Mar. 22, 2021) ..........................................................................8

*Harrison v. Humana, Inc.*, No. 3:24-CV-00262-GNS, 2024 WL 4828737 (W.D. Ky. Nov. 19, 2024) ..........................................................................9, 17

*Henderson v. United Student Aid Funds, Inc.*, 918 F.3d 1068 (9th Cir. 2019) .12, 13

*Jewell v. Magnolia Bank, Inc.*, No. 3:23-CV-78-RGJ, 2024 WL 203972 (W.D. Ky. Jan. 18, 2024)................................................................................11

*John v. Keller Williams Realty, Inc.*, No. 6:19-cv-1347-Orl-40DCI, 2020 WL 10502631 (M.D. Fla. Feb. 4, 2020) ......................................................9, 10

*Katz v. Allied First Bank, SB*, No. 22 C 5277, 2026 WL 636723 (N.D. Ill. Mar. 6, 2026) ............................................................................................7, 13, 14

*Klassen v. Solid Quote LLC*, 702 F. Supp. 3d 1052 (D. Colo. 2023).......................7

*Landy v. Nat. Power Sources, LLC*, No. 321CV00425PGSTJB, 2022 WL 797967 (D.N.J. Mar. 16, 2022).........................................................................10, 11

*Moore v. Club Exploria, LLC*, No. 1:19-CV-02504, 2025 WL 2755076 (N.D. Ill. Sept. 26, 2025).................................................................................13, 14

*Moore v. Healthcare Sols. Inc.*, No. 21-CV-4919, 2022 WL 17487823 (N.D. Ill. Dec. 7, 2022)..................................................................................................16

*Perrong v. S. Bay Energy Corp.*, No. 2:20-CV-05781-JDW, 2021 WL 1387506 (E.D. Pa. Apr. 13, 2021) ...................................................................................19

*Poskin v. TD Banknorth, N.A.*, 687 F. Supp. 2d 530 (W.D. Pa. 2009)......................8

*Robison v. 7PN, LLC*, 569 F. Supp. 3d 1175 (D. Utah 2021) ..........................18, 20

*Scofield v. Alleviate Tax LLC*, No. 1:24-cv-03231-DDD-KAS, ECF No. 42 (D. Colo. Sep. 18, 2025) ....................................................................................16

*Shelton v. Pro Source Lending Grp. LLC*, No. CV 24-4394, 2025 WL 817485 (E.D. Pa. Mar. 14, 2025)................................................................................18

*Simmons v. Charter Commc'ns, Inc.*, 222 F. Supp. 3d 121 (D. Conn. 2016), *aff'd*, 686 F. App'x 48 (2d Cir. 2017) ...............................................................18, 19

*Spurlark v. Dimension Serv. Corp.*, 2022 WL 2528098 (S.D. Ohio July 7, 2022).16

*Sphere Drake Ins. Ltd. v. Am. Gen. Life Ins. Co.*, 376 F.3d 664 (7th Cir. 2004) ....12

*Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002)...................................................6

## ADMINISTRATIVE DECISIONS

*In re DISH Network, LLC*, 28 FCC Rcd. 6574 (2013) ...............................11, 12, 14

## STATUTES

47 U.S.C. § 227(c)(5)..............................................................................................13

## REGULATIONS

47 C.F.R. § 64.1200(d) ....................................................................................passim

47 C.F.R. § 64.1200(d)(3)........................................................................................18

47 C.F.R. § 64.1200(d)(4)........................................................................................20

## RULES

Fed. R. Civ. P. 8(a)(2)................................................................................................6

Fed. R. Civ. P. 12(b)(6)..............................................................................................6

**OTHER AUTHORITIES**

Restatement (Third) of Agency § 2.01 (Am. L. Inst. 2006) .......................................9

Restatement (Third) of Agency § 2.03 (Am. L. Inst. 2006) .....................................11

Restatement (Third) of Agency § 4.01 (Am. L. Inst. 2006) .....................................12

**INTRODUCTION**

Attempts by the robocalling industry to blame the victims of their calls for failing to allege "sufficient" facts to connect the callers to the illegal calls are nothing new. Trial and appellate courts have had little trouble rejecting such tactics. Defendant Humana Inc. ("Humana") now makes a bold assertion without the corresponding factual predicate, that it cannot be responsible for three telemarketing calls placed to sell its insurance products, the last of which was transferred to a licensed Humana Medicare agent, listed on Humana's own website, who tried to sell Plaintiff a Humana policy, because a vendor its agent hired supposedly "went rogue." For the reasons below, this Court, like nearly every court to consider similar motions, should reject Humana's arguments.

Humana's Motion rests on three premises, each of which fails. *First*, Humana says it is neither directly nor vicariously liable for the calls. But agency is a notoriously fact-bound question unsuited to resolution on the pleadings, and the Complaint alleges that every call was placed to sell Humana's products, that the final call was transferred to Humana's own licensed agent, and that Humana profited from the scheme. That is more than enough at this stage. Indeed, in the closely analogous case of *Carr v. Humana Inc.*, the Western District of Kentucky recently denied a materially identical motion by Humana, holding that a plaintiff adequately pled liability when he was connected to a Humana agent following an

1

outreach and after he had adequately alleged that Humana was liable. No. 3:25-cv-00476-DJH, ECF No. 28[1] (W.D. Ky. Mar. 23, 2026). *Second*, Humana says Plaintiff connected through to one of its agents during only one call. But the Complaint ties all three calls together to the same source, through a unique fictitious alias and an identical, demonstrably spoofed defunct telephone exchange, and the "mathematical speculation" Humana derides is precisely what moves the claim from possible to plausible and entitles Plaintiff to discovery. *Third*, Humana says Count III fails to allege a violation under 47 C.F.R. § 64.1200(d). But the Complaint alleges that Plaintiff asked the caller to stop and received more calls anyway, placed through spoofed numbers and a fake name that made it impossible to identify Humana or lodge a do not call request, allegations courts have repeatedly held sufficient. Humana's Motion should be denied in its entirety.

## STATEMENT OF QUESTIONS INVOLVED

1.  Should the Court deny the Motion where the Complaint alleges that every call was placed to sell Humana's insurance products, that the final call was transferred to a licensed Humana Medicare agent listed on Humana's own website

---

[1] A copy of this slip opinion is included in Plaintiff's unpublished authorities, which are organized in alphabetical order.

who attempted to sell Plaintiff a Humana policy, and that agency is a fact-bound question unsuited to resolution on the pleadings?

*Suggested Answer: Yes.*
*Anticipated Response: No.*

2. Should the Court deny the Motion where the Complaint connects all three calls to a common source through a unique fictitious alias ("Zack" of the "Medicare Help Centre") and an identical, demonstrably spoofed telephone exchange, such that Plaintiff plausibly alleges more than one telephone solicitation by or on behalf of Humana and is entitled to discovery?

*Suggested Answer: Yes.*
*Anticipated Response: No.*

3. Should the Court deny the Motion as to Count III where the Complaint alleges that Plaintiff asked the caller to stop, received further calls anyway, and that the calls were placed using spoofed numbers and a fictitious name that made it impossible to identify Humana or lodge a do-not-call request, giving rise to the plausible inference that Humana failed to institute and maintain the internal do not call procedures required by 47 C.F.R. § 64.1200(d)?

*Suggested Answer: Yes.*
*Anticipated Response: No.*

## FACTUAL BACKGROUND

Plaintiff Kelly Bland is a residential subscriber whose telephone number, a residential, non-commercial line assigned to a cellular service and used for personal, residential, and household purposes, has been listed on the National Do Not Call Registry since she registered it there more than a year before the calls at issue. Compl. ¶¶ 26-30. Plaintiff has never been a customer of Humana and never consented to its calls. *Id.* ¶¶ 25, 31, 53.

Despite that, Plaintiff received at least three calls from a call center hired by Defendant's life insurance agent, as life insurance agents were permitted to do by Humana, all made to sell Humana's insurance services. *Id.* ¶¶ 32, 44-45. The first call, on February 1, 2025, came from the "spoofed" caller ID 208-252-3862 from "Zack" with the illegally and fictitiously named "Medicare Help Centre," seeking to sell Plaintiff a health insurance policy; Plaintiff stated to stop calling. *Id.* ¶ 33. On September 18, 2025, Plaintiff received another call from the "spoofed" caller ID 817-786-1954, which she missed. *Id.* ¶ 34. The 817-786 NPA-NXX combination, with a thousands block of "1," is spoofed because it is unable to receive calls, and no legitimate caller has a working number in that block, so any call displaying an 817-786-1XXX caller ID is, by definition, spoofed. *Id.* ¶ 35, 40.

On October 16, 2025, not more than a month later, Plaintiff received yet another call from 817-786-1166, the same spoofed NPA-NXX and thousands block

4

as the September 18 call. *Id.* ¶ 36. It was "Zack" again, calling from the same fictitiously named "Medicare Help Centre." *Id.* ¶ 37. During that last call, Plaintiff was transferred to Hassan Rashid, a licensed Humana Medicare agent who is listed on Humana's website as the same, and who attempted to sell Plaintiff a Humana Medicare insurance policy. *Id.* ¶ 42. When confronted about the illegal calls and why a Humana agent was placing them, Humana provided the explanation that the agent hired a telemarketing vendor that allegedly "went rogue." *Id.* ¶ 43.

As the Complaint alleges, the calls thus connect to a single source. The February and October calls are connected to each other, because both came from "Zack" of the "Medicare Help Centre" and both bore fake caller IDs, and the September and October calls to each other, because both spoofed the same exact defunct NPA-NXX combination. *Id.* ¶ 38. The probability that two independent, unrelated bad actors would each independently land in the same thousands block, roughly 0.000017% of the available number space, is about one in six million, less likely than being struck by lightning. *Id.* ¶ 39. None of the numbers used permitted Plaintiff to call back and lodge a do not call request during regular business hours, even though she was supposed to be on Humana's internal Do Not Call list. *Id.* ¶ 49. Humana now moves to dismiss. This response follows.

## LEGAL STANDARD

Under Rule 12(b)(6), a court may dismiss a complaint only where it fails to state a claim upon which relief can be granted. The Rules require nothing more than a short and plain statement of the claim that gives the defendant fair notice of the claim and the grounds on which it rests. *See* Fed. R. Civ. P. 8(a)(2); *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016). To survive, a complaint must contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (cleaned up). At this stage, the Court accepts all well-pleaded factual allegations as true, views them in the light most favorable to Plaintiff, and draws all reasonable inferences in her favor. *Connelly*, 809 F.3d at 786-87. A complaint may not be dismissed merely because the defendant offers contrary facts. The question is whether the alleged facts state a plausible claim. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

A Rule 12(b)(6) motion tests the sufficiency of the pleading, not the truth of the allegations or whether the plaintiff can ultimately prove them. *See Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511 (2002). That principle has particular force as to agency, which is "ultimately a question of fact." *Bilek v. Fed. Ins. Co.*, 8 F.4th 581, 588 (7th Cir. 2021). At the pleading stage, a plaintiff need only "allege a factual basis that gives rise to an inference of an agency relationship through the use of

6

generalized as opposed to evidentiary facts." *Klassen v. Solid Quote LLC*, 702 F. Supp. 3d 1052, 1059 (D. Colo. 2023) (cleaned up).

## ARGUMENT

### I.  Plaintiff Adequately Alleges That Humana Is Liable for the Calls, and Agency Is a Fact-Bound Question Unsuited to Resolution on the Pleadings.

Humana's lead argument is, at bottom, a "we didn't do it" defense recast as a challenge to the sufficiency of the pleading. But the Complaint alleges that every call was placed to sell Humana's insurance products, ¶¶ 44-45, that the final call was transferred to Hassan Rashid, a licensed Humana Medicare agent listed on Humana's own website, who tried to sell Plaintiff a Humana policy, ¶ 42, and that Humana's own agent hired the call center (whose employee was "Zack"), that placed the calls, ¶¶ 32, 37, 43. Taking those facts as true, Plaintiff has plausibly alleged that Humana is liable. Humana's contrary position simply begs the question: who did, then? *See Consol. Grain & Barge, Inc. v. Anny*, No. CIV.A. 11-2204, 2013 WL 486687, at *6 (E.D. La. Feb. 6, 2013).

Under the TCPA, a seller like Humana is vicariously liable for the TCPA violations of third-party callers where the plaintiff establishes an agency relationship, as defined by federal common law, between the defendant and the third-party caller, or establishes that the calls were placed "on behalf of" the seller. *Katz v. Allied First Bank, SB*, No. 22 C 5277, 2026 WL 636723, at *7 (N.D. Ill.

Mar. 6, 2026). The bedrock theories of agency, "actual authority, apparent authority, and ratification," each offer "an independent basis for vicarious liability." *Bilek*, 8 F.4th at 587 (cleaned up). Plaintiff need plead only one. *Id.* As an initial matter, agency is a notoriously fact-bound question that should ordinarily be decided by a jury, absent a lack of a genuine dispute as to the underlying facts. *See Poskin v. TD Banknorth, N.A.*, 687 F. Supp. 2d 530, 545 (W.D. Pa. 2009).

And a plaintiff need not plead the precise details of the agency relationship to survive a motion to dismiss. Though she must allege facts supporting a reasonable inference that an agency relationship existed, a plaintiff is not expected to plead more, because the information necessary to connect all the players is typically in the defendant's sole possession. *See Ewing v. Freedom Forever LLC*, No. 20-cv-880-JLS (AHG), 2021 WL 1087100, at *3-*4 (S.D. Cal. Mar. 22, 2021). Humana's Motion asks this Court to resolve these fact-intensive questions on the pleadings. That alone warrants denial and discovery.

That is precisely what the Western District of Kentucky held in denying a materially similar motion by Humana on closely analogous facts. In *Carr v. Humana Inc.*, the plaintiff received text messages directing her to visit a website for insurance services. That website contained a toll free number selling insurance. When the Plaintiff called the number, she was eventually connected to a Humana agent. ECF No. 28, at 1-2. The court held that, "[b]ased on these allegations," the

plaintiff "ha[d] sufficiently alleged implied actual authority between Humana and a purported agent that sent the text messages," and that whether such authority existed "would require the Court to know more about the course of" Humana's dealings, which was a "question[] of fact" that was "inappropriate for resolution on a motion to dismiss." *Id.* at 11. The court added that, at the pleading stage, the plaintiff "need not identify the purported third-party agent" because it "would otherwise be impossible" for her "to know of the alleged caller's relationship with Humana—if any—without discovery." *Id.* at 11–12 (cleaned up) (quoting *Harrison v. Humana, Inc.*, No. 3:24-CV-00262-GNS, 2024 WL 4828737, at *3 (W.D. Ky. Nov. 19, 2024)). The nexus here is even tighter. Plaintiff was transferred directly, on the same call, to a named, licensed Humana agent listed on Humana's website who pitched a Humana policy. Compl. ¶ 42.

### A. Plaintiff plausibly alleges actual (including implied actual) authority.

"An agent acts with actual authority when, at the time of taking action that has legal consequences for the principal, the agent reasonably believes, in accordance with the principal's manifestations to the agent, that the principal wishes the agent so to act." Restatement (Third) of Agency § 2.01. Actual authority may be express or implied, and it does not require the principal to specify the *precise* acts for which authority exists, as long as the acts are incidental to, or reasonably necessary to accomplish, what is authorized. *See John v. Keller*

9

*Williams Realty, Inc.*, No. 6:19-cv-1347-Orl-40DCI, 2020 WL 10502631, at *2 (M.D. Fla. Feb. 4, 2020) (denying motion to dismiss). Here, the Complaint alleges that Humana's own life insurance agent hired the call center to generate insurance sales for Humana, Compl. ¶¶ 32, 43, that the calls pitched Humana's products, *id.* ¶¶ 44–45, and that the campaign funneled Plaintiff to a licensed Humana agent who tried to close a Humana sale, *id.* ¶ 42. Moreover, the Complaint alleges that Humana permits its insurance agents to hire third-party call centres to drum up business, *id.* ¶ 32. Outbound solicitation to generate those sales is incidental to, and reasonably necessary to accomplish, the very objective for which the callers were retained, precisely as Humana directed an authorized.

Tellingly, the principal case on which Humana relies ultimately cuts the other way. After the plaintiff in *Landy* amended, the court held that the buttery "smooth transfer" from the initial telemarketing contact to the defendant's live agents, which included the defendant "accepting the call, and following up with an e-mail after the call," sufficiently permitted the inference an agency relationship. *Landy v. Nat. Power Sources, LLC*, No. 321CV00425PGSTJB, 2022 WL 797967, at *3 (D.N.J. Mar. 16, 2022). Implicit in that holding is a tacit recognition that an employee of a company who receives a call transfer from a third-party knows that that the third-party is calling individuals, including through an automated manner, to generate customers for that company. *See id.*; *see also Carr*, ECF No. 28, at 11

10

(citing *Landy* for that proposition). So too here, where Plaintiff was transferred from "Zack" to a named, licensed Humana agent who attempted to sell her a Humana policy. *Jewell v. Magnolia Bank, Inc.*, No. 3:23-CV-78-RGJ, 2024 WL 203972, at *4 (W.D. Ky. Jan. 18, 2024) (plaintiff's allegation that she was transferred to "one of [the seller's] employees, who accepted the call and later called twice more" plausibly alleged implied actual authority).

### B.  Plaintiff plausibly alleges apparent authority.

Apparent authority arises from the principal's manifestations to a third party that supplies a reasonable basis for that party to believe that the principal has authorized the alleged agent to do the act in question. Restatement (Third) of Agency § 2.03. The FCC's illustrative indicia of apparent authority include the seller's grant of "access to information and systems that normally would be within the seller's exclusive control," the ability to enter consumer information into the seller's systems, and "[t]he authority to use the seller's trade name, trademark and service mark." *In re DISH Network, LLC*, 28 FCC Rcd. 6574, 6592 (2013) (cleaned up). Here, the campaign culminated in a transfer to a licensed Humana agent, identified on Humana's own website, who used Humana's name to pitch a Humana product. Compl. ¶ 42. Humana's public holding out of Mr. Rashid as its agent, and its agent's retention of the call center at issue to generate business, as he was permitted to do by Humana, are manifestations attributable to Humana that

gave Plaintiff a reasonable basis to believe the callers were acting for Humana. Once a plaintiff pleads those indicia, the FCC has explained, that showing "should be sufficient to place upon the seller the burden of demonstrating that a reasonable consumer would not sensibly assume that the telemarketer was acting as the seller's authorized agent." *Id.* at 6593. Humana cannot carry that burden on a threshold motion where all inferences run in Plaintiff's favor.

### C.  Plaintiff plausibly alleges ratification.

Ratification is the affirmance of a prior act done by another. Restatement (Third) of Agency § 4.01. "A principal can ratify his agent's actions either by not repudiating them or by accepting their benefit." *Sphere Drake Ins. Ltd. v. Am. Gen. Life Ins. Co.*, 376 F.3d 664, 677 (7th Cir. 2004). A principal may also be deemed to ratify where it is willfully ignorant of the facts, that is, where it had knowledge of facts that would have led a reasonable person to investigate further but ratified without doing so. *Henderson v. United Student Aid Funds, Inc.*, 918 F.3d 1068, 1075 (9th Cir. 2019).

Humana's sole rejoinder is that its agent told Plaintiff the vendor "went rogue," which it casts as an "immediate disavowal." Not so. The "went rogue" explanation is an statement made after the fact only after Plaintiff confronted Humana about *months* of illegal calls. It is not a repudiation of the benefit Humana accepted during those seven months for an individual that should have already

been on Humana's internal do not call list, and it does not negate ratification as a matter of law on the pleadings. To the contrary, the allegations that Humana's own agent hired the call center, that the calls ran for months, while Plaintiff was supposed to be on Humana's internal DNC list, no less, and that Humana stood to profit from the resulting Humana policy sale support the inference that Humana accepted the benefits of, or was at least willfully ignorant of, the unlawful calling. *See Henderson*, 918 F.3d at 1075; *Aranda v. Caribbean Cruise Line, Inc.*, 179 F. Supp. 3d 817, 831-33 (N.D. Ill. 2016) (evidence that sellers accepted the benefits of unlawful telemarketing after being put on notice could support a jury finding of ratification). Whether Humana had actual knowledge or was willfully ignorant of the unlawful calling is a fact question that cannot be resolved on the pleadings, where all inferences run in Plaintiff's favor.

### D.  Independently, Humana is liable under § 227(c)(5)'s statutory "on behalf of" test.

Even setting agency aside, Humana is liable as the seller "on behalf of" which the calls were made. Section 227(c)(5) of the TCPA creates a private right of action for any person who receives more than one call "by or on behalf of the same entity in violation of the regulations." 47 U.S.C. § 227(c)(5). That "on behalf of" language extends liability beyond the entity that physically placed the call to the entity whose goods or services were marketed, without regard to federal common law agency principles. *See Katz*, 2026 WL 636723, at *7 (citing *Moore v.*

13

*Club Exploria, LLC*, No. 1:19-CV-02504, 2025 WL 2755076, at \*10 (N.D. Ill. Sept. 26, 2025)).

This is a paradigm "on behalf of" case. The callers were hired by Humana's agent, pitched Humana's products, and routed Plaintiff to that Humana agent to close a Humana sale that would profit Humana. Compl. ¶¶ 42, 44-45. As the FCC has long held, a seller may not avoid TCPA liability "by outsourcing its telemarketing activities to unsupervised third parties," because that would "leave consumers in many cases without an effective remedy for telemarketing intrusions." *In re DISH Network*, 28 FCC Rcd. at 6588; *see also Katz*, 2026 WL 636723, at \*7 ("§ 227(c)(5) includes language that explicitly extends vicarious liability to violations under that subsection" through its "by or on behalf of" text).

## II.  Plaintiff Plausibly Alleges More Than One Call By or On Behalf of Humana, and the Spoofing Allegations Move the Claim From Possible to Plausible.

Humana's fallback, that, even assuming liability for the final call, Plaintiff connected only one call to Humana, fails because the Complaint ties all three calls to a single source through common, highly specific indicia. The question is whether Plaintiff has plausibly alleged that the calls came from the same source.

She has.

The February and October calls are connected by a unique fictitious alias. Both came from the same person, "Zack," representing the illegally and fictitiously

14

named "Medicare Help Centre," and the October call from "Zack" was transferred to a licensed Humana agent. Compl. ¶¶ 33, 37, 42. As courts have recognized, "it is reasonable to infer that the same caller is responsible for calls from the same number, whether those calls are answered or not." *Bird v. Pro Star Builders, Inc.*, No. 222CV03610JLSJEM, 2022 WL 18216007, at *3 (C.D. Cal. Nov. 28, 2022). "After all, when a person introduces herself across the table as Olivia or Emma --- we generally conclude without much hesitation that is indeed who he is. So too as to the December 8 call. The caller allegedly introduced herself as 'Erica ... from [the Defendant].' Why then would it not be plausible to conclude that he was, in fact, 'Erica ... from [the Defendant]'?" *Bradshaw v. CHW Grp., Inc.*, 2025 WL 306783, at *3 (D.N.J. Jan. 24, 2025).

That logic applies with even greater force to a uniquely fabricated company name and pseudonymous caller repeated across calls. As another court put it in rejecting the same argument, where calls share a unique identifier, "[t]he issue of who made the first call isn't much of a whodunit. . . . Does [the caller] share a phone number with someone else? Unlikely." *Moore v. Healthcare Sols. Inc.*, No. 21-CV-4919, 2022 WL 17487823, at *3 (N.D. Ill. Dec. 7, 2022).

The September and October calls are connected by an identical, demonstrably spoofed exchange. Both spoofed the 817-786-1XXX block assigned to a defunct carrier that originates no legitimate traffic, and they fell less than a

month apart. These are false caller IDs, the Complaint alleges, that were "false in the same highly specific way." Compl. ¶¶ 35-36, 41. Courts routinely infer common origin from this kind of shared, unanswered-call indicia. *See id.* (two calls plausibly tied to defendant where they originated from the same number); *Spurlark v. Dimension Serv. Corp.*, 2022 WL 2528098, at *3 (S.D. Ohio July 7, 2022) (plaintiff who ignored multiple calls until answering one plausibly pleaded all were placed by the defendant).

That Humana brands this "mathematical speculation" is no answer. The Complaint pleads that the probability of two unrelated actors independently spoofing the same defunct thousands block by coincidence is roughly one in six million. Compl. ¶ 39. That allegation is what pushes the claim across the line from conceivable to plausible and entitles Plaintiff to discovery. Nor is it availing that the caller IDs do not belong to Humana. They do not *precisely because* they were spoofed to hide the callers' identity. "Phone numbers are easily spoofed," *Scofield v. Alleviate Tax LLC*, No. 1:24-cv-03231-DDD-KAS, ECF No. 42[2] (D. Colo. Sep. 18, 2025), and a defendant's contrary rule "would reward robocallers for attempting to obfuscate their identity in order to prevent TCPA liability."

---

[2] A copy of this slip opinion is included in Plaintiff's unpublished authorities, which are organized in alphabetical order.

16

*Cunningham v. Watts Guerra, LLP*, No. SA-22-CV-363-OLG (HJB), 2024 WL 3100773, at *13 (W.D. Tex. May 23, 2024).

Humana's argument that the missed September call "doesn't count" fares no better. "The relevant question is a Defendant's purpose in initiating the calls, not what occurred on each call," so the TCPA is violated where the context of a call shows it was placed to promote goods or services "even if the call was not answered." *Harrison*, 2024 WL 4828737, at *5 (cleaned up). The missed call, spoofed from the same defunct exchange as the answered call that pitched Humana through Humana's agent, plausibly shared that purpose. At bottom, Humana might dispute those facts, but as now alleged, they "go beyond formulaically reciting the elements of Plaintiff's cause of action," and the Court must take them as true at this early stage in the litigation. *Abramson v. AP Gas & Elec. (PA), LLC*, No. CV 22-1299, 2023 WL 1782728, at *3 (W.D. Pa. Feb. 6, 2023). Plaintiff has plausibly alleged more than one call by or on behalf of Humana.

## III.  Count III States a Claim Under 47 C.F.R. § 64.1200(d).

Humana argues that Count III fails because Plaintiff does not allege that Humana lacks a written internal do not call policy, fails to train employees, or otherwise "systemically" violates § 64.1200(d). That misunderstands both the regulation and Plaintiff's allegations.

17

*First*, § 64.1200(d) imposes affirmative obligations on the seller on whose behalf telemarketing is conducted, here Humana, not merely on the individual dialer, and those duties cannot be delegated away. The regulation requires a *seller-specific* internal do not call list, and a seller must maintain one even when it hires third parties to place calls on its behalf. As courts have recognized, § 64.1200(d)(3) can be violated in either of two ways: by refusing to place a number on an internal do-not-call list (including by failing to maintain one), or by calling a number *despite its placement on that list*. *See Robison v. 7PN, LLC*, 569 F. Supp. 3d 1175, 1184 (D. Utah 2021). Plaintiff alleges she told the caller to stop on February 1, yet received further calls on September 18 and October 16, which plausibly establishes either possibility. Compl. ¶¶ 33-34, 36. Allegations that a defendant contacted the plaintiff while he was listed on its internal do-not-call list are "sufficient to state a claim for violation of" the defendant's "obligations under § 64.1200(d)." *Shelton v. Pro Source Lending Grp. LLC*, No. CV 24-4394, 2025 WL 817485, at *6 (E.D. Pa. Mar. 14, 2025).

*Second*, a single failure to honor a do not call request is not irrelevant. As *Simmons* explained, "a single failure to record and honor" such a request "can be evidence of a failure to implement proper procedure." *Simmons v. Charter Commc'ns, Inc.*, 222 F. Supp. 3d 121, 139 (D. Conn. 2016), *aff'd*, 686 F. App'x 48 (2d Cir. 2017). A Plaintiff can use subsequent calls after a request to demonstrate a

18

failure to implement this plan. *See id*; *Perrong v. S. Bay Energy Corp.*, No. 2:20-CV-05781-JDW, 2021 WL 1387506, at *3 (E.D. Pa. Apr. 13, 2021). Here, Plaintiff alleges far more than a single failure. She asked to stop and received *repeated* calls *months* thereafter. The authorities Humana cites are not to the contrary. Each was resolved on a summary judgment record after discovery, not at the pleadings. In *Nece*, for example, after thirteen months of discovery, plaintiff uncovered no evidence that defendant failed to implement his request. And in *Buja*, the court found allegations that the defendant called persons who had asked it to stop and lacked reasonable practices and procedures *sufficient* to survive summary judgment because there *was* evidentiary support that defendants "failed to honor a DNC request made by Plaintiff on a timely basis." *Buja v. Novation Cap., LLC*, No. 15-81002-CIV, 2017 WL 10398957, at *5 (S.D. Fla. Mar. 31, 2017)

*Third*, the Complaint affirmatively pleads that Humana's own processes did not comply with the law, which independently supports the inference of inadequate procedures. By definition, a company cannot maintain adequate internal do not call procedures if its own calling processes do not comply with the law. Here, the calls were placed through spoofed numbers that did not permit Plaintiff to lodge a do not call request during regular business hours, Compl. ¶ 49, and through a fictitious "Medicare Help Centre" name that never identified Humana, *id.* ¶¶ 33, 37, 47. A strategy that calls someone through untraceable, spoofed numbers under a fake

19

name, preventing her from ever directing a do not call request to the responsible seller, is the *antithesis* of the procedures § 64.1200(d) requires for maintaining a list of persons who request not to receive calls. That deficiency also independently implicates § 64.1200(d)(4), which requires the caller to provide "the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address" at which that entity can be reached, not a fabricated alias. *See Robison*, 569 F. Supp. 3d at 1185 (holding an alias does not satisfy the identification requirement).

In short, Plaintiff has specified precisely what Humana did to violate § 64.1200(d). It called her after she asked it to stop, using spoofed numbers and a fake name that made compliance and redress impossible. Nothing more is required at the pleading stage. Count III should proceed.

## CONCLUSION

For the foregoing reasons, Humana's Motion to Dismiss should be denied in its entirety. To the extent the Court finds any aspect of the Complaint deficient, Plaintiff respectfully requests leave to amend to correct any perceived deficiency.

RESPECTFULLY SUBMITTED AND DATED this June 24, 2026

/s/ Andrew Roman Perrong
Andrew Roman Perrong, Esq.
PA Bar #333687
Perrong Law LLC
2657 Mount Carmel Avenue

20

Glenside, Pennsylvania 19038
Phone: 215-225-5529 (CALL-LAW)
Facsimile: 888-329-0305
a@perronglaw.com

## CERTIFICATE OF WORD COUNT

Pursuant to Local Rule 7.8(b)(2), I hereby certify that this brief contains 4,934 words.

DATED this June 24, 2026

*/s/ Andrew Roman Perrong*
Andrew Roman Perrong, Esq.

## CERTIFICATE OF SERVICE

I hereby certify that, on June 24, 2026, I served the foregoing on all interested parties in this action by transmitting such document(s) electronically via CM/ECF, which will automatically notify each attorney who has entered their appearance.

Dated: June 24, 2026

*/s/ Andrew Roman Perrong*
Andrew Roman Perrong, Esq.

21