UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

KIMBERLY CARR,                                                                    Plaintiff,

v.                                                          Civil Action No. 3:25-cv-476-DJH

HUMANA INC.,                                                                     Defendant.

\* \* \* \* \*

**<u>MEMORANDUM AND ORDER</u>**

Plaintiff Kimberly Carr filed this purported class action against Humana Inc., alleging violation of the Telephone Consumer Protection Act (TCPA).  (Docket No. 1)  Humana moves to dismiss the complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) (D.N. 7), which Carr opposes.  (D.N. 20)  Carr also moves to file a notice of supplemental authority in support of her opposition to the motion to dismiss.  (D.N. 27)  After careful consideration, the Court will deny Carr's motion as moot and deny the motion to dismiss for the reasons stated below.

**I.**

The following facts are set forth in the complaint and accepted as true for purposes of the present motion.  *Siefert v. Hamilton Cnty.*, 951 F.3d 753, 757 (6th Cir. 2020) (citing Fed. R. Civ. P. 12(b)(6)).  Carr has a "residential, non-commercial telephone number" that is "assigned to a cellular device."  (D.N. 1, PageID.4 ¶¶ 17, 21)  The number "has been listed on the National Do Not Call Registry since November 1, 2024."  (*Id.*, PageID.5 ¶ 22)  Carr "has never been a customer of" Humana but "received at least four telemarketing text messages and two phone calls from [Humana] in February and March 2025."  (*Id.* ¶¶ 23–24)  The text messages "were sent from short-code 73056," and Carr included screenshots of the messages in the complaint.  (*Id.* ¶ 26; *see id.*,

1

PageID.5)  The text messages did not reference Humana but stated that the recipient may claim "Medicare Benefits" and provided a link containing the name "medipolicy."  (*Id.*)  It was not possible to call or text the 73056 number to "lodge a Do Not Call request."  (*Id.*, PageID.7 ¶ 40; *see id.* ¶ 39)  On February 28, 2025, Carr clicked on the link, which directed her to a website.  (*Id.*, PageID.6 ¶ 28)  The website "listed a phone number of (855) 784-4371 to call for more information."  (*Id.* ¶ 29)  Carr called that number "from a different phone number of hers[] and spoke with agent 'Ronela Baijal[,]' who stated she was from Humana."  (*Id.* ¶ 30)  After Carr ended the call, Baijal called her back at the number with which Carr had received the text messages.  (*Id.* ¶¶ 32–33; *id.*, PageID.4 ¶ 17)  Carr rejected the calls.  (*Id.*, PageID.6 ¶ 34)  On March 8, 2025, Carr "received two voicemails from [Humana]" from another telephone number ending in -1970.  (*Id.* ¶ 35)  That number "transmitted accurate caller ID information identifying the caller as 'Humana Inc.'"  (*Id.* ¶ 36)  One of the voicemails was from "Adria Lucas from Humana," who asked Carr to contact her and stated, "[j]ust want to get ya . . . some help."  (*Id.* ¶ 37)

Carr states that "[t]he calls and text messages were unwanted" and violated her privacy. (*Id.*, PageID.7 ¶ 45; *see id.* ¶ 47)  She alleges two violations of the TCPA, 47 U.S.C. § 227, and accompanying regulations, contending that (1) Humana "and/or its affiliates, agents, and/or other persons or entities acting on [Humana's] behalf . . . caus[ed] multiple telephone solicitation calls to be initiated to" her despite her number being on the do-not-call registry and that (2) Humana or others acting on its behalf initiated calls and text messages "without [providing] a CPN or ANI that allowed any individual to make a do-not-call request."[1]  (*Id.*, PageID.11–12 ¶¶ 60, 67; *see id.*, PageID.7 ¶ 43)  Humana moves to dismiss both claims.  (D.N. 7)

---

[1] "The term 'ANI' (automatic number identification) refers to the delivery of the calling party's billing number by a local exchange carrier to any interconnecting carrier for billing or routing purposes."  47 C.F.R. § 64.1600(b).  "The term 'Calling Party Number' [(CPN)] refers to the

**II.**

**A.      Motion to Dismiss**

To avoid dismissal for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citation omitted). If "the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the plaintiff has not "show[n]" that she "is entitled to relief" as required by Rule 8. *Id*. at 679 (alteration in original) (quoting Fed. R. Civ. P. 8(a)(2)).  For purposes of this analysis, the Court "construe[s] the complaint in the light most favorable to the plaintiff." *Lindenberg v. Jackson Nat'l Life Ins. Co.*, 912 F.3d 348, 357 (6th Cir. 2018) (citation omitted).

**1.      Do-Not-Call Registry**

In the first count, Carr alleges that Humana "and/or its affiliates, agents, and/or other persons or entities acting on [Humana's] behalf violated the TCPA by causing multiple telephone solicitation calls to be initiated to [her] . . . , despite the . . . registration of . . . her telephone number[] on the National Do Not Call Registry."  (D.N. 1, PageID.11 ¶ 60)  In its motion to dismiss, Humana argues that the telephone calls were not "telephone solicitations" for purposes of the TCPA because the calls were received after Carr called the number accessed via the text messages.  (*See* D.N. 7, PageID.40)  Humana also argues that a "telephone solicitation" did not

---

subscriber line number or the directory number contained in the calling party number parameter of the call set-up message." *Id.* § 64.1600(e).

3

occur because Carr created an "established business relationship" with Humana.  (*See id.*, PageID.40–41)

Under the TCPA's implementing regulations, "[n]o person or entity shall initiate any telephone solicitation to . . . [a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry." 47 C.F.R. § 64.1200(c)(2); *see Imhoff Inv., L.L.C. v. Alfoccino, Inc.*, 792 F.3d 627, 635 (6th Cir. 2015).  "The implementing regulations for the TCPA define a telephone solicitation as 'the initiation of a telephone call or message,' made for the purpose 'of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person.'" *Jewell v. Magnolia Bank, Inc.*, No. 3:23-cv-78-RGJ, 2024 WL 203972, at *2 (W.D. Ky. Jan. 18, 2024) (quoting 47 C.F.R. § 64.1200(f)(15)).  "The regulations exclude a call or message '[t]o any person with whom the caller has an established business relationship.'" *Id.* (quoting 47 C.F.R. § 64.1200(f)(15)(ii)).  "In determining whether there has been a violation of the TCPA, 'the relevant question is a Defendant's purpose in initiating the calls, not what occurred on each call.'" *Harrison v. Humana, Inc.*, No. 3:24-CV-00262-GNS, 2024 WL 4828737, at *5 (W.D. Ky. Nov. 19, 2024) (quoting *Jewell*, 2024 WL 203972, at *3).  "Where 'the context of a call indicates that it was initiated and transmitted to a person for the purpose of promoting property, goods, or services,' the TCPA has been violated, even if the call was not answered." *Id.* (quoting *Jewell*, 2024 WL 203972, at *3).

The complaint alleges that approximately one week after Carr called the number accessed via the text messages, she "received two voicemails from [Humana]"; the "telephone number transmitted accurate caller ID information identifying the caller as 'Humana Inc.'"; and that one of the voicemails stated, "it's Adria Lucas from Humana . . . I was just trying to run your stuff. You should reach me at 800-537-3709 . . . [j]ust want to . . . get ya some help." (D.N. 1, PageID.6

¶¶ 35–37; *see id.* ¶¶ 28–30)  These allegations, taken as true and in the light most favorable to Carr, sufficiently allege that Humana "initiat[ed] . . . a telephone call . . . for the purpose of encouraging the purchase or rental of . . . property, goods, or services" and that a telephone solicitation thus occurred.  47 C.F.R. § 64.1200(f)(15).

Humana nevertheless argues that the calls were not telephone solicitations because an "established business relationship" existed once Carr called the number accessed via the text messages.  (*See* D.N. 7, PageID.40–41)  An established business relationship is "a prior or existing relationship formed by a voluntary two-way communication between a person or entity and a residential subscriber . . . on the basis of the subscriber's inquiry or application regarding products or services offered by the entity within the three months immediately preceding the date of the call."  47 C.F.R. § 64.1200(f)(5).  But "[w]hether an established business relationship exists is an affirmative defense."  *Jewell*, 2024 WL 203972, at *2 (citing *Bridging Cmtys. v. Top Flite Fin. Inc.*, 843 F.3d 1119, 1125 (6th Cir. 2016)).  Courts "are reluctant to dismiss complaints based on affirmative defenses at the pleading stage and before any discovery has been conducted."  *Lockhart v. Holiday Inn Express Southwind*, 531 F. App'x 544, 547 (6th Cir. 2013) (citation omitted).  The Court may "grant a motion to dismiss where the undisputed facts conclusively establish an affirmative defense as a matter of law."  *Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603, 613 (6th Cir. 2009) (citations omitted).

The allegations here do not conclusively show that an established business relationship existed.  According to the complaint, Carr "rejected" the calls received on the number included on the do-not-call registry.  (D.N. 1, PageID.6 ¶¶ 30, 34; *see id.*, PageID.4, 6 ¶¶ 17, 30–33)  Viewing the facts in the light most favorable to Carr, the Court cannot conclude that a "voluntary two-way communication" existed to create an established business relationship.  47 C.F.R. § 64.1200(f)(5).

Accordingly, the Court will deny the motion to dismiss as to the first count. *Hensley Mfg.*, 579 F.3d at 613; *see Jewell*, 2024 WL 203972, at *3 (denying motion to dismiss where plaintiff alleged that defendant "made a telephone solicitation and that the calls were made for a marketing purpose" and rejecting established-business-relationship defense).

### 2.    Caller Identification

In the second count, Carr alleges that Humana "and/or its affiliates, agents, and/or other persons or entities acting on [Humana's] behalf violated the TCPA by causing multiple telemarketing calls to be initiated to [her] . . . without [providing] a CPN or ANI that allowed [her] to make a do-not-call request" and that "the caller ID information transmitted along with the text message[s] did not transmit a telephone number that permits any individual to make a do-not-call request during regular business hours."  (D.N. 1, PageID.12 ¶ 67; *id.*, PageID.7 ¶ 43 (internal quotation marks omitted))  The complaint cites 47 C.F.R. § 64.1601(e)(1) in support of the second count. (*See id.*, PageID.12 ¶ 66)  Humana moves to dismiss this claim on the grounds that (1) 47 C.F.R. § 64.1601(e)(1) does not provide a private right of action; (2) the regulation "does not apply to text messages"; and (3) the complaint fails to plead that Humana is directly or vicariously liable for the text messages.[2]   (D.N. 7, PageID.32; *see id.*, PageID.29–40)  Carr contests each of Humana's arguments.  (*See* D.N. 20, PageID.73–93)

47 U.S.C. § 64.1601(e)(1) states:

> For purposes of this paragraph, caller identification information must include either CPN or ANI, and, when available by the telemarketer's carrier, the name of the telemarketer.  It shall not be a violation of this paragraph to substitute (for the name and phone number used in, or billed for, making the call) the name of the seller on

---

[2] Although the second count alleges that Humana violated the TCPA "by causing multiple telemarketing calls to be initiated" (D.N. 1, PageID.12 ¶ 67) and by sending text messages that did not allow Carr to make a do-not-call request (*id.*, PageID.7 ¶ 43), the motion to dismiss focuses on whether Humana can be held liable for the text messages as to the second count. (*See* D.N. 7, PageID.32–40)  The Court will therefore confine its analysis to the text messages.

behalf of which the telemarketing call is placed and the seller's customer service telephone number. The telephone number so provided must permit any individual to make a do-not-call request during regular business hours.

47 U.S.C. § 64.1601(e)(1). Courts disagree whether that regulation "falls within the scope of an express cause of action that Congress has already created." *Dobronski v. Selectquote Ins. Servs.*, 773 F. Supp. 3d 373, 380 (E.D. Mich. 2025) (emphasis omitted); *see id.* (concluding that 47 C.F.R. § 64.1601(e)(1) provides a private right of action via 47 U.S.C. § 227(c)); *see also id.* at 377–79 (collecting caselaw within and outside the Sixth Circuit supporting the "[m]ajority [a]pproach" that the regulation does not provide a private right of action). The court in *Dobronski* noted that "Section 64.1601(e) must have been promulgated under some part of the TCPA" (*id.* at 376 (emphasis omitted) (citing *Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 208 (1988)) and that "regulations cannot create a private right of action on their own." *Id.* at 379 (citing *Parry v. Mohawk Motors of Mich., Inc.*, 236 F.3d 299, 309 (6th Cir. 2000)). The court further observed that "[o]nly a handful of subsections of the TCPA allow for the promulgation of regulations." *Id.* at 376 (citing 47 U.S.C. § 227(b)(2), (c), (d)(1)–(3), (e)(3), (i)). The court analyzed each provision and concluded that "the only subsection with the breadth of scope to cover § 64.1601(e)" is 47 U.S.C. § 227(c). *Id.* Section 227(c) requires the Federal Communications Commission (FCC) to "compare and evaluate alternative methods and procedures (including the use of electronic databases [and] telephone network technologies[)] . . . for their effectiveness in protecting [consumer] privacy rights" and "develop proposed regulations to implement the methods and procedures that the Commission determines are most effective and efficient to accomplish the purposes of this section." 47 U.S.C. § 227(c)(A), (E). The court in *Dobronski* concluded that "[i]ntuitively, a caller ID requirement seems to use a telephone network technology to help protect privacy rights[] [a]nd [that] § 227(c) is [thus] the only possible source for § 64.1601(e)." 773 F.

Supp. 3d at 377; *see also Newell v. JR Cap., LLC*, 791 F. Supp. 3d 571, 576–78 (E.D. Pa. 2025) (analyzing provisions of 47 U.S.C. § 227 and FCC administrative history to conclude that 47 C.F.R. § 64.1601(e) was promulgated under 47 U.S.C. § 227(c) and provides a private right of action). Moreover, "it is clear in [the Sixth C]ircuit that § 227(c) creates rights of action for violations of some parts of TCPA regulations despite their lack of express linking language." *Dobronski*, 773 F. Supp. 3d at 380 (citing *Charvat v. NMP, LLC*, 656 F.3d 440, 448 (6th Cir. 2011)).

Humana argues that courts have "overwhelmingly held" that 47 C.F.R. § 64.1601(e) does not provide a private right of action. (D.N. 7, PageID.29; *see id.*, PageID.29–30 (collecting cases)) But the cases Humana cites are largely the same cases that the courts in *Dobronski* and *Newell* found unpersuasive for having concluded that 47 C.F.R. § 64.1601(e) was promulgated under 47 U.S.C. § 227(d). *Compare* D.N. 7, PageID.29–30, *with Dobronski*, 773 F. Supp. 3d at 378–79, *and Newell*, 791 F. Supp. 3d at 578. The *Dobronski* and *Newell* courts explained that 47 C.F.R. § 64.1601(e) was apparently not promulgated under 47 U.S.C. § 227(d) because § 227(d) "by its own terms governs only fax machines, automatic telephone dialing systems, and artificial or prerecorded voice systems," whereas 47 C.F.R. § 64.1601(e) "focuses on caller ID requirements for all telemarketing calls." *Dobronski*, 773 F. Supp. 3d at 378 (emphasis omitted); *see Newell*, 791 F. Supp. 3d at 579 (making the same distinction); *see also* 47 U.S.C. § 227(d). The two cases Humana cites that *Dobronski* and *Newell* did not address (*see* D.N. 7, PageID.30) are unpersuasive because they, like the other caselaw rejected in *Dobronski* and *Newell*, primarily rely on a case from the District of Maryland concluding that 47 C.F.R. § 64.1601(e) was promulgated under 47 U.S.C. § 227(d). *See Worsham v. Disc. Power*, No. RDB-20-0008, 2021 WL 3212589, at *4 (D. Md. July 29, 2021) (citing *Worsham v. Travel Options, Inc.*, No. JKB-14-2749, 2016 WL 4592373 (D. Md. Sep. 2, 2016)); *Worsham v. Direct Energy Servs., LLC*, No. SAG-20-00193, 2021

8

WL 948819, at *3 (D. Md. Mar. 12, 2021) (relying on *Travel Options*). Humana apparently argues that the Court should adopt the majority approach simply because it is the majority approach. (*See* D.N. 7, PageID.29–31) But for the reasons stated above, the Court finds the minority approach in *Dobronski* and *Newell* persuasive for the reasons set out in those decisions. In accordance with those decisions, the Court concludes that 47 C.F.R. § 64.1601(e) was promulgated under 47 U.S.C. § 227(c) and provides a private right of action. *Dobronski*, 773 F. Supp. 3d at 380; *Newell*, 791 F. Supp. 3d at 582.

Next, the Court considers whether 47 C.F.R. § 64.1601(e) applies to text messages. Subsection (e) applies to "[a]ny person or entity that engages in telemarketing." In an order accompanying that provision, the FCC "commented that it decided to 'require all sellers and telemarketers to transmit caller ID information, regardless of their calling systems.'" *Newell*, 791 F. Supp. 3d at 583 (emphasis omitted) (quoting TCPA Report and Order, 18 FCC Rec. 14014 (FCC No. 03-153) (July 3, 2003) at ¶ 179). "This shows that the FCC did not intend to limit (e)'s caller ID requirement to a specific calling system or technology but wanted it to apply broadly to telephonic telemarketing regardless of the technology used." *Id.* Moreover, caller-identification information is "information provided by a caller identification service regarding the telephone number of, or other information regarding the origination of, a call made using a voice service or *a text message sent using a text messaging service*." 47 C.F.R. § 64.1600(c) (emphasis added).

Humana nevertheless argues that 47 C.F.R. § 64.1601(a) bars subsection (e)'s application to text messages. Subsection (a) regulates communications over the "public switched telephone network" (PSTN). 47 C.F.R. § 64.1601(a). Humana argues that "text messages are not sent over the PSTN" and that the regulation thus does not apply to them. (D.N. 7, PageID.32 (citations omitted)) But as the court observed in *Newell*, "the text of the regulation itself shows that

9

subsection (a)'s criteria do not apply to (e)." 791 F. Supp. 3d at 583.  Because § 64.1601(a) states, "[e]xcept as provided in paragraphs (d) and (e) of this section," § 64.1601(a), "the FCC clearly meant that the PSTN limitations in subsection (a) do not apply to (e)." *Newell*, 791 F. Supp. 3d at 583.  Similarly, subsection (e) applies to "[a]ny person or entity that engages in telemarketing," whereas subsections (a)–(d) "apply only to telecommunications carriers or providers, defined as 'any provider of telecommunications services.'" *Id.* (quoting 47 U.S.C. § 153(51)).  Based on these observations, the Court concludes that subsection (e) is not subject to subsection (a)'s requirements.  Accordingly, 47 C.F.R. § 64.1601(e) applies to text messages. *See id.* at 584.

Finally, Humana argues that the complaint fails to demonstrate that it is directly or vicariously liable for the text messages.  (*See* D.N. 7, PageID.33–40)  Because the complaint alleges that "[Humana] and/or its affiliates, agents, and/or other persons or entities acting on [Humana's] behalf violated the TCPA" (D.N. 1, PageID.12 ¶ 67), the Court will consider whether Humana is liable under agency law. *See Harrison*, 2024 WL 4828737, at *3.  "Explicit pleading of an agency relationship is not required." *Id.* (citing *Eldridge v. Cabela's Inc.*, No. 3:16-cv-536-DJH, 2017 WL 4364205, at *5 (W.D. Ky. Sep. 29, 2017)).  "[A]n agent acts with actual authority when, at the time of taking action that has legal consequences for the principal, the agent reasonably believes, in accordance with the principal's manifestations to the agent, that the principal wishes the agent so to act." *Keating v. Peterson's Nelnet, LLC*, 615 F. App'x 365, 373 (6th Cir. 2015) (quoting Restatement (Third) of Agency § 2.01 (2006)).  A party may be liable for a third party's conduct under a theory of actual authority when "one person (a 'principal') manifests assent to another person (an 'agent') that the agent shall act on the principal's behalf and subject to the principal's control." *In re Dish Network*, 28 F.C.C. Rcd. 6574, 6586 (May 9, 2013).

10

"Actual authority may be express or implied." *Jewell*, 2024 WL 203972, at *4 (citing *Bergin Fin., Inc. v. First Am. Title Co.*, 397 F. App'x 119, 124 (6th Cir. 2010)).

According to the complaint, the Humana agent, Adria Lucas, called Carr at the number placed on the do-not-call registry and stated a desire to "get [Carr] some help," even though Carr had used a different line to connect with a different Humana agent, Ronela Baijal, via text messages that did not mention Humana. (*See* D.N. 1, PageID.6 ¶¶ 28–34) Based on these allegations, Carr has sufficiently alleged implied actual authority between Humana and a purported agent that sent the text messages. *See Jewell*, 2024 WL 203972, at *1, *4 (finding implied actual authority where plaintiff received call from telemarketing agency "on behalf of Magnolia" and was transferred to "one of Magnolia's employees, who accepted the call and later called twice more"); *Cunningham v. Rapid Response Monitoring Servs., Inc.*, 251 F. Supp. 3d 1187, 1199 (M.D. Tenn. 2017) (finding implied authority where plaintiff "alleged an unlawful telemarketing scheme . . . [and that the defendant] was an active participant in that scheme" despite "not alleg[ing] every detail of the relationship between the Defendants"); *Landy v. Nat. Power Sources, LLC*, No. 3:21-cv-00425-PGS-TJB, 2022 WL 797967, at *3 (D.N.J. Mar. 16, 2022) (finding sufficient allegation of agency relationship based on the "smooth transfer from the initial [automatic telephone dialing system] contact" to defendant's live agents and based on defendant's "accepting the call[] and following up with an email after the call").

Because "[t]he question of whether implied authority may have existed would require the Court to know more about the course of" Humana's dealings with an alleged third party, "[s]uch [a] question[] of fact would be inappropriate for resolution on a motion to dismiss." *Cunningham*, 251 F. Supp. 3d at 1199. And at this stage, Carr need not identify the purported third-party agent who sent the text messages. *See Harrison*, 2024 WL 4828737, at *3 ("[I]t would otherwise be

11

impossible for [the plaintiff] to know of the alleged caller's relationship with Humana—if any—without discovery."). Carr has provided "factual content that allows the court to draw the reasonable inference that [Humana] is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citation omitted). The Court will therefore deny the motion to dismiss as to the second count.

Because the complaint sufficiently alleges that Humana may be liable under implied actual authority, the Court need not consider Humana's additional arguments as to whether it is liable under a direct-agency theory, apparent authority, or ratification (*see* D.N. 7, PageID.34–40). *See Jewell*, 2024 WL 203972, at *4 (declining to consider apparent authority and ratification after concluding that "the claim moves forward on a theory of implied actual authority"); *Harrison*, 2024 WL 4828737, at *4 (taking the same approach after denying motion to dismiss based on sufficient allegation of apparent authority). And because Carr's claims will proceed, the Court finds the motion to file a notice of supplemental authority (D.N. 27) unnecessary to resolve the motion to dismiss and will therefore deny it as moot.

### III.

For the reasons set forth above, and the Court being otherwise sufficiently advised, it is hereby

**ORDERED** as follows:

(1)     Humana's motion to dismiss (D.N. 7) is **DENIED**.

(2)     Carr's motion to file a notice of supplemental authority (D.N. 27) is **DENIED** as moot.

(3)     Pursuant to 28 U.S.C. § 636(b)(1)(A), this matter is **REFERRED** to U.S. Magistrate Judge Regina S. Edwards for resolution of all litigation planning issues, entry of scheduling orders, consideration of amendments thereto, and resolution of all non-dispositive

matters, including discovery issues.  Judge Edwards is further authorized to conduct a settlement conference in this matter at any time.

March 23, 2026

David J. Hale, Chief Judge
United States District Court

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO
### Judge Daniel D. Domenico

Civil Action No. 1:24-cv-03231-DDD-KAS

SHANE SCOFIELD, individual and on behalf of all others similarly
    situated,

    Plaintiff,

v.

ALLEVIATE TAX LLC,

    Defendant.

---

## ORDER
## DENYING MOTION TO DISMISS AND MOTION TO STRIKE

---

Defendant Alleviate Tax LLC moves both to dismiss the plaintiff's putative class-action complaint and to strike his proposed class definition. Docs. 15, 16. Because the motion to dismiss is premised on a factual dispute that would be inappropriate to resolve at this stage of the litigation, and because Alleviate has not shown that class certification would be impossible, both motions are denied.

### BACKGROUND

Plaintiff Shane Scofield alleges that on February 15, 2024, he received a call on his "residential cellular" phone from a number identified as 706-998-5526. Doc. 1 ¶ 22. He did not answer, and he received a voicemail stating the following:

> This is an important update from the Tax Relief Centre. According to our records, you may still have an existing state or federal tax balance that needs to be addressed. The new 2024 Advantage Tax Relief Fund is now available to small businesses like yourself. The Advantage Tax Relief Program is designed to reduce your tax debt by up to

- 1 -

> 100 percent, and it simply requires a brief five-to-ten-mi-
> nute phone consultation. There is no personal information
> required, but the funding for this program is only expected
> to be available through the end of this month. It is impera-
> tive that you call today to secure your position and deter-
> mine your eligibility. Call us back now at 888-355-2972 and
> ask to speak with one of our certified tax relief specialists.
> Again, that number is 888-355-2972.

*Id.* ¶ 23. Mr. Scofield alleges that "the call was clearly pre-recorded be-
cause (a) the call was obviously scripted, (b) the recording had a generic,
monotone, robotic voice, (c) was likely generated using a computer text-
to-speech program, and (d) other callers received the same exact pre-
recorded message." *Id.* ¶ 24. He also alleges that "the well-respected app
RoboKiller identified other users who received the same exact pre-rec-
orded message from the same exact phone number at the time." *Id.* ¶ 25
(citing *(706) 998-5526 – RoboKiller Lookup*, RoboKiller (Mar. 4, 2024),
https://web.archive.org/web/20240304224252/https://lookup.robokiller.
com/p/706-998-5526).

Mr. Scofield then called the 888 number "provided on the message to
identify the identity of the caller who was calling him illegally and for
no other reason." *Id.* ¶ 26. A male answered the call and asked if the
plaintiff was interested in tax-assistance services. *Id.* ¶ 27. Eventually,
the person who answered "identified his company as Alleviate Tax." *Id.*

Mr. Scofield alleges that the phone number at which he received the
call was on the National Do Not Call Registry for more than a year prior
to the call at issue. *Id.* ¶ 17. He alleges he uses the phone number "for
personal, residential, and household reasons," that the number "is not
associated with a business," that he "never consented to receive calls
from Defendant," and that he "never did business with the Defendant."
*Id.* ¶¶ 18-21. He alleges that the call was an unwanted, nonconsensual
encounter, and that he never provided his consent for or requested the

- 2 -

call. *Id.* ¶¶ 28-31. He alleges that his "privacy has been violated by the above-described telemarketing call." *Id.* ¶ 30.

Based on these allegedly improper communications, Mr. Scofield brings one claim for violation of the Telephone Consumer Protection Act, which prohibits making telephone calls using an artificial or prerecorded voice to a cellular or residential telephone number without the prior express consent of the called party. *Id.* ¶¶ 48-52; 47 U.S.C. § 227(b)(1). He brings this claim on a class-action basis, on behalf of all others who received identical or substantially similar prerecorded telephone calls from Alleviate or its agents. Doc. 1 ¶¶ 33-47. Alleviate moves to dismiss Mr. Scofield's claim and to strike his class allegations. Docs. 15, 16.

## APPLICABLE LAW

A motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) requires a court to "determine whether the complaint sufficiently alleges facts supporting all the elements necessary to establish an entitlement to relief under the legal theory proposed." *Forest Guardians v. Forsgren*, 478 F.3d 1149, 1160 (10th Cir. 2007). In doing so, the court "must accept all the well-pleaded allegations of the complaint as true and must construe them in the light most favorable to the plaintiff." *Alvarado v. KOB-TV, LLC*, 493 F.3d 1210, 1215 (10th Cir. 2007). "The burden is on the plaintiff to frame a 'complaint with enough factual matter (taken as true) to suggest' that he or she is entitled to relief." *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. "Mere 'labels and conclusions' and 'a formulaic recitation of the elements of a cause of action' will not suffice." *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th

Cir. 2012) (quoting *Twombly,* 550 U.S. at 555). A court will "disregard conclusory statements and look only to whether the remaining, factual allegations plausibly suggest the defendant is liable." *Id.* At this stage, the well-pleaded facts underlying a plaintiff's allegations must articulate a viable legal claim. *See Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009); *Twombly*, 550 U.S. at 555.

## DISCUSSION

### I.  Motion to Dismiss

The crux of Alleviate's motion to dismiss is that Mr. Scofield "fails to establish any clear connection between Alleviate and the alleged violation." Doc. 15 at 2; *see also* Doc. 39 at 2 ("Plaintiff has failed to trace the 706-number back to Alleviate . . . ."). Alleviate contends that without making that connection, Mr. Scofield cannot satisfy the requirement of the Telephone Consumer Protection Act that a plaintiff must show that the defendant "ma[d]e" or "initiate[d]" the calls in question. *See* 47 U.S.C. § 227(b)(1)(A), (B); 47 C.F.R. § 64.1200(a)(1), (3).

Alleviate is right about the legal requirement, but wrong that the complaint is insufficient to satisfy it at the motion-to-dismiss stage. The complaint alleges that Mr. Scofield received a call and a resulting voicemail that urged him to call a number, and that the person who answered that number identified "his company" as Alleviate. Doc. 1 ¶¶ 22-27. Taking these allegations as true, as I must at this stage, and making all reasonable inferences in favor of Mr. Scofield, as I also must at this stage, this is sufficient to allow a reasonable juror to infer that Alleviate was responsible for—that is, made or initiated—the call. *See Alvarado*, 493 F.3d at 1215.

It may be true, as Alleviate argues, that it was not actually behind the call. Perhaps the person who answered the call was mistaken or lied

- 4 -

about who he was working for; perhaps Mr. Scofield's account of the call is inaccurate; perhaps some other company paid for a call that was attributed to Alleviate. Those are all possibilities. If Alleviate can show that one of them is true, and that it did not actually cause the call to be made, it can win the case. And if, as Alleviate contends, the plaintiff cannot find any evidence to support his assertion that Alleviate is associated with the phone numbers or phone calls, then it can also win the case. But those are material factual disputes that cannot be resolved at this stage, at least without converting the motion to one for summary judgment. *See* Fed. R. Civ. P 12(d).

Even if it were proper to consider Alleviate's argument that it is not connected to the number that appeared on Mr. Scofield's caller ID, that would not change the outcome. Phone numbers are easily spoofed, and making a call appear to come from a number other than the one belonging to the actual caller is hardly unheard-of, especially in the robocalling world. Likewise, the argument that there is nothing to support the claim that the call was made by an agent of Alleviate is unpersuasive. The allegation is that the person who answered the number left in the robocall's voicemail said that he was doing so on Alleviate's behalf. Mr. Scofield may be unable to prove that down the road, but for now that is not his burden. He has plausibly alleged it, and that is sufficient to defeat a motion to dismiss. *See Iqbal*, 556 U.S. at 678 (plaintiff clears "the line between possibility and plausibility" if he "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged").

Taking as true Mr. Scofield's allegations regarding the nature of his telephone number, the nature of the voicemail, and that he did not provide prior consent to the call, it is certainly reasonable to infer that the call he received was a "call (other than a call made for emergency

- 5 -

purposes or made with the prior express consent of the called party) us-
ing . . . an artificial or prerecorded voice . . . to a[] telephone number as-
signed to a . . . cellular telephone service" and a "call to a[] residential
telephone line using an artificial or prerecorded voice to deliver a mes-
sage without the prior express consent of the called party." 47 U.S.C.
§ 227(b)(1)(A)(iii), (b)(1)(B); *see Klassen v. Solid Quote LLC*, 702 F.
Supp. 3d 1052, 1056-57 (D. Colo. 2023) (telephone number may be both
cellular and residential); *see also, e.g.*, *Chesbro v. Best Buy Stores, L.P.*,
705 F.3d 913, 918 (9th Cir. 2012) (approaching interpretation of Sec-
tion 227 "with a measure of common sense"). Mr. Scofield has thus met
his burden to plead a claim that is viable under the Telephone Consumer
Protection Act. *See* 47 U.S.C. § 227(b)(3) (providing private cause of ac-
tion for violations of the Act). Alleviate's motion to dismiss therefore is
denied.

## II. Motion to Strike Class Allegations

"[M]otions to strike class allegations before discovery commences . . .
are generally disfavored." *Cleary v. Whole Foods Mkt. Rocky Moun-
tain/southwest L.P.*, No. 15-cv-01247-MEH, 2016 WL 7048899, at *2
(D. Colo. Dec. 5, 2016). "In most circumstances, it is appropriate for
courts to allow discovery before determining whether class certification
is appropriate." *Id.* (quoting *Wornicki v. Brokerpriceopinion.com, Inc.*,
No. 13-cv-03258-PAB-KMT, 2015 WL 1403814, at *4 (D. Colo.
Mar. 23, 2015)). "[C]ourts in this District have held that the '[d]efendant
must demonstrate from the face of the plaintiffs' complaint that it will
be *impossible* to certify the classes alleged by the plaintiffs regardless of
the facts the plaintiffs may be able to prove.'" *Id.* (quoting *Francis v.
Mead Johnson & Co.*, No. 1:10-cv-00701-JLK, 2010 WL 3733023, at *1
(D. Colo. Sept. 16, 2010)).

Alleviate has not shown that class certification is impossible here. It is correct that literally read, the class allegations would include individuals who consented to receive messages. *See* Doc. 1 ¶ 33. Since those messages would not violate the Telephone Consumer Protection Act, the proposed class definition is overbroad and may not satisfy Rule 23's commonality requirement. But, as I noted in denying similar motions in a similar case brought under the Act, that is an issue that is more appropriate for resolution at the certification stage than on the pleadings. *Hudson v. Homeadvisor, Inc.*, 348 F.R.D. 690, 693 (D. Colo. 2025). As noted in *Hudson*, that is especially so given that the private right of action here "'offers many advantages for class-wide adjudication,' and any issues with the current class definition can likely be cured at a later time." *Id.* (quoting *Krakauer v. Dish Network, LLC*, 925 F.3d 643, 655 (4th Cir. 2019) (noting that plaintiff suing under the Act "is likely to be in the same position as a great many other people and can rely largely on common proof to make out his claim")).

Alleviate's other arguments are unpersuasive. Most of those arguments restate the motion to dismiss and are rejected for the same reasons discussed above. Nor do I agree that the class allegations are impermissibly vague. To the extent that what constitutes a "substantially similar pre-recorded message" might be unclear at this stage, it is likely to be cleared up through discovery and does not render the allegations so vague as to be impossible to prove. Likewise, figuring out what might constitute "telemarketing" does not strike me as impossible.

I am also puzzled by the argument that the complaint seeks to expand the class beyond the four-year statute of limitations. The proposed class defined in the complaint includes those who received calls "from four years prior to the filing date of this Complaint through trial." Doc. 1 ¶ 33. The first cutoff then matches the statute of limitations. *See* 28

U.S.C. § 1658(a). The latter aspect seems to be what Alleviate is actually concerned about, arguing that allowing the class to continue to accrue members after the filing of the suit is unfair because it would deprive Alleviate of notice about "the subject matter, size, and character of the class." Doc. 40 at 6. Perhaps as to the size of the class, the proposed language might add some uncertainty. But that is only if Alleviate has continued (as the plaintiff alleges) to engage in the same challenged behavior after the filing of this case, in which case it would know how large the potential addition to the class might be. More to the legal point, Alleviate has not pointed me to any authority that holds that a statute of limitations bars claims that are brought based on facts that are *too recent*, which is its objection here.

For all these reasons, the motion to strike is denied.

## CONCLUSION

It is **ORDERED** that Defendant's Rule 12(b)(6) Motion to Dismiss, **Doc. 15**, and Defendant's Motion to Strike Class Allegations, **Doc. 16**, are **DENIED**.

DATED: September 18, 2025      BY THE COURT:

Daniel D. Domenico
United States District Judge

- 8 -