# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **KELLY BLAND,** individually and on behalf of all others similarly situated, | Case No. 1:26-cv-00659 |
| *Plaintiff,* | **CLASS ACTION** |
| *v.* | **JURY TRIAL DEMANDED** |
| **HUMANA INC.** | |
| *Defendant.* | |

## PLAINTIFF'S OPPOSITION TO THE
## MOTION TO STRIKE CLASS ALLEGATIONS

## CONTENTS

**INTRODUCTION**..................................................................................................1

**STATEMENT OF QUESTIONS INVOLVED**.....................................................1

**BACKGROUND** ..................................................................................................2

**LEGAL STANDARD** .........................................................................................5

**ARGUMENT** ......................................................................................................6

    I.    The Motion is Procedurally Improper, as the Eastern District has Already Found in Response to a Similar Motion Filed by the Same Law Firm..................6

    II.   Striking Class Allegations Without Discovery is Premature. ........................7

    III.    Plaintiff's Class Claims Must Not Be Struck Because Plaintiff Does Not Plead Overly Broad Classes. ....................................................................................10

        a.    Individuals do not have to personally register their numbers on the National Do Not Call Registry..................................................................................11

        b.    Possible consent does not render the classes overly broad. ........................13

    IV.   There Exist Common Questions of Law or Fact Applicable to the Classes. 17

    V.  The Class is Defined Through Reference to Objective Criteria.....................19

**CONCLUSION**...................................................................................................20

## TABLE OF AUTHORITIES

*Page(s)*

**CASES**

*Aetna Life Ins. Co. v. Alla Med. Servs., Inc.*, 855 F.2d 1470 (9th Cir. 1988)............7

*Baccari v. Carguard Admin., Inc.*, No. 22-CV-1952, 2022 WL 3213839 (E.D. Pa. Aug. 8, 2022) .......................................................................................6, 7

*Berman v. Freedom Fin. Network, LLC*, 400 F. Supp. 3d 964 (N.D. Cal. 2019)....16

*Boyer v. Diversified Consultants, Inc.*, 306 F.R.D. 536 (E.D. Mich. 2015)............16

*Callier v. Am.-Amicable Life Ins. Co. of Texas*, No. EP-22-CV-00018-FM, 2022 WL 17732717 (W.D. Tex. Oct. 18, 2022).....................................................13

*Chesbro v. Best Buy Stores, L.P.*, 705 F.3d 913 (9th Cir. 2012) .............................20

*Coffey v. Fast Easy Offer, LLC*, --- F.4th ---, No. 25-4066, 2026 WL 1614175 (9th Cir. June 4, 2026)................................................................................19, 20

*Fishon v. Mars Petcare US, Inc.*, 501 F. Supp. 3d 555 (M.D. Tenn. 2020)..............6

*Gager v. Dell Fin. Servs., LLC*, 727 F.3d 265 (3d Cir. 2013) ..................................7

*Johnson v. Ally Fin. Inc.*, No. 1:16-CV-1100, 2017 WL 3433689 (M.D. Pa. Aug. 10, 2017) ...................................................................................................11

*Klassen v. Solid Quote LLC*, No. 23-CV-00318-GPG-NRN, 2023 WL 7544185 (D. Colo. Nov. 14, 2023) ..........................................................................13

*Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643 (4th Cir. 2019)....................3, 8, 11

*Martinez v. TD Bank USA, N.A.*, No. CV 15-7712(JBS/AMD), 2017 WL 2829601 (D.N.J. June 30, 2017) ...................................................................16

*Meyer v. Portfolio Recovery Assocs., LLC*, 707 F.3d 1036 (9th Cir. 2012)............16

*Murch v. GPS Cap. Mkts., LLC*, 2025 U.S. Dist. LEXIS 169651 (D. Or. June 6, 2025) ...............................................................................................13

*Nichols v. eHealthInsurance Servs.*, 2025 U.S. Dist. LEXIS 37917 (N.D. Cal., March 3, 2025)........................................................................................13

*Ott v. Mortg. Inv'rs Corp. of Ohio, Inc.*, 65 F. Supp. 3d 1046 (D. Or. 2014) .........14

*Panacci v. A1 Solar Power, Inc.*, No. 15-cv-00532-JCS, 2015 WL 3750112 (N.D. Cal. June 15, 2015) ...............................................................................8, 9

*Rombough v. Robert D. Smith Ins. Agency, Inc.*, No. 22-CV-15-CJW-MAR, 2022 WL 2713278 (N.D. Iowa June 9, 2022) ................................................12, 13

*Rosenberg v. LoanDepot.com LLC*, 435 F. Supp. 3d 308 (D. Mass. 2020) ............15

*Sandusky Wellness Ctr., LLC v. Wagner Wellness, Inc.*, No. 3:12 CV 2257, 2014 WL 6750690 (N.D. Ohio Dec. 1, 2014) .......................................................10

*Sauter v. CVS Pharmacy, Inc.*, No. 2:13-CV-846, 2014 WL 1814076 (S.D. Ohio May 7, 2014)................................................................................8, 9, 16

*Starling v. HomeOver General Contractors*, 2026 WL 1649101 (E.D. Tex. June 8, 2026) ...............................................................................................17

*Wal-Mart*, 564 U.S. 350...........................................................................................18

*Watson v. Manhattan Luxury Automobiles, Inc.*, No. 20 CIV. 4572 (LGS), 2022 WL 4586407 (S.D.N.Y. Sept. 29, 2022) ...................................................15

iii

*Zyburo v. NCSPlus, Inc.*, 44 F. Supp. 3d 500 (S.D.N.Y. 2014) ...............................16

**STATUTES**

Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, 105 Stat. 2394 (1991)...............................................................................................................2

47 U.S.C. § 227 ...........................................................................................................2, 3

47 U.S.C. § 227(a)(4)....................................................................................................20

**RULES**

Fed. R. Civ. P. 12 .........................................................................................................6, 7

Fed. R. Civ. P. 12(b)(6)................................................................................................6, 7

Fed. R. Civ. P. 12(f) ..................................................................................................5, 6, 7

Fed. R. Civ. P. 12(f)(2) ...................................................................................................6

Fed. R. Civ. P. 12(g)(2)...............................................................................................6, 7

Fed. R. Civ. P. 12(h)(2).................................................................................................7

Fed. R. Civ. P. 12(h)(3).................................................................................................7

Fed. R. Civ. P. 23 ........................................................................................................11

Fed. R. Civ. P. 23(a)(2).................................................................................................18

Local Rule 7.8(b)(2)......................................................................................................21

**REGULATIONS**

16 C.F.R. § 310.4(b)(iii)(B) ...........................................................................................3

47 C.F.R. § 64.1200(c)(2) ..........................................................................................2, 12

**OTHER AUTHORITIES**

5C Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* §§ 1384, 1385, 1388 (3d ed. 2022)..................................................................................7

*In re Rules* ("2003 TCPA Order"), CG Docket No. 02-278, Report and Order, 18 FCC Rcd. 14014 ......................................................................................................12

## INTRODUCTION

Defendant Humana Inc.'s ("Humana" or "Defendant") motion to strike class allegations (ECF No. 13 ("Motion")) must be denied because Plaintiff's proposed class definitions are by no means overly broad. Moreover, the classes, alleging illegal telemarketing conduct directed at individuals on the National Do Not Call Registry and others who received calls with falsified caller ID information or after opting out, are the hallmark of commonality, as courts have held with respect to similar TCPA class actions, including allowing them to proceed beyond the pleadings stage. Multiple courts across the country have rejected identical arguments that similar classes should be stricken because they are allegedly uncertifiable. Defendant's motion should therefore be denied in its entirety.

## STATEMENT OF QUESTIONS INVOLVED

1.    Whether Humana's motion to strike class allegations is procedurally improper?

> *Suggested Answer: Yes.*
> *Anticipated Response: No.*

2.    Whether the Court should strike Plaintiff's class allegations on the pleadings and before any class discovery, where class determinations are enmeshed with the merits, the TCPA is a remedial statute construed to benefit consumers, and

Humana can prevail only by showing that no set of facts could support certification?

> *Suggested Answer: No.*
> *Anticipated Response Yes.*

## BACKGROUND

Telemarketing calls are intrusive. A great many people object to these calls, which interfere with their lives, tie up their phone lines, and cause confusion and disruption on phone records. Faced with growing public criticism of abusive telephone marketing practices, Congress enacted the Telephone Consumer Protection Act of 1991. Pub. L. No. 102-243, 105 Stat. 2394 (1991) (codified at 47 U.S.C. § 227). As Congress explained, the law was a response to Americans 'outraged over the proliferation of intrusive, nuisance calls to their homes from telemarketers' *id.* § 2(6), and sought to strike a balance between '[i]ndividuals' privacy rights, public safety interests, and commercial freedoms' *id.* § 2(9).

The law opted for a consumer-driven process that would allow objecting individuals to prevent unwanted calls to their homes. The result of the telemarketing regulations was the national Do-Not-Call registry. *See* 47 C.F.R. § 64.1200(c)(2). Within the federal government's web of indecipherable acronyms and byzantine programs, the Do-Not-Call registry stands out as a model of clarity. It means what it says. If a person wishes to no longer receive telephone

2

solicitations, he can add his number to the list. The TCPA then restricts the telephone solicitations that can be made to that number. *See id.*; 16 C.F.R. § 310.4(b)(iii)(B). Private suits can seek either monetary or injunctive relief. *Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643, 649 (4th Cir. 2019). "This private cause of action is a straightforward provision designed to achieve a straightforward result." *Id.* at 650. "Congress enacted the law to protect against invasions of privacy that were harming people." *Id.* "The law empowers each person to protect his own personal rights." *Id.* "Violations of the law are clear, as is the remedy." *Id.* "Put simply, the TCPA affords relief to those persons who, despite efforts to avoid it, have suffered an intrusion upon their domestic peace." *Id.*

Plaintiff Kelly Bland alleges that Humana, through its agent, made unsolicited telemarketing calls to her and others without their prior express written consent, to numbers on the National Do Not Call Registry, and using spoofed caller identification information that prevented call recipients from identifying the caller or making do-not-call requests. Compl. ¶¶ 1-2, 32-49. Plaintiff's telephone number has been registered on the National Do Not Call Registry. Compl. ¶ 35.

Beginning on February 1, 2025, Plaintiff began receiving unsolicited telemarketing calls. Compl. ¶ 33. On that date, Plaintiff received a call from a caller falsely representing a fictitious company called the "Medicare Help Centre" using a spoofed caller ID number (208-252-3862). *Id.* Plaintiff instructed the caller

3

to stop calling. *Id.* On September 18, 2025, Plaintiff missed a call from another spoofed caller ID number (817-786-1954). Compl. ¶ 34. On October 16, 2025, Plaintiff received yet another call from a different, but similar, spoofed caller ID (817-786-1166), with the caller again claiming to represent "Medicare Help Centre." Compl. ¶¶ 36-37. That call was ultimately transferred to Hassan Rashid, a licensed Humana Medicare agent who attempted to sell Plaintiff a Humana Medicare insurance policy. Compl. ¶ 42. When Plaintiff confronted the Humana agent about the calls, the agent explained that he had hired a telemarketing vendor that "went rogue." Compl. ¶ 43.

Plaintiff further alleges that the calls were "spoofed." The September and October calls were from telemarketers utilizing inaccurate Caller ID Name ("CNAM") functionality because they were "spoofed," displaying names such as "POCATELLO ID," "MPHASIS," and "PRIVATE", to conceal the caller's true identity. Compl. ¶¶ 46-47. These "spoofed" numbers prevented Plaintiff from calling back and lodging a do-not-call request, because, by definition, the spoofed calls transmitted a caller ID other than that of the actual caller. Compl. ¶ 49. Plaintiff's calls constitute telemarketing and/or advertising under the TCPA because they were placed for the purpose of promoting Humana's Medicare insurance goods or services. Compl. ¶¶ 36-42.

Due to the *en masse* nature of telemarketing, Plaintiff has filed this matter as a putative class action seeking to represent the following classes:

**National DNC Class**: All persons in the United States whose (1) telephone numbers were on the National Do Not Call Registry for at least 31 days, (2) but who received more than one telemarketing call from or on behalf of Defendant encouraging the purchase of Humana Inc.'s goods or services, (3) within a 12-month period (4) at any time in the period that begins four years before the date of filing this Complaint to trial.

**Telemarketing Caller ID Class**: All persons within the United States to whom: (1) Defendant (or a third-party acting on behalf of Defendant) sent (2) two or more telemarketing calls in a 12-month period, (3) which either (a) did not transmit caller identification information that included either CPN or ANI and the Defendant's or telemarketer's name, (b) did not transmit a valid CPN or ANI at all, or (c) transmitted a CPN or ANI that would not have allowed an individual to make a do not call request during regular business hours, (4) within the four years prior to the filing of the Complaint.

**Internal Do Not Call Class**: All persons within the United States to whom: (1) Defendant[] (or a third-party acting on behalf of Defendant) sent (2) two or more telemarketing calls in a 12-month period, (3) who were not current customers of the Defendant at the time of the calls, (4) who had previously asked for the calls to stop and (5) within the four years prior to the filing of the Complaint.

Compl. ¶ 56.

## LEGAL STANDARD

Rule 12(f) provides that the court may "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter," either on

its own or on motion made by a party before responding to the pleading, such as the Complaint, as here. Fed. R. Civ. P. 12(f), (f)(2). However, the Rule 12(f) device is used rarely and is particularly disfavored, applying, by its very definition, to "redundant, immaterial, impertinent, or scandalous matter." Indeed, counsel for the Plaintiff has identified only a handful of cases addressing the Rule 12(f) device in the context of striking class allegations in this district and Circuit. The standard adopted in these cases is, as Defendant concedes, akin to that under Rule 12(b)(6), permitting striking class allegations only in cases where the court is convinced that "any questions of law are clear and not in dispute" and that "no set of circumstances" put forth at the pleadings stage would permit a class to be certified on the basis set forth in the complaint. *Fishon v. Mars Petcare US, Inc.*, 501 F. Supp. 3d 555, 575–76 (M.D. Tenn. 2020) (collecting cases).

## ARGUMENT

I.     **The Motion is Procedurally Improper, as the Eastern District has Already Found in Response to a Similar Motion Filed by the Same Law Firm.**

In denying a similar motion in a suit filed by the same lawyers that represent the Plaintiff here, Judge Beetlestone of the Eastern District had held:

> As an initial matter, Carguard's Motion to Strike pursuant to Federal Rule of Civil Procedure is untimely because it falls afoul of Federal Rule of Civil Procedure 12(g)(2), which provides that "[e]xcept as provided in Rule 12(h)(2) or (3), a party that makes *a motion under this rule* must not make *another motion under this rule* raising a defense or

6

objection that was available to the party but omitted from its earlier motion." Fed. R. Civ. P. 12 (emphasis added) . . . The purpose of the Rule is "to prevent [] dilatory motion practice . . . a course of conduct that was pursued often for the sole purpose of delay." 5C Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1384 (3d ed. 2022); *see also Aetna Life Ins. Co. v. Alla Med. Servs., Inc.*, 855 F.2d 1470, 1475 n.2 (9th Cir. 1988) (noting that the purpose of Rule 12(g) is "simple and basic: a series of motions should not be permitted because that results in delay and encourages dilatory tactics"). Consequently, "the right to raise [Rule 12] defenses [and objections] by preliminary [*4]  motion is lost when the defendant neglects to consolidate them in his initial motion." Wright & Miller, *supra* at § 1385.

A motion to strike is "a motion under" Rule 12; specifically, a motion to strike is one made under Rule 12(f). *See* Fed. R. Civ. P. 12(f); *see also* Wright & Miller, *supra* at § 1388 ("Motions to strike . . . are motions under Rule 12 and thus clearly are within the language of subdivision (g)."). Because Carguard filed a separate motion to strike *after* it already filed a motion to dismiss pursuant to Rule 12(b)(6), it has failed to comply with Rule 12(g)'s mandate to consolidate all motions "available to [it]" into a single motion.

*Baccari v. Carguard Admin., Inc.*, No. 22-CV-1952, 2022 WL 3213839, at *1 (E.D. Pa. Aug. 8, 2022) (cleaned up). Here, Defendant filed a motion to strike class allegations, at ECF 8, *after* it had filed a motion to dismiss, at ECF 7. That is procedurally improper, and, as *Baccari* counsels, warrants denial of the motion. This Court should hold the same.

## II. Striking Class Allegations Without Discovery is Premature.

Significantly, "because the TCPA is a remedial statute, it should be construed to benefit consumers." *Gager v. Dell Fin. Servs., LLC*, 727 F.3d 265, 271 (3d Cir. 2013). "Courts should exercise caution when striking class action allegations based

7

solely on the pleadings, because class determination generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action." *Sauter v. CVS Pharmacy, Inc.*, No. 2:13-CV-846, 2014 WL 1814076, at *2 (S.D. Ohio May 7, 2014) (cleaned up).

In essence, Humana asks this Court to hold, as a matter of law, that a TCPA class is not ascertainable. As the Fourth Circuit explained:

> In enacting the law, Congress sought to deter an activity that, while pernicious and disruptive, does not trigger extensive liability in any single case. Since few individuals would have an incentive to bring suit, no matter how frustrated they were with the intrusion on their privacy, the TCPA opted for a model that allows for resolution of issues without extensive individual complications.

*Krakauer*, 925 F.3d at 656 (noting that "the TCPA clearly supports class-wide resolution"). Indeed, courts around the country have certified numerous class actions based on violations of the TCPA.

Nor is the Plaintiff's class fail-safe, despite Defendant seemingly wanting Plaintiff to plead an impermissibly fail-safe class. A class is not fail-safe if "[m]embership … can be determined without reaching any legal conclusions[.] [T]o determine whether someone is in the class, one simply needs to answer questions … determined by objective criteria." *Panacci v. A1 Solar Power, Inc.*, No. 15-cv-00532-JCS, 2015 WL 3750112, at *8 (N.D. Cal. June 15, 2015). Contrary to what Defendant argues, to determine class membership in this case, the Court will ask the following series of objective, factual questions:

- Did Humana, or a vendor acting on its behalf, place calls to numbers on the National Do Not Call Registry?
- Were those numbers called two or more times in a 12-month period?
- Did Humana, or a vendor acting on its behalf, place two or more calls using spoofed or inaccurate caller identification information within a 12-month period?
- Did Humana, or a vendor acting on its behalf, continue to call individuals after they had requested that calls stop?
- Does Defendant claim to have obtained consent to call class members in the same manner Defendant claims to have obtained consent to call Plaintiff?

*See Panacci*, 2015 WL 3750112, at \*8–9 (finding that the plaintiff's proposed class was not fail-safe because "one simply needs to answer questions such as whether the person is on a DNC registry or whether the person received a certain number of phone calls from Defendants within a certain timeframe.").

Humana claims that the issue of whether or not it had consent or an established business relationship to contact consumers will create mini-trials. But, "[c]ourts should exercise caution when striking class action allegations based solely on the pleadings, because class determination generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action." *Sauter v. CVS Pharmacy, Inc.*, No. 2:13-CV-846, 2014 WL 1814076, at \*2 (S.D. Ohio May 7, 2014).

Indeed, courts around the country have certified numerous class actions based on violations of the TCPA, including on disputed, uniform legal issues of

consent. Unsurprisingly, courts routinely find class actions to be the superior method of adjudicating claims in the TCPA context:

> This type of case weighs in favor of the class action as a superior device. Under the TCPA, the maximum recovery for each class member is $1,500, and it does not allow for fee shifting. Hence, individual class members are unlikely to litigate TCPA claims. Second, in finding federal courts have concurrent jurisdiction with state courts over TCPA actions, the Supreme Court effectively found that Congress did not intend state small claims courts to be the sole forum for TCPA claims.

*Sandusky Wellness Ctr., LLC v. Wagner Wellness, Inc.*, No. 3:12 CV 2257, 2014 WL 6750690, at *6 (N.D. Ohio Dec. 1, 2014) (cleaned up). At bottom, given that courts regularly certify TCPA class actions, Defendant's suggestion that the Plaintiff cannot meet the elements necessary to certify her proposed TCPA classes is not credible.

**III.    Plaintiff's Class Claims Must Not Be Struck Because Plaintiff Does Not Plead Overly Broad Classes.**

Defendant advances three main arguments for why it contends that the proposed classes are overly broad. First, Humana claims that the National DNC Class is overly broad because some members may not have *personally* registered their number on the National Do Not Call Registry. Second, Defendant claims the National DNC Class and Internal DNC Class are overly broad because some members may have consented or had an established business relationship with Humana. Third, in a different section, Defendant argues that all three class

10

definitions are impermissibly merits-based because membership turns on whether a call constituted "telemarketing." Each of these arguments fails, particularly because "the ascertainability analysis is exceedingly narrow and wholly distinct from other class certification requirements." *Johnson v. Ally Fin. Inc.*, No. 1:16-CV-1100, 2017 WL 3433689, at *3 (M.D. Pa. Aug. 10, 2017).

> Indeed, as the Fourth Circuit Court of Appeals explained in *Krakauer*:

> [T]he class certified by the district court easily meets the demands of Rule 23. First, the class members are ascertainable. As we previously explained, class litigation should not move forward when a court cannot identify class members without "extensive and individualized fact-finding or 'mini-trials.'" The goal is not to "identify every class member at the time of certification," *id.*, but to define a class in such a way as to ensure that there will be some "administratively feasible [way] for the court to determine whether a particular individual is a member" at some point. *Id.* The class-wide data obviated any concern on this score. The records in this case clearly showed when calls were placed and whether the call went through. . . . The class members could therefore be identified on a large-scale basis, and notified of the class action accordingly.

*Krakauer*, 925 F.3d at 658 (cleaned up). In discovery, Plaintiff will seek the same "class-wide data" referenced in *Krakauer* to identify putative class members.

### a. Individuals do not have to personally register their numbers on the National Do Not Call Registry.

The provisions of the TCPA do not require that one *personally register* their number on the Do Not Call Registry because that fact would be *impossible to prove*, as the FTC is neither authorized to nor collects such information. For that

11

matter, such a holding would also run afoul of the 2003 TCPA Order establishing the Registry, which explicitly noted that "the only consumer information telemarketers and sellers will receive from the national registry is the registrant's telephone number. *This is the minimum amount of information that can be provided* to implement the national registry." *In re Rules* ("2003 TCPA Order"), CG Docket No. 02-278, Report and Order, 18 FCC Rcd. 14014, 14037 (emphasis added). Registering a telephone number on the Registry does not require the provision of any personally identifiable information. Thus, as an initial matter, the government is *not even authorized* to collect the information the Defendant claims the Plaintiff is required to prove as a legal matter, and as a result, cannot be a basis to strike class allegations prior to any discovery because this is not a claim requirement.

Relying on *Rombough v. Robert D. Smith Ins. Agency, Inc.*, No. 22-CV-15-CJW-MAR, 2022 WL 2713278, at *2 (N.D. Iowa June 9, 2022), the Defendant misstates the applicable law. The FCC's regulations permit a "residential telephone subscriber" to register "his or her telephone number" on the Registry. 47 C.F.R. § 64.1200(c)(2). Once a telephone number is registered on the Registry, the "registrations must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator." *Id*. *Rombough* purports to require some TCPA plaintiffs to do the impossible–

12

personally *re*register a number already on the Registry. It has been disagreed with by every other court to consider it and its premises. *See, e.g.*, *Klassen v. Solid Quote LLC*, No. 23-CV-00318-GPG-NRN, 2023 WL 7544185, at *4 (D. Colo. Nov. 14, 2023).

*Rombough* was most notably rejected in *Callier v. Am.-Amicable Life Ins. Co. of Texas,* No. EP-22-CV-00018-FM, 2022 WL 17732717, at *5 (W.D. Tex. Oct. 18, 2022), where the Western District of Texas called the argument underlying the *Rombough* decision one that "borders on the frivolous." The *Callier* Court is far from alone. *See e.g. Murch v. GPS Cap. Mkts., LLC,* 2025 U.S. Dist. LEXIS 169651, *38 (D. Or. June 6, 2025) ("After fully considering the TCPA's private right of action, the statutory scheme, and other language in the implementing regulation as discussed above, the Court declines to follow *Rombough*."). Indeed, three years after *Callier*, another federal court recently made forcefully clear how far of an outlier *Rombough* was in *Nichols v. eHealthInsurance Servs.*, 2025 U.S. Dist. LEXIS 37917, *8-9 (N.D. Cal., March 3, 2025). This Court should hold the same and not use this view of the law to strike the class definition.

### b.  Possible consent does not render the classes overly broad.

As to the issues of consent or an established business relationship, it is true that some courts have previously struck class allegations in TCPA cases where the

13

lack of consent was pled as part of the class definition. However, the cases cited by Defendant all had class allegations struck for *precisely that reason*: the class definition *included* language requiring each class member to have not provided their consent. Defendant's consent argument must fail because it is a red herring that is premature and is more appropriately suited to class certification.

Defendant's consent argument is premature because it depends on speculation about defenses and evidence that may or may not exist and that, if it does exist, may or may not present individualized issues. Nothing on the face of the Complaint establishes that consent must be resolved through person-by-person mini-trials, or that Defendant's asserted affirmative defenses render the proposed classes incapable of certification. At this stage, the Court does not know, because no class discovery has occurred. That is precisely why courts have repeatedly held that speculation about possible consent by some putative class members is not a basis to strike TCPA class allegations on the pleadings. *See Ott v. Mortg. Inv'rs Corp. of Ohio, Inc.*, 65 F. Supp. 3d 1046, 1065, 1067 (D. Or. 2014) ("Since the face of the [] Complaint does not reveal that [defendant] had express consent before it called cell phones, [defendant]'s speculation . . . is not sufficient to strike that class action allegation . . . . This is not a matter that can be resolved from the face of the [] Complaint.").

14

When the Defendant has not met its burden of demonstrating consent applicable to the class, a class is properly *certified*, not stricken. *See, e.g., Watson v. Manhattan Luxury Automobiles, Inc.*, No. 20 CIV. 4572 (LGS), 2022 WL 4586407, at *5 (S.D.N.Y. Sept. 29, 2022). Humana's argument focuses on a potential *affirmative defense* of consent or an established business relationship (of which it has produced no evidence to support) to assert that this action in its entirety is incapable of being maintained as a class action. Notably, Humana's own explanation, as alleged in the complaint, is that the vendor "went rogue," which means Humana itself does not claim to have obtained consent from class members through its own direct solicitation. In rejecting the same argument in another TCPA case, another court held:

> The Court finds that the defendant's motion to strike the class allegations is premature before plaintiff can develop the factual record through discovery. Loan Depot's citation of consent as a potential affirmative defense is insufficient to warrant striking the putative class solely on the pleadings. The motion to strike class allegations will, therefore, be denied.
>
> *Rosenberg v. LoanDepot.com LLC*, 435 F. Supp. 3d 308, 318 (D. Mass. 2020).

Even though Plaintiff does not believe that Humana obtained the appropriate prior express written consent for its calls or an "established business relationship" with the called parties (since the calls were placed by a rogue vendor to solicit new Medicare business, not to service existing customers), Plaintiff made a conscious

decision to not include language about individuals who have not provided their "prior express written consent" in the class definition, as other federal courts *have* found that to create an impermissible fail-safe class in TCPA cases. *See Sauter*, 2014 WL 1814076, at *8–9; *Boyer v. Diversified Consultants, Inc.*, 306 F.R.D. 536 (E.D. Mich. 2015). Here, Plaintiff *avoided* that potentially fatal flaw in drafting the proposed class definitions.

Nor does the determination of the consent issue necessitate thousands of individual mini-trials as Defendant claims. Courts do not see consent issues as problematic from a class certification perspective, particularly when there are uniform issues with the offered consent evidence. *Berman v. Freedom Fin. Network, LLC*, 400 F. Supp. 3d 964, 972 (N.D. Cal. 2019); *Meyer v. Portfolio Recovery Assocs., LLC*, 707 F.3d 1036, 1041 (9th Cir. 2012); *Zyburo v. NCSPlus, Inc.*, 44 F. Supp. 3d 500, 504 (S.D.N.Y. 2014). The *TD Bank* and *Warnick* cases cited by the Defendant on this point are thus distinguishable. In *TD Bank*, the case revolved around issues of what individuals may have called to *revoke* consent and whether or not each consumer's method of revocation was "reasonable." *Martinez v. TD Bank USA, N.A.*, No. CV 15-7712(JBS/AMD), 2017 WL 2829601, at *5 (D.N.J. June 30, 2017). In *TD Bank*, the plaintiff also happened to adopt a flawed class definition predicated on whether the defendant had the plaintiff's "prior express consent." *Id.* at *12.

Because all the calls here originated through the same vendor arrangement (and the same agent) using the same spoofed calling practices, the success and legal sufficiency of any consent defense is necessarily a common question with common answers, a classic scenario for class treatment. For that matter, the Caller ID claims do not turn on any putative consent. *Starling v. HomeOver General Contractors*, 2026 WL 1649101, at *5 (E.D. Tex. June 8, 2026).

The class definition is not overly broad because it deals with the consent issue through an analysis of Defendant's own records, and, critically, the records of the vendor that "went rogue," and thus likely lacks requisite consent. Plaintiff seeks to represent a class defined in part by information readily available in Defendant's internal records and those of its vendor: whether a person received a call by or on behalf of Humana, and whether or not that person was a current Humana customer who had affirmatively invited contact. Provided that Defendant and its vendors have records of whom they called, and whether they had any prior relationship with those individuals, identifying class members will not require taking any putative class member's say-so. The class will be accurately ascertained and notified long before any jury returns a verdict.

## IV. There Exist Common Questions of Law or Fact Applicable to the Classes.

Courts routinely certify TCPA class actions of this sort, including class actions where there are disputed issues of consent, holding that there exist common

17

legal issues. The commonality requirement dictates that the case have "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). The bar for demonstrating commonality is low and does not require that all class members have perfect identity of questions of law or fact. Indeed, "even a single common question will do." *Wal-Mart*, 564 U.S. at 359. Plaintiff must only demonstrate that there is a common question central to the validity of the class's claims, the "truth or falsity" of the common answers to which will resolve the claims "in one stroke." *Id.* at 350. This case satisfies that requirement.

The core common questions here include whether Humana's vendor placed telemarketing calls to individuals on the National DNC Registry, whether those calls were placed using spoofed or inaccurate caller identification information, whether Humana is vicariously liable for its agent's and vendor's conduct, and whether Humana's internal policies and procedures for honoring do-not-call requests were adequate. Each of these questions is common to every class member and answers will be supplied by the same evidence, Humana's vendor contracts, call logs, caller ID records, and TCPA compliance policies.

Although consent *might* become an issue for the Do Not Call Registry claims, such contentions do not require an individualized inquiry. TCPA cases are routinely certified as common, even when there is evidence of consent, because such cases involve a singular legal question based on a singular set of records.

18

Here, the calls originated through a single vendor using a common scheme. If that vendor lacked *legally sufficient* consent, then no class member would have provided consent, and consent becomes a nonissue for the entire class.

Similarly, Defendant's own records, as well as those of its vendor, will be used to craft a uniform, objective answer to a common question: were these calls placed by or on behalf of Humana? If the answer is yes, each such person is in the class. These questions are not uncommon and should be evaluated at the appropriate time, class certification, not on a premature record now.

## V.    The Class is Defined Through Reference to Objective Criteria.

Defendant also argues that the classes are impermissibly defined because class membership allegedly requires a merits determination as to whether each communication was a "telemarketing" call. This argument fundamentally mischaracterizes both the class definition and the nature of the communications at issue. As an initial matter, the references to "telemarketing" as used in the class definitions are not a merits-based criterion requiring individualized adjudication. They are a *descriptive* term identifying the *type* of communication at issue, commercial calls promoting Defendant's goods and services. In the context of a uniform telemarketing campaign like the one alleged here, whether a communication constitutes "telemarketing" is a common question with a common answer. *See Coffey v. Fast Easy Offer, LLC*, --- F.4th ---, No. 25-4066, 2026 WL

19

1614175, at *3 (9th Cir. June 4, 2026) (determining the purpose of the call depends on context just as much as the content itself).  After all, Defendant cannot deny that it relied on generated leads to sell insurance. 47 U.S.C. § 227(a)(4). The inquiry of whether or not a call was telemarketing involves a "measure of common sense," and is a legal question susceptible to common proof. *Chesbro v. Best Buy Stores, L.P.*, 705 F.3d 913, 918 (9th Cir. 2012).

The determination of whether the communications at issue constitute "telemarketing" does not require reviewing each individual call recording; rather, it requires examining the *nature of the campaign itself*, which is alleged to have shared a common commercial purpose. It is logical that if the calls shared a common source, they shared a common purpose. If the Court has concerns about the use of the word "telemarketing" in the class definition, the appropriate remedy is to refine the class definition at certification, not to strike them entirely before discovery. This issue is more appropriately addressed at class certification.

## CONCLUSION

This Court should deny Defendant's motion to strike in its entirety. Alternatively, to the extent that the Court finds that additional questions remain, it should permit the Plaintiff to amend the class definitions to correct any deficiencies or properly preserve such issues for class certification.

RESPECTFULLY SUBMITTED AND DATED this June 24, 2026

*/s/ Andrew Roman Perrong*
Andrew Roman Perrong, Esq.
PA Bar #333687
Perrong Law LLC
2657 Mount Carmel Avenue
Glenside, Pennsylvania 19038
Phone: 215-225-5529 (CALL-LAW)
Facsimile: 888-329-0305
a@perronglaw.com

## CERTIFICATE OF WORD COUNT

Pursuant to Local Rule 7.8(b)(2), I hereby certify that this brief contains 4,944 words.

DATED this June 24, 2026

*/s/ Andrew Roman Perrong*
Andrew Roman Perrong, Esq.

## CERTIFICATE OF SERVICE

I hereby certify that, on June 24, 2026, I served the foregoing on all interested parties in this action by transmitting such document(s) electronically via CM/ECF, which will automatically notify each attorney who has entered their appearance.

Dated: June 24, 2026

*/s/ Andrew Roman Perrong*
Andrew Roman Perrong, Esq.

21