Baccari v. Carguard Administration, Inc., Not Reported in Fed. Supp. (2022)

Case 1:26-cv-00659-KM    Document 27-1    Filed 06/24/26    Page 1 of 105

🏴 KeyCite Yellow Flag

Distinguished by Murch v. GPS Capital Markets, LLC, D.Or., June 6, 2025

2022 WL 3213839

Only the Westlaw citation is currently available.

United States District Court, E.D. Pennsylvania.

Anthony BACCARI, on behalf of himself and others similarly situated, Plaintiff,

v.

CARGUARD ADMINISTRATION, INC., Defendants.

CIVIL ACTION NO. 22-CV-1952

|

Filed August 8, 2022

**Attorneys and Law Firms**

Alex M. Washkowitz, CW Law Group, P.C., Framingham, MA, Anthony Paronich, Paronich Law, P.C., Hingham, MA, Jeremy C. Jackson, Bower Law Associates, PLLC, State College, PA, for Plaintiff.

Brittany A. Andres, Eric J. Troutman, Troutman Firm, Irvine, CA, Corey M. Scher, Fox Rothschild LLP, Philadelphia, PA, Stephanie B. Fineman, Fox Rothschild LLP, Warrington, PA, for Defendants.

## MEMORANDUM OPINION

WENDY BEETLESTONE, District Judge

**\*1** Plaintiff Anthony Baccari brings this putative class action against Carguard Administration, Inc. ("Carguard") for violation of the Telephone Consumer Protection Act of 1991, 47 U.S.C. § 227, ("TCPA"), after he received telemarketing calls from an entity which is not part of this litigation but which he alleges made the calls on behalf of Carguard. Carguard has filed, in successive order (as shown on the ECF docket): (1) a motion to dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6); (2) a motion to strike pursuant to Fed. R. Civ. P. 12(f); and, (3) a motion to dismiss for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1).

### I. FACTUAL ALLEGATIONS

As pled in Baccari's complaint, the facts are plain. Baccari had placed his cell phone number on the National Do Not Call Registry. Despite his registration, he began receiving telemarketing calls in late September 2021 about auto warranties. During one of the calls, Baccari asked the person on the other end of the line to identify who he worked for—and was told it was A-List Marketing Solutions, Inc. ("A-List"). In the call, the representative tried to sell to Baccari Carguard's warranty services. Following the call, Baccari received a proposed service contract from Carguard.

Baccari alleges that Carguard and A-List had a marketing agreement, and pursuant to that agreement, "A-List Marketing was contractually required to promote CarGuard products on their telemarketing calls." He alleges CarGuard had "day-to-day control over A-List Marketing's actions," including by instructing A-List about the number of calls it should make and the geographies in which it should make them. Baccari further alleges that Carguard had previously received complaints about its telemarketing calls and that, in a statement to the Better Business Bureau, it acknowledged that it had the power to tell companies like A-List to stop making its calls.

Case 1:26-cv-00659-KM    Document 27-1    Filed 06/24/26    Page 2 of 105

Baccari v. Carguard Administration, Inc., Not Reported in Fed. Supp. (2022)

## II. DISCUSSION

### A. Motion to Strike

As an initial matter, Carguard's Motion to Strike pursuant to Federal Rule of Civil Procedure is untimely because it falls afoul of Federal Rule of Civil Procedure 12(g)(2), which provides that "[e]xcept as provided in Rule 12(h)(2) or (3), a party that makes *a motion under this rule* must not make *another motion under this rule* raising a defense or objection that was available to the party but omitted from its earlier motion." Fed. R. Civ. P. 12 (emphasis added); *see also Jaroslawicz v. M&T Bank Corp.*, 912 F.3d 96, 105 n.4 (3d Cir. 2018), *reh'g granted, judgment vacated on other grounds*, 925 F.3d 605 (3d Cir. 2019) (stating that Rule 12(g) "prohibits a party from making a successive motion to dismiss if that motion 'rais[es] a defense or objection that was available to the party but omitted from its earlier motion' " (quoting Fed. R. Civ. P. 12(g)(2))). The purpose of the Rule is "to prevent [ ] dilatory motion practice ... a course of conduct that was pursued often for the sole purpose of delay." 5C Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1384 (3d ed. 2022); *see also Aetna Life Ins. Co. v. Alla Med. Servs., Inc.*, 855 F.2d 1470, 1475 n.2 (9th Cir. 1988) (noting that the purpose of Rule 12(g) is "simple and basic: a series of motions should not be permitted because that results in delay and encourages dilatory tactics"). Consequently, "the right to raise [Rule 12] defenses [and objections] by preliminary motion is lost when the defendant neglects to consolidate them in his initial motion." Wright & Miller, *supra* at § 1385.

**\*2**  A motion to strike is "a motion under" Rule 12; specifically, a motion to strike is one made under Rule 12(f). *See Fed. R. Civ. P. 12(f); see also* Wright & Miller, *supra* at § 1388 ("Motions to strike ... are motions under Rule 12 and thus clearly are within the language of subdivision (g)."). Because Carguard filed a separate motion to strike *after* it already filed a motion to dismiss pursuant to Rule 12(b)(6), it has failed to comply with Rule 12(g)'s mandate to consolidate all motions "available to [it]" into a single motion.

### B. Motion to Dismiss for Lack of Subject Matter Jurisdiction

A reading of Rule 12(g) would also suggest that Carguard should have consolidated its motion for lack of subject matter jurisdiction with its two other motions. But "a challenge to the court's subject matter jurisdiction may be raised at any time and is not subject to the consolidation and waiver provisions [of Rule 12]." Wright & Miller, *supra* at § 1385. Accordingly, the Court will consider Carguard's only argument, which is that Baccari lacks standing to bring this case. *See Ballentine v. United States*, 486 F.3d 806, 810 (3d Cir. 2007) ("A motion to dismiss for want of standing is [ ] properly brought pursuant to Rule 12(b)(1), because standing is a jurisdictional matter.") To establish standing, a plaintiff must show three elements: injury-in-fact, causation, and redressability. *Const. Party of Pennsylvania v. Aichele*, 757 F.3d 347, 360 (3d Cir. 2014).

Before delving into the standing analysis, however, a determination must first be made as to whether the motion presents a "facial" or "factual" attack on the claims at issue, because that distinction determines how the pleading must be reviewed. *In re Schering Plough Corp. Intron/Temodar Consumer Class Action*, 678 F.3d 235, 243 (3d Cir. 2012) (citing *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977)). A facial attack "contests the sufficiency of the pleadings," *id.*, "whereas a factual attack concerns the actual failure of a [plaintiff's] claims to comport [factually] with the jurisdictional prerequisites." *CNA v. United States*, 535 F.3d 132, 139 (3d Cir. 2008) (internal quotation marks omitted) (alterations in original). In other words, a "facial attack ... is an argument that considers a claim *on its face* and asserts that it is insufficient to invoke the subject matter jurisdiction," while "[a] factual attack ... is an argument that there is no subject matter jurisdiction because *the facts of the case* ... do not support the asserted jurisdiction." *Aichele*, 757 F.3d at 358 (3d Cir. 2014) (emphasis added). To make a factual attack, a challenger must raise "a factual dispute" by "present[ing] competing facts" about the basis for jurisdiction. *Id.; see also Mortensen*, 549 F.2d at 892 n.17 ("A factual jurisdictional [attack] cannot occur until plaintiff's allegations have been controverted.")

When reviewing a facial challenge, "the same standard as on review of a motion to dismiss under Rule 12(b)(6)" is applied; that is, only the allegations in the complaint are examined, and are done so in the light most favorable to the plaintiff. *In re Horizon Healthcare Servs. Inc. Data Breach Litig.*, 846 F.3d 625, 633 (3d Cir. 2017). When reviewing a factual challenge, on the other hand, evidence outside of the pleadings may be weighed and considered, and "no presumptive truthfulness attaches" to the facts pled in the complaint. *Mortensen*, 549 F.2d at 891.

**\*3** Here, Carguard raises a factual attack, because it presents evidence directly contradicting the bases for Baccari's standing. In particular, Carguard disputes facts in the complaint tending to show that it caused Baccari's injury. The complaint alleges, for example, that "A-list Marketing was contractually required to promote Carguard's products on their telemarketing calls in order to potentially generate new customers." Carguard's CEO, however, attests in a declaration that A-List was "contractually *prohibited* from engaging in any form of telemarketing to market Carguard's products" (emphasis added). The CEO's statement is confirmed both by the marketing agreement between Carguard and A-List, (attached as an exhibit to the motion), and the Exclusivity Agreement, (also attached), which clearly states that "[A-List] will not use any form of telemarketing to market the products."

Carguard's declaration raises further factual disputes concerning whether it caused Baccari's injury. For example, the complaint alleges that "Carguard has previously received complaints regarding the telemarketing conduct of its third-party vendors," and that "Carguard was knowingly and actively accepting the business that originated through the illegal telemarketing calls through the issuance of vehicle service contracts." In contrast, Carguard's declaration states that "Carguard was unaware that A-List was making any sort of prerecorded calls during the timeframes at issue in the Complaint. It would not have accepted any contracts from A-List had it been aware of those facts at the time it accepted the contracts."

When a "defendant contests the jurisdictional allegations ... under oath, then it is incumbent upon the plaintiff to respond to the defendant's sworn factual assertions. In doing so, a conclusory response will not suffice." *Int'l Ass'n of Machinists & Aerospace Workers v. Nw. Airlines*, Inc., 673 F.2d 700, 711-12 (3d Cir. 1982). Instead, the plaintiff must present proof of jurisdiction countering the defendant's facts "by affidavits or other sworn proofs." *Id.* Here, Baccari has failed to do just that. In response to the evidence Carguard presented to break the factual link between itself and Baccari's harm, Baccari only provides a lengthy discussion about the law concerning principles of agency, and restates allegations in the complaint. For example, Baccari merely re-asserts that A-List was "contractually require[d]" to use telemarketing practices to reach customers like himself. Because Baccari has not met his burden to produce evidence responding to Carguard's factual attack, Carguard's motion for lack of subject matter jurisdiction will be granted, and the Complaint will be dismissed without prejudice. Further, as Baccari's complaint is being dismissed for lack of subject matter jurisdiction, Carguard's motion to dismiss it for failure to state a claim will be denied as moot.

An appropriate order follows.

**All Citations**

Not Reported in Fed. Supp., 2022 WL 3213839

---

**End of Document**

© 2026 Thomson Reuters. No claim to original U.S. Government Works.

2022 WL 17732717
Only the Westlaw citation is currently available.
United States District Court, W.D. Texas, El Paso Division.

Brandon CALLIER, Plaintiff,

v.

AMERICAN-AMICABLE LIFE INSURANCE
COMPANY OF TEXAS, a Florida Corporation, Defendant.

EP-22-CV-00018-FM
|
Signed October 18, 2022

**Attorneys and Law Firms**

Brandon Callier, El Paso, TX, Pro Se.

Danielle A. Gilbert, Husch Blackwell LLP, Austin, TX, for Defendant.

**ORDER DENYING MOTION TO DISMISS**

FRANK MONTALVO, UNITED STATES DISTRICT JUDGE

 **\*1** Before the court are "Plaintiff's Second Amended Complaint" ("Complaint") [ECF No. 24], filed August 9, 2022, by Brandon Callier ("Plaintiff") and "Defendant American-Amicable's Motion to Dismiss Plaintiff's Second Amended Complaint" ("Motion") [ECF No. 26], filed August 23, 2022, by American Amicable Life Insurance Company of Texas ("Defendant"). In its Motion, Defendant moves to dismiss Plaintiff Brandon Callier's claims pursuant to Federal Rules of Civil Procedure ("Rule") 8(a), 10(b), and 12(b)(6).[1] After due consideration of the Complaint, Motion, and applicable law, the Motion is **DENIED**.

**I. BACKGROUND**

 *A. Factual Background*

At this stage, the court accepts all non-conclusory allegations in the Complaint as true. They are as follows: Plaintiff has at all relevant times been on the National Do-Not-Call Registry ("DNC").[2] Nevertheless, throughout November and December 2021, he received nineteen cell phone calls featuring a prerecorded message ("Hi, this is Kate from Senior Benefits") soliciting senior life insurance products.[3] Plaintiff consented to none of these calls, and none had an emergency purpose.[4]

On one such call, Plaintiff opted to be connected to a representative who asked certain qualifying questions to determine if Plaintiff was eligible for the life insurance products being sold; upon hearing Plaintiff was only forty-seven years old, the telemarketer hung up.[5] Plaintiff continued to receive prerecorded calls from "Kate." During one of these calls he again opted to connect to a representative, but this time he claimed he was fifty years old "to qualify for an insurance policy in order to find out who was behind the calls."[6] Now qualified, Plaintiff was promptly transferred to Ms. Sophia Ahmed, an insurance agent for Defendant, "who sold Plaintiff a life insurance policy."[7] Shortly thereafter, Plaintiff received a life insurance policy from Defendant American-Amicable Life Insurance Company of Texas.[8]

### B. Procedural Background

Plaintiff filed his Complaint in August 2022, raising three claims for relief: damages from "non-emergency telemarketing robocalls" in violation of the Telephone Consumer Protection Act ("TCPA")[9]; damages from solicitation to his private phone number, which was listed on the DNC, in violation of the TCPA[10]; and damages pursuant to the Texas Business and Commerce Code, which prohibits telephone communications for purposes of solicitation.[11]

Defendant subsequently filed its Motion, arguing Plaintiff's complaint should be dismissed, first, for failure to meet "basic pleading standards under Rules 8 and 10" by improperly conflating and failing to differentiate between the parties and non-parties.[12] Second, Defendant asserts Plaintiff has not stated a claim for relief as his allegations 1) do not demonstrate vicarious liability and 2) are "entirely conclusory."[13]

## II. LEGAL STANDARD

 **\*2** Rules 8 and 10 pertain to pleading clarity. Rule 8 requires a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief."[14] "Each allegation must be simple, concise, and direct."[15] Rule 10 requires a party to "state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances."[16]

Rule 12(b)(6) pertains to a pleading's substance, requiring dismissal of a complaint when it fails "to state a claim for which relief can be granted."[17] To survive a motion to dismiss, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face."[18] "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."[19] Facial plausibility exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[20] Therefore, a complaint is not required to set out "detailed factual allegations," but it must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action."[21] Although the court must accept well-pleaded allegations in a complaint as true, it does not afford conclusory allegations similar treatment.[22]

## III. DISCUSSION

Defendant argues Plaintiff's complaint should be dismissed pursuant to Rules 8(a) and 10(b) for failure to meet pleading standards and Rule 12(b)(6) for failure to state a plausible claim for relief. Defendant's overwrought, disingenuous contentions fail at every step.

### A. Failure to Meet Pleading Standards

Defendant complains that Plaintiff has improperly conflated alleged acts by Defendant and Defendant's insurance agent, Ms. Ahmed, who, until recently, was also a defendant in this case.[23] Specifically, Defendant points to Plaintiff's vague, occasional use of 1) "Defendant" in the singular and 2) "Defendants" without specification.[24] Defendant also takes issue with Plaintiff's imprecise reference to the actions by Ms. Ahmed "and/or" Defendant and by Defendants "and/or their affiliates or agents."[25]

According to Defendant, courts "consistently" dismiss "such facially-deficient pleadings ..., even in *pro se* cases."[26] Defendant cites several unreported, out-of-circuit cases. To say none of them are on point is putting it mildly. The best Defendant can muster is *Ewing v. GoNow Travel Club, LLC*[27] and *Cunningham v. Lifestyles Development, LLC*,[28] both of which pertained to inadequate pleading in the TCPA context. In *Ewing*, the plaintiffs' pleading failed because it lumped together and asserted

Callier v. American-Amicable Life Insurance Company of Texas, Not Reported in Fed. Supp. (2022)

Case 1:26-cv-00659-KM    Document 27-1    Filed 06/24/26    Page 6 of 105

TCPA claims against multiple defendants, any one of whom was alleged to be the possible source behind the violative calls.[29] That is not the case here as Defendant is the only alleged principal.

**\*3** In *Cunningham*, the plaintiff failed to demonstrate that the entity who physically made the telemarketing call (inviting him to a time share seminar) had any principal-agency relationship with the defendant, which was one of several commercial entities involved in the seminar.[30] There was no indication the defendant had any control over, or even knew about, the violative calls. Thus, *Cunningham* is also inapposite as the alleged principal-agency relationship here is direct and straightforward: Defendant is the alleged principal, Ms. Ahmed its agent, and an unnamed telemarketer a subagent.[31]

Furthermore, Defendant is plainly wrong that Plaintiff's complaint is inadequately pled. The "liberal" pleading standards of the Federal Rules of Civil Procedure aim simply to ensure a defendant has "fair notice of the basis for" a plaintiff's claims.[32] Here, Plaintiff has provided a "short and plain statement" outlining his claim, as required by Rule 8(a), and he has done so in a way that clearly indicates agency relationships between Defendant, Ms. Ahmed, and the telemarketer. His pleadings easily put Defendant on notice, apprising it of the nature of his claims, which he has stated "in numbered paragraphs, each limited as far as practicable to a single set of circumstances," as required by Rule 10(b).[33] Additionally, the court must hold complaints by *pro se* litigants "to less stringent standards than formal pleadings drafted by lawyers."[34] Even if that were not the case, however, the court finds Plaintiff's Complaint is pled with sufficient clarity.

That said, it is true that Plaintiff does occasionally "conflate" Defendant and Ms. Ahmed. When he does, however, his allegations pertain to the relationship between Defendant "and/or" Ms. Ahmed, on the one hand, and the actual telemarketer, on the other. For example, he alleges "Ahmed and/or [Defendant] contracted with an unknown third-party telemarketer to market and solicit insurance products."[35] But such an allegation is permissible for two reasons. First, Plaintiff has no way of knowing who directly hired the telemarketer, although chances are it would have been Defendant and not Ms. Ahmed. Second, even if it had been Ms. Ahmed, she and Defendant allegedly had a principal-agency relationship, meaning Defendant, the principal, may be liable for her conduct to the extent she was acting as an agent for and on behalf of Defendant.[36] Therefore, the outcome is the same whether Defendant directly hired the telemarketer or Ms. Ahmed did: Defendant may be on the hook.

*B. Failure to State a Claim for Relief*

Defendant next asserts Plaintiff has failed to state a claim upon which relief can be granted. Plaintiff's claims for relief arise from Defendant's alleged 1) non-emergency telemarketing[37]; 2) solicitation to a DNC-registered phone number[38]; and 3) violations of the Texas Business and Commerce Code, which prohibits telephone solicitations.[39]

a. Non-Emergency Telemarketing

**\*4** Under the TCPA, it is "unlawful for any person within the United States ... to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using ... an artificial or prerecorded voice ... to any telephone number assigned to a ... cellular telephone service."[40] Further, "under federal common-law principles of agency, there is vicarious liability for TCPA violations."[41] Under Texas law, a principal-agency relationship exists when an individual has actual or apparent authority to act on behalf of another or the latter ratifies the actions of former.[42]

Plaintiff asserts Defendant made, authorized, or ratified "non-emergency telemarketing robocalls" to his cell phone "without his prior express written consent."[43] Defendant does not dispute Plaintiff received violative calls. Instead, Defendant simply claims Plaintiff failed to allege any facts supporting an agency relationship and therefore vicarious liability.[44]

Case 1:26-cv-00659-KM    Document 27-1    Filed 06/24/26    Page 7 of 105

Defendant again fortifies its position primarily with unreported, inapposite, misapplied, out-of-circuit cases.[45] Yet even a cursory review of this court's TCPA caselaw demonstrates Plaintiff has plausibly alleged an agency relationship between Defendant and the unnamed telemarketer and therefore vicarious liability.

In *Callier v. National United Group, LLC*, this same plaintiff allegedly received a robocall, requested to connect to a live representative, and was then told by the telemarketer she would call him back so he could talk to a sales agent.[46] Mr. Callier received a call back shortly thereafter.[47] This court noted:

> Mr. Callier's information was provided to [the defendant] from the initial telemarketing call and [the defendant] subsequently contacted him because of the telemarketing call. The immediacy between the two calls and the purpose of both imply that the call back was closely linked to the preceding prerecorded call. The proximity and relatedness of these calls allows for a plausible inference that the first prerecorded call was made by or on behalf of [the defendant].[48]

The calls in this case are even more closely connected since no call back was necessary: Plaintiff was connected directly to Ms. Ahmed on the same initial call.[49]

In *Callier v. MultiPlan, Inc.*, although our intrepid litigator failed to identify which of three defendants was the principal, the agent, or the beneficiary behind the robocalls, the court nevertheless "reasonably infer[red] the existence of an agency relationship amongst" them because Mr. Callier claimed they had "authorized a third-party telemarketer to generate prospective customers."[50] "At the very least," this and other allegations suggested one of the defendants "was a principal that authorized other [d]efendants to make robocalls on its behalf or, alternatively, ratified the robocalls by accepting the benefits they yielded."[51]

When Mr. Callier has failed, it has been because he did not directly connect the sale of a solicited product to the original "producer" of that product. In *Callier v. SunPath Ltd.*, he allegedly purchased car warranty policies from an unnamed telemarketer—but he learned the policies were covered by the defendants only after those policies were mailed to his house.[52] The "mere fact that telemarketing calls were made on behalf of" the defendants, however, did not suffice to establish an agency relationship: although the defendants "undoubtedly benefited from the marketing calls, nothing in the pleadings indicate[d] either were aware of the actions allegedly in violation of the TCPA."[53]

 **\*5**  Such is not the case here. Plaintiff alleges Ms. Ahmed or Defendant "contracted with an unknown third-party telemarketer to market and solicit [its] insurance products," "supplied the telemarketer with the age, health, income, and state of residence requirements to purchase [those] insurance products," "provided the telemarketer with access to real-time quotes and pricing information for the solicited life insurance products," "authorized the third-party telemarketer to generate automated phone calls with prerecorded voice message scripts," and "gave access to proprietary information to the third-party telemarketer to assist in the robocalling campaign."[54] The telemarketer then called Plaintiff numerous times.[55] Once Plaintiff met the criteria to purchase Defendant's life insurance policy, he was transferred directly to Ms. Ahmed, its sales agent, who sold him a policy.[56]

These allegations are not, as Defendant claims, "wholly conclusory and speculative."[57] Moreover, if they are true, which the court must assume at this stage, they reasonably imply an agency relationship between Defendant and the unnamed telemarketer. First, the allegations demonstrate an agency relationship between the telemarketer and Ms. Ahmed given her direct involvement in the call.[58] Second, they show an agency relationship between Ms. Ahmed and Defendant since Ms. Ahmed is a registered insurance agent for Defendant and sells insurance on its behalf.[59] Thus, the telemarketer was allegedly Defendant's subagent. Texas courts hold a principal vicariously liable for the tortious acts of its subagents.[60]

Accordingly, Defendant's Motion is denied with respect to Plaintiff's first claim for relief.

b. Solicitation to a DNC-Registered Phone Number

"No person or entity shall initiate any telephone solicitation to ... [a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the Federal Government."[61] Plaintiff alleges that he has at all relevant times "been on" the DNC.[62]

Defendant contends this second claim for relief must fail for the same reason as Plaintiff's first: he has not adequately pled vicarious liability.[63] As discussed above, the court disagrees.

Defendant next argues Plaintiff's second claim for relief fails as he did not allege that *he himself* registered his number on the DNC.[64] Defendant cites *Rombough v. Robert D. Smith Ins. Agency, Inc.*, an unreported, out-of-circuit case, which dismissed a TCPA claim because the plaintiff, although she claimed her number was registered with the DNC, did not allege she had been the one to register it.[65] Defendant's contention borders on frivolous.

First, this court has already considered a TCPA claim in which a plaintiff alleged her number was registered on the DNC but did not specifically allege she did the registering.[66] That detail, however, did not doom her TCPA claim, to which this court found she was entitled to summary judgment.[67]

**\*6** Second, *Rombough*'s nitpicky formality is thoroughly unpersuasive. The DNC is not auto-populated: it is a list of phone numbers for individuals *who have requested* that telemarketers not contact them.[68] While it is possible a third-party may have registered a plaintiff's phone number before a plaintiff acquired it, this is unlikely given how infrequently people change numbers. And it is particularly unlikely here given Plaintiff's well-documented desire that telemarketers respect his registration with the DNC.[69]

Finally, at the motion to dismiss stage, "a district court must accept a plaintiff's allegations as true and *indulge all reasonable inferences in their favor.*"[70] A supremely reasonable inference from the allegation that Plaintiff's number was registered on the DNC is that *he* did the registering.

Defendant's Motion is therefore denied with respect to Plaintiff's second claim for relief.

c. Telephone Solicitations Under Texas State Law

Texas Business and Commerce Code provides that anyone "who receives a communication that violates" the TCPA may seek an injunction and damages "against the person who originates the communication."[71]

Defendant makes two arguments against Plaintiff's final claim. First, "[b]ecause Plaintiff's TCPA claims fail," his state law claim also fails.[72] As discussed, however, Plaintiff's TCPA claims do not fail and therefore neither must his state law claim.[73]

Second, Defendant contends Plaintiff's state law claim should be dismissed because "allowing [him] to recover under both statutory schemes for the same alleged calls would amount to an improper double recovery."[74] But Plaintiff is not recovering anything at this stage; the court is simply assessing whether he has plausibly alleged his claims for relief. He has.

## IV. CONCLUSION

Accordingly, it is **HEREBY ORDERED** that "Defendant American-Amicable's Motion to Dismiss Plaintiff's Second Amended Complaint" [ECF No. 26] is **DENIED**.

**All Citations**

Not Reported in Fed. Supp., 2022 WL 17732717

Footnotes

1    "Defendant American-Amicable's Motion to Dismiss Plaintiff's Second Amended Complaint" ("Mot.") 3, ECF No. 26, filed Aug. 23, 2022.

2    "Plaintiff's Second Amended Complaint" ("Compl.") 5 ¶ 21, ECF No. 24, filed Aug. 9, 2022.

3    *Id.* at 6 ¶¶ 30–31, 7–8 ¶ 36.

4    *Id.* at 6 ¶ 30.

5    *Id.* at 8 ¶ 37.

6    *Id.* at 6–7 ¶ 33, 8 ¶ 39.

7    *Id.* at 1 ¶ 3, 7 ¶ 34.

8    *Id.* at 7 ¶ 35.

9    *Id.* at 18–19; *see* 47 U.S.C. § 227(b).

10   *Id.* at 19; *see* 47 U.S.C. § 227(c)(3)(F); 47 C.F.R. § 64.1200(c).

11   *Id.* at 20; *see* Tex. Bus. & Com. 305.053.

12   Mot. at 3.

13   *Id.* at 3, 2.

14   Fed. R. Civ. P. 8(a)(2).

15   *Id.* § 8(d)(1).

16   *Id.* § 10(b).

17   *Id.* § 12(b)(6).

18   *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

19   *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

20   *Id.* (citing *Twombly*, 550 U.S. at 556).

21   *Twombly*, 550 U.S. at 555.

22   *See Kaiser Aluminum & Chem. Sales, Inc.*, 677 F.2d 1045, 1050 (5th Cir. 1982) (citing *Associated Builders, Inc. v. Ala. Power Co.*, 505 F.2d 97, 100 (5th Cir. 1974)).

Callier v. American-Amicable Life Insurance Company of Texas, Not Reported in Fed. Supp. (2022)

23    *See* "Order to Dismiss Sophia Ahmed," ECF No. 28, entered Sept. 13, 2022.

24    Mot. at 6; *see* Compl. at 2 ¶ 5, 10 ¶ 51, 11–12 ¶ 64, 17 ¶¶ 91–94, 18 ¶ 97, 98, 19 ¶ 3, 20.

25    Mot. at 7 (emphasis removed).

26    *Id.* at 5 (citing *Cunningham v. Politi*, No. 4:18-CV-00362-ALM-CAN, 2019 WL 2519702 (E.D. Tex. Apr. 26, 2019); *Cunningham v. Lifestyles Dev., LLC*, No. 4:19-CV-00006-ALM-CAN, 2019 WL 4282039 (E.D. Tex. Aug. 8, 2019); *Garig v. Travis*, No. 20-654-JWD-RLB, 2021 WL 2708910 (M.D. La. June 30, 2021); *Williams v. Am. Com. Lines, Inc.*, No. 20-139-SDD-EWD, 2020 WL 4574515 (M.D. La. July 23, 2020)); *see also id.* at 7 (citing *Ewing v. GoNow Travel Club, LLC*, No. 19-cv-297-BAS-AGS, 2019 WL 3253058 (S.D. Cal. July 19, 2019); *Mendoza v. J.P. Morgan Mortg. N.A.*, No. 7:17-CV-180, 2017 WL 2778250 (S.D. Tex. June 27, 2017); *Cobarobio v. Midland Cnty., Tex.*, No. MO:13-CV-00111-RAJ, 2015 WL 13608102 (W.D. Tex. Jan. 7, 2015)); id. at

27    *Ewing*, 2019 WL 3253058.

28    *Cunningham*, 2019 WL 4282039.

29    *See Ewing*, 2019 WL 3253058, at *3.

30    *Cunningham*, 2019 WL 4282039, at *4.

31    Compl. at 6 ¶ 29.

32    *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 514 (2002).

33    Fed. R. Civ. P. 10(b).

34    *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378 (5th Cir. 2002).

35    Compl. at 11 ¶ 55.

36    *See Schrum v. Land*, 12 F.Supp.2d 576, 582 (S.D. Tex. 1997) ("A principal is liable for its agent's acts when the agent has actual or apparent authority to commit those acts, or when the principal ratifies them.").

37    Compl. at 18–19; *see* 47 U.S.C. § 227(b).

38    *Id.* at 19; *see* 47 U.S.C. § 227(c)(3)(F); 47 C.F.R. § 64.1200(c).

39    *Id.* at 20; *see* Tex. Bus. & Com. 305.053.

40    47 U.S.C. § 227(b)(1).

41    *Callier v. MultiPlan, Inc.*, No. EP-20-CV-00318-FM, LLC, 2021 WL 8053527, *15 (W.D. Tex. Aug. 26, 2021).

42    *Debaillon v. Total Minatome Corp.*, 166 F.3d 339, 1998 WL 912094, *2 (5th Cir. 1998).

43    Compl. at 9 ¶ 43, 19 ¶ 2.

44    Mot. at 15.

45    *See generally id.* at 12–17.

46    *Callier v. Nat'l United Grp., LLC*, No. EP-21-CV-71-DB, 2021 WL 5393829, *4 (W.D. Tex. Nov. 17, 2021).

47    *Id.*

48    *Id.* at 7.

Case 1:26-cv-00659-KM    Document 27-1    Filed 06/24/26    Page 11 of 105

Callier v. American-Amicable Life Insurance Company of Texas, Not Reported in Fed. Supp. (2022)

Compl. at 7 ¶ 34.

*MultiPlan*, 2021 WL 8053527, at *15 (internal quotation marks omitted).

*Id.*

*Callier v. SunPath Ltd.*, W.D. Tex, 3:20-cv-00106-FM, "Plaintiff's First Amended Complaint," 6 ¶¶ 30–33, ECF No. 27, filed Sept. 9, 2020.

*Callier v. SunPath Ltd.*, EP-20-CV-00106-FM, 2020 WL 10285659, *3–4 (W.D. Tex. Aug. 10, 2020).

Compl. at 5–6. Plaintiff alleges Defendant "and/or" Ms. Ahmed did these things. Again, however, such allegations nevertheless suffice to imply Defendant's vicarious liability.

*Id.* at 6 ¶¶ 32–33.

*Id.* at 8 ¶ 39, 7 ¶ 34.

Mot. at 15.

*See Callier v. Nat'l United Grp., LLC*, EP-21-CV-71-DB, 2022 WL 4088205, *6 (W.D. Tex. Sept. 6, 2022) (finding an agency relationship may have existed between an unnamed telemarketer and an insurance agent because, although the insurance agent was not present on the call, she had a "high degree of 'relatedness' " to the call as she was the one "responsible for the act of selling of insurance policies").

Compl. at 1 ¶ 3.

*See, e.g., Arvizu v. Estate of Puckett*, 364 S.W.3d 273, 277 (Tex. 2012).

47 C.F.R. § 64.1200(c).

"Plaintiff's Second Amended Complaint" ("Compl.") 5 ¶ 21, ECF No. 24, filed Aug. 9, 2022.

Mot. at 17.

Mot. at 18.

*Id.* (citing *Rombough v. Robert D. Smith Ins. Agency, Inc.*, 2022 WL 2713278, *2–3 (N.D. Iowa June 9, 2022)).

*Atkinson v. Pro Custom Solar LLC*, SA-21-CV-00178-OLG, 2022 WL 4071998, *8 (W.D. Tex. Sept. 1, 2022).

*Id.*

*See* Federal Trade Commission, *National Do Not Call Registry*, https://www.donotcall.gov/.

*See, e.g., MultiPlan*, 2021 WL 8053527; *Nat'l United Grp., LLC*, 2022 WL 4088205; *Nat'l United Grp., LLC*, 2021 WL 5393829; *SunPath Ltd.*, 2020 WL 10285659.

*Callier v. GreenSky, Inc.*, No. EP-20-CV-00304-KC, 2021 WL 2688622, *2 (W.D. Tex. May 10, 2021) (citing *Gonzalez v. Kay*, 577 F.3d 600, 603 (5th Cir. 2009)) (emphasis added).

Tex. Bus. & Com. 305.053.

Mot. at 19.

*See, e.g., Nat'l United Grp., LLC*, 2021 WL 5393829, at *10 ("Since the Court has already found that Mr. Callier adequately states a claim under the TCPA, it also finds that he adequately states a claim under § 305.053.").

Case 1:26-cv-00659-KM    Document 27-1    Filed 06/24/26    Page 12 of 105

74      Mot. at 20.

---

**End of Document**                                    © 2026 Thomson Reuters. No claim to original U.S. Government Works.

---

Case 1:26-cv-00659-KM    Document 27-1    Filed 06/24/26    Page 13 of 105

2026 WL 1614175
United States Court of Appeals, Ninth Circuit.

Vicki COFFEY, on behalf of herself and all others similarly situated, Plaintiff - Appellant,

v.

FAST EASY OFFER, LLC; GFSG, LLC, doing business as Keller Williams Realty Phoenix; Keller Williams Realty, Inc., Defendants - Appellees.

No. 25-4066
|
Argued and Submitted May 18, 2026 Phoenix, Arizona
|
Filed June 4, 2026

**Synopsis**
**Background:** Consumer brought putative class action against real estate company and related entities alleging violations of the Telephone Consumer Protection Act (TCPA) based on calls and text messages received on her personal cell phone number, which was listed on national "do not call" registry. United States District Court for the District of Arizona, Steven P. Logan, J., 2025 WL 1591302, dismissed complaint. Consumer appealed.

**[Holding:]** The Court of Appeals, M. Smith, Circuit Judge, held that consumer adequately pleaded that messages at issue qualified as telephone solicitations under TCPA.

Reversed and remanded.

**Procedural Posture(s):** On Appeal; Motion to Dismiss for Failure to State a Claim.

West Headnotes (5)

[1]    **Federal Courts**  🔑 Dismissal or nonsuit in general

       **Federal Courts**  🔑 Pleadings; Dismissal

       Court of Appeals reviews an order granting a motion to dismiss de novo, accepting as true all nonconclusory factual allegations in the complaint.

[2]    **Federal Civil Procedure**  🔑 Insufficiency in general

       **Federal Civil Procedure**  🔑 Matters deemed admitted; acceptance as true of allegations in complaint

       A complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face to survive a motion to dismiss for failure to state a claim. Fed. R. Civ. P. 12(b)(6).

[3]    **Administrative Law and Procedure**  🔑 Telecommunications

**Telecommunications** 🔑 Advertising, Canvassing, and Soliciting; Telemarketing

**Telecommunications** 🔑 Telecommunications services

Courts interpret the Telephone Consumer Protection Act (TCPA) under ordinary principles of statutory interpretation, affording appropriate respect to the agency's interpretation. Communications Act of 1934 § 227, 47 U.S.C.A. § 227.

[4]    **Telecommunications** 🔑 Advertising, Canvassing, and Soliciting; Telemarketing

Courts interpret the Telephone Consumer Protection Act (TCPA) in line with the TCPA's remedial purpose of protecting consumers from unwanted automated telephone calls and messages. Communications Act of 1934 § 227, 47 U.S.C.A. § 227.

[5]    **Telecommunications** 🔑 Advertising, Canvassing, and Soliciting; Telemarketing

Real estate company's calls and texts to consumer whose personal cell phone number was listed on national "do not call" registry, asking her whether she had given up on selling her property, were plausibly initiated for purpose of encouraging purchase of real estate brokerage services and thus qualified as "telephone solicitations" prohibited by Telephone Consumer Protection Act (TCPA); company allegedly provided traditional real estate representation for consumers who responded to its solicitations and had occasion to purchase a home directly. Communications Act of 1934 § 227, 47 U.S.C.A. § 227(a)(4).

Appeal from the United States District Court for the District of Arizona, Steven Paul Logan, District Judge, Presiding, D.C. No. 2:24-cv-02725-SPL

**Attorneys and Law Firms**

Adam W. Hansen (argued), Apollo Law LLC, Minneapolis, Minnesota; Emma L. Freeman, Apollo Law LLC, Brooklyn, New York; Alexander D. Kruzyk, Pardell Kruzyk & Giribaldo PLLC, Austin, Texas; for Plaintiff-Appellant.

Archis A. Parasharami (argued), Leif Overvold, and Daniel E. Jones, Mayer Brown LLP, Washington, D.C.; Christopher J. Mikesh, Mayer Brown LLP, New York, New York; Eric M. Fraser, Osborn Maledon PA, Phoenix, Arizona; Anthony T. King and Megan M. Carrasco, Snell & Wilmer LLP, Phoenix, Arizona; James M. Cool, Frazer Ryan Goldberg & Arnold LLP, Phoenix, Arizona; for Defendants-Appellees.

Before: MARSHA S. BERZON, MILAN D. SMITH, JR., AND ANDREW D. HURWITZ, Circuit Judges.

**OPINION**

M. SMITH, Circuit Judge:

This case concerns how "telephone solicitation" is defined in the Telephone Consumer Protection Act (TCPA). Plaintiff-Appellant Vicki Coffey alleges that Defendants-Appellees Fast Easy Offer, LLC, GFSG, LLC, and Keller Williams Realty, Inc., violated the TCPA when contacting her through various phone calls and text messages. Based on the plain text of the Act's definition of "telephone solicitation" and consistent with our opinion in *Chesbro v. Best Buy Stores, L.P.*, 705 F.3d 913 (9th Cir. 2012), we hold that Coffey has adequately pleaded that the messages at issue here qualify as telephone solicitations. We accordingly reverse the district court's judgment dismissing the complaint for failure to state a claim upon which relief can be granted.

2026 Daily Journal D.A.R. 4573

## BACKGROUND

### I. Statutory and Regulatory Background

Congress enacted the TCPA, Pub. L. No. 102-243, 105 Stat. 2394 (1991) (principally codified as amended at 47 U.S.C. § 227), to protect consumers from the "intrusive invasion of privacy" posed by "[u]nrestricted telemarketing." TCPA § 2(5). The TCPA defines a "telephone solicitation" as "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person." 47 U.S.C. § 227(a)(4).

As part of the TCPA, Congress directed the Federal Communications Commission (FCC) to create a national "do not call" registry, id. § 227(c), and authorized the FCC to issue regulations "prohibit[ing] any person from making or transmitting a telephone solicitation to the telephone number of any subscriber" listed in the registry, id. § 227 (c)(3)(F). The FCC regulations promulgated pursuant to this authority prohibit a person or company from "initiat[ing] any telephone solicitation" to a "residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the Federal Government." 47 C.F.R. § 64.1200(c). The regulation defines "telephone solicitation" identically to the TCPA. 47 C.F.R. § 64.1200(f)(15). The TCPA provides a private right of action to any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations" promulgated under the statute, with damages equal to the greater of "actual monetary loss" or "up to $500" per violation. 47 U.S.C. § 227(c)(5).

### II. Factual Background

**\*2** Vicki Coffey is an Arizona resident who registered her personal cell phone number on the "do not call" registry in 2004. Fast Easy Offer, LLC (FEO) is an Arizona-based real estate company that advertises itself as "a local real estate solutions company" that can "help[ ] homeowners ... find solutions to any problem." Part of FEO's business model allegedly involves purchasing homes "below fair market value, in exchange for a suite of services to ease the sale," and then, prior to sale, "remarket[ing] the property to third-party purchasers or investors" to "assign or sell the contract to that investor for a substantial premium."

The operative complaint alleges that in the fall of 2024, Coffey received at least six calls and two text messages from an FEO employee named "Yannick." The complaint reproduces two of these messages. They state:

• "Hello Vickey, this is Yannick the home buyer. Have you given up on selling your ... Gilbert, AZ 85297 property?"

• "Have you given up on selling your property?"

The complaint further alleges that one of FEO's members, Brett Tanner, is an agent or employee of GFSG LLC, which does business as Keller Williams Realty Phoenix (KW Phoenix). According to Coffey, those homes that FEO does not purchase become leads for the brokerage services provided by FEO and KW Phoenix, with resulting revenues shared between the two entities. The complaint alleges that Tanner is the architect of this strategy and that 9 out of 10 consumers who respond to FEO's telemarketing calls become clients of either FEO or KW Phoenix's brokerage services.

### III. Procedural History

Based on these allegations, Coffey filed a putative class action against FEO, KW Phoenix, and Keller Williams Realty, Inc. (KWRI), invoking the TCPA's private right of action. Defendants moved to dismiss under Federal Rule of Civil Procedure 12(b)(6), arguing that the calls and texts at issue were not telephone solicitations for TCPA purposes and that KWRI was not vicariously liable for the calls and texts made by FEO. Coffey later filed an amended complaint, the operative one here. Defendants moved to dismiss based on the same arguments, and the district court granted the motion, dismissing the operative

complaint with prejudice. The district court held that FEO's calls and texts to Coffey were not telephone solicitations as defined by the TCPA because they did not expressly encourage the purchases of services.

## ANALYSIS

### I. Standard of Review

[1] [2] We review an order granting a motion to dismiss de novo, accepting as true all nonconclusory factual allegations in the complaint. *D'Augusta v. Am. Petroleum Inst.*, 117 F.4th 1094, 1100 (9th Cir. 2024). The complaint must "contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face" to survive a motion to dismiss. *Gibson v. City of Portland*, 165 F.4th 1265, 1274 (9th Cir. 2026) (citation modified).

### II. The district court erred in holding that the communications at issue were not telephone solicitations.

The parties contest only whether the district court erred in holding that the communications at issue did not constitute telephone solicitations for TCPA purposes. It did.

### a. Defendants' purpose in initiating the calls and messages at issue is relevant to determining whether they qualify as telephone solicitations.

[3] [4] We "interpret the TCPA under ordinary principles of statutory interpretation, affording appropriate respect to the agency's interpretation." *McLaughlin Chiropractic Assocs., Inc. v. McKesson Corp.*, 606 U.S. 146, 152, 145 S.Ct. 2006, 222 L.Ed.2d 405 (2025). And we do so in line with the TCPA's remedial purpose of "protect[ing] consumers from unwanted automated telephone calls and messages." *Van Patten v. Vertical Fitness Grp., LLC*, 847 F.3d 1037, 1047 (9th Cir. 2017).

**\*3** The TCPA defines telephone solicitation as "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person." 47 U.S.C. § 227(a)(4). Defendants argue that a call or message falls within the statutory definition only where the content and context of the call or message itself reveals a purpose to sell something to the recipient.[1] Defendants are correct that on a plain reading of that definition, "for the purpose of" modifies the immediately preceding phrase, "the initiation of a telephone call or message." But they focus on the wrong portion of that preceding clause. The "purpose" at issue is *not*, on a plain read, the purpose of the call or message, but instead of the "initiation" of that call or message. Defendants' interpretation would render "the initiation of" superfluous. *See Boise Cascade Corp. v. EPA*, 942 F.2d 1427, 1432 (9th Cir. 1991) ("Under accepted canons of statutory interpretation, we must interpret statutes as a whole, giving effect to each word and making every effort not to interpret a provision in a manner that renders other provisions of the same statute inconsistent, meaningless or superfluous."). Giving meaning to the whole definition as drafted requires consideration of the purpose of the initiation of the calls and messages at issue.

Our opinion in *Chesbro v. Best Buy Stores, L.P.*, 705 F.3d 913 (9th Cir. 2012), supports this interpretation of the statute. In *Chesbro*, the unsolicited calls encouraged the plaintiff to redeem rewards points at a Best Buy store. *See id.* at 918. The panel held that those calls fell within the TCPA because the points could be redeemed only by "going to a Best Buy store and making further purchases of Best Buy's goods."[2] *Id.* We rejected Best Buy's argument that "because the [callers'] scripts did not explicitly reference any property, goods, or services[,] ... the calls did not run afoul of the TCPA and its implementing regulations." *Id.* Instead, we clarified, "[n]either the statute nor the regulations require an explicit mention of a good, product, or service where the implication is clear from the context." *Id.*

In this case, then, we must consider not only the content of the messages Coffey received, but also their context as it illuminates Defendants' purpose in initiating the messages, when determining whether they qualify as telephone solicitations.

---

2026 Daily Journal D.A.R. 4573

**b. The district court erred in holding that the messages here did not encourage the purchase of services for TCPA purposes.**

Accepting as true Coffey's allegations regarding Defendants' purpose in initiating the messages at issue here, those messages qualify as telephone solicitations for TCPA purposes. In her operative complaint, Coffey alleges that one purpose of initiating the messages was to solicit the purchase of traditional real estate brokerage services. She highlights, for example, that FEO "provide[s] ... traditional real estate representation for consumers who respond to FEO's solicitations." She further alleges that although FEO may occasionally purchase a home directly, it directs "9 out of 10" potential customers to either its own employees or Keller Williams associates who provide traditional brokerage services. The messages, therefore, were "initat[ed] ... for the purpose of encouraging the purchase or rental of ... services." 47 U.S.C. § 227(a)(4).[3]

**\*4** **[5]** Defendants argue that the TCPA's plain text requires that the message directly encourage a purchase of services in the near term, not the future. And they attempt to distinguish *Chesbro*, contending that there, "Best Buy's reminder that the recipient had a credit towards a future Best Buy purchase was tantamount to encouraging the recipient to make a purchase from Best Buy," whereas the messages here might never lead to any purchase. But crediting Coffey's factual allegations as we must at the motion to dismiss stage, *D'Augusta*, 117 F.4th at 1100, one purpose for which Defendants initiated these messages was to encourage the purchase of real estate brokerage services. That is enough to satisfy the statutory definition.[4]

## CONCLUSION

Based on the TCPA's definition of "telephone solicitation" and our ruling in *Chesbro*, Coffey has pleaded sufficient factual allegations supporting her argument that the messages at issue here qualify as telephone solicitations to survive a motion to dismiss. We accordingly **REVERSE** the district court's dismissal and **REMAND** for further proceedings.

## All Citations

--- F.4th ----, 2026 WL 1614175, 2026 Daily Journal D.A.R. 4573

Footnotes

1     Defendants contend, and Coffey accepts, that the phrase "encouraging the purchase ... of ... property, goods, or services" means encouraging such a purchase *by* the recipient of the communication—not a purchase *from* the recipient. 47 U.S.C. § 227(a)(4). At least one circuit has so held. *See Hulce v. Zipongo Inc.*, 132 F.4th 493, 499 (7th Cir. 2025). As the parties do not dispute this question, we do not address whether an unwanted call initiated for the purpose of "encouraging the purchase" of property, goods, or services *by the caller* and *from the recipient* would fall within the statutory definition of a telephone solicitation.

2     The panel in *Chesbro* interpreted "telemarketing" as defined in 47 C.F.R. § 64.1200(f)(10) (2011), which is identical to the definition of "telephone solicitation" at issue in this case. 705 F.3d at 918.

3     Because these allegations suffice to establish that the solicitations were "telephone solicitations," we do not decide whether the offers to buy homes directly were also telephone solicitations because they included offers to supply the services associated with buying a home, such as escrow and attorneys' fees.

4     The parties engage in a battle of the nonbinding authority, each providing various out-of-circuit and district court cases they say support their TCPA interpretations. We need not engage with this non-binding authority. The TCPA's plain text, circuit precedent, and Coffey's well-pleaded allegations provide a clear basis for decision at the motion to dismiss stage.

Coffey v. Fast Easy Offer, LLC, --- F.4th ---- (2026)

2026 Daily Journal D.A.R. 4573

---

**End of Document**

© 2026 Thomson Reuters. No claim to original U.S. Government Works.

Case 1:26-cv-00659-KM Document 27-1 Filed 06/24/26 Page 19 of 105

Johnson v. Ally Financial Inc., Not Reported in Fed. Supp. (2017)

2017 WL 3433689
Only the Westlaw citation is currently available.
United States District Court, M.D. Pennsylvania.

Jayla JOHNSON, Plaintiff

v.

ALLY FINANCIAL INC., Defendant

CIVIL ACTION NO. 1:16-CV-1100
|
Signed 08/10/2017

**Attorneys and Law Firms**

Arthur Stock, Lane L. Vines, Shanon J. Carson, Berger & Montague, P.C., Philadelphia, PA, Jarrett L. Ellzey, W. Craft Hughes, Hughes Ellzey, LLP, Houston, TX, for Plaintiff.

Divya S. Gupta, Eric J. Troutman, Scott D. Goldsmith, Dorsey & Whitney LLP, Costa Mesa, CA, John F. Yaninek, Matthew Clayberger, Thomas Thomas & Hafer LLP, Harrisburg, PA, for Defendant.

**MEMORANDUM**

Christopher C. Conner, Chief Judge

**\*1** Plaintiff Jayla Johnson ("Johnson") commenced this action against defendant Ally Financial Inc. ("Ally Financial") under the Telephone Consumer Protection Act, 47 U.S.C. § 227. Before the court is Ally Financial's motion (Doc. 17) to strike the class allegations in Johnson's amended complaint. (Doc. 12). For the reasons that follow, the court will deny the motion.

**I. Factual Background & Procedural History**

Ally Financial is a debt collection company. (Doc. 12 ¶¶ 1, 5). Johnson contends that Ally Financial called her cell phone number at least 34 times to collect a consumer debt she never incurred. (Id. ¶¶ 16-17). When Johnson answered Ally Financial's calls, its representatives asked to speak with "William" instead of Johnson. (Id. ¶ 23). Johnson consistently told Ally Financial that it had called the incorrect party and asked representatives to stop calling her, but Ally Financial ostensibly persisted in its pursuit of Johnson's purported debt. (Id. ¶ 27). Johnson never granted Ally Financial consent to call her cell phone number. (Id. ¶ 25).

Johnson initiated this action with the filing of a complaint on June 9, 2016. (Doc. 1). She filed an amended complaint on August 8, 2016. (Doc. 12). Johnson's amended complaint contains class action allegations. (Id. ¶¶ 34-50). She avers that Ally Financial violated the Telephone Consumer Protection Act when it contacted putative class members' cell phone numbers using an automatic telephone dialing system and/or an artificial or prerecorded voice without the members' prior express consent. (Id. ¶¶ 34, 36).

Johnson's proposed class contains two subclasses, to wit: an autodialer subclass and a wrong number subclass. (Id. ¶ 34). The autodialer subclass consists of all persons in the United States who received a call from Ally Financial with the aid of an automatic telephone dialing system when Ally Financial's business records do not indicate it received prior express consent. (Id.) The wrong number subclass includes all individuals in the United States whose phone numbers Ally Financial dialed more than once using an automated telephone dialing system when it had intended to call a different person. (Id.) Johnson advances

Case 1:26-cv-00659-KM    Document 27-1    Filed 06/24/26    Page 20 of 105

Johnson v. Ally Financial Inc., Not Reported in Fed. Supp. (2017)

two claims in her complaint, *viz.*: standard violations of the Telephone Consumer Protection Act (Count 1) and knowing or willful violations of the Act (Count 2). (Id. ¶¶ 51-60).

## II. Legal Standard

Under Federal Rule of Civil Procedure 12(f), the court may strike from a pleading "any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). District courts have "considerable discretion" in resolving a Rule 12(f) motion. Krisa v. Equitable Life Assurance Soc'y, 109 F. Supp. 2d 316, 319 (M.D. Pa. 2000) (quoting N. Penn. Transfer, Inc. v. Victaulic Co. of Am., 859 F. Supp. 154, 158 (E.D. Pa. 1994)). In general, such a motion will be denied unless the allegations are severely prejudicial to one of the parties and unrelated to the plaintiff's claims. Id.; see also 5C Charles Alan Wright et al., Federal Practice & Procedure § 1382 (3d ed. 2016). A party is prejudiced when the challenged pleading "confuses the issues" or places an undue burden on the responding party. Karpov v. Karpov, 307 F.R.D. 345, 348 (D. Del. 2015).

## III. Discussion

**\*2** Ally Financial contends that the court should strike Johnson's class allegations from her amended complaint because her proposed subclasses are *prima facie* uncertifiable. (Doc. 18 at 1-2). As a threshold matter, Johnson disputes whether the court may strike class allegations in this procedural posture. (See Doc. 29 at 2-4). Johnson alternatively asserts that both subclasses are facially certifiable and satisfy the requirements of Federal Rules of Civil Procedure 23(a), 23(b)(2), and 23(b)(3). (See Doc. 29 at 7-10; Doc. 12 ¶ 34). The court will consider each argument *seriatim.*

### A. Propriety of Motion to Strike

Johnson argues that Ally Financial's motion to strike is an improper procedural device and that the court cannot consider arguments concerning class qualifications until Johnson submits a motion for class certification. (Doc. 29 at 2-4). Courts grant motions to strike "to clean up the pleadings, streamline litigation, and avoid unnecessary forays into immaterial matters." Wirt v. Bon-Ton Stores, Inc., 134 F. Supp. 3d 852, 857 (M.D. Pa. 2015) (quoting Goode v. LexisNexis Risk & Info. Analytics Grp., 284 F.R.D. 238, 243 (E.D. Pa. 2012)). However, striking class allegations is a "drastic remedy to be used sparingly because of the difficulty of deciding a case without a factual record." Id. (quoting Dann v. Lincoln Nat. Corp., 274 F.R.D. 139, 142-43 (E.D. Pa. 2011)).

The United States Court of Appeals for the Third Circuit counsels against striking class allegations if discovery may reveal a certifiable class. See Landsman & Funk PC v. Skinder-Strauss Assocs., 640 F.3d 72, 93-94 (3d Cir. 2011) (quoting Weiss v. Regal Collections, 385 F.3d 337, 347-48 & n.17 (3d Cir. 2004)), opinion reinstated in part, No. 09-3105, 2012 WL 2052685 (3d Cir. Apr. 17, 2012). The Third Circuit has nevertheless noted that there are a "rare few" instances in which "the complaint itself demonstrates that the requirements for maintaining a class action cannot be met." Id. at 93 n.30 (citing Rios v. State Farm Fire & Cas. Co., 469 F. Supp. 2d 727, 740 (S.D. Iowa 2007)). The court concludes that Ally Financial's motion is not an improper litigation device *per se* and that we may consider the merits of Ally Financial's motion to strike.

### B. Autodialer Subclass

Ally Financial contends that the court should strike Johnson's allegations regarding the proposed autodialer subclass because the class is defined through the lens of consent. (Doc. 18 at 12-14). The description of the subclass adopts a legal element of the Telephone Consumer Protection Act. (Id.) Such a subclass, according to Ally Financial, is facially uncertifiable because it is defined without reference to factual, objective criteria. (Id.) Ally Financial argues that the court would need to adjudicate each individual subclass member's claim on the merits to determine membership, rendering the subclass impermissibly "fail-safe." (Id. at 13-14).

Johnson remonstrates that the proposed autodialer subclass is not fail-safe. (Doc. 29 at 5-6). Her subclass specifically limits its members to those consumers who received calls from Ally Financial with the aid of an autodialer. (Doc. 12 ¶ 34). The proposed

Case 1:26-cv-00659-KM    Document 27-1    Filed 06/24/26    Page 21 of 105

Johnson v. Ally Financial Inc., Not Reported in Fed. Supp. (2017)

subclass further limits membership to those who Ally Financial called without prior express consent. (Id.) Johnson intends to test members' claims using Ally Financial's business records. (Id.) Johnson posits that these records constitute objective criteria which provide a mechanism for the court to identify subclass members. (Doc. 29 at 6-7).

**\*3** A fail-safe class bases its membership upon the validity of putative members' legal claims. Messner v. Northshore Univ. HealthSystem, 669 F.3d 802, 825 (7th Cir. 2012). Fail-safe classes are not ascertainable until the end of litigation, as a finding of liability is a necessary condition for membership in the class. See, e.g., Zarichny v. Complete Payment Recovery Servs., Inc., 80 F. Supp. 3d 610, 623-24 (E.D. Pa. 2015) (citing Slapikas v. First Am. Title Ins. Co., 250 F.R.D. 232, 250-51 (W.D. Pa. 2008)). The Third Circuit has not explicitly considered whether fail-safe classes are permissible, but has cited approvingly to cases in other circuits that have categorically disallowed fail-safe classes. See Byrd v. Aaron's Inc., 784 F.3d 154, 167 (3d Cir. 2015) (quoting In re Nexium Antitrust Litig., 777 F.3d 9, 22 (1st Cir. 2015); Messner, 669 F.3d at 825). Two recent decisions in the Eastern District of Pennsylvania conclude that fail-safe classes are not certifiable. See O.P. Schuman & Sons, Inc. v. DJM Advisory Grp., LLC, No. 16-3563, 2017 WL 634069, at \*4 (E.D. Pa. Feb. 16, 2017); Zarichny, 80 F. Supp. 3d at 623-24.

The principal concern with fail-safe classes is ascertainability. Ascertainability is an "essential prerequisite" for class actions brought under Federal Rule of Civil Procedure 23(b)(3).[1] Marcus v. BMW of N. Am., LLC, 687 F.3d 583, 592-93 (3d Cir. 2012) (citations omitted). The ascertainability inquiry requires plaintiffs to demonstrate that a proposed class is "defined with reference to objective criteria," and that there is "a reliable and administratively feasible mechanism for determining whether putative class members fall within the class definition." Hayes v. Wal-Mart Stores, Inc., 725 F.3d 349, 355 (3d Cir. 2013) (citing Marcus, 687 F.3d at 593-94). The court may not certify a class if it cannot identity class members "without extensive and individualized fact-finding or 'mini-trials.' " Marcus, 687 F.3d at 593. But the ascertainability analysis is exceedingly narrow and wholly distinct from other class certification requirements. Byrd, 784 F.3d at 165. The requirement demands only that courts be able to identify putative class members; it does not require exacting precision and the ability to find *all* class members at the moment of class certification. Id. at 163 (citing Carrera v. Bayer Corp., 727 F.3d 300, 308 n.2 (3d Cir. 2013)).

Ally Financial relies heavily upon Zarichny in support of its argument. (Doc. 18 at 5-7, 10; Doc. 33 at 4, 7). The plaintiff in Zarichny defined a putative class as those " 'who received one or more telephone calls from [d]efendants on the individual's cellular telephone that was initiated using an automatic telephone dialing system' without prior consent" in violation of the Telephone Consumer Protection Act. Zarichny, 80 F. Supp. 3d at 614 (citation omitted). The court held that the plaintiff pleaded a fail-safe class which *ipso facto* failed to satisfy the ascertainability requirement. Id. at 625-26 (quoting Erin L. Geller, *The Fail-Safe Class as an Independent Bar to Class Certification*, 81 FORDHAM L. REV. 2769, 2782 (2013)). The court concluded that it could not provide notice to potential class members without conducting "extensive fact-finding" which the ascertainability requirement seeks to quell. Id. The putative class also required the court to identify class members using only their "say so." Id. at 625 (quoting Marcus, 687 F.3d at 594).

**\*4** Another recent case from the Eastern District of Pennsylvania is instructive with respect to the issue *sub judice.* The defendant in Abella v. Student Aid Center, Inc., No. 15-3067, 2015 WL 6599747 (E.D. Pa. Oct. 30, 2015), also sought to strike class allegations relating to violations of the Telephone Consumer Protection Act. Abella, 2015 WL 6599747, at \*3-4. The court noted several distinctions between the proposed class therein and the class allegations in Zarichny. The putative class definition in Abella did not reference the existence or use of an automated telephone dialing system like the proposed class in Zarichny, eliminating the risk that the class was fail-safe. Id. at \*4 (citation omitted). The plaintiff also defined class membership by the defendant's business records—as opposed to putative class member's "say so"—satisfying the ascertainability requirement by providing objective criteria and a feasible identification mechanism. Id. (citing In re Cmty. Bank of N. Va. Mortg. Lending Practices Litig., 795 F.3d 380, 397 (3d Cir. 2015)).

We conclude that Ally Financial has not demonstrated Johnson's autodialer subclass is facially uncertifiable. The subclass is properly "defined with reference to objective criteria." Hayes, 725 F.3d at 355 (citing Marcus, 687 F.3d at 593-94). The subclass specifically references Ally Financial's business records which may (with discovery) reveal an ascertainable subclass. The records constitute factual criteria outside of the legal requirements of the Telephone Consumer Protection Act. The records also

Case 1:26-cv-00659-KM    Document 27-1    Filed 06/24/26    Page 22 of 105

Johnson v. Ally Financial Inc., Not Reported in Fed. Supp. (2017)

allow Johnson to identify potential subclass members without relying exclusively on member "say so." Hence, Ally Financial's records may allow Johnson to identify putative subclass members. See Carrera, 727 F.3d at 308 n.2.

The court also finds that there is "a reliable and administratively feasible mechanism for determining whether putative class members fall within the class definition." Hayes, 725 F.3d at 355 (citing Marcus, 687 F.3d at 593-94). Ally Financial's business records may very well obviate the need for a series of "mini-trials" or extensive, individualized findings of fact. See Marcus, 687 F.3d at 594. Notwithstanding Johnson's reference to consent in terms of her subclass definition, discovery will demonstrate whether Ally Financial's records explain how, if at all, it obtained consent from consumers. The court will accordingly deny Ally Financial's motion (Doc. 17) to strike Johnson's autodialer class allegations.

### C. Wrong Number Subclass

Ally Financial asserts that the wrong number subclass is also *prima facie* uncertifiable because it "is facially overbroad and lacks commonality." (Doc. 18 at 2). Commonality requires plaintiffs to demonstrate that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Courts generally require "class members [to] 'have suffered the same injury' " to satisfy Rule 23's commonality analysis. Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 350-51 (2011) (quoting Gen. Tel. Co. of the Sw. v. Falcon, 457 U.S. 147, 157 (1982)). In other words, a plaintiff must raise a claim that "is capable of classwide resolution —which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." Id. at 350. The commonality requirement is not especially arduous. The Third Circuit has acknowledged commonality "even when not all members of the plaintiff class suffered an actual injury[,] ... when class members did not have identical claims[,] ... and, most dramatically, when some members' claims were arguably not even viable." *In re* Cmty. Bank, 795 F.3d at 397 (citations omitted).

Ally Financial contends that "there are significant factual differences among class members." (Doc. 18 at 16). But Ally Financial's arguments fail to consider the primary question underlying the commonality inquiry, to wit: whether members of Johnson's putative subclass "have suffered the same injury." Dukes, 564 U.S. at 349-50 (quoting Falcon, 457 U.S. at 157). We conclude that discovery is necessary to determine whether Johnson's proposed subclass satisfies Rule 23's commonality threshold. Johnson alleges a subclass whose members share a common, essential injury, namely receiving telephone calls from Ally Financial yet not the person Ally Financial intended to call. (Doc. 12 ¶ 34). Discovery may reveal that Johnson's proposed wrong number subclass contains members with disparate injuries. The court cannot, however, conclude that this subclass is facially uncertifiable at this juncture. The court will accordingly deny Ally Financial's motion (Doc. 17) to strike Johnson's wrong number class allegations.[2]

### IV. Conclusion

 **\*5**  For the foregoing reasons, the court will deny Ally Financial's motion (Doc. 17) to strike Johnson's class allegations. An appropriate order shall issue.

**All Citations**

Not Reported in Fed. Supp., 2017 WL 3433689

Footnotes

1    Johnson also cites Federal Rule of Civil Procedure 23(b)(2) to support her proposed subclasses. (Doc. 12 ¶ 34). Ascertainability is not a certification requirement for Rule 23(b)(2) classes in which class members seek only injunctive and declaratory relief. Shelton v. Bledsoe, 775 F.3d 554, 559-63 (3d Cir. 2015). Both parties' filings discuss ascertainability at length without distinguishing between Johnson's proposed subclass types or discussing the applicability of Shelton in Rule 23(b)(2) classes where plaintiffs seek statutory

Johnson v. Ally Financial Inc., Not Reported in Fed. Supp. (2017)

Case 1:26-cv-00659-KM    Document 27-1    Filed 06/24/26    Page 23 of 105

damages. The Third Circuit limited its holding in <u>Shelton</u> to Rule 23(b)(2) classes where plaintiffs seek only non-monetary damages. See <u>id.</u> We accordingly analyze ascertainability with respect to both putative subclasses.

2    Ally Financial provided supplemental authority to the court on March 30, 2017. (Doc. 34); <u>see</u> Davis v. AT&T Corp., No. 15-2342, 2017 WL 1155350 (S.D. Cal. Mar. 28, 2017). The court concludes that this authority undergirds our conclusion, namely, that any ruling regarding class certification must wait until Johnson submits a motion for class certification.

---

**End of Document**           © 2026 Thomson Reuters. No claim to original U.S. Government Works.

2026 WL 1649101
Only the Westlaw citation is currently available.
United States District Court, E.D. Texas, Sherman Division.

KIMBERLY STARLING, Plaintiff,

v.

HOMEOVER GENERAL CONTRACTORS, et al., Defendants.

Case No. 4:25-cv-993-JDK
|
Filed 06/08/2026

**MEMORANDUM OPINION AND ORDER**

JEREMY D. KERNODLE UNITED STATES DISTRICT JUDGE

 **\*1** Before the Court is Defendant HomeOver General Contractors' motion to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6). Docket No. 6.

For the reasons explained below, the Court grants HomeOver's motion to dismiss Counts I and III and denies the motion to dismiss the remaining Counts.

**I.**

Plaintiff Kimberly Starling filed this case, purporting to be a class action, under the Telephone Consumer Protection Act ("TCPA") of 1991, codified at 47 U.S.C. § 227. The named Defendants are HomeOver and Storm Leads Innovation—an entity that has not been served and has not appeared.

Two telephone numbers are relevant here: Starling's 689 number is alleged to be a residential, non-commercial cellular telephone number; Starling's 442 number is alleged to be a residential, non-commercial landline telephone number. Docket No. 1 (Complaint, herein "Compl.") ¶¶ 19–20. Starling states that both "numbers were listed on the Do Not Call Registry for years prior to the calls at issue." *Id.*

Starling alleges that she received prohibited telephone solicitations from Storm Leads, acting as an agent for HomeOver, at both phone numbers from November 2021 to June 2022. According to Starling, "Storm Leads Innovation violated the TCPA by making telemarketing calls to Plaintiff ... [who was] listed on the National Do Not Call Registry ... by making telemarketing calls without the accurate provision of Caller ID Name (CNAM), as well as [by] calling people who had previously asked to no longer receive calls." Compl. ¶ 3. "These calls were placed by Storm Leads for the benefit of HomeOver General Contractors, LLC, who hired Storm Leads to place the calls at issue." *Id.*

The calls are alleged as follows:

  **Date** November 16, 2021 November 17, 2021 November 17, 2021 January 3, 2022 February 10, 2022 March 10, 2022 June 6, 2022 June 6, 2022 **Caller** Call displaying 817-562-4753; Starling alleges that "the caller identified themselves as 'HomeOver' and solicited Plaintiff to purchase and schedule a roofing inspection"; Starling made an appointment for the next day. Compl. ¶ 27. "An individual identifying himself as Clayton Kramer from 'HomeOver General' called Plaintiff to

confirm the appointment and texted Plaintiff a business card. Plaintiff informed him Plaintiff was not available and would call back to reschedule." Compl. ¶ 28. Starling emailed the owner of HomeOver—Josh Nelson—"regarding the illegal calls." No further information about the email is alleged by Starling. Nelson then called Starling and provided contact information for Storm Leads, which Nelson stated was responsible for the calls. Compl. ¶ 29. Nelson gave 888-459-9138 as a callback number. *Id.* Call displaying 817-753-1543. Caller identified himself as calling from "HomeOver General Contractors." Starling made a roofing inspection appointment. Caller provided 888-459-9138 as a callback number. Compl. ¶ 31. Call displaying 817-285-5041. Caller identified himself as calling from "HomeOver General Contractors." Caller again provided 888-459-9138 as a callback number. Starling again made an appointment, but no one appeared for the inspection. Compl. ¶ 32. Call displaying 469-896-0151. Caller identified himself as calling from "HomeOver General Contractors." Starling asked to be added to the caller's do-not-call list. Compl. ¶ 33. This is the first time this allegation is made in the complaint. Call displaying 817-945-4531. Caller "used a fake alias—'TM Roofing.' " Caller provided the 888-459-9138 callback number. Starling states that she and the caller could not agree on a time for a roofing inspection. Compl. ¶ 34. Eight minutes later, the same caller called again to reschedule, and an appointment was scheduled with Starling. Compl. ¶ 35. **Starling's Phone #** Cell (689#) Starling does not identify which phone number was called. Starling does not identify which phone number was called. Landline (442#) Cell (689#) Cell (689#) Landline (442#) Landline (442#)

 **\*2**  Based on these calls and the information provided to Starling in her correspondence with Josh Nelson, HomeOver's owner, Starling alleges that Storm Leads is a "lead generator who was hired by HomeOver to sell leads to HomeOver using HomeOver's own brand name." Compl. ¶ 42. Therefore, Starling alleges, "[t]he purpose of the calls sent by Defendant Storm Leads was ... to solicit the Plaintiff to sign up for the Defendant HomeOver's services." *Id.* ¶ 43. "HomeOver hired Storm Leads to contact potential new leads and customers en masse and only sell them the purportedly interested ones." *Id.* ¶ 45.

The complaint asserts four counts against HomeOver and Storm Leads: Count I, violation of the TCPA, 47 U.S.C. § 227 (DNC registry claim); Count II, violation of the TCPA, 47 U.S.C. § 227 (caller ID claim); Count III, violation of the TCPA, 47 U.S.C. § 227 (internal DNC claim); and Count IV, violation of Texas Business and Commerce Code § 302.101.

## II.

Under Rule 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). When deciding a Rule 12(b)(6) motion, the Court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff. *Thurman v. Med. Transp. Mgmt., Inc.*, 982 F.3d 953, 955 (5th Cir. 2020) (citation omitted). Such "[f]actual allegations must be enough to raise a right to relief above the speculative level," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007), and must "make relief plausible, not merely conceivable, when taken as true," *United States ex rel. Grubbs v. Kanneganti*, 565 F.3d 180, 186 (5th Cir. 2009). "A plaintiff need not submit evidence to establish a prima facie case at the pleading stage; rather, to survive a motion to dismiss, a plaintiff need only 'plausibly allege facts going to the ultimate elements of the claim.' " *Stamps v. Univ. of Texas at Austin*, 2022 WL 526169, at *4 (W.D. Tex. Feb. 22, 2022) (quoting *Wright v. Union Pac. R.R. Co.*, 990 F.3d 428, 433 (5th Cir. 2021)).

### A.

HomeOver first seeks dismissal of all claims because Starling failed to allege that HomeOver itself made any unlawful calls and failed to allege that HomeOver is vicariously liable for the calls made by Storm Leads. Docket No. 6 at 8–12. Starling, however, adequately alleged that Storm Leads acted as HomeOver's agent.

Under the TCPA, an entity that does not directly initiate a call may nevertheless be "held vicariously liable under federal common law agency principles for a TCPA violation by a third-party telemarketer." *In re Joint Petition filed by Dish Network, LLC*, 28 F.C.C. Rcd. at 6582 ¶ 24 (2013); *see also, e.g., Hunsinger v. Dynata LLC*, 2023 WL 2377481, at *5 (N.D. Tex. Feb. 7, 2023),

*report and recommendation adopted*, 2023 WL 2386710 (N.D. Tex. Mar. 4, 2023) ("[A] defendant may be held vicariously liable for TCPA violations where the plaintiff establishes an agency relationship ... between the defendant and a third-party caller."); *Guadian v. DebtBlue LLC*, 2024 WL 5184488, at *3 (W.D. Tex. Apr. 16, 2024) (same); *Gonzalez v. Sav. Bank Mut. Life Ins. Co. of Mass.*, 2025 WL 1145266, at *4 (W.D. Tex. Apr. 15, 2025) (same); *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 168 (2016) (finding "no cause to question" the *Dish Network* holding "that, under federal common-law principles of agency, there is vicarious liability for TCPA violations").

One way of alleging an agency relationship is stating that the principal assigned the agent's task and controlled the means and details of how the agent would accomplish the task. *Indian Harbor Ins. Co. v. Valley Forge Ins. Grp.*, 535 F.3d 359, 364 (5th Cir. 2008). Another way is alleging that the principal "ratified" the agent's acts. *Schakosky v. Client Servs., Inc.*, 634 F. Supp. 2d 732, 735 (E.D. Tex. 2007). "Ratification may occur when a principal, though he [or she] had no knowledge originally of the unauthorized act of his agent, retains the benefits of the transaction after acquiring full knowledge." *London v. Gums*, 2014 WL 546914, at *8 (S.D. Tex. Feb. 10, 2014) (quoting *Land Title Co. of Dallas., Inc. v. F.M. Stigler, Inc.*, 609 S.W.2d 754, 756 (Tex. 1980)).

 **\*3**  Here, Starling alleges that HomeOver ratified Storm Leads's unlawful calls. According to Starling, Storm Leads called her to screen for a potential sale and collected information for HomeOver to facilitate an appointment. *See* Compl. ¶¶ 29–38. HomeOver then followed up by calling Starling and attempting to schedule an appointment to inspect her roof. *Id.* ¶ 28. Indeed, Starling alleges that, when she spoke with HomeOver's owner, she told him of the calls. Compl. ¶ 29. The calls then continued for several months, and HomeOver continued to attempt to schedule a roof inspection with Starling. *Id.* ¶ 31. These facts, as pleaded, demonstrate that HomeOver had "full knowledge of the underlying circumstances" and retained "the benefits of a transaction." *Schakosky*, 634 F. Supp. 2d at 735. Thus, construing Starling's allegations in the light most favorable to her, the Court concludes that Starling has sufficiently alleged that HomeOver may be vicariously liable for Storm Leads's purported violations of the TCPA under a ratification theory.[1]

Accordingly, the Court denies HomeOver's motion to dismiss the claims for failing to plead an agency relationship.

**B.**

Count I alleges that Home Over violated the TCPA by initiating a "telephone solicitation to a residential telephone subscriber who has registered his or her telephone number on the National Do Not Call Registry." Docket No. 1 ¶ 77. HomeOver argues that this claim should be dismissed because the complaint fails to allege that the calls to Starling were "solicitations" prohibited under the TCPA. The Court agrees.

The TCPA defines a prohibited "solicitation" as a telephone call "for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services," but does *not* include "a call ... to any person with whom the caller has an established business relationship." 47 U.S.C. § 227(a)(4). An "established business relationship" means a "prior or existing relationship formed by a voluntary two-way communication between a person or entity and a residential subscriber with or without an exchange of consideration, on the basis of the subscriber's purchase or transaction with the entity." 47 C.F.R. § 64.1200(f)(5). A plaintiff who schedules an appointment with a solicitor establishes a business relationship, and thus subsequent calls are not "solicitations." *E.g., Morris v. Copart*, 2016 WL 6608874, at *9 (E.D. Tex. Nov. 9, 2016) ("Plaintiff's false affirmation that he had a vehicle to donate established a business relationship, excusing subsequent calls made in furtherance of that business relationship and for the stated purpose of that relationship—to effectuate Plaintiff's donation of a car."); *Callier v. Optimum Solar USA*, 2024 WL 2044832, at *6 (W.D. Tex. Mar. 21, 2024), *report and recommendation adopted sub nom. Callier v. Optimum Solar USA & Misael Guzman*, 2024 WL 1531415 (W.D. Tex. Apr. 9, 2024) ("Plaintiff['s] setting an appointment with the telemarketer constitutes an invitation for a telephone solicitation from Defendant Guzman.").

Here, Starling alleges that she made an appointment with HomeOver to inspect her roof during the very first call to her cellphone on November 16, 2021. Compl. ¶ 27. The next day, a HomeOver employee called Starling to confirm the appointment. *Id.* ¶ 28. Starling then invited further contact from HomeOver by telling the caller that she was unavailable and would have to call back to reschedule. *Id.* ¶ 28. Although Starling claims that she also emailed the owner of HomeOver "regarding the illegal calls," the complaint does not say that Starling terminated the parties' business relationship. *Id.* ¶¶ 29–30. In any event, the next time Starling was contacted, she *again* made an appointment for a roof inspection. *Id.* ¶ 31. Two more calls followed until Starling requested to be added to the internal do-not-call list on March 10, 2022. *Id.* ¶ 33. Thereafter, HomeOver made no further calls to Starling.

**\*4**  Accordingly, the Court concludes that Count I does not state a violation of 47 U.S.C. § 227(c) and should be dismissed.

**C.**

Count II alleges that HomeOver violated the TCPA by making telemarketing calls without providing the caller identification information. Docket No. 1 ¶ 85. Starling cites 47 C.F.R. § 64.1601(e)(1) as the source of the caller-identification requirement. *Id.* ¶¶ 83–84. HomeOver argues that this Count should be dismissed because there is no private right of action to enforce § 64.1601(e)(1) and because the calls were not "telemarketing" calls. Docket No. 6 at 18. HomeOver, however, misinterprets both the regulation and the statute.

Section 64.1601(e)(1) states: "[A]ny person or entity that engages in telemarketing, as defined in section 64.1200(f)(1) must transmit caller identification information," including "either CPN [calling party number] or ANI [automatic numbering information], and, when available by the telemarketer's carrier, the name of the telemarketer." When the Federal Communications Commission promulgated § 64.1601(e), it cited 47 U.S.C. § 227(c) and (d) as authority. *See* 68 Fed. Reg. 44170. Section 227(c) states that a person who has received a telephone call "in violation of the regulations prescribed under this subsection" may bring "an action based on [the] violation." Section 227(d), in contrast, includes no private right of action.

Thus, the issue is whether § 64.1601(e)(1) is a regulation "prescribed under" § 227(c) or § 227(d). After reviewing the statute, the regulation, and the regulatory history, the Court concludes that § 227(c) is the source of the FCC's authority to promulgate § 64.1601(e)(1). Section 227(c) directs the FCC to "initiate a rulemaking proceeding concerning the need to protect residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object," including by comparing and evaluating "telephone network technologies." 47 U.S.C. § 227(c)(1). For years, the FCC "has considered caller ID a § 227(c) 'network technology.' " *Newell v. JR Capital, LLC*, 791 F. Supp. 3d 571, 577 (E.D. Pa. 2025) (citing the regulatory history). Further, the FCC promulgated § 64.1601(e) simultaneously with its creation of the National Do-Not-Call database as part of a general package of "new rules to provide consumers with several options for avoiding unwanted telephone solicitations." 68 Fed. Reg. 44144 (citing 47 U.S.C. § 227(c) as the FCC's authority to create the Do-Not-Call list). And the FCC expressly referred to caller ID as one of the "network technologies" it evaluated "to protect consumer privacy" "as required by 47 U.S.C. § 227(c)(1)(A)." 68 Fed. Reg. 44147. "In sum, the administrative history unequivocally demonstrates that caller ID is a network technology, assessed by the FCC as one available method to protect residential telephone subscribers' privacy rights under § 277(c)." *Newell*, 791 F. Supp. 3d at 578; *see also Dobronski v. Selectquote Ins. Servs.*, 773 F. Supp. 3d 373, 380 (E.D. Mich. 2025) (holding same); *Novia v. Mobiz, Inc.*, 2026 WL 752181 (D. Mass. March 17, 2026) (holding same).[2]

**\*5**  HomeOver also argues that Starling failed to sufficiently allege that the calls constituted "telemarketing." Docket No. 6 at 18. "Telemarketing" means "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person." 47 C.F.R. § 64.1200. Notably, however, the exception for "business relationships," present in the definition of "solicitation" in § 227(a)(4) as discussed above, is absent here. Further, Starling alleges that HomeOver, acting through Storm Leads, initiated the telephone calls at issue here for the purpose of encouraging the purchase of roofing services. Compl. ¶¶ 3, 38. This is sufficient to allege that the calls were "telemarketing."

The request to dismiss Count II is denied.

## D.

Count III alleges that HomeOver violated the TCPA by "sending telemarketing calls" to Starling despite her request to be added to HomeOver's internal do-not-call list. Docket No. 1 ¶¶ 90–92. HomeOver argues that this count fails for several reasons, including that Starling does not allege that HomeOver called her after making the request. Docket No. 6 at 17–18. The Court agrees.

Starling alleges that she requested HomeOver to "place her cellular telephone number on Defendant HomeOver's internal Do Not Call list" during the March 10, 2022 call to her cell. Docket No. 1 ¶¶ 25, 33. The only call allegedly made to Starling after this request, however, was to Starling's landline from "TM Roofing." Docket No. 1 ¶¶ 34–35. Thus, this claim fails because HomeOver did not call her cell after she made her do-not-call request. The claim also fails because Starling does not adequately allege that TM Roofing was in fact HomeOver. Starling claims that TM Roofing was "a fake alias" for HomeOver, but she pleads no facts to support the claim, and in fact, Starling alleges that the callback number provided by TM Roofing belonged to Storm Leads, not HomeOver. Docket No. 1 ¶¶ 29, 34.

## E.

Count IV alleges that HomeOver violated Texas Business and Commerce Code ("TBCC") § 302.101 by making telephone solicitations despite "not holding a registration certificate for the business location from which the telephone solicitation is made." Docket No. 1 ¶ 94. HomeOver argues that this claim should be dismissed because the complaint fails to allege that § 302.101 applies here.

Section 302.101 prohibits a seller from "mak[ing] a telephone solicitation from a location in this state or to a purchaser located in this state unless the seller holds a registration certificate for the business location from which the telephone solicitation is made." TEX. BUS. & COMM. CODE § 302.101(a). HomeOver first argues that it never made a "telephone solicitation" to Starling—for the same reason it did not make a "solicitation" under the TCPA, as discussed above. Docket No. 6 at 19. But the TBCC defines "solicitation" broadly to mean a call "initiated by a seller ... to induce a person to purchase, rent, claim, or receive an item." § 302.001(7). And, unlike the TCPA, the TBCC does not include an exception for calls "to any person with whom the caller has an established business relationship," 47 U.S.C. § 227(a)(4). Thus, the complaint adequately alleges that HomeOver made a "telephone solicitation" to Starling. Compl. ¶ 27 ("The caller identified themselves as 'HomeOver' and solicited Plaintiff to purchase and schedule a roofing inspection in connection with a roof-replacement job."); id. ¶ 31 ("The caller identified as calling from 'HomeOver General Contractors,' [and] solicited Plaintiff for a roof inspection related to roof-replacement work.").

HomeOver also argues that Starling never alleged she was located in Texas or that the calls were made from Texas, as § 302.101 requires. But the complaint states that Starling's cell and landline numbers had an 817-area code, which is located in North Texas. Compl. ¶¶ 19–20. And she alleges that HomeOver is "a Carrollton, Texas-based company that sells roofing and contracting services." Compl. ¶ 5. Thus, viewing the allegations in the light most favorable to Starling, the Court concludes that Starling has alleged that she was "located in this State," as required by § 302.101.

**\*6** HomeOver's request to dismiss this count is denied.

### F.

Finally, HomeOver seeks the dismissal of two of Starling's requests for relief—attorneys' fees and injunctive relief. Docket No. 6 at 19. Determining the proper remedy at this stage in the proceeding, however, is premature. *See, e.g., Park v. Kruse,* 2013 WL 12124253, at *6 (N.D. Tex. Mar. 8, 2013) ("Consideration of particular remedies requested is premature at the motion to dismiss stage.").

### III.

In sum, the Court **GRANTS** HomeOver's motion to dismiss Counts I and III and **DISMISSES** these claims **WITHOUT PREJUDICE**. The motion to dismiss is **DENIED** in all other respects.

So **ORDERED** and **SIGNED** this **8th** day of **June, 2026.**

**All Citations**

Slip Copy, 2026 WL 1649101

Footnotes

1    The cases cited by HomeOver are inapposite because the principals in those cases were unaware of the calls, unlike HomeOver here. *Gonzalez v. Sav. Bank Mut. Life Ins. Co. of Mass.*, 2025 WL 1145266, at *5 (W.D. Tex. Apr. 15, 2025) (dismissing TCPA claims and finding no agency relationship based on a ratification theory because plaintiff failed to allege that defendant knew of the telemarketer's calls); *Callier v. SunPath Ltd.*, 2020 WL 10285659, at *4 (W.D. Tex. Aug. 10, 2020) ("Although [defendants] undoubtedly benefited from the marketing calls, nothing in the pleadings indicates either [was] aware of the actions allegedly in violation of the TCPA," which "is necessary to meet the standard for ratification ....").

2    Some courts have held that § 227(d) is the source of the FCC's authority to promulgate § 64.1601(e). *See Worsham v. Travel Options, Inc.*, 2016 WL 4592373, at *7 (D. Md. Sept. 2, 2016), *aff'd*, 678 F. App'x 165 (4th Cir. 2017); *Dobronski v. Total Ins. Brokers, LLC*, 2021 WL 4452218, at *2 (E.D. Mich. Sept. 29, 2021); *Meyer v. Cap. All. Grp.*, 2017 WL 5138316, at *17 (S.D. Cal. Nov. 6, 2017); *Griffin v. Am.-Amicable Life Ins. Co. of Texas*, 2024 WL 4333373, at *5 (D. Or. Sept. 27, 2024). But these cases are unpersuasive, as § 227(d) is expressly limited to telemarketing calls made using fax machines, automatic dialing systems, and artificial voice messages. Section 64.1601(e), in contrast, is not so limited. *See Newell*, 791 F. Supp. 3d at 579 ("It is difficult to discern how § 64.1601(e) could have been lawfully promulgated under § 227(d) without exceeding the FCC's delegated authority.").

**End of Document**                    © 2026 Thomson Reuters. No claim to original U.S. Government Works.

Martinez v. TD Bank USA, N.A., Not Reported in Fed. Supp. (2017)

Case 1:26-cv-00659-KM    Document 27-1    Filed 06/24/26    Page 30 of 105

2017 WL 2829601
Only the Westlaw citation is currently available.
United States District Court, D. New Jersey.

Charlene MARTINEZ, individually and on behalf of all others similarly situated, Plaintiff,

v.

TD BANK USA, N.A., a National Bank, and Target
Corporation, a Minnesota corporation, Defendants.

Civil Action No. 15-7712(JBS/AMD)
|
Signed 06/30/2017

**Attorneys and Law Firms**

Stefan Louis Coleman, Esq., 1072 Madison Ave., Suite 1, Lakewood, NJ 08701, Attorney for Plaintiff.

Jarrod D. Shaw, Esq., MCGUIRE WOODS LLP, 625 Liberty Avenue, 23rd Floor, Pittsburgh, PA 1522, Attorney for Defendants.

**OPINION**

JEROME B. SIMANDLE, U.S. District Judge

**I. INTRODUCTION**

**\*1** Plaintiff Charlene Martinez brings this putative class action against Defendants TD Bank USA, N.A. ("TD Bank") and Target Corporation ("Target"), alleging violations of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, and a California law entitled the Rosenthal Fair Debt Collection Practices Act ("RFDCPA"), Cal. Civ. Code §§ 1788-1788.33, arising from telephone calls placed in connection with Defendants' efforts to collect a consumer debt from Plaintiff's credit card. [Docket Item 25.] The Court previously dismissed Plaintiff's claim under California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200, et seq., for lack of standing. [Docket Items 60 & 61.] Before the Court is Defendants' motion for summary judgment, or, in the alternative, to strike Plaintiff's class allegations. [Docket Item 54.] Plaintiff has filed a Response [Docket Entry 57] and Defendants have filed a Reply [Docket Entry 62].

Defendants argue, first, that there is no genuine dispute of material fact regarding whether Defendants violated the TCPA because Plaintiff provided prior express consent before all of the calls at issue and did not revoke that consent before any of the calls were made. Second, Defendants argue that there is no genuine dispute of material fact as to whether harassment occurred within the meaning of the RFDCPA and summary judgment in their favor is appropriate. Defendants also argued that they were entitled to summary judgment as to Plaintiff's UCL claim, as that claim had not yet been dismissed at the time when Defendants filed the instant motion. Finally, Defendants argue that Plaintiff's class allegations should be stricken as they improperly propose a fail-safe class.

For the reasons set forth below, the Court will grant in part and deny in part Defendants' motion for summary judgment and will strike Plaintiff's class allegations.

**II. BACKGROUND**[1]

TD Bank is a large national bank chain that, inter alia, "owns and underwrites a portfolio of credit card accounts." [FAC ¶ 1.] Target is a corporation headquartered in Minnesota and doing business in New Jersey and nationwide. [Id. at ¶ 8.]

Plaintiff Charlene Martinez, a California resident, opened a Target credit card account in 2007. At all times relevant to this action, Target was the servicer of her credit card account. When Plaintiff opened the account, she agreed that Target or its agents were permitted to call her, including her mobile telephone, regarding her account, and that they could make such calls using an automated dialing/announcing device. [Pl. Statement of Material Facts in Opp., Docket Item 58 ¶¶ 1-3.]

 **\*2**  Plaintiff obtained the cell phone number at issue here, ending in -2420, in 2011. When she updated her account information with Target on its website on September 17, 2012, she provided this number as her "home" telephone number and received a disclosure that stated that, by providing her phone number on that page, she consented to receiving, at that phone number, autodialed and prerecorded calls from Target or on Target's behalf. Plaintiff then clicked "Submit" after that disclosure was provided. [Id. at ¶¶ 4-9.]

Before that date, Plaintiff had updated her account information (e.g., her address or her phone number) in other ways: by writing the new address on her monthly statement, by calling Target and using Target's automated phone system, and by calling Target and speaking to a live customer service representative. [Id. at ¶¶ 12(a)-(e).] At one point, Plaintiff called Target's customer service and spoke to a live representative to change her phone number; on another occasion, she called Target's customer service and spoke to a live representative to revoke her consent for Target to call that number (ending in -2460). [Id. at ¶¶ 12(f) & (g).] On September 9, 2013 (almost one year after Plaintiff provided the -2420 number on Target's website), Plaintiff called Target and provided an updated address to a live customer service representative; she did not provide an updated phone number during that conversation. [Id. at ¶ 12(i).] On July 9, 2014, Plaintiff again used Target's website to provide an updated home address and did not change the phone number from the -2420 number. [Id. at ¶ 12(j).]

Plaintiff had landline telephone service in her name from 2014 to 2015. [Id. at ¶ 13.]

Plaintiff's Target credit card account became delinquent sometime in late 2014; between August 29, 2014 and April 15, 2015, Target placed 165 calls to Plaintiff's cell phone regarding the delinquent account. [Id. at ¶¶ 14-15.] Plaintiff concedes the accuracy of Target's dialer records as to the "date, time, content, and duration of Defendants' calls to Plaintiff." [Id. at ¶ 16.] On 19 of those days, Plaintiff received two calls per day; on two days, she received three calls per day. Of the 165 calls, 162 calls had durations of 0 seconds, i.e., were not answered by Plaintiff or another party. [Id. at ¶¶ 17(a)-(e).] On August 29, 2014, a 6-second call occurred where the person who answered stated that Plaintiff was not home; on August 30, 2014, a 487-second call occurred where the person who answered promised to pay; and on April 15, 2015, a 159-second call occurred where Plaintiff told Target she was filing for bankruptcy. [Id. at ¶ 17(f).]

While Plaintiff initially alleged that she spoke with Target on April 14, 2015 and told them to stop calling her, she later amended that to state that she spoke with Target both on April 14 and April 15; she also stated in her deposition that it is possible that her memory is incorrect. While at one point during this case, Plaintiff stated that she called Defendants to ask them to stop calling the -2420 number, she has no record of making such a call; generally speaking, Plaintiff cannot contradict Target's dialer records because she does not have any call logs and cannot estimate the number of calls she received between August of 2014 and April of 2015. [Id. at 18-20.]

Plaintiff alleges that on April 10, 2015, Plaintiff's bankruptcy attorney, Daniel Shay, faxed cease-and-desist letters to two fax numbers, "revoke[ing] any prior express consent that may have been given [by Plaintiff or her husband] to receive telephone calls, especially to Clients' cellular telephones, from an Automated Telephone Dialing System, or a pre-recorded voice" as outlined in the TCPA." The letters were faxed to two numbers: (856) 533-1138 and (302) 683-6889. The transmission report for the faxes indicated that the transmission for each was "OK." [Pl. Supp. Statement of Material Facts in Opp., Docket Item 59 at ¶¶ 1-3, citing Docket Item 58-2 at ¶¶ 4 & 5 and Exhs. 1 & 2.] Defendants dispute these factual allegations inasmuch as

Case 1:26-cv-00659-KM    Document 27-1    Filed 06/24/26    Page 32 of 105

Martinez v. TD Bank USA, N.A., Not Reported in Fed. Supp. (2017)

they "have no record of receiving the cease and desist letters." [Def. Response to Statement of Material Facts in Opp., Docket Item 63 at ¶¶ 1-3.]

**\*3**  The (856) 533-1138 number receives faxes for TD Bank, N.A.'s Business Solutions group. However, Defendants note that TD Bank, N.A. "is a different entity than the one related to the Target REDcard." [Docket Item 63 at ¶ 4, citing Docket Item 56-9 at 4.]

The (302) 683-6889 number receives faxes for TD Bank USA, N.A. as well as for TD Bank, N.A.; however, Defendants note that "the number was not provided as a method to communicate regarding the Target REDcard." [Docket Item 63 at ¶ 5, citing Docket Item 56-9 at 4.]

During the deposition of Target's Rule 30(b)(6) designee, Susan Wolf, Ms. Wolf was unable to state the fax number where cease-and-desist letters (or other revocations of consent) could or should be sent; however, Defendants point out, Ms. Wolf stated that, while she did not know the number, it "might" be found online or be given out by a customer service representative to a caller. [Docket Item 63 at ¶ 9, citing Docket Item 59-1 at 14-15.]

Target placed four calls to the -2420 number from April 11, 2015 to April 15, 2015. [Docket Item 63 at ¶ 6.] Target stopped calling Plaintiff after April 15, 2015, when a Target representative reported in Target's account system that Plaintiff had retained a bankruptcy attorney. [Id. at ¶ 7.]

Neither Plaintiff's electricity bill nor her cell phone bills increased as a result of the calls made by Defendants to the -2420 number. [Docket Item 58 at ¶¶ 23-24.] Plaintiff no longer uses the -2420 cell phone number. [Id. at ¶ 26.]

## III. STANDARD OF REVIEW

At summary judgment, the moving party bears the initial burden of demonstrating that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); accord *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once a properly supported motion for summary judgment is made, the burden shifts to the non-moving party, who must set forth specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). In reviewing a motion for summary judgment, the court is required to examine the evidence in light most favorable to the non-moving party, and resolve all reasonable inferences in that party's favor. *Hunt v. Cromartie*, 526 U.S. 541, 552 (1999); *Wishkin v. Potter*, 476 F.3d 180, 184 (3d Cir. 2007). Credibility determinations are not appropriate for the court to make at the summary judgment stage. *Davis v. Portlines Transportes Maritime Internacional*, 16 F.3d 532, 536 n.3 (3d Cir. 1994).

A factual dispute is material when it "might affect the outcome of the suit under the governing law," and genuine when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248. The non-moving party " 'need not match, item for item, each piece of evidence proffered by the movant,' " but must simply present more than a "mere scintilla" of evidence on which a jury could reasonably find for the non-moving party. *Boyle v. Cnty. of Allegheny Pennsylvania*, 139 F.3d 386, 393 (3d Cir. 1998) (quoting Anderson, 477 U.S. at 252).

## IV. ANALYSIS

### A. TCPA

Defendants argue that they are entitled to summary judgment on Plaintiff's claim that they violated the TCPA because there is no genuine dispute of material fact that Plaintiff provided her prior express consent to receiving autodialed calls to her cell phone, and she did not receive any calls from Defendants after revoking that consent. [Docket Item 55 at 20-26.]

Case 1:26-cv-00659-KM    Document 27-1    Filed 06/24/26    Page 33 of 105

Martinez v. TD Bank USA, N.A., Not Reported in Fed. Supp. (2017)

**\*4**  In response, Plaintiff concedes that she provided consent for Defendants to call her using an autodialer on September 17, 2012. [Docket Item 57 at 13.] However, she submits, there is a genuine dispute of material fact as to whether Defendants continued to call her after she revoked that consent: she contends that she has submitted sufficient evidence for a reasonable finder of fact to conclude that she revoked her consent to be called on April 10, 2015 via the cease-and-desist letters faxed by her bankruptcy attorney, and that she nevertheless received four calls from April 11, 2015 to April 15, 2015, in violation of the TCPA. [Docket Item 57 at 13-18.]

To prove a violation of the TCPA, 47 U.S.C. § 227(b)(1)(A), a plaintiff must put forth evidence that "(1) the defendant called a cellular telephone number; (2) using an automatic telephone dialing system; (3) without the recipient's prior express consent." *Van Patten v. Vertical Fitness Group, LLC*, 22 F. Supp. 3d 1069, 1073 (S.D. Cal. 2014) (internal citations omitted). If a defendant, as an affirmative defense, can show that the called party provided his or her express consent, then the TCPA claim will fail. Id.

Plaintiff has conceded that she provided her prior express consent before 161 of the 165 calls were made to her cell phone. She alleges, however, that she revoked her consent on April 10, 2015—or that there is a genuine dispute of material fact as to this point—and that Defendants nevertheless made four more calls to her in violation of the TCPA.

The FCC has stated that "[c]onsumers have a right to revoke consent, using any reasonable method including orally or in writing"; in order for a called party to revoke his or her consent, "the TCPA requires only that the called party clearly express his or her desire not to receive further calls." In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991 (hereinafter "2015 FCC Order"), 30 F.C.C. Rcd. 7961, 7996-97, ¶¶ 64, 67 (July 10, 2015). In response to a concern that "allowing [e.g.,] oral revocation puts defendant callers at a disadvantage," the FCC disagreed: "The well-established evidentiary value of business records means that callers have reasonable ways to carry their burden of proving consent. We expect that responsible callers, cognizant of their duty to ensure that they have prior express consent under the TCPA and their burden to prove that they have such consent, will maintain proper business records tracking consent.... We, therefore, find that the consumer may revoke his or her consent in any reasonable manner that clearly expresses his or her desire not to receive further calls, and that the consumer is not limited to using only a revocation method that the caller has established as one that it will accept." Id. at 7998-99, ¶ 70.

Courts, when considering whether consent was revoked under the TCPA, have looked to common-law understandings of consent. See *Gager v. Dell Fin. Servs., LLC*, 727 F.3d 265, 270-271 (3d Cir. 2013) ("Our holding that the TCPA allows consumers to revoke their prior express consent is consistent with the basic common law principle that consent is revocable.... [A]t common law, consent may be withdrawn. Restatement (2d) of Torts § 892A, cmt. I (1979) ('[C]onsent is terminated when the actor knows or has reason to know that the other is no longer willing for him to continue the particular conduct.')"). A court should not consider the called party's subjective intent and should, instead, look to the words the called party used to consider whether the alleged revocation of consent either informed the caller or gave the caller reason to know that the called party was revoking his or her consent to be called. See *Dixon v. Monterey Fin. Servs., Inc.*, No. 15-cv-03298, 2016 WL 3456680, at \*3 (N.D. Cal. June 24, 2016).

**\*5**  The parties appear to agree that the substance of the cease-and-desist letters, faxed by Plaintiff's bankruptcy attorney on April 10, 2015, would have sufficed to give Defendants reason to know that Plaintiff was withdrawing her consent to be called. The sole dispute is as to whether the faxing of the letters to the fax numbers in question, where Defendants submit that the evidence is clear that they never received either letter, was a reasonable method of informing Defendants that Plaintiff was revoking her consent.

Plaintiff has cited case law where courts have "honored consumers' revocation of consent through submission of a cease-and-desist letter ..., even where there are deficiencies with the letter, such as failing to 'indicate that the number [in the request] was for a cellular phone.' " [Docket Item 57 at 15, citing *Baldwin v. Monterey Fin. Servs., Inc.*, No. 14-cv-2346, 2016 WL 5723734, at \*5 (M.D. Pa. Sept. 30, 2016) and Gager, 727 F.3d at 267.] However, the alleged deficiencies in the April 10 faxes do not

Case 1:26-cv-00659-KM    Document 27-1    Filed 06/24/26    Page 34 of 105

Martinez v. TD Bank USA, N.A., Not Reported in Fed. Supp. (2017)

go to deficiencies within the letter, but rather the deficiency in the method of communication as a whole, such that it was no longer a "reasonable method" of revoking Plaintiff's consent.

The crux of Defendants' argument that the faxing of the cease-and-desist letters to the two numbers on April 10 was not a reasonable method of revoking Plaintiff's consent is that, in the first instance, Target was the servicer of Plaintiff's credit card account and Target was not one of the parties faxed, and second, neither number that was faxed was one that was provided for consumers to use to communicate about their Target credit card accounts. [Docket Items 55 at 25-26; 57 at 16-17.]

Furthermore, Defendants argue that they cannot be said to have had reason to know that Plaintiff revoked her consent on April 10, 2015 when they assert that they never received the revocation, their business records do not reveal having received the faxes, and Plaintiff cannot point to any evidence that they received the faxes beyond the numbers themselves and the fact that the faxes marked their transmission as "OK." [Docket Items 55 at 25-26; 57 at 17-18.] Defendants argue: "Plaintiff never actually communicated revocation of consent to someone with responsibility for (or knowledge of) her Target REDcard." [Docket Item 62 at 9.] They continue: "Although the declaration from Plaintiff's bankruptcy attorney may serve as evidence that faxes were sent, it is not evidence that they were received by Defendants. Plaintiff's attorney does not even provide any detail as to how he obtained the fax numbers or why he believed they were an appropriate method to revoke consent. Thus, the affidavit provides no basis to infer that the faxes were received by Defendants." [Id. at 11 (emphasis in original).]

The Court finds that Plaintiff has not produced sufficient evidence to allow a reasonable finder of fact to conclude that she revoked her consent on April 10, 2015, thus allowing her claim under the TCPA for the four calls placed from April 11, 2015 to April 15, 2015 to go forward. A reasonable finder of fact could not conclude that faxing a letter to a fax number only known to be associated with one party that is simply connected to the credit card account at issue, and has never serviced that account, cannot constitute a reasonable method of revoking consent to be contacted regarding that account. This is especially true where, as here, the consumer has previously effectively revoked consent in a different manner.

 *6  The undisputed evidence is that Plaintiff's attorney faxed appropriately clear cease-and-desist letters to two fax numbers associated with TD Bank, N.A., and TD Bank USA, N.A. Only the latter entity is a party to this action, and it has never acted as the servicer of Plaintiff's Target credit card. Plaintiff's only evidence that the indicated fax numbers received the fax is that the faxes were marked as their transmission having been "OK." The Court finds that this does not create a genuine dispute of material fact as to whether TD Bank USA, N.A. (a defendant in this action) knew or had reason to know of this fax, where TD Bank USA, N.A.'s records show that it did not receive the facts and Plaintiff has put forth no evidence to suggest why faxing the letter to that specific fax number would have given TD Bank USA, N.A. reason to know that she had revoked her consent.

Further undisputed evidence shows that Plaintiff revoked her consent to be called on a different telephone number on a prior date using a different method, and that Defendants honored that revocation. Plaintiff has not put forth evidence that would tend to show why she believed that faxing her letter to the numbers her attorney faxed on April 10 would have or should have effectively communicated her revocation to Defendants as she previously had, herself, done.

In *Reyes v. Lincoln Auto. Fin. Servs.*, No. 15-0560, 2016 WL 3453651, at *2 (E.D.N.Y. June 20, 2016), the court granted summary judgment on a TCPA claim where, despite the plaintiff's argument that he had revoked his consent by letter, the letter was "merely addressed to 'Lincoln Credit,' with nothing more," was not signed by the plaintiff, the plaintiff testified that the letter was a form letter, that he did not recall the address he mailed the letter to, that he had no record that the letter was actually sent to the defendant, and that a response letter from the defendant concededly stated that it never received the plaintiff's letter revoking consent.

In *Johnston v. USAA Fed. Savings Bank*, No. 12-cv-02486, 2014 WL 5439965, at *3-*4 (D. Colo. Oct. 27, 2014), although the agreement between the plaintiff and defendant required the plaintiff to revoke his consent in a different manner, the court found that the plaintiff's fax to defendant requesting "that it '[p]lease stop immediately calling my cell phone # xxx-xxx-xxxx' " could "serve to revoke his consent" under the TCPA where "the undisputed evidence is that Defendant received Plaintiff's written

Case 1:26-cv-00659-KM    Document 27-1    Filed 06/24/26    Page 35 of 105

Martinez v. TD Bank USA, N.A., Not Reported in Fed. Supp. (2017)

request ... via facsimile on Saturday, July 28, 2012." However, the dispute in this case is not over in what manner Defendants and Plaintiff agreed Plaintiff could revoke her consent, but rather whether the Defendants named in this suit ever actually received Plaintiff's revocation (or had reason to know of it). In Johnston, the "undisputed evidence" was that the defendant had received the fax. The Court therefore finds it inapposite.

Plaintiff submits that the successful transmission of the fax creates a question of fact for a jury. Under these circumstances, the Court disagrees. While courts have found that "a fax confirmation generated by the sender's machine" can create a genuine issue of fact about whether the fax was received when the fax was absent from the intended recipient's relevant file, see *Laouini v. CLM Freight Lines, Inc.*, 586 F.3d 473, 476-79 (7th Cir. 2009), but in this case, it is precisely the intended recipient that is at issue; in addition, while the relevant agency in Laouini "never 'denied' " having received the fax, the Defendants here do deny having received it. In Laouini, the EEOC supervisor confirmed that "the number on ... [the] fax-transmission record is indeed the fax number attorneys are instructed to use for submitting charges." Id. at 475. The Laouini decision cited *In re Longardner & Assocs., Inc.*, 855 F.2d 455, 459, where the court ruled that, where "notice was properly addressed, stamped and mailed, there is a presumption that Bunn received it on behalf of the creditor. Bunn's denial of receipt alone does not rebut the presumption, but merely creates a question of fact." Here, however, the question of fact is not necessarily created as Plaintiff urges, because there is insufficient evidence to show that the faxes, by virtue of having been sent to the fax numbers they were sent to, were effectively "properly addressed."

 **\*7**  In *Stevens Shipping & Terminal Co. v. JAPAN RAINBOW, II MV*, 334 F.3d 439, 44 (5th Cir. 2003), the court ruled that a fax confirmation sheet "created a rebuttable presumption that" a party received the notice and was deemed to have actual knowledge of its contents. This was the case even though the party contended that the "fax machine at issue was in an area separate from the company's administration and was not one that officers would use," in part because he "conceded that the fax number" where the fax was sent "belonged to a fax machine in the agency department of [its] downtown corporate office" and, most relevantly to the instant analysis, it was sent to "the fax number listed in [the vessel charterer's] voyage instructions[.]" Id. at 441-43. Here, in contrast, Defendants submit that the evidence is clear that the fax to TD Bank USA, N.A. was not sent to any entity that had any relationship with Plaintiff's credit card account; nor was it the method specified in any instructions provided by Defendants to Plaintiff on how to communicate with Defendants.

Defendants state: "Plaintiff's theory is that a credit card holder could fax any phone number even remotely associated with any subsidiary or branch of a major national bank or retailer and that such an action would constitute effective revocation, even where the actual entities named as Defendants never received or had reason to know of these attempted revocations." [Docket Item 62 at 13.] While the Court does not understand Plaintiff to go quite that far in her argument, the Court nonetheless finds that Plaintiff has not raised a genuine dispute of material fact that her method of revocation was, under the circumstances, a reasonable one.

For those reasons, the Court finds that Plaintiff has not put forth sufficient evidence to allow a reasonable finder of fact to conclude that she used a reasonable method to communicate to Defendants, on April 10, 2015, revocation of her consent to be called. Given that, her conceded prior express consent was still in effect, and Plaintiff cannot prevail on her claim that the four calls from April 11, 2015 to April 15, 2015, constituted violations of the TCPA. Accordingly, the Court will grant summary judgment to Defendants as to the TCPA claim.

### B. RFDCPA

Defendants argue that they are entitled to summary judgment on Plaintiff's claims under the RFDCPA and Cal. Civ. Code § 1788.17, which incorporates failure to comply with provisions of the Federal Debt Collection Practices Act ("FDCPA"), Sections 1692b through j, which also relate to "harassment or abuse of a person in connection with collection of a debt" because "the undisputed call logs show that no harassment occurred" as a matter of law. [Docket Item 55 at 26-27.] Plaintiff argues that the undisputed call logs show that Defendants called Plaintiff 165 times over an eight-month period, which a reasonable jury could find to constitute harassment within the meaning of the RFDCPA, and that courts have denied summary judgment in cases with patterns of calls that were lower in amount and frequency. [Docket Item 57 at 19-21.]

Case 1:26-cv-00659-KM    Document 27-1    Filed 06/24/26    Page 36 of 105

Martinez v. TD Bank USA, N.A., Not Reported in Fed. Supp. (2017)

The RFDCPA prohibits harassing conduct related to debt collection, including "causing a telephone to ring repeatedly or continuously to annoy the person called" and "communicating with such frequency as to be unreasonable and to constitute harassment under the circumstances." Cal. Civ. Code §§ 1788.11(d) & (e). It also prohibits parties from "engaging in conduct, the natural consequence of which is to harass or abuse a person in connection with the collection of a debt." Cal. Civ. Code § 1788.17 (referencing 15 U.S.C. § 1692d).

"The determination of whether a debt collection agency's telephone calls amount to 'actionable harassment or annoyance turns not only on the volume of calls made, but also on the pattern of calls.' " *Saltzman v. I.C. Sys., Inc.*, No. 09-10096, 2009 WL 3190359, at \*7 (E.D. Mich. Sept. 30, 2009) (quoting *Akalwadi v. Risk Mgmt. Alternatives, Inc.*, 336 F. Supp. 2d 492, 505 (D. Md. 2004)).

 **\*8**  None of the statutory provisions at issue here expressly mandate that such conduct must occur in the absence of the called person's consent, as other provisions of 15 U.S.C. §§ 1692 et seq. do. See 15 U.S.C. § 1692c. The Court has located no definitive guidance whether a cause of action under the RFDCPA can arise from cell phone calls received during a period of prior consent, or whether such consent is not deemed to permit a pattern of abusive calls in any event. In at least one case of which the Court is aware, a reviewing court has found both (1) that a consumer consented to receive seventy-three calls but not the final twenty-six calls from a creditor, and (2) that there was nevertheless a genuine dispute of material fact as to whether the overall volume and pattern of all ninety-nine calls (again, most of which were made with the consumer's consent) violated § 1788.11 of the RFDCPA. *Haysbert v. Navient Solutions, Inc.*, No. CV 15-4144 PSG (Ex), 2016 WL 890297, at \*9-\*10, \*13 (C.D. Cal. Mar. 8, 2016). While a consumer's consent may constitute evidence that the conduct of the caller was not unreasonable or did not constitute harassment under the circumstances and therefore did not violate the RFDCPA, the Court is inclined to treat the effect of such consent on the claim that the conduct was harassing as a question of fact rather than law. See also *Chisholm v. AFNI, Inc.*, No. 15-3625, 2016 WL 6901358, at \*3-\*6 (D.N.J. Nov. 22, 2016) (granting summary judgment to defendant on FDCPA claim under 15 U.S.C. § 1692d based on volume and pattern of calls and separately granting summary judgment to defendant on TCPA claim because consumer consented to receiving calls).

The Court has reviewed relevant case law, and notes the following holdings (and, where relevant, their attendant procedural postures).

In *Arteaga v. Asset Acceptance, LLC*, the court found that the plaintiff "fail[ed] to raise a genuine issue of material fact" as to whether the defendant's conduct was harassing where the plaintiff presented "no evidence that Asset called her immediately after she hung up, called multiple times in a single day, called her place of employment, family, or friends, called at odd hours, or called after she requested Asset to cease calling." 733 F. Supp. 2d 1218, 1229 (E.D. Cal. 2010). The only circumstance present in this case, the Court finds, that was not present in Arteaga was that, on several occasions, Defendants called Plaintiff multiple times in one day. (As described supra, the Court finds that Plaintiff has not raised a genuine issue of material fact that Defendants called her after she effectively communicated revocation of her consent to be called by them.)[2]

In Akalwadi, the court found that, in a situation where the defendant allegedly made between 26 and 28 calls to the plaintiff in a two-month period, although "none of the calls were made either excessively early in the morning or late in the evening[,]" the record reflected "periods in which telephone calls were made on a daily basis and three telephone calls being made within five hours on the same day," the "reasonableness of this volume of calls and their pattern is a question of fact for the jury[,]" and denied summary judgment. 336 F. Supp. 2d at 506.

Citing Akalwadi, the court in *Green v. Creditor Iustus Remedium, LLP* found that a complaint plausibly stated a claim and could survive a motion to dismiss where the plaintiffs alleged that the defendant called the plaintiffs "on a near daily basis for approximately two months, including some calls [to one of the plaintiffs] while she was working." No. 1:13-cv-01414, 2013 WL 6000967, at \*3 (E.D. Cal. Nov. 12, 2013).

**\*9** In *Joseph v. J.J. Mac Intyre Cos., LLC*, the court ruled that "genuine issues of material fact remain for trial" where, making every inference in favor of the plaintiff, the court found that "roughly 75 calls made to Ms. Joseph's residence within the statutory period" "may be deemed to comprise part of the pattern of harassing calls allegedly received by Plaintiff[,]" although the defendants argued that the calls were meant for other residents of the plaintiff's home. 281 F. Supp. 2d 1156, 1164-65 (N.D. Cal. 2003).

In *Alborzian v. JPMorgan Chase Bank, N.A.*, the California Court of Appeal, on evaluation of "whether the operative complaint state[d] facts sufficient to state a cause of action[,]" found that, although the complaint did "not allege that defendants' calls were ever answered," but did "allege that they were intentionally made 'in a campaign of harassment,' " the complaint was sufficient because the "making of frequent calls itself can constitute actionable harassment under the Rosenthal Act." 235 Cal. App. 4th 29, 34, 38 (Ct. App. 2d Dist. 2015) (citing *Komarova v. Nat'l Credit Acceptance, Inc.*, 175 Cal. App. 4th 324, 345 (Ct. App. 1st Dist. 2009) ("[W]e do not interpret the statute to require that a plaintiff answer harassing collection calls before they can be actionable")).

In Haysbert, the court ruled on cross-motions for summary judgment as to the plaintiff's claim under the RFDCPA. 2016 WL 890297, at \*13. The plaintiff claimed that he was entitled to summary judgment "because Defendant called him 2-5 times a day"; the defendant claimed it was entitled to summary judgment "because plaintiff 'has presented absolutely no evidence the calls at issue rose to the level of harassment within the meaning of the' RFDCPA." Id. The court considered "the volume and pattern of calls made" to the plaintiff and noted that "courts have been inconsistent in applying the standards" of whether "a particularly volume or pattern leads to liability[.] Id. The court ultimately ruled that there was, "at a minimum, ... a triable issue of fact as to whether Defendant's conduct was harassing" where "Defendant called Plaintiff ninety-nine times over a one-and-a-half year period, and Plaintiff presents evidence that he frequently received between two and five calls a day.... [which] caused interruptions in his day and ... he answered at least some of these calls." Id.

In contrast, the court in Saltzman found that there was no genuine issue of material fact for trial where: the defendant "only placed calls to Plaintiff's residence"; the plaintiff alleged that she asked the defendant to stop calling her but "did not send Defendant a cease and desist letter" or "dispute the amount owed"; the plaintiff did not answer "the vast majority of Defendant's telephone calls" and "did not recall Defendant leaving any voice messages for her." 2009 WL 3190359, at \*7. The court found instructive the holding of *Udell v. Kansas Counselors, Inc.*, 313 F. Supp. 2d 1135, 1143-44 (D. Kan. 2004), which found that "a debt collector does not necessarily engage in harassment by placing one or two unanswered calls a day in an unsuccessful effort to reach the debtor, if this effort is unaccompanied by any oppressive conduct such as threatening messages." Saltzman, at \*7 (quoting *Millsap v. CCB Credit Servs., Inc.*, No. 07-11915, 2008 WL 8511691, at \*7 (E.D. Mich. Sept. 30, 2008)). The Saltzman court stated that this pattern of calls

> **\*10** suggests a "difficulty of reaching Plaintiff, rather than an intent to harass." ...
>
> Plaintiff has not pointed to any evidence in the record regarding the amount, frequency, pattern, or content of Defendant's calls that would suggest anything other than a legitimate, albeit persistent, effort to reach her. As the FDCPA does not prohibit such legitimate attempts to contact a debtor, and due to Plaintiff's failure to produce evidence demonstrating a genuine issue of material fact, Defendant is entitled to summary judgment in its favor on this claim.

2009 WL 3190359, at \*7 (quoting Millsap, 2008 WL 8511691, at \*7).

Similarly, in *Shand-Pistilli v. Prof. Acct. Servs., Inc.*, the court considered a claim that the defendant called plaintiff "only ten times over seventy-three days. Defendant never called plaintiff more than once on the same day and, indeed, only once called plaintiff on consecutive days. Most of the phone calls went unanswered because plaintiff was not at home at the time of the call.... [T]he fact that defendant continued to call plaintiff after she stated ... that she was 'not interested in these solicitation calls' and that she considered such calls to be harassment ... is also not sufficient to raise a genuine issue of material fact with respect to defendant's intent.... In light of the polite tone of the phone calls and their relative infrequency I find that defendant's phone calls to plaintiff were legitimate attempts to reach her." No. 10-01808, 2011 WL 2415142, at \*5-\*6 (E.D. Pa. June 16, 2011).

Martinez v. TD Bank USA, N.A., Not Reported in Fed. Supp. (2017)

Case 1:26-cv-00659-KM     Document 27-1     Filed 06/24/26     Page 38 of 105

After careful consideration, the Court is persuaded that the relevant case law supports a finding that Plaintiff, in this case, has raised a genuine dispute of material fact as to whether the volume and pattern of calls in this case could constitute actionable harassment under the RFDCPA. Courts have found a genuine issue of material fact in a case where the plaintiff received ninety-nine calls over a one-and-a-half year period, frequently received between two and five calls a day, and answered at least some of those calls. Haysbert, 2016 WL 890297, at *13. The volume of calls here is greater (165 calls over an eight-month period) and the pattern is similar, with Defendants here calling multiple times per day on several occasions (21 multi-call days of two or three calls each day)—an allegation which was not present in cases where courts granted summary judgment. See, e.g., Shand-Pistilli, 2011 WL 2415142, at *5; Arteaga, 733 F. Supp. 2d at 1229.

The Court will therefore follow the approach of the courts in Green and Akalwadi and find that, under these circumstances, the "reasonableness of this volume of calls and their pattern is a question of fact for the jury[,]" Green, 2013 WL 6000967, at *3 (quoting Akalwadi, 336 F. Supp. 2d at 506), because the evidence presented could "provide an adequate basis for the finder of fact to find a violation" of the RFDCPA, Joseph, 281 F. Supp. 2d at 1165. The existence of the recipient's prior consent to receive calls regarding her account is a factor for consideration in evaluating the reasonableness of the pattern of calls under the RFDCPA. For that reason, the Court will deny Defendants' motion for summary judgment as to Plaintiff's RFDCPA claim.

### C. California's Unfair Competition Law

**\*11** The Court previously dismissed without prejudice Plaintiff's claim under the UCL because, without entitlement to one of the forms of equitable relief for which the UCL provides, she lacked standing. [Docket Item 60 at 18-25.] Defendants also moved to dismiss Plaintiff's UCL claim on the grounds that she lacked standing because she did not adequately allege that she lost money or property and suffered an injury in fact, as the UCL requires under Cal. Bus. & Prof. Code § 17204. The Court found at that time, however, that Plaintiff had adequately alleged that she had lost money or property. [Id. at 14-18.]

In their Motion for Summary Judgment, Defendants move for summary judgment as to the UCL claim on the grounds that Plaintiff has failed to bring forth evidence to show that she suffered an economic injury caused by Defendants. [Docket Item 55 at 31-34.]

In her Response, filed before the Court's opinion and order dismissing without prejudice her UCL claim, Plaintiff did not address Defendants' arguments in favor of granting summary judgment to Defendants on that claim and conceded that summary judgment was appropriate. [Docket Item 57 at 13 n.1.]

Furthermore, the Court agrees that, for the reasons described by Defendants and apparently conceded by Plaintiff, Plaintiff has not brought forth evidence sufficient to create a genuine dispute of material fact as to the allegation that she suffered an economic injury caused by Defendants. No reasonable finder of fact could conclude, based on the evidentiary record before the Court, that Plaintiff in fact suffered such an injury. Accordingly, the Court finds that she lacks standing under the UCL and will grant summary judgment on that claim to Defendants. To the extent that the UCL claim was previously dismissed without prejudice [Docket Item 60 at 25], the Court will now modify that ruling and dismiss the UCL claim with prejudice.

### D. Class Allegations

Plaintiff seeks certification of the following class under Rule 23(b)(3), Fed. R. Civ. P.:

Every individual in the United States who: (1) received a call on his or her cellular telephone; (2) placed by or on behalf of Defendants; (3) relating to a Target credit card; (4) using a dialer; and (5) where Defendants did not have prior express consent to place such a call at the time it was placed.

Amended Complaint ¶ 39. Defendants seek to strike the class allegation on grounds of lack of ascertainability. The Third Circuit has held in *Marcus v. BMW of N.A. LLC*, 687 F.3d 583, 593 (3d Cir. 2012): "If class members are impossible to identify without extensive and individualized fact-finding or 'mini-trials,' then a class action is inappropriate." Similarly, a noted treatise has

Case 1:26-cv-00659-KM     Document 27-1     Filed 06/24/26     Page 39 of 105

Martinez v. TD Bank USA, N.A., Not Reported in Fed. Supp. (2017)

observed that "[a] class definition is inadequate if a court must make a determination of the individual claims to determine whether a particular person is a member of the class." 5 James W. Moore, Moore's Federal Practice ¶ 23.21[3][c] (3d ed. 2007).

Further, Defendants object to this class because Plaintiff Martinez herself would not be a member. She consented to receive the vast majority of these calls, including all calls made on multi-call days. It is tautological that a class representative must be a class member to satisfy Rule 23 requirements including adequacy, typicality and commonality. (See Def. Rep. Br. at 13-15.)

Defendants also move to strike the class allegations from Plaintiff's Amended Complaint because she "impermissibly attempts to create a 'fail-safe' class where the question of 'whether a person qualifies as a member depends on whether the person has a valid claim.' " [Docket Item 55 at 37, quoting *Zarichny v. Complete Payment Recovery Servs., Inc.*, 80 F. Supp. 3d 610, 623 (E.D. Pa. 2015).]

 **\*12**  In response, Plaintiff claims that the motion to strike is premature, because Plaintiff "has not had the opportunity to take any discovery on class certification issues" and Defendant does not argue "that 'no amount of discovery or time will allow for plaintiff[ ] to resolve deficiencies in [the] class definition[ ].' *McPeak [v. S-L Distribution Co.*, No. CIV 12-348,] 2014 WL 4388562, at \*4 [ (D.N.J. Sept. 5, 2014).]" [Docket Item 57 at 23 (emphasis in original).] Plaintiff states that she "will be able to obtain through discovery information bearing on the common characteristics of potential class members who did not consent to receive calls from Defendants." [Id.] Plaintiff urges that, should the Court strike her class allegations, she be given leave to amend "to allege, if she can, a proposed class that is not fail-safe." [Id. at 24, citing Dixon, 2016 WL 3456680, at \*5.]

"[A]n essential prerequisite of a Rule 23 action is that there be a class, and courts have generally articulated this essential prerequisite as the implied requirement of ascertainability—that the members of the class are identifiable at the moment of certification[;] ... [i]f class members are impossible to identify without extensive and individualized fact-finding or 'mini-trials,' then a class action is inappropriate." Zarichny, 80 F. Supp. 3d at 625.

As Defendants state: "By defining the class as individuals called without their prior express consent, Plaintiff seeks to create a class consisting only of individuals to whom defendants are necessarily liable under the TCPA. This is a 'heads, I win, tails you lose' proposition: 'either the class members win or, if the defense prevails, no class exists, and the putative class members, unbound by the judgment, are free to pursue individual claims.' Zarichny, 80 F. Supp. 3d at 624." [Docket Item 55 at 39.] Moreover, as Defendants demonstrate, Plaintiff Martinez would not be a member of this class because she gave express consent to autodialed calls to her cell phone concerning her Target credit card.

Courts have previously rejected the same proposed class because identifying the class requires "the sort of extensive fact-finding that class actions should avoid" and because "any other putative class recipient would be free to litigate the same claim" against the defendant should the defendant prevail. Zarichny, 80 F. Supp. 3d at 625-26. See also Dixon, 2016 WL 3456680, at \*4-\*5 (in TCPA case, proposed class was fail-safe class where plaintiff proposed proceeding on behalf of people who had not previously consented to receiving autodialed calls on their cell phones); *Olney v. Job.com, Inc.*, No. 1:12-CV-01724, 2013 WL 5476813 at \*11 (finding that proposed class based on people who had not previously consented was improper failsafe class in TCPA case).

The Court agrees with Defendants that Plaintiff's proposed class is a fail-safe class. No amount of additional class discovery will alter that conclusion: her proposed class both is defined in terms of Defendants' liability to the proposed class members, and would require extensive fact-finding (as Plaintiff's own case has done) to determine whether the putative class members failed to provide express prior consent to be called. Her class allegations are stricken pursuant to Fed. R. Civ. P. 23(d)(1)(D).

Because the Court has granted summary judgment to Defendants on Plaintiff's TCPA claims, the Court will not grant Plaintiff leave to amend the class allegations with regard to claims under the TCPA, because Plaintiff will not fall into the revised class definition. See Olney, 2013 WL 5476813, at \*11-\*12.

Case 1:26-cv-00659-KM   Document 27-1   Filed 06/24/26   Page 40 of 105

Martinez v. TD Bank USA, N.A., Not Reported in Fed. Supp. (2017)

Further, because Plaintiff's only remaining claim survives under California's RFDCPA, any class definition would be limited to residents of California[3] who received such calls.

**\*13** Finally, as noted, Plaintiff's membership in the class as presently defined is a nullity. With all this constraints, it is doubtful but not impossible that Plaintiff could serve as class representative of a very different class. Any such effort to revive this class must be made by motion to amend before expiration of the deadline for amended pleadings herein under Rule 16(a)(3)(A), Fed R. Civ. P, and L. Civ. R. 16.1(b)(1)(A).

Accordingly, Defendants' motion to strike Plaintiff's class allegations will be granted.

## V. CONCLUSION

For the foregoing reasons, the Court will deny Defendants' motion to for summary judgment as to Plaintiff's claim under the RFDCPA (Count II of Plaintiff's First Amended Complaint) and will grant Defendants' motion for summary judgment as to Plaintiff's claims under the TCPA (Count I) and the UCL (Count III). The Court will also grant Defendants' motion to strike the class allegations. The accompanying Order will be entered.

**All Citations**

Not Reported in Fed. Supp., 2017 WL 2829601

Footnotes

1     For purposes of the instant motion and pursuant to Local Civil Rule 56.1, the Court looks to Defendants' Statement of Undisputed Material Facts (Docket Item 56), its supporting exhibits, and Plaintiff's related Response (Docket Item 58), as well as Plaintiff's Supplemental Statement of Undisputed Material Facts (Docket Item 59), its supporting exhibits, and Defendants' Response to the Supplemental Statement (Docket Item 63).

2     In *Reddin v. Rash Curtis & Assocs.*, the court addressed the issue of whether a call placed after a consumer <u>did</u> request the caller cease calling her could raise a genuine dispute of material fact as to whether the calls were harassing: "Even pretending that a reasonable jury could find that two telephone calls are sufficiently repetitive and continuous so as to annoy, abuse, or harass a person, the undisputed evidence is that defendant removed plaintiff's number from its file after she requested it to cease calling her and the second call was <u>inadvertently placed</u> before the automated dialer system was updated that night. Based on this evidence, a reasonable jury could not find that defendant placed the second phone call 'with intent to annoy, abuse, or harass,' 15 U.S.C. § 1692d(5) .... Because the court finds that defendant is entitled to summary judgment as a matter of law on plaintiff's FDCPA claim, the court must also grant defendant's motion for summary judgment on her RFDCPA claim." No. 2:15-cv-01305, 2016 WL 3743148, at *3, *5 (E.D. Cal. July 13, 2016) (emphasis added).

3     Of course, for a class of California residents applying California law, one would question how New Jersey would be a proper venue.

**End of Document**        © 2026 Thomson Reuters. No claim to original U.S. Government Works.

 KeyCite Red Flag

Report and Recommendation Adopted in Part, Rejected in Part by Murch v. GPS Capital Markets, LLC, D.Or., September 26, 2025

Cited in uploaded document as:

Murch v. GPS Cap. Mkts., LLC, 2025 U.S. Dist. LEXIS 169651, *38 (D. Or. June 6, 2025)

2025 WL 2466576

Only the Westlaw citation is currently available.

United States District Court, D. Oregon.

Jessica MURCH, Plaintiff,

v.

GPS CAPITAL MARKETS, LLC, Defendant.

Case No. 3:24-cv-01854-SB

|

Signed June 6, 2025

**Attorneys and Law Firms**

Andrew Roman Perrong, Perrong Law LLC, Glenside, PA, for Plaintiff.

Jeffrey G. Bradford, Tonkon Torp LLP, Portland, OR, Paul Heeringa, Aaron Paul Heeringa, Pro Hac Vice, Manatt, Phelps & Phillips LLP, Chicago, IL, John W. McGuinness, Pro Hac Vice, Manatt, Phelps & Phillips LLP, Washington, DC, for Defendant.

## FINDINGS AND RECOMMENDATION

STACIE F. BECKERMAN, United States Magistrate Judge

**\*1** Plaintiff Jessica Murch ("Murch") filed this action individually and on behalf of other similarly situated individuals against GPS Capital Markets, LLC ("GPS"), alleging that GPS violated the Telephone Consumer Protection Act ("TCPA"), codified at 47 U.S.C. § 227. The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331, but not all parties have consented to the jurisdiction of a magistrate judge pursuant to 28 U.S.C. § 636(c). Now before the Court is GPS's motion to dismiss and/or strike. For the reasons explained below, the Court recommends that the district judge grant in part and deny in part GPS's motion.

## BACKGROUND[1]

On October 28, 2024, Murch missed a phone call from a number ending in 2502. (Compl. ¶ 21, ECF No. 1.) On October 29, 2024, Murch missed a second phone call from the same number. (*Id.*) On November 1, 2024, Murch received and answered the third call from the same number. (*Id.*) Below is Murch's transcript of the third call:

Jessica Murch: Hello.

Alex: Hello. Hi.

Jessica Murch: Hi.

Alex: Can I speak to Mr. [S.C.[2]]? I was hoping to get in touch with him.

Jessica Murch: Who's calling?

Alex: Um, my name's Alex. I – [00:00:15] I've been reaching out to him. I'm calling from GPS Capital Markets.

Jessica Murch: Uh-huh. I'm sorry. Um, he's not available, but I can, uh, take a message if that works.

Alex: Okay. Like, uh, leave a message with you?

Jessica Murch: Yeah.

Alex: Okay. [00:00:30] Yeah. Uh, let me see if I can condense it, I guess. I – well, I just wanna confirm. Is – is [S.C.] – Mr. [S.C.] still the global practice director for Life and Financial Services?

Jessica Murch: Yes. Mm-hmm.

Alex: Okay. He is. That's great. [00:00:45] And, uh, would you happen to know if he deals with any foreign exchange, um –

Jessica Murch: Uh, yes.

Alex: He does. Okay. Great. Then, uh, you could just, I guess, pass on – if it's not too much, we're, uh – [00:01:00] our – our company's the – the nation's largest foreign exchange brokerage and soon to be the world's largest foreign exchange brokerage. So, we'd love to just get in touch with him, um, or –

Jessica Murch: Okay.

Alex: – someone else who works at [S.C.'s company], uh, regarding foreign exchange.

Jessica Murch: Okay. Is this a good number to call back on? [00:01:15]

Alex: Yeah, this would be a great number. And could I get your name again just so I can know who I've talked to before?

Jessica Murch: Yeah. Kathy.

**\*2** Alex: Kathy. Thank you so much, Kathy.

Jessica Murch: Mm-hmm.

Alex: I appreciate it. And I'm Alex. Um...

Jessica Murch: Okay, Alex.

Alex: But yeah.

Jessica Murch: Yeah, I'll have him give you a shout back. [00:01:30] Thank you so much. Bye-bye.

Alex: Okay. Sounds good. Have a great one. Bye-bye.

(Pl.'s Resp. Opp'n Def.'s Mot. Dismiss ("Pl.'s Resp.") Ex. D, ECF No. 16-4.[3])

Murch alleges that she uses the phone number GPS called "for personal, residential, and household reasons."[4] (Compl. ¶ 16.) Murch further alleges that her "telephone number has been listed on the National Do Not Call [("DNC")] Registry more than [thirty-one] days prior to the calls at issue" and that she "has never been a customer of GPS and never consented to receive calls or text messages from GPS." (*Id.* ¶¶ 19-20.)

Based on these facts, Murch asserts a single claim against GPS, alleging that GPS violated the TCPA by initiating more than one telephone solicitation to her phone number, which is listed on the DNC registry, within a twelve-month period. (*Id.* ¶¶ 41-46.) GPS moves to dismiss Murch's claims pursuant to Rule 12(b)(1) on the ground that the Court lacks subject matter jurisdiction because Murch does not have Article III standing to bring a TCPA claim. (Def.'s Mot. Dismiss & Strike ("Def.'s Mot.") at 11-15, ECF No. 7.) GPS further moves to dismiss Murch's claim pursuant to Rule 12(b)(6) on the ground that Murch fails to state a claim upon which relief can be granted. (*Id.* at 15-25.) In the alternative, GPS moves to strike Murch's class allegations pursuant to Rule 12(f) on the ground that Murch's proposed class is facially uncertifiable. (*Id.* at 25-31.)

## DISCUSSION

## I. LEGAL STANDARDS

### A. Rule 12(b)(1)

**\*3** Typically, "when 'deciding standing at the pleading stage, and for purposes of ruling on a motion to dismiss for want of standing, ... courts must accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party.' " *Mecinas v. Hobbs*, 30 F.4th 890, 896-97 (9th Cir. 2022) (quoting *Desert Citizens Against Pollution v. Bisson*, 231 F.3d 1172, 1178 (9th Cir. 2000)). An exception to this "general rule" is "where the defendant brings a motion under Rule 12(b)(1) challenging subject matter jurisdiction as a factual—rather than facial—matter." *Id.* at 896 (citing *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000)).

If the defendant asserts a factual attack "by presenting affidavits or other evidence properly brought before the court, the party opposing the motion must furnish affidavits or other evidence necessary to satisfy its burden of establishing subject matter jurisdiction." *Id.* (quoting *Savage v. Glendale Union High Sch.*, 343 F.3d 1036, 1039 n.2 (9th Cir. 2003)). Ordinarily, "[a]t that point, the court may resolve any factual disputes concerning the existence of jurisdiction." *Id.* (citing *Augustine v. United States*, 704 F.2d 1074, 1077 (9th Cir. 1983)). If, however, "the jurisdictional issue and substantive issues are so intertwined that the question of jurisdiction is dependent on the resolution of factual issues going to the merits, the jurisdictional determination should await a determination of the relevant facts on either a motion going to the merits or at trial." *Id.* (quoting *Augustine*, 704 F.2d at 1077).

### B. Rule 12(b)(6)

To survive a motion to dismiss under Rule 12(b)(6), a plaintiff's "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556).

### C. Rule 12(f)

Rule 12(f) provides that a "court may strike from a pleading ... any ... immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). "A decision to grant a motion to strike class allegations at the pleading stage is the 'functional equivalent of denying a motion to certify a case as a class action' before discovery commences." *Nichols v eHealthInsurance Servs., Inc.*, No. 5:23-cv-06720, 2025 WL 689721, at \*4 (N.D. Cal. Mar. 3, 2025) (quoting *Bates v. Bankers Life & Cas. Co.*, 848 F.3d 1236, 1238 (9th Cir. 2017)). "The Ninth Circuit has recognized that 'often the pleadings alone will not resolve the question of class certification and that some discovery will be warranted.' " *Id.* (quoting *Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935, 942 (9th Cir. 2009)). The Ninth Circuit has instructed that generally, "the better and more advisable practice for a District Court to follow is to afford the litigants an opportunity to present evidence as to whether a class action [i]s maintainable." *Id.* (quoting

*Vinole*, 571 F.3d at 942). "But when the problem with the class allegations is 'facially evident, it makes sense to address the issue early on.' " *Id.* (citation omitted).

## II. ANALYSIS

### A. Rule 12(b)(1)

**\*4** The Ninth Circuit has explained that "[t]o contest a plaintiff's showing of subject matter jurisdiction, a defendant may file two types of Rule 12(b)(1) motions[.]" *Bedwell v. TBLB Enters. LLC*, No. 21-56245, 2022 WL 3083320, at \*1 (9th Cir. Aug. 3, 2022). Specifically, a defendant may file "a facial attack, which challenges jurisdiction 'facially,' by arguing that the allegations ... are insufficient on their face to invoke federal jurisdiction, or a 'factual' attack, which presents extrinsic evidence ... disputing the truth of the allegations of the complaint that would otherwise invoke federal jurisdiction." *Id.* (citing *Wolfe v. Strankman*, 392 F.3d 358, 362 (9th Cir. 2004)).

Here, GPS brings a factual attack on Murch's Article III standing to assert her TCPA claim, and a facial attack on Murch's standing to seek injunctive relief. (*See* Def.'s Mot. at 9, citing the relevant sections containing the respective arguments for dismissal and stating that "[i]n this Motion, GPS makes both a factual ... and a facial ... Article III standing challenge").

#### 1. Injury in Fact

GPS moves to dismiss Murch's claim on the ground that "extrinsic evidence shows she did not suffer any 'injury in fact' traceable to GPS's conduct, and therefore she lacks Article III standing." (*Id.* at 11.) Specifically, GPS argues that "[Murch] is at best complaining of a 'bare procedural violation' in this case ... divorced from the 'real harms' the TCPA was designed to prevent" because the relevant call was intended for S.C., at a published business number. (*Id.* at 13-14, "[T]he evidence shows that the one short call that Plaintiff claims to have answered on November 1, 2024 (out of the three at issue) was in reality made to a published business number, that is apparently owned and used by a different person ([S.C.]).") (emphasis omitted). GPS submits with its motion a recording and "rough transcript" of the relevant call (Decl. Everett Greenleaf ("Greenleaf Decl.") Ex. B, ECF No. 8-2) and argues that the extrinsic evidence demonstrates that "[Murch] plainly was not solicited to purchase anything from GPS on any call, as is alleged." (Def.'s Mot. at 13.)

Murch responds that she has owned the relevant phone number since July 2024 and that "[GPS] could, and should, have checked whether the telephone number was possibly assigned to someone else entirely and scrubbed it to determine whether it was on the National Do Not Call Registry before calling it, but consciously did not do so." (Pl.'s Resp. at 11, ECF No. 16) (emphasis omitted). Murch also submits her own transcript of the relevant call and argues that "[o]n its face, the script is clearly telephone solicitation extolling the benefits of GPS Capital's foreign exchange brokerage services." (*Id.* at 13.) Specifically, Murch argues that the caller "extolled the benefits of GPS Capital's foreign exchange services" by stating that "our company [is the] nation's largest foreign exchange brokerage and soon to be the world's largest foreign exchange brokerage[, s]o, we'd love to just get in touch with him ... [or] someone else who works at [S.C.'s company] ... regarding foreign exchange." (*Id.*)

#### a. Applicable Law

"[T]o satisfy Article III's standing requirements, a plaintiff must show (1) it has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Chennette*, 50 F.4th at 1221 (quoting *Maya v. Centex Corp.*, 658 F.3d 1060, 1067 (9th Cir. 2011)). "An allegation of a bare procedural violation is not enough to satisfy Article III because the injury 'must affect the plaintiff in a personal and individual way' and must be 'de facto' (that is, 'actually exist')." *Id.* (quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016)).

**\*5** The Ninth Circuit has determined that "in enacting the TCPA, Congress 'establishe[d] the substantive right to be free from certain types of phone calls and texts absent consumer consent ... [and] identified unsolicited contact as a concrete harm.' " *Id.*

(quoting *Van Patten v. Vertical Fitness Grp., LLC*, 847 F.3d 1037, 1043 (9th Cir. 2017)). The TCPA defines the term "telephone solicitation" to include "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person[.]" 47 C.F.R. § 64.1200(f)(15). "A plaintiff alleging a violation under the TCPA 'need not allege any additional harm beyond the one Congress has identified.' " *Chennette*, 50 F.4th at 1221 (quoting *Van Patten*, 847 F.3d at 1043).

"In resolving a factual attack on jurisdiction, the district court may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004) (citing *Savage*, 343 F.3d at 1039 n.2). "A district court may hear evidence and make findings of fact necessary to rule on the subject matter jurisdiction question prior to trial, if the jurisdictional facts are not intertwined with the merits." *Farr v. United States*, 990 F.2d 451, 454 n.1 (9th Cir. 1993) (quoting *Rosales v. United States*, 824 F.2d 799, 803 (9th Cir. 1987)). "[W]here jurisdiction is so intertwined with the merits that its resolution depends on the resolution of the merits, the trial court should employ the standard applicable to a motion for summary judgment." *Id.* (quoting *Careau Grp. v. United Farm Workers of Am., AFL-CIO*, 940 F.2d 1291, 1293 (9th Cir. 1991)). "Therefore, the moving party should prevail only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." *Augustine*, 704 F.2d at 1077.

### b. Analysis

#### 1) Standard

Murch argues that the Court should deny GPS's jurisdictional challenge because the jurisdictional question is intertwined with the merits of her TCPA claim. (*See* Pl.'s Resp. at 9, "[W]hen, as here, the question of jurisdiction and the merits are intertwined with the statute, a 12(b)(1) motion is proper 'only when the allegations of the complaint are frivolous.' When the jurisdictional issues of the case are so intertwined with the factual merits-based issues, the motion should be denied and the case allowed to proceed to a determination on the merits[,]" citing *Safe Air for Everyone*, 373 F.3d at 1039-40.) GPS responds that "[t]his Court is not precluded from ruling on this issue now by the 'intertwinement' rule, because GPS's factual jurisdictional challenge is not inextricably intertwined with, and is 'separable from the merits' of, Plaintiff's TCPA claim." (Def.'s Reply Pl.'s Opp'n ("Def.'s Reply") at 2, quoting *Alfi v. Nordstrom, Inc.*, No. 3:09-cv-01249, 2010 WL 5093434, at *4 (S.D. Cal. Dec. 8, 2010), ECF No. 22.)

The Court finds that GPS's jurisdictional challenge "is so intertwined with the merits that its resolution depends on the resolution of the merits[.]" *Farr*, 990 F.2d at 454 n.1 (citation omitted). Specifically, the TCPA serves as the basis for federal subject matter jurisdiction and Murch's substantive claim for relief and thus the question of jurisdiction and the merits of this action are intertwined. *See* 47 U.S.C. § 227(g)(2) ("The district courts of the United States, the United States courts of any territory, and the District Court of the United States for the District of Columbia shall have exclusive jurisdiction over all civil actions brought under this subsection."); *see also Safe Air for Everyone*, 373 F.3d at 1040 ("The question of jurisdiction and the merits of an action are intertwined where 'a statute provides the basis for both the subject matter jurisdiction of the federal court and the plaintiff's substantive claim for relief.' " (quoting *Sun Valley Gasoline, Inc. v. Ernst Enters., Inc.*, 711 F.2d 138, 139 (9th Cir. 1983))); *Ventura Packers, Inc. v. F/V Jeanine Kathleen*, 305 F.3d 913, 922 (9th Cir. 2002) (finding that "the Maritime Lien Act inextricably intertwines the questions of subject matter jurisdiction and [the plaintiff]'s substantive claim for relief" because "the Maritime Lien Act enumerates the elements required for *both* a valid necessaries lien and the right to enforce that lien in admiralty" and therefore, "we consider both [the jurisdictional and merits] questions according to the standards applicable on summary judgment").

**\*6** Accordingly, GPS "should prevail only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." *Augustine*, 704 F.2d at 1077; *Ventura Packers, Inc.*, 305 F.3d at 922 ("We, therefore, leave for the trier of fact to decide whether [the plaintiff] provided the Ships with goods and services on the order of the owner or a person authorized by the owner. This inquiry will determine whether there is admiralty jurisdiction and whether [the plaintiff] prevails on the merits."); *Careau Grp.*, 940 F.2d at 1293 ("[T]he ultimate jurisdictional issue is precisely the same as the ultimate issue on the merits. As a result, the district court should dismiss for lack of jurisdiction only if there are no triable issues of fact.").

**2) Application**

The Court agrees with GPS that the material jurisdictional facts include whether the relevant call constitutes a "telephone solicitation" within the meaning of the TCPA. (*See* Def.'s Reply at 3, "[T]he extrinsic evidence submitted in this case shows that Plaintiff did not receive a 'telephone solicitation' as defined by the TCPA's DNC implementing regulations; and, as a consequence, that she did not suffer an 'injury-in-fact' as is required for standing under Article III of the Constitution, depriving this Court of federal subject matter jurisdiction to hear her TCPA claim.") (footnote omitted).

The TCPA analysis for determining whether a communication constitutes a "solicitation" focuses primarily on the defendant's purpose for initiating the communication. *See Abboud v. Circle K Stores Inc.*, No. 2:23-cv-01683, 2025 WL 307039, at *6 (D. Ariz. Jan. 27, 2025) ("At bottom, whether the text messages qualify as 'telephone solicitations' turns on Defendant's purpose in causing the messages to be sent."); *Whittaker v. Freeway Ins. Servs. Am., LLC*, No. 3:22-cv-08042, 2023 WL 167040, at *2 (D. Ariz. Jan. 12, 2023) ("It is the purpose behind a call that controls, not what happened during the call.") (simplified); *Friedman v. Torchmark Corp.*, No. 3:12-cv-02837, 2013 WL 4102201, at *6 (S.D. Cal. Aug. 13, 2013) ("The Court must determine whether the intent of the call is to offer property, goods, or services for sale during the call or in the future.").

The parties' evidence demonstrates that the caller first sought to confirm that S.C. owned the relevant number, worked in a particular role in the financial services industry, and utilized particular services within that industry. (*See* Pl.'s Resp. Ex. D at 1, asking if S.C is "still the global practice director for Life and Financial Services" and "if he deals with any foreign exchange[.]") The caller then asked Murch to communicate to S.C. that GPS is "the nation's largest foreign exchange brokerage and soon to be the world's largest foreign exchange brokerage" and that "we'd love to just get in touch with him ... or ... someone else who works at [S.C.'s company] ... regarding foreign exchange." (*Id.*) GPS's declaration in support of its motion confirms that "GPS sells foreign exchange and currency management solutions to corporate accounts," that GPS "sells its products and services to businesses and persons working in the financial services and banking sectors" and that "the purpose of [the relevant] calls was to contact an individual working in the financial sector[.]" (*See* Greenleaf Decl. ¶¶ 9-10, ECF No. 8.)

In its briefing, GPS argues that Murch did not suffer an Article III injury-in-fact because the caller did not intend to and did not encourage *her* to purchase goods or services. (*See* Def.'s Reply at 6, "[T]he evidence shows 'the purpose of the calls' was not 'to solicit the Plaintiff to sign up for the Defendant's products and services, specifically, a foreign exchange brokerage account' as she alleges and thus that she did not receive a 'telephone solicitation' and was not injured.") (simplified). At oral argument, GPS clarified its position that the relevant calls were not made "for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services" from S.C., but rather to update its calling list. (*See* Mot. Dismiss Hr'g Tr. ("Hr'g Tr.") 14:14-21, May 13, 2025, ECF No. 27.)

**\*7** Based on the submitted evidence, the Court finds that disputes of material jurisdictional facts preclude a determination of standing at this stage of the litigation. Specifically, the parties dispute the caller's purpose for initiating the relevant call, and the purpose of the call is relevant to both the merits of Murch's claim and whether she suffered an Article III injury-in-fact. To the extent GPS argues that the relevant calls were not "telephone solicitations" because the caller did not solicit *Murch* "to sign up for [GPS's] products and services" during the call (Def.'s Reply at 6), that argument is a variation of the "intended recipient" defense, which the Ninth Circuit has rejected as inconsistent with the TCPA's text and intended purpose. *See N.L. by Lemos v. Credit One Bank, N.A.*, 960 F.3d 1164, 1167 (9th Cir. 2020) (rejecting the "intended recipient" defense and holding that "[the defendant]'s intent to call a customer who had consented to its calls does not exempt [it] from liability under the TCPA when it calls someone else who did not consent"); *Abboud*, 2025 WL 307039, at *10-12 (applying *N.L. by Lemos* in the DNC registry context); *Samson v. United Healthcare Servs. Inc.*, No. 2:19-cv-00175, 2022 WL 17820567, at *2 (W.D. Wash. Dec. 20, 2022) ("The Ninth Circuit [in *N.L. by Lemos*] upheld the district court's holding that a company that intended to call a customer, but in fact did not, ... [does] not exempt the company from liability under the TCPA."); *Greene v. Select Funding, LLC*, No. 2:20-cv-07333, 2021 WL 4926495, at *2 (C.D. Cal. Feb. 5, 2021) (applying *N.L. by Lemos* in the DNC Registry context and rejecting the defendant's Article III standing challenge). Thus, the Court cannot conclude as a matter of law that Murch suffered no injury because she was not the intended recipient of the call.

GPS relies primarily on *Selby* in support of its standing argument. (*See* Def.'s Mot. at 12, "The *Selby* case is instructive on this point.") *Selby* is distinguishable. Specifically, the court in *Selby* held that the plaintiff did not have Article III standing to assert her TCPA claim because the defendant's undisputed purpose for initiating the calls at issue was debt collection, which does not violate the TCPA. *See Selby v. Ocwen Loan Servicing, LLC*, No. 3:17-cv-00973, 2017 WL 5495095, at *3 (S.D. Cal. Nov. 16, 2017) ("All of the calls at issue here relate to [the defendant]'s efforts to collect a debt and do not relate to telemarketing. Calls from debt collectors are undoubtedly unwanted, stressful, and frustrating, but the TCPA was not intended to protect any concrete interests associated with calls from debt collectors or creditors."). Here, unlike in *Selby*, the purpose of the calls at issue is disputed by the parties, and GPS does not argue or provide evidence supporting that the caller initiated the calls for debt collection purposes.

The other cases GPS cites are also distinguishable. For example, unlike here, where Murch submitted evidence in response to GPS's standing challenge, in *Baccari*, the court granted the defendant's Rule 12(b)(1) motion because the plaintiff failed to submit any evidence in response to the defendant's factual standing challenge. *See Baccari v. Carguard Admin., Inc.*, No. 2:22-cv-01952, 2022 WL 3213839, at *3 (E.D. Pa. Aug. 8, 2022) ("Because [the plaintiff] has not met his burden to produce evidence responding to [the defendant]'s factual attack, [the defendant]'s motion for lack of subject matter jurisdiction will be granted, and the Complaint will be dismissed without prejudice."). *Hall* is distinguishable for the same reason. *See Hall v. Xanadu Mktg., Inc.*, 682 F. Supp. 3d 1278, 1285 (N.D. Ga. 2023) ("Here, [the plaintiff] does not provide any evidence by way of declaration to dispute [the defendant]'s declaration that she consented to receiving the texts. Instead, [the plaintiff] argues that her allegations in the Amended Complaint control, but in a factual challenge the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case and no presumptive truthfulness attaches to plaintiff's allegations.") (simplified).

In *St. Louis Heart Center, Inc.*, the Eighth Circuit affirmed the dismissal of the plaintiff's TCPA claim on standing grounds because the plaintiff had "not alleged a concrete or particularized harm resulting from receiving faxes that [the plaintiff] both invited and did not rebuke." *St. Louis Heart Ctr., Inc. v. Nomax, Inc.*, 899 F.3d 500, 503 (8th Cir. 2018). Unlike the plaintiff in *St. Louis Heart Center, Inc.*, however, it is undisputed that Murch did not consent to receive the calls at issue here.

**\*8** In *Stewart*, the court dismissed the plaintiff's TCPA claim alleging that the defendant failed to honor the plaintiff's request to be placed on the defendant's internal do-not-call list for lack of standing because "he did not clearly express a desire to stop receiving calls from [the defendant]." *Stewart v. Network Cap. Funding Corp.*, 549 F. Supp. 3d 1058, 1059 (C.D. Cal. 2021). Here, however, it is undisputed that the relevant phone number was on the DNC registry at the time of the relevant calls.

In *Winner*, the Court dismissed the plaintiffs' claims for lack of standing because the plaintiffs consented to receive the messages at issue. *See Winner v. Kohl's Dep't Stores, Inc.*, No. 2:16-cv-01541, 2017 WL 3535038, at *6 (E.D. Pa. Aug. 17, 2017) ("The facts contained in the Stipulation establish that both [plaintiffs] gave prior express consent under the TCPA through a method made permissible by the E-Sign Act. Because they consented to receiving the texts, Plaintiffs can show no concrete and particularized injury-in-fact and thus have not established that they have standing to pursue the claims asserted in the FAC."). Here, however, it is undisputed that Murch did not consent to receive the calls at issue. The other cases that GPS cites in its reply are distinguishable for similar reasons.

In light of the Court's conclusion that the question of jurisdiction and the merits are intertwined and that material jurisdictional facts are in dispute, the district judge should deny GPS's Rule 12(b)(1) standing challenge. *See Mecinas*, 30 F.4th at 896 ("[W]here the jurisdictional issue and substantive issues are so intertwined that the question of jurisdiction is dependent on the resolution of factual issues going to the merits, the jurisdictional determination should await a determination of the relevant facts on either a motion going to the merits or at trial.") (citation omitted); *Augustine*, 704 F.2d at 1077 ("[T]he moving party should prevail only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law."); *Ventura Packers, Inc.*, 305 F.3d at 922 ("We, therefore, leave for the trier of fact to decide whether [the plaintiff] provided the Ships with goods and services on the order of the owner or a person authorized by the owner. This inquiry will determine whether there is admiralty jurisdiction and whether [the plaintiff] prevails on the merits.").

## 2. Injunctive Relief

Murch seeks "[i]njunctive relief for the Class, pursuant to 47 U.S.C. § 227(c)(5) preventing the Defendant from making calls to numbers listed on the National Do Not Call Registry[.]" (Compl. at 8-9.) GPS moves to dismiss Murch's request for injunctive relief because she "does not allege any facts in her Complaint suggesting she is at any imminent risk of any future injury (i.e., of receiving additional violative calls from or on behalf of GPS in the future), as required to demonstrate Article III standing for injunctive relief in any federal case." (Def.'s Mot. at 14) (emphasis omitted).

Murch responds that injunctive relief is "particularly warranted here [because] Plaintiff continues to receive calls and there is real risk of future harm."[5] (Pl.'s Resp. at 17) (emphasis omitted). Murch further argues that "[i]t is plausible that the Plaintiff may receive additional calls in the future, and [GPS] has made no assurances that it will abstain from calling the Plaintiff." (*Id.* at 17-18, citing *Griffin v. Am.-Amicable Life Ins. Co. of Tex.*, No. 6:24-cv-00243-MC, 2024 WL 4333373 (D. Or. Sept. 27, 2024).)

### a. Applicable Law

**\*9** "In a facial [standing] attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction." *Safe Air for Everyone*, 373 F.3d at 1039. In evaluating a facial challenge under Rule 12(b)(1), the Court accepts the allegations in the complaint as true and draws all reasonable inferences in the plaintiff's favor. *See Wolfe*, 392 F.3d at 362 ("[T]he defendants argue that the allegations in [the] complaint are insufficient on their face to establish subject matter jurisdiction. Whether subject matter jurisdiction exists therefore does not depend on resolution of a factual dispute, but rather on the allegations in [the] complaint. We assume [the plaintiff]'s allegations to be true and draw all reasonable inferences in his favor.").

"For a prospective remedy such as injunctive relief, the 'threatened injury must be certainly impending,' and 'allegations of possible future injury are not sufficient.' " *Griffin*, 2024 WL 4333373, at \*3 (quoting *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013)). "Previous injuries, though insufficient by themselves to grant standing, are 'evidence bearing on whether there is a real and immediate threat of repeated injury.' " *Id.* (quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983)).

### b. Analysis

The Court finds that Murch has failed to allege facts to establish "a present case or controversy regarding injunctive relief[.]" *Lyons*, 461 U.S. at 102 (quoting *O'Shea v. Littleton*, 414 U.S. 488, 495-96 (1974)).

Murch alleges that GPS called her three times over a five-day period in 2024. (Compl. ¶ 21.) Murch alleges that she did not answer the first two calls. (*Id.* ¶¶ 23-24.) Murch answered the third call during which " 'Alex' from 'GPS Capital Markets' ... attempted to sell [Murch] [GPS]'s foreign exchange trading platform[.]" (*Id.* ¶¶ 24-25.) Murch does not allege any other details relating to her conversation with GPS, but alleges that she "never provided her consent or requested the calls." (*Id.* ¶ 30.)

In *Griffin*, the court held that the plaintiffs "sufficiently allege[d] an imminent risk of future harm that entitles them to injunctive relief" because each of the plaintiffs continued to receive calls soliciting life insurance after repeatedly informing the defendant that they were not interested in its products. *See Griffin*, 2024 WL 4333373, at \*1, \*6 (alleging that one plaintiff received three calls from the same agent and informed him each time that he was not interested in the life insurance products offered); *id.* at \*1-2 (alleging that the second plaintiff received two calls from the defendant's agents, in which the defendant transferred her to multiple agents who continued to solicit life insurance even after she informed the agents that she was not interested in their products). Here, Murch does not allege that she ever requested that GPS stop calling her or that GPS has called her since November 1, 2024.

Having considered the factual allegations in Murch's complaint, the Court finds that Murch alleges only a possible future injury and therefore lacks standing to pursue her claim for injunctive relief. *See Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 967 (9th Cir. 2018) ("[T]he 'threatened injury must be *certainly impending* to constitute injury in fact' and "allegations of *possible*

future injury are not sufficient." (quoting *Clapper*, 568 U.S. at 409)); *see also Woodburn v. Gen. Auto. Ins. Servs.*, No. 2:22-cv-01975, 2023 WL 11892501, at *2 (D. Nev. Nov. 6, 2023) (dismissing the plaintiff's TCPA claim for injunctive relief for lack of standing because "she has not plausibly alleged that [the defendant] is likely to wrong her again in a similar way" considering "[t]he amended complaint includes a screenshot showing that Woodburn responded to [the defendant]'s second text by typing 'Stop,' and she does not allege she received another text thereafter"); *Blair v. Assurance IQ LLC*, No. 2:23-cv-00016, 2023 WL 6622415, at *5 (W.D. Wash. Oct. 11, 2023) (dismissing the plaintiff's TCPA claim for injunctive relief for lack of standing and finding that the plaintiff failed to "allege a sufficient threat of future harm—let alone 'actual and imminent' or 'certainly impending' harm[ because] ... he does not even mention the possibility of future calls[ a]nd according to the amended complaint, he only received calls over a period of seven days"). Accordingly, the district judge should dismiss Murch's claim for injunctive relief.

### B. Rule 12(b)(6)

#### 1. Failure to state a claim

**\*10** GPS moves to dismiss Murch's claim under Rule 12(b)(6) for failure to state a claim on multiple grounds. First, GPS argues that Murch fails plausibly to "allege a theory of liability under the TCPA against GPS, which alone is fatal and warrants dismissal." (Def.'s Mot. at 15-21.) Second, GPS argues that Murch fails to allege sufficient facts supporting her TCPA claim because "she readily admits that she only answered one of the three calls at issue." (*Id.* at 22.) Third, GPS argues that Murch fails to state a viable TCPA claim because "the Complaint also fails to sufficiently allege that the communications Plaintiff purportedly received constituted actionable 'telephone solicitations' as defined by the TCPA's implementing regulations." (*Id.* at 23-24.) Fourth, GPS argues that the Court should dismiss Murch's claim because "Plaintiff does not allege that she herself (and not some other party) registered the phone number upon which she received the alleged calls on the National DNC Registry[.]" (*Id.* at 24-25) (emphasis omitted).

With respect to GPS's first argument, Murch responds that she has sufficiently alleged facts that support a theory of direct liability against GPS. (Pl.'s Resp. at 19-25.) To GPS's remaining arguments, Murch responds that she has sufficiently pled all required elements of her TCPA claim. (*Id.* at 25-32.)

#### a. Direct Liability

GPS moves to dismiss Murch's claim on the ground that "the complaint lacks sufficient non-conclusory factual allegations indicating that the defendant actually made the calls at issue by taking the steps necessary to physically place a call." (Def.'s Mot. at 16; *see also* Def.'s Reply at 16, "Plaintiff's Opposition ultimately fails to refute GPS's substantive arguments on the Rule 12(b)(6) issues.") Murch responds that "this Court can more than plausibly infer that the Defendant is directly liable for the calling conduct described in the complaint[.]" (Pl.'s Resp. at 23.)

#### 1) Applicable Law

Under the TCPA, "[t]here are two potential theories of liability: (1) direct liability; and (2) vicarious liability." *Thomas v. Taco Bell Corp.*, 582 F. App'x 678, 679 (9th Cir. 2014). "Under the direct liability standard, 'the complaint must allege facts showing the defendant actually placed calls violating the TCPA.' " *Griffin*, 2024 WL 4333373, at *3 (quoting *Workman v. CarGuard Admin. Inc.*, No. 2:23-cv-00961, 2024 WL 249160, at *5 (D. Ariz. Jan. 23, 2024)). "[A] person or entity 'initiates' a telephone call when it takes the steps necessary to physically place a telephone call, and generally does not include persons or entities, such as third-party retailers, that might merely have some role, however minor, in the causal chain that results in the making of a telephone call." *Id.* (citation omitted).

#### 2) Analysis

Murch alleges that "[d]uring the third call, which Plaintiff answered, the Plaintiff spoke to an individual named 'Alex' from 'GPS Capital Markets.' " (Compl. ¶ 24.) Murch further alleges that "[u]pon information and belief, [the caller's] telephone

number is owned by Defendant GPS." (*Id.* ¶ 22.) Murch clarifies in her response that she is asserting claims against GPS on a direct theory of liability. (Pl.'s Resp. at 19.)

The Court finds that Murch's allegations, taken in the light most favorable to her, support a reasonable inference that GPS initiated the relevant calls. Specifically, Murch alleges that the same phone number called her three times within a five-day period. (*See* Compl. ¶¶ 21-25.) Murch further alleges that during the third call, the caller identified himself as " 'Alex' from 'GPS Capital Markets' " and "billed [GPS] as the 'world's largest foreign exchange brokerage,' and also sought to speak with anyone else that might be interested regarding a foreign exchange brokerage account." (*Id.* ¶¶ 24-25.) The Court finds that Murch's allegations are sufficient to support a reasonable inference that GPS initiated the alleged calls. *See Griffin*, 2024 WL 4333373, at *4 (finding the plaintiff's allegations that he "received repeated calls by an outfit purporting to call on behalf of the Defendant to sell Defendant's services" to be "sufficient to create a plausible inference that Defendant made the calls at issue"); *Greene*, 2021 WL 4926495, at *3 ("[T]he most reasonable inference is the simplest one—that the caller is from where she said she was.").

 **\*11**  Accordingly, the district judge should deny GPS's motion to dismiss on the ground that Murch failed to allege facts supporting a direct theory of liability against GPS.

### b. Number of Calls

GPS moves to dismiss Murch's claim on the ground that "she has not sufficiently pleaded she received more than one telephone solicitation by or on behalf of GPS in [a] 12-month period, as required" to assert her TCPA claim. (Def.'s Mot. at 22.) Murch responds that "the TCPA does not require a plaintiff to answer each call, [evidenced] by its very definition requiring only the receipt of more than one call, and the Plaintiff received three." (Pl.'s Resp. at 26) (emphasis omitted). Murch further argues that the alleged facts support a reasonable inference that all three calls were telephone solicitations from GPS. (*Id.* at 25-27.)

### 1) Applicable Law

"The TCPA gives consumers 'who ha[ve] received more than one telephone [solicitation] within any 12-month period by or on behalf of the same entity ... a private right of action." *Jones v. Royal Admin. Servs., Inc.*, 887 F.3d 443, 448 (9th Cir. 2018) (quoting 47 U.S.C. § 227(c)(5)). Importantly here, "more than one telephone solicitation is needed to trigger a [TCPA] violation." *Greene*, 2021 WL 4926495, at *5.

### 2) Analysis

Murch alleges that she received three calls from the relevant phone number and that she only answered the third call. (*See* Compl. ¶¶ 21-24.) The parties identify case law with conflicting interpretations of the TCPA's requirement that a plaintiff "receive[ ] more than one telephone [solicitation] within any 12-month period[.]" 47 U.S.C. § 227(c)(5). Neither party identifies, and the Court has not found, any binding authority interpreting the relevant statutory language.

GPS primarily relies on *Greene* and similar cases holding that a plaintiff who pleads that she received multiple calls from the same number, but only answered one call, fails sufficiently to plead facts supporting receipt of "more than one telephone [solicitation]" to support a TCPA claim. *See Greene*, 2021 WL 4926495, at *5 ("Plaintiff has alleged that his mother placed his number on the DNC registry. And while he alleges that he received eight calls from Defendant's number within a one-year period, he only answered one of these calls—on April 10, 2020. Thus, at best, Plaintiff has only alleged one telephone solicitation. But more than one telephone solicitation is needed to trigger a violation. Plaintiff, however, has not alleged the content of the other calls that would allow the Court to reasonably infer that these other calls were solicitations."); *Weingrad v. Top Healthcare Options Ins. Agency Co.*, No. 2:23-cv-05114, 2024 WL 4228149, at *4 (E.D. Pa. Sept. 17, 2024) ("[The defendant] placed nine calls to [the plaintiff]. But [the plaintiff] only answered one of these calls. [The plaintiff] does not allege more than one telephone solicitation within a twelve-month period. He does not presently allege [the defendant] violated the Telephone Consumer Protection Act.") (citations omitted); *Gillam v. Reliance First Cap., LLC*, No. 2:21-cv-04774, 2023 WL

2163775, at *3 (E.D.N.Y. Feb. 22, 2023) ("[T]he call log shows, with the exception of the August 4, 2021 call, that the other calls were blocked, missed calls or declined calls. As such, Plaintiff has not plausibly alleged that these prior calls were 'telephone solicitation[s]' under Section 227(c)(5)." (citing *Greene*, 2021 WL 4926495, at *5)) (simplified).

**\*12** Murch primarily relies on cases holding that, at the pleading stage, a plaintiff's allegations that she only answered one telephone solicitation, but received multiple calls from the same phone number, are sufficient to state a TCPA claim. *See Toney v. Quality Res., Inc.*, 75 F. Supp. 3d 727, 746 (N.D. Ill. 2014) ("[The plaintiff] has alleged that she received and answered a call from [the telemarketer] in which the caller tried to sell her a Budget Savers membership the day after she received three unanswered calls from [the telemarketer]. The content and timing of the fourth call allows the court to draw a reasonable inference that [the telemarketer] made the first three calls to market [the defendant]'s services."); *Whittaker*, 2023 WL 167040, at *2 ("Multiple calls from the same telephone number over the course of a few days suggests a common purpose in the calls, and the recorded voicemail clearly suggests the purpose of the calls[ was solicitation].") (citations omitted); *Atkinson v. Choice Home Warranty*, No. 2:22-cv-04464, 2023 WL 166168, at *5 (D.N.J. Jan. 11, 2023) ("[W]hile Plaintiff only alleges the specific content of one call, she answered the phone on at least three occasions, claims that Defendant began calling [the plaintiff] on her cellular telephone to sell Plaintiff a home warranty plan, that the calls were for telemarketing purposes, and that Defendant placed calls to [the plaintiff] on numerous occasions attempting to solicit Plaintiff a home warranty plan[.] These allegations create a reasonable inference that more than one of the seven calls explicitly listed were 'telephone solicitations' in violation of the statute.") (simplified); *Bird v. Pro Star Builders, Inc.*, No. 2:22-cv-03610, 2022 WL 18216007, at *3 (C.D. Cal. Nov. 28, 2022) ("The Court agrees that it is reasonable to infer that the same caller is responsible for calls from the same number, whether those calls are answered or not.").

In light of the Court's obligation to draw all reasonable inferences in Murch's favor at the pleading stage, the Court finds that it is reasonable to infer from the content and timing of the third call that the first two calls from the same phone number were for the same purpose. *See Toney*, 75 F. Supp. 3d at 746 ("The content and timing of the fourth call allows the court to draw a reasonable inference that [the telemarketer] made the first three calls to market [the defendant]'s services."); *Whittaker*, 2023 WL 167040, at *2 ("Multiple calls from the same telephone number over the course of a few days suggests a common purpose in the calls, and the recorded voicemail clearly suggests the purpose of the calls[ was solicitation].") (citations omitted); *Bird*, 2022 WL 18216007, at *3 ("The Court agrees that it is reasonable to infer that the same caller is responsible for calls from the same number, whether those calls are answered or not.").

Accordingly, the district judge should deny GPS's motion to dismiss on the ground that Murch failed to allege that she received more than one telephone solicitation.

### c. Telephone Solicitation

GPS moves to dismiss Murch's claim on the ground that "she does not plead any facts, beyond her naked conclusions, suggesting that she was actually solicited to purchase GPS's goods or services on that call." (Def.'s Mot. at 24.) Murch responds that she "received three calls from the same number, and the third caller was GPS Capital calling to solicit its foreign exchange services." (Pl.'s Resp. at 28.)

### 1) Applicable Law

The TCPA and related regulations defines the term "telephone solicitation" to include "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person[.]" 47 C.F.R. § 64.1200(f)(15); *see also* 47 U.S.C. § 227(a)(4) (same). "The purpose of a text or call determines whether it qualifies as a telephone solicitation, and courts use 'a measure of common sense' to determine its purpose." *Abboud v. Circle K Stores Inc.*, 731 F. Supp. 3d 1094, 1102 (D. Ariz. 2024) (quoting *Chesbro v. Best Buy Stores, L.P.*, 705 F.3d 913, 918 (9th Cir. 2012)).

### 2) Analysis

Murch alleges that during the third call, GPS's employee "attempted to sell the Plaintiff the Defendant's foreign exchange trading platform, which he billed as the 'world's largest foreign exchange brokerage,' and also sought to speak with anyone else that might be interested regarding a foreign exchange brokerage account." (Compl. ¶ 25.) Although the call transcript contradicts Murch's allegation that GPS's employee "attempted to sell" *Murch* its "foreign exchange platform" (Compl. ¶ 25), the Court nevertheless finds that Murch sufficiently pleads facts supporting her allegation that the relevant phone call was a "telephone solicitation." As discussed above, Murch alleges and the call's transcript confirms that on the call, GPS's employee "billed [GPS] as the 'world's largest foreign exchange brokerage' " and "sought to speak with anyone else that might be interested regarding a foreign exchange brokerage account." (*Id.*) Drawing all reasonable inferences in Murch's favor, the Court finds these allegations support a reasonable inference that GPS's employee initiated the relevant call "for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services[.]" 47 U.S.C. § 227(a)(4); *see also Abboud*, 731 F. Supp. 3d at 1102 ("Neither the statute nor the regulations require an explicit mention of a good, product, or service where the implication is clear from the context." (quoting *Chesbro*, 705 F.3d at 918)); *see also Whittaker*, 2023 WL 167040, at *2 ("Except for encouraging the purchase of its products, it is hard to imagine why an insurance company would contact a consumer not already insured by it and state that it looked forward to saving the consumer money, as did the recorded message in this case.").

 **\*13**  Accordingly, the district judge should deny GPS's motion to dismiss on the ground that Murch failed to allege that she received a telephone solicitation.

### d. DNC Registration

GPS moves to dismiss Murch's TCPA claim on the ground that she "does not allege that she herself (and not some other party) registered the phone number upon which she received the alleged calls on the National DNC Registry[.]" (Def.'s Mot. at 25) (emphasis omitted). Murch responds that "the TCPA cannot require that an individual later seeking to sue under the Do Not Call Registry provisions of the TCPA needs to personally register their number on the Do Not Call Registry because that fact would be impossible to prove, as the FTC is neither authorized to nor collects such information." (Pl.'s Resp. at 29) (emphasis omitted).

### 1) Applicable Law

TCPA regulations prohibit any "person or entity [from] initiat[ing] any telephone solicitation to ... [a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry[.]" 47 C.F.R. § 64.1200(c)(2). "Such do-not-call registrations must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator." *Id.*

### 2) Analysis

Murch alleges that her "telephone number has been listed on the National Do Not Call Registry more than 31 days prior to the calls at issue." (Compl. ¶ 19.) The parties have identified case law with conflicting interpretations of 47 C.F.R. § 64.1200(c)(2). Specifically, GPS cites *Rombough* and similar cases which interpreted the relevant regulatory language to require a plaintiff to plead that they personally registered the relevant phone number on the DNC registry to avoid dismissal. (*See* Def.'s Mot. at 24-25); *see also Rombough v. Robert D. Smith Ins. Agency, Inc.*, No. 1:22-cv-00015, 2022 WL 2713278, at *3 (N.D. Iowa June 9, 2022) (dismissing the plaintiff's TCPA claim in part because "she does not allege that she registered her telephone number on the do-not-call-registry"); *Rogers v. Assurance IQ, LLC*, No. 2:21-cv-00823, 2023 WL 2646468, at *4 (W.D. Wash. Mar. 27, 2023) (dismissing the plaintiff's TCPA claim in part because the plaintiff failed to allege that "they placed their own numbers on the DNC list (as opposed to someone else placing their numbers on the list)"). Murch cites a number of cases disagreeing with *Rombough*'s analysis and argues that *Rombough* "has been disagreed with by every other court to consider it and its premises." (Pl.'s Resp. at 31, collecting cases.) The parties have not identified, and the Court has not found, any binding authority interpreting the relevant regulatory language.

As one district court in this circuit explained, "the regulation states that it applies to a 'residential telephone subscriber who has registered his or her number' on the DNC Registry, [however,] it goes on to require that DNC registrations 'must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator.' " *Abrahamian v. loanDepot.com LLC*, No. 2:23-cv-00728, 2024 WL 1092442, at *2 (D. Ariz. Mar. 13, 2024) (quoting 47 C.F.R. § 64.1200(c)(2)). The Court agrees with the *Abrahamian* court's analysis and conclusion "that as phone numbers change hands, the DNC Registry may not always reflect which consumers requested to be included" and "that the [regulation's] language includes the term 'indefinitely' to remove the ambiguity of which numbers should be protected." *Id.* Thus, the Court agrees with the majority of district courts in this Circuit that have interpreted 47 C.F.R. § 64.1200(c)(2) and rejected the requirement that the plaintiff plead that they personally registered the relevant phone number on the DNC registry. *See id.* (rejecting *Rombough*'s interpretation of 47 C.F.R. § 64.1200(c)(2)); *Nichols*, 2025 WL 689721, at *3 ("After fully considering the TCPA's private right of action, the statutory scheme, and other language in the implementing regulation as discussed above, the Court declines to follow *Rombough*."); *cf. Mason v. Spring EQ LLC*, No. 5:24-cv-01833, 2024 WL 5424385, at *3 (C.D. Cal. Nov. 27, 2024) (denying the defendant's motion to stay because "[o]n its face, the statutory language appears to protect phone numbers until they are removed regardless of personal registration" and "[c]onsidering the statutory language and conflicting case law cited by the parties, the Court is unconvinced that Defendant will clearly prevail in its motion to strike").

**\*14** Accordingly, the district judge should deny GPS's motion to dismiss on the ground that Murch failed to allege that she registered her number on the DNC registry.

### C. Class Allegations

Murch seeks to certify a "National DNC Class" on behalf of:

> All persons in the United States whose (1) telephone numbers were on the National Do Not Call Registry for at least 31 days, (2) but who received more than one telemarketing call from or on behalf of Defendant encouraging the purchase of GPS's goods or services, (3) within a 12-month period (4) at any time in the period that begins four years before the date of filing this Complaint to trial.

(Compl. ¶ 33.)

GPS moves in the alternative to strike Murch's "class allegations under Rule 12(f) and/or 23." (Def.'s Mot. at 25-31.) As recognized in *Walters*, "[t]here is an apparent split in this district on the issue" of whether a defendant's challenge to class allegations at the pleading stage is properly analyzed under Rule 12(b)(6) or Rule 12(f). *Walters v. Vitamin Shoppe Indus., Inc.*, No. 3:14-cv-01173-PK, 2018 WL 2424132, at *4 (D. Or. May 8, 2018) (citations omitted), *findings and recommendation adopted*, 2018 WL 2418544 (D. Or. May 29, 2018); *compare Bates v. Bankers Life & Cas. Co*, 993 F. Supp. 2d 1318, 1341 (D. Or. 2014) (granting the defendant's Rule 12(f) motion to strike class allegations at the pleading stage), *aff'd*, 716 F. App'x 729 (9th Cir. 2018) and *Updike v. Clackamas County*, No. 3:15-cv-00723-SI, 2015 WL 7722410, at *11 (D. Or. Nov. 30, 2015) ("The Court finds it inappropriate to address Defendants' motion to dismiss [the plaintiff]'s class allegations at th[e pleading] stage" because "other Federal Rules of Civil Procedure exist to address improper class action allegations [including] ... Rule 12(f)[.]") *with Speers v. Pre-Employ.com, Inc.*, No. 3:13-cv-01849-HU, 2014 WL 2611259, at *2 (D. Or. May 13, 2014) ("[A] defendant may move to dismiss class allegations prior to discovery in appropriate cases, although a Rule 12(f) motion is not the appropriate vehicle to challenge the sufficiency of class allegations."), *findings and recommendation adopted*, 2014 WL 3672910 (D. Or. July 23, 2014); *cf. Gardiner v. Walmart Inc.*, No. 4:20-cv-04618, 2021 WL 2520103, at *10 (N.D. Cal. Mar. 5, 2021) ("Courts within this District and within the Ninth Circuit have determined that motions to strike are not the proper vehicle for seeking dismissal of class allegations.") (simplified) (collecting cases). For the reasons explained below, the Court finds that Murch's class allegations are insufficient under either standard.

### 1. Rule 12(b)(6)

### a. Applicable Law

"Generally, Rule 12(b)(6) is not a proper vehicle for dismissing class claims, but district courts dismiss class allegations under the *Twombly/Iqbal* standard where the complaint 'lacks *any* factual allegations and reasonable inferences that establish the plausibility of class allegations.' " *Garcia v. Anane Enter. LLC*, No. 2:24-cv-01993, 2025 WL 894616, at *14 (E.D. Cal. Mar. 24, 2025) (quoting *Mish v. TForce Freight, Inc.*, No. 3:21-cv-04094, 2021 WL 4592124, at *8 (N.D. Cal. Oct. 6, 2021)); *see also Webb v. Rejoice Delivers LLC*, No. 5:22-cv-07221, 2025 WL 974996, at *2 (N.D. Cal. Apr. 1, 2025) (same); *Johnson v. Air Prods. & Chems., Inc.*, No. 2:22-cv-07327, 2023 WL 2663279, at *5 (C.D. Cal. Jan. 26, 2023) (same). Dismissing class allegations under the *Twombly/Iqbal* standard "does not test Plaintiff's compliance with Rule 23, and instead measures those claims under Rule 8(a)'s federal pleading standard." *Valenzuela v. Everi Games Inc.*, No. 2:24-cv-00257, 2024 WL 5681957, at *4 n.3 (C.D. Cal. Feb. 15, 2024) (citations omitted); *see also Guerra v. United Nat. Foods, Inc.*, No. 5:19-cv-01684, 2019 WL 13203781, at *13 (N.D. Cal. Nov. 8, 2019) ("Class certification discovery is not a substitute to the pleading requirements of Rule 8 and *Twombly*. Class allegations must be supported by sufficient factual allegations demonstrating that the class device is appropriate and discovery on class certification is warranted." (quoting *Jue v. Costco Wholesale Corp.*, No. 3:10-cv-00033, 2010 WL 889284, at *6 (N.D. Cal. Mar. 11, 2010))) (simplified); *Grundmeyer v. Allstate Prop. & Cas. Ins. Co.*, No. 2:15-cv-00464, 2015 WL 9487928, at *1-2 (W.D. Wash. Sept. 29, 2015) ("[When analyzing the defendant's Rule 12 challenge to the class allegations, t]he question ... is whether the allegations in the First Amended Complaint state 'plausible' grounds for class certification or whether they are so conclusory or formulaic that they should be disregarded." (citing *Twombly*, 550 U.S. at 570)). "If the class allegations are legally or factually defective, ... dismissal is appropriate." *Grundmeyer*, 2015 WL 9487928, at *1 (citing *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010)); *see also Garcia*, 2025 WL 894616, at *14 ("Class claims must be supported by sufficient factual allegations demonstrating that the class device is appropriate and discovery on class certification is warranted.") (simplified); *Flores v. Starwood Hotels & Resorts Worldwide, Inc.*, No. 8:14-cv-01093, 2015 WL 12912337, at *4 (C.D. Cal. Mar. 16, 2015) ("[I]f a class action complaint could survive a motion to dismiss based merely on the need for class discovery, then many, if not all, class action complaints would have expansive class allegations and definitions to permit a fishing expedition during discovery. The Court is troubled by this possibility.").

### b. Analysis

**\*15** Murch alleges that "[c]lass action treatment is superior to the alternatives for the fair and efficient adjudication of the controversy alleged" in part because "[t]here are hundreds of Class members, such that joinder of all members is impracticable." (Compl. ¶ 39.) Murch further alleges that the proposed class is sufficiently numerous because, although "[t]he exact number of Class members is unknown[,] ... based on the *en masse* nature of telemarketing [the class] is believed to be at least hundreds of persons at this time, and individual joinder in this case is impracticable." (*Id.* ¶ 35.)

The Court finds that Murch fails plausibly to allege facts to support her class allegations. Specifically, Murch's allegations, the judicially noticeable materials, and materials incorporated by reference all support that GPS intended to call a business at a number published on the business's website and mistakenly reached Murch, who then lied about her identity and pretended to take a message for the intended business recipient. (*See* Pl.'s Resp. Ex. D.) Murch does not dispute that GPS markets or sells its products to businesses and not to consumers. (*See* Greenleaf Decl. ¶ 9, "GPS sells foreign exchange and currency management solutions to corporate accounts. As such, GPS does not market its products or services to the general public or consumers like Plaintiff[.] Rather, GPS only sells its products and services to businesses and persons working in the financial services and banking sectors. In other words, GPS only markets 'business to business' and not to consumers."; Hr'g Tr. 35:5-11, "[Murch does not] dispute that [GPS] do[es] appear to be a more business-centered or business-to-business operation. But ... ultimately, I think that those questions are best raised for discovery[.]") Nor does Murch dispute that S.C.'s company website listed Murch's phone number as S.C.'s business phone number at the time GPS made the calls at issue.[6] (*See* Greenleaf Decl. Exs. A, C.) In light of these undisputed facts, the Court asked Murch's counsel about whether Murch had a good faith factual basis to assert her claim on behalf of others similarly situated. (*See* Hr'g Tr. 35:12-16.) Murch's counsel responded that Murch's class allegations are primarily supported by his general knowledge about telemarketers and his experience in TCPA cases. (*See id.* 35:17-25, 36:1-4, 6-13.)

Given the unique and undisputed facts in the current record, the Court finds that "this is one of the rare cases in which dismissal of class allegations under Rule 12(b)(6) is appropriate, because 'the complaint lacks *any* factual allegations and reasonable inferences that establish the plausibility of class allegations.' " *Webb*, 2025 WL 974996, at *4 (quoting *Mish*, 2021 WL 4592124, at *8); *see also Garcia*, 2025 WL 894616, at *14 (dismissing class allegations because the plaintiff's "conclusory allegations fail to plausibly suggest the existence of a class who collectively suffered under [the] Defendants' unlawful policies and practices") (citation omitted); *Rubalcaba v. R&L Carriers Shared Servs., L.L.C.*, No. 4:23-cv-06581, 2024 WL 1772863, at *16 (N.D. Cal. Apr. 23, 2024) (dismissing class allegations because "the Court concludes that this is one of the rare cases where Plaintiff's class allegations are so conclusory that forcing Defendant on a deep-sea charter of class discovery would be prejudicial") (simplified); *Johnson*, 2023 WL 2663279, at *5 (dismissing class allegations because the plaintiff "has not alleged sufficient facts to support the broad meal and rest period classes he alleges in his complaint"); *Mish*, 2021 WL 4592124, at *8-9 ("As currently pled, [the plaintiff]'s class allegations ... lack 'sufficient factual content' to enable 'the Court to make a reasonable inference that Defendants are liable' for the claims alleged.") (citations omitted); *Ovieda v. Sodexo Operations, LLC*, No. 2:12-cv-01750, 2012 WL 1627237, at *4 (C.D. Cal. May 7, 2012) ("[The plaintiff's] allegation is wholly conclusory and thus we need not take it as true in deciding this Motion. In sum, Plaintiff's class allegations ... must be dismissed because she has alleged absolutely no facts to show that her work experience was similar to that of any member of the putative class.").

**\*16** Specifically, the Court finds that Murch fails plausibly to allege "sufficient factual allegations demonstrating that the class device is appropriate and discovery on class certification is warranted." *Garcia*, 2025 WL 894616, at *14; *see, e.g.*, *Taylor v. Penske Logistics, LLC*, No. 5:20-cv-02623, 2021 WL 4288525, at *4 (C.D. Cal. Sept. 21, 2021) ("[The plaintiff] merely alleges what happened to him personally and asks the Court to extrapolate and assume, without any additional facts, that [the defendant] treated other employees in a similar fashion. This 'logical disconnect' renders the class claim subject to dismissal."); *Zamora v. Penske Truck Leasing Co., L.P.*, No. 2:20-cv-02503, 2021 WL 809403, at *3 (C.D. Cal. Mar. 3, 2021) ("Plaintiffs' arguments suffer from a basic logical disconnect. Whether Plaintiffs adequately allege claims on their own behalf is beside the point. Plaintiffs do not assert any factual support for their class allegations. Rather, Plaintiffs merely allege that their claims are also brought on behalf of the Class. Without any factual support, ... the Court finds such leaps implausible.... Plaintiffs cannot point to a fish in the surf to force Defendant on a deep-sea charter.") (citation omitted); *Alvarado v. Wal-Mart Assocs., Inc.*, No. 2:20-cv-01926, 2020 WL 6532868, at *3 (C.D. Cal. Oct. 22, 2020) ("Plaintiff cannot extrapolate from her singular experience that Defendants have a pattern and practice of committing similar violations[.]") (simplified); *Alvarado v. Wal-Mart Assocs., Inc.*, No. 2:20-cv-01926, 2020 WL 6526372, at *3 (C.D. Cal. Aug. 7, 2020) ("Before a plaintiff can obtain class discovery and put a defendant through the expense of opposing class certification, she must at least plausibly allege that the asserted claims might apply to others in the putative class. Performing its 'context-specific task,' the Court finds that as currently stated, Plaintiff's allegations make it implausible that other putative class members will share her alleged injuries.") (citation omitted); *Antonio v. Saxon Mortg. Servs., Inc.*, No. 2:11-cv-10066, 2012 WL 13426614, at *3 (C.D. Cal. Sept. 7, 2012) ("Plaintiffs clearly do not know if the proposed class actually exists. Nor have Plaintiffs alleged any facts that would give them, or the Court, any reason to believe (or even hope) that such a class exists. The federal fact-pleading standard, though lenient, does not permit a plaintiff to proceed with claims based on pure speculation. Plaintiffs cannot make baseless assumptions in their complaint in the hopes that something will 'stick' during discovery. Plaintiffs' argument here amounts to a request for leave to pursue class claims based on guesses lacking factual support in the hopes that a class will somehow materialize at a later date."); *Ovieda*, 2012 WL 1627237, at *1 ("[A] plaintiff cannot 'unlock the doors of discovery ... armed with nothing more than conclusions." (quoting *Iqbal*, 556 U.S. at 678-79)).

For these reasons, the district judge should dismiss Murch's class allegations pursuant to Rule 12(b)(6).

### 2. Rule 12(f)

If the Court declines to dismiss Murch's complaint, GPS moves in the alternative to strike Murch's "class allegations under Rule 12(f) and/or 23[.]" (*See* Def.'s Mot. at 25-31.)

### a. Applicable Law

Rule 12(f) provides that a "court may strike from a pleading ... any ... immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). "Where the complaint demonstrates that a class action cannot be maintained on the facts alleged, a defendant may move to strike the class allegations prior to discovery." *Tomaszewski v. Circle K Stores Inc.*, No. 2:20-cv-01569, 2021 WL 2661190, at *2 (D. Ariz. Jan. 12, 2021) (quoting *Sanders v. Apple Inc.*, 672 F. Supp. 2d 978, 990 (N.D. Cal. 2009)). "[I]n the context of a motion to strike class allegations, in particular where such a motion is brought in advance of the close of class discovery, it is properly the defendant who must bear the burden of proving that the class is not certifiable." *Bates*, 993 F. Supp. 2d at 1340-41. "Yet where the plaintiffs fail to make even a prima facie showing of Rule 23's prerequisites, ... the burden is on the plaintiff to demonstrate that discovery measures are likely to produce persuasive information substantiating the class action allegations." *Doninger v. Pac. Nw. Bell, Inc.*, 564 F.2d 1304, 1313 (9th Cir. 1977) (citation omitted).

"The Ninth Circuit has recognized that 'often the pleadings alone will not resolve the question of class certification and that some discovery will be warranted.' " *Nichols*, 2025 WL 689721, at *4 (quoting *Vinole*, 571 F.3d at 942). "But when the problem with the class allegations is 'facially evident, it makes sense to address the issue early on.' " *Id.* (quoting *Baton v. Ledger SAS*, 740 F. Supp. 3d 847, 872 (N.D. Cal. 2024)); *see also Granados v. OnPoint Cmty. Credit Union*, No. 3:21-cv-00847-SI, 2023 WL 3570039, at *8 (D. Or. May 18, 2023) ("Class allegations may be stricken at the pleading stage.... The granting of such motions 'has happened ... when the class definition is obviously defective in some way.' ") (citations omitted).

### b. Analysis

The Court recommends that the district judge strike Murch's class allegations for several reasons.

As an initial matter, the Court finds that Murch's class definition fails because, as defined and in light of Murch's own factual allegations, Murch is not a member of the class. Specifically, Murch seeks to represent individuals "who received more than one telemarketing call from or on behalf of Defendant encouraging the purchase of GPS's goods or services[.]" (Compl. ¶ 33.) Murch fails plausibly to allege, however, that she received any calls from GPS encouraging the purchase of GPS's goods or services. Rather, construing her allegations in the light most favorable to her, Murch received a phone call initiated for the purpose of encouraging S.C. or anyone else "who works at [S.C.'s company] ... regarding foreign exchange" to purchase GPS's goods or services. (Pl.'s Resp. Ex. D at 1.) Murch does not allege that she worked at S.C.'s company or dealt with foreign exchange. The call's transcript makes clear that the caller never offered Murch any goods or services. (*See generally id.*) Although Murch's allegations may be sufficient at the pleading stage to support her claim that she received a call initiated for the *purpose* of solicitation, she fails sufficiently to allege that the caller "encourage[d] the purchase of GPS's good or services." (Compl. ¶ 33.) Thus, Murch's proposed class lacks typicality because she "has not alleged that she falls into her own class definition." *Brown v. Nano Hearing Tech Opco, LLC*, No. 3:24-cv-00221, 2024 WL 3367536, at *9 (S.D. Cal. July 9, 2024) (striking class allegations in part because the plaintiff "has not alleged that she falls into her own class definition" and "the Complaint does not name any other plaintiffs, [therefore] the purported class lacks typicality" (citing *Galan Segura v. CRST Van Expedited, Inc.*, No. 5:12-cv-01901, 2014 WL 12567799, at *2 (C.D. Cal. June 16, 2014))); *Ismail v. Am. Airlines, Inc.*, No. 2:22-cv-01111, 2023 WL 5504932, at *7 (C.D. Cal. July 14, 2023) (striking class allegations in part because the plaintiff "pleads that he was an 'exempt supervisor,' but all but one of his proposed Class Definitions include only non-exempt workers" and "[t]he one proposed Class Definition that includes supervisors specifies that it includes only 'level 3 and level 4 supervisors,' and he does not allege that his job title fits into that category"); *see also Philips v. Ford Motor Co.*, No. 5:14-cv-02989, 2016 WL 7428810, at *8 (N.D. Cal. Dec. 22, 2016) ("Typicality requires that the named Plaintiffs be members of the class they represent[.]") (simplified), *aff'd*, 726 F. App'x 608 (9th Cir. 2018).

**\*17** Further, the Court finds that Murch's proposed class definition would inappropriately require the Court to make findings on legal issues to determine class membership. Specifically, Murch seeks to represent a class of individuals "who received more than one telemarketing call[.]" (Compl. ¶ 33.)

Like "telephone solicitation," the relevant regulations define "telemarketing" as including only calls or messages initiated "for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person." 47 C.F.R. § 64.1200(f)(13). Thus, determining class membership is not based on objective criteria. Rather, determining

class membership requires a subjective inquiry into whether GPS initiated each call for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, issues directly related to the merits of each member's claim. *See Nichols*, 2025 WL 689721, at *5 (striking class allegations and "replacing the phrase 'telephone solicitations' with 'telephone calls' " because "whether a person received a 'telephone call' is an objective criterion that does not require the Court to make an upfront determination regarding consent"); *Salaiz v. eHealthInsurance Servs., Inc.*, No. 5:22-cv-04835, 2023 WL 2622138, at *5 (N.D. Cal. Mar. 22, 2023) (striking class allegations because the plaintiff's proposed class definition "improperly relies on merits determinations"); *Cashatt v. Ford Motor Co.*, No. 3:19-cv-05886, 2021 WL 1140227, at *3 (W.D. Wash. Mar. 24, 2021) (striking class allegations "because injury and causation are elements that must be established and which go to the question of liability; they are therefore not appropriate as part of the definition of the class"); *cf. Panacci v. A1 Solar Power, Inc.*, No. 3:15-cv-00532, 2015 WL 3750112, at *3 (N.D. Cal. June 15, 2015) (denying motion to strike TCPA class allegations because "to determine whether someone is in the class, one simply needs to answer questions such as whether the person is on a DNC registry or whether the person received a certain number of phone calls from Defendants within a certain timeframe" and "[n]one of these questions involve legal analysis" because "[m]embership can be determined by objective criteria") (citation omitted).

Murch argues that "courts have certified classes with nearly identical definitions in the past." (Pl.'s Resp. at 33, citing *Aley v. Lightfire Partners, LLC*, No. 5:22-cv-00330, 2024 WL 4007345, at *2 (N.D.N.Y. Aug. 30, 2024)) (emphasis omitted). As an initial matter, *Aley* is a district court opinion from another circuit. *Cf. Joe Hand Promotions Inc. v. Gonzalez*, 423 F. Supp. 3d 779, 784 (D. Ariz. 2019) ("District court opinions are relevant for their persuasive authority, but this Court is not bound by the opinion of another judge of the same or different district." (citing *Starbuck v. City & Cnty. of S.F.*, 556 F.2d 450, 457 n.13 (9th Cir. 1977))).

In any event, the facts in *Aley* are distinguishable. Specifically, the court in *Aley* certified a class of individuals "who received more than one telemarketing call from [the defendant] as part of the 'Auto Protectors' calling campaign." *Aley*, 2024 WL 4007345, at *2. The court never addressed the purpose of the calls at issue, likely because the purpose of the alleged calls was undisputed. *See id.* ("[The Defendant] placed the telemarketing calls at issue relying on the supposed consent obtained through Myjobscorner.com."). As a result, class members could be identified by whether they received calls "pursuant to the same marketing campaign." *Id.* at *3. Here, however, GPS disputes the purpose of the alleged calls and Murch does not allege facts supporting that the relevant calls were made pursuant to a marketing campaign that could objectively determine the purpose of the calls at issue. On the contrary, Murch's allegations, the judicially noticeable materials, and materials incorporated by reference all support that GPS intended to call a business and mistakenly reached Murch, who then lied about her identity and pretended to take a message for the intended business recipient.

**\*18** Finally, the Court finds that Murch has failed to satisfy her "burden of advancing a prima facie showing that the class action requirements of [Rule] 23 are satisfied or that discovery is likely to produce substantiation of the class allegations." *Mantolete v. Bolger*, 767 F.2d 1416, 1424 (9th Cir. 1985). Specifically, Murch alleges that "the exact number of Class members is unknown but based on the *en masse* nature of telemarketing is believed to be at least hundreds of persons at this time, and individual joinder in this case is impracticable." (Compl. ¶ 35.)

As discussed above, however, it is clear from the relevant call's transcript, as well as judicially noticeable materials, that GPS contacted Murch unintentionally and that it intended to contact S.C. at a business phone number. In light of Murch's conclusory allegations, which are contradicted by the judicially noticeable materials and materials incorporated by reference, the Court finds that Murch has failed to make "a prima facie showing that the class action requirements of [Rule] 23 are satisfied or that discovery is likely to produce substantiation of the class allegations." *Mantolete*, 767 F.2d at 1424; *see also Holly v. Alta Newport Hosp., Inc.*, 612 F. Supp. 3d 1017, 1028 (C.D. Cal. 2020) (striking class allegations because "[the plaintiff] fails to allege any facts in the FAC to support numerosity" and finding that "[the plaintiff]'s implicit suggestion that the six photographs may have contained the medical records of other individuals does not establish numerosity on its own" and "the claims that [the plaintiff] makes about the alleged numerosity of the class in her Opposition are absent from the FAC"); *Sallie Holly v. Alta Newport Hosp., Inc.*, No. 2:19-cv-07496, 2020 WL 6161457, at *5 (C.D. Cal. Oct. 21, 2020) (striking class allegations because the plaintiff "fail[ed] to allege any facts in the SAC to support numerosity and instead relies on only the possibility of discovery

to substantiate her allegations" and stating "[t]he Court is unwilling to put both parties through costly discovery to permit [the plaintiff] further attempts to establish an implausible fact"); *cf. Seymour v. Fay Servicing, LLC*, No. 2:21-cv-01666, 2021 WL 6499937, at *13 (C.D. Cal. Aug. 25, 2021) (striking class allegations because the plaintiff "failed to plead commonality, and by extension, predominance").

For these reasons, if the district judge does not dismiss Murch's class allegations under Rule 12(b)(6), the district judge should grant GPS's Rule 12(f) motion to strike Murch's class allegations.

## CONCLUSION

For the reasons stated, the Court recommends that the district judge GRANT IN PART and DENY IN PART GPS's motion to dismiss and to strike (ECF No. 7). Specifically, the district judge should deny GPS's Rule 12(b)(1) motion, but grant GPS's motion to dismiss Murch's injunctive relief claim and dismiss or strike Murch's class allegations. The Court further recommends that the district judge allow Murch to file an amended complaint within fourteen (14) days if she is able to cure the pleading deficiencies discussed herein. If not, the case will proceed on Murch's individual TCPA claim.

## SCHEDULING ORDER

**\*19**  The Court will refer its Findings and Recommendation to a district judge. Objections, if any, are due within fourteen (14) days. If no objections are filed, the Findings and Recommendation will go under advisement on that date. If objections are filed, a response is due within fourteen (14) days. When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.

## All Citations

Slip Copy, 2025 WL 2466576

Footnotes

1    The Court takes these facts from the complaint and assumes they are true for the purpose of reviewing the pending motions. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 572 (2007) ("[When] ruling on a defendant's motion to dismiss a complaint [the court] must accept as true all of the factual allegations contained in the complaint.") (simplified); *Platte Anchor Bolt, Inc. v. IHI, Inc.*, 352 F. Supp. 2d 1048, 1057 (N.D. Cal. 2004) ("With a motion to strike, just as with a motion to dismiss, the court should view the pleading in the light most favorable to the nonmoving party.") (citation omitted).

2    In the interest of privacy, the Court uses only the initials of the non-party individual referenced in the call.

3    Murch included quotes from the relevant call in her complaint but did not include the call's entire content. Murch submitted a transcript of the call in response to GPS's Federal Rule of Civil Procedure ("Rule") 12(b)(1) factual standing challenge. The Court finds that it is appropriate to consider Murch's call transcript as incorporated by reference into her complaint based on her quotations from the call in the complaint and reliance on the call's content as the basis for her claim. *See Branch v. Tunnell*, 14 F.3d 449, 453-54 (9th Cir. 1994) ("[D]ocuments whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered in ruling on a Rule 12(b)(6) motion to dismiss."), *overruled on other grounds by Galbraith v. County of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002); *see also Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1002 (9th Cir. 2018) ("The [incorporation-by-reference] doctrine prevents plaintiffs from selecting only portions of documents that support their claims, while omitting portions of those very documents that weaken—or doom—their claims.") (citations omitted).

4 "[Section] 227(c) and its implementing regulations apply only to 'residential' telephone subscribers[.]" *Chennette v. Porch.com, Inc.*, 50 F.4th 1217, 1223 (9th Cir. 2022).

5 At oral argument, however, Murch's counsel acknowledged that Murch has not received a call from GPS since the November 1, 2024 call at issue. (*See* Hr'g Tr. 34:10-12.)

6 Consistent with Ninth Circuit authority, the Court takes judicial notice of the fact of publication, and what was in the public realm at the time, but not whether the contents of the publications are in fact true. *See also Packsys, S.A. de C.V. v. Exportadora de Sal, S.A. de C.V.*, 899 F.3d 1081, 1087 n.2 (9th Cir. 2018) ("We take notice of the fact of publication, but do not assume the truth of the article's contents." (citing *Von Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 960 (9th Cir. 2010))); *see also* Fed. R. Evid. 201(c)(1) ("The court ... may take judicial notice on its own.").

---

**End of Document**                                    © 2026 Thomson Reuters. No claim to original U.S. Government Works.

Case 1:26-cv-00659-KM    Document 27-1    Filed 06/24/26    Page 60 of 105

Cited in uploaded document as:

Nichols v. eHealthInsurance Servs., 2025 U.S. Dist. LEXIS 37917, *8-9 (N.D. Cal., March 3, 2025)

2025 WL 689721

Only the Westlaw citation is currently available.

United States District Court, N.D. California.

Terri NICHOLS, et al., Plaintiffs,

v.

EHEALTHINSURANCE SERVICES, INC., Defendant.

Case No. 23-cv-06720-EKL

|

Signed March 3, 2025

**Attorneys and Law Firms**

Gustavo Ponce, Mona Amini, Seyed Abbas Kazerounian, Kazerouni Law Group, APC, Costa Mesa, CA, for Plaintiff.

Brittany A. Andres, Puja J. Amin, Troutman Amin, LLP, Irvine, CA, for Defendant.

**ORDER GRANTING IN PART MOTION TO DISMISS AND MOTION TO STRIKE CLASS ALLEGATIONS**

Re: Dkt. Nos. 14, 15

Eumi K. Lee, United States District Judge

**\*1** In this putative class action, named plaintiff Thomas Matthews alleges that Defendant eHealthInsurance Services, Inc. ("eHealth") violated the Telephone Consumer Protection Act (the "TCPA") by placing unsolicited telemarketing calls to his phone number, which was registered with the National Do-Not-Call Registry. eHealth moves to dismiss the complaint and to strike class allegations. *See* Mot. to Dismiss, ECF No. 14; Mot. to Strike, ECF No. 15. The Court carefully reviewed the parties' briefs and heard argument on October 22, 2024. For the following reasons, the Court GRANTS in part the Motion to Dismiss and GRANTS in part the Motion to Strike.

**I. BACKGROUND**

Plaintiff Thomas Matthews alleges that he owns a cell phone with a phone number ending in digits "8364."[1] Compl. ¶ 59. He is the sole user and/or subscriber of his cell phone. *Id.* ¶ 60. Matthews alleges that his cell phone number was added to the National Do-Not-Call Registry (the "NDNC Registry") on or about August 31, 2021. *Id.* ¶ 62. On June 10 and July 15, 2022, eHealth allegedly placed several telemarketing calls to Matthews. *Id.* ¶¶ 63-68. Matthews claims that he did not consent to receive these calls, and that he did not have an established business relationship with eHealth. *Id.* ¶¶ 70-71.

Matthews seek to represent a nationwide class of persons "registered on the National Do Not Call Registry ... to whom Defendant and/or a third party acting on Defendant's behalf, made two [or] more telephone solicitations ... within any twelve-month period." Compl. ¶ 92. Matthews asserts two causes of action on his own behalf and on behalf of the proposed class. Count 1 alleges violations of the TCPA, 47 U.S.C. § 227, *et seq.*, and Count 2 alleges violations of the TCPA's implementing regulations, 47 C.F.R. § 64.1200(C), *et seq.*

Case 1:26-cv-00659-KM   Document 27-1   Filed 06/24/26   Page 61 of 105

Nichols v. eHealthinsurance Services, Inc., Not Reported in Fed. Supp. (2025)

## II. MOTION TO DISMISS

### A. Legal Standard

Under Federal Rule of Civil Procedure 12(b)(6), a court must dismiss a complaint if it fails to state a claim upon which relief can be granted. To avoid dismissal, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when the pleaded facts allow the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). For purposes of a Rule 12(b)(6) motion, the court generally "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). However, the court need not "assume the truth of legal conclusions merely because they are cast in the form of factual allegations." *Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011) (per curiam) (quoting *W. Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981)).

**\*2** If the court finds that dismissal pursuant to Rule 12(b)(6) is warranted, the "court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (quoting *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995)).

### B. Discussion

#### 1. Count 1

Count 1 appears to assert that eHealth violated the TCPA by using an Automatic Telephone Dialing System ("ATDS") or prerecorded messages. *See* Compl. ¶¶ 22, 30, 127, 129, 130; *see also* 47 U.S.C. § 227(b)(1)(A)(iii) (prohibiting the use of ATDS or prerecorded messages, except for emergency purposes or with the prior express consent of the called party). eHealth moves to dismiss this claim on the basis that Matthews fails to allege that he received calls from an ATDS or that he received prerecorded messages. Mot. to Dismiss at 9-13.

In his opposition brief, Matthews concedes that the complaint "does not allege that Defendant utilized an automatic telephone dialing system ('ATDS') or an artificial or prerecorded voice." Opp. at 3-4, ECF No. 29. Matthews clarifies that the complaint "inadvertently" included references to ATDS, *id.* at 3, and that his claim is "based on Defendant's violations of the TCPA by contacting [Matthew's] telephone number registered with the [NDNC Registry]." *Id.* at 4.

At the motion hearing, Plaintiff's counsel agreed that Count 1 may be dismissed because Count 2 separately alleges a violation of the TCPA's NDNC Registry provision – the only claim that Matthews intends to pursue. Accordingly, the Court GRANTS the Motion to Dismiss Count 1 without leave to amend because Matthews does not allege any facts that could state a claim under this theory of liability, and the claim was asserted in error. *Lopez*, 203 F.3d at 1127; *see also Diamond S.J. Enter., Inc. v. City of San Jose*, 395 F. Supp. 3d 1202, 1231 (N.D. Cal. 2019) (striking immaterial allegations that were erroneously included in complaint).

#### 2. Count 2

Count 2 alleges a violation of the TCPA's implementing regulations, which prohibit telephone solicitations to telephone numbers that are listed in the NDNC Registry. The only disputed issue is whether Matthews must allege that he *personally* registered his phone number in the NDNC Registry to state a claim. *See* Mot. to Dismiss at 14-15. The Court holds that Matthews need not allege that he personally registered his number in the NDNC Registry. Rather, it is sufficient that Matthews alleges that his

Case 1:26-cv-00659-KM    Document 27-1    Filed 06/24/26    Page 62 of 105

Nichols v. eHealthInsurance Services, Inc., Not Reported in Fed. Supp. (2025)

phone number "was added" to the NDNC Registry. Compl. ¶ 62. The plain language and statutory scheme of the TCPA and its implementing regulations support this conclusion.

First, the plain language of the TCPA indicates that Congress sought to prohibit all unsolicited telemarketing calls to phone numbers in the NDNC Registry, without limitation as to who had registered the phone numbers. The TCPA instructed the Federal Communications Commission ("FCC") to initiate a rulemaking proceeding to implement the TCPA's protections. 47 U.S.C. § 227(c)(1). The statute provided that the FCC "may require the establishment and operation of a single national database to compile a list of telephone numbers of residential subscribers who object to receiving telephone solicitations." *Id.* § 227(c)(3). The TCPA mandated that the implementing regulations "prohibit any person from making or transmitting a telephone solicitation *to the telephone number* of any subscriber included in the database." *Id.* § 227(c)(3)(F) (emphasis added). Through this language, it appears that Congress intended to prohibit calls *to phone numbers* in the NDNC Registry. This prohibition does not turn on whether the person who receives the call personally listed the phone number in the NDNC Registry. *See Hall v. Smosh Dot Com, Inc.*, 72 F.4th 983, 990 n.8 (9th Cir. 2023) ("The Do-Not-Call Registry lists numbers, not names."). This reading also comports with the TCPA's capacious private right of action. *Id.* § 227(c)(5) (providing a cause of action to any "person who has received" unsolicited calls); *Hall,* 72 F.4th at 989 (observing that the TCPA "provides a private right of action to redress unsolicited calls to [registered] numbers"). Congress did not limit the right of action to subscribers who personally added their phone numbers to the NDNC Registry.

**\*3** Second, the TCPA's implementing regulations also indicate that a plaintiff need not allege that he personally registered his phone number in the NDNC Registry. The regulations provide for ongoing protection for the registered phone number unless it is removed by the consumer or by the database administrator. 47 C.F.R. § 64.1200(c)(2) (providing that, once a phone number is added to the NDNC Registry, the registration "must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator"). Thus, the TCPA's protections attach to registered telephone numbers, regardless of whether the phone number is still used by the person who originally listed it in the NDNC Registry.

In addition, requiring a plaintiff to affirmatively allege (or prove) that he personally listed his phone number in the NDNC Registry would run contrary to the liability scheme of the TCPA's implementing regulations. The implementing regulations create a framework through which consumers benefit from the TCPA's protections as long as a phone number is registered in the NDNC Registry, unless the *telemarketer* proves that a specified safe harbor applies. *See id.* § 64.1200(c)(2)(i)-(iii) (placing the burden of proof on the telemarketer to "demonstrate" it has protocols to prevent calls made in error, or that the telemarketer "has obtained" consent). Notably, there is no safe harbor that precludes liability for calls made to persons who did not personally list their phone numbers in the NDNC Registry. eHealth's proposed construction would effectively read in an additional safe harbor that is not provided by the implementing regulations.

Based on the foregoing reasons, the Court holds that a plaintiff alleging a violation of the TCPA's NDNC Registry provision need not allege or prove that he personally registered his phone number to state a claim. Every court to consider this issue – with one exception – has reached the same conclusion. *See, e.g., Chinitz v. Intero Real Estate Servs.,* No. 18-cv-05623-BLF, 2020 WL 7391299, at \*14 (N.D. Cal. July 22, 2020); *Abrahamian v. loanDepot.com LLC,* No. 23-cv-00728-PHX-SMB, 2024 WL 1092442, at \*2 (D. Ariz. Mar. 13, 2024). The exceptional case is *Rombough v. Robert D. Smith Ins. Agency, Inc.,* No. 22-cv-15-CJW-MAR, 2022 WL 2713278, at \*2-3 (N.D. Iowa June 9, 2022) (dismissing claim because plaintiff did not allege that she personally registered her phone number in the NDNC Registry). In *Rombough,* the court focused on the following language from the implementing regulation: "No person or entity shall initiate any telephone solicitation to ... [a] residential telephone subscriber *who has registered* his or her telephone number on the NDNC Registry." 47 C.F.R. § 64.1200(c) (emphasis added). This language was viewed in isolation, and the court did not explain how its construction could be reconciled with the very next sentence of the implementing regulation, which provides that "registrations must be honored indefinitely[.]" *Id.* There is no limitation as to time period; nor is there a limitation as to whether the phone number is still used by the person who originally listed it in the NDNC Registry.

Case 1:26-cv-00659-KM    Document 27-1    Filed 06/24/26    Page 63 of 105

Nichols v. eHealthInsurance Services, Inc., Not Reported in Fed. Supp. (2025)

After fully considering the TCPA's private right of action, the statutory scheme, and other language in the implementing regulation as discussed above, the Court declines to follow *Rombough*. The Court finds that it is more consistent with the remedial purpose of the TCPA not to construe an additional pleading requirement absent a clear basis in the TCPA or its implementing regulations. "Because the TCPA is a remedial statute intended to protect consumers from unwanted automated telephone calls and messages, it should be construed in accordance with that purpose." *Van Patten v. Vertical Fitness Grp., LLC*, 847 F.3d 1037, 1047 (9th Cir. 2017). Accordingly, eHealth's Motion to Dismiss Count 2 is DENIED.

## III. MOTION TO STRIKE CLASS ALLEGATIONS

### A. Legal Standard

**\*4**  Under Rule 12(f), a party may move to strike "an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). The purpose of a motion to strike is to avoid wasteful litigation of "spurious issues." *Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 973 (9th Cir. 2010). Therefore, a "motion to strike should only be granted if the matter sought to be stricken clearly has no possible bearing on the subject matter of the litigation." *Baton v. Ledger SAS*, 740 F. Supp. 3d 847, 872 (N.D. Cal. 2024).

A decision to grant a motion to strike class allegations at the pleading stage is the "functional equivalent of denying a motion to certify a case as a class action" before discovery commences. *Bates v. Bankers Life & Cas. Co.*, 848 F.3d 1236, 1238 (9th Cir. 2017) (per curiam) (quoting *In re Bemis Co.*, 279 F.3d 419, 421 (7th Cir. 2002)). The Ninth Circuit has recognized that "often the pleadings alone will not resolve the question of class certification and that some discovery will be warranted." *Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935, 942 (9th Cir. 2009). Thus, in general, "the better and more advisable practice for a District Court to follow is to afford the litigants an opportunity to present evidence as to whether a class action [i]s maintainable." *Id.* (quoting *Doninger v. Pac. Nw. Bell, Inc.*, 564 F.2d 1304, 1313 (9th Cir. 1977)). But when the problem with the class allegations is "facially evident, it makes sense to address the issue early on." *Baton*, 740 F. Supp. 3d at 883.

### B. Discussion

Matthews seeks to represent the following class:

> All persons within the United States, registered on the National Do Not Call Registry for at least 31 days, to whom Defendant and/or a third party acting on Defendant's behalf, made two [or] more *telephone solicitations* that promoted Defendant's products or services, to a cellular telephone number within any twelve-month period, within the four (4) years prior to the filing of the Complaint.

Compl. ¶ 92 (emphasis added). eHealth moves to strike the class allegations based on three purported deficiencies of this class definition. eHealth argues that the class definition is: (1) an improper "fail-safe" class; (2) overbroad because it includes members who do not have valid claims; and (3) indeterminate because it includes members who received calls from unspecified third parties acting on eHealth's behalf. The Court addresses these arguments in turn, finding only the first persuasive at this stage of the litigation.

First, eHealth argues that Matthews has defined an improper "fail-safe" class. *See* Mot. to Strike at 19-22. A proper class is defined by objective criteria. For example, in a false advertising case, the class might be defined as all persons who purchased a certain product during a certain time period. *See Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1123-24 (9th Cir. 2017). By contrast, a fail-safe class "is defined in a way that precludes membership unless the liability of the defendant is established." *Kamar v. RadioShack Corp.*, 375 F. App'x 734, 736 (9th Cir. 2010). To continue with the false advertising example, a fail-safe class would be all persons who bought a product that the defendant "falsely advertised." *See Brazil v. Dell, Inc.*, 585 F. Supp. 2d 1158, 1167 (N.D. Cal. 2008). This example illustrates a fundamental problem with a fail-safe class: To determine class membership, "it would be necessary for the court to reach a legal determination that [the defendant] had falsely advertised." *Id.* This approach is unmanageable and improper because courts may not "engage in free-ranging merits inquiries at the certification stage." *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 466 (2013); *see also Kamar*, 375 F. App'x at 736.

**\*5**  Here, eHealth is correct that the class definition is fail-safe because membership "turns on whether a consumer received a telephone solicitation from eHealth." Mot. to Strike at 20. A "telephone solicitation" is not just a telephone call. Rather, the TCPA's implementing regulations define "telephone solicitation" to exclude calls made with consent or where there is an established business relationship between the caller and the called party. *See* 47 C.F.R. § 64.1200(f)(15). Therefore, the Court cannot determine who is a member of the class without evaluating the merits of each potential class member's claim, including evidence regarding consent and whether there was an established business relationship with eHealth. *Pepka v. Kohl's Dep't Stores*, No. 16-cv-4293-MWF (FFMx), 2016 WL 8919460, at \*4 (C.D. Cal. Dec. 21, 2016).

Because this is a fail-safe class and defective as a matter of law, it is appropriate to strike it at the pleading stage. *See Olean Wholesale Grocery Coop., v. Bumble Bee Foods LLC*, 31 F.4th 651, 669 n.14 (9th Cir. 2022) (noting that a fail-safe class is impermissible). Indeed, courts frequently strike similar class definitions in TCPA cases where the class is defined to exclude calls that were made with consent. *See, e.g.*, *Salaiz v. eHealthInsurance Servs., Inc.*, No. 22-CV-04835-BLF, 2023 WL 2622138, at \*2, \*5 (N.D. Cal. Mar. 22, 2023); *Dixon v. Montreal Fin. Servs., Inc.*, No. 15-cv-03298-MMC, 2016 WL 3456680, at \*4 (N.D. Cal. June 24, 2016); *Winters v. Loan Depot LLC*, No. CV-20-01290-PHX-SPL, 2022 WL 22865378, at \*7 (D. Ariz. Mar. 17, 2022).

However, a class "may be redefined" to resolve the fail-safe issue. *Olney v. Job.com, Inc.*, No. 12-cv-01724-LJO, 2013 WL 5476813, at \*11 (E.D. Cal. Sept. 30, 2013). Here, the issue can be resolved by replacing the phrase "telephone solicitations" with "telephone calls." Redefining the class in this manner is appropriate because whether a person received a "telephone call" is an objective criterion that does not require the Court to make an upfront determination regarding consent. *See Panacci v. A1 Solar Power, Inc.*, No. 15-cv-00532-JCS, 2015 WL 3750112, at \*8 (N.D. Cal. June 15, 2015) (declining to strike class definitions that "d[id] not weed out all members who will not succeed on the merits by asking the court to make findings on legal issues, such as prior consent, in determining class membership"); *see also Olney*, 2013 WL 5476813, at \*11 (declining to strike revised class definition of all persons "who received any telephone calls" that did not exclude calls made with consent). Accordingly, the Court GRANTS eHealth's Motion to Strike the class definition with leave to amend consistent with the discussion above.

The Court now turns to eHealth's second argument, that the class is overbroad because it includes members who lack valid TCPA claims. eHealth argues that the class necessarily includes members who consented to be called, and those class members do not have valid claims.[2] This argument is raised prematurely because eHealth has not submitted any evidence that any class member consented to be called or had an established business relationship with eHealth. *See Meyer v. Portfolio Recovery Assocs., LLC*, 707 F.3d 1036, 1042 (9th Cir. 2012) (individualized issues of consent did not preclude provisional class certification in a TCPA case because defendant failed to "show a single instance where express consent was given before the call was placed"). At this early stage, the Court has no basis to conclude that "a great number" of class members "could not have been harmed" by eHealth's allegedly unlawful conduct. *Olean*, 31 F.4th at 669 n.14. The Court will not strike class allegations based on the speculative possibility that an unspecified number of class members might have consented to receive calls. Discovery is needed to evaluate eHealth's arguments about the overbreadth of the class. *See Vinole*, 571 F.3d at 942.

**\*6**  The cases eHealth relies upon are inapposite. For example, *Jamison v. First Credit Services, Inc.*, held that a class definition was overbroad at the class certification stage based on evidence "that a large percentage of the potential class did consent to receiving calls." No. 12 C 4415, 2013 WL 3872171, at \*8 (N.D. Ill. July 29, 2013). Here, the case is at the pleading stage, and eHealth has not produced any evidence that Matthews or the putative class members consented to receiving calls. Another case cited by eHealth, *Buonomo v. Optimum Outcomes, Inc.*, confirms that eHealth's motion is premature. 301 F.R.D. 292 (N.D. Ill. 2014). In that case, the defendant moved to strike class allegations, arguing that individualized issues of consent would predominate over common issues. *Id.* at 298-99. The court rejected this argument as premature because the defendant failed to present "any specific evidence" that consent would require individualized proof. *Id.* at 298-99. The court held that the plaintiff "must have the opportunity to conduct discovery" regarding whether the proposed class's claims were "susceptible to generalized proof." *Id.* at 299. The same principle holds true here.[3]

Case 1:26-cv-00659-KM    Document 27-1    Filed 06/24/26    Page 65 of 105

Nichols v. eHealthInsurance Services, Inc., Not Reported in Fed. Supp. (2025)

Finally, eHealth argues that the class is indefinite because it includes persons who received calls from "a third party acting on Defendant's behalf." Mot. to Strike at 17-18. The Court declines to strike or narrow the class definition on this basis because eHealth may be liable under the TCPA for telephone solicitations "where an agency relationship, as defined by federal common law, is established between [eHealth] and a third-party caller." *Gomez v. Campbell-Ewald Co.*, 768 F.3d 871, 877 (9th Cir. 2014), *aff'd*, 577 U.S. 153 (2016). The identity of relevant third parties can be clarified in discovery – for example, through an interrogatory requesting the identity of third parties, if any, that eHealth engaged to call consumers on its behalf to market its products or services. Courts have declined to strike similar class definitions. *See, e.g.*, *Olney*, 2013 WL 5476813, at *11 (declining to strike class definition that included persons who received telephone calls "from Defendant or its agent(s) and/or employee(s)") (cleaned up).

## IV. CONCLUSION

For the foregoing reasons, the Court GRANTS the Motion to Dismiss Count 1 without leave to amend and DENIES the Motion to Dismiss Count 2. The Court GRANTS the Motion to Strike the fail-safe class definition with leave to amend, consistent with the instructions in this Order. The Court DENIES the Motion to Strike in all other respects. Matthews shall file an amended complaint within fourteen days of this Order. The amended complaint shall omit allegations regarding former named plaintiff Nichols in light of her notice of voluntary dismissal.

**IT IS SO ORDERED.**

**All Citations**

Not Reported in Fed. Supp., 2025 WL 689721

Footnotes

1    The facts are taken from the complaint and assumed to be true for purposes of these motions. Initially, the complaint was brought by Matthews and another plaintiff, Terri Nichols. On February 18, 2025, Nichols filed a notice of voluntary dismissal without prejudice. ECF No. 46. Accordingly, this Order refers only to Matthews.

2    There is an inherent tension between this argument and eHealth's first argument that the class definition is improper because it *excludes* calls made with consent. eHealth "cannot have it both ways. If it is per se impermissible to define the class in such a way that it only includes persons [who] ... did not consent, it cannot be per se impermissible to re-define that class to include some individuals who consented to be called. To so hold would absolutely preclude class actions in TCPA cases, an outcome that finds no support in the law." *Olney*, 2013 WL 5476813, at *11.

3    eHealth argues that the class is overbroad because it includes persons who did not personally place their phone numbers on the NDNC Registry. This is not a requirement for a TCPA claim, *see supra* Section II.B.2, thus the Court declines to strike the class definition on this basis.

---

**End of Document**                                    © 2026 Thomson Reuters. No claim to original U.S. Government Works.

Panacci v. A1 Solar Power, Inc., Not Reported in Fed. Supp. (2015)

Case 1:26-cv-00659-KM    Document 27-1    Filed 06/24/26    Page 66 of 105

 KeyCite Yellow Flag

Distinguished by *Van Baalen v. Mutual of Omaha Insurance Company,* D.N.M., April 11, 2024

2015 WL 3750112

Only the Westlaw citation is currently available.

United States District Court, N.D. California.

Tom PANACCI, Plaintiff,

v.

A1 SOLAR POWER, INC., et al., Defendants.

Case No. 15–cv–00532–JCS

|

Signed June 15, 2015

**Attorneys and Law Firms**

Charles David Marshall, Marshall Law Firm, Walnut Creek, CA, for Plaintiff.

David Robert Socher, David R. Socher, Attorney at Law, PC, Lafayette, CA, for Defendants.

**AMENDED ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM (FED. R. CIV. P. 12(B)(6)), MOTION TO STRIKE (FED. R. CIV. P. 12(F)) AND FOR A MORE DEFINITE STATEMENT (FED. R. CIV. P. 12(E))**

JOSEPH C. SPERO, Chief Magistrate Judge

## I. INTRODUCTION

**\*1** This is a putative class action under the Telephone Consumer Protection Act ("TCPA") where Defendants are a solar installation company and a referral company that has allegedly been calling consumers to sell them solar services and to refer them to the solar installation company. Defendants have jointly filed a Motion to Dismiss for Failure to State a Claim (Fed. R. Civ. P. 12(b)(6)), Motion to Strike (Fed. R. Civ. P. 12(f)) and for a More Definite Statement (Fed. R. Civ. P. 12(e)) ("Motion"), which the Court heard on June 12, 2015. For the reasons stated below, the Motion is GRANTED IN PART and DENIED IN PART.[1]

## II. BACKGROUND

### A. Factual Background[2]

In or around July 2014, Tom Panacci ("Plaintiff") received a call on his home phone from Defendant National Renewable Energy Center ("NREC"), "in an effort to solicit Plaintiff's business for solar power related sales." Compl. at 5. Plaintiff alleges that according to NREC's website, NREC is a referral company that helps consumers "find the most cost effective deal in [their] area for solar." *Id*. at 4. Plaintiff's home phone was registered on the national do-not-call registry ("National DNC Registry"). *Id*. Plaintiff told NREC that he was on the National DNC Registry and asked to be put on NREC's company-specific do-not-call registry ("Company DNC Registry"). *Id*.

After the first call, "NREC proceeded to call Plaintiff no less than eight additional times in order to solicit Plaintiff's business." Compl. at 5. NREC "continued to try to sell Plaintiff solar related services." *Id*. At times, NREC "specifically stated that the

Case 1:26-cv-00659-KM    Document 27-1    Filed 06/24/26    Page 67 of 105

Panacci v. A1 Solar Power, Inc., Not Reported in Fed. Supp. (2015)

intention was to refer Plaintiff to Defendant A1 Solar." *Id*. Each time, Plaintiff told NREC that he was on the National DNC Registry. *Id*. Each time, he requested to be placed on NREC's Company DNC Registry. *Id*. Plaintiff also alleges that on some occasions, when Plaintiff and his family members "declined to take the marketing call," the "NREC telemarketers have become abusive to Plaintiff and his family members." *Id*.

On November 19, 2014, Plaintiff's counsel sent a letter to Defendants NREC and A1 Solar Power, Inc. ("A1 Solar") demanding them to stop calling Plaintiff and compensate him for the TCPA violations. Compl. at 5. Plaintiff alleges that "neither Defendant responded to the letter, and Defendants continued to call Plaintiff." *Id*. Plaintiff has not entered into any business relationships with Defendants or provided them with his home phone number. Compl. at 6.

Plaintiff alleges that his experience with Defendants is not unique. Compl. at 6. To demonstrate, he quotes five reviews from A1 Solar's Yelp page. *Id*. The authors of these reviews fume about their experiences with A1 Solar's telemarketing practices, including calling consumers five to ten times per week despite requests to stop calling. *Id*. at 6–8. Plaintiff also notes that these reviews "mention the relationship with NREC." *Id*. Indeed, one review specifically relates that A1 Solar "uses abusive telemarketing practices under the name National Renewable Energy Center," and another reports that A1 Solar "introduce[s] themselves as National Renewable Energy Center ... and then refer you to A1 solar." *Id*. at 6–7.

**\*2** Plaintiff claims that Defendants violated 47 U.S.C. § 227(c)(5) under the TCPA. Compl. at 11–12. He requests as relief (1) a class certification order appointing Plaintiff and his counsel to represent each of the two proposed classes; (2) a declaration that Defendants violated the TCPA; (3) actual and statutory damages under the TCPA; and (4) an injunction requiring Defendants to cease their unlawful practices in violation of the TCPA. Id. at 12.

### B. Procedural Background

As allowed by Rule 12(g), Defendants have joined three motions—under Rule 12(b)(6), Rule 12(f), and Rule 12(e)—in the present Motion. Fed. R. Civ. P. 12(g).

### 1. Motion to Dismiss—Rule 12(b)(6)

Defendants argue that the factual allegations are insufficient to establish that the calls were "telephone solicitations" under the TCPA. Their arguments focus on NREC's liability rather than A1 Solar's liability. First, Defendants argue that Plaintiff's allegation that NREC called "to solicit Plaintiff's business" is not specific enough. Mot. at 4 ("without in anyway providing the nature of the supposed solicitation"). Defendants maintain that the Complaint contains "no facts to establish that the purpose of the alleged phone calls was to encourage the ***specific*** purchase or rental of, or investment in, property, goods, or services." *Id*. at 8 (emphasis in original). Regarding Plaintiff's allegation that NREC intended to refer Plaintiff to A1 Solar, Defendants assert that "referring the recipient of the call to another entity is not a prohibited purpose" under the TCPA. *Id*. at 9; Reply at 4. They claim that the mere attempt to make a referral does not make a call a telephone solicitation, and that such an inference is "obviously speculative." Mot. at 4. Further, Defendants argue that in the instances where Plaintiff allegedly "declined to take the marketing call" (Compl. at 5), Plaintiff may not assume that the declined calls were marketing calls and thus fails to properly allege the purpose of those calls. *Id*. at 9. Finally, Defendants argue that the alleged class size of "hundreds, if not thousands, of individuals" is "too conclusory to be assumed true." *Id*. at 11.

Plaintiff responds that a phone call does not need to encourage the "***specific***" purchase or rental of, or investment in, property, goods, or services to be a telephone solicitation. Opp'n at 1. Plaintiff argues that the TCPA does not require the explicit mention of a good, product, or service where context makes the implication clear. *Id*. at 12. Further, Plaintiff argues that callers are not absolved of liability simply because they do not encourage a purchase during the call; callers can still be liable for encouraging a future purchase. *Id*. at 14. Plaintiff also asserts that A1 Solar is not absolved of liability simply because it did not make any of the phone calls; A1 Solar can still be liable under a theory of vicarious liability. *Id*. at 14 ("the fact that the NREC was seeking to

Case 1:26-cv-00659-KM   Document 27-1   Filed 06/24/26   Page 68 of 105

Panacci v. A1 Solar Power, Inc., Not Reported in Fed. Supp. (2015)

refer the caller to A1 Solar Power, Inc. for the ultimate purchase does not absolve either Defendant, as 'the FCC has repeatedly acknowledged the existence of vicarious liability' "). Plaintiff goes on to distinguish the cases cited by Defendants and argues that in those cases, the court found no telephone solicitation because the defendant did not try to sell anything to the plaintiff. *Id*. at 14 (discussing *Friedman v. Torchmark Corp.,* No. 12–cv–2837, 2013 WL 1629084, *4 (S.D. Cal. Apr. 13, 2013); *Meadows v. Franklin Collection Serv., Inc.,* 414 Fed.Appx. 230, 236 (11th Cir. 2011)). Finally, Plaintiff argues that any defects in the class size allegations are irrelevant for the purposes of a 12(b)(6) motion, but even so, dismissing class allegations on the pleadings is rare and granted only where defects cannot be cured through the discovery and certification processes. *Id*. at 15.

## 2. Motion to Strike—Rule 12(f)

 **\*3**  Defendants claim that Plaintiff's class definitions create fail-safe classes. Mot. at 11. Plaintiff has proposed the following two class definitions:

### National Do Not Call Registry Class ("National DNC Class")

All persons and entities in the United States (a) who maintain their phone number on the National Do Not Call Registry, (b) who received more than one call to that number within a 12 month period of time from either A1 Solar, the National Renewable Energy Center on A1 Solar's behalf, or the National Renewable Energy Center on any other entity's behalf, and (c) such phone calls occurred within the four years before the filing of Plaintiff Panacci's initial Complaint.

### Company Do Not Call Registry Class ("Company DNC Class")

All persons and entities in the United States (a) whose phone numbers are registered with the A1 Solar or the National Renewable Energy Center's internal do not call Registry ("Company DNC Registry"), (b) who received phone calls from either A1 Solar or the National Renewable Energy Center on A1 Solar's behalf, or the National Renewable Energy Center on any other entity's behalf (c) after requesting to be placed on the Company DNC Registry, and (d) such phone calls occurred within the four years before the filing of Plaintiff Panacci's initial Complaint.

Compl. at 8. In their Motion, Defendants offer two reasons why the class definitions should be stricken: (1) they create fail-safe classes because they include only people who received "an unauthorized phone call" from Defendants and (2) they "lack ... defined boundaries" and are too "amorphous" to survive certification. Mot. at 13–14; Reply at 5.

Plaintiff argues that its class definitions are not fail-safe because (1) membership can be readily determined by objective criteria, without deciding the merits of each claim; (2) none of the criteria of class membership, combined or individually, including registration on the National DNC Registry, is dispositive of liability; and (3) unlike the cases cited by Defendants, Plaintiff's class definitions do not incorporate a critical element of the claim or an affirmative defense, such as consent, as a requirement for class membership. Opp'n at 16–18.

## 3. Motion for a More Definite Statement—Rule 12(e)

In the alternative to dismissing the Complaint or striking the proposed class definitions, Defendants argue that Plaintiff should be required to provide a more definite statement of his claims and class definitions because based on the current "threadbare allegations and failsafe class definition ... Defendants cannot reasonably prepare a response." Mot. at 14. Specifically, Defendants argue that they "should not be required to speculate as to which phone calls Plaintiff is attacking beyond those specifically quoted in his Complaint," and that the "lack of details to discern class members" makes discovery difficult to manage and an informed response as well as defenses hard to ascertain. *Id*.; Reply at 6.

Plaintiff points out that his claim was clear enough for Defendants "to devise an argument over whether the phone calls qualify as telephone solicitations." Opp'n at 18. As to the adequacy of the class definition, Plaintiff contends that it is more appropriate

Case 1:26-cv-00659-KM    Document 27-1    Filed 06/24/26    Page 69 of 105

Panacci v. A1 Solar Power, Inc., Not Reported in Fed. Supp. (2015)

to resolve that issue on a motion for class certification. *Id*. at 19. Furthermore, Plaintiff argues that Defendants would not need "to speculate as to which phone calls Plaintiff is attacking" because Defendants can simply compare the National DNC Registry against Defendants' call records. *Id*.

## III. LEGAL STANDARDS

### C. Rule 12(b)(6)

**\*4** A complaint must state a claim upon which relief may be granted, and failure to do so is grounds for dismissal. Fed. R. Civ. P. 12(b)(6). A complaint may fail to state a claim because it lacks a cognizable legal theory or because it fails to allege facts that would support a valid theory. *Balistreri v. Pacifica Police Dep't,* 901 F.2d 696, 699 (9th Cir. 1990). In ruling on a Rule 12(b)(6) motion, a court takes "all allegations of material fact as true and construe[s] them in the in the light most favorable to the non-moving party." *Parks Sch. of Bus. v. Symington,* 51 F.3d 1480, 1484 (9th Cir. 1995). The allegations must state a claim to relief that is "plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). A claim is facially plausible when the plaintiff pleads "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. Detailed factual allegations are not necessary, but the allegations must be more than "labels and conclusions" or "formulaic recitations[s] of the elements." *Id*.

### D. Rule 12(f)

A court may strike from a pleading "an insufficient defense" or "any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). The purpose of Rule 12(f) is "to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial." *Whittlestone, Inc. v. Handi–Craft Co.,* 618 F.3d 970, 973 (9th Cir. 2010). A court may strike class allegations prior to discovery where the complaint shows that "a class action cannot be maintained on the facts alleged." *Sanders v. Apple Inc.,* 672 F.Supp.2d 978, 989 (N.D. Cal. 2009) (striking class allegations where the class definition necessarily included individuals who lacked standing and where reliance was an element of the claim, which would force the court to conduct individual inquiries for each class member if the class were certified). A court must view the pleadings in the light most favorable to the nonmoving party, and any doubt regarding the import of the allegations to be stricken weighs in favor of denying the motion to strike. *Simpson v. Ramada Worldwide, Inc.,* No. 12–CV–5029–PSG, 2012 WL 5988644, at \*2 (N.D. Cal. Nov. 29, 2012).

### E. Rule 12(e)

Rule 12(e) states that a party may move for a more definite statement of a pleading "so vague or ambiguous" that the responding party cannot reasonably prepare a response. Fed. R. Civ. P. 12(e). The motion "must point out the defects complained of and the details desired." Id. However, the purpose of a Rule 12(e) motion is to attack unintelligibility, not simply lack of detail. *Velasquez v. HSBC Fin. Corp.,* No. 08–4592 SC, 2009 WL 112919, at \*4 (N.D.Cal. Jan. 16, 2009). Thus, where the detail sought is obtainable through discovery, the motion should be denied. *Id*. A Rule 12(e) motion is "proper only where the complaint is so indefinite that the defendant cannot ascertain the nature of the claim being asserted and therefore cannot reasonably be expected to frame a proper response." *Gregory Vill. Partners, L.P. v. Chevron U.S.A., Inc.,* 805 F.Supp.2d 888, 896 (N.D. Cal. 2011).

## IV. ANALYSIS

### A. Motion to Dismiss—Rule 12(b)(6)

#### 1. TCPA Claim against NREC

Plaintiff sufficiently states a claim against NREC for violating the DNC registry regulations under the TCPA. 47 U.S.C. § 227(c)(3)(F) (DNC registry regulations "shall ... prohibit any person from making or transmitting a telephone solicitation to the telephone number of any subscriber in such database); 47 C.F.R. § 64.1200(c)(2) ("No person or entity shall initiate any

telephone solicitation to ... [a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry").

Defendants argue that Plaintiff has not alleged facts to establish that NREC's calls were "telephone solicitations." Mot. at 8. A "telephone solicitation" is defined as follows:

> **\*5** the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person, but such term does not include a call or message (A) to any person with that person's prior express invitation or permission, (B) to any person with whom the caller has an established business relationship, or (C) by a tax exempt nonprofit organization.

47 U.S.C. § 227(a). The Complaint alleges that NREC called Plaintiff a total of at least nine times between July 2014 and the filing of the Complaint in February 2015, and that during the calls, NREC tried to sell him solar power-related services. Compl. at 5. Thus, Plaintiff has alleged facts that support the elements of a telephone solicitation as defined by the TCPA. *See Roylance v. ALG Real Estate Servs., Inc.,* No. 5:14–CV–02445–PSG, 2015 WL 1522244, at *3 (N.D. Cal. Mar. 16, 2015) report and recommendation adopted as modified, No. 14–CV–02445–BLF, 2015 WL 1544229 (N.D.Cal. Apr. 3, 2015) (finding plaintiff's allegation that he received calls made to "encourage the sale of mortgage[s]" sufficient to allege a telephone solicitation); *Robbins v. Coca–Cola–Co.,* No. 13–CV–132–IEG NLS, 2013 WL 2252646, at *4 (S.D.Cal. May 22, 2013) (finding sufficient facts to support a TCPA claim where plaintiffs alleged that they received text messages "promoting Coke products"; details "such as the time and content of the alleged messages" are obtainable through discovery, and the lack of such details does not warrant even an order for a more definite statement).

The cases cited by Defendants are not applicable. *Friedman v. Torchmark* held that a phone call inviting plaintiff to learn about defendant's products to potentially sell to others was not a telephone solicitation because it did not attempt to sell anything to the plaintiff. *See* No. 12–CV–2837–IEG BGS, 2013 WL 4102201, at *6 (S.D. Cal. Aug. 13, 2013). Here, the Complaint alleges that NREC did try to sell Plaintiff products—namely solar-related services. Compl. at 5. *Meadows v. Franklin Collection Service, Inc.* is similarly inapplicable: the Ninth Circuit held that a call attempting to collect debt was not a telephone solicitation because it was not an attempt to sell anything to plaintiff. *See* 414 F.App'x 230, 236 (9th Cir. 2011). Then, *Freidman v. Massage Envy Franchising, LLC* does not actually discuss whether the allegations were sufficient to establish a "telephone solicitation"—the court dismissed the complaint for insufficient allegations with respect to the use of an automatic telephone dialing system. *See* No. 3:12–CV–02962–L–RBB, 2013 WL 3026641, at *3 (S.D. Cal. June 13, 2013) (where text messages were similar in content but differed enough to appear as if an ATDS was not utilized and plaintiff did not allege that messages came from any short message service (SMS) code registered to defendant and merely alleged that the messages were "impersonal," the court found that it was "just as conceivable that the text messages were done by hand, or not using an ATDS").

In addition, contrary to Defendants' assertion, telephone solicitations do not need to encourage a "*specific* purchase." Mot. at 8 (emphasis in original). In *Chesbro v. Best Buy Stores, L.P.*, the defendant argued that their calls reminding consumers to redeem their reward points were not telephone solicitations because "the scripts did not explicitly reference any property, goods, or services." 705 F.3d 913, 918 (9th Cir. 2012). The Ninth Circuit rejected the defendant's argument and held that a call does not need to encourage a specific purchase to be a telephone solicitation and that defendant's reminders to redeem reward points were telephone solicitations because they implicitly encouraged consumers to make further purchases from defendant. *See id*. Here, Plaintiff actually alleges a more specific purchase than in *Chesbro* —namely, the purchase of "solar related services." Compl. at 5.

**\*6** Defendants also argue that the mere attempt to make a referral does not establish a telephone solicitation and nor are referrals prohibited under the TCPA. Mot. at 9. First, Plaintiff does not merely allege NREC's attempt to make a referral; Plaintiff also specifically alleges that NREC "tr[ied] to sell Plaintiff solar related services," which is, on its own, enough to establish that NREC called for a prohibited purpose. Compl. at 5; *see Roylance,* 2015 WL 1522244, at *3; *Robbins,* 2013 WL 2252646, at *4. Second, referring a consumer to another entity is a prohibited purpose if the purpose of the referral is to encourage a purchase, even if a purchase from another entity or a future purchase. *See* 47 U.S.C. § 227(a) (a telephone solicitation is the initiation of any call "for the purpose of encouraging [a] purchase"); *In re Rules and Regulations Implementing the Telephone*

*Consumer Protection Act of 1991,* Report and Order, 18 FCC Rcd. 14014, 14040 ¶ 142 (F.C.C. July 3, 2013) ("2003 FCC Order") (a prohibited advertisement includes any call intended to offer goods or services for sale "either during the call, or in the future," such as a call describing a vacation destination and providing the consumer with a toll-free number). Here, based on the allegations in the Complaint, it is reasonable to infer that NREC intended to refer Plaintiff to A1 Solar for the purpose of encouraging Plaintiff to purchase A1 Solar's services. *See Chesbro,* 705 F.3d at 918 ("Neither the statute nor the regulations require an explicit mention of a good, product, or service where the implication is clear from the context"). Defendants do not propose any reasonable alternative inferences.

Defendants also argue that Plaintiff "admits that, in at least some cases, he never discerned the purpose of the calls, but simply assumed it was a 'marketing call,' " and that therefore, Plaintiff fails to properly plead the purpose of these "declined" calls. Mot. at 9. Defendants misrepresent Plaintiff's allegations. Nowhere does Plaintiff state that he did not discern the purpose of some calls or that he simply assumed that some calls were marketing calls. Instead, Plaintiff alleges that "on other occasions, NREC telemarketers have become abusive to Plaintiff and his family members when they declined to take the marketing call." *Id*. Thus, the Complaint conveys that Plaintiff or others in his family picked up the phone, learned that it was yet another call from NREC, and then declined to continue to call, at which point the NREC telemarketers became abusive toward them. Even if Plaintiff did not discern the purpose of some of the calls, based on the allegations, the context here is clear and supports the reasonable inference that the *n* th call from NREC, like the first call, was initiated to try to sell solar-related services to Plaintiff.

Finally, Defendants argue that the alleged class size of "hundreds, if not thousands, of individuals" is "too conclusory to be assumed true." Mot. at 11. However, Defendants fail to identify the relevance of this class certification-related argument to a 12(b)(6) motion. Dismissal for failure to state a claim is "proper only where there is no cognizable legal theory or an absence of sufficient facts alleged to support a cognizable legal theory." *Shroyer v. New Cingular Wireless Servs., Inc.,* 622 F.3d 1035, 1041 (9th Cir. 2010). Thus, challenges to class size allegations are irrelevant in a 12(b)(6) motion because the sufficiency of a legal claim is not contingent on the class size allegation. *See Clerkin v. MyLife.Com,* No. C 11–00527 CW, 2011 WL 3809912, at *34 (N.D.Cal. Aug. 29, 2011) ("Rule 12(b)(6) is not the appropriate procedural vehicle to challenge class allegations in part because a class action is a "procedural device, not a claim for relief" and other Federal Rules of Civil Procedure exist to address impertinent allegations and class certification). Defendants do not identify any Ninth Circuit authority that allows the use of a 12(b)(6) motion to dismiss class allegations, and the case cited by Defendants is not on point. *Stonecrafters* analyzed a claim under the Illinois Consumer Fraud Act concerning an unwanted one-page fax advertisement. *See Stonecrafters, Inc. v. Foxfire Printing & Packaging, Inc*., 633 F.Supp.2d 610 (N.D. Ill. 2009). One factor in deciding the sufficiency of the claim is whether the alleged unfair practice "causes substantial injury to consumers." *Id*. at 616. The court found that the cost of receiving and printing a single page facsimile cannot be a substantial injury, and that even considering the aggregate harm to the class as a whole, the aggregate harm would not amount to a substantial injury where the alleged class size was "thousands of persons" and the damage suffered per person is a couple pennies. *Id*. at 617. In a footnote, the court questioned whether the alleged class size was "anything more than a naked assertion." *Id*. Thus, in *Stonecrafters,* unlike in the present case, the class size was relevant to the merits of the legal claim—to show substantial injury. Even then, the *Stonecrafters* court did not dismiss any claims or class allegations because of the conclusory nature of the class size allegation—the court stated that "assuming" plaintiff had a good-faith basis for its class size allegation, the economic damage incurred by a thousand people would still not be enough, there was no indication that the class size would be much larger, and that even though the exact class size was unknown, the allegation of substantial injury was not plausible in this case. *See id*.

**\*7** Therefore, Plaintiff has sufficiently stated a claim against NREC. Defendants' Motion under Rule 12(b)(6) is denied with respect to NREC.

**2. TCPA Claim against A1 Solar**

Even though Plaintiff does not allege that A1 Solar made any of the calls, A1 Solar may be held vicariously liable for NREC's calls if Plaintiff establishes an agency relationship as defined by federal common law between A1 Solar and NREC. *See Gomez*

Case 1:26-cv-00659-KM    Document 27-1    Filed 06/24/26    Page 72 of 105

Panacci v. A1 Solar Power, Inc., Not Reported in Fed. Supp. (2015)

*v. Campbell–Ewald Co.*, 768 F.3d 871, 879 (9th Cir. 2014) cert. granted, No. 14–857, 2015 WL 246885 (U.S. May 18, 2015) ("a defendant may be held vicariously liable for TCPA violations where the plaintiff establishes an agency relationship, as defined by federal common law, between the defendant and a third-party caller"). To establish an agency relationship, Plaintiff must show that A1 Solar "controlled or had the right to control" NREC—specifically the "manner and means" of the calls conducted by NREC. *See Thomas v. Taco Bell Corp.*, 582 Fed.Appx. 678, 679 (9th Cir. 2014). Alternatively, vicarious liability may also be established under an alter ego theory or principles of apparent authority and ratification. *See Thomas v. Taco Bell Corp.*, 879 F.Supp.2d 1079, 1084–85 (C.D. Cal. 2012) ("A party can also be vicariously liable if it is an alter ego of a party engaging in wrongdoing"); *Roylance,* 2015 WL 1522244, at *5 (finding allegations sufficient to show vicarious liability where defendant shipped plaintiff a loan package regarding the same mortgage offered in the phone calls, thus representing that callers had "apparent authority to conduct telemarketing on its behalf"). To find one corporation to be the alter ego of another, Plaintiff must show that (1) the parent must control the subsidiary "to such a degree as to render the latter the mere instrumentality of the former," and (2) failure to look past the corporate entity would "sanction a fraud or promote injustice." *See Calvert v. Huckins,* 875 F.Supp. 674, 678 (E.D. Cal. 1995). To establish apparent authority, Plaintiff must show his reliance on an act by A1 Solar manifesting that A1 Solar authorized NREC to do the act in question. *See Roylance,* 2015 WL 1522244, at *5.

Here, the allegations are insufficient to establish vicarious liability. Plaintiff's only allegation about A1 Solar's relationship to the alleged TCPA violations is that during some of the calls, NREC "stated that the intention was to refer Plaintiff to Defendant A1 Solar." Compl. at 5. This statement does not show that A1 Solar controlled, authorized, or even knew about NREC's phone calls or that A1 Solar had any control over NREC. Although some of the Yelp reviews attached to the Complaint claim that A1 Solar conducts telemarketing "under the name of NREC" and "introduce[s] themselves as NREC" in their telemarketing calls, Plaintiff makes no such assertion in the Complaint. *See Freidman,* 2013 WL 3026641, at *3 (mere assertion that the message sender "was acting as an agent and/or employee of Defendants Franchising" was insufficient to establish an agency relationship); *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (a complaint does not suffice if it "tenders 'naked assertions' devoid of 'further factual enhancement' "). Here, the Complaint has virtually no allegations regarding the relationship between A1 Solar and NREC. Thus, absent allegations supporting direct or vicarious liability against A1 Solar, the claim against A1 Solar must be dismissed. Defendants' Motion under 12(b)(6) is granted with respect to A1 Solar, with leave to amend.

### B. Rule 12(f) fail-safe class

**\*8** A class is fail-safe if it is "defined in a way that precludes membership unless the liability of the defendant is established." *Kamar v. RadioShack Corp.*, 375 Fed.Appx. 734, 736 (9th Cir. 2010). In other words, once it is determined that a person—a potential class member—cannot prevail against the defendant, the person "drops out of the class." *Id.; see Onley v. Job.com, Inc.*, No. 1:12–CV–01724–LJO, 2013 WL 5476813, at *11 (E.D.Cal. Sept. 30, 2013) (a fail-safe class consists of only people who would prevail on the liability issue). A class definition that is fail-safe requires the court to reach a legal conclusion on the validity of a person's claim in order to determine whether the person is in the class. *See Brazil v. Dell Inc.*, 585 F.Supp.2d 1158, 1167 (N.D. Cal. 2008); *Velasquez v. HSBC Fin. Corp.*, No. 08–4592 SC, 2009 WL 112919, at *4 (N.D.Cal. Jan. 16, 2009) ("fail-safe classes are defined by the merits of their legal claims, and are therefore unascertainable prior to a finding of liability in the plaintiffs' favor").

A court may strike a class definition, even at the pleading stage, on the basis that the class definition creates a fail-safe class. *See Brazil v. Dell, Inc.*, No. 07–1700, 2008 WL 2693629, at *7 (N.D.Cal. July 7, 2008) (striking the class definition in a claim under the California False Advertising Law, where the class was in part defined as all persons who purchased products from Dell that Dell "falsely advertised as discounted").

Plaintiff's class definitions are not fail-safe. Membership in both of Plaintiff's proposed classes can be determined without reaching any legal conclusions: to determine whether someone is in the class, one simply needs to answer questions such as whether the person is on a DNC registry or whether the person received a certain number of phone calls from Defendants within a certain timeframe. *See Brazil,* 585 F.Supp.2d at 1167. None of these questions involve legal analysis. Membership can be determined by objective criteria. *See Onley,* 2013 WL 5476813, at *11 (finding that class definition is not fail-safe in part because "membership in this class can be readily determined by objective criteria").

Furthermore, the classes would not consist of only people who would prevail on the merits: for example, National DNC Class members would not prevail if a court found that NREC's calls were not telephone solicitations or that NREC obtained prior consent before placing their calls. *See id.* (finding that a class defined as all persons who received calls from defendant during a given timeframe through the use of an ATDS was not fail-safe, where the class definition did not impose additional requirements that would have created a class consisting of only people "who would prevail on this liability issue"). Likewise, Company DNC Class members would not prevail if a court found that NREC's calls were not telephone solicitations (it is less clear if a person registered on the Company DNC Registry can subsequently give consent, e.g. six months later, and the effect of that consent on the person's status in the Company DNC Registry). *Cf. Ott v. Mortgage Investors Corp. of Ohio,* No. 3:14–CV–00645–ST, 2014 WL 6851964, at *15 (D. Or. Dec. 3, 2014) (finding that people who request to be placed on an internal DNC registry can subsequently consent to receiving calls under 47 C.F.R. § 64.1200(d)(5)); 47 C.F.R. § 64.1200(d)(6) ("A do-not-call request must be honored for 5 years from the time the request is made").

In addition, the proposed class definitions here are different from the fail-safe class definitions cited by Defendants because the class definitions here do not weed out all members who will not succeed on the merits by asking the court to make findings on legal issues, such as prior consent, in determining class membership. *See Lindsay Transmission, LLC v. Office Depot, Inc.,* No. 4:12–CV–221 CEJ, 2013 WL 275568, at *4 (E.D.Mo. Jan. 24, 2013) (striking class definition in a TCPA claim under 47 U.S.C. § 227(b)(1)(C) as fail-safe, where class was defined in part as all persons who "were sent telephone facsimile messages of material advertising the commercial availability of any property, goods, or services by or on behalf of Defendant [and] with respect to whom Defendant cannot provide evidence of prior express permission or invitation for the sending of such faxes [and] with whom Defendant does not have an established business relationship"); *G.M. Sign, Inc. v. Franklin Bank, S.S.B.,* No. 06 C 949, 2007 WL 4365359, at *3 (N.D. Ill. Dec. 13, 2007) (striking a class definition in a TCPA claim where class included persons who were sent an "unlawful fax message" and for whom the defendant "cannot provide evidence of ... permission or invitation for the fax to be sent"); *Sauter v. CVS Pharmacy, Inc.,* No. 2:13–CV–846, 2014 WL 1814076, at *8 (S.D. Ohio May 7, 2014) (class definitions in TCPA claim were fail-safe because they were restricted to "only those individuals who did not expressly consent to the receipt of the defendant's phone calls made with the use of n ATDS" and thus consisted "solely of persons who can establish that defendant violated the TCPA"); *Onley,* 2013 WL 5476813, at *11 (class defined as "anyone who received [a call from defendant to her cellular phone made through the use of an ATDS] without prior express consent" was fail-safe because the class would consist of "only those potential members who would prevail"). Unlike the cases cited by Defendants, Plaintiff's class definitions do not require the court to legally conclude whether a person gave "prior consent" in order to determine whether that person is in the class. *See Brazil,* 585 F.Supp.2d at 1167 (finding class definition to be fail-safe because "to determine who should be a member of these classes, it would be necessary for the court to reach a legal determination that [defendant] had falsely advertised").

 **\*9**  Defendants also ask the Court to strike the class definition on the basis that "given the scant factual allegations in the Complaint and the vague nature of Plaintiff's claims, Defendants cannot ascertain the boundaries of the putative class [and that] [s]uch an amorphous class definition could not survive certification, and the litigation of such a case would be costly and unmanageable." Mot. at 14. Class definitions that are plainly not ascertainable or otherwise deficient may be stricken on the pleadings. *See Kamm v. California City Dev. Co.,* 509 F.2d 205, 207 (9th Cir. 1975) (striking class allegations because state action with respect to the same controversy had already commenced and relief had been obtained such that the alleged class action would not meet the superiority requirement); *Sanders,* 672 F.Supp.2d at 990–91 (N.D. Cal. 2009) (striking class allegations because class was not ascertainable in a fraud claim where class definition necessarily included people who lacked standing); *John v. Nat'l Sec. Fire & Cas. Co.,* 501 F.3d 443, 445 (5th Cir. 2007) ("Where it is facially apparent from the pleadings that there is no ascertainable class, a district court may dismiss the class allegation on the pleadings"). However, here, it is not facially apparent from the pleadings that the class is unascertainable—the criteria are objective and do not require legal conclusions. Unlike the cases striking class allegations on the pleadings, here there are no obvious deficiencies in Plaintiff's class definitions to warrant striking them at the pleading stage. *See Simpson v. Best W. Int'l, Inc.,* No. 3:12–CV–04672–JCS, 2012 WL 5499928, at *9 (N.D.Cal. Nov. 13, 2012) ("Although it is not per se improper for a defendant to move to strike class allegations before the motion for class certification ... most courts decline to grant such motions because 'the shape and form of a class action evolves

Case 1:26-cv-00659-KM   Document 27-1   Filed 06/24/26   Page 74 of 105

Panacci v. A1 Solar Power, Inc., Not Reported in Fed. Supp. (2015)

only through the process of discovery' ”). Given the lack of obvious defects in Plaintiff's class definitions and the infrequency of striking class allegations prior to motions for class certification, Defendants' Motion under Rule 12(f) is denied.

### C. Rule 12(e) more definite statement

The allegations and class definitions here are not so vague or ambiguous such that Defendants cannot reasonably prepare a response. *See* Fed. R. Civ. P. 12(e). Defendants' Motion is not a true challenge to the intelligibility of the Complaint—because the Complaint is not unintelligible—but rather, Defendants' Motion is a request for details that are plainly obtainable through discovery. *See Velasquez,* 2009 WL 112919, at *4 (A motion for a more definite statement “is not a substitute for discovery; such a motion attacks unintelligibility in a pleading, not mere lack of detail. If the detail sought by a motion for more definite statement is obtainable through discovery, the motion should be denied”); *Robbins v. Coca–Cola–Co.,* No. 13–CV–132–IEG NLS, 2013 WL 2252646, at *4 (S.D.Cal. May 22, 2013) (“Defendant's present, cogent motion to dismiss belies any suggestion that the complaint is too vague for Defendant to frame a response”). Therefore, Defendants' Motion under Rule 12(e) is denied.

### V. CONCLUSION

For the reasons stated above, Defendants' Motion is GRANTED IN PART and DENIED IN PART. The Complaint with respect to only Defendant A1 Solar is DISMISSED WITH LEAVE TO AMEND. Plaintiff shall have 20 days to file an amended complaint to correct only the deficiencies identified in this Order.

**IT IS SO ORDERED.**

**All Citations**

Not Reported in Fed. Supp., 2015 WL 3750112

Footnotes

1       The parties have consented to the jurisdiction of the undersigned magistrate judge for all purposes pursuant to 28 U.S.C. § 636(c).

2       The following factual background is based on the allegations in Plaintiff's Complaint, which the Court takes as true for the limited purpose of this Motion. *See Parks Sch. of Bus. v. Symington,* 51 F.3d 1480, 1484 (9th Cir. 1995).

**End of Document**                                                 © 2026 Thomson Reuters. No claim to original U.S. Government Works.

Case 1:26-cv-00659-KM    Document 27-1    Filed 06/24/26    Page 75 of 105

Rombough v. Robert D. Smith Insurance Agency, Inc., Not Reported in Fed. Supp. (2022)

KeyCite Yellow Flag
Declined to Follow by Nichols v. eHealthInsurance Services, Inc., N.D.Cal., March 3, 2025

2022 WL 2713278
Only the Westlaw citation is currently available.
United States District Court, N.D. Iowa, Cedar Rapids Division.

Caitlin ROMBOUGH, on behalf of herself and others similarly situated, Plaintiff,

v.

ROBERT D. SMITH INSURANCE AGENCY, INC., and
State Farm Mutual Automobile Insurance Co., Defendants.

No. 22-CV-15-CJW-MAR
|
Signed June 9, 2022

**Attorneys and Law Firms**

Eric David Puryear, Puryear Law, PC, Davenport, IA, Aaron David Radbil, Pro Hac Vice, Greenwald Davidson PLLC, Boca Raton, FL, for Plaintiff.

James Gaughan, Pro Hac Vice, Riley Safer Holmes & Cancila LLP, Chicago, IL, J. Michael Weston, Lederer Weston & Craig PLC, Cedar Rapids, IA, for Defendants.

**ORDER**

C.J. Williams, United States District Judge

## I. INTRODUCTION

**\*1**  This matter is before the Court on defendants' April 15, 2022, motion to dismiss plaintiff's complaint. (Doc. 15). Plaintiff timely filed a resistance. (Doc. 18). Defendants timely filed a reply. (Doc. 20). For the following reasons, defendants' (Doc. 15) motion is **granted** and this case is **dismissed with prejudice**.

## II. BACKGROUND

Plaintiff's claim arises out of defendants' unwanted contact with her via telephone, both by voice message and text message. The following facts are from plaintiff's complaint. (Doc. 1). Plaintiff is an Iowa resident. (*Id.*, at 2). Defendant Robert D. Smith Insurance Agency, Inc. is an Iowa insurance company, which assists customers in obtaining insurance from defendant State Farm Mutual Automobile Insurance Co. ("State Farm"). (*Id.*, at 2–3). Defendant State Farm is an Illinois insurance company. (*Id.*, at 3).

On October 25, 2021, defendants delivered a voice message and text message marketing State Farm insurance to plaintiff's personal residential telephone number, which had been registered with the national do-not-call registry since April 7, 2017. (*Id.*, at 4–6). The message was intended for a recipient other than plaintiff. (*Id.*, at 6). Plaintiff did not request information from

Case 1:26-cv-00659-KM    Document 27-1    Filed 06/24/26    Page 76 of 105

Rombough v. Robert D. Smith Insurance Agency, Inc., Not Reported in Fed. Supp. (2022)

either defendant and is not, and never has been, a State Farm customer. (*Id.*). She suffered actual harm in the form of invasion of privacy, intrusion, and a private nuisance. (*Id.*).

On February 21, 2022, plaintiff brought suit against defendants, on behalf of herself and others similarly situated, (*Id.*, at 1), and alleges that class certification is proper for her claim. (*Id.*, at 7–10). Plaintiff asserts one claim, alleging that defendants violated the Telephone Consumer Protection Act ("TCPA"), Title 47, United States Code, Section 227, by delivering messages as prohibited by Title 47, Code of Federal Regulations, Section 64.1200(c). (*Id.*, at 10–12).

On April 15, 2022, defendants filed their motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). (Doc. 15).

## III. APPLICABLE LAW

A complaint filed in federal court must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 8 does not require "detailed factual allegations." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Nevertheless, it "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint that relies on "naked assertion[s]" devoid of "further factual enhancement," "labels and conclusions," or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555, 557.

Before filing an answer, a defendant may move to dismiss a complaint for "failure to state a claim upon which relief can be granted" under Federal Rules of Civil Procedure 12(b)(6). To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter ... to 'state a claim to relief that is plausible on its face.' " *Iqbal*, 556 U.S. at 678 (citation omitted). "[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). The Court must also grant "all reasonable inferences" from the pleadings "in favor of the nonmoving party." *Crumpley-Patterson v. Trinity Lutheran Hosp.*, 388 F.3d 588, 590 (8th Cir. 2004) (citation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Plausibility is not equivalent to probability, but it is something "more than a sheer possibility that a defendant has acted unlawfully." *Id.* "The question ... is not whether [a plaintiff] might at some later stage be able to prove [its claims]; the question is whether [a plaintiff] has adequately asserted facts (as contrasted with naked legal conclusions) to support his claims." *Whitney v. Guys, Inc.*, 700 F.3d 1118, 1129 (8th Cir. 2012).

## IV. DISCUSSION

**\*2** Plaintiff alleges that defendants violated Section 227(c)(5) by violating Section 64.1200(c), causing her harm. (Doc. 1). In its motion to dismiss, defendants argue plaintiff's claim fails to meet the federal pleading standard because she does not plausibly allege an existing cause of action. (Doc. 15). Specifically, defendants argue plaintiff fails to allege that she personally registered her telephone number with the do-not-call registry, as required by Section 64.1200(c). (*Id.*, at 3, 6–7).

For the following reasons, the Court finds plaintiff fails to state a claim based on the plain language of Section 64.1200(c). Plaintiff's arguments in support of another interpretation are unavailing. Further, the Court declines plaintiff's request to amend her complaint.

### A. Plain Language

"Congress enacted the TCPA to protect consumers from the 'proliferation of intrusive [telemarketing] calls to their homes.' " *Golan v. Veritas Entm't, LLC*, 788 F.3d 814, 819 (8th Cir. 2015) (alteration in original) (quoting *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 372 (2012)). The key provision of the TCPA applicable to this case is Section 227(c)(5).

Case 1:26-cv-00659-KM    Document 27-1    Filed 06/24/26    Page 77 of 105

Rombough v. Robert D. Smith Insurance Agency, Inc., Not Reported in Fed. Supp. (2022)

Section 227(c)(5) provides, in pertinent part, a private right of action to "[a] person who has received more than one telephone call[1] within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under [Section 227(c)]." Section 227(c) requires rulemaking and regulations based on that rulemaking "concerning the need to protect residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object." Section 64.1200(c) is one such regulation. Section 64.1200(c) prohibits all telephone solicitations to "[a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry[.]" Thus, Section 227(c) provides a private action based on the circumstances in Section 64.1200(c).

The plain language of Section 64.1200(c) indicates that Section 227(c)(5)'s private action exists only for a residential telephone subscriber *who has registered his or her telephone number* on the national do-not-call registry. "[T]he fact that a federal statute has been violated and some person harmed does not automatically give rise to a private cause of action in favor of that person." *Touche Ross & Co. v. Redington*, 442 U.S. 560, 568 (1979). "If the statute itself does not display an intent to create a private remedy, then a cause of action does not exist." *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1856 (2017) (internal quotations omitted). Section 227(c)(5) only displays an intent to create a private remedy where its promulgated regulations so provide. Section 64.1200(c) was promulgated under Section 227(c)(5). But Section 61.1200(c) does not include a private remedy for a residential telephone subscriber who has not registered his or her telephone number on the national do-not-call registry. The regulation's plain language provides no distinction for a telephone number that had previously been registered on the national do-not-call registry by someone else.

When "the words of a statute are unambiguous, the judicial inquiry is complete." *Babb v. Wilkie*, 140 S. Ct. 1168, 1177 (2020) (cleaned up); *see Solis v. Summit Contractors, Inc.*, 558 F.3d 815, 823 (8th Cir. 2009) (discussing regulations). As discussed, the plain language of Section 61.1200(c) states that a violation occurs only when a person or entity initiates a telephone solicitation to a residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry. The Court finds no ambiguity in this language. Thus, the Court limits its interpretation to the plain language of Section 64.1200(c).[2]

 **\*3**  Here, plaintiff alleges that "[s]ince April 7, 2017, [her] telephone number (319) XXX-3342 has been registered with the DNC Registry." (Doc. 1, at 4). Plaintiff does not allege, either directly or indirectly, that *she* registered her telephone on the do-not-call registry. Although plaintiff alleges defendants violated Section 64.1200(c), thereby entitling her to recovery under Section 227(c)(5), she does not allege that she registered her telephone number on the do-not-call-registry.[3] Further, Section 227(c)(5) does not display an intent to create a private remedy as plaintiff alleges it. *Ziglar*, 137 S. Ct. at 1856. Thus, plaintiff fails to state a claim that defendants violated Section 64.1200(c), as her complaint alleges.[4] *See Iqbal*, 556 U.S. at 678; *Whitney*, 700 F.3d at 1129.

### B. Plaintiff's Arguments

Plaintiff argues that other statutory language and policy consideration show that dismissal of her claim is inappropriate despite Section 64.1200(c)'s plain language. The Court is not persuaded by these arguments.

Plaintiff argues she can properly state a claim under Section 64.1200(c) because Section 227(c)(5) allows "a person," not just a "subscriber," to bring a claim. (Doc. 18, at 9–10). There are two problems with this argument. First, although plaintiff alleges defendants violated Section 227(c)(5) based on Section 64.1200(c), (Doc. 1, at 11), for the reasons discussed, plaintiff fails to sufficiently allege a Section 64.1200(c) violation. Section 227(c)(5)'s terminology does not change this. Second, even if Section 64.1200(c) did allow for plaintiff to bring a claim on someone else's behalf, plaintiff fails to allege that she does so here. Plaintiff alleges that defendants called her telephone number attempting to reach "Kevin" and she alleges that her telephone number was registered to the do-not-call registry, (Doc. 1, at 4–5), but she does not allege that Kevin registered the telephone number such that defendants' calls could be viewed as "initiat[ing] ... telephone solicitation to" a residential telephone subscriber who has registered his or her telephone number with the do-not-call registry, as required by Section 64.1200(c).

**\*4**  Plaintiff's corresponding analogy to the court's analysis of the Federal Trade Commission's Telemarketing Sales Rule ("TSR") in *United States v. Dish Network, LLC*, 75. F. Supp. 3d 916 (C.D. Ill. 2014), is likewise unavailing. Plaintiff argues that because the *Dish Network* court found "[t]he TSR does not say the call must be initiated to the person who registered the number on the [do-not-call] Registry," the Court should similarly interpret Section 64.1200(c). (Doc. 18, at 10–11). But "the TSR states that it is a violation of that rule to initiate 'any outbound telephone call to a person' when '[t]hat person's telephone number is on [the Registry].' " *Dish Network*, 75 F. Supp. 3d. at 935 (citing 16 C.F.R. § 310.4(b)(1)(iii)(B)). Here, plaintiff alleges a Section 64.1200(c) violation, not a TSR violation. (Doc. 1). And unlike the TSR, Section 64.1200(c) expressly limits its violation to telephone solicitations made to "[a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry." Thus, Section 64.1200(c) plainly requires that the call to be initiated to the person who registered the number on the registry—even if the TSR does not.

Plaintiff also argues policy considerations should prevent the Court from dismissing her claim. Plaintiff first argues that re-registration of a telephone number on the do-not-call registry is impossible. (Doc. 18, at 19–21). Although the do-not-call registry website is confusing, plaintiff herself demonstrates that she was able to register her telephone number. (*Id.*, at 20 n.4). She states that when she attempted to register "[f]or the sake of example," she nevertheless received a confirmation email thanking her for registering her telephone number. (*Id.*). Though the date of registration did not update from her telephone number's earlier registration, which seemingly occurred while it was assigned to someone else, she nevertheless *could* register, according to the website and its confirmation. (*See id.*). Second, website registration is not the only way a subscriber can register for the do-not-call registry; a subscriber can call a toll-free number. *See National Do Not Call Registry FAQs*, FTC, https://consumer.ftc.gov/articles/national-do-not-call-registry-faqs (last visited June 9, 2022). There, registration of an already registered telephone number results in a confirmation with no mention of the previous registration date. Third, the FTC website and phone registration emphasize the need for "you" to register "your new number" when obtaining a new telephone number. *See National Do Not Call Registry*, FTC, https://www.donotcall.gov/register.html (last visited June 9, 2022). The website registration is less clear, though it includes the modifier "your" in both verification and registration. This language, coupled with the actual ability to re-register the same telephone number via both the website and toll-free number, suggests that a subscriber can register a telephone number that was already registered. Further, the do-not-call registry statute provides that reassigned numbers will be periodically taken off the list, suggesting that a telephone subscriber who finds their telephone number already registered cannot rely on that previous registration for protection. 15 U.S.C. § 6155. In sum, the Court does not find plaintiff's policy arguments based on re-registration availing.

Plaintiff then argues the Court should liberally construe Section 64.1200(c) because the TCPA is a remedial statute. (Doc. 18, at 21–22). A court cannot liberally construe a statute when it finds the plain language is unambiguous and therefore does not engage in statutory construction. *See Brown v. J.B. Hunt Transport Servs., Inc.*, 586 F.3d 1079, 1086 (8th Cir. 2009); *Babb*, 140 S. Ct. at 1177. Here, because the Court has found the regulation's plain language unambiguous, the Court does not engage in statutory construction. Thus, the Court declines to follow plaintiff's policy argument based on liberal construction.

**\*5**  In sum, despite plaintiff's arguments to the contrary, she fails to state a claim that defendants violated Section 64.1200(c).

### C. Amendment

Alternatively, plaintiff requests that the Court permit her to amend her complaint to add adequate facts. (Doc. 18, at 24). The Court declines plaintiff's request for several reasons. First, plaintiff's request does not comply with Local Rules because she failed to attach her proposed amended complaint. *See* LR 15. Second, plaintiff had the right to amend her complaint as a matter of course within "21 days after service of a motion under Rule 12(b)"—that is, a motion to dismiss. *See* Fed. R. Civ. P. 15; Fed. R. Civ. P. 12. Here, defendants filed their motion to dismiss on April 15, 2022, and plaintiff was served on that date. (Doc. 15). This means plaintiff could have amended her Complaint through May 6, 2022, without the Court's permission. *See* Fed. R. Civ. P. 6. But plaintiff did not.

Finally, although the Court could find that justice requires that the Court allow plaintiff to amend her complaint, *See* Fed. R. Civ. P. 15, it does not find that justice requires amendment here. This Court has allowed amendment of a complaint when "dismissal

Case 1:26-cv-00659-KM    Document 27-1    Filed 06/24/26    Page 79 of 105

Rombough v. Robert D. Smith Insurance Agency, Inc., Not Reported in Fed. Supp. (2022)

of the plaintiff's present pleadings is appropriate," but there is "no reason to believe that the plaintiff[ ] cannot adequately plead, as opposed to have not adequately pleaded, a factual basis for [her claim]." *Moller v. Tyson Foods, Inc.*, No. C 14-4056-MWB, 2014 WL 4437548, at *4 (N.D. Iowa Sept. 9, 2014). When arguing for amendment, plaintiff states "if necessary, Plaintiff can amend her complaint to allege that she is the subscriber" to her telephone number. (Doc. 18, at 24). But the issue here is not whether plaintiff is a subscriber. The issue is whether she was the subscriber who registered her telephone number with the do-not-call registry, such that she can state a claim that defendants violated Section 64.1200(c) when they called her. Further, even if plaintiff means to say that she is a subscriber who registered, it appears plaintiff only registered her telephone number with the do-not-call registry as "for the sake of example" in her argument, and had not registered at the time defendants called her. (*See id.*, at 20 n.4). As such, the Court has reason to believe plaintiff cannot adequately plead, as opposed to has not adequately pleaded, a factual basis for her claim. *See Moller*, 2014 WL 4437548, at *4. Thus, the Court declines plaintiff's request to amend her complaint.

For these reasons, the Court grants defendants' motion.[5]

### V. CONCLUSION

For these reasons, defendants' motion to dismiss (Doc. 15) is **granted**. This case is **dismissed with prejudice**. The Clerk of Court is directed to **enter judgment** in favor of defendants and against plaintiff.

**IT IS SO ORDERED** this 9th day of June, 2022.

**All Citations**

Not Reported in Fed. Supp., 2022 WL 2713278

Footnotes

1    It is undisputed that a text message is a call under the TCPA.

2    Accordingly, the Court does not consider the parties' arguments relating to extratextual sources. (Docs. 18, at 22–23; 20, at 4–5).

3    In Count I of her complaint, plaintiff alleges that defendants violated Section 64.1200(c) "by initiating, or causing to be initiated, telephone solicitations to telephone subscribers such as Plaintiff and the class members who registered their respective residential telephone numbers with the [do-not-call] Registry[.]" (Doc. 1, at 11). But in her factual allegations and her briefing, plaintiff does not state that *she* registered her telephone number with the do-not-call registry. (*See* Doc. 1, at 4 ("Since April 7, 2017, [plaintiff's telephone number] has been registered with the [do-not-call] Registry.")). Further, plaintiff argues whether she or someone else registered the number with the do-not-call registry is of no consequence. (*See generally* Doc. 18). The Court disagrees.

     Plaintiff also argues other courts have found allegations like hers sufficient to state a claim under the TCPA in motions to dismiss, motions for default judgment, and bench trials. (Doc. 18, at 11–19). Plaintiff notes that defendants do not "reference a single decision adopting their argument." (*Id.* at 5). The decisions that plaintiff cites, however, are from district courts, meaning they are non-binding on this Court. Further, these decisions are from district courts outside the Eighth Circuit Court of Appeals, which detracts from them even being persuasive. For the reasons discussed in this order, the Court declines to follow these courts.

4    That Section 64.1200(c) requires "such do-not-call registrations must be honored indefinitely," makes no difference here because this language appears in the context of the violation the Court has found plaintiff does not adequately allege. (*See* Doc. 20, at 4).

5    Thus, the Court does not reach the parties' arguments about plaintiff's proposed class. (Docs. 15-1, at 3 n.4; 18, at 7 n.1).

End of Document                                            © 2026 Thomson Reuters. No claim to original U.S. Government Works.

🚩 KeyCite Yellow Flag

Distinguished by Compressor Engineering Corporation v. Thomas, E.D.Mich., December 29, 2016

2014 WL 6750690

Only the Westlaw citation is currently available.

United States District Court,

N.D. Ohio,

Western Division.

SANDUSKY WELLNESS CENTER, LLC, Plaintiff,

v.

WAGNER WELLNESS, INC., et al., Defendant.

No. 3:12 CV 2257.

|

Filed Dec. 1, 2014.

**Attorneys and Law Firms**

Brian J. Wanca, Ryan M. Kelly, Anderson & Wanca, Rolling Meadows, IL, Scott D. Simpkins, Climaco, Lefkowitz, Peca, Wilcox & Garofoli, Cleveland, OH, for Plaintiff.

Dale E. Markworth, Jaclyn C. Staple, Timothy T. Reid, Mansour Gavin, Cleveland, OH, R. Brian Borla, Hanna, Campbell & Powell, Akron, OH, for Defendant.

*MEMORANDUM OPINION AND ORDER*

KATZ, District Judge.

**\*1** This cause is before the Court on Sandusky Wellness Center's pending class action motion. The Court previously denied Sandusky Wellness's most recent request for class certification because the Court found too many issues had not been addressed by the parties for the Court to properly rule on the certification request. Those issues have now been briefed by the parties, (Doc. Nos.56, 57, 58), and the motion for class action is now ripe for adjudication.

Defendant Wagner Wellness is a Florida corporation that engages in the business of selling vitamins and nutritional supplements with its principal place of business in Longwood, Florida. Wagner Wellness is owned by Robert and April Wagner and the business has no other employees. However, Mr. Wagner has stated that his son Chad occasionally assisted with the business by helping at an occasional meeting and by opening the door. The Wagners serve as both officers and shareholders of Wagner Wellness. Sandusky Wellness is an Ohio limited liability company located in Sandusky, Ohio, within the jurisdiction and venue of this Court.

Sandusky Wellness alleged that the defendants violated the Telephone Consumer Protection Act of 1991 (TCPA), as amended by the Junk Fax Prevention Act of 2005, 47 U.S.C. § 227, by sending an unsolicited advertisement, via facsimile, to promote their business and invite physicians to seminars discussing their products. The facsimile contained the following "opt-out" statement: "To be removed from future facsimiles call 1–877–281–6342 and enter pin# 8283."

The record establishes that Wagner Wellness purchased on its corporate charge card a list of facsimile numbers from infoUSA. Wagner Wellness directed infoUSA to send the facsimile list to Alert Solutions, Inc., doing business as BLI Messaging. BLI

then sent facsimiles to the people on the list provided by infoUSA. Although the parties disputed Mr. Wagner's involvement with the facsimiles, they agreed that April Wagner played no role in the creation or distribution of the facsimiles which lead to the dismissal of the complaint against her.

Regarding Mr. Wagner's motion for summary judgment on the issue of personal liability, the Court denied the motion. The Court noted that it did not express any opinion on whether Mr. Wagner violated the TCPA, or whether the "opt-out language" of the facsimile in question was sufficient under the statute. The Court's ruling was strictly limited to the question of whether Mr. Wagner could be held personally liable for any violations of the TCPA. (Doc. Nos.45, p. 6).

The TCPA makes it unlawful "to use any telephone facsimile machine, computer, or other device to send, to a telephone facsimile machine, an unsolicited advertisement" unless certain exceptions apply. 47 U.S.C. § 227(b)(1)(C). The statute provides a private right of action to enforce its provisions. A "person or entity may" bring "an action based on a violation" of the statute to: 1) "enjoin such violation"; 2) "to recover for actual monetary loss from such a violation, or to receive $500 in damages for each such violation, whichever is greater"; or 3) "both such actions." 47 U.S.C. § 227(b)(3). In addition, "[i]f the court finds that the defendant willfully or knowingly violated" the statute, "the court may, in its discretion, increase the amount of the award to an amount equal to not more than 3 times the amount" of the plaintiff's award for statutory or actual damages. *Id.*

**\*2**  In enacting the TCPA, Congress noted "the proliferation of facsimile machines" in the business community had been "accompanied by explosive growth in unsolicited facsimile advertising, or 'junk fax.' " H.R. Rep. 102–317 at 10 (1991). Congress further stated that such advertising "is problematic for two reasons. First, it shifts some of the costs of advertising from the sender to the recipient. Second, it occupies the recipient's facsimile machine so that it is unavailable for legitimate business messages while processing and printing the junk fax." *Id.* The recipient of the facsimile advertisements assumes both the cost associated with the use of the facsimile machine and the cost of the paper. In addition, when receiving the facsimile, it may require several minutes or more to process and print the advertisement. During that time, the facsimile machine is unable to process actual business communications. *Id.* at 25. Thus, the statute's legislative history indicates that the TCPA was intended to address the costs incurred by the owner of the facsimile machine and the facsimile machine owner's loss of the use of the machine.

Sandusky Wellness moved for class certification pursuant to Federal Rule of Civil Procedure 23. The proposed class is: "All persons who (1) on or after September 5, 2008, (2) were sent telephone facsimile messages inviting attendance at a Physicians Wellness and Weight Loss Program, and (3) which did not display a proper opt-out notice." (Doc. No. 33). The Defendants contended that the requirements of Rule 23 were not satisfied.

Rule 23 allows Sandusky Wellness to pursue claims on behalf of a class of similarly situated individuals if it demonstrates that it is "part of the class and 'possess[es] the same interest and suffer[s] the same injury' as the class members." *East Tex. Motor Freight Sys., Inc. v. Rodriguez,* 431 U.S. 395, 403, 97 S.Ct. 1891, 52 L.Ed.2d 453 (1977). To justify this "exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only," *Califano v. Yamasaki,* 442 U.S. 682, 700–01, 99 S.Ct. 2545, 61 L.Ed.2d 176 (1979), Sandusky Wellness must meet a series of conditions set forth in Rule 23 to ensure, first, that it is an appropriate representative for absent class members, and, second, that its claim is appropriate for classwide resolution. *See* Fed.R.Civ.P. 23.

Class-certification litigation is the process of determining whether a plaintiff can meet these conditions. The rule establishes four requirements:

(1) the class [must be] so numerous that joinder of all members is impracticable; there are questions of law or fact common to the class;

the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

the representative parties will fairly and adequately protect the interests of the class.

Fed.R.Civ.P. 23(a)(1)-(4). If a plaintiff does not satisfy each of these requirements, the class claim fails. If, however, a plaintiff shows that he is an appropriate representative within the meaning of Rule 23(a), the focus shifts to the case itself.

**\*3** Under Rule 23(b), four types of lawsuits may proceed as class actions. Class resolution is appropriate when:

(1) prosecuting separate actions by or against individual class members would create a risk of:

(A) inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or

adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests;

(2) the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole; or

the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

Fed.R.Civ.P. 23(b)(1)-(3). If a plaintiff's claim does not fall into one of these categories, class certification is inappropriate, even if a plaintiff meets each of Rule 23(a)'s four threshold requirements.

Thus, a plaintiff must show that he meets all four Rule 23(a) criteria, and that the case falls into at least one of the four Rule 23(b) categories. If the plaintiff fails to satisfy any of these requirements, class certification is not appropriate.

This Court must conduct "a rigorous analysis," *General Tel. Co. of the Sw. v. Falcon,* 457 U.S. 147, 161, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982), at "an early practicable time ... [to] determine by order whether to certify the action as a class action." Fed.R.Civ.P. 23(c)(1)(A). "Frequently that 'rigorous analysis' will entail some overlap with the merits of the plaintiff's underlying claim. That cannot be helped." *Wal–Mart Stores, Inc. v. Dukes,* ––– U.S. ––––, ––––, 131 S.Ct. 2541, 2551, 180 L.Ed.2d 374 (2011). In the class-certification context, courts are permitted to "probe behind the pleadings," *Falcon,* 457 U.S. at 160, and "touch[ ] aspects of the merits." *Dukes,* 131 S.Ct. at 2552.

Under Rule 23(a)(2), a plaintiff must show that "there are questions of law or fact common to the class." Fed.R.Civ.P. 23(a)(2). *Dukes* clarified the scope of this inquiry. To satisfy Rule 23(a)(2), a plaintiff's "claims must depend upon a common contention-.... [which is] of such a nature that it is capable of classwide resolution-which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Dukes,* 131 S.Ct. at 2551. The crucial inquiry, the Court explained, is "the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation." *Id.* (internal quotation marks and citation omitted) (emphasis in original).

**\*4** The Sixth Circuit's decision in *American Copper & Brass, Inc. v. Lake City Indus. Prods., Inc.,* 757 F.3d 540 (6th Cir.2014), provides guidance regarding Sandusky Wellness's class certification motion. Lake City is a Pennsylvania-based corporation that distributes pipe-thread sealing tape. *American Copper,* 757 F.3d at 542. In February 2006, Lake City received an unsolicited fax from Business to Business Solutions (B2B), a "fax-blasting" company, advertising B2B's services. *Id.* Lake City's president, Jeffrey Meeder, responded to the advertisement. *Id.* B2B offered to transmit approximately 10,000 faxes on Lake City's behalf for $92. *Id.* Meeder accepted B2B's offer, and Lake City and B2B began drafting the Lake City advertisement. *Id.* After Meeder made revisions to a draft that a B2B representative had sent to him, the Lake City advertisement was finalized. *Id.* B2B subsequently transmitted thousands of unsolicited faxes in February 2006 that featured the Lake City advertisement. *Id.*

American Copper, an equipment wholesaler headquartered in Michigan, received the Lake City advertisement on a fax machine at its Traverse City location on February 20, 2006. *Id.* Lake City and American Copper had no preexisting business relationship, nor did Lake City obtain American Copper's permission before the advertisement was transmitted to American Copper. *Id.*

American Copper filed suit against Lake City and Meeder in December 2009. *Id.* Lake City and Meeder in turn filed a third-party complaint against B2B and others affiliated with B2B. *Id.* The district court entered a default judgment against the third-party defendants after they failed to appear or otherwise respond to the third-party complaint. *Id.*

After amending its complaint twice, American Copper moved for class certification in August 2011. *Id.* American Copper proposed the following class definition:

> All persons who were successfully sent a facsimile on February 20, 2006, February 21, 2006 or February 22, 2006 from "Lake City Industrial Products, Inc."; inquiring, "Sick And Tired of Thin, Low Quality Import Pipe Thread Sealing Tapes?"; stating "End the problems now with high quality, MADE IN U.S.A. 100% virgin ptfe pipe thread sealing tapes!"; and offering "Free! Private label on every roll for first time orders."

*Id.* at 542–43.

In support of its motion, American Copper attached a report from its expert witness, Robert Biggerstaff. *Id.* at 543. The report stated that, based on Biggerstaff's review of B2B's fax records, "a total of 10,627 successful transmissions of a complete fax [i.e., the Lake City advertisement] were successfully sent to and received by 10,627 unique fax numbers." *Id.*

Lake City opposed American Copper's motion for class certification. *Id.* In July 2012, the district court rejected all of Lake City's arguments and certified the class as formulated by American Copper. *Id.* The district court also appointed class counsel and ordered the preparation of a notification form to be sent to class members. *Id.*

**\*5** Lake City then petitioned the Sixth Circuit for permission to appeal the class-certification order. *Id.* After concluding that interlocutory review was not warranted, the Sixth Circuit denied Lake City's petition. *Id.* American Copper then moved for summary judgment in the district court. *Id.* The district court subsequently granted American Copper's motion for summary judgment. *Id.* Explaining that the TCPA is "essentially a strict liability statute," the district court rejected Lake City's argument that it should not be held liable under the TCPA because B2B had actually transmitted the advertisements. *Id.* The district court was likewise unpersuaded by Lake City's contention that summary judgment was inappropriate due to the absence of proof regarding how many of the Lake City advertisements had actually been printed by recipients. *Id.* Nor did the district court find any merit in Lake City's argument that summary judgment would lead to its bankruptcy, noting that Lake City's ability (or inability) to pay a judgment was irrelevant at the summary-judgment stage of the case. *Id.* After the district court entered an amended judgment in favor of American Copper and the class-action plaintiffs in November 2013, Lake City and Meeder appealed. *Id.* The Sixth Circuit affirmed the district court's class definition on appeal. *Id.* at 546.

The Court previously denied Sandusky Wellness's motion for class certification following the two orders of remand from the Sixth Circuit. The Court deemed the failure of the parties to address certain significant issues underlying the potential class action rendered a ruling on the motion inappropriate at that time. The parties have now fully briefed the Court regarding its concerns. (Doc. Nos.56, 57, 58). The Court has carefully reviewed the arguments of the parties and concludes that a ruling on the class certification motion is now appropriate.

I. Regarding the conditions contained in Rule 23(a).

*A. Numerosity:* The evidence suggests that the proposed class contains over 125,000 members. Specifically, evidence indicates that the Defendants sent 496,525 faxes to 125,373 unique faxes. "When class size reaches substantial proportions ... the impracticability requirement is usually satisfied by the numbers alone." *In re Am. Med. Sys., Inc., 75 F.3d 1069, 1079 (6th Cir.1996)* (quotations and citations omitted). In addition, certification of the class does not require the identities of the class

members at this time. *See Golden v. City of Columbus,* 404 F.3d 950, 965–66 (6th Cir.2005). Joinder of all class members would not be practicable. Thus, the "numerosity" requirement is satisfied.

*B. Commonality:* The "commonality" requirement is met. Several common questions of law and fact are present. The Defendants engaged in conduct which led to every class member receiving a fax which failed to comply with the TCPA. In addition, the case involves common legal questions regarding Defendants' liability under the TCPA.

**\*6** *C. Typicality:* The "typicality" requirement is met as the legal theory for each class member is based on the same facts and legal theory as Sandusky Wellness. Therefore, Sandusky Wellness's claim is typical of the other class members' claims. *See* In re Am. Med. Sys., 75 F.3d at 1082.

*D. Adequacy of Representation:* Sandusky Wellness can fairly and adequately protect the interests of the class. "The adequate representation requirement overlaps with the typicality requirement." *Id.* at 1083. Sandusky Wellness's interests are aligned with other class members because all class members seek statutory damages under the TCPA arising from Defendants' faxes. Sandusky Wellness is an adequate representative of the class.

II. Regarding Rule 23(b)(3)'s requirement.

*A. Predominance:* Rule 23(b)(3)'s predominance resembles Rule 23(a)(3)'s typicality requirement. *See Ball v. Union Carbide Corp.,* 385 F.3d 713, 728 (6th Cir.2004). "The commonality requirement is satisfied if there is a single factual or legal question common to the entire class. The predominance requirement is met if this common question is at the heart of the litigation." *Powers v. Hamilton Cnty. Pub. Defender Comm'n,* 501 F.3d 592, 619 (6th Cir.2007) (citation omitted).

The common questions are at the heart of this litigation. Namely, whether Defendants violated the TCPA by sending the faxes with the improper "opt-out" information to every class member.

*B. Superiority:* Rule 23(b)(3) requires that a class action be the superior method for adjudicating the claims. A class action is superior when the "class action would achieve economies of time, effort, and expense, and promote ... uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." *Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 615, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997) (internal quotation marks and citation omitted). One of the purposes of Rule 23(b)(3) is "vindication of the rights of groups of people who individually would be without effective strength to bring their opponents into court at all." *Id.* at 617 (internal quotation marks and citation omitted).

This type of case weighs in favor of the class action as a superior device. Under the TCPA, the maximum recovery for each class member is $1,500, and it does not allow for fee shifting. Hence, individual class members are unlikely to litigate TCPA claims. *See id.*

Second, in finding federal courts have concurrent jurisdiction with state courts over TCPA actions, the Supreme Court effectively found that Congress did not intend state small claims courts to be the sole forum for TCPA claims. *See Mims v. Arrow Fin. Servs., LLC,* —— U.S. ——, ——, 132 S.Ct. 740, 751, 181 L.Ed.2d 881 (2012).

III. Regarding Rule 23(g)'s adequacy of class counsel requirement.

This Court must consider four criteria in appointing class counsel, Rule 23(g)(1)(A), and may consider "any other matter pertinent to counsel's ability to fairly and adequately represent the interest of the class." Fed.R.Civ.P. 23(g)(1)(B). In *American Copper & Brass, Inc. v. Lake City Indus. Prods., Inc.,* No. 1:09–CV–1162, 2012 WL 3027953, at *6–7 (W.D.Mich. July 24, 2012), Judge Quist discusses in great detail Anderson + Wanca's torrid past in representing clients in TCPA cases. Yet, Judge Quist concluded that "for better or worse, [Anderson+Wanca] have experience in TCPA class actions." *American Copper & Brass, Inc.,* No. 1:09–CV–1162, 2012 WL 3027953, at *7.

**\*7**  In the instant case, local counsel Scott D. Simpkins of Climaco, Wilcox, Peca, Tarantino & Garofoli Co. LPA, one of the proposed attorneys for the class, "has not been tainted by any allegation of unethical misconduct." *Id.* at \*7. As a result, he is designated as lead counsel in this case and will be held fully responsible for all acts of counsel. As with each attorney representing the class, Mr. Simpkins must competently, diligently, and adequately represent the class. With this understanding, the Court has no serious doubt that the members of the class will receive adequate representation. Therefore, the Court believes that class counsel meets all of the requirements of Rule 23(g)(1) and will adequately represent the class.

  IV. Conclusion

Sandusky Wellness's motion for class certification is granted. The Court certifies the following class:

> "All persons who (1) on or after September 5, 2008, (2) were sent telephone facsimile messages inviting attendance at a Physicians Wellness and Weight Loss Program, and (3) which did not display a proper opt-out notice."

Furthermore, the Court, based upon the previously stated reasons and the factors of Rule 23(g), appoints Scott D. Simpkins of Climaco, Wilcox, Peca, Tarantino & Garofoli Co. LPA; Brian J. Wanca and Ryan M Kelly of Anderson + Wanca as class counsel, with Mr. Simpkins being deemed lead counsel. Moreover, Sandusky Wellness's counsel are ordered to file a proposed notification form which complies with Rule 23(c), together with a statement describing the method by which the notice will be provided to class members and a list of persons to whom the notice will be sent on or before April 3, 2015.

Finally, class counsel are put on notice that any claim for attorney's fees will be closely scrutinized for duplication and value of the time spent. For example, only one lawyer should attend any court hearings or conferences, and requests for fees should not include research already performed in other cases. *Id.* at \*8.

IT IS SO ORDERED.

**All Citations**

Not Reported in F.Supp.3d, 2014 WL 6750690

---

**End of Document**

© 2026 Thomson Reuters. No claim to original U.S. Government Works.

KeyCite Yellow Flag

Distinguished by In re Humana, Inc., 6th Cir.(Ky.), December 30, 2025

2014 WL 1814076

Only the Westlaw citation is currently available.

United States District Court,

S.D. Ohio,

Eastern Division.

Chris SAUTER, Plaintiff,

v.

CVS PHARMACY, INC., Defendant.

No. 2:13–cv–846.

|

Signed May 7, 2014.

**Attorneys and Law Firms**

Brian K. Murphy, Geoffrey J. Moul, Jennifer A. Hemenway, Joseph F. Murray, Murray Murphy Moul & Basil, LLP, Columbus, OH, for Plaintiff.

Joseph C. Pickens, Taft Stettinius & Hollister LLP, Columbus, OH, Michael D. Leffel, Madison, WI, Robert H. Griffith, Foley & Lardner LLP, Chicago, IL, Stephen H. Jett, Taft, Stettinius & Hollister, Cleveland, OH, for Defendant.

*OPINION AND ORDER*

JAMES L. GRAHAM, District Judge.

**\*1** The Plaintiff brings this putative class action against the Defendant for alleged violations of the Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227. This matter is before the Court on the Defendant's Motion to Strike Plaintiff's Class Allegations (doc. 23) filed on February 3, 2014. For the reasons that follow, the Court will GRANT the Defendant's Motion to Strike (doc. 23). The Court will GRANT the Plaintiff 14 days in which to file an amended complaint.

**I. Background**

The following allegations are taken from the Plaintiff's Complaint:

The Plaintiff is a resident of Columbus, Ohio. First Am. Compl. at ¶ 1, doc. 16–1. The Defendant, CVS Pharmacy, Inc., is a national pharmacy chain that sells prescription drugs among other products. *Id.* at ¶ 15. In order to meet internal sales quotas, CVS enrolls individuals in a program that automatically refills their prescriptions without obtaining customers' consent. *Id.* at ¶¶ 16–17.

On March 28, 2013, the Plaintiff received a phone call from CVS (the First Call), which utilized an automatic telephone dialing system (ATDS) to call the Plaintiff's cell phone without the Plaintiff's consent. *Id.* at ¶ 22. Upon answering the phone, the Plaintiff heard a robotic voice delivering a prerecorded message. *Id.* at ¶ 23. The voice provided him with general information about a prescription refill and the location of his local CVS pharmacy. *Id.* Thousands of individuals have received similar messages. First Am. Compl. at ¶ 23. On at least four occasions after the First Call and prior to the filing of this lawsuit, the Defendant

used an ATDS to make phone calls to the Plaintiff's cell phone without the Plaintiff's consent. *Id.* at ¶ 24. After the Plaintiff filed this lawsuit on August 28, 2013, the Defendant used an ATDS to make eight additional phone calls to the Plaintiff's cell phone without his consent. *Id.* at ¶¶ 25–27. These additional calls made by the Defendant utilized an automated prerecorded message, indicative of the use of an ATDS. *Id.* at ¶¶ 23–25, 27–29.

The Plaintiff did not provide his cellular telephone number to the Defendant and did not subscribe to any telemarketing service offered by the Defendant. *Id.* at ¶ 32. The Defendant "harvested" the Plaintiff's number from his physician when the Plaintiff filled his prescription at his local CVS pharmacy. *Id.* at ¶ 29. The Plaintiff never expressly consented to receive notifications from CVS on his cell phone. *Id.* at ¶¶ 33–36.

The Plaintiff alleges that the Defendant has repeatedly violated the TCPA over the past several years through its use of ATDS and prerecorded messages without the prior express consent of the recipients of those messages. *Id.* at ¶¶ 38–41. The Plaintiff seeks to represent a class comprised of "all persons within the United States who received a non-emergency telephone call from CVS to a cellular telephone through the use of an automatic telephone dialing system or an artificial or prerecorded voice and who did not provide prior express consent for such calls" in the four years prior to the filing of the Plaintiff's Complaint in this case. *Id.* at ¶ 42. The Plaintiff also seeks to represent two additional subclasses. First, the Plaintiff proposes to represent a subclass of:

**\*2** all persons within the United States who received a non-emergency telephone call on or after October 16, 2013 from CVS to a cellular telephone through the use of an automatic telephone dialing system or an artificial or prerecorded voice and who did not provide prior express written consent for such calls ....

First Am. Compl. at ¶ 43. Second, the Plaintiff proposes to represent a subclass of:

all persons within the United States who received a non-emergency telephone call from CVS to a cellular telephone through the use of an automatic telephone dialing system or an artificial or prerecorded voice and who had expressly revoked any consent previously given to CVS for such calls, at any time within the four years prior to the filing of the instant Complaint. *Id.* at 44.

The Plaintiff's Complaint includes three counts. Count I alleges that the Defendant negligently violated the TCPA through its use of an ATDS and/or prerecorded messages. *Id.* at ¶¶ 54–57. Count II alleges that the Defendant willfully or knowingly violated the TCPA through its use of an ATDS and/or prerecorded messages. *Id.* at ¶¶ 58–61. Count III requests injunctive relief to bar future TCPA violations on the part of the Defendant. *Id.* at ¶¶ 62–64.

The Defendant filed its Motion to Strike Class Allegations (doc. 23) on February 3, 2014. The Defendant's motion is fully briefed.

## II. Motions to Strike Class Allegations

"Most courts recognize that a motion to strike class action allegations may properly be filed before plaintiffs have filed a motion for class certification." 1 McLaughlin on Class Actions § 3:4 (10th ed.2013) (collecting cases). Courts in the Sixth Circuit have permitted the use of motions to strike class allegations prior to discovery. *See, e.g., Pilgrim v. Universal Health Card,* LLC, 660 F.3d 943, 945 (6th Cir.2011) (affirming the district court's judgment striking class allegations and dismissing a lawsuit prior to discovery, finding that the defect in the class action at issue involved "a largely legal determination" that "no proffered factual development offer[ed] any hope of altering"); *Loreto v. Procter & Gamble Co.,* No. 1:09–cv–815, 2013 WL 6055401, at \*6 (S.D.Ohio Nov.15, 2013); *Rikos v. Procter & Gamble Co.,* No. 1:11–cv–226, 2012 WL 641946, at \*7 (S.D.Ohio Feb.28, 2012); *Bearden v. Honeywell Intern., Inc.,* No. 3:09–01035, 2010 WL 1223936, at \*9 (M.D.Tenn. Mar.24, 2010).

"[C]ourts should exercise caution when striking class action allegations based solely on the pleadings," *Manning v. Boston Med. Ctr. Corp.,* 725 F.3d 34, 56 (1st Cir.2013), because "class determination generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action," *Gen. Tel. Co. of Sw. v. Falcon,* 457 U.S. 147, 160, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982) (internal citations and quotations omitted). *See also Mazzola v. Roomster Corp.,* 849 F.Supp.2d

395, 410 (S.D.N.Y.2012) ("[A] motion to strike class actions ... is even more disfavored because it requires a reviewing court to preemptively terminate the class aspects of ... litigation, solely on the basis of what is alleged in the complaint, and before plaintiffs are permitted to complete the discovery to which they would otherwise be entitled on questions relevant to class certification"). But "[a] court may strike class action allegations before a motion for class certification where the complaint itself demonstrates that the requirements for maintaining a class action cannot be met." *Loreto,* 2013 WL 6055401, at *2 (citing *Pilgrim,* 660 F.3d at 949). *See also General Tel. Co. of Sw.,* 457 U.S. at 160 ("Sometimes the issues are plain enough from the pleadings to determine whether the interests of the absent parties are fairly encompassed within the named plaintiff's claim, and sometimes it may be necessary for the court to probe behind the pleadings before coming to rest on the certification question").

## III. Discussion

**\*3**  Pursuant to Federal Rule of Civil Procedure 23(d)(1)(D),[1] the Defendant moves to strike or dismiss the Plaintiff's class allegations, arguing that the Plaintiff's proposed class and subclasses are impermissible "fail safe" classes. Def.'s Mot. to Strike at 2, doc. 23. According to the Defendant, the Plaintiff's proposed classes "are specifically defined such that whether a person qualifies as a member of the respective class depends upon whether the person ultimately has a valid claim under the TCPA as interpreted by Plaintiff." Def.'s Mot. to Strike Class Allegations at 6–7, doc. 23 (citing *Young v. Nationwide Mut. Ins. Co.,* 693 F.3d 532, 538 (6th Cir.2012)). Each proposed class includes only those individual who did not provide prior express consent to the Defendant's alleged use of an ATDS to contact those individuals by phone. As a result, the Defendant contends that the class allegations are improper as a matter of law because the issue of consent would require individualized fact-finding, which is impermissible under Rule 23.

At the outset of his Response, the Plaintiff emphasizes that motions to strike class action allegations are rarely granted, particularly prior to the Plaintiff being able to conduct discovery. Further, the Plaintiff observes, "nearly every court presented with a motion to strike TCPA class allegations prior to discovery has denied the motion, including where, as here, the class is not so narrow as to require the court to make individualized findings which would settle the dispute at hand." Pl.'s Resp. in Opp. at 3, doc. 24. The Plaintiff recognizes that fail-safe classes are impermissible, *id.* at 4, but maintains that the proposed class definitions do not require individualized determinations with respect to liability, *id.* at 5. Citing his Amended Complaint, the Plaintiff asserts that the Defendant maintains a list of individuals enrolled in its automatic prescription refill program and who subsequently receive phone calls made with an ATDS. *Id.* at 5. In the Plaintiff's view, this list would obviate the need for individualized determinations of consent. *Id.* Even if the Court finds that the Plaintiff's proposed classes are fail-safe, the Plaintiff argues that the appropriate remedy is for the Court to refine or correct the class definition, rather than strike those definitions. *Id.* at 6.

A. *Telephone Consumer Protection Act (TCPA)*
"In 1991, Congress enacted the TCPA 'to protect the privacy interests of residential telephone subscribers by placing restrictions on unsolicited, automated telephone calls to the home and to facilitate interstate commerce by restricting certain uses of facsimile ... machines and automatic dialers.' " *Charvat v. NMP, LLC,* 656 F.3d 440, 443 (6th Cir.2011) (quoting S.Rep. No. 102–178, at 1, *reprinted* in 1991 U.S.C.C.A.N.1968, 1968). Relevant here, the TCPA prohibits the:

mak[ing][of] any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice ... to any telephone number assigned to a ... cellular telephone service.

**\*4**  47 U.S.C. § 227(b)(1)(A)(iii). The TCPA requires the Federal Communications Commission (FCC) to "prescribe regulations to implement the requirements of" subsection (b). *Id.* § 227(b) (2). "Private parties are authorized to seek injunctive relief and statutory damages for violations of these prohibitions." *Ashland Hosp. Corp. v. Serv. Emps. Intern. Union, Dist. 1199 WV/KY/OH,* 708 F.3d at 741 (6th Cir.2013) (citing 47 U.S.C. § 227(b)(3)).

B. *Fail–Safe Classes*

Here, the Defendant argues that the Plaintiff's proposed classes are impermissible failsafe classes.

1. The Sixth Circuit And Fail–Safe Classes

"[A] class definition is impermissible where it is a 'fail-safe' class, that is, a class that cannot be defined until the case is resolved on its merits." *Young,* 693 F.3d at 538 (citing *Randleman v. Fidelity Nat'l Title Ins. Co.,* 646 F.3d 347, 352 (6th Cir.2011)). A "fail-safe" class "includes *only* those who are *entitled* to relief." *Young,* 693 F.3d at 538. "Such a class is prohibited because it would allow putative class members to seek a remedy but not be bound by an adverse judgment—either those 'class members win or, by virtue of losing, they are not in the class' and are not bound." *Id.* (quoting *Randleman,* 646 F.3d at 352).

a. Randleman v. Fidelity Nat'l Title Ins. Co.

In *Randleman,* the Sixth Circuit affirmed the district court's order decertifying the plaintiffs' class action on the grounds that the proposed class definition included only those who were "entitled to relief," and was therefore an impermissible fail-safe class. The plaintiffs purchased a home in 2001 along with title insurance and a homeowner's policy. *Randleman,* 646 F.3d at 349. Three years later, in 2004, the plaintiffs refinanced their home. *Id.* At that time, the new mortgagee required the plaintiff to obtain a new title insurance policy. *Id.* The plaintiffs purchased the new title policy from the defendant but the defendant failed to give the plaintiffs the discounted "refinance" rate to which they were entitled. *Id.*

The plaintiffs subsequently filed a class action suit against the defendant. The district court initially certified a class of all persons who paid for title insurance issued by the defendant in connection with the refinancing of a residential mortgage loan and who "were entitled to receive the 'reissue' or 'refinance' rate for title insurance." *Id.* at 350. After extensive discovery, the district court reversed course, concluding that liability could only be determined on an individual basis after reviewing each homeowner's file. *Id.* Based on this conclusion, the district court held that the plaintiffs' proposed class failed to meet the commonality or typicality requirements under Rule 23. *Id.* at 350–51. Further, the district found that common issues did not predominate because of the required individualized determination of each homeowner's liability. *Randleman,* 646 F.3d at 351.

 **\*5** At the outset of its decision affirming the district court's decertification order, the court of appeals observed that the plaintiff's proposed class "was flawed in that it only included those who are 'entitled to relief.' " *Id.* at 352. As the court explained, "[t]his is an improper fail-safe class that shields the putative class members from receiving an adverse judgment" because "[e]ither the class members win, or by virtue of losing, they are not in the class, and, therefore, not bound by judgment." *Id.* (collecting cases). Significantly, before considering the predominance requirement, the court of appeals noted that the prohibition against fail-safe classes constituted an independent ground for denying class certification." *Id.*

b. Young v. Nationwide Mut. Ins. Co.

In contrast, in *Young,* the court of appeals rejected the defendants' argument that the plaintiffs' proposed class was invalid as a fail-safe class. The plaintiffs purchased insurance products from the defendants. *Young,* 693 F.3d at 535. Under Kentucky state law, local governments could impose a tax on insurers for the premiums they collected from the sale of specific insurance products. *Id.* Further, local governments could charge a "collection fee" to compensate for their expenses in collecting those taxes. *Id.* All of the defendants passed the cost of those taxes and collection fees onto their policyholders. *Id.*

According to the plaintiffs, the defendants charged them for the taxes on their premiums "when either the tax was not owed or the tax amount owed was less than the insurer billed." *Id.* The plaintiffs filed a class action alleging numerous violations of state law by the defendants. *Id.* Among other arguments before the district court, the defendants asserted that the plaintiffs' proposed class definition "would require the court to engage in impermissible individual determinations on the merits of the claims of each putative class member." *Young,* 693 F.3d at 535–36. The district court rejected this argument and subsequently certified ten subclasses, finding that they satisfied the Rule 23(a) and Rule 23(b) requirements. *Id.* at 536. The court defined the subclasses as "[a]ll persons in the Commonwealth of Kentucky who purchased insurance from or underwritten by [Defendant

insurer] during the Relevant Time Period ... and who were charged local government taxes on their payment of premiums which were either not owed, or were at rates higher than permitted." *Id.*

On appeal, the defendants challenged the certification of the class, arguing that the class definition created improper fail-safe classes. The court reviewed *Randelman's* discussion of failsafe classes, and, with limited explanation, concluded that the class definition at issue did not create a fail-safe class. *Id.* at 538. The court of appeals emphasized that "Plaintiffs' classes will include both those entitled to relief and those not," reasoning that "Defendants' other argument—that they are not ultimately liable for many of the class members, even if they were incorrectly charged—proves the point." *Id.* Therefore, the court found that the plaintiff's class definitions were not fail-safe. *Id.*

2. Fail–Safe Classes under the TCPA

 **\*6** Courts have had limited occasion to consider fail-safe classes in the context of the TCPA. Those courts that have considered the issue have reached contradictory conclusions.

a. Wolfkiel v. Intersections Insurance Services Inc.

In *Wolfkiel v. Intersections Insurance Services Inc.,* the named plaintiffs filed a putative class action against a mortgage loan servicer (Ocwen) and company (Intersections Insurance Services) from which they received telemarketing calls, allegedly in violation of the TCPA. —— F.R.D. ——, 2014 WL 866979 (N.D.Ill. Mar.5, 2014). After the named plaintiff's[2] mortgage was transferred to a mortgage servicing company, Ocwen, he began to receive unsolicited marketing phone calls to his cell phone. *Id.* at \*1. The plaintiff contacted the number from which he received calls, leading him to Ocwen. *Id.* The plaintiff inquired as to the reason for the phone calls, and the telemarketer explained that the purpose of the calls was to offer him Intersections' identify theft membership services. *Id.* The plaintiff informed the telemarketer that he was not interested in the service and that he did not wish to receive any more phone calls for those services. *Id.* Despite this request, plaintiff continued to receive similar telemarketing phone calls. *Id.* The named plaintiff subsequently filed suit against the defendants, asserting that he never consented to receiving telemarketing calls and that he should have not received any calls after he requested that they be stopped. *Wolfkiel,* 2014 WL 866979, at \*1

The plaintiff filed suit and sought to represent two putative classes, including a "NoConsent Class" defined as:

> All individuals in the United States (1) whose mortgage is held or serviced by Defendant Ocwen; (2) who received a telephone call; (3) on a cellular telephone number; (4) promoting Defendant Intersections' products or services; (5) who never consented to receive telemarketing calls promoting Defendant Intersections' products or services.

*Id.,* at \*3–4. The defendants alleged that No–Consent Class was fail-safe and, therefore, inherently flawed. *Id.* at \*5. Citing Seventh Circuit case law and the Sixth Circuit's decision in *Young,* the district court concluded that it was "not yet persuaded that the No–Consent Class qualifie[d] as a fail-safe class ." *Id.* at \*6. According to the court, it was not clear "that this class definition create[d] a situation where membership in the class [was] dependent upon the validity of a putative member's claim ." *Id.* "More importantly," the court concluded, "it [was] not a basis on which to strike Plaintiff's class allegations prior to the certification stage." *Id.* (citing *Messner v. Northshore Univ. HealthSystem,* 669 F.3d 802, 814 (7th Cir.2012) ("[the fail-safe problem] can and often should be solved by refining the class definition rather than by flatly denying class certification on that basis")).

b. Lindsay Transmission, LLC v. Office Depot, Inc.

 **\*7** In contrast, the district court in *Lindsay Transmission, LLC v. Office Depot, Inc.* concluded that a similar proposed class definition in a TCPA fax case would create a fail-safe class. No. 4:12–CV–221, 2013 WL 275568 (E.D.Mo. Jan.24, 2013). The *Lindsay* plaintiff purportedly received three unsolicited advertisements by fax from the defendant. Thereafter, he filed a putative class action on behalf of himself and all similarly-situated individuals. *Id.* at \* 1. Relying on the TCPA's prohibition against

the use of "any telephone facsimile machine, computer, or other device to send an unsolicited advertisement to a telephone facsimile machine," 47 U.S.C. § 227(b) (1)(C), the plaintiff sought to certify a nationwide class defined as:

> All persons who (1) on or after four years prior to the filing of this action, (2) were sent telephone facsimile messages of material advertising the commercial availability of any property, goods, or services by or on behalf of Defendant (3) with respect to whom Defendant cannot provide evidence of prior express permission or invitation for the sending of such faxes, (4) with whom Defendant does not have an established business relationship and (5) which did not display a proper opt out notice.

*Lindsay Transmission, LLC,* 2013 WL 275568, at *3.

The defendant filed a motion to strike the plaintiff's class allegations, arguing, *inter alia,* that the plaintiff's proposed class definition created an impermissible fail-safe class. *Id.* at *4. In response, the plaintiff asserted that the defendant's motion to strike was "premature." *Id.* The district court reviewed the Seventh Circuit's decision in *Messner* and the Sixth Circuit's decision in *Randleman,* concluding that "the proposed class includes only those persons to whom defendant sent faxes without prior consent and with whom defendant did not have an established business relationship." *Id.* Therefore, the court held that "the proposed class consist[ed] solely of persons who can establish that defendant violated the TCPA," and consequently, was a fail-safe class. *Id.*

c. Olney v. Job.com, Inc.

In *Olney v. Job.com, Inc.,* one of the defendants allegedly used an ATDS to make phone calls to the plaintiff's cell phone without the plaintiff's prior express consent. No. 1:12–CV–01724, 2013 WL 5476813, at * 1 (E.D.Cal. Sept.30, 2013). The plaintiff brought a putative class action against the defendants on behalf of himself and all other similarly-situated individuals. *Id.* The defendants subsequently filed a motion to deny class certification and strike class allegations, asserting, *inter alia,* that the plaintiff's proposed class was an impermissible fail-safe class. *Id.*

Initially, the plaintiff proposed the following class:

> All persons within the United States who received any telephone call from Defendant to said person's cellular telephone made through the use of any automated telephone dialing system or an artificial or prerecorded voice and such person had not previously consented to receiving such calls within the four years prior to the filing of this Complaint.

 *8 *Id.* at * 10. The district court agreed with the defendant that, as originally proposed, the plaintiff's class was a fail-safe class. *Id.* at *11. Recognizing that "the TCPA prohibits calls to cellular telephones using ATDSs unless prior express consent has been given," the district court found that "defining the class to include anyone who received such a call without prior express consent means that only those potential members who would prevail on this liability issue would be members of the class." *Id.* The district court continued its analysis, noting that the class could be redefined to avoid the fail-safe problem. *Olney,* 2013 WL 5476813, at * 11. In his response to the defendants' motion, the plaintiff offered an amended proposed class definition:

> All persons within the United States who received any telephone call/s from Defendant or its agent/s and/or employee/s to said person's cellular telephone made through the use of any automatic telephone dialing system within the four years prior to the filling of the Complaint.

*Id.* After reviewing this language, the court found that "[t]here is no longer any language in this class definition that could even arguably cause a 'failsafe' problem," and denied the defendants' motion to strike class allegations accordingly. *Id.*

3. The Plaintiff's Proposed Class Definitions Are Fail–Safe

Here, the Plaintiff seeks to represent a class:

of all persons within the United States who received a non-emergency telephone call from CVS to a cellular telephone through the use of an automatic telephone dialing system or an artificial or prerecorded voice and *who did not provide prior express consent for such calls,* at any time within the four years prior to the filing of the instant Complaint.

First Am. Compl. at ¶ 42 (emphasis added). The Plaintiff also seeks to represent two subclasses of individuals that fall within the class definition. The Plaintiff's first subclass includes:

[a]ll persons within the United States who received a non-emergency telephone call on or after October 16, 2013 from CVS to a cellular telephone through the use of an automatic telephone dialing system or an artificial or prerecorded voice and *who did not provide prior express written consent* for such calls.

*Id.* at ¶ 43 (emphasis added). The Plaintiff's second subclass includes:

all persons within the United States who received a non-emergency telephone call from CVS to a cellular telephone through the use of an automatic telephone dialing system or an artificial or prerecorded voice and *who had expressly revoked any consent* previously given to CVS for such calls, at any time within the four years prior to the filing of the instant Complaint.

*Id.* at ¶ 44 (emphasis added).

Each of the Plaintiff's proposed classes is defined to include only those individuals who did not expressly consent to the receipt of the defendant's phone calls made with the use of an ATDS.

**\*9** Because the TCPA prohibits calls to cellular telephones using ATDSs unless prior express consent has been given, defining the class to include anyone who received such a call without prior express consent means that only those potential members who would prevail on this liability issue would be members of the class.

*Olney,* 2013 WL 5476813, at *11. In other words, "the proposed class[es] consist[ ] solely of persons who can establish that defendant violated the TCPA." *Lindsay Transmission, LLC,* 2013 WL 275568, at *4.[3] If the Plaintiff successfully demonstrates that the Defendant made calls using an ATDS or an artificial or prerecorded voice to the class members' cell phones without the class members' prior express consent, then the class members win. *See* 47 U.S.C. § 227(b)(1)(A)(iii). However, if the Plaintiffs are unsuccessful in meeting their burden of proof, the class does not exist and the class is not bound by the judgment in favor of the Defendant. This is the definition of a prohibited fail-safe class. *See Randleman,* 646 F.3d at 352 (defining a fail-safe class as a class where "[e]ither the class members win, or by virtue of losing, they are not in the class, and, therefore, not bound by judgment").

Assuming that the Court finds his proposed classes to be fail-safe, the Plaintiff argues that the Court should permit him to amend his class definitions rather than striking them entirely. The Court agrees. "[D]istrict courts have broad discretion to modify class definitions." *Powers v. Hamilton Cnty. Pub. Defender Com'n,* 501 F.3d 592, 619 (6th Cir.2007) (citing *Schorsch v. Hewlett–Packard Co.,* 417 F.3d 748, 750 (7th Cir.2005); *In re Monumental Life Ins. Co.,* 365 F.3d 408, 414 (5th Cir.2004)). "Defining a class so as to avoid, on one hand, being overinclusive and, on the other hand, the fail-safe problem is more of an art than a science. Either problem can and often should be solved by refining the class definition rather than by flatly denying class certification." *Messner,* 669 F.3d at 825 (collecting cases). The Court will grant the Plaintiff 14 days to file an amended complaint accordingly.

## IV. Conclusion

The Court GRANTS the Defendant's Motion to Strike (doc. 23) and GRANTS the Plaintiff fourteen (14) days in which to file an Amended Complaint.

IT IS SO ORDERED.

## All Citations

Not Reported in F.Supp.3d, 2014 WL 1814076

Footnotes

1    Courts cite Rule 12(f), Rule 23(c)(1)(A), Rule 23(d)(1)(D) as authority for striking class allegations prior to discovery. *See Bearden v. Honeywell Intern., Inc.,* No. 3:09–01035, 2010 WL 1223936, at *9 (M.D.Tenn. Mar.24, 2010) (quoting *Hovsepian v. Apple, Inc.,* No. 08–5788, 2009 WL 5069144, at *2 (N.D.Cal. Dec.17, 2009)) ("Under Rules 23(c)(1)(A) and 23(d)(1)(D), as well as pursuant to Rule 12(f), this Court has authority to strike class allegations prior to discovery if the complaint demonstrates that a class action cannot be maintained"); 1 McLaughlin on Class Actions § 3:4 (10th ed.2013) (citing *Pilgrim v. Universal Health Card, LLC,* 660 F.3d 943, 949 (6th Cir.2011)) (same).

2    A second named plaintiff's claim was dismissed for failure to state a claim. *See Wolfkiel,* 2014 WL 866979, at *2.

3    The Plaintiff attempts to distinguish *Lindsay Transmission* from the facts of the present case. *See* Pl.'s Resp. in Opp. at 4–5. The Plaintiff's argument concerning *Lindsay Transmission* is more relevant to the issue of whether the proposed class definitions satisfy Rule 23's commonality and predominance requirements, an issue not presently before the Court.

---

**End of Document**                                              © 2026 Thomson Reuters. No claim to original U.S. Government Works.

2022 WL 4586407
Only the Westlaw citation is currently available.
United States District Court, S.D. New York.

Brian WATSON, et al., Plaintiffs,

v.

MANHATTAN LUXURY AUTOMOBILES, INC., Defendant.

20 Civ. 4572 (LGS)

|

Signed September 29, 2022

**Attorneys and Law Firms**

Elizabeth Easley Apostola, Daniel Zemel, Zemel Law LLC, Patterson, NJ, for Plaintiffs Brian Watson, Daniel Samarghitan.

Daniel Zemel, Zemel Law LLC, Patterson, NJ, for Plaintiffs Annmarie Greene, Jose Espinal, Lymell Jackson.

Jason Marc Myers, Thomas Arthur Leghorn, London Fischer LLP, New York, NY, Salvatore A. Giampiccolo, Stephanie Lopez, Stevens & Lee, Elmwood Park, NJ, for Defendant Manhattan Luxury Automobiles, Inc.

CDK Global, LLC, Pro Se.

**OPINION AND ORDER**

LORNA G. SCHOFIELD, District Judge:

**\*1** Plaintiffs Brian Watson, Danial Samarghitan, Annmarie Greene, Jose Espinal and Lymell Jackson bring this action against Defendant Manhattan Luxury Automobiles, Inc., alleging that Defendant's practice of sending unsolicited text messages to consumers violates the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.* ("TCPA") and regulations promulgated thereunder. Plaintiffs move to certify three classes pursuant to Federal Rule of Civil Procedure 23(b)(3) and to preclude testimony by Defendant's expert witnesses. Defendant moves to preclude testimony by Plaintiffs' expert witnesses. For the reasons stated below, Plaintiffs' motion for class certification is granted in part and denied in part; Plaintiffs' *Daubert* motion is granted in part and denied in part; and Defendant's *Daubert* motions are denied.

## I. BACKGROUND

### A. Factual Background

The facts below are taken from the parties' submissions in connection with the pending motions, and factual disputes are resolved as necessary for the disposition of the motions. *See Shahriar v. Smith & Wollensky Rest. Grp., Inc.*, 659 F.3d 234, 251 (2d Cir. 2011); *Clune v. Barry*, No. 16 Civ. 4441, 2019 WL 3369455, at \*2 (S.D.N.Y. July 26, 2019).

In January 2017, the car dealership Honda of Manhattan ("HOM") closed. HOM agreed with its "sister dealership," the Defendant in this case, that Defendant would offer service to HOM customers. On January 31, 2017, HOM sent its customers emails and text messages notifying them that Defendant could service their vehicles, and those communications contained an option to opt of future communications. Some HOM customers who had purchased or leased vehicles from HOM had signed contracts purportedly agreeing that HOM could contact them and share certain personal information with certain third

Case 1:26-cv-00659-KM    Document 27-1    Filed 06/24/26    Page 95 of 105

Watson v. Manhattan Luxury Automobiles, Inc., Not Reported in Fed. Supp. (2022)

parties. Defendant then sent text messages offering vehicle maintenance, service and inspections to HOM customers who did not affirmatively opt out of communications. Defendant used a platform called Zipwhip to send the text messages, and the parties dispute many details of how the Zipwhip platform worked. Many HOM customers received more than one message. After receiving messages, some named Plaintiffs went on to discuss and even purchase services, and others replied that they were not interested. None received a message after opting out.

### B. Proposed Classes

Plaintiffs seek to certify the "ATDS Class" consisting of all HOM customers who received a text message from Defendant to a non-business cell phone, sent using the Zipwhip platform, with certain content, within four years of the action being filed. Plaintiffs allege on behalf of themselves and the ATDS Class that Defendant violated 47 U.S.C. § 227(b), which prohibits certain uses of an Automatic Telephone Dialing System ("ATDS") and creates a private right of action.

Plaintiffs also seek to certify the National Do-Not-Call Registry Class ("NDNCR Class"), consisting of all members of the ATDS Class who received at least two such text messages in a 12-month period when their phone numbers had been registered on the National Do-Not-Call Registry ("NDNCR") for at least thirty-two days. Plaintiffs allege that 47 U.S.C. § 227(c)(3)(F), (5), and the regulations thereunder, 47 C.F.R. § 64.1200(c), prohibit such messages and provide a private right of action to anyone who receives more than one such message.

**\*2** Plaintiffs also seek to certify the Internal Do-Not-Call List Class ("IDNC Class"), consisting of all members of the ATDS Class who received messages while Defendant failed to institute procedures to maintain a list of persons who requested not to receive telemarketing calls. Plaintiffs allege that 47 U.S.C. § 227(c)(5) and 47 C.F.R. § 64.1200(d) prohibit such messages and provide a private right of action.

## II. DISCUSSION

### A. *Daubert* Motions

Plaintiffs and Defendant have each submitted expert reports in support of their respective positions on class certification and on the merits. Plaintiffs' expert Anya Verkhovskaya opines on a methodology for identifying class members. Plaintiffs' expert Randall Snyder opines on technical characteristics of the Zipwhip platform that are relevant to whether it is an ATDS. Defendant's expert Ken Sponsler purports to rebut both. Each party has filed a *Daubert* motion to preclude the others' witness(es). For the reasons below, Plaintiffs' *Daubert* motion is granted in part and denied in part, and Defendant's *Daubert* motions are denied.

Federal Rule of Evidence 702, which governs admissibility of expert testimony, provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if [ ] (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

District courts play a " 'gatekeeping' function" under Rule 702 and are "charged with 'the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand.' " *In re Mirena IUS Levonorgestrel-Related Prods. Liab. Litig. (No. II)*, 982 F.3d 113, 122-23 (2d Cir. 2020) (quoting *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 597 (1993)). A Rule 702 inquiry focuses on three issues: (1) whether a witness is qualified as an expert, (2) whether the witness's "opinion is based upon reliable data and methodology" and (3) whether "the expert's testimony (as to a particular matter) will assist the trier of fact." *Nimely v. City of New York*, 414 F.3d 381, 397 (2d Cir. 2005) (cleaned up); *see also In re Namenda Indirect Purchaser Antitrust Litig.*, 338 F.R.D. 527, 543 (S.D.N.Y. 2021). "[A] slight modification of an otherwise

reliable method will not render an expert's opinion per se inadmissible." *United States v. Jones*, 965 F.3d 149, 160 (2d Cir. 2020) (internal quotation marks omitted). The party proffering the expert bears the burden of establishing Rule 702's requirements by a preponderance of the evidence. *Id.* at 161.

The *Daubert* and Rule 702 concepts of "gatekeeping" and admissibility are ill suited for a class certification motion, which is determined by the Court. There is no admission or exclusion of testimony before a jury and no "gate" requiring threshold reliability determinations. In sum, every objection goes to the weight of the testimony. The Supreme Court has offered "limited dicta suggesting that a *Daubert* analysis may be required at least in some circumstances." *In re U.S. Foodservice Inc. Pricing Litig.*, 729 F.3d 108, 129 (2d Cir. 2013); *accord In re Aluminum Warehousing Antitrust Litig.*, 336 F.R.D 5, 28-29 (S.D.N.Y. 2020). Because of these dicta, because Rule 702 provides a useful framework for evaluating expert testimony and because the parties have filed *Daubert* motions, this Opinion briefly addresses those motions separately before turning to Plaintiffs' class certification motion.

### 1. Defendant's Motion to Preclude Snyder

 **\*3**  Defendant's motion to preclude Snyder is irrelevant to class certification because Snyder opines solely on whether the technical features of Defendant's Zipwhip system are consistent with the statutory definition of an ATDS. Whatever the answer may be to that merits question, it is a common question with a common answer for purposes of class certification. *See Johnson v. Nextel Commc'ns Inc.*, 780 F.3d 128, 137 (2d Cir. 2015); *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). However, because the parties intend to proceed with summary judgment motions following the resolution of class certification, Defendant's motion is addressed below.

First, Defendant's request to preclude Snyder's January 2021 report is denied as moot because Plaintiffs are relying exclusively on Snyder's June 2021 report.

Second, Defendant argues Snyder's June 2021 report is unreliable and may confuse a jury because Snyder analyzed the wrong version of the Zipwhip system. Contrary to Defendant's characterization, Snyder testified that he used only documentation applicable to the correct version when that was possible to discern, and that he reviewed and accounted for testimony by Zipwhip's CTO and Co-Founder, James Lapic in doing so. The fact that Defendant only read technical documentation and did not test the system, and that Defendant did not agree in every respect with Lapic's conclusions goes to weight, not admissibility.

Defendant's remaining arguments are similarly unavailing. Snyder's testimony that he was providing "lay" opinions meant only that his were not *legal* opinions on the meaning of the TCPA. Presumably, if Snyder had offered legal opinions, Defendant would move to preclude on that ground. Defendant's argument that courts in several other cases have precluded or criticized Snyder's testimony, without attempting to analogize to this case, is unpersuasive. Even if all seven of the cases Defendant cites were analogous in some way, Snyder's CV of hundreds of prior expert engagements is over 100 pages long. The weight of the evidence favors Plaintiffs.

In its reply, Defendant points to particular paragraphs and lines in Snyder's testimony and report and argues that they are not supported by the evidence on which Snyder relied. Because Snyder's report is not excludable in full, and none of the disputed points is relevant to the present motion, it would be premature to resolve those merits issues at this stage. Defendant may renew these arguments at summary judgment and/or in a motion *in limine*. *See Glasser v. Hilton Grand Vacations Co.*, 341 F. Supp. 3d 1305, 1312-13 (M.D. Fla. 2018) (addressing Snyder's opinions at summary judgment). As with Sponsler's report, discussed below, the Court will disregard any of Snyder's opinions that offer mere *ipse dixit* or legal conclusions on whether the Zipwhip system meets the legal definition of an ATDS. *See Marshall v. CBE Grp., Inc.*, No. 16 Civ. 2406, 2018 WL 1567852, at \*3 n.2 (D. Nev. Mar. 30, 2018) (disregarding similar opinions of Snyder's).

**2. Defendant's Motion to Preclude Verkhovskaya**

Defendant's motion to preclude Verkhovskaya is denied. Defendant mounts four independent arguments for preclusion. One is moot and the other three are unpersuasive.

First, Defendant moves to preclude Verkhovskaya's identification of members of the IDNC Class as unreliable. This motion is denied as moot because, as discussed below, the IDNC claims are dismissed, and the motion to certify the IDNC Class is denied.

Second, Defendant argues that Verkhovskaya's methodology to identify class members is unreliable because it has been tweaked several times, often in response to Plaintiffs' experts pointing out errors. Without resolving the parties' dispute over who is to blame for the number of reports, the fact that Verkhovskaya refined her methodology and fixed supposed problems suggests it is now more rather than less reliable. Defendant points to individual phone numbers or class members who may have been misclassified at some point, but that does not undermine the methodology. "[P]laintiffs need not precisely enumerate the class members." *Basso v. N.Y. Univ.*, 363 F. Supp. 3d 413, 421 (S.D.N.Y. 2019) (citing *Robidoux v. Celani*, 987 F.2d 931, 935 (2d Cir. 1993)); *see In re Petrobras Sec.*, 862 F.3d 250, 266 n.16 (2d Cir. 2017) ("Of course, identifiable does not mean identified; ascertainability does not require a complete list of class members at the certification stage." (cleaned up)).

 **\*4**  Third, Defendant argues that Verkhovskaya cannot distinguish between residential and business phone numbers, and that LexisNexis does not provide sufficiently accurate data to do so. This argument was persuasively rejected in the only case cited by Defendant. *See Chinitz v. Intero Real Est. Servs.*, No. 18 Civ. 5623, 2020 WL 7391299, at *6 (N.D. Cal. July 22, 2020). Verkhovskaya's approach of assuming that most unpublished numbers are residential is sound for the reason Verkhovskaya gives: Most businesses publish their phone numbers because they want to bring in business, making them more likely to be found in commercial databases than non-business numbers. That this step in Verkhovskaya's methodology may be accomplished in part through manual review and is not automated is irrelevant.

Fourth, Defendant's argument that Verkhovskaya's "reverse lookup" or "reverse append" methodology is unreliable is unpersuasive. The progression of Verkhovskaya's reports shows that the need to reverse-append data has diminished as more information on the class has become available. Verkhovskaya's methodology also uses more sources than the process disapproved in *Hunter v. Time Warner Cable Inc.*, No. 15 Civ. 6445, 2019 WL 3812063, at *10-12 (S.D.N.Y. Aug. 14, 2019), including backup sources if LexisNexis data is lacking. This methodology has withstood *Daubert* motions in other cases more analogous than *Hunter*. *See, e.g.*, *Krakauer v. Dish Network, L.L.C.*, No. 14 Civ. 333, 2015 WL 5227693, at *11 (M.D.N.C. Sept. 8, 2015).

**3. Plaintiffs' Motion to Preclude Sponsler**

Plaintiffs' motion to preclude Sponsler's opinions is granted in part and denied in part. Plaintiffs' motion to preclude Sponsler's first opinion, on whether the Zipwhip platform is an ATDS, is granted. Assuming, without deciding, that Sponsler is qualified to opine on this issue, his opinions are not "based upon reliable data and methodology" nor will they "assist the trier of fact." *Nimely*, 414 F.3d at 397. Sponsler lists several documents that he purportedly reviewed, but there is no indication as to most that they form the basis for his ATDS opinions. Instead, most of this portion of Sponsler's report restates Lapic's characterization of the Zipwhip platform, which will not help the jury more than Lapic's testimony alone. Sponsler buttresses Lapic's testimony by describing one experience using Zipwhip. That is insufficient to show what the platform *cannot* do, and this testimony could mislead the jury. Other portions of Sponsler's report are either irrelevant history or unsupported assertions. Still other passages provide basic facts that do not require expert testimony -- e.g., that a smartphone user can input contacts into his or her phone, "select the contacts that will receive the text, and then manually send texts" -- to support policy arguments about the proper interpretation of the TCPA. Sponsler's rebuttal report is an extended legal argument that Plaintiffs' expert, Snyder,

Case 1:26-cv-00659-KM    Document 27-1    Filed 06/24/26    Page 98 of 105

Watson v. Manhattan Luxury Automobiles, Inc., Not Reported in Fed. Supp. (2022)

misunderstands the Supreme Court's decision in *Facebook Inc. v. Duguid.* An expert report is not the appropriate vehicle for legal argument. Sponsler's "Opinion One" is precluded in full.

Sponsler's second opinion is also precluded because it "will not assist the trier of fact." *Nimely*, 414 F.3d at 397. Sponsler opines that there is no way to determine who "received" a text message, based on the common-sense proposition that no database can tell you whether a person actually read a given text message. The opinion is improper because it seems to assert a legal proposition that a message must be "read" to be "received," and because it states an obvious factual proposition.

Plaintiffs' motion is denied to the extent Plaintiffs seek to preclude Sponsler's third opinion, which is offered to rebut Verkhovskaya's opinions. Contrary to Plaintiffs' cursory argument about Sponsler's qualifications, his extensive experience in the telemarketing industry, and specifically with the NDNCR, qualifies him to opine on the many difficulties of matching cell phone numbers to individual human beings, and on the prevalence of business phone numbers on the NDNCR. Plaintiffs' remaining arguments about whether Sponsler's opinions effectively rebut Verkhovskaya's go to their weight, not admissibility.

### B. Standing

**\*5** Neither Article III standing nor "statutory standing" is an impediment to certifying the ATDS Class and the NDNCR Class. Each of the named Plaintiffs has standing to seek relief for Defendant's alleged use of an ATDS, and Plaintiff Espinal has standing to seek relief for Defendant's alleged violation of the NDNCR regulations. *See Kachalsky v. County of Westchester*, 701 F.3d 81, 84 n.2 (2d Cir. 2012) (holding that only one named plaintiff need have standing with respect to each claim). Each of the ATDS and NDNCR classes is "defined in such a way that anyone within it would have standing." *Denney v. Deutsche Bank AG*, 443 F.3d 253, 264 (2d Cir. 2006). However, none of the named Plaintiffs has Article III standing to seek relief for Defendant's alleged violation of the IDNC regulations. The IDNC claims are dismissed for lack of standing, and the motion to certify the IDNC Class is denied as moot.

"Article III standing has three elements: (i) 'the plaintiff must have suffered an injury in fact' that is 'concrete and particularized' as well as 'actual or imminent'; (ii) 'there must be a causal connection between the injury and the conduct complaint of'; and (iii) 'it must be likely ... that the injury will be redressed by a favorable judicial decision. *Fund Liquidation Holdings LLC v. Bank of Am. Corp.*, 991 F.3d 370, 381 (2d Cir. 2021) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992)), *cert. denied*, 142 S. Ct. 757 (2022). Standing must be shown for each claim. *Town of Chester v. Laroe Ests., Inc.*, 137 S. Ct. 1645, 1650 (2017).

What has, in the past, "been called 'statutory standing' in fact is not a standing issue, but simply a question of whether the particular plaintiff 'has a cause of action under the statute.' " *Irvin v. Harris*, 944 F.3d 63, 68 n.4 (2d Cir. 2019) (quoting *Am. Psych. Ass'n v. Anthem Health Plans, Inc.*, 821 F.3d 352, 359 (2d Cir. 2016), in turn quoting *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 128 (2014)). Because Defendant has framed some of its arguments about whether Plaintiffs have statutory causes of action under the old heading of "statutory standing," those arguments are addressed in this section.

### 1. The ATDS Class

As to the ATDS Class, Plaintiffs' receipt of allegedly unwanted text messages is itself injury-in-fact sufficient to confer Article III standing. *See Melito v. Experian Mktg. Sols., Inc.*, 923 F.3d 85, 93-95 (2d Cir. 2019). The "nuisance and privacy invasion" inherent in receiving such messages were "the harms Congress identified when enacting the TCPA" and "the very injury [the TCPA] is intended to prevent." *Id.* at 93. Because Plaintiffs allegedly received unwanted text messages, "they 'need not allege any *additional* harm beyond the one Congress has identified.' " *Id.* (quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330, 342 (2016)). Defendant's argument that Plaintiffs lack standing because Defendant's Zipwhip platform is not in fact an ATDS is a merits argument, not a standing challenge. *See id.* at 94 n.6 (holding that defendant's argument about "whether the text messages in question were actually sent by an ATDS" is a merits argument, not standing, and declining to address it at class certification).

Case 1:26-cv-00659-KM    Document 27-1    Filed 06/24/26    Page 99 of 105

Watson v. Manhattan Luxury Automobiles, Inc., Not Reported in Fed. Supp. (2022)

Defendant also argues that the classes cannot be certified because some class members may have consented or failed to object to receiving messages and thus lack standing. *See Denney*, 443 F.3d 253 at 264. As discussed below, Plaintiffs dispute whether the forms they signed or their failure to "opt out" constitutes "prior express consent" under the TCPA. *See* 47 U.S.C. § 227(b)(1)(B) (prohibiting certain communications "without the prior express consent of the" receiving party). Defendant's argument is, "in other words, plaintiffs were not injured because their claims are meritless." *Dubuisson v. Stonebridge Life Ins. Co.*, 887 F.3d 567, 574 (2d Cir. 2018); *see Melito*, 923 F.3d at 94 n.6 (declining to address defendant's argument about "whether absent class members ineffectively revoked consent" because, though "though framed as [a] challenge[ ] to the district court's subject-matter jurisdiction, [it] actually attack[s] the merits of Plaintiffs' claims"). Defendant's argument fails because a court may not "decide the merits of the claim en route to determining its justiciability." *Dubuisson*, 887 F.3d at 574 (holding that a court must "assum[e] [plaintiffs] would be successful on the merits ... for purposes of [the] threshold jurisdictional analysis"); *see Denney*, 443 F.3d at 264 (noting that "injury-in-fact" for standing purposes "need not be capable of sustaining a valid cause of action under applicable ... law").

**\*6** Plaintiffs have met their "burden by alleging harm in the form of" text messages received from an allegedly illegal ATDS. *Dubuisson*, 887 F.3d at 575. "[T]hey have standing to pursue their ... claims irrespective of the fact that defendants propose a reading of a statute that would, if accepted, undermine the merits of plaintiffs' claims." *Id.* Even if lack of consent were necessary to have suffered an injury in fact, standing is not a barrier to class certification because Plaintiffs allege that they and class members did not consent, and the merits of Defendant's class-wide consent arguments can be resolved on a collective basis at a later stage of the litigation. *See Melito*, 923 F.3d at 94 n.6; *Denney*, 443 F.3d at 264-65; *Dubuisson*, 887 F.3d at 574-75.[1]

## 2. The NDNCR Class

Neither Article III nor "statutory" standing is a barrier to certification of the NDNCR class. Plaintiff Espinal, the only proffered representative plaintiff for this class, received unwanted text messages and therefore has Article III standing. *See Melito*, 923 F.3d at 93-95. Espinal's standing is sufficient to meet the jurisdictional requirement of Article III standing. *See Kachalsky*, 701 F.3d at 84 n.2. Even assuming consent is relevant to an NDNCR claim, which Plaintiffs dispute, consent does not defeat standing for the reasons discussed above.

Defendant argues that Plaintiffs lack "statutory standing" because one must have received more than one unwanted text message in the relevant period to bring suit under the NDNCR regulation. *See* 47 U.S.C. § 227(c)(5). This argument is unavailing because Plaintiff Espinal, the only named plaintiff offered to represent the NDNCR Class, undisputedly received more than one text message in the relevant time period. The NDNCR Class is defined to include only similarly situated persons who also received more than one message in the relevant period and therefore have a cause of action under the statute.

Defendant's other arguments that Espinal lacks a cause of action are similarly unpersuasive. That Espinal's name was not on the phone account or was not "assigned" the number is irrelevant. Espinal used the phone and received the unwanted messages. The statute provides a cause of action to "[a] person who has received" unwanted communications. *Id.* Defendant points out that a different cause of action under the TCPA arises when a party receives a phone call that they pay for, § 227(b)(1)(A)(iii), but that is irrelevant to standing, whether constitutional or "statutory," to assert an NDNCR claim. *See TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2208 (2021) ("[S]tanding is not dispensed in gross; rather, plaintiffs must demonstrate standing for each claim that they press...."). Defendant's argument that "Espinal never objected" to receiving automated texts is meritless, since Espinal testified that he registered with the NDNCR. Defendant asserts that Espinal does not have "documentation that he registered with the NDNCR," but Espinal's sworn testimony is sufficient evidence of his registration at this stage.

## 3. The Putative IDNC Class

Turning to the IDNC class, Plaintiffs have failed to show that any injury they suffered is traceable to a violation of the IDNC rules. The TCPA and its regulations prohibit solicitations unless the "entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that ... entity." 47 C.F.R. § 64.1200(d). Defendant asserts, and Plaintiffs do not dispute, that no Plaintiff ever requested not to receive messages "made by or on behalf of" Defendant prior to receiving a message. Thus, even if Defendant had complied perfectly with the IDNC provision of the TCPA, Plaintiffs still would have received those messages. Plaintiffs' injuries are thus not traceable to that violation, and Plaintiffs lack standing to bring this claim. *See Cordoba v. DIRECTV, LLC*, 942 F.3d 1259, 1271-72 (11th Cir. 2019).

**\*7** Plaintiffs' request that their IDNC claims be remanded to state court and not dismissed is denied because the Court lacks statutory authority to remand. "An ordinary reading of" 28 U.S.C. § 1447(c)[2] "indicates that the statute refers to an instance in which a federal court 'lacks subject matter jurisdiction' over a 'case,' and not simply over one claim within a case." *Wis. Dep't of Corr. v. Schacht*, 524 U.S. 381, 392 (1998). Section 1447(c) is not most naturally read to authorize severance and remand of individual claims, particularly in light of the specific grant of authority in § 1441(c) to "sever" unremovable claims and "remand the severed claims" at the time of removal. *See City of Almaty v. Ablyazov*, No. 15 Civ. 5345, 2021 WL 1180058, at \*6 (S.D.N.Y. Mar. 29, 2021). The IDNC claims are dismissed for lack of standing, and the motion to certify the IDNC Class is denied as moot. Because the IDNC claims fail for lack of Article III standing, it is unnecessary to consider Defendant's statutory standing arguments.

#### C. Class Certification

Federal Rule of Civil Procedure 23(a) provides that plaintiffs may sue on behalf of a class where:

(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Where class certification is sought pursuant to Rule 23(b)(3), a plaintiff must also show (1) "that the questions of law or fact common to class members predominate over any questions affecting only individual members," and (2) "that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). The Second Circuit recognizes " 'an implied requirement of ascertainability in Rule 23,' which demands that a class be 'sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member.' " *Petrobras*, 862 F.3d at 260 (quoting *Brecher v. Republic of Argentina*, 806 F.3d 22, 24 (2d Cir. 2015)); *accord Basso*, 363 F. Supp. 3d at 420.

Courts give Rule 23 a "liberal rather than restrictive construction, and courts are to adopt a standard of flexibility." *Marisol A. v. Giuliani*, 126 F.3d 372, 377 (2d Cir. 1997) (citation omitted); *accord B & R Supermarket, Inc. v. Mastercard Int'l Inc.*, No. 17 Civ. 2738, 2021 WL 234550, at \*9 (E.D.N.Y. Jan. 19, 2021). Plaintiffs must establish by a preponderance of the evidence that Rule 23's requirements are met. *In re Vivendi, S.A. Sec. Litig.*, 838 F.3d 223, 264 (2d Cir. 2016); *accord In re Perrigo Co. Sec. Litig.*, 493 F. Supp. 3d 291, 294 (S.D.N.Y. 2020).

Plaintiffs' motion to certify the IDNC Class is denied for lack of standing as discussed above, and Plaintiffs' motion to certify the ATDS and NDNCR Classes is granted for the reasons discussed below.

#### 1. Class Redefinition

Plaintiffs' decision to seek certification of a different class than proposed in the Amended Complaint is not a reason to deny certification. The Court's authority to reform the class and create subclasses on its own motion, or to permit Plaintiffs to redefine their own class(es), is well-settled. *See, e.g.*, *Royal Park Invs. SA/NV v. Bank of N.Y. Mellon*, No. 14 Civ. 6502, 2017 WL 3835339, at \*5 (S.D.N.Y. Aug. 30, 2017).

Revising the class definition after *Daubert* motions were briefed has not caused any prejudice to Defendant, since the reliability of Plaintiffs' experts' opinions is independent of the merits of their class certification arguments. This is particularly true here where many of the opinions at issue pertain to the merits and are irrelevant to class certification.

### 2. Ascertainability

**\*8**  Defendant frames its argument about identification of class members in terms of ascertainability, but it does not dispute that the class is defined "by objective criteria." *Petrobras*, 862 F.3d at 264 (internal quotation marks omitted). Whether a class member received a text message containing certain content during a particular time period is an objective inquiry. To the extent Defendant argues that the members of the putative classes have not already been ascertained, that is not required at the class certification stage. At this stage, class members must be identifiable but need not have been identified. *Id.* at 266 n.16. To the extent Defendant argues that objective determinations of class membership will require individualized inquiries, as opposed to Verkhovskaya's class-wide approach, that argument goes to predominance, as discussed below. *See id.* at 268.

### 3. Predominance

As discussed above, Defendant argues that Verkhovskaya's purportedly common, class-wide method of identifying class members fails. Defendant also points to two other purportedly individual issues that predominate over common issues: consent and the identity of the person who actually registered their phone number with the NDNCR. As explained below, these arguments are unpersuasive. The many common issues -- including whether the Zipwhip system is an ATDS, whether messages of the form that define the class are solicitations and whether class members' common acts constitute effective across-the-board consent -- predominate over what are speculative individual issues.

### a. Class Member Identification

Defendant's argument that individual inquiries will be required to identify class members is unsuccessful for the same reason as Defendant's *Daubert* motion to preclude Verkhovskaya. Courts have repeatedly approved the use of LexisNexis's phone number databases for reliably identifying business numbers, which are especially likely to be associated publicly with their owners. *See Chinitz*, 2020 WL 7391299, at \*14 (collecting cases). Once business phone numbers are weeded out, it is common sense to label the remaining numbers "most likely residential." As discussed above, it is doubtful whether the "reverse append" process remains relevant at all. The full class lists produced by Defendant and a third party obviate the need to reverse-append class members' names to numbers. To the extent Verkhovskaya's methodology will still require some reverse-appending, it is more robust than the LexisNexis-only methodology criticized by other courts. *Cf. Hunter*, 2019 WL 3812063, at \*10-12.

### b. Consent

Defendant argues that individualized inquiries will be required to determine whether each class member consented to receive text messages. The parties agree that consent is a defense to an alleged violation of the TCPA's ATDS provision. That provision prohibits certain calls made using an ATDS only "without the prior express consent of the called party." 47 U.S.C. § 227(b)(1)(B). Plaintiffs dispute whether consent is also a defense to an NDNCR violation, which contains no similar language. Even assuming consent is a defense to liability under any of Plaintiffs' surviving claims, it does not preclude a finding of predominance. Defendant makes two potentially viable consent arguments. Neither requires individualized inquiries, and both can be resolved with class-wide evidence.

Case 1:26-cv-00659-KM    Document 27-1    Filed 06/24/26    Page 102 of 105

Watson v. Manhattan Luxury Automobiles, Inc., Not Reported in Fed. Supp. (2022)

First, Defendant argues that certain class members signed two forms by which they purportedly consented to receive texts: a contact authorization form and a privacy notice and acknowledgment. Those forms were signed by every person who purchased or leased a vehicle from HOM, including named Plaintiffs Watson, Espinal, Samarghitan and Greene. Because every class member in that category signed the same forms, the legal issue of whether those signatures support a consent defense and whether that consent transferred to Defendant can be adjudicated with common proof.

**\*9** Second, Defendant argues that even class members who did not sign those forms, such as Plaintiff Jackson, had the opportunity to opt out in response to a text or email. When HOM closed, it texted and emailed its customers, including those who did not purchase or lease vehicles from HOM but only received service, to let them know that Defendant could still service their vehicles. Those texts and emails offered an opportunity to opt out. Defendant asserts that it then sent further messages only to those customers who did not opt out. The legal issues of whether failure to opt out constitutes consent again can be litigated on a common basis because every class member received the same opportunity to opt out.

Plaintiffs suggest creating two sub-classes within the ATDS Class according to the type of purported consent given. Plaintiffs do not suggest the same approach for the NDNCR Class because Plaintiffs argue that consent is not a defense to an NDNCR claim. The issue of subclasses need not be resolved now. Whether applied to one or both classes, adjudicating two class-wide consent defenses will be manageable.

Defendant suggests two other forms of consent that lack legal merit. First, Defendant suggests that some customers have a "preexisting business relationship" with HOM. Defendant has not offered any examples or suggested what kind of relationship a customer might have with her car dealership that would constitute a defense. Second, Defendant suggests that a class member might have consented merely by providing his phone number to HOM. Even if consent were implied by providing one's phone number (which seems unlikely), that theory would be superfluous here. If one of Defendant's theories above involving more explicit consent has merit, Defendant has established consent as to that group of class members. If those more explicit consent theories lack merit, then merely sharing one's number necessarily does not suffice. In any case, the Court will not need to consider, for any class member, whether disclosing one's phone number alone constitutes consent.

### c. NDNCR Registration

Whether each class member registered their number on the NDNCR is irrelevant, so that issue cannot predominate over common issues. Defendant suggests that a class member might have inherited a phone number that is registered on the NDNCR by a prior user of that number. That would not affect that class member's entitlement to relief. The NDNCR regulation provides that, once a phone number is registered, it remains protected until it is affirmatively removed from the registry. Several other courts have found "no reason that the private right of action should be limited only to those who can list their numbers on the registry." *Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643, 657 (4th Cir. 2019); *see Chinitz*, 2020 WL 7391299, at \*14 ("[Defendant] has provided no basis for its argument that the subsequent call to a number listed on the NDNCR must be to the person who registered the number on the NDNCR.").

Defendant claims that only a person who registered his or her number on the NDNCR can assert a claim under relevant TCPA regulations, and a person whose number was registered by someone else cannot. In support of its reading, Defendant relies on the language of the regulation prohibiting solicitations to a person "who has registered his or her telephone number on the" NDNCR. 47 C.F.R. § 64.1200(c)(2). Defendant's reading does not account for the language that appears immediately after, which provides that "[s]uch do-not-call registrations must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator." *Id.*; *see Williams v. PillPack LLC*, No. C19-5282, 2021 WL 535215, at \*8 (W.D. Wash. Feb. 12, 2021), *class decertified on other grounds*, 2021 WL 5113467. That provision anticipates the issue Defendant raises, that as phone numbers change hands, the NDNCR may not always perfectly reflect which consumers requested to be included. To resolve the potential ambiguity about who is protected from unwanted calls, the regulation provides that numbers remain protected until they are removed, regardless of whether they "should" still be on the

Case 1:26-cv-00659-KM   Document 27-1   Filed 06/24/26   Page 103 of 105

Watson v. Manhattan Luxury Automobiles, Inc., Not Reported in Fed. Supp. (2022)

list. The regulation lists two events that result in a phone number no longer being protected – cancellation by the consumer and removal by the administrator -- and the reassignment of a number is not such an enumerated event.

### 4. Fail-safe Class

**\*10** "A fail-safe class requires a court to decide the merits of individual class members' claims to determine class membership." *Nypl v. JP Morgan Chase & Co.*, No. 15 Civ. 9300, 2022 WL 819771, at \*9 (S.D.N.Y. Mar. 18, 2022). Fail-safe classes are "defined in terms of a legal injury" and "beg[ ] the very legal question at issue in the case." *Lawrence v. NYC Med. Prac., P.C.*, No. 18 Civ. 8649, 2021 WL 2026229, at \*6 (S.D.N.Y. May 20, 2021) (cleaned up). Courts decline to certify fail-safe classes because they "are unfair to defendants, prevent an adverse judgment being entered against plaintiffs, and are unmanageable." *Id.* (cleaned up).

The ATDS Class is not a fail-safe class. The ATDS Class includes customers who received "any text messages from" Defendant "using the Zipwhip texting platform" with certain content during a specified period. None of the key liability issues are baked into that class definition, such as whether the Zipwhip platform is an ATDS, whether the messages at issue constituted solicitations or whether class members' conduct constituted consent. Class membership can be determined before any of those questions are adjudicated. If Defendant wins on any or all of those questions, all class members will be bound to that adverse judgment. Defendant's remaining "fail-safe" arguments are simply merits arguments that are premature.

### 5. Commonality and Typicality

Typicality "is satisfied when each class member's claim arises from the same course of events and each class member makes similar legal arguments to prove the defendant's liability." *In re Drexel Burnham Lambert Grp., Inc.*, 960 F.2d 285, 291 (2d Cir. 1992); *accord Dixon v. Bemis*, Nos. 19 Civ. 3356, 19 Civ. 3412, 2020 WL 7212082, at \*3 (S.D.N.Y. Mar. 10, 2020). In order to be typical, however, "the lead plaintiff's claims need not be identical to the claims of the class...." *Dixon*, 2020 WL 7212082, at \*3 (cleaned up). Defendant's argument that the named Plaintiffs may be subject to unique Article III standing and consent defenses is unpersuasive because, as discussed above, Defendant asserts those defenses against all ATDS Class members on identical grounds. Defendant's argument that Espinal's claims are atypical of the NDNCR Class because he is only the user and not the accountholder for his phone also is unsuccessful. The alleged injury that Espinal and every other class member suffered is *receiving* text messages, not paying for them. *See Melito*, 923 F.3d at 93-95. Defendant has not asserted any meritorious defense based on Espinal's supposed atypicality, so any differences between him and other class members are immaterial.

The commonality requirement is satisfied if questions "capable of classwide resolution" will "resolve an issue that is central to the validity of each one of the claims in one stroke." *Johnson*, 780 F.3d at 137 (quoting *Wal-Mart*, 564 U.S. at 350). As discussed above, common issues include whether Defendant sent solicitations and whether class members provided across-the-board consent. Those issues are central enough to predominate over individual issues, so the commonality requirement necessarily is satisfied as well. *See Johnson*, 780 F.3d at 138 ("Rule 23(b)(3)'s predominance requirement is 'more demanding than Rule 23(a).' ").

### 6. Adequacy & Class Counsel

Defendant's arguments that the Zemel firm cannot adequately represent the class are unpersuasive. Defendant fails to explain why a "conflict" exists because the Zemel firm solicited Plaintiffs or why counsel's and Plaintiffs' interests may not be aligned in this litigation. Especially if Defendant is correct that this action is largely lawyer-driven, then it appears that Plaintiffs' counsel have done extensive work "in identifying or investigating potential claims in the action." Fed. R. Civ. P. 23(g)(1)(A)(i).

**\*11** Plaintiffs' counsel have been appointed as class counsel many times before. They have extensive experience representing consumers and deep, specialized knowledge of the law in TCPA cases. *See* Fed. R. Civ. P. 23(g)(1)(A)(ii), (iii). That counsel's extensive TCPA experience and extensive class action experience have not yet overlapped does not diminish their competence. Nor does the fact that Plaintiffs' counsel have yet to be appointed class counsel in a case in New York. Defendant has given no reason to question counsel's sworn declarations that they will continue to commit the resources required to prosecute this case. *See* Fed. R. Civ. P. 23(g)(1)(A)(iv).

Plaintiffs' motion to appoint class counsel is granted, and Plaintiffs' counsel from Zemel Law LLC are appointed to serve as class counsel.

### 7. Superiority

Defendant argues that "[t]he superiority requirement is not met here for the same reasons that Plaintiffs cannot show predominance or commonality." That argument is rejected for the same reasons Defendant's predominance and commonality arguments are rejected above. "Courts routinely hold that a class action is superior where," as here, "potential class members are aggrieved by the same policies and the damages suffered are small relative to the expense and burden of individual litigation." *Clark v. City of New York*, No. 18 Civ. 2334, 2021 WL 603046, at \*6 (S.D.N.Y. Feb. 16, 2021) (cleaned up). A class action is "superior to other available methods for fairly and efficiently adjudicating" this controversy as well. Fed. R. Civ. P. 23(b)(3).

### III. Conclusion

For the foregoing reasons, Plaintiffs' motion for class certification is GRANTED in part and DENIED in part. Plaintiffs' motion is GRANTED as to the ATDS Class and the NDNCR Class, and Plaintiffs' motion is DENIED as to the IDNC Class. The IDNC claims in the Amended Complaint are DISMISSED for lack of Article III standing. Plaintiffs' motion to appoint the Zemel Law Firm as class counsel is GRANTED. It is hereby ORDERED that

(1) Plaintiffs are appointed class representatives to sue on behalf of the ATDS Class of all HOM customers within the United States that were sent any text messages from Defendant, using the Zipwhip texting platform, stating "Can I text you regarding maintenance of your Honda vehicle" or a similar variant thereof, to nonbusiness wireless telephone numbers, within four years of the filing of this action.

(2) Plaintiff Espinal is appointed the class representative to sue on behalf of the NDNCR Class of all HOM customers within the United States that were sent two or more text messages from Defendant within a 12 month period, using the Zipwhip texting platform, stating "Can I text you regarding maintenance of your Honda vehicle" or a similar variant thereof, to non-business wireless telephone numbers, whose telephone numbers were registered on the NDNCR more than thirty-two days before the first message was sent, within four years of the filing of this action.

(3) Zemel Law LLC is appointed class counsel for both classes.

(4) The parties shall confer as to Notice and any proposed Class Action Notice Administration form, and Plaintiffs shall submit a proposed form of Class Notification to the Court for review and approval within twenty-one days of this Order.

Plaintiffs' motion to preclude Sponsler's first and third opinions is GRANTED to the extent stated above and otherwise DENIED. Defendant's motion to preclude Verkhovskaya's opinion is DENIED, and Defendant's motion to preclude Snyder's opinion is DENIED without prejudice to renewing arguments for precluding or disregarding specific opinions at later stages of the case.

**\*12** Defendant's motion to strike certain statements from Plaintiffs' letter at Docket Number 177 and Plaintiffs' motion to strike certain of Defendant's exhibits are both DENIED as moot. This Opinion does not rely upon the materials that are the subject of these motions.

The Clerk of Court is respectfully directed to close the motions at Docket Number 139, 147, 164 and 186.

**All Citations**

Not Reported in Fed. Supp., 2022 WL 4586407

Footnotes

1       Defendant's other standing argument -- that class members might have received messages to a business phone number -- is incorrect. Each class expressly excludes business numbers. Apart from its arguments about Article III standing, Defendant does not separately argue that Plaintiffs lack "statutory standing" to pursue ATDS claims.

2       "If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c).

---

**End of Document**                                                    © 2026 Thomson Reuters. No claim to original U.S. Government Works.