**IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF PENNSYLVANIA**

|  |  |
|---|---|
| **KELLY BLAND**, individually and on behalf of all others similarly situated,<br><br>*Plaintiff,*<br><br>*v.*<br><br>**HUMANA INC.**,<br><br>*Defendant.* | Case No. 1:26-CV-00659-KM<br><br>HON. KAROLINE MEHALCHICK |

**DEFENDANT HUMANA INC.'S REPLY IN SUPPORT OF ITS
MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

Defendant Humana Inc. ("Humana"), by and through its undersigned counsel, hereby respectfully submits this Reply in support of its Motion to Dismiss Plaintiff Kelly Bland's ("Plaintiff") Complaint.

## I.    INTRODUCTION

Plaintiff's Opposition relies on a misconception of federal pleading standards. She argues that because agency is a "fact-bound question," she is automatically entitled to discovery. But even taken together and read with all favorable inferences, Plaintiff's allegations do not come close to the sort of "control" required for an agency relationship to be established. Rather, the allegations reflect, at most, an ordinary vendor-client relationship in which an independent telemarketing vendor

1

allegedly "went rogue." Plaintiff fails to demonstrate that Humana exercised the requisite control over the vendor's conduct, took any actions to hold the rogue vendor out as its agent, or knew the specific alleged illegal calls were being made. In other words, Plaintiff's actual authority, apparent authority, and ratification theories all fail as a matter of law.

Furthermore, Plaintiff's Opposition fails to bridge the gap between the first two unconnected calls and the final transferred call. Relying on the statistical probability of two callers spoofing the same defunct telephone exchange is exactly the type of speculation that federal pleading standards prohibit. Even if the Court accepts this math, it requires another massive leap of speculation to assume the vendor was actually calling on Humana's behalf during those first two calls. Stripped of this speculation, Plaintiff alleges only one call connected to a Humana agent, falling short of the two-call threshold required for a private right of action under 47 U.S.C. § 227(c)(5).

Finally, Plaintiff misapplies 47 C.F.R. § 64.1200(d) by arguing that a single ignored stop request to a third party establishes a systemic policy failure. Because Plaintiff explicitly alleges she made her do-not-call ("DNC") request to "Zack" at "Medicare Help Centre," she pleads no facts showing Humana itself ever received the request, let alone failed to maintain and implement the mandated internal procedures. For these reasons, Humana's Motion to Dismiss should be granted.

2

## II.     <u>ARGUMENT–PLAINTIFF FAILS TO DEMONSTRATE ANY VALID CLAIM UNDER THE TCPA.</u>

### A.     Plaintiff Fails to Plausibly Allege Vicarious Liability, and Agency Must Be Properly Pleaded to Survive Dismissal.

Plaintiff concedes Humana cannot be directly liable for the calls at issue. Instead, she argues that Humana is vicariously liable and that agency is a "fact-bound question" that should survive a motion to dismiss so she can get discovery. But courts in this Circuit properly grant motions to dismiss when a plaintiff fails to allege specific facts giving rise to a plausible inference of an agency relationship. *See Landy v. Nat. Power Sources, LLC,* No. 3:21-CV-00425, 2021 WL 3634162, at *3 (D.N.J. Aug. 17, 2021) (granting motion to dismiss finding the plaintiff failed to allege facts establishing an agency theory); *Doyle v. GoHealth, LLC*, No. CV 22-04291, 2023 WL 3984951, at *5 (D.N.J. Mar. 30, 2023) (same).

Plaintiff improperly relies on the promise of discovery as a substitute for adequately pleaded facts. The Third Circuit "has cautioned against allowing jurisdictional discovery to serve as 'a fishing expedition based only upon bare allegations, under the guise of jurisdictional discovery.'" *LaSala v. Marfin Popular Bank Pub. Co.,* 410 F. App'x 474, 478 (3d Cir. 2011) (quoting *Eurofins Pharma U.S. Holdings v. BioAlliance Pharma SA*, 623 F.3d 147, 157 (3d Cir. 2010)). Because there are not sufficient factual allegations to support an inference that Humana is vicariously liable under a theory of actual authority, apparent authority, or

ratification, Humana's Motion to Dismiss should be granted and any indirect request for discovery denied.

### 1.      Plaintiff Fails to Establish Actual Authority Because the Mere Receipt of a Transferred Call Does Not Demonstrate Humana's Consent or Direction.

As the Motion to Dismiss correctly explains, "[a] plaintiff sufficiently pleads actual authority when the allegations establish that the defendant consented to or directed the agent to act on its behalf." *Landy*, 2021 WL 3634162, at *3. Plaintiff attempts to manufacture "implied actual authority" from the mere fact that a call was transferred, relying heavily on *Landy II* and *Jewell*. ECF No. 26 at 16-17. She ignores that the facts in those cases that are completely absent from her own Complaint.

In *Landy II*, the amended complaint alleged that the initial calls were made to specifically market the seller's products at the seller's direction, and that the seller knew an automated telephone dialing system was being used. *Landy v. Nat. Power Sources, LLC*, No. 321CV00425PGSTJB, 2022 WL 797967, at *3 (D.N.J. Mar. 16, 2022). Additionally, the seller in *Landy II* also sent a follow-up email to the plaintiff after the call. *Id.* at *1. Plaintiff's reliance on *Jewell* is equally flawed. In *Jewell*, the initial telemarketer explicitly offered services on behalf of the seller by stating they were a "representative" of the seller. *Jewell v. Magnolia Bank, Inc.*, No. 3:23-CV-78-RGJ, 2024 WL 203972, at *1 (W.D. Ky. Jan. 18, 2024). Furthermore, the

transferred calls resulted in the seller performing additional acts—specifically, calling the plaintiff twice more—which supported a finding that the seller consented to the initial calls. *Id*. at *4.

Thus, while *Landy II* and *Jewell* recognize that a seller's acceptance of a transferred call can sometimes infer implied actual authority, both cases required much more than a simple transfer. *Brown v. Nano Hearing Tech Opco, LLC*, No. 3:24-CV-00221-BTM-JLB, 2024 WL 3367536, at *5-6 (S.D. Cal. July 9, 2024) ("promotion of Defendant's products, and the transfer of that call to Defendant," and "the mere fact that a dealer uses a supplier[']s name" do not prove authority.); *Bank v. GoHealth, LLC*, 2021 WL 2323282, at *12 (E.D.N.Y. Mar. 8, 2021) (Plaintiff's claims were dismissed after they failed to "alleged that the [defendant's] employee with whom plaintiff eventually spoke and corresponded with, Jared, made any representations of a relationship or purpose underlying the initial Call or two subsequent transfers."); *Worsham v. TSS Consulting Grp., LLC*, No. 6:18-CV-1692-LHP, 2023 WL 5016558, at *2-3 (M.D. Fla. Aug. 7, 2023) ("the fact that a 'spoofed' phone number called Plaintiff, but noted the lack of any expert or other testimony on this point beyond Plaintiff's own speculation…simply was insufficient to conclusively tie Defendants to the phone calls at issue, was insufficient to establish that Defendants had any sort of agency relationship with either Murtaza Hussain or OneTen Communication such that vicarious liability could exist, and was

5

insufficient to establish individual corporate officer liability as to Taveras."); *Cacho v. McCarthy & Kelly LLP*, 739 F. Supp. 3d 195, 216–17 (S.D.N.Y. 2024) (holding that allegations that the Defendant merely accepted a live-transferred call, without indicating the telemarketers were authorized to act on its behalf, was not enough to create apparent authority.). They required additional allegations showing the initial calls were plausibly made to market the seller's products on the seller's behalf.

Plaintiff pleads neither. She does not allege that the initial caller, "Zack," was selling Humana products, nor does she allege that he explicitly stated he was calling on behalf of Humana. In fact, her Complaint states he was calling on behalf of the "Medicare Help Centre." ECF No. 1 at ¶¶ 33, 37. Humana is not alleged to have performed any follow-up acts inferring consent to the initial calls.

Far from pleading Humana's consent, Plaintiff's Complaint actively defeats her actual authority claim. She explicitly admits Humana's explanation was that the telemarketing vendor "went rogue." ECF No. 26 at 6, 10, 17. A rogue vendor, by definition, acts independently, completely outside of any directed authority or control. *Rogue*, Merriam-Webster, https://www.merriam-webster.com/dictionary/rogue (last visited July 13, 2026). At bottom, other than the bare allegation that Humana allegedly participated in a single transferred call, there are no facts in the Complaint demonstrating Humana exercised sufficient consent or direction to create an actual authority relationship.

6

### 2. *Plaintiff's Opposition Fails to Demonstrate Apparent Authority.*

Apparent authority exists when "'a principal causes persons with whom the agent deals to reasonably believe that the agent has authority' despite the absence of an actual agency relationship." *Am. Tel. & Tel. Co. v. Winback and Conserve Program*, 42 F.3d 1421, 1439 (3d Cir. 1994) (quoting *Barticheck v. Fidelity Union Bank/First Nat'l State*, 680 F.Supp. 144, 148–49 (D.N.J.1988)). The focus is squarely on the *principal's* manifestations concerning the *telemarketer's* authority.

Plaintiff attempts to manufacture apparent authority by pointing to the FCC's *In re DISH Network* examples, arguing that because the *final transferee* (Mr. Rashid) is a licensed agent with access to Humana's systems and trademarks, the *initial caller* must have had apparent authority. ECF No. 26 at 16-17 (citing *In re Joint Petition Filed by Dish Network, LLC*, 28 FCC Rcd. 6574, 6592, 6593 (2013)).

This argument applies the law completely backwards. The FCC's indicia of apparent authority—such as granting access to internal systems or permitting the use of trade names—must apply to the third-party agent who actually placed the alleged illegal calls. *Id*. at 6592 ("The ability by the *outside sales entity* to enter consumer information into the seller's sales or customer systems, as well as the authority to use the seller's trade name, trademark and service mark may also be relevant.") (emphasis added). Plaintiff fails to allege that the rogue vendor, "Zack," had any access to Humana's systems, customer information, or trademarks. To the contrary,

Plaintiff's Complaint alleges that Zack did not use Humana's name. It alleges that "Zack" claimed to represent "Medicare Help Centre." ECF No. 1 at ¶¶ 33, 37.

### 3.    *Plaintiff's Opposition Fails To Establish Ratification.*

Ratification requires the principal to have "the *full knowledge of the facts* and the choice to either accept or reject the benefit of the transaction." *Sphere Drake Ins. Ltd. v. Am. Gen. Life Ins. Co.*, 376 F.3d 664, 677, 678 (7th Cir. 2004) (emphasis added). Plaintiff attempts to bypass this strict knowledge requirement by arguing that Humana was "willfully ignorant" and ratified the calls simply by accepting a call transfer. ECF No. 26 at 17-18.

But mere participation in a transferred call does not equate to adopting a third party's illegal calling practices because "[n]o one can be held to have ratified the unauthorized act of an agent unless he has **knowledge of all the material facts**." *Temple Univ. Hosp., Inc. v. Russell Reimbursement Advisors, Inc.*, CV 16-2645, 2017 WL 1001186, at *11 (E.D. Pa. Mar. 15, 2017) (citing *Bauman v. Eschallier,* 184 F. 710, 711 (3d Cir. 1911)) (emphasis added). Here, Plaintiff's Opposition suggests that Humana knew of "Zack's" conduct because it allegedly hired "Zack" to make calls. However, Plaintiff's Complaint still falls short in demonstrating that Humana had specific knowledge that "Zack" was making allegedly illegal calls. *See Landy*, 2021 WL 3634162, at *5 (stating "Landy speculates that because she was eventually transferred to Suntuity and solicited to buy green energy products, Suntuity must

8

have assented to and received a benefit from the prior callers' actions. Such speculative allegations are insufficient to allege an agency relationship based on ratification.").

The cases Plaintiff relies upon are inapposite. In *Aranda* and *Henderson*, the facts showed the defendants had actual knowledge of the illicit conduct—such as reviewing exact call scripts or knowing of the specific illegal collection methods being used—yet actively chose to continue accepting the benefits. *Aranda v. Caribbean Cruise Line, Inc.,* 179 F.Supp. 3d 817, 832 (N.D. Ill. 2016) (where the party making the illicit calls at issue was required by contract to provide an exact telephone script along with an exact audio file of each survey); *Henderson v. United Student Aid Funds, Inc.*, 918 F.3d 1068, 1075, 1076 (9th Cir. 2019) (where the party making the calls at issue explicitly referenced the defendant and the defendant had knowledge of the material illegal activities yet continued to accept funds collected by the calling party). Here, Plaintiff offers absolutely no facts showing Humana knew "Zack" was making allegedly illegal calls.

Finally, Plaintiff's own Complaint actively defeats her ratification argument. She explicitly pleads that Humana's response to the situation was that the vendor "went rogue." Disavowing a vendor's unauthorized conduct is the exact opposite of ratifying it. Because Plaintiff fails to plead facts showing Humana knew of and assented to the rogue vendor's actions, her ratification theory fails as a matter of law.

**B.    Plaintiff Fails To Establish That More Than One Call Was Made "On Behalf Of" Humana.**

Although Section 227(c)(5) of the TCPA creates a private right of action for any person who receives more than one call "by or on behalf of the same entity in violation of the regulations," 47 U.S.C. § 227(c)(5), Plaintiff's Opposition argues that "on behalf of" can spread liability beyond the entity that physically placed the call to the entity whose goods or services were marketed, without regard to federal common law agency principles. ECF No. 26 at 18-19 (citing *Katz v. Allied First Bank, SB,* No. 22 C 5277, 2026 WL 636723, at *7 (N.D. Ill. Mar. 6, 2026)). However, *Katz* involves materially different circumstances that render its guidance inapplicable to the issues before this Court.

In *Katz*, a defendant approved and managed the relationship between their employee and a third party the employee hired to facilitate live call transfers for consumers interested in defendant's products and services. *Id*. at *1. Importantly, the "warm transfer" from the third-party caller to the defendant's employee in *Katz* consisted of the third-party caller directly introducing the consumer to the defendant's employee. *Id*. at *10. Further, the defendant in *Katz* "had knowledge of facts that would have led a reasonable person to investigate further on this issue [of consumers being called without consent]." *Id.* at *11. The control the defendant had over the third-party caller, the direct and continuous communication on the live call between the third-party caller, the defendant's employee, and the consumer, and the

10

defendant's knowledge of all material facts pertaining to how leads were acquired by the third-party are all facts material to the decision in *Katz*, yet absent in the current matter.  Therefore, Plaintiff cannot establish that any of the at-issue calls were plausibly made "on behalf of" Humana.

**C.    Plaintiff's Opposition Does Not Demonstrate that More Than One Call Was Made By Or On Behalf Of Humana.**

In her Opposition, Plaintiff argues it is reasonable to infer that all of the at-issue calls came from the same source. ECF No. 26 at 19-22. She relies on *Bird* for the proposition that calls originating from the same telephone number can be attributed to the same caller. *Bird v. Pro Star Builders, Inc.*, No. 222CV03610JLSJEM, 2022 WL 18216007, at *3 (C.D. Cal. Nov. 28, 2022). But *Bird* is completely inapposite because the calls alleged here did not originate from the same phone number.

Plaintiff also relies on *Bradshaw v. CHW Group, Inc.* to argue that when a caller introduces herself as being "from [the Defendant]," courts should plausibly conclude that she is. *Bradshaw v. CHW Grp., Inc.*, 763 F. Supp. 3d 641, 646 (D.N.J. 2025). This argument fails on the face of Plaintiff's own Complaint. The initial telemarketer never introduced himself as "Zack from Humana." Instead, Plaintiff alleges that he identified himself as representing "Medicare Help Centre." ECF No. 1 at ¶¶ 33, 37.

11

Recognizing this, Plaintiff attempts to use statistical probabilities regarding spoofed telephone exchanges to connect Zack's initial calls to Humana. Plaintiff uses mathematical probabilities to connect "Zack's" calls to Humana, but Plaintiff provides no relevant authority to support this argument. Instead, Plaintiff cites to *Moore v. Healthcare Sols. Inc.*, but as Plaintiff notes, the defendant in *Moore* made calls from a shared phone number. *Moore v. Healthcare Sols. Inc.*, No. 21-CV-4919, 2022 WL 17487823, at *3 (N.D. Ill. Dec. 7, 2022). Plaintiff further cites *Spurlark v. Dimension Serv. Corp.*, where there is no allegation of a different caller ID, simply that the *caller* is not identified on the at issue calls. *Spurlark v. Dimension Serv. Corp.*, 2022 WL 2528098, at *3 (S.D. Ohio July 7, 2022).

Here, the calls at issue did not originate from a shared telephone number, and the initial caller explicitly claimed to represent an entirely different entity. Therefore, *Bird*, *Bradshaw*, *Moore*, and *Spurlark* are wholly inapplicable. Plaintiff fails to establish any plausible factual connection between the disparate, allegedly spoofed numbers, falling short of the statutory requirement to show that she received more than one call by or on behalf of Humana as required for a cause of action under 47 U.S.C. § 227(c)(5).

**D.      Plaintiff's Opposition Does Not Demonstrate That Humana Has Failed To Implement The Policies And Procedures Prescribed By 47 C.F.R. § 64.1200(d).**

Plaintiff has also failed to plausibly allege—and plainly cannot establish—that Humana failed to implement internal DNC policies in violation of 47 C.F.R. § 64.1200(d). Nevertheless, Plaintiff attempts to argue that a single failure to honor a do not call request is not irrelevant. ECF No. 26 at 23-24 (quoting *Simmons v. Charter Commc'ns, Inc.,* 222 F. Supp. 3d 121, 139 (D. Conn. 2016), aff'd, 686 F. App'x 48 (2d Cir. 2017)). However, the *Simmons* holding states "[t]he existence of a single failure to record and honor an individual's request to be placed on a DNC list can be evidence of a failure to implement proper procedure…but it cannot be the *sole* basis of a section (d)(3) violation.") (internal citation omitted) (emphasis added). *Id.* Here, Plaintiff allegations are limited to a single stop request to "Zack" at "Medicare Help Centre" during a February 1 conversation, followed by an unrelated call several months later that is again attributed to "Zack" at "Medicare Help Centre." ECF No. 1 at ¶¶ 33, 36-37. Those allegations, without more, do not permit a reasonable inference that Humana failed to adopt, implement, or enforce the written policies and procedures required by the regulation.

Humana cannot be held to have violated Section 64.1200(d) for failing to honor a DNC request it did not receive. If there are no allegations that Humana received any stop request, Plaintiff cannot plausibly allege that Humana somehow failed to maintain and implement proper internal DNC procedures.

13

Plaintiff also relies on *Perrong* to demonstrate "[a] Plaintiff can use subsequent calls after a request to demonstrate a failure to implement this plan." ECF No. 26 at 23-24 (citing *Perrong v. S. Bay Energy Corp.*, No. 2:20-CV-05781-JDW, 2021 WL 1387506, at *3 (E.D. Pa. Apr. 13, 2021). However, Plaintiff's reliance on *Perrong* is misguided. *Perrong* does not associate subsequent calls after a "request" to demonstrate a failure to implement procedures as required under § 64.1200(d). *Id.* at *2. The court in *Perrong* simply notes that the § 64.1200 language "not to receive telemarking calls made by or on behalf of that person or entity" refers back to the "person or entity" that "initiate[s]" a call, and that this language "applies to calls that a company might make to a list of people that have directed the company not to call them." *Id.* at *3. Because Plaintiff cannot establish that she ever directed Humana to stop calling her—or that Humana ever received such a request from the rogue vendor—she cannot plausibly show that Humana systematically failed to maintain internal procedures to honor it. As such, Count III must be dismissed.

## III.   CONCLUSION

For these reasons and those set forth in Humana's Motion to Dismiss the Complaint, Humana respectfully requests Plaintiff's Complaint be dismissed pursuant to Federal Rules of Civil Procedure 12(b)(6).

Dated: July 15, 2026                              Respectfully submitted,

                                                  */s/ V. Amanda Witts*
                                                  V. Amanda Witts

14

Mitchell Sandler PLLC
2020 K Street NW
Suite 760
Washington, DC 20006
Tel: 202.886.5267
v.awitts@mitchellsandler.com

AND

Eric J. Troutman (*pro hac vice)*
Puja J. Amin (*pro hac vice*)
Tori L. Guidry (*pro hac vice*)
Blake H. Landis (*pro hac vice*)
Troutman Amin, LLP
400 Spectrum Center Drive
Suite 1450
Irvine, CA 92618
Telephone: (949) 350-3663
Facsimile: (949) 203-8689
troutman@troutmanamin.com

*Attorneys for Defendant, Humana, Inc.*

15

## <u>CERTIFICATE OF COMPLIANCE WITH WORD COUNT LIMIT</u>

Pursuant to Local Rule 7.8(b)(2), I hereby certify that this brief complies with the type-volume limitation set forth by the Local Rules of this Court. Excluding the parts of the brief exempted by the Local Rules (such as table of contents, table of authorities, and exhibits), this brief contains 3,211 words as counted by the word processing system used to prepare this brief.

Dated: July 15, 2026

*/s/ V. Amanda Witts*
V. Amanda Witts

## CERTIFICATE OF SERVICE

I hereby certify that on July 15, 2026, a copy of the foregoing was filed with the Clerk of Court for the United States District Court for the Middle District of Pennsylvania via the CM/ECF system and served to all counsel of record via the CM/ECF system.

*/s/ V. Amanda Witts*
V. Amanda Witts

17