**IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **KELLY BLAND**, individually and on behalf of all others similarly situated, | |
| *Plaintiff,* | Case No. 1:26-CV-00659-KM |
| *v.* | HON. KAROLINE MEHALCHICK |
| **HUMANA INC.**, | |
| *Defendant.* | |

**DEFENDANT HUMANA INC.'S REPLY IN SUPPORT OF ITS
MOTION TO STRIKE CLASS ALLEGATIONS**

Defendant Humana Inc. ("Humana"), by and through its undersigned counsel, hereby respectfully submits this reply in support of its Motion to Strike Class Allegations (the "Motion").

**I.    INTRODUCTION**

Plaintiff Kelly Bland's ("Plaintiff") Opposition argues that this Court should ignore fatal, facial flaws in her class definitions and embark on a costly discovery expedition that cannot cure what is irreparably broken. Her proposed classes are overly broad, indiscriminately sweeping in lawful communications. Her DNC classes necessarily include countless uninjured parties who consented or had an established business relationship ("EBR") with Humana, a defect that guarantees

1

individualized mini-trials and destroys commonality. And her definitions are impermissibly merits-based. Further, by admitting that identifying "telemarketing" calls requires a subjective "measure of common sense," she concedes her classes cannot be ascertained through objective criteria.

Plaintiff's primary defense is that striking these allegations now would be premature. But when the pleadings demonstrate certification is impossible, "prematurity" is merely an excuse to prolong a facially deficient lawsuit and subject Humana to the massive burden of class discovery. The fatal defects in Plaintiff's class definitions are not factual voids curable by discovery. The defects are baked into the definitions themselves. No amount of discovery will eliminate the statutory exclusions for consent and EBR, bypass the need for individualized inquiries, or transform a subjective merits review into an objective class definition. Because these defects are incurable, the class allegations must be stricken here and now.

## II.    ARGUMENT—PLAINTIFF'S CLASS DEFINITIONS MUST BE STRICKEN BECAUSE THEY ARE FACIALLY UNCERTIFIABLE AS A MATTER OF LAW.

**A.    This Motion Is Procedurally Proper and Ripe for Resolution at the Pleadings Stage.**

Plaintiff attempts to dodge the fatal flaws in her Complaint with two procedural objections: that Humana filed separate motions, and that striking class allegations at the pleadings stage is premature. Both arguments should be found to be meritless.

2

First, relying exclusively on an out-of-district decision, Plaintiff argues Humana's Motion to Dismiss and Motion to Strike must be filed as a single document. *See* ECF No. 27 at 10-11. This objection elevates form over substance. Nothing in Federal Rule of Civil Procedure 12(g), the Local Rules, or this Court's individual practices precludes a defendant from filing separate, subsequent motions. To the contrary, as Humana pointed out in its moving papers, filing separate motions has been an accepted practice in this jurisdiction. *See, e.g., Friel v. Line 5, LLC, et al.*, No. 3:24-cv-01866 (M.D. Pa.); *Caldiero v. Missouri Higher Education Loan Authority et al.*, No. 3:24-cv-00315 (M.D. Pa.); *Shoemaker et al. v. Zeitlin et al.*, No. 1:21-cv-01668 (M.D. Pa.).

Second, Plaintiff argues that striking class allegations prior to discovery is premature. ECF No. 27 at 12-14. While motions to strike are generally disfavored, courts strike class allegations at the pleading stage when it is apparent from the face of the complaint that the proceeding cannot possibly move forward on a class-wide basis. *See Zarichny v. Complete Payment Recovery Servs., Inc.*, 80 F. Supp. 3d 610, 624 (E.D. Pa. 2015) (motion to strike class allegations granted at the pleadings stage); *Barabin v. Aramark Corp.,* 210 F.R.D. 152, 162 (E.D. Pa. 2002), aff'd, 2003 WL 355417 (3d Cir. Jan.24, 2003) (granting motion to strike class allegations where it was apparent from the complaint that Rule 23 could not be satisfied); *In re Ry. Indus. Emp. No-Poach Antitrust Litig.,* 395 F. Supp. 3d 464, 516 (W.D. Pa. 2019)

(same). When a plaintiff pleads a class that can never be certified because it is facially overbroad or requires individualized merits determinations, it is properly stricken immediately. *See Brown v. Nano Hearing Tech OPCO, LLC d/b/a Nano Hearing Aids, Def..*, No. 3:24-CV-00221-BTM-JLB, 2024 WL 3367536 (S.D. Cal. July 9, 2024) (granting motion to strike class allegations in TCPA cases where the class definition was overly broad); *Salaiz v. eHealthInsurance Services, Inc.,* No. 22-CV-04835-BLF, 2023 WL 2622138, at \*5 (N.D. Cal. Mar. 22, 2023) (granting motion to strike class allegations in a TCPA case where it was facially apparent from the complaint that the class definition was improper). Because the fatal defects in Plaintiff's proposed classes are uncertifiable and no amount of discovery can cure their defects, the classes may be properly stricken at this stage of the litigation.

**B.**  **Plaintiff Fails To Rebut That Her Proposed Classes Are Overly Broad.**

**1.**  ***Plaintiff is Wrong—The TCPA Requires Consumers to Personally Register Their Number on the DNC Registry.***

Plaintiff's proposed classes are also overly broad because they are not limited to individuals who personally placed their number on the DNC Registry. Plaintiff argues that the TCPA does not require consumers to have personally placed their telephone numbers on the National DNC Registry. ECF No. 27 at 15-17. But as Humana demonstrated in its Motion, the plain text of 47 C.F.R. § 64.1200(c)(2) strictly limits the regulation's protections to individuals who personally registered

their telephone numbers. *See Rombough v. Robert D. Smith Ins. Agency, Inc.*, No. 22-CV 15-CJW-MAR 2022 WL 2713278, at \*2 (N.D. Iowa June 9, 2022).

In support of this argument, Plaintiff cites to *Callier v. Am.-Amicable Life Ins. Co. of Texas*, No. EP-22-CV-00018-FM, 2022 WL 17732717 (W.D. Tex. Oct. 18, 2022), however, the court in *Callier* failed to apply the statute as written.

The regulation limits relief to "[a] residential telephone subscriber ***who has registered his or her telephone number*** on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the Federal Government." 47 C.F.R. § 64.1200(c)(2) (emphasis added). And the very next sentence mandates that "***[s]uch do-not-call registrations*** must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator." *Id*. (emphasis added). The word "such" is a direct grammatical limiter. It refers back to the specific antecedent in the preceding sentence: a registration made by a residential subscriber for "his or her" own telephone number. *Id*. The word "such" does not create a transferable property right in a ten-digit phone number. The "indefinite" duration read in context means that as long as the registering subscriber holds the line, that individual's registration remains valid without re-registration. Once a phone number changes hands, a new subscriber who merely inherits the number has not registered "his or her" telephone number.

Thus, because Plaintiff's class definition fails to limit membership to individuals who personally registered their numbers, it necessarily includes individuals with no standing under the TCPA. This defect is incurable and warrants striking the class now.

### 2. Avoiding a "Fail-Safe" Class Does Not Excuse Plaintiff's Sweeping Inclusion of Consenting Individuals and Those with an Established Business Relationship.

Plaintiff attempts to justify her sweeping class definitions by arguing that accounting for consent would create an impermissible "fail-safe" class, and that consent is merely a defense she need not address in her pleadings. But Plaintiff is wrong on both counts. Avoiding a fail-safe class does not give Plaintiff a license to propose definitions that are facially overly broad and capture individuals who suffered no legal injury.

To have a viable claim under the TCPA's DNC provisions, a plaintiff must prove that a "telephone solicitation" took place. *See Przepioski v. Pro Custom Solar LLC*, No. CV 21-1071, 2021 WL 3728244, at *2 (E.D. Pa. Aug. 20, 2021) ("The relevant regulation prevents telephone solicitations to residential phone numbers registered on the DNC list.") (citing 47 C.F.R. § 64.1200(c)(2)). A telephone solicitation is specifically defined to exclude calls made with a "person's prior express invitation or permission" (i.e., consent) and "to any person with whom the caller has an established business relationship." *See* 47 C.F.R. § 64.1200(f)(15)(i)-

6

(ii). So, a plaintiff definitively must prove that a call was made without consent *before* that call can qualify as a "telephone solicitation" subject to the TCPA. The mere assertion that a marketing call was made, then, is not sufficient to state a claim. Individuals who consented or maintained an EBR suffered no cognizable legal injury under the TCPA. Their inclusion in the proposed class is not a speculative defense— it is a fatal defect in the definition itself. *See* ECF No. 13 at 20 (citing *Leon v. Loandepot.com, LLC*, No. 2:25-CV-01787-JLS-AGR, 2025 WL 2632396, at *3 (C.D. Cal. Aug. 22, 2025) (striking class as overly broad because it included individuals who consented and had an EBR); *Brown v. Nano Hearing Tech Opco, LLC*, No. 3:24-CV-00221-BTM-JLB, 2024 WL 3367536, at *8-9 (S.D. Cal. July 9, 2024) (finding that the plaintiff's class was flawed because it included individuals who lacked standing under the TCPA)).

Where a plaintiff proposes a class definition that indiscriminately sweeps in uninjured individuals on the face of the complaint, allowing the class allegations to survive the pleadings stage imposes an unwarranted prejudice and burden on the defendant. Because Plaintiff's definition contains no mechanism to exclude consenting recipients or those with an EBR, Humana would be subjected to a ruinous, wide-ranging discovery fishing expedition into the communications and records of numerous individuals who have no cause of action as a matter of law.

This structural defect creates the exact *in terrorem* effect of overly broad classes—i.e., those where everyone that received a call might be included, even if they consented—which creates unfair leverage over a defendant. *Kohen v. Pac. Inv. Mgmt. Co. LLC & PIMCO Funds*, 571 F.3d 672, 677-78 (7th Cir. 2009) ("[A] class should not be certified if it contains a great many of persons who have suffered no injury at the hands of the defendant…") (citations omitted). This Court should protect Humana from facing a faRlsely inflated class exposure based on facially defective definitions and strike Plaintiff's DNC Class now.

**C.    Plaintiff Fails to Demonstrate Rule 23 Commonality Because Her "Rogue Vendor" Theory Does Not Eliminate the Need for Individualized Inquiries.**

Plaintiff attempts to manufacture Rule 23(a)(2) commonality by arguing that the calls at issue "originated through a single vendor using a common scheme." ECF No. 27 at 23. She asserts that if this specific vendor lacked legally sufficient consent, then consent becomes a "nonissue for the entire class," allowing liability to be resolved globally. *Id*.

But Plaintiff's argument ignores the actual text of her own Complaint. Her proposed class definitions are not limited to calls made by a single "rogue" vendor. Instead, they indiscriminately capture anyone who received a call "from or on behalf of Defendant" or from "Defendant (or a third-party acting on behalf of Defendant)." *See* ECF No. 1 at ¶ 56.

8

By drafting her classes to encompass *all* telemarketing calls made by Humana or *any* of its various third-party vendors over a four-year period, Plaintiff instantly destroys the commonality she attempts to rely upon. *Id*. A single rogue vendor's practices cannot resolve the issue of consent or EBRs for calls made by Humana itself or by entirely different vendors. *See* ECF No. 13 at 23.

Under Rule 23(a)(2), commonality requires that class claims depend upon a common contention capable of resolution "in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). If the members of a proposed class must present evidence that varies from member to member to make a prima facie showing on a given question, then it is an individual question. *See* ECF No. 13 at 22 (quoting *Messner v. Northshore Univ. Health Sys.*, 699 F.3d 802, 815 (7th Cir. 2012) (citation omitted)).

Because the proposed classes broadly capture *any* call made on Humana's behalf, assessing whether each class member provided prior express consent or maintained an EBR with Humana remains a classic individualized inquiry. The Court would be forced to conduct a member-by-member factual analysis of specific past interactions, transactions, or inquiries between each individual and Humana across all of its marketing channels.

Statutory standing under the DNC provisions presents yet another individualized hurdle. The Court must determine whether each putative class

9

member actually took the affirmative step to personally register their own telephone number on the National DNC Registry, or merely inherited a recycled line. *See* 47 C.F.R. § 64.1200(c)(2); *see supra*. This cannot be answered by examining a single vendor's conduct.

Plaintiff cannot rely on the narrow facts of one specific vendor to justify certifying a limitless, boundless class. Because the claims of the proposed classes inevitably depend on individualized evidence regarding standing and statutory liability, commonality is absent on the face of the pleadings, and the class allegations must be stricken.

**D.    Plaintiff Admits Her Class Definitions Impermissibly Depend On Subjective Merits Determinations Rather Than Objective Criteria.**

Plaintiff attempts to save her class definitions by characterizing the statutory term "telemarketing" as a mere "descriptive term" rather than a merits-based criterion. ECF No. 27 at 23. But in the very next breath, Plaintiff concedes that determining whether a call constitutes "telemarketing" is a "legal question" that requires the Court to evaluate the "context" of the communications and apply a "measure of common sense." *Id*. at 24.

This concession proves Humana's exact point. A class must be defined by objective, administratively feasible criteria, not by the ultimate legal conclusions of the claims themselves. *See* ECF No. 13 at 23-26. By defining her classes based on a "legal question," Plaintiff ensures that membership can only be ascertained by

10

deciding the merits of the TCPA claim—guaranteeing that all members of her class have already won on a critical substantive issue before the class is even certified. *Id*.

Unable to articulate an objective way to identify class members without conducting this member-by-member merits inquiry, Plaintiff resorts to asking the Court to "refine the class definition at certification." ECF No. 27 at 24. But this is not a cure. It is a tacit admission that her definitions are facially uncertifiable as written. Humana is entitled to know the actual boundaries of the class being alleged against it *before* being subjected to massive, class-wide discovery.

Thus, because the classes are defined using merits criteria, they fail as a matter of law and must be stricken now. *See* ECF No. 13 at 23-26.

## III.    <u>CONCLUSION</u>

For these reasons and those set forth in the Motion to Strike Class Allegations, Humana respectfully requests the Court strike Plaintiff's class allegations.

Dated: July 15, 2026                       Respectfully submitted,

<u>*/s/ V. Amanda Witts*</u>
V. Amanda Witts
Mitchell Sandler PLLC
2020 K Street NW
Suite 760
Washington, DC 20006
Tel: 202.886.5267
v.awitts@mitchellsandler.com

AND

Eric J. Troutman (*pro hac vice*)

11

Puja J. Amin (*pro hac vice*)
Tori L. Guidry (*pro hac vice*)
Blake H. Landis (*pro hac vice*)
Troutman Amin, LLP
400 Spectrum Center Drive
Suite 1450
Irvine, CA 92618
Telephone: (949) 350-3663
Facsimile: (949) 203-8689
troutman@troutmanamin.com

*Attorneys for Defendant, Humana, Inc.*

## <u>CERTIFICATE OF COMPLIANCE WITH WORD COUNT LIMIT</u>

Pursuant to Local Rule 7.8(b)(2), I hereby certify that this brief complies with the type-volume limitation set forth by the Local Rules of this Court. Excluding the parts of the brief exempted by the Local Rules (such as table of contents, table of authorities, and exhibits), this brief contains 2,343 words as counted by the word processing system used to prepare this brief.

Dated: July 15, 2026

*/s/ V. Amanda Witts*
V. Amanda Witts

## CERTIFICATE OF SERVICE

I hereby certify that on July 15, 2026, a copy of the foregoing was filed with the Clerk of Court for the United States District Court for the Middle District of Pennsylvania via the CM/ECF system and served to all counsel of record via the CM/ECF system.

/s/ V. Amanda Witts
V. Amanda Witts