KeyCite Yellow Flag

Distinguished by   Aziz v. City of Newark,   D.N.J.,   April 19, 2022

2003 WL 355417
Only the Westlaw citation is currently available.
United States Court of Appeals, Third Circuit.

Bonita BARABIN, Randolph Robinson, Dwight Sumpter, Erica Seamon, Louise Anderson, Joseph
Sheppard, Romont Robinson, Len Simpkins, Kenneth Govan and Vernon Draper, Petitioners

v.

ARAMARK CORPORATION, Aramark Services Management of PA, Inc., Aramark Healthcare Support
Services, Inc., Dorothy Homony, Chris Hornbecker (Eastern District of PA Civil No. 01-cv-04161)(JCJ)

No. 02-8057.
|
Jan. 24, 2003.

Present: SCIRICA, BARRY and AMBRO, Circuit Judges.

ORDER

SCIRICA, J.

**\*1**  In this Title VII and 42 U.S.C. § 1981 case alleging racial discrimination, plaintiffs seek an interlocutory appeal under

Fed.R.Civ.P. 23(f) from the denial of their motion for class certification under Fed.R.Civ.P. 23(b)(2) or (b)(3). The putative
class consists of "all African-Americans (150-200 persons) who worked for Defendants at Presbyterian Medical Center ... in the
Environmental Services and Patent Services Departments from November 15, 1999 onward, and in the Distribution Department
from October 2000 onward." Plaintiffs request compensatory and punitive damages as well as injunctive relief.

In *Newton v. Merrill Lynch, Pierce, Fenner & Smith,* 259 F.3d 154, 164 (3d Cir.2001), we held that granting such a petition
would be appropriate if it would permit us to address: "(1) the possible case-ending effect of an imprudent class certification
decision (the decision is likely dispositive of the litigation); (2) an erroneous ruling; or (3) facilitate development of the law

on class certification." *Id.* at 165.

Plaintiffs do not appear to contend that the denial of class certification will have a case-ending effect, nor that the value of their
claims is too small to effectively prevent them from pursuing their claims. Instead, plaintiffs have alleged that they are entitled

to substantial compensatory and punitive damages, including an award of attorneys' fees and costs under Title VII and §
1981. Therefore, we will address whether the District Court erred or whether, at this time, we should facilitate development
of the law on class certification.

We review the grant or denial of class certification for abuse of discretion. In order to warrant a finding of abuse of discretion,
it must have "rest[ed] upon a clearly erroneous finding of fact, an errant conclusion of law or an improper application of law

to fact." *Newton,* 259 F.3d at 165.

Rule 23(b)(2)

Plaintiffs contend class certification is proper under Fed.R.Civ.P. 23(b)(2) because they have alleged a pattern and practice case. Defendants contend that plaintiffs have not shown their alleged conduct constituted a pattern of allegedly discriminatory activity. *See International Brotherhood of Teamsters v. United States,* 431 U.S. 324, 336 (1977) ("[A] pattern or practice would be present only where the denial of rights consists of something more than an isolated, sporadic incident, but is repeated, routine, or of a generalized nature."). Contrary to the usual pattern and practice case, defendants contend that plaintiffs' claims of intentional discrimination were not directed at a company-wide pattern, practice or policy, but rather to alleged isolated acts of two supervisors, Dorothy Homony and Christopher Hornbaker.

Class actions certified under Rule 23(b)(2) are limited to those cases where the primary relief sought is injunctive or declaratory relief. *E.g., James v. City of Dallas,* 254 F.3d 551, 571 (5th Cir.2001) ("To maintain an action under Rule 23(b)(2), [injunctive] relief rather than monetary damages must be the predominant form of relief the plaintiffs pursue.") (internal citations and quotations omitted). At least two courts of appeals have devised a test for certification of a(b)(2) class. Under this test, where parties seek monetary relief, a court may only certify a class if the damages claim is incidental to the primary claim for injunctive or declaratory relief. *See Molski v. Gleich,* 307 F.3d 1155, 1165 (9th Cir.2002) ("In order to permit certification, the claim for monetary damages must be incidental to the primary claim for injunctive or declaratory relief."); *Allison v. Citgo Petroleum Corp.,* 151 F.3d 402, 415 (5th Cir.1998) (promulgating a test under which "monetary relief predominates in (b)(2) class actions unless it is incidental to requested injunctive or declaratory relief"). We agree. Because unnamed members of classes certified under Rule 23(b)(2) cannot opt out (as under Rule 23(b)(3)), class cohesion is necessary, and is presumed where a class suffers from a common injury and seeks class-wide injunctive relief. *E.g., Robinson v. Metro-North Commuter Railroad, Co.,* 267 F.3d 147, 163-66 (2d Cir.2001) (discussing the common injury and class-wide injunctive relief requirements of Rule 23(b)(2)). Where monetary relief is requested, cohesion is less apparent, as awarding damages normally entails examination of individual claims. *Id.*

**\*2** Incidental damages are those "that flow directly from liability to the class *as a whole* on the claims forming the basis of the injunctive or declaratory relief." *Allison,* 151 F.3d at 415 (emphasis in original). Consistent with this analysis, whether damages are "incidental" depends on: (1) whether such damages are of a kind to which class members would be automatically entitled; (2) whether such damages can be computed by "objective standards" and not standards reliant upon "the intangible, subjective differences of each class member's circumstances"; and (3) whether such damages would require additional hearings to determine. *See id.*

As the District Court here found:

> In reviewing the complaint in the case at bar, we cannot find that the primary relief sought is injunctive and/or declaratory in nature. Rather, it appears that the primary relief which plaintiffs seek is monetary in nature and that the request for injunctive/ declaratory relief is secondary at best. Indeed, Plaintiffs do not claim that damages in this matter can be computed on the basis of some objective, uniform calculation or in an amount which naturally follows from an entitlement to a declaration or injunction against further harm. In lieu of a claim for damages that automatically flow directly to the class as a whole, Plaintiffs aver that they have been "damaged in an amount to be proven at trial." This requires that evidence of the harm suffered by each plaintiff be produced for the jury's consideration at trial. We therefore conclude that the plaintiffs do not meet the criteria for class action certification under Rule 23(b)(2).

*Barabin v. Aramark,* 210 F.R.D. 152, 161 (E.D.Pa.2002). We see no error.

Rule 23(b)(3)

The District Court found that plaintiffs did not satisfy the requirements for class certification under Rule 23(b)(3). A court may certify a class under Rule 23(b)(3) only if it finds that (1) "the questions of law or fact common to the members of the class predominate over any questions affecting only individual members" and (2) "class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed.R.Civ.P. 23(b)(3).

The District Court held that:

> In applying the foregoing principles here, we cannot find that the predominance and superiority prerequisites have been satisfied. Indeed, it is clear from the complaint that while all of the plaintiffs aver that they were "subjected to frequent harassment and unjustified disciplinary sanctions by Caucasian supervisors not imposed on similarly situated Caucasian employees," the circumstances under which those acts of discrimination were committed and the resultant injuries are unique to each individual plaintiff. The plaintiffs' individual claims for damages would therefore require individualized evaluations and findings of the facts and defenses. We thus conclude that the plaintiffs' individual claims would predominate over the common issue of whether the disciplinary measures taken against them were discriminatory in nature. Certification under Rule 23(b)(3) would therefore be inappropriate.

**\*3** *Barabin,* 210 F.R.D. at 162 (citations omitted). We see no error.

For similar reasons, we hold that plaintiffs' motion for class certification also fails the superiority requirement.

For the reasons set forth, plaintiffs' motion for an interlocutory appeal under Fed.R.Civ.P. 23(f) is denied. [1]

**All Citations**

Not Reported in F.3d, 2003 WL 355417

---

**Footnotes**

1    Plaintiffs' motion for leave to file petition for permission to appeal in excess of page limitation is granted. Plaintiffs' motion for leave to file reply to defendants' answer in opposition to plaintiffs' petition for permission to appeal order denying class certification is granted. Defendants' motion to file an answer in excess of the page limitation is granted.

---

**End of Document**

© 2026 Thomson Reuters. No claim to original U.S. Government Works.

Case 1:26-cv-00659-KM Document 32-1 Filed 07/15/26 Page 4 of 43

Brown v. Nano Hearing Tech Opco, LLC, Not Reported in Fed. Supp. (2024)

KeyCite Yellow Flag

Distinguished by Shelton v. Freedom Forever, LLC, C.D.Cal., October 14, 2025

2024 WL 3367536
Only the Westlaw citation is currently available.
United States District Court, S.D. California.

Stephanie BROWN, individually and on behalf of others similarly situated, Plaintiff,

v.

NANO HEARING TECH OPCO, LLC d/b/a Nano Hearing Aids, Defendant.

Case No.: 3:24-cv-00221-BTM-JLB
|
Signed July 9, 2024

**Attorneys and Law Firms**

Aryanna Yvette Young, Ryan Lee McBride, Kazerouni Law Group, APC, San Diego, CA, for Plaintiff.

Kenneth M. Fitzgerald, Fitzgerald Knaier LLP, San Diego, CA, Michael L. Simes, Pro Hac Vice, Simes Law P.C., New York, NY, for Defendant.

**ORDER GRANTING DEFENDANT NANO HEARING AIDS' MOTION TO DISMISS**

**[ECF NO. 6]**

Barry Ted. Moskowitz, United States District Judge

**\*1** Defendant Nano Hearing Tech Opco, LLC doing business as Nano Hearing Aids ("Nano") has filed a Motion to Dismiss Plaintiff's Complaint. (ECF No. 6 ("Def.'s MTD").) In response, Plaintiff Stephanie Brown ("Brown") filed an opposition. (ECF No. 7 ("Pls.' Opp'n")). Nano then filed a reply. (ECF No. 10 ("Def.'s Reply").) For the reasons discussed below, the Court **grants** Nano's Motion to Dismiss and Motion to Strike.

**I. BACKGROUND**

Brown, on behalf of herself and a potential class, filed suit against Nano alleging unsolicited marketing that constitutes negligent and willful violations of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227(c)(5). (ECF No. 1 ("Complaint").) Brown alleges she "has been on the National Do Not Call Registry since approximately June 12, 2009," and that she has never consented to contact from Nano. (Id. at ¶¶ 28, 35.) Brown alleges that despite the above, she received two phone calls on or around January 19, 2023 from the phone numbers 727-431-6059 and 727-413-6449, both of which she alleges "[u]pon information and belief ... belong[ ] to Defendant and/or Defendant's agent." (Id. at ¶¶ 30–31.) She alleges the callers both promoted Nano Hearing Aids to her. (Id.) Next, Brown alleges she received another phone call on or around February 15, 2023 from the phone number 727-373-1759, during which she "spoke to Daniel Houston who said he was with Life Care." (Id. at ¶ 32.) Mr. Houston then transferred the call to someone named Ken, who gave Brown a callback number of 619-348-6968 x 21. (Id.) Brown alleges this call was also made by Defendant's agent who also spoke to her about Nano Hearing Aids, and that "[w]hen called back, this number goes to Nano Hearing." (Id.)

Brown's Complaint asks for declaratory and injunctive relief and damages under section 277 of the TCPA. (Id. at 14.) Brown seeks to represent a putative class of similarly situated individuals, called a "Federal TCPA DNC Class," which she defines in her Complaint as:

> All persons within the United States who received two phone calls within a 12-month period from Defendant to said person's telephone, and such person had previously included their name on the National Do Not Call Registry at least 31 days prior to receiving Defendant [sic] first call, within the four years prior to the filing of this Complaint.

(Id. at ¶ 41.)

## II. STANDARD

Nano moves to dismiss Brown's Complaint under Federal Rule of Civil Procedure ("FRCP") 12(b)(6) for failure to state a claim and 12(b)(1) for lack of subject matter jurisdiction. (ECF No. 6.) In the alternative or in addition, Nano moves to strike the class allegations under FRCP 12(f) and 23. (Id.) For the reasons discussed below, the Court grants Nano's Motion to Dismiss and Motion to Strike.

### A. Motion to Dismiss for failure to state a claim under 12(b)(6)

A motion to dismiss under FRCP 12(b)(6) should be granted only where a plaintiff's complaint lacks a "cognizable legal theory" or sufficient facts to support a cognizable legal theory. *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1988). When reviewing a motion to dismiss, the allegations of material fact in plaintiff's complaint are taken as true and construed in the light most favorable to the plaintiff. *See Parks Sch. of Bus., Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995). Although detailed factual allegations are not required, factual allegations "must be enough to raise a right to relief above the speculative level." *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007). Only a complaint that states a plausible claim for relief will survive a motion to dismiss. *Id.*

### B. Motion to Dismiss for lack of subject matter jurisdiction under 12(b)(1)

**\*2**  Nano challenges the Complaint, in part, on the ground that Brown lacks Article III standing. (ECF No. 6.) Standing is an element of subject matter jurisdiction. Therefore, Nano moves to dismiss Brown's Complaint for lack of subject matter jurisdiction pursuant to FRCP 12(b)(1).

A Rule 12(b)(1) jurisdictional attack may be facial or factual. Fed. R. Civ. P. 12(b)(1). In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction. *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). Generally, on a 12(b)(1) motion regarding subject matter jurisdiction, unlike a 12(b)(6) motion, a court need not defer to a plaintiff's factual allegations. *Id.* But the Supreme Court has held that where a 12(b)(1) motion to dismiss is based on lack of standing, the court must defer to the plaintiff's factual allegations and must "presume[e] that general allegations embrace those specific facts that are necessary to support the claim." *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 889 (1990). Therefore, to show standing "[a]t the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). The

Case 1:26-cv-00659-KM    Document 32-1    Filed 07/15/26    Page 6 of 43

Brown v. Nano Hearing Tech Opco, LLC, Not Reported in Fed. Supp. (2024)

party invoking federal subject matter jurisdiction has the burden of establishing standing. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016), *as revised* (May 24, 2016).

### C. Motion to Strike class allegations under 12(f) and 23

Rule 12(f) authorizes courts to strike "from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). "Before a motion to strike is granted, the court must be convinced that any questions of law are clear and not in dispute, and that under no set of circumstances could the claim or defense succeed." *Sanders v. Apple Inc.*, 672 F. Supp. 2d 978, 990 (N.D. Cal. 2009) (citing *RDF Media Ltd. v. Fox Broadcasting Co.*, 372 F. Supp. 2d 556, 566 (C.D. Cal. 2005)). "When considering a motion to strike, a court must view the pleadings in a light most favorable to the non-moving party." *Brown v. Hain Celestial Grp., Inc.*, 913 F. Supp. 2d 881, 888 (N.D. Cal. 2012) (citation omitted).

Plaintiffs bear the burden of pleading, and ultimately demonstrating, compliance with Rule 23's requirements. *Zinser v. Accufix Rsch. Inst., Inc.*, 253 F.3d 1180, 1186 (9th Cir.), *opinion amended on denial of reh'g*, 273 F.3d 1266 (9th Cir. 2001). Though "[i]n general, the appropriateness of proceeding as a class action is not tested at the pleading stage," *Hernandez v. State Farm Fire & Cas. Co.*, No. 16CV200-LAB (JLB), 2017 WL 932198, at *2 (S.D. Cal. Mar. 9, 2017), "[s]ometimes the issues are plain enough from the pleadings to determine whether the interests of the absent parties are fairly encompassed within the named plaintiff's claim." *General Telephone Co. of Southwest v. Falcon*, 457 U.S. 147, 160 (1982). "In the Ninth Circuit, motions to strike are proper, even if the material is not prejudicial to the moving party, if granting the motion would make trial less complicated or otherwise streamline the ultimate resolution of the action." *Brown*, 913 F. Supp. 2d at 888 (citing *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993), *rev'd on other grounds*, 510 U.S. 517 (1994)).

### III. DISCUSSION

#### A. <u>Motion to Dismiss for failure to state a claim under 12(b)(6)</u>

**\*3** Brown seeks relief under the TCPA for three phone calls allegedly placed to her cellular telephone. There are two potential theories of liability under the TCPA: (1) direct liability and (2) vicarious liability. *Thomas v. Taco Bell Corp.*, 582 F. App'x 678, 679 (9th Cir. 2014). In other words, "[f]or a person to 'make' a call under the TCPA, the person must either (1) directly make the call, or (2) have an agency relationship with the person who made the call." *Pascal v. Agentra, LLC*, No. 19-CV-02418-DMR, 2019 WL 5212961, at *2 (N.D. Cal. Oct. 16, 2019) (citation omitted).

#### I. Direct TCPA Liability

First, Nano argues Brown's Complaint does not plausibly allege that Nano, rather than some third party, physically placed the alleged calls. (ECF No. 6, 8–10.) In response, Brown argues the Complaint plausibly alleges direct liability because it alleges all three calls promoted Nano's products and that "an individual associated with the final call gave a callback number (with an extension) that is directly associated with Nano Hearing." (ECF No. 7, 10–11.)

Direct liability under the TCPA applies only to persons or entities that directly "make" or "initiate" calls, which requires "tak[ing] the steps necessary to physically place" the call. *Sheski v. Shopify (USA) Inc.*, No. 19-CV-06858-HSG, 2020 WL 2474421, at *2 (N.D. Cal. May 13, 2020) (analyzing claim under section 227(b) of TCPA) (citing *In re Dish Network, LLC*, 28

Case 1:26-cv-00659-KM     Document 32-1     Filed 07/15/26     Page 7 of 43

Brown v. Nano Hearing Tech Opco, LLC, Not Reported in Fed. Supp. (2024)

F.C.C. Rcd. 6574, 6583 ¶ 26 (2013)); *see Naiman v. Freedom Forever, LLC*, No. 19-CV-00256-JSC, 2019 WL 1790471, at *4 (N.D. Cal. Apr. 24, 2019) (applying substantially similar rule to claims asserted under TCPA section 227(c)).

Here, Brown merely alleges "on information and belief" that these phone numbers belonged to Nano or Nano's agent. (ECF No. 1, ¶¶ 30–32.) The Complaint does not explain the reasons behind this belief. In her Opposition, Brown explains that she believed these numbers belonged to Nano or its agent because the callers promoted Nano Hearing Aids to her and because one of the calls was transferred to a phone number that connects to Nano. (ECF No. 7, 11.) Brown does not allege that any of the callers identified themselves as representatives of Nano. These allegations are insufficient to establish that Nano directly made the calls. *See Canary v. Youngevity Int'l, Inc.*, No. 5:18-CV-03261-EJD, 2019 WL 1275343, at *3 (N.D. Cal. Mar. 20, 2019) (holding "the Complaint lacks sufficient facts to support a plausible inference that [the defendant] dialed [the plaintiff's] telephone number" where plaintiff only alleged the calls were made by defendant's agent based on "understanding and belief" and a callback number which reached an individual who may have been employed by defendant); *Naiman*, No. 19-CV-00256-JSC, 2019 WL 1790471, at *4 (finding allegations that "Defendant made the calls in question" without "further details (i.e., how the caller identified itself or what entity it was calling on behalf of)" did not show direct liability for DNC claim).

Further, the only caller whose identity Brown describes in the Complaint identified himself as an employee of Life Care, not Nano. (ECF No. 1, ¶ 32.) Brown does not allege that "Life Care" is Nano or affiliated with Nano. In addition, the only phone number which Brown alleges she called is the alleged callback number, 619-348-6968 ("619 Number"). (Id.) Even if the Court takes Brown's allegation that the 619 Number belongs to Nano as true, the Complaint indicates that no call was placed *from* the 619 Number. The allegation that, after being transferred from a representative of Life Care, someone identified only as "Ken" gave Brown a callback number that reaches Nano is insufficient to show that Nano made any of the calls to Brown. (See id.)

## II. Vicarious TCPA Liability

**\*4** "[A] defendant may be held vicariously liable for TCPA violations where the plaintiff establishes an agency relationship, as defined by federal common law, between the defendant and a third-party caller." *Gomez v. Campbell-Ewald Co.*, 768 F.3d 871, 879 (9th Cir. 2014), *aff'd but criticized on other grounds*, 577 U.S. 153 (2016), *as revised* (Feb. 9, 2016). "To determine whether a plaintiff has established an agency relationship, the Ninth Circuit 'relies on the Restatement (Third) of Agency.' " *Ewing v. Freedom Forever, LLC*, No. 23-CV-1240 JLS (AHG), 2024 WL 221777, at *7 (S.D. Cal. Jan. 19, 2024) (quoting *Kristensen v. Credit Payment Servs. Inc.*, 879 F.3d 1010, 1014 (9th Cir. 2018)). Common law agency under the Restatement requires a consensual relationship between an alleged principal and agent. Restatement (Third) of Agency, § 1.01, cmt. C. This is "more than mere passive permission; it involves request, instruction, or command." *Klee v. United States*, 53 F.2d 58, 61 (9th Cir. 1931). "For an agency relationship to exist, an agent must have authority to act on behalf of the principal and '[t]he person represented [must have] a right to control the actions of the agent.' " *Mavrix Photographs, LLC v. Livejournal, Inc.*, 873 F.3d 1045, 1054 (9th Cir. 2017) (quoting Restatement (Third) Of Agency § 1.01, cmt. C). "Though 'the precise details of the agency relationship need not be pleaded to survive a motion to dismiss, sufficient facts must be offered to support a reasonable inference that an agency relationship existed.' " *Ewing*, No. 23-CV-1240 JLS (AHG), 2024 WL 221777, at *7 (quoting *Kristensen*, 12 F. Supp. 3d at 1301).

"Three theories of agency could support vicarious liability: (1) actual authority; (2) apparent authority; and (3) ratification." *Abante Rooter & Plumbing v. Farmers Grp., Inc.*, No. 17-CV-03315-PJH, 2018 WL 288055, at *4 (N.D. Cal. Jan. 4, 2018) (citing *Thomas*, 582 Fed. App'x at 679).

Case 1:26-cv-00659-KM    Document 32-1    Filed 07/15/26    Page 8 of 43

Brown v. Nano Hearing Tech Opco, LLC, Not Reported in Fed. Supp. (2024)

### i. Actual Authority

Nano argues Brown failed to allege sufficient facts to establish that Nano had an agency relationship with any third parties who allegedly placed the calls. (ECF No. 6, 12–13.) In response, Brown argues the Complaint plausibly alleges actual authority because it alleges all three calls promoted Nano's products and Nano's phone number was provided as a callback number in the last call. (ECF No. 7, 12–14.)

To allege actual authority, a plaintiff must allege facts showing that (1) the principal "controlled or had the right to control" the agent; (2) the principal " 'manifest[ed] assent' to their right to control" the agent; and (3) the principal "either communicated a direction to" the agent to make the calls or the calls were "consistent with" the principal's "general statement of what [the agent] [was] supposed to do." *Pascal*, No. 19-CV-02418-DMR, 2019 WL 5212961, at *3 (quoting *Mavrix*, 873 F.3d at 1054).

Here, Brown's conclusory allegations are also insufficient to show actual authority. Brown does not allege that any of the callers identified themselves as Nano's agents or had any interactions with Nano. Brown's allegations that "[u]pon information and belief, [each] number belongs to Defendant and/or Defendant's agent" are conclusory and insufficient to plead vicarious liability. (ECF No. 1, ¶¶30–32); *see Naiman*, No. 19-CV-00256-JSC, 2019 WL 1790471, at *4 (finding "boilerplate allegation asserting the existence of an agency relationship" that "each and every Defendant was acting as an agent and/or employee of each of the other Defendants" "is wholly conclusory" and insufficient to plead vicarious liability).

Further, even if Brown had sufficiently alleged Life Care made the third call on Nano's behalf, she still fails to allege facts showing the three prongs necessary for actual authority. There are no allegations supporting the existence of an agency relationship between the two companies, any "request, instruction, or command," *Klee*, 53 F.2d at 61, or that Nano demonstrated "a right to control the actions of [an] agent." *Restatement (Third) Of Agency § 1.01*, cmt. C. Since Brown has failed to allege "sufficient facts ... to support a reasonable inference that an agency relationship existed," *Ewing*, No. 23-CV-1240 JLS (AHG), 2024 WL 221777, at *7, she cannot hold Nano liable under vicarious liability through actual authority. *See Panacci v. A1 Solar Power, Inc.*, No. 15-CV-00532-JCS, 2015 WL 3750112, at *7 (N.D. Cal. June 15, 2015) (finding no vicarious liability where plaintiff did not allege that defendant "controlled, authorized, or even knew about [third party's] phone calls or that [defendant] had any control over" the caller, and where plaintiff pleaded "virtually no [factual] allegations regarding the relationship" between defendant and the caller). Finally, Brown also fails to allege any facts that connect Life Care or Nano to the first two calls she received, as the calls came from different phone numbers, and Brown does not allege any identifying information of either caller.

**\*5** Brown made nearly identical arguments in *Barnes v. SunPower Corp.*, No. 22-CV-04299-TLT, 2023 WL 2592371 (N.D. Cal. Mar. 16, 2023), and the Northern District of California rejected them for the same reasons. The *Barnes* court explained, "[a]ccording to Plaintiff Brown, the ability of the caller to transfer her directly to ... [']Sarah at [Defendant] indicates that the caller either worked at [Defendant] or was previously authorized to the place the call by [Defendant], as did the confirmatory text and email,' but this allegation is conclusory and insufficient to establish that Defendant directly made the call or that Defendant has an agency relationship with 'solar project' who made the initial call." No. 22-CV-04299-TLT, 2023 WL 2592371, at *3 (citation omitted). Similarly here, even if the 619 Number belongs to Nano, this allegation is insufficient to establish that Nano made or authorized any of the calls through an agent.

This case is unlike *Ewing*, where this Court found the plaintiff alleged actual authority by pleading "each of the [ ] callers indicated that they were acting on behalf of Freedom Forever, either by introducing themselves as a 'master dealer' for Freedom Forever, indicating that they refer leads to Freedom Forever, or emailing links to websites associated with Freedom Forever." No. 23-CV-1240 JLS (AHG), 2024 WL 221777, at *7. The *Ewing* Court also relied on the facts of *Bilek v. Fed. Ins. Co.*, 8 F.4th 581 (7th Cir. 2021), where the Seventh Circuit "determined that the plaintiff had met his burden by pleading that: (1)

Case 1:26-cv-00659-KM    Document 32-1    Filed 07/15/26    Page 9 of 43

Brown v. Nano Hearing Tech Opco, LLC, Not Reported in Fed. Supp. (2024)

the defendant authorized the callers to make calls using its approved scripts, tradename, and proprietary information; (2) the callers quoted him the defendant's health insurance[;] and (3) the defendant provided said callers those quotes and permitted said callers to enter information into its system." *Id.* (citing 8 F.4th at 587–88). Unlike the plaintiffs in *Ewing* and *Bilek*, Brown failed to plead concrete facts meeting the elements of actual authority. *See id.*; 8 F.4th at 589.

### ii. Apparent Authority

Brown argues she also sufficiently alleged apparent authority because it is "obvious that some agreement existed between Defendant and its agents regarding the placing of calls, the promotion of Defendant's products, and the transfer of that call to Defendant." (ECF No. 7, 15.) In response, Nano argues Brown failed to plead apparent authority because the allegations do not sufficiently connect Nano to the callers, and the caselaw she relies on was overruled. (ECF No. 10, 3–5.)

An agency relationship may also be created through apparent authority. *Mavrix Photographs, LLC*, 873 F.3d at 1054 (citation omitted). "Apparent authority results when the principal does something or permits the agent to do something which reasonably leads another to believe that the agent had the authority he purported to have." *Hawaiian Paradise Park Corp. v. Friendly Broad. Co.*, 414 F.2d 750, 756 (9th Cir. 1969). "The principal's manifestations giving rise to apparent authority may consist of direct statements to the third person, directions to the agent to tell something to the third person, or the granting of permission to the agent to perform acts and conduct negotiations under circumstances which create in him a reputation of authority." *Id.* (citation omitted). Apparent authority "can only 'be established by proof of something said or done by the [alleged principal], on which [the plaintiff] reasonably relied.' " *Thomas*, 582 F. App'x at 679 (quoting *NLRB v. Dist. Council of Iron Workers of Cal. & Vicinity*, 124 F.3d 1094, 1099 (9th Cir. 1997)).

Here, Brown's apparent authority theory fails because Brown fails to allege any facts of interaction between Nano and Brown or Nano and the callers that could support a belief that the callers had authority to make calls on Nano's behalf. *See Thomas*, 582 F. App'x at 679. Allegations of the alleged agents' statements alone are insufficient. *See Hawaiian Paradise Park Corp.*, 414 F.2d at 756; *Hanson v. Am. W. Airlines, Inc.*, 544 F. Supp. 2d 1038, 1043 (C.D. Cal. 2008) ("Only the acts of the principal, not of the agent, give rise to apparent authority.") (citing *C.A.R. Transp. Brokerage Co., Inc. v. Darden Restaurants, Inc.*, 213 F.3d 474, 479 (9th Cir. 2000)).

**\*6** Brown's arguments in her Opposition also fail. Brown relies on a single case to support an apparent authority theory based entirely on the actions of the callers, but the case was overruled on the exact ground for which Brown relies on it. (ECF No. 7, 16); *see Mey v. Monitronics Int'l, Inc.*, 959 F. Supp. 2d 927 (N.D.W. Va. 2013), *subsequently rev'd sub nom. In re: Monitronics Int'l, Inc., Tel. Consumer Prot. Act Litig.*, 223 F. Supp. 3d 514, 527 (N.D.W. Va. 2016), *aff'd sub nom. Hodgin v. UTC Fire & Sec. Americas Corp.*, 885 F.3d 243 (4th Cir. 2018) ("This Court is well aware that in so ruling, I am rejecting the prior decision of this Court in this case[:] *Mey v. Monitronics International, Inc.*, 959 F.Supwp.2d 927 (N.D.W. Va. 2013)."). Brown argues, "[s]imilarly to *Mey*, Plaintiff here has clearly pled that the representatives on the calls were holding themselves out as representatives of Defendant." (ECF No. 7, 16.) In overruling *Mey*, the *Monitronics* court held that "the fact that entities were permitted to hold themselves out as authorized dealers or some similar description is insufficient" to hold a defendant vicariously liable. *In re: Monitronics International, Inc., Telephone Consumer Protection Act Litigation*, 223 F. Supp. 3d at 527–28; *see also Makaron v. GE Sec. Mfg., Inc.*, No. CV-14-1274-GW AGRX, 2015 WL 3526253, at \*10 (C.D. Cal. May 18, 2015) (disagreeing generally with the conclusion reached in *Mey*, 959 F. Supp. 2d, that an agreement allowing an entity to hold itself out as an authorized dealer of another's products was sufficient to establish apparent authority). The court explained this is because "the mere fact that a dealer uses a supplier[']s name does not render it an agent of the supplier, just as every bar

Case 1:26-cv-00659-KM    Document 32-1    Filed 07/15/26    Page 10 of 43

Brown v. Nano Hearing Tech Opco, LLC, Not Reported in Fed. Supp. (2024)

which advertises that they sell a particular brand of beer is not the agent of the brewery whose name they advertise." *In re: Monitronics Int'l, Inc., Tel. Consumer Prot. Act Litig.*, 223 F. Supp. 3d at 527–28.

### iii. Ratification

In response to Nano's arguments that Brown failed to plead vicarious liability, Brown argues the Complaint also alleges vicarious liability through a theory of ratification because Nano "ratified its agent's actions through accepting the benefits of their telemarketing services." (ECF No. 7, 16–17.) Nano responds that the Complaint never mentions ratification, and that a vicarious liability theory based on ratification fails regardless because it still requires proof of an agency relationship. (ECF No. 10, 6–7.)

"Ratification is the affirmance of a prior act done by another, whereby the act is given effect as if done by an agent acting with actual authority." Restatement (Third) Of Agency § 4.01. "A person ratifies an act by (a) manifesting assent that the act shall affect the person's legal relations, or (b) conduct that justifies a reasonable assumption that the person so consents." *Id.* "The set of effects that ratification creates are the consequences of actual authority." *Id.*, cmt. B. "Although a principal is liable when it ratifies an originally unauthorized tort, the principal-agent relationship is still a requisite, and ratification can have no meaning without it." *Batzel v. Smith*, 333 F.3d 1018, 1036 (9th Cir. 2003), *superseded in part by statute on other grounds as stated in Breazeale v. Victim Servs., Inc.*, 878 F.3d 759, 766–67 (9th Cir. 2017).

Here, Brown's ratification theory fails for the same reasons her other vicarious liability theories fail: she has not sufficiently pleaded an agency relationship. The Complaint lacks facts alleging that Nano acted as a principle or that it ratified any of the alleged conduct. Brown "cannot show [Nano] is liable under a ratification theory because 'the principal-agent relationship is still a requisite.' " *Abante Rooter & Plumbing*, No. 17-CV-03315-PJH, 2018 WL 288055, at *6 (quoting *Batzel*, 333 F.3d at 1036).

Accordingly, the Court **GRANTS** Nano's FRCP 12(b)(6) Motion to Dismiss with leave to amend.

### B. Motion to Dismiss for lack of subject matter jurisdiction under 12(b)(1)

### I. Article III Standing

Next, Nano argues that Brown's Complaint should be dismissed for lack of subject matter jurisdiction under FRCP 12(b)(1) because it fails to meet the causation and redressability elements of Article III standing.

Standing is a necessary element of federal court jurisdiction under Article III of the U.S. Constitution. *Warth v. Seldin*, 422 U.S. 490, 498 (1975). Accordingly, standing is a "threshold question in every federal case." *Thomas v. Mundell*, 572 F.3d 756, 760 (9th Cir. 2009) (citing *Warth*, 422 U.S. at 498.). To establish standing, (i) a plaintiff must have suffered a "concrete and particularized" "injury in fact"; (ii) "there must be a causal connection between the injury and the conduct complained of" ("causation"); and (iii) the injury must be capable of being "redressed by a favorable decision" ("redressability"). *Lujan*, 504 U.S. at 560–61. "In a class action, standing is satisfied if at least one named plaintiff meets the requirements." *Bates v. United Parcel Serv.*, 511 F.3d 974, 985 (9th Cir. 2007).

**\*7** For causation, "the injury has to be 'fairly ... trace[able] to the challenged action of the defendant, and not ... th[e] result [of] the independent action of some third party not before the court.' " *Lujan*, 504 U.S. at 560–61 (quoting *Simon v. Eastern*

*Ky. Welfare Rights Organization*, 426 U.S. 26, 41–42 (1976)). In order to establish causation under a theory of vicarious liability, the plaintiff must show a causal relationship between the agent making the calls and the actions of the principle. ⚑*Freidman v. Massage Envy Franchising, LCC*, No. 3:12-CV-02962-L-RBB, 2013 WL 3026641, at *4 (S.D. Cal. June 13, 2013). For redressability, "it must be 'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.' " ⚑*Lujan*, 504 U.S. at 561 (quoting ⚑*Simon*, 426 U.S. at 38, 43).

Here, Nano argues Brown's complaint fails for many of the reasons discussed above. First, the Complaint fails to plead causation. As explained above, the Complaint does not establish direct or vicarious liability because Brown fails to allege facts showing that Nano or an agent of Nano placed any of the calls. *See, e.g.,* ⚑*Freidman*, No. 3:12-CV-02962-L-RBB, 2013 WL 3026641, at *4 (finding no Article III standing where plaintiff did not plead direct or vicarious liability); ⚑*Biggins v. Wells Fargo & Co.*, 266 F.R.D. 399, 414 (N.D. Cal. 2009) (finding allegations that "all of the named Defendants engaged in the conduct alleged and caused each of them injury" and that one defendant "is an 'agent, subsidiary, parent, joint venturer or predecessor' " of another are insufficient for standing). Accordingly, Brown's injury is not fairly traceable to Nano. ⚑*Lujan*, 504 U.S. at 560–61 (citation omitted). Further, the absence of facts establishing this connection to Nano leaves room for a substantial possibility that any injury was "th[e] result [of] the independent action of some third party not before the court." *Id.* (citation omitted).

Second, the Complaint also fails to plead redressability. Since the injury may have been caused by someone other than Nano, a decision favorable to Brown and against Nano would not necessarily redress the injury. *See* ⚑*Simon*, 426 U.S. at 41.

Since causation and redressability are speculative at best, Brown lacks standing.

## II. Injunctive Relief

Nano also argues Brown's Complaint lacks standing to seek injunctive relief. (ECF No. 6, 14–15.) In response, Brown argues the Complaint plausibly alleged future harm for purposes of injunctive relief. (ECF No. 7, 17–18.)

"[A] plaintiff must demonstrate standing separately for each form of relief sought." ⚑*Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 185 (2000) (citations omitted). For injunctive relief, the threat of injury must be "actual and imminent," or "*certainly impending,*" not merely conjectural or hypothetical. ⚑*Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 967 (9th Cir. 2018) (quoting ⚑*Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009)); ⚑*Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (quoting ⚑⚠*Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990)). "Allegations of possible future injury do not satisfy the requirements." ⚑⚠*Whitmore*, 495 U.S. at 158. "Where standing is premised entirely on the threat of repeated injury, a plaintiff must show 'a sufficient likelihood that he will again be wronged in a similar way.' " ⚑*Davidson*, 889 F.3d at 967 (citing ⚑*City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983)). "Past exposure to harmful or illegal conduct does not necessarily confer standing to seek injunctive relief if the plaintiff does not continue to suffer adverse effects." ⚑*Mayfield v. United States*, 599 F.3d 964, 970 (9th Cir. 2010) (citing ⚑*Lujan*, 504 U.S. at 560).

**\*8** Here, Brown requests injunctive relief in her Complaint. (ECF No. 1, 14, ¶ 60 ("Plaintiff and the class are also entitled to an injunction against future calls.").) However, Brown fails to allege any likelihood of future injury. The Complaint does not allege any facts regarding potential future calls. In addition, Brown alleges she received three calls within one month in 2023 and does not allege she has received any additional calls since then. (ECF No. 1, ¶¶ 30–32.) The timing and number of calls do

Case 1:26-cv-00659-KM    Document 32-1    Filed 07/15/26    Page 12 of 43

Brown v. Nano Hearing Tech Opco, LLC, Not Reported in Fed. Supp. (2024)

not show "a sufficient likelihood that [s]he will again be wronged in a similar way." *Lyons*, 461 U.S. at 111; *see Koby v. ARS Nat'l Servs., Inc.*, 846 F.3d 1071, 1079 (9th Cir. 2017) ("The fact that a class member was a target of collection efforts sometime between 2008 and 2011, however, does not without more establish that he or she would likely be contacted by ARS again after October 2013."); *Miller v. Time Warner Cable Inc.*, No. 816CV00329CASASX, 2016 WL 7471302, at *4 (C.D. Cal. Dec. 27, 2016) (granting motion to dismiss plaintiff's claims for injunctive relief because, without evidence to the contrary, "the risk [defendant] will continue to make unsolicited phone calls to plaintiff's phone is too speculative to establish a real or immediate threat of repeated injury."). Brown's conclusory argument in her Opposition that the Complaint "demonstrated a pattern of unlawful behavior that will not cease without court intervention" does not resolve the lack of any facts alleging that this pattern would continue. (ECF No. 7, 17.) Thus, Brown lacks standing to seek injunctive relief.

Accordingly, the Court **GRANTS** Nano's FRCP 12(b)(1) Motion to Dismiss with leave to amend.

### C. Motion to Strike class allegations under 12(f) and 23

Next, Nano moves to strike class allegations from the Complaint on two grounds. First, Nano argues Brown's class allegations should be stricken as overbroad. (ECF No. 6, 15–17.) Second, Nano argues Brown's class allegations should be stricken because Brown is not a member of the class she seeks to represent. (Id. at 17–18.) Brown responds to both arguments that "the class allegations have been sufficiently pled," "the proposed class may evolve throughout discovery," and regardless, the Court should not rule on class issues prior to a motion for class certification. (ECF No. 7, 18–19.)

### I. Sufficiency of Class Definition

A defendant may move to strike class allegations before discovery when the complaint shows a class action could not be maintained on the facts alleged. *Sanders*, 672 F. Supp. 2d at 990. "[N]o class may be certified that contains members lacking Article III standing." *Id.* at 991 (quoting *Denney v. Deutsche Bank AG*, 443 F.3d 253, 264 (2d Cir. 2006)). In *Sanders*, the court granted a motion to dismiss and struck class allegations under FRCP 12(f) because the class definition "include[d] all persons within the United States who own a 20–inch Aluminum iMac," which "necessarily include[d] individuals who did not purchase their 20–inch Aluminum iMac, individuals who either did not see or were not deceived by advertisements, and individuals who suffered no damages." *Id.* The court explained that "[s]uch individuals would lack standing to bring these claims." *Id.*

Here, the class definition is overly broad because it fails to exclude any members who may have consented to receiving phone calls from Nano. The TCPA expressly precludes claims made by individuals who consented to be called. 47 U.S.C. § 227(b)(1)(A) (excluding from liability any call "made with the prior express consent of the called party.") Brown's class definition necessarily includes any individuals who have consented to calls from Nano. (*See* ECF No. 1, ¶ 41.) Like in *Sanders*, these individuals would also lack standing. 672 F. Supp. 2d at 991; *see Hernandez*, No. 16CV200-LAB (JLB), 2017 WL 932198, at *6 (striking class allegations in part "[b]ecause the class definition includes insureds who were not injured at all.").

### II. Typicality

Rule 23(a)(3) requires that an individual plaintiff's claims be typical of those that the proposed class would advance. Fed. R. Civ. P. 23(a)(3). The test for Rule 23(a) typicality is "whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by

Case 1:26-cv-00659-KM   Document 32-1   Filed 07/15/26   Page 13 of 43

**Brown v. Nano Hearing Tech Opco, LLC, Not Reported in Fed. Supp. (2024)**

the same course of conduct." *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 984 (9th Cir. 2011). "[A] class representative must be part of the class and 'possess the same interest and suffer the same injury' as the class members." *E. Texas Motor Freight Sys. Inc. v. Rodriguez*, 431 U.S. 395, 403 (1977) (quoting *Schlesinger v. Reservists Comm. to Stop the War*, 418 U.S. 208, 216 (1974)).

**\*9** Here, Brown has not alleged that she falls into her own class definition. For the reasons discussed above, Brown failed to plead she was injured by Nano because the Complaint does not sufficiently allege the calls were made by Nano or its agent. As a result, her claims cannot be typical of those that the proposed class would advance, and other class members cannot "have been injured by the same course of conduct." *Ellis*, 657 F.3d at 984. Since the Complaint does not name any other plaintiffs, the purported class lacks typicality. *See Galan Segura v. CRST Van Expedited, Inc.*, No. EDCV1201901TJHSPX, 2014 WL 12567799, at \*2 (C.D. Cal. June 16, 2014) (denying class certification in part for lack of typicality because the named plaintiff "has not suffered any injuries under the alleged [ ] violations ... and, therefore, is not a class member.").

Accordingly, the Court **GRANTS** Nano's FRCP 12(f) Motion to Strike class allegations with leave to amend.

## IV. CONCLUSION

For the reasons discussed above, Nano's Motion to Dismiss Brown's Complaint under FRCP 12(b)(6) and 12(b)(1) is **GRANTED.** Nano's Motion to Strike class allegations from the Complaint under FRCP 12(f) and 23 is also **GRANTED**. Brown has leave to file an amended complaint by August 6, 2024.

**IT IS SO ORDERED.**

**All Citations**

Not Reported in Fed. Supp., 2024 WL 3367536

---

**End of Document**

© 2026 Thomson Reuters. No claim to original U.S. Government Works.

Case 1:26-cv-00659-KM    Document 32-1    Filed 07/15/26    Page 14 of 43

Callier v. American-Amicable Life Insurance Company of Texas, Not Reported in Fed. Supp. (2022)

2022 WL 17732717
Only the Westlaw citation is currently available.
United States District Court, W.D. Texas, El Paso Division.

Brandon CALLIER, Plaintiff,

v.

AMERICAN-AMICABLE LIFE INSURANCE COMPANY OF TEXAS, a Florida Corporation, Defendant.

EP-22-CV-00018-FM
|
Signed October 18, 2022

**Attorneys and Law Firms**

Brandon Callier, El Paso, TX, Pro Se.

Danielle A. Gilbert, Husch Blackwell LLP, Austin, TX, for Defendant.

## ORDER DENYING MOTION TO DISMISS

FRANK MONTALVO, UNITED STATES DISTRICT JUDGE

**\*1** Before the court are "Plaintiff's Second Amended Complaint" ("Complaint") [ECF No. 24], filed August 9, 2022, by Brandon Callier ("Plaintiff") and "Defendant American-Amicable's Motion to Dismiss Plaintiff's Second Amended Complaint" ("Motion") [ECF No. 26], filed August 23, 2022, by American Amicable Life Insurance Company of Texas ("Defendant"). In its Motion, Defendant moves to dismiss Plaintiff Brandon Callier's claims pursuant to Federal Rules of Civil Procedure ("Rule") 8(a), 10(b), and 12(b)(6).[1] After due consideration of the Complaint, Motion, and applicable law, the Motion is **DENIED**.

## I. BACKGROUND

*A. Factual Background*

At this stage, the court accepts all non-conclusory allegations in the Complaint as true. They are as follows: Plaintiff has at all relevant times been on the National Do-Not-Call Registry ("DNC").[2] Nevertheless, throughout November and December 2021, he received nineteen cell phone calls featuring a prerecorded message ("Hi, this is Kate from Senior Benefits") soliciting senior life insurance products.[3] Plaintiff consented to none of these calls, and none had an emergency purpose.[4]

On one such call, Plaintiff opted to be connected to a representative who asked certain qualifying questions to determine if Plaintiff was eligible for the life insurance products being sold; upon hearing Plaintiff was only forty-seven years old, the telemarketer hung up.[5] Plaintiff continued to receive prerecorded calls from "Kate." During one of these calls he again opted to connect to a representative, but this time he claimed he was fifty years old "to qualify for an insurance policy in order to find out who was behind the calls."[6] Now qualified, Plaintiff was promptly transferred to Ms. Sophia Ahmed, an insurance agent for Defendant, "who sold Plaintiff a life insurance policy."[7] Shortly thereafter, Plaintiff received a life insurance policy from Defendant American-Amicable Life Insurance Company of Texas.[8]

Case 1:26-cv-00659-KM     Document 32-1     Filed 07/15/26     Page 15 of 43

Callier v. American-Amicable Life Insurance Company of Texas, Not Reported in Fed. Supp. (2022)

### B. Procedural Background

Plaintiff filed his Complaint in August 2022, raising three claims for relief: damages from "non-emergency telemarketing robocalls" in violation of the Telephone Consumer Protection Act ("TCPA") [9]; damages from solicitation to his private phone number, which was listed on the DNC, in violation of the TCPA [10]; and damages pursuant to the Texas Business and Commerce Code, which prohibits telephone communications for purposes of solicitation. [11]

Defendant subsequently filed its Motion, arguing Plaintiff's complaint should be dismissed, first, for failure to meet "basic pleading standards under Rules 8 and 10" by improperly conflating and failing to differentiate between the parties and non-parties. [12] Second, Defendant asserts Plaintiff has not stated a claim for relief as his allegations 1) do not demonstrate vicarious liability and 2) are "entirely conclusory." [13]

## II. LEGAL STANDARD

 **\*2** Rules 8 and 10 pertain to pleading clarity. Rule 8 requires a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." [14] "Each allegation must be simple, concise, and direct." [15] Rule 10 requires a party to "state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances." [16]

Rule 12(b)(6) pertains to a pleading's substance, requiring dismissal of a complaint when it fails "to state a claim for which relief can be granted." [17] To survive a motion to dismiss, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." [18] "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." [19] Facial plausibility exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." [20] Therefore, a complaint is not required to set out "detailed factual allegations," but it must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." [21] Although the court must accept well-pleaded allegations in a complaint as true, it does not afford conclusory allegations similar treatment. [22]

## III. DISCUSSION

Defendant argues Plaintiff's complaint should be dismissed pursuant to Rules 8(a) and 10(b) for failure to meet pleading standards and Rule 12(b)(6) for failure to state a plausible claim for relief. Defendant's overwrought, disingenuous contentions fail at every step.

### A. Failure to Meet Pleading Standards

Defendant complains that Plaintiff has improperly conflated alleged acts by Defendant and Defendant's insurance agent, Ms. Ahmed, who, until recently, was also a defendant in this case. [23] Specifically, Defendant points to Plaintiff's vague, occasional use of 1) "Defendant" in the singular and 2) "Defendants" without specification. [24] Defendant also takes issue with Plaintiff's imprecise reference to the actions by Ms. Ahmed "and/or" Defendant and by Defendants "and/or their affiliates or agents." [25]

According to Defendant, courts "consistently" dismiss "such facially-deficient pleadings ..., even in *pro se* cases." [26] Defendant cites several unreported, out-of-circuit cases. To say none of them are on point is putting it mildly. The best Defendant can muster is *Ewing v. GoNow Travel Club, LLC* [27] and *Cunningham v. Lifestyles Development, LLC*, [28] both of which pertained to inadequate pleading in the TCPA context. In *Ewing*, the plaintiffs' pleading failed because it lumped together and asserted TCPA claims against multiple defendants, any one of whom was alleged to be the possible source behind the violative calls. [29] That is not the case here as Defendant is the only alleged principal.

**\*3** In *Cunningham*, the plaintiff failed to demonstrate that the entity who physically made the telemarketing call (inviting him to a time share seminar) had any principal-agency relationship with the defendant, which was one of several commercial entities involved in the seminar.[30] There was no indication the defendant had any control over, or even knew about, the violative calls. Thus, *Cunningham* is also inapposite as the alleged principal-agency relationship here is direct and straightforward: Defendant is the alleged principal, Ms. Ahmed its agent, and an unnamed telemarketer a subagent.[31]

Furthermore, Defendant is plainly wrong that Plaintiff's complaint is inadequately pled. The "liberal" pleading standards of the Federal Rules of Civil Procedure aim simply to ensure a defendant has "fair notice of the basis for" a plaintiff's claims.[32] Here, Plaintiff has provided a "short and plain statement" outlining his claim, as required by Rule 8(a), and he has done so in a way that clearly indicates agency relationships between Defendant, Ms. Ahmed, and the telemarketer. His pleadings easily put Defendant on notice, apprising it of the nature of his claims, which he has stated "in numbered paragraphs, each limited as far as practicable to a single set of circumstances," as required by Rule 10(b).[33] Additionally, the court must hold complaints by *pro se* litigants "to less stringent standards than formal pleadings drafted by lawyers."[34] Even if that were not the case, however, the court finds Plaintiff's Complaint is pled with sufficient clarity.

That said, it is true that Plaintiff does occasionally "conflate" Defendant and Ms. Ahmed. When he does, however, his allegations pertain to the relationship between Defendant "and/or" Ms. Ahmed, on the one hand, and the actual telemarketer, on the other. For example, he alleges "Ahmed and/or [Defendant] contracted with an unknown third-party telemarketer to market and solicit insurance products."[35] But such an allegation is permissible for two reasons. First, Plaintiff has no way of knowing who directly hired the telemarketer, although chances are it would have been Defendant and not Ms. Ahmed. Second, even if it had been Ms. Ahmed, she and Defendant allegedly had a principal-agency relationship, meaning Defendant, the principal, may be liable for her conduct to the extent she was acting as an agent for and on behalf of Defendant.[36] Therefore, the outcome is the same whether Defendant directly hired the telemarketer or Ms. Ahmed did: Defendant may be on the hook.

*B. Failure to State a Claim for Relief*

Defendant next asserts Plaintiff has failed to state a claim upon which relief can be granted. Plaintiff's claims for relief arise from Defendant's alleged 1) non-emergency telemarketing[37]; 2) solicitation to a DNC-registered phone number[38]; and 3) violations of the Texas Business and Commerce Code, which prohibits telephone solicitations.[39]

a. Non-Emergency Telemarketing

**\*4** Under the TCPA, it is "unlawful for any person within the United States ... to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using ... an artificial or prerecorded voice ... to any telephone number assigned to a ... cellular telephone service."[40] Further, "under federal common-law principles of agency, there is vicarious liability for TCPA violations."[41] Under Texas law, a principal-agency relationship exists when an individual has actual or apparent authority to act on behalf of another or the latter ratifies the actions of former.[42]

Plaintiff asserts Defendant made, authorized, or ratified "non-emergency telemarketing robocalls" to his cell phone "without his prior express written consent."[43] Defendant does not dispute Plaintiff received violative calls. Instead, Defendant simply claims Plaintiff failed to allege any facts supporting an agency relationship and therefore vicarious liability.[44]

Defendant again fortifies its position primarily with unreported, inapposite, misapplied, out-of-circuit cases.[45] Yet even a cursory review of this court's TCPA caselaw demonstrates Plaintiff has plausibly alleged an agency relationship between Defendant and the unnamed telemarketer and therefore vicarious liability.

In *Callier v. National United Group, LLC*, this same plaintiff allegedly received a robocall, requested to connect to a live representative, and was then told by the telemarketer she would call him back so he could talk to a sales agent.[46] Mr. Callier received a call back shortly thereafter.[47] This court noted:

> Mr. Callier's information was provided to [the defendant] from the initial telemarketing call and [the defendant] subsequently contacted him because of the telemarketing call. The immediacy between the two calls and the purpose of both imply that the call back was closely linked to the preceding prerecorded call. The proximity and relatedness of these calls allows for a plausible inference that the first prerecorded call was made by or on behalf of [the defendant].[48]

The calls in this case are even more closely connected since no call back was necessary: Plaintiff was connected directly to Ms. Ahmed on the same initial call.[49]

In *Callier v. MultiPlan, Inc.*, although our intrepid litigator failed to identify which of three defendants was the principal, the agent, or the beneficiary behind the robocalls, the court nevertheless "reasonably infer[red] the existence of an agency relationship amongst" them because Mr. Callier claimed they had "authorized a third-party telemarketer to generate prospective customers."[50] "At the very least," this and other allegations suggested one of the defendants "was a principal that authorized other [d]efendants to make robocalls on its behalf or, alternatively, ratified the robocalls by accepting the benefits they yielded."[51]

When Mr. Callier has failed, it has been because he did not directly connect the sale of a solicited product to the original "producer" of that product. In *Callier v. SunPath Ltd.*, he allegedly purchased car warranty policies from an unnamed telemarketer—but he learned the policies were covered by the defendants only after those policies were mailed to his house.[52] The "mere fact that telemarketing calls were made on behalf of" the defendants, however, did not suffice to establish an agency relationship: although the defendants "undoubtedly benefited from the marketing calls, nothing in the pleadings indicate[d] either were aware of the actions allegedly in violation of the TCPA."[53]

**\*5** Such is not the case here. Plaintiff alleges Ms. Ahmed or Defendant "contracted with an unknown third-party telemarketer to market and solicit [its] insurance products," "supplied the telemarketer with the age, health, income, and state of residence requirements to purchase [those] insurance products," "provided the telemarketer with access to real-time quotes and pricing information for the solicited life insurance products," "authorized the third-party telemarketer to generate automated phone calls with prerecorded voice message scripts," and "gave access to proprietary information to the third-party telemarketer to assist in the robocalling campaign."[54] The telemarketer then called Plaintiff numerous times.[55] Once Plaintiff met the criteria to purchase Defendant's life insurance policy, he was transferred directly to Ms. Ahmed, its sales agent, who sold him a policy.[56]

These allegations are not, as Defendant claims, "wholly conclusory and speculative."[57] Moreover, if they are true, which the court must assume at this stage, they reasonably imply an agency relationship between Defendant and the unnamed telemarketer. First, the allegations demonstrate an agency relationship between the telemarketer and Ms. Ahmed given her direct involvement in the call.[58] Second, they show an agency relationship between Ms. Ahmed and Defendant since Ms. Ahmed is a registered

Case 1:26-cv-00659-KM    Document 32-1    Filed 07/15/26    Page 18 of 43

Callier v. American-Amicable Life Insurance Company of Texas, Not Reported in Fed. Supp. (2022)

insurance agent for Defendant and sells insurance on its behalf. [59] Thus, the telemarketer was allegedly Defendant's subagent. Texas courts hold a principal vicariously liable for the tortious acts of its subagents. [60]

Accordingly, Defendant's Motion is denied with respect to Plaintiff's first claim for relief.

### b. Solicitation to a DNC-Registered Phone Number

"No person or entity shall initiate any telephone solicitation to ... [a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the Federal Government." [61] Plaintiff alleges that he has at all relevant times "been on" the DNC. [62]

Defendant contends this second claim for relief must fail for the same reason as Plaintiff's first: he has not adequately pled vicarious liability. [63] As discussed above, the court disagrees.

Defendant next argues Plaintiff's second claim for relief fails as he did not allege that *he himself* registered his number on the DNC. [64] Defendant cites *Rombough v. Robert D. Smith Ins. Agency, Inc.*, an unreported, out-of-circuit case, which dismissed a TCPA claim because the plaintiff, although she claimed her number was registered with the DNC, did not allege she had been the one to register it. [65] Defendant's contention borders on frivolous.

First, this court has already considered a TCPA claim in which a plaintiff alleged her number was registered on the DNC but did not specifically allege she did the registering. [66] That detail, however, did not doom her TCPA claim, to which this court found she was entitled to summary judgment. [67]

 **\*6** Second, *Rombough*'s nitpicky formality is thoroughly unpersuasive. The DNC is not auto-populated: it is a list of phone numbers for individuals *who have requested* that telemarketers not contact them. [68] While it is possible a third-party may have registered a plaintiff's phone number before a plaintiff acquired it, this is unlikely given how infrequently people change numbers. And it is particularly unlikely here given Plaintiff's well-documented desire that telemarketers respect his registration with the DNC. [69]

Finally, at the motion to dismiss stage, "a district court must accept a plaintiff's allegations as true and *indulge all reasonable inferences in their favor.*" [70] A supremely reasonable inference from the allegation that Plaintiff's number was registered on the DNC is that *he* did the registering.

Defendant's Motion is therefore denied with respect to Plaintiff's second claim for relief.

### c. Telephone Solicitations Under Texas State Law

Texas Business and Commerce Code provides that anyone "who receives a communication that violates" the TCPA may seek an injunction and damages "against the person who originates the communication." [71]

Defendant makes two arguments against Plaintiff's final claim. First, "[b]ecause Plaintiff's TCPA claims fail," his state law claim also fails. [72] As discussed, however, Plaintiff's TCPA claims do not fail and therefore neither must his state law claim. [73]

Case 1:26-cv-00659-KM    Document 32-1    Filed 07/15/26    Page 19 of 43

Callier v. American-Amicable Life Insurance Company of Texas, Not Reported in Fed. Supp. (2022)

Second, Defendant contends Plaintiff's state law claim should be dismissed because "allowing [him] to recover under both statutory schemes for the same alleged calls would amount to an improper double recovery." [74] But Plaintiff is not recovering anything at this stage; the court is simply assessing whether he has plausibly alleged his claims for relief. He has.

## IV. CONCLUSION

Accordingly, it is **HEREBY ORDERED** that "Defendant American-Amicable's Motion to Dismiss Plaintiff's Second Amended Complaint" [ECF No. 26] is **DENIED**.

**All Citations**

Not Reported in Fed. Supp., 2022 WL 17732717

---

**Footnotes**

| | |
|---|---|
| 1 | "Defendant American-Amicable's Motion to Dismiss Plaintiff's Second Amended Complaint" ("Mot.") 3, ECF No. 26, filed Aug. 23, 2022. |
| 2 | "Plaintiff's Second Amended Complaint" ("Compl.") 5 ¶ 21, ECF No. 24, filed Aug. 9, 2022. |
| 3 | *Id.* at 6 ¶¶ 30–31, 7–8 ¶ 36. |
| 4 | *Id.* at 6 ¶ 30. |
| 5 | *Id.* at 8 ¶ 37. |
| 6 | *Id.* at 6–7 ¶ 33, 8 ¶ 39. |
| 7 | *Id.* at 1 ¶ 3, 7 ¶ 34. |
| 8 | *Id.* at 7 ¶ 35. |
| 9 | *Id.* at 18–19; *see* 47 U.S.C. § 227(b). |
| 10 | *Id.* at 19; *see* 47 U.S.C. § 227(c)(3)(F); 47 C.F.R. § 64.1200(c). |
| 11 | *Id.* at 20; *see* TEX. BUS. & COM. 305.053. |
| 12 | Mot. at 3. |
| 13 | *Id.* at 3, 2. |
| 14 | FED. R. CIV. P. 8(a)(2). |
| 15 | *Id.* § 8(d)(1). |
| 16 | *Id.* § 10(b). |
| 17 | *Id.* § 12(b)(6). |

Callier v. American-Amicable Life Insurance Company of Texas, Not Reported in Fed. Supp. (2022)

Case 1:26-cv-00659-KM    Document 32-1    Filed 07/15/26    Page 20 of 43

18    *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

19    *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

20    *Id.* (citing *Twombly*, 550 U.S. at 556).

21    *Twombly*, 550 U.S. at 555.

22    *See Kaiser Aluminum & Chem. Sales, Inc.*, 677 F.2d 1045, 1050 (5th Cir. 1982) (citing *Associated Builders, Inc. v. Ala. Power Co.*, 505 F.2d 97, 100 (5th Cir. 1974)).

23    *See* "Order to Dismiss Sophia Ahmed," ECF No. 28, entered Sept. 13, 2022.

24    Mot. at 6; *see* Compl. at 2 ¶ 5, 10 ¶ 51, 11–12 ¶ 64, 17 ¶¶ 91–94, 18 ¶ 97, 98, 19 ¶ 3, 20.

25    Mot. at 7 (emphasis removed).

26    *Id.* at 5 (citing *Cunningham v. Politi*, No. 4:18-CV-00362-ALM-CAN, 2019 WL 2519702 (E.D. Tex. Apr. 26, 2019); *Cunningham v. Lifestyles Dev., LLC*, No. 4:19-CV-00006-ALM-CAN, 2019 WL 4282039 (E.D. Tex. Aug. 8, 2019); *Garig v. Travis*, No. 20-654-JWD-RLB, 2021 WL 2708910 (M.D. La. June 30, 2021); *Williams v. Am. Com. Lines, Inc.*, No. 20-139-SDD-EWD, 2020 WL 4574515 (M.D. La. July 23, 2020)); *see also id.* at 7 (citing *Ewing v. GoNow Travel Club, LLC*, No. 19-cv-297-BAS-AGS, 2019 WL 3253058 (S.D. Cal. July 19, 2019); *Mendoza v. J.P. Morgan Mortg. N.A.*, No. 7:17-CV-180, 2017 WL 2778250 (S.D. Tex. June 27, 2017); *Cobarobio v. Midland Cnty., Tex.*, No. MO:13-CV-00111-RAJ, 2015 WL 13608102 (W.D. Tex. Jan. 7, 2015)); id. at

27    *Ewing*, 2019 WL 3253058.

28    *Cunningham*, 2019 WL 4282039.

29    *See Ewing*, 2019 WL 3253058, at *3.

30    *Cunningham*, 2019 WL 4282039, at *4.

31    Compl. at 6 ¶ 29.

32    *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 514 (2002).

33    FED. R. CIV. P. 10(b).

34    *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378 (5th Cir. 2002).

35    Compl. at 11 ¶ 55.

36    *See Schrum v. Land*, 12 F.Supp.2d 576, 582 (S.D. Tex. 1997) ("A principal is liable for its agent's acts when the agent has actual or apparent authority to commit those acts, or when the principal ratifies them.").

37    Compl. at 18–19; *see* 47 U.S.C. § 227(b).

Case 1:26-cv-00659-KM   Document 32-1   Filed 07/15/26   Page 21 of 43

Callier v. American-Amicable Life Insurance Company of Texas, Not Reported in Fed. Supp. (2022)

38      *Id.* at 19; *see* 🚩47 U.S.C. § 227(c)(3)(F); 🚩47 C.F.R. § 64.1200(c).

39      *Id.* at 20; *see* TEX. BUS. & COM. 305.053.

40      🚩47 U.S.C. § 227(b)(1).

41      *Callier v. MultiPlan, Inc.*, No. EP-20-CV-00318-FM, LLC, 2021 WL 8053527, *15 (W.D. Tex. Aug. 26, 2021).

42      *Debaillon v. Total Minatome Corp.*, 166 F.3d 339, 1998 WL 912094, *2 (5th Cir. 1998).

43      Compl. at 9 ¶ 43, 19 ¶ 2.

44      Mot. at 15.

45      *See generally id.* at 12–17.

46      *Callier v. Nat'l United Grp., LLC*, No. EP-21-CV-71-DB, 2021 WL 5393829, *4 (W.D. Tex. Nov. 17, 2021).

47      *Id.*

48      *Id.* at 7.

49      Compl. at 7 ¶ 34.

50      *MultiPlan*, 2021 WL 8053527, at *15 (internal quotation marks omitted).

51      *Id.*

52      *Callier v. SunPath Ltd.*, W.D. Tex, 3:20-cv-00106-FM, "Plaintiff's First Amended Complaint," 6 ¶¶ 30–33, ECF No. 27, filed Sept. 9, 2020.

53      *Callier v. SunPath Ltd.*, EP-20-CV-00106-FM, 2020 WL 10285659, *3–4 (W.D. Tex. Aug. 10, 2020).

54      Compl. at 5–6. Plaintiff alleges Defendant "and/or" Ms. Ahmed did these things. Again, however, such allegations nevertheless suffice to imply Defendant's vicarious liability.

55      *Id.* at 6 ¶¶ 32–33.

56      *Id.* at 8 ¶ 39, 7 ¶ 34.

57      Mot. at 15.

58      *See Callier v. Nat'l United Grp., LLC*, EP-21-CV-71-DB, 2022 WL 4088205, *6 (W.D. Tex. Sept. 6, 2022) (finding an agency relationship may have existed between an unnamed telemarketer and an insurance agent because, although the insurance agent was not present on the call, she had a "high degree of 'relatedness' " to the call as she was the one "responsible for the act of selling of insurance policies").

59      Compl. at 1 ¶ 3.

60      *See, e.g., Arvizu v. Estate of Puckett*, 364 S.W.3d 273, 277 (Tex. 2012).

61      🚩47 C.F.R. § 64.1200(c).

Case 1:26-cv-00659-KM    Document 32-1    Filed 07/15/26    Page 22 of 43

Callier v. American-Amicable Life Insurance Company of Texas, Not Reported in Fed. Supp. (2022)

62    "Plaintiff's Second Amended Complaint" ("Compl.") 5 ¶ 21, ECF No. 24, filed Aug. 9, 2022.

63    Mot. at 17.

64    Mot. at 18.

65    *Id.* (citing *Rombough v. Robert D. Smith Ins. Agency, Inc.*, 2022 WL 2713278, *2–3 (N.D. Iowa June 9, 2022)).

66    *Atkinson v. Pro Custom Solar LLC*, SA-21-CV-00178-OLG, 2022 WL 4071998, *8 (W.D. Tex. Sept. 1, 2022).

67    *Id.*

68    *See* Federal Trade Commission, *National Do Not Call Registry*, https://www.donotcall.gov/.

69    *See, e.g.,* *MultiPlan*, 2021 WL 8053527; *Nat'l United Grp., LLC*, 2022 WL 4088205; *Nat'l United Grp., LLC*, 2021 WL 5393829; *SunPath Ltd.*, 2020 WL 10285659.

70    *Callier v. GreenSky, Inc.*, No. EP-20-CV-00304-KC, 2021 WL 2688622, *2 (W.D. Tex. May 10, 2021) (citing *Gonzalez v. Kay*, 577 F.3d 600, 603 (5th Cir. 2009)) (emphasis added).

71    TEX. BUS. & COM. 305.053.

72    Mot. at 19.

73    *See, e.g., Nat'l United Grp., LLC*, 2021 WL 5393829, at *10 ("Since the Court has already found that Mr. Callier adequately states a claim under the TCPA, it also finds that he adequately states a claim under § 305.053.").

74    Mot. at 20.

---

**End of Document**                                         © 2026 Thomson Reuters. No claim to original U.S. Government Works.

---

2025 WL 2632396
Only the Westlaw citation is currently available.
United States District Court, C.D. California.

Dominick LEON

v.

LOANDEPOT.COM, LLC

Case No. 2:25-cv-01787-JLS-AGR
|
Filed August 22, 2025

**Attorneys and Law Firms**

Alexander James Adducci Taylor, Sulaiman Law Group, Lombard, IL for Dominick Leon.

Eric J. Troutman, Brittany A. Andres, Troutman Amin, LLP, Irvine, CA, for Loan Depot LLC.

**PROCEEDINGS: (IN CHAMBERS) ORDER GRANTING
DEFENDANT'S MOTION TO STRIKE CLASS ALLEGATIONS (Doc. 22)**

JOSEPHINE L. STATON, UNITED STATES DISTRICT JUDGE

**\*1** Before the Court is a Motion to Strike Class Allegations filed by Defendant loanDepot, LLC. (Mot. to Strike, Doc. 22.) The Court finds this matter appropriate for disposition without oral argument. Fed. R. Civ. P. 78(b); C.D. Cal. R. 7-15. Accordingly, the hearing set for August 29, 2025, at 10:30 a.m. is VACATED. For the reasons set forth below, the Court GRANTS the Motion to Strike.

**I. BACKGROUND**

Plaintiff Dominick Leon initiated this putative class action against Defendant loanDepot, LLC on February 28, 2025, and filed a First Amended Complaint ("FAC") on July 14, 2025. (Compl., Doc. 1; FAC, Doc. 20.) Defendant is a mortgage lender who placed "no less than twenty" calls to Plaintiff's cellular phone number "in an effort to sell Plaintiff a mortgage loan." (FAC ¶¶ 19, 25.) Plaintiff alleges that he registered his phone number on the National Do-Not-Call Registry and seeks redress for Defendant's alleged violations of the Telephone Consumer Protection Act ("TCPA"), 🚩47 U.S.C. § 227 *et seq.* (*Id.* ¶¶ 18, 46–52.) Specifically, Plaintiff alleges that Defendant violated 🚩47 C.F.R. § 64.1200(c), a regulation promulgated under the TCPA that prohibits calling individuals who have registered their phone numbers on the National Do-Not-Call Registry. (*Id.* ¶¶ 47–48.)

Plaintiff seeks to represent a class defined as:

> All individuals in the United States (1) to whom Defendant, or a third party acting on Defendant's behalf, placed, or caused to be placed, a phone call; (2) directed to a residential or cellular telephone number; (3) that is registered on the National Do-Not-Call Registry; (4) in which the purpose of the call was to market Defendant's mortgage loans; (5) within the four years preceding the date of the original complaint through the date of class certification.

(*Id.* ¶ 30.)

Following a conference with Plaintiff's counsel, Defendant moved to strike the FAC's class allegations on July 28, 2025. (Mot. to Strike.) Plaintiff's response was due no later than August 8, 2025. *See* C.D. Cal. R. 7-9 (requiring an opposition brief to be filed not later than twenty-one days before the hearing). On August 12, 2025, Defendant filed a Notice of Non-Receipt of Opposition to its Motion to Strike. (Doc. 24.) Six day later, on August 18, 2025, Plaintiff filed a Motion to Extend Plaintiff's Deadline to Respond to Defendant's Motion, setting the hearing on his Motion to Extend on September 12, 2025, two weeks after the scheduled hearing on Defendant's Motion to Strike. (Mot. to Extend, Doc. 25.) Plaintiff's Motion explains that Plaintiff's counsel mis-calendared the response due date for August 18, 2025. (*Id.* ¶ 4.) Notably, having claimed that he believed the response date to be August 18, 2025, Plaintiff did not accompany his motion with a copy of the opposition he would have filed, and a request to file it late. Rather, Plaintiff has, to date, filed *no* substantive opposition.

## II. PLAINTIFF'S FAILURE TO RESPOND

Local Rule 7-12 provides that "failure to file any required paper, or the failure to file it within the deadline, may be deemed consent to the granting or denial of the motion." C.D. Cal. R. 7-12. Ordinarily, Plaintiff's failure to timely oppose Defendant's Motion alone constitutes a sufficient basis to grant the Motion. C.D. Cal. R. 7-12; *see also* *Ghazali v. Moran*, 46 F.3d 52, 53 (9th Cir. 1995) (per curiam) (concluding that a motion to dismiss was properly granted for failure to comply with the local rules where the plaintiff "received notice" and "was given ample time to respond" to the motion but failed to do so).

 **\*2**  However, because here, Plaintiff filed a bare bones document indicating a future intent to oppose the Motion, the Court addresses Plaintiff's filing. [1]  First, as noted above, Plaintiff's opposition to Defendant's Motion was due on August 8, 2025. Plaintiff had notice of Defendant's Motion both because the parties met and conferred about the Motion and because Defendant subsequently filed a Notice of Non-Receipt of Opposition. Yet Plaintiff waited until August 18, 2025—ten days after his deadline to oppose and six days after Defendant filed the Notice of Non-Receipt of Opposition—just to request an extension of his deadline to oppose. Hence, even if he had mis-calendared the due date, he was apprised of the error as of the August 12, 2025 Notice of Non-Opposition, and took no prompt action. Further, when the incorrectly calendared date of August 18, 2025 arrived, Plaintiff failed to file even a proposed opposition. The Court is therefore skeptical of the validity of his docketing error claim. While Plaintiff also vaguely points to other work Plaintiff's counsel was doing and a death, at some point, in Plaintiff's counsel's "extended family," none of this sufficiently explains or provides good cause for Plaintiff's wholesale failure to file any substantive response. (Mot. to Extend ¶¶ 5–6.)

Accordingly, while the Court may treat the failure to timely file an opposition as consent to the granting of the Motion to Strike, here the Court does not do so, but rather independently considers the merits of the motion. However, the Court does not find good cause to continue the hearing and extend Plaintiff's deadline to file an opposition.

## III. LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(f), a court "may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). "The function of a 12(f) motion to strike is to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial." *Whittlestone, Inc. v. Handi–Craft Co.*, 618 F.3d 970, 973 (9th Cir. 2010).

"[M]otions to strike, as a general rule, are disfavored." *Daniel v. Lennar Corp.*, 2019 WL 8194735, at \*2 (C.D. Cal. Oct. 16, 2019). Moreover, "the issue of class relief is generally more appropriately determined through a motion for class certification" because "the shape and form of a class action evolves only through the process of discovery.*" Lightbourne v. Printroom Inc.*, 2014 WL 12597108, at \*8 (C.D. Cal. Sept. 8, 2014) (citations omitted).

However, the Supreme Court and Ninth Circuit have both recognized that striking class allegations may be appropriate in certain cases. *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 160 (1982) ("Sometimes the issues are plain enough from the pleadings to determine whether the interests of the absent parties are fairly encompassed within the named plaintiff's claim, and sometimes it may be necessary for the court to probe behind the pleadings before coming to rest on the certification question."); *Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935, 942 (9th Cir. 2009) ("[A] party seeking class certification is not always entitled to discovery on the class certification issue[.]"). It is appropriate to strike class allegations at the pleading stage if the action "could not possibly proceed on a classwide basis." *Heredia v. Sunrise Senior Living LLC*, 2019 WL 5149854, at *6 (C.D. Cal. Mar. 4, 2019); *see also Garza v. Swift Beef Co.*, 2024 WL 5415842, at *12 (C.D. Cal. Jan. 23, 2024) ("A court, therefore, may strike class allegations when no class action can possibly be maintained on the face of the pleading."); *Stokes v. CitiMortgage, Inc.*, 2015 WL 709201, at *4 (C.D. Cal. Jan. 16, 2015) ("Rule 12(f) also grants courts the authority to strike class allegations that cannot possibly move forward on a classwide basis." (citations omitted)); *Route v. Mead Johnson Nutrition Co.*, 2013 WL 658251, at *8 (C.D. Cal. Feb. 21, 2013) ("[W]here the matter is sufficiently obvious from the pleadings, a court may strike class allegations.").

### A. Analysis

**\*3** Plaintiff's class allegations must be stricken because the proposed class is overly broad.

The regulations promulgated under the TCPA prohibit entities from initiating "any telephone solicitation" to an individual who has registered his or her phone number on the National Do-Not-Call Registry. 47 C.F.R. § 64.1200(c)(2); 47 U.S.C. § 227(c). Notably, however, entities will not be liable under the TCPA where they have obtained the person's "prior express invitation or permission," or where they have an "established business relationship" with the person. 47 C.F.R. § 64.1200(c)(2)(ii), (f)(15)(ii); *see Brown v. Nano Hearing Tech Opco, LLC*, 2024 WL 3367536, at *8 (S.D. Cal. July 9, 2024) ("The TCPA expressly precludes claims made by individuals who consented to be called."). Moreover, only individuals who have received two or more phone calls by the same entity within a twelve-month period have a private right of action under this provision of the TCPA. 47 U.S.C. § 227(c)(5); *see Greene v. Select Funding, LLC*, 2021 WL 4926495 (C.D. Cal. Feb. 5, 2021) ("[M]ore than one telephone solicitation is needed to trigger a violation.").

Plaintiff's proposed class includes who individuals who clearly have no cognizable claim against Defendant under the TCPA. The proposed class includes all individuals in the United States with phone numbers on the National Do-Not-Call Registry, who received a call from Defendant within the four years preceding the date of the original complaint where the purpose of the call was to market Defendant's mortgage loans, subject to very limited exceptions. (FAC ¶ 30.) Such a broad class includes individuals who gave Defendant consent to contact them, who had a prior business relationship with Defendant, or who received only one phone call from Defendant in any given twelve-month period, and who therefore have no viable claim against Defendant under the relevant TCPA provisions. Because the class fails to exclude these members who necessarily lack standing to sue under the TCPA, the class is overly broad. *See Brown*, 2024 WL 3367536, at *8 ("[The] class definition necessarily includes any individuals who have consented to calls .... [T]hese individuals would also lack standing.").

Although it is generally inappropriate to strike class allegations at the pleading stage, here the defects in the proposed class could not possibly be remedied through discovery. *Cf. Hadi v. Toyota Motor Corp.*, 2024 WL 4452784, at *6 (C.D. Cal. Aug. 21, 2024) (Staton, J.) (denying motion to strike class allegations as premature where defendant's arguments hinged on "two highly fact-intensive" inquiries that were better addressed after discovery). Because it is "sufficiently obvious" that the class as currently defined cannot possibly be maintained, striking the class allegations is appropriate at this stage. *Route*, 2013 WL 658251, at *8 ("[W]here the matter is sufficiently obvious from the pleadings, a court may strike class allegations.").

Accordingly, Defendant's Motion is GRANTED.

## IV. CONCLUSION

For the above reasons, Defendant's Motion to Strike is GRANTED, and Plaintiff's Motion to Extend Deadline to Respond is DENIED. Accordingly, Plaintiff's class allegations are STRICKEN from the FAC as overbroad. Any amended Complaint must be filed no later than **September 5, 2025**.

**\*4** Initials of Deputy Clerk: kd

## All Citations

Slip Copy, 2025 WL 2632396

---

### Footnotes

1    Because Plaintiff filed its Motion to Extend as a regularly-noticed motion to be heard on September 12, 2025, the Court would be within its discretion to ignore its contents altogether. Instead, the Court considers it here, but for the reasons stated herein, DENIES the Motion.

---

**End of Document**                              © 2026 Thomson Reuters. No claim to original U.S. Government Works.

Case 1:26-cv-00659-KM    Document 32-1    Filed 07/15/26    Page 27 of 43

2021 WL 3728244
Only the Westlaw citation is currently available.
United States District Court, E.D. Pennsylvania.

John Jay PRZEPIOSKI and Georgianna Marie Przepioski

v.

PRO CUSTOM SOLAR LLC d/b/a Momentum Solar

CIVIL ACTION NO. 21-1071
|
Filed 08/20/2021

**Attorneys and Law Firms**

Gregory J. Gorski, Gorski Law, PLLC, Philadelphia, PA, for John Jay Przepioski, Georgianna Marie Przepioski.

Thomas J. Cotton, Mark K. Silver, Schenck, Price, Smith & King LLP, Florham Park, NJ, for Pro Custom Solar LLC.

**MEMORANDUM RE MOTION TO DISMISS**

Baylson, District Judge

### I. Introduction

**\*1** Plaintiffs John Jay Przepioski and Georgianna Marie Przepioski are consumers who bring this action against Defendant Pro Custom Solar LLC d/b/a Momentum Solar ("Momentum") for violations of the Telephone Consumer Protection Act, 🚩47 U.S.C. § 227, et seq. ("TCPA"). Before the Court is Momentum's Motion to Dismiss the Przepioskis' Amended Complaint. For the reasons that follow, the Court will deny Momentum's Motion to Dismiss.

### II. Facts and Procedural History

Based on the allegations in the Przepioskis' Amended Complaint (ECF 4, Compl.), which this Court must accept as true for purposes of Momentum's Motion to Dismiss, the relevant facts are as follows. The Przepioskis' wireless telephone number has been registered on the National Do Not Call Registry (the "DNC List") since 2015. Compl. ¶ 5. The Przepioskis' explain that their phone number is a residential number used for personal purposes and has never been used for business purposes. Compl. ¶ 9–10. On July 3, 2020 at 4:59pm, the Przepioskis received a call to their wireless telephone from Momentum to solicit Plaintiffs to purchase solar panels for their home. The Przepioskis explained that they were not interested in solar panels and requested that Momentum stop calling their phone number. Compl. ¶ 12. Momentum continued to call the Przepioskis 110 more times from July 6, 2020 to April 2, 2021. Compl. ¶ 13–123. The Przepioskis recorded the date, time, and phone number for each call received. Compl. ¶ 124. They confirmed that the calls were sales solicitations from Momentum by calling back each number which were all answered by a Momentum sales representative. Compl. ¶ 124.

The Przepioskis' filed an Amended Complaint on May 24, 2021. ECF 4, Compl. The Amended Complaint alleges one count for violations of the TCPA. See Compl. Momentum filed the present Motion to Dismiss on June 7, 2021, the Przepioskis filed their response on July 2, 2021, and Momentum filed a Reply on July 9, 2021. ECF 8, Def. MTD; ECF 10, Opp'n; ECF 11, Reply. The Przepioskis filed a Motion for Leave to File a Sur-Reply on July 16, 2021. ECF 12, Sur-reply.

### III. Legal Standard

Case 1:26-cv-00659-KM    Document 32-1    Filed 07/15/26    Page 28 of 43

Przepioski v. Pro Custom Solar LLC, Not Reported in Fed. Supp. (2021)

Dismissal under Rule 12(b)(6) is appropriate when a plaintiff has "fail[ed] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." 🚩Ashcroft v. Iqbal, 556 U.S. 662 (2009) (quotation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. "The plausibility standard is not akin to a 'probability requirement.' " Id. Factual allegations must be "enough to raise a right to relief above the speculative level," and a "complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." 🚩Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555–56 (2007).

**\*2** "The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." 🚩Ashcroft, 556 U.S. at 678; see also 🚩Bell Atl. Corp., 550 U.S. at 555 ("a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do"). It is Defendant's burden to show that a complaint fails to state a claim. 🚩Hedges v. United States, 404 F.3d 744, 750 (3d Cir. 2005).

## IV. TCPA

The TCPA was enacted to protect consumers from intrusive telemarketing calls. See 🚩Mims v. Arrow Fin. Servs., LLC, 565 U.S. 368, 372 (2012). The TCPA states that "[a] person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection" may bring an action for damages. 🚩47 U.S.C. § 227(c)(5). The relevant regulation prevents telephone solicitations to residential phone numbers registered on the DNC list. 🚩47 C.F.R. § 64.1200(c)(2). Telephone solicitation is defined as "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person." 🚩47 U.S.C. § 227(a). Telemarketers are also required to keep their own list of persons and telephone numbers who request not to receive telemarketing calls from them. 45 U.S.C. § 64.1200(d).

## V. Parties' Arguments

Momentum argues that the Przepioskis Amended Complaint should be dismissed for two reasons. First, Momentum argues that the Przepioskis did not plead sufficient facts to establish they received telemarketing calls. Second, it argues that the Przepioskis have failed to plead sufficient facts to establish that their telephone number is used for residential purposes.

## VI. Discussion

A Middle District of Pennsylvania case from last year brought against Momentum addressed the same arguments which Momentum raises here. See Huber v. Pro Custom Solar, LLC, No. 19-1090, 2020 WL 2525971 (M.D. Pa. May 18, 2020). In Huber, Momentum argued, as here, that the plaintiff did not adequately plead that he had received a telephone solicitation because he did "not discuss what services or goods were offered via these calls, under what terms, and at what price." Id. at \*3. The plaintiff had alleged that "Momentum Solar sells and installs solar panels," "uses telemarking to promote its products," and that he "did not consent to receive" these calls. Id. The Court noted that the "complaint provides details regarding the Plaintiff's phone number, the quantity of calls received, the date and time of each of those calls, and the identification of the caller" and found that the plaintiff had "pleaded sufficient facts showing the call was a telephone solicitation as defined by the TCPA." Id. The Court further explained that "there is no precedent requiring Plaintiff to describe all of the details of the phone calls he received. In fact, notice pleading standards do not require a plaintiff to allege details at the pleading stage about the time and context of every telephone call." Id. (quotation omitted).

Similarly, in this case, the Przepioskis described a call to their wireless telephone in which Momentum attempted to solicit them to purchase solar panels. They then noted the date and time of 110 subsequent calls and traced each one to Momentum. At this stage in the proceedings, this is sufficient for the Przepioskis to allege that they received telemarketing calls.

**\*3** In <u>Huber</u>, Momentum also argued that the plaintiff did not adequately allege that his number was used for residential purposes. There, the plaintiff alleged that his number was "a residential telephone line" and "is not associated with a business and is for personal use." <u>Id.</u> at \*4. The Court found that "[t]hese straightforward, unequivocal, declarative statements present allegations of fact which must be taken as true at the pleading stage" and that therefore, the plaintiff had "adequately alleged that he received calls on a residential telephone line." <u>Id.</u> Again, the Przepioskis have made the same exact allegations in this case, and their statements are sufficient to proceed.

## VII. Conclusion

For the reasons stated above, Momentum's Motion to Dismiss is denied. An appropriate Order follows.

## All Citations

Not Reported in Fed. Supp., 2021 WL 3728244

---

**End of Document**

© 2026 Thomson Reuters. No claim to original U.S. Government Works.

🚩 KeyCite Yellow Flag

Declined to Follow by   Nichols v. eHealthInsurance Services, Inc.,   N.D.Cal.,   March 3, 2025

2022 WL 2713278
Only the Westlaw citation is currently available.
United States District Court, N.D. Iowa, Cedar Rapids Division.

Caitlin ROMBOUGH, on behalf of herself and others similarly situated, Plaintiff,
v.
ROBERT D. SMITH INSURANCE AGENCY, INC., and State Farm Mutual Automobile Insurance Co., Defendants.

No. 22-CV-15-CJW-MAR
|
Signed June 9, 2022

**Attorneys and Law Firms**

Eric David Puryear, Puryear Law, PC, Davenport, IA, Aaron David Radbil, Pro Hac Vice, Greenwald Davidson PLLC, Boca Raton, FL, for Plaintiff.

James Gaughan, Pro Hac Vice, Riley Safer Holmes & Cancila LLP, Chicago, IL, J. Michael Weston, Lederer Weston & Craig PLC, Cedar Rapids, IA, for Defendants.

## ORDER

C.J. Williams, United States District Judge

### I. INTRODUCTION

**\*1**  This matter is before the Court on defendants' April 15, 2022, motion to dismiss plaintiff's complaint. (Doc. 15). Plaintiff timely filed a resistance. (Doc. 18). Defendants timely filed a reply. (Doc. 20). For the following reasons, defendants' (Doc. 15) motion is **granted** and this case is **dismissed with prejudice**.

### II. BACKGROUND

Plaintiff's claim arises out of defendants' unwanted contact with her via telephone, both by voice message and text message. The following facts are from plaintiff's complaint. (Doc. 1). Plaintiff is an Iowa resident. (*Id.*, at 2). Defendant Robert D. Smith Insurance Agency, Inc. is an Iowa insurance company, which assists customers in obtaining insurance from defendant State Farm Mutual Automobile Insurance Co. ("State Farm"). (*Id.*, at 2–3). Defendant State Farm is an Illinois insurance company. (*Id.*, at 3).

On October 25, 2021, defendants delivered a voice message and text message marketing State Farm insurance to plaintiff's personal residential telephone number, which had been registered with the national do-not-call registry since April 7, 2017. (*Id.*, at 4–6). The message was intended for a recipient other than plaintiff. (*Id.*, at 6). Plaintiff did not request information from either defendant and is not, and never has been, a State Farm customer. (*Id.*). She suffered actual harm in the form of invasion of privacy, intrusion, and a private nuisance. (*Id.*).

On February 21, 2022, plaintiff brought suit against defendants, on behalf of herself and others similarly situated, (*Id.*, at 1), and alleges that class certification is proper for her claim. (*Id.*, at 7–10). Plaintiff asserts one claim, alleging that defendants violated the Telephone Consumer Protection Act ("TCPA"), Title 47, United States Code, Section 227, by delivering messages as prohibited by Title 47, Code of Federal Regulations, Section 64.1200(c). (*Id.*, at 10–12).

On April 15, 2022, defendants filed their motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). (Doc. 15).

### III. APPLICABLE LAW

A complaint filed in federal court must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). Rule 8 does not require "detailed factual allegations." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Nevertheless, it "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint that relies on "naked assertion[s]" devoid of "further factual enhancement," "labels and conclusions," or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555, 557.

Before filing an answer, a defendant may move to dismiss a complaint for "failure to state a claim upon which relief can be granted" under Federal Rules of Civil Procedure 12(b)(6). To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter ... to 'state a claim to relief that is plausible on its face.' " *Iqbal*, 556 U.S. at 678 (citation omitted). "[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). The Court must also grant "all reasonable inferences" from the pleadings "in favor of the nonmoving party." *Crumpley-Patterson v. Trinity Lutheran Hosp.*, 388 F.3d 588, 590 (8th Cir. 2004) (citation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Plausibility is not equivalent to probability, but it is something "more than a sheer possibility that a defendant has acted unlawfully." *Id.* "The question ... is not whether [a plaintiff] might at some later stage be able to prove [its claims]; the question is whether [a plaintiff] has adequately asserted facts (as contrasted with naked legal conclusions) to support his claims." *Whitney v. Guys, Inc.*, 700 F.3d 1118, 1129 (8th Cir. 2012).

### IV. DISCUSSION

**\*2**  Plaintiff alleges that defendants violated Section 227(c)(5) by violating Section 64.1200(c), causing her harm. (Doc. 1). In its motion to dismiss, defendants argue plaintiff's claim fails to meet the federal pleading standard because she does not plausibly allege an existing cause of action. (Doc. 15). Specifically, defendants argue plaintiff fails to allege that she personally registered her telephone number with the do-not-call registry, as required by Section 64.1200(c). (*Id.*, at 3, 6–7).

For the following reasons, the Court finds plaintiff fails to state a claim based on the plain language of Section 64.1200(c). Plaintiff's arguments in support of another interpretation are unavailing. Further, the Court declines plaintiff's request to amend her complaint.

### A. Plain Language

Case 1:26-cv-00659-KM    Document 32-1    Filed 07/15/26    Page 32 of 43

Rombough v. Robert D. Smith Insurance Agency, Inc., Not Reported in Fed. Supp. (2022)

"Congress enacted the TCPA to protect consumers from the 'proliferation of intrusive [telemarketing] calls to their homes.' " *Golan v. Veritas Entm't, LLC*, 788 F.3d 814, 819 (8th Cir. 2015) (alteration in original) (quoting *Mims v. Arrow Fin. Servs.*, LLC, 565 U.S. 368, 372 (2012)). The key provision of the TCPA applicable to this case is Section 227(c)(5).

Section 227(c)(5) provides, in pertinent part, a private right of action to "[a] person who has received more than one telephone call [1] within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under [Section 227(c)]." Section 227(c) requires rulemaking and regulations based on that rulemaking "concerning the need to protect residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object." Section 64.1200(c) is one such regulation. Section 64.1200(c) prohibits all telephone solicitations to "[a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry[.]" Thus, Section 227(c) provides a private action based on the circumstances in Section 64.1200(c).

The plain language of Section 64.1200(c) indicates that Section 227(c)(5)'s private action exists only for a residential telephone subscriber *who has registered his or her telephone number* on the national do-not-call registry. "[T]he fact that a federal statute has been violated and some person harmed does not automatically give rise to a private cause of action in favor of that person." *Touche Ross & Co. v. Redington*, 442 U.S. 560, 568 (1979). "If the statute itself does not display an intent to create a private remedy, then a cause of action does not exist." *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1856 (2017) (internal quotations omitted). Section 227(c)(5) only displays an intent to create a private remedy where its promulgated regulations so provide. Section 64.1200(c) was promulgated under Section 227(c)(5). But Section 61.1200(c) does not include a private remedy for a residential telephone subscriber who has not registered his or her telephone number on the national do-not-call registry. The regulation's plain language provides no distinction for a telephone number that had previously been registered on the national do-not-call registry by someone else.

When "the words of a statute are unambiguous, the judicial inquiry is complete." *Babb v. Wilkie*, 140 S. Ct. 1168, 1177 (2020) (cleaned up); *see* *Solis v. Summit Contractors, Inc.*, 558 F.3d 815, 823 (8th Cir. 2009) (discussing regulations). As discussed, the plain language of Section 61.1200(c) states that a violation occurs only when a person or entity initiates a telephone solicitation to a residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry. The Court finds no ambiguity in this language. Thus, the Court limits its interpretation to the plain language of Section 64.1200(c). [2]

**\*3** Here, plaintiff alleges that "[s]ince April 7, 2017, [her] telephone number (319) XXX-3342 has been registered with the DNC Registry." (Doc. 1, at 4). Plaintiff does not allege, either directly or indirectly, that *she* registered her telephone on the do-not-call registry. Although plaintiff alleges defendants violated Section 64.1200(c), thereby entitling her to recovery under Section 227(c)(5), she does not allege that she registered her telephone number on the do-not-call-registry. [3] Further, Section 227(c)(5) does not display an intent to create a private remedy as plaintiff alleges it. *Ziglar*, 137 S. Ct. at 1856. Thus, plaintiff fails to state a claim that defendants violated Section 64.1200(c), as her complaint alleges. [4] *See* *Iqbal*, 556 U.S. at 678; *Whitney*, 700 F.3d at 1129.

### B. Plaintiff's Arguments

Case 1:26-cv-00659-KM    Document 32-1    Filed 07/15/26    Page 33 of 43

Rombough v. Robert D. Smith Insurance Agency, Inc., Not Reported in Fed. Supp. (2022)

Plaintiff argues that other statutory language and policy consideration show that dismissal of her claim is inappropriate despite Section 64.1200(c)'s plain language. The Court is not persuaded by these arguments.

Plaintiff argues she can properly state a claim under Section 64.1200(c) because Section 227(c)(5) allows "a person," not just a "subscriber," to bring a claim. (Doc. 18, at 9–10). There are two problems with this argument. First, although plaintiff alleges defendants violated Section 227(c)(5) based on Section 64.1200(c), (Doc. 1, at 11), for the reasons discussed, plaintiff fails to sufficiently allege a Section 64.1200(c) violation. Section 227(c)(5)'s terminology does not change this. Second, even if Section 64.1200(c) did allow for plaintiff to bring a claim on someone else's behalf, plaintiff fails to allege that she does so here. Plaintiff alleges that defendants called her telephone number attempting to reach "Kevin" and she alleges that her telephone number was registered to the do-not-call registry, (Doc. 1, at 4–5), but she does not allege that Kevin registered the telephone number such that defendants' calls could be viewed as "initiat[ing] ... telephone solicitation to" a residential telephone subscriber who has registered his or her telephone number with the do-not-call registry, as required by Section 64.1200(c).

**\*4** Plaintiff's corresponding analogy to the court's analysis of the Federal Trade Commission's Telemarketing Sales Rule ("TSR") in *United States v. Dish Network, LLC*, 75. F. Supp. 3d 916 (C.D. Ill. 2014), is likewise unavailing. Plaintiff argues that because the *Dish Network* court found "[t]he TSR does not say the call must be initiated to the person who registered the number on the [do-not-call] Registry," the Court should similarly interpret Section 64.1200(c). (Doc. 18, at 10–11). But "the TSR states that it is a violation of that rule to initiate 'any outbound telephone call to a person' when '[t]hat person's telephone number is on [the Registry].' " *Dish Network*, 75 F. Supp. 3d. at 935 (citing 16 C.F.R. § 310.4(b)(1)(iii)(B)). Here, plaintiff alleges a Section 64.1200(c) violation, not a TSR violation. (Doc. 1). And unlike the TSR, Section 64.1200(c) expressly limits its violation to telephone solicitations made to "[a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry." Thus, Section 64.1200(c) plainly requires that the call to be initiated to the person who registered the number on the registry—even if the TSR does not.

Plaintiff also argues policy considerations should prevent the Court from dismissing her claim. Plaintiff first argues that re-registration of a telephone number on the do-not-call registry is impossible. (Doc. 18, at 19–21). Although the do-not-call registry website is confusing, plaintiff herself demonstrates that she was able to register her telephone number. (*Id.*, at 20 n.4). She states that when she attempted to register "[f]or the sake of example," she nevertheless received a confirmation email thanking her for registering her telephone number. (*Id.*). Though the date of registration did not update from her telephone number's earlier registration, which seemingly occurred while it was assigned to someone else, she nevertheless *could* register, according to the website and its confirmation. (*See id.*). Second, website registration is not the only way a subscriber can register for the do-not-call registry; a subscriber can call a toll-free number. *See National Do Not Call Registry FAQs*, FTC, https://consumer.ftc.gov/articles/national-do-not-call-registry-faqs (last visited June 9, 2022). There, registration of an already registered telephone number results in a confirmation with no mention of the previous registration date. Third, the FTC website and phone registration emphasize the need for "you" to register "your new number" when obtaining a new telephone number. *See National Do Not Call Registry*, FTC, https://www.donotcall.gov/register.html (last visited June 9, 2022). The website registration is less clear, though it includes the modifier "your" in both verification and registration. This language, coupled with the actual ability to re-register the same telephone number via both the website and toll-free number, suggests that a subscriber can register a telephone number that was already registered. Further, the do-not-call registry statute provides that reassigned numbers will be periodically taken off the list, suggesting that a telephone subscriber who finds their telephone number already registered cannot rely on that previous registration for protection. 15 U.S.C. § 6155. In sum, the Court does not find plaintiff's policy arguments based on re-registration availing.

Plaintiff then argues the Court should liberally construe Section 64.1200(c) because the TCPA is a remedial statute. (Doc. 18, at 21–22). A court cannot liberally construe a statute when it finds the plain language is unambiguous and therefore does

Case 1:26-cv-00659-KM    Document 32-1    Filed 07/15/26    Page 34 of 43

Rombough v. Robert D. Smith Insurance Agency, Inc., Not Reported in Fed. Supp. (2022)

not engage in statutory construction. *See* 🚩*Brown v. J.B. Hunt Transport Servs., Inc.*, 586 F.3d 1079, 1086 (8th Cir. 2009); 🚩*Babb*, 140 S. Ct. at 1177. Here, because the Court has found the regulation's plain language unambiguous, the Court does not engage in statutory construction. Thus, the Court declines to follow plaintiff's policy argument based on liberal construction.

**\*5** In sum, despite plaintiff's arguments to the contrary, she fails to state a claim that defendants violated 🚩Section 64.1200(c).

### C. Amendment

Alternatively, plaintiff requests that the Court permit her to amend her complaint to add adequate facts. (Doc. 18, at 24). The Court declines plaintiff's request for several reasons. First, plaintiff's request does not comply with Local Rules because she failed to attach her proposed amended complaint. *See* LR 15. Second, plaintiff had the right to amend her complaint as a matter of course within "21 days after service of a motion under Rule 12(b)"—that is, a motion to dismiss. *See* FED. R. CIV. P. 15; FED. R. CIV. P. 12. Here, defendants filed their motion to dismiss on April 15, 2022, and plaintiff was served on that date. (Doc. 15). This means plaintiff could have amended her Complaint through May 6, 2022, without the Court's permission. *See* FED. R. CIV. P. 6. But plaintiff did not.

Finally, although the Court could find that justice requires that the Court allow plaintiff to amend her complaint, *See* FED. R. CIV. P. 15, it does not find that justice requires amendment here. This Court has allowed amendment of a complaint when "dismissal of the plaintiff's present pleadings is appropriate," but there is "no reason to believe that the plaintiff[ ] cannot adequately plead, as opposed to have not adequately pleaded, a factual basis for [her claim]." *Moller v. Tyson Foods, Inc.*, No. C 14-4056-MWB, 2014 WL 4437548, at \*4 (N.D. Iowa Sept. 9, 2014). When arguing for amendment, plaintiff states "if necessary, Plaintiff can amend her complaint to allege that she is the subscriber" to her telephone number. (Doc. 18, at 24). But the issue here is not whether plaintiff is a subscriber. The issue is whether she was the subscriber who registered her telephone number with the do-not-call registry, such that she can state a claim that defendants violated 🚩Section 64.1200(c) when they called her. Further, even if plaintiff means to say that she is a subscriber who registered, it appears plaintiff only registered her telephone number with the do-not-call registry as "for the sake of example" in her argument, and had not registered at the time defendants called her. (*See id.*, at 20 n.4). As such, the Court has reason to believe plaintiff cannot adequately plead, as opposed to has not adequately pleaded, a factual basis for her claim. *See Moller*, 2014 WL 4437548, at \*4. Thus, the Court declines plaintiff's request to amend her complaint.

For these reasons, the Court grants defendants' motion. [5]

### V. CONCLUSION

For these reasons, defendants' motion to dismiss (Doc. 15) is **granted**. This case is **dismissed with prejudice**. The Clerk of Court is directed to **enter judgment** in favor of defendants and against plaintiff.

**IT IS SO ORDERED** this 9th day of June, 2022.

**All Citations**

Not Reported in Fed. Supp., 2022 WL 2713278

**Footnotes**

1   It is undisputed that a text message is a call under the TCPA.

2   Accordingly, the Court does not consider the parties' arguments relating to extratextual sources. (Docs. 18, at 22–23; 20, at 4–5).

3   In Count I of her complaint, plaintiff alleges that defendants violated Section 64.1200(c) "by initiating, or causing to be initiated, telephone solicitations to telephone subscribers such as Plaintiff and the class members who registered their respective residential telephone numbers with the [do-not-call] Registry[.]" (Doc. 1, at 11). But in her factual allegations and her briefing, plaintiff does not state that *she* registered her telephone number with the do-not-call registry. (*See* Doc. 1, at 4 ("Since April 7, 2017, [plaintiff's telephone number] has been registered with the [do-not-call] Registry.")). Further, plaintiff argues whether she or someone else registered the number with the do-not-call registry is of no consequence. (*See generally* Doc. 18). The Court disagrees.

    Plaintiff also argues other courts have found allegations like hers sufficient to state a claim under the TCPA in motions to dismiss, motions for default judgment, and bench trials. (Doc. 18, at 11–19). Plaintiff notes that defendants do not "reference a single decision adopting their argument." (*Id.* at 5). The decisions that plaintiff cites, however, are from district courts, meaning they are non-binding on this Court. Further, these decisions are from district courts outside the Eighth Circuit Court of Appeals, which detracts from them even being persuasive. For the reasons discussed in this order, the Court declines to follow these courts.

4   That Section 64.1200(c) requires "such do-not-call registrations must be honored indefinitely," makes no difference here because this language appears in the context of the violation the Court has found plaintiff does not adequately allege. (*See* Doc. 20, at 4).

5   Thus, the Court does not reach the parties' arguments about plaintiff's proposed class. (Docs. 15-1, at 3 n.4; 18, at 7 n.1).

---

**End of Document**

© 2026 Thomson Reuters. No claim to original U.S. Government Works.

2023 WL 2622138
Only the Westlaw citation is currently available.
United States District Court, N.D. California,
San Jose Division.

Erik SALAIZ, Plaintiff,

v.

EHEALTHINSURANCE SERVICES, INC., Defendant.

Case No. 22-cv-04835-BLF

|

Signed March 22, 2023

**Attorneys and Law Firms**

Mark Louis Javitch, Javitch Law Office, San Mateo, CA, for Plaintiff.

Brittany A. Andres, Puja J. Amin, Troutman Firm, Irvine, CA, for Defendant.

### ORDER GRANTING MOTION TO DISMISS AND MOTION TO STRIKE CLASS ALLEGATIONS WITH LEAVE TO AMEND AND DENYING MOTION TO STAY DISCOVERY

[Re: ECF Nos. 15, 16, 17]

BETH LABSON FREEMAN, United States District Judge

**\*1** This is a putative class action brought by Plaintiff Erik Salaiz against Defendants eHealthInsurance Services, Inc. ("eHealth" or "Defendant") and John Doe for allegedly making unlawful calls in violation of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227(b), and California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200.

Now before the Court are three motions: (1) Defendant's motion to dismiss under Rule 12(b)(6), *see* ECF Nos. 15 ("MTD"), 23 ("MTD Reply"); (2) Defendant's motion to strike class allegations, *see* ECF Nos. 16 ("MTS"), 25 ("MTS Reply"); and (3) Defendant's motion to stay discovery, *see* ECF Nos. 17 ("MTSD"), 24 ("MTSD Reply"). Plaintiff opposes all three motions. *See* ECF Nos. 19 ("MTD Opp."), 20 ("MTS Opp."), 21 ("MTSD Opp."). The Court held a hearing on the motions on March 16, 2023. *See* ECF No. 31. For the reasons discussed on the record and explained below, the Court GRANTS the motion to dismiss WITH LEAVE TO AMEND, it GRANTS the motion to strike class allegations WITH LEAVE TO AMEND, and it DENIES the motion to stay discovery.

### I. BACKGROUND

As alleged in the Complaint, eHealth is a company that sells Medicare insurance to customers and John Doe is an unknown business entity. ECF No. 1 ("Compl.") ¶¶ 22-23.

Salaiz alleges that on December 20, 2021, at 1:42 p.m., he received a phone call from (515) 474-6906. Compl. ¶¶ 29-30. When he answered the phone, Salaiz "heard an artificial or prerecorded voice pretending to be a real person." *Id.* ¶ 31. The voice said, "this is Medicare rewards, can you hear me OK? I'm with Medicare rewards and, press one to be removed, I just wanted to get in touch with you today to tell you that you may be paying too much for your Medicare insurance." *Id.* ¶ 32. Salaiz alleges that he asked, "Where are you from?" and the voice continued, "One of our senior insurance professionals can look over your

Case 1:26-cv-00659-KM    Document 32-1    Filed 07/15/26    Page 37 of 43

Salaiz v. eHealthInsurance Services, Inc., Not Reported in Fed. Supp. (2023)

current plan and make sure you aren't missing out on any savings." *Id.* ¶ 33. A live agent then came on the phone and asked for "David," which is the name of Salaiz's father. *Id.* ¶ 34. The agent solicited Plaintiff for eHealth's Medicare insurance services. *Id.* Salaiz never consented to receive calls from eHealth or John Doe. *Id.* ¶ 35.

Plaintiff alleges that, to increase sales, eHealth hired John Doe to market the company and produce inbound calls. Compl. ¶ 24. John Doe allegedly amassed a list of thousands of phone numbers from unknown sources. *Id.* ¶ 25. And upon calling those numbers, John Doe would play an artificial or prerecorded voice message. *Id.* ¶ 27. Salaiz alleges that Defendants did not have consent from the called parties before making the calls. *Id.* ¶ 28.

Plaintiff alleges that eHealth gave actual authority to John Doe to generate customers. Compl. ¶ 55. He alleges that "eHealth's integration of robocalling into their sales process was so seamless that it appeared to outside parties like Plaintiff that John Doe was the telemarketing department of eHealth." *Id.* ¶ 56; *see also id.* ¶ 64. And he further alleges that "eHealth acted in concert with John Doe and has been able to enjoy the benefits of mass robocalling." *Id.* ¶ 57; *see also id.* ¶ 66 ("Defendant eHealth actively accepted business that originated through the illegal robocalls placed by John Doe.").

**\*2** This lawsuit was filed on August 23, 2022. *See* Compl. The Complaint asserts two causes of action: (1) violation of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227(b) and (2) violation of the unlawful prong of the California Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200. *Id.* ¶¶ 80-92. Plaintiff seeks to represent a class defined as follows:

> All persons in the United States who: (1) from the last 4 years to the filing of this complaint (2) received at least one telephone call; (3) on his or her cellular telephone; (4) that used an artificial or prerecorded voice; (5) for the purpose of selling Defendants' products or services; (6) where Defendants did not have the recipient's express written consent prior to placing the calls.

*Id.* ¶ 72.

## II. MOTION TO DISMISS

### A. Legal Standard

"A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted 'tests the legal sufficiency of a claim.' " *Conservation Force v. Salazar*, 646 F.3d 1240, 1241-42 (9th Cir. 2011) (quoting *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001)). When determining whether a claim has been stated, the Court accepts as true all well-pled factual allegations and construes them in the light most favorable to the plaintiff. *Reese v. BP Expl. (Alaska) Inc.*, 643 F.3d 681, 690 (9th Cir. 2011). But the Court need not "accept as true allegations that contradict matters properly subject to judicial notice" or "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (internal quotation marks and citation omitted). While a complaint need not contain detailed factual allegations, it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when it "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* On a motion to dismiss, the Court's review is limited to the face of the complaint and matters judicially noticeable. *MGIC Indem. Corp. v. Weisman*, 803 F.2d 500, 504 (9th Cir. 1986); *N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983).

### B. Analysis

The TCPA makes it "unlawful for any person within the United States ... (A) to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice ... (iii) to any telephone number assigned to a ... cellular telephone service." 47 U.S.C. § 227(b)(1)(A)(iii). It also makes it "unlawful for any person within the United States ... (B) to initiate any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party." 47 U.S.C. § 227(b)(1)(B).

"For a person to 'make' a call under the TCPA, the person must either (1) directly make the call, or (2) have an agency relationship with the person who made the call." *Abante Rooter & Plumbing v. Farmers Grp., Inc.*, No. 17-cv-03315-PJH, 2018 WL 288055, at *4 (N.D. Cal. Jan. 4, 2018) (citing *Gomez v. Campbell-Ewald Co.*, 768 F.3d 871, 877-79 (9th Cir. 2014)). Defendants argue that Plaintiff has not alleged facts sufficient to support either direct or vicarious liability. *See* MTD. The Court will address each in turn.

### 1. Direct Liability

**\*3** eHealth argues that Plaintiff has not alleged sufficient facts for a claim based on direct liability because "Plaintiff does not allege eHealth made any call on behalf of itself." MTD at 10-12. The Complaint alleges that eHealth is "directly liable under the TCPA for outsourcing their telemarketing to John Doe." Compl. ¶ 49. Plaintiff does not allege that eHealth made the calls directly or that an employee of eHealth made the calls. *See* Compl.; *see also* MTD Opp. at 4-5. Plaintiff has not alleged facts sufficient to state a claim on a theory of direct liability. *See Abante*, 2018 WL 288055, at *4 (determining plaintiff did not state a claim for direct liability where "[p]laintiff has not alleged facts showing that [defendant] made the calls or that the callers were calling on behalf of or were employed by [defendant] as opposed to some other entity"); *Naiman v. Freedom Forever, LLC*, No. 19-cv-00256-JSC, 2019 WL 1790471, at *3 (N.D. Cal. Apr. 24, 2019) (determining plaintiff did not state a claim for direct liability where "[t]he complaint alleges that '[d]efendant' made the calls in question and provides *no* further details" and thus "there are no facts from which the Court could infer that an employee of [defendant] made the calls" (emphasis in original)).

### 2. Vicarious Liability

Defendant eHealth also argues that Plaintiff has not alleged sufficient facts for a claim based on vicarious liability. MTD at 12-17. "[A] defendant may be held vicariously liable for TCPA violations where the plaintiff establishes an agency relationship, as defined by common law, between the defendant and a third-party caller." *Naiman*, 2019 WL 1790471, at *4 (alteration in original) (quoting *Gomez*, 768 F.3d at 879). "Three theories of agency could support vicarious liability: (1) actual authority; (2) apparent authority; and (3) ratification." *Abante*, 2018 WL 288055, at *4 (citing *Thomas v. Taco Bell Corp.*, 582 F. App'x 678, 679 (9th Cir. 2014)). "Although the precise details of the agency relationship need not be pleaded to survive a motion to dismiss, sufficient facts must be offered to support a reasonable inference that an agency relationship existed." *Naiman*, 2019 WL 1790471, at *4 (quoting *Kristensen v. Credit Payment Servs.*, 12 F. Supp. 3d 1292, 1301 (D. Nev. 2014)).

#### a. Actual Authority

First, eHealth argues that Plaintiff has not alleged sufficient facts to plead actual authority. MTD at 13-16. Actual authority requires a showing of agency. "An agent is one who 'act[s] on the principal's behalf and subject to the principal's control.' "

*Abante*, 2018 WL 288055, at \*5 (alteration in original) (quoting *United States v. Bonds*, 608 F.3d 495, 506 (9th Cir. 2010)). "Agency means more than mere passive permission; it involves request, instruction, or command." *Id.* (quoting *Thomas v. Taco Bell Corp.*, 879 F. Supp. 2d 1079, 1085 (C.D. Cal. 2012)). And a plaintiff must show not only an agency relationship, but "must also establish actual authority to place the unlawful calls." *Canary v. Youngevity Int'l, Inc.*, No. 5:18-cv-03261-EJD, 2019 WL 1275343, at \*5 (N.D. Cal. Mar. 20, 2019) (quoting *Jones v. Royal Admin. Servs., Inc.*, 887 F.3d 443, 449 (9th Cir. 2018)).

eHealth argues that Plaintiff has not alleged facts showing that eHealth had any control over John Doe as required for a showing of agency. MTD at 14. eHealth also argues that Plaintiff failed to allege that eHealth directly authorized John Doe to make calls in violation of the TCPA. *Id.* at 13. Plaintiff alleges that eHealth "gave actual authority to John Doe to generate prospective customers." Compl. ¶ 55. Plaintiff provides no allegations as to the relationship between eHealth and John Doe or whether eHealth exercised any control over John Doe. *See* Compl. His conclusory allegation that eHealth gave John Doe actual authority to generate prospective customers is insufficient to plead a theory of actual authority. *See Naiman*, 2019 WL 1790471, at \*4 (determining plaintiff had not pled vicarious liability with "boilerplate" allegation as to agency that was "wholly conclusory"); *Canary*, 2019 WL 1275343, at \*5-6 (determining plaintiff had not pled vicarious liability with "general and conclusory" allegations as to agency and actual authority); *Rogers v. Postmates Inc.*, No. 19-cv-05619-TSH, 2020 WL 1032153, at \*4 (N.D. Cal. Mar. 3, 2020) (determining plaintiff had not pled vicarious liability because "nebulous allegations [did] not support a plausible inference that [defendant] exercised any control over the sender of the text necessary to establish an agency relationship") (collecting cases).

### b. Apparent Authority

**\*4** Second, eHealth argues that Plaintiff has not alleged sufficient facts to state a claim based on apparent authority. MTD at 16. "Apparent authority arises from the principal's manifestations to a third party that supplies a reasonable basis for that party to believe that the principal has authorized the alleged agent to do the act in question." *Abante*, 2018 WL 288055, at \*5 (quoting *N.L.R.B. v. Dist. Council of Iron Workers of the State of Cal. & Vicinity*, 124 F.3d 1094, 1098 (9th Cir. 1997)). The plaintiff cannot simply allege "that the purposed agent 'claimed authority or purported to exercise it.' " *Id.* (quoting *N.L.R.B.*, 124 F.3d at 1098).

eHealth argues that Plaintiff has not alleged that eHealth represented to Plaintiff that John Doe was authorized to make calls on its behalf. MTD at 16. The Court agrees. Plaintiff alleges that he "reasonably believed and relied on the fact that John Doe had received permission and instructions from eHealth to advertise its Medicare insurance." Compl. ¶ 65. But Plaintiff cannot rely on this conclusory allegation. There are no allegations in the Complaint that eHealth made any manifestations to Plaintiff that would have provided a reasonable basis for Plaintiff to believe that eHealth authorized John Doe to make the calls. *See* Compl. Plaintiff therefore has not stated a claim on a theory of apparent authority.

### c. Ratification

Third, eHealth argues that Plaintiff has not alleged sufficient facts to state a claim based on ratification. MTD at 16-17. "Ratification is 'the affirmance of a prior act done by another, whereby the act is given effect as if done by an agent acting with actual authority.' " *Canary*, 2019 WL 1275343, at \*9 (quoting *Kristensen v. Credit Payment Servs., Inc.*, 879 F.3d 1010, 1014 (9th Cir. 2018)). Ratification does not apply if the actor is not an agent and does not purport to be one. *Id.*; *see also Abante*, 2018 WL 288055, at \*6 ("Plaintiff cannot show defendant is liable under a ratification theory because 'the principal-agent

Salaiz v. eHealthinsurance Services, Inc., Not Reported in Fed. Supp. (2023)

Case 1:26-cv-00659-KM    Document 32-1    Filed 07/15/26    Page 40 of 43

relationship is still a requisite, and ratification can have no meaning without it.' " (quoting *Batzel v. Smith*, 333 F.3d 1018, 1036 (9th Cir. 2003))). "Even if a principal ratifies an agent's act, '[t]he principal is not bound by a ratification made without knowledge of material facts about the agent's act unless the principal chose to ratify with awareness that such knowledge was lacking.' " *Kristensen*, 879 F.3d at 1014 (alteration in original) (quoting Restatement (Third) of Agency § 4.01 cmt. b).

Defendant eHealth has argued that Plaintiff has not sufficiently alleged eHealth's knowledge. MTD at 16-17. Plaintiff alleges that "eHealth ratified John Doe's TCPA violations by knowingly accepting the benefit of Plaintiff as a new customer" even though Plaintiff was a "victim of Defendants' illegal marketing scheme." Compl. ¶ 68. This conclusory allegation is insufficient to plead knowledge, and therefore Plaintiff has not adequately pled ratification.

\* \* \* \* \*

eHealth's motion to dismiss for failure to state a claim is thus GRANTED WITH LEAVE TO AMEND.

## III. MOTION TO STRIKE CLASS ALLEGATIONS

### A. Legal Standard

Federal Rule of Civil Procedure 12(f) permits a court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). The function of a motion made under this rule is "to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial." *Whittlestone, Inc. v. Handi–Craft Co.*, 618 F.3d 970, 973 (9th Cir. 2010). "While a Rule 12(f) motion provides the means to excise improper materials from pleadings, such motions are generally disfavored because the motions may be used as delaying tactics and because of the strong policy favoring resolution on the merits." *Barnes v. AT & T Pension Ben. Plan-Nonbargained Program*, 718 F. Supp. 2d 1167, 1170 (N.D. Cal. 2010). Motions to strike "should not be granted unless the matter to be stricken clearly could have no possible bearing on the subject of the litigation." *Platte Anchor Bolt, Inc. v. IHI, Inc.*, 352 F. Supp. 2d 1048, 1057 (N.D. Cal. 2004). "If there is any doubt whether the portion to be stricken might bear on an issue in the litigation, the court should deny the motion." *Id.* "With a motion to strike, just as with a motion to dismiss, the court should view the pleading in the light most favorable to the nonmoving party." *Id.*

 **\*5** "There is a split in this District as to whether a motion to strike class action allegations may be entertained at the motion to dismiss stage." *Ogala v. Chevron Corp.*, No. 14-cv-173-SC, 2014 WL 4145408, at \*2 (N.D. Cal. Aug. 21, 2014) (collecting cases). Even those courts that have considered such a motion early in the proceedings "have applied a very strict standard to motions to strike class allegations on the pleadings." *Id.* "Only if the court is convinced that any questions of law are clear and not in dispute, and that under no set of circumstances could the claim or defense succeed may the allegations be stricken." *Id.* (internal quotation marks and citation omitted). Thus, even if a motion to strike class allegation is considered at the pleading stage, it may only be granted under "rare circumstances" where "the complaint demonstrates that a class action cannot be maintained on the facts alleged." *Tasion Commc'ns, Inc. v. Ubiquiti Networks, Inc.*, No. C-13-1803 EMC, 2014 WL 1048710, at \*3 (N.D. Cal. Mar. 14, 2014) (citation omitted).

### B. Analysis

eHealth brings a motion to strike Plaintiff's class allegations, identifying several deficiencies with Plaintiff's proposed class definition. *See* MTS. Plaintiff seeks to represent a class defined as follows:

**Salaiz v. eHealthInsurance Services, Inc., Not Reported in Fed. Supp. (2023)**

Case 1:26-cv-00659-KM    Document 32-1    Filed 07/15/26    Page 41 of 43

> All persons in the United States who: (1) from the last 4 years to the filing of this complaint (2) received at least one telephone call; (3) on his or her cellular telephone; (4) that used an artificial or prerecorded voice; (5) for the purpose of selling Defendants' products or services; (6) where Defendants did not have the recipient's express written consent prior to placing the calls.

Compl. ¶ 72.

Defendant eHealth argues that (1) the class is overbroad; (2) the class definition improperly depends on the outcome of merits inquiries; and (3) the class is based on the lack of consent of the recipient as opposed to the called party. *See* MTS; MTS Reply. The Court will address each in turn.

Defendant argues that the class is overbroad as to eHealth because it includes calls made by *anyone* to sell *either* of the Defendants' services. MTS at 14-16; MTS Reply at 7-10. The Court agrees that the definition is overbroad in two senses. First, the proposed class definition would include individuals who were called by any party to sell eHealth services, not just John Doe. And, as discussed above, eHealth would not be liable for such calls unless Plaintiff could show direct or vicarious liability with the third party. Second, the proposed class definition would include individuals who were called by any party to sell John Doe's services. There is no reason that Defendant eHealth would be liable for any such calls. The proposed class definition is overbroad in that it does not identify who made the calls or which of the Defendants' products were being sold.

Defendant next argues that the class definition improperly relies on merits determinations because it only includes individuals for whom the Defendants did not have "express written consent," which Defendant argues is a merits determination. MTS at 17-18. Defendant asserts that it would be unfairly prejudiced by this class definition because class members could not lose, and it would be impossible to identify who is in the class before merits determinations are made. *Id.* at 18. Plaintiff responds by arguing that fail-safe classes are not per se impermissible. Opp. at 3-4. "A class definition is inadequate if a court must make a determination of the merits of the individual claims to determine whether a person is a member of the class." *Hanni v. Am. Airlines, Inc.*, No. C 08-00732 CW, 2010 WL 289297, at *9 (N.D. Cal. Jan. 15, 2010) (quoting 5 James W. Moore, *Moore's Federal Practice* § 23.21[3][c] (2001)). "However, in the Ninth Circuit, it is not necessary to deny certification (or in this case strike class allegations) simply because the initially proposed class is a 'fail safe' class." *Olney v. Job.com, Inc.*, No. 1:12-CV-01724-LJO-SKO, 2013 WL 5476813, at *11 (E.D. Cal. Sept. 30, 2013) (citing *In re AutoZone, Inc., Wage & Hour Emp. Pracs. Litig.*, 289 F.R.D. 526, 546 (N.D. Cal. 2012)). "Rather, the proposed class may be redefined to avoid ascertainably problems." *Id.* (citing *In re AutoZone*, 289 F.R.D. at 546). At least one other court in this district has stricken class allegations in a TCPA case when the class definition included language as to consent. *See Dixon v. Monterey Fin. Servs., Inc.*, No. 15-cv-03298-MMC, 2016 WL 3456680, at *4-5 (N.D. Cal. June 24, 2016); *see also Dixon v. Monterey Fin. Servs., Inc.*, No. 15-cv-03298-MMC, 2016 WL 4426908, at *1-2 (N.D. Cal. Aug. 22, 2016). In that case, the court gave leave to amend. *Dixon*, 2016 WL 3456680, at *5. And in another district court case within the Ninth Circuit, the court allowed the plaintiff to redefine the proposed class in a TCPA case where the initial proposed class definition required that a class member "had not previously consented to receiving such calls," noting that such a definition created a failsafe problem. *Olney*, 2013 WL 5476813, at *10-11. The Court notes that in one of the cases cited by Plaintiff, in which the court determined at the class certification stage that there were common questions as to consent, the class definition did not include any language on consent. *See McCurley v. Royal Seas Cruises, Inc.*, 331 F.R.D. 142, 163 (S.D. Cal. 2019). And in another case cited by Plaintiff, the court expressly recognized that the class definition was proper because it did not require "the court to make findings on legal issues, such as prior consent, in determining class membership." *Panacci v. A1 Solar Power, Inc.*, No. 15-cv-00532-JCS, 2015 WL 3750112, at

Case 1:26-cv-00659-KM    Document 32-1    Filed 07/15/26    Page 42 of 43

Salaiz v. eHealthInsurance Services, Inc., Not Reported in Fed. Supp. (2023)

*8 (N.D. Cal. June 15, 2015) (collecting cases). That is not the case here. The Court agrees with Defendant that the language in the class definition as to consent is improper.

**\*6** Defendant finally argues that the class definition improperly looks at whether the Defendant had the express written consent of the "recipient" as opposed to the "called party." MTS at 19-21. eHealth asserts that it would only be liable if it does not have the consent of the called party, regardless of whether it has the consent of the person who picks up the phone. *Id.* The statutory language of the TCPA addresses whether the caller has the consent of the "called party." 47 U.S.C. § 227(b); *see also* *N.L. by Lemos v. Credit One Bank, N.A.*, 960 F.3d 1164 (9th Cir. 2020) (discussing the meaning of the term "called party"). The Court thus agrees that the use of the term "recipient" in the class definition makes the class overly broad.

Defendant's motion to strike class allegations is thus GRANTED WITH LEAVE TO AMEND for Plaintiff to address the deficiencies identified by the Court here.

## IV. MOTION TO STAY DISCOVERY

### A. Legal Standard

"The Federal Rules of Civil Procedure do not provide for automatic or blanket stays of discovery when a potentially dispositive motion is pending." *Tradebay, LLC v. eBay, Inc.*, 278 F.R.D. 597, 600 (D. Nev. 2011). "Had the Federal Rules contemplated that a motion to dismiss under Fed. R. Civ. Pro. 12(b)(6) would stay discovery, the Rules would contain a provision to that effect. In fact, such a notion is directly at odds with the need for expeditious resolution of litigation." *Gray v. First Winthrop Corp.*, 133 F.R.D. 39, 40 (N.D. Cal. 1990). However, a district court does have "wide discretion in controlling discovery," *Little v. City of Seattle*, 863 F.2d 681, 685 (9th Cir. 1988), and that discretion extends to staying discovery upon a showing of "good cause," *see* Fed. R. Civ. P. 26(c)(1)(A). Good cause for staying discovery may exist when the district court is "convinced that the plaintiff will be unable to state a claim for relief." *Wenger v. Monroe*, 282 F.3d 1068, 1077 (9th Cir. 2002) (quoting *Wood v. McEwen*, 644 F.2d 797, 801 (9th Cir. 1981)); *see also* *Tradebay*, 278 F.R.D. at 601 ("Staying discovery when a court is convinced that the plaintiff will be unable to state a claim for relief furthers the goal of efficiency for the court and the litigants."). Under Ninth Circuit law, "[a] party seeking a stay of discovery carries the heavy burden of making a 'strong showing' why discovery should be denied." *Gray*, 133 F.R.D. at 40 (citation omitted).

Courts in this district have applied a two-pronged test to determine whether discovery should be stayed pending resolution of a dispositive motion. *See, e.g.*, *Singh v. Google, Inc.*, No. 16-cv-03734-BLF, 2016 WL 10807598, at *1 (N.D. Cal. Nov. 4, 2016); *Gibbs v. Carson*, No. C-13-0860 TEH (PR), 2014 WL 172187, at *3 (N.D. Cal. Jan. 15, 2014); *Hamilton v. Rhoads*, No. C 11-0227 RMW (PR), 2011 WL 5085504, at *1 (N.D. Cal. Oct. 25, 2011); *Pac. Lumber Co. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 220 F.R.D. 349, 351-52 (N.D. Cal. 2003). First, "a pending motion must be potentially dispositive of the entire case, or at least dispositive on the issue at which discovery is directed." *Pac. Lumber Co.*, 220 F.R.D. at 352. Second, "the court must determine whether the pending dispositive motion can be decided absent additional discovery." *Id.* "If the Court answers these two questions in the affirmative, a protective order may issue. However, if either prong of this test is not established, discovery proceeds." *Id.* In applying this two-factor test, the court must take a "preliminary peek" at the merits of the pending motion to assess whether a stay is warranted. *Tradebay*, 278 F.R.D. at 602.

### B. Analysis

Defendant eHealth argues that the Court should stay discovery. *See* MTSD. Now that the Court has resolved the motion to dismiss and motion to strike class allegations, there is no pending motion before the Court. And the Court determines that there is not good cause to stay discovery. As stated above, good cause may exist when the district court is "convinced that the plaintiff

Case 1:26-cv-00659-KM    Document 32-1    Filed 07/15/26    Page 43 of 43

will be unable to state a claim for relief." *Wenger*, 282 F.3d at 1077 (quoting *Wood*, 644 F.2d at 801). While the Court grants the motion to dismiss, it gives Plaintiff leave to amend, as it is not "convinced that the plaintiff will be unable to state a claim for relief." And because the Court granted leave to amend, the motions that were pending before the Court were not dispositive.

**\*7** Defendant's motion to stay discovery is DENIED.

### V. ORDER

For the foregoing reasons, IT IS HEREBY ORDERED that Defendant's motion to dismiss is GRANTED WITH LEAVE TO AMEND; Defendant's motion to strike class allegations is GRANTED WITH LEAVE TO AMEND; and Defendant's motion to stay discovery is DENIED. Plaintiff SHALL file an amended complaint within 21 days of this order. Failure to meet the deadline to file an amended complaint or failure to cure the deficiencies identified on the record or in this order will result in a dismissal of the deficient claims with prejudice. Plaintiff's amendments shall not exceed the scope allowed by the Court in this order.

**All Citations**

Not Reported in Fed. Supp., 2023 WL 2622138

---

**End of Document**
© 2026 Thomson Reuters. No claim to original U.S. Government Works.