IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| KELLY BLAND, individually and on behalf of all others similarly situated, | |
| *Plaintiff,* | Case No. 1:26-CV-00659-KM |
| *v.* | HON. KAROLINE MEHALCHICK |
| HUMANA INC. | |
| *Defendant.* | |

**DEFENDANT HUMANA INC.'S REPLY BRIEF IN FURTHER SUPPORT
OF ITS MOTION TO BIFURCATE DISCOVERY**

## I.      INTRODUCTION

Plaintiff Kelly Bland's ("Plaintiff") opposition ("Opp.") (ECF No. 28) rests on recasting the threshold questions Humana has identified—vicarious liability for a vendor the Complaint itself alleges "went rogue," the statutory two-call requirement, and personal registration on the National Do Not Call Registry—as classwide questions incapable of resolution apart from the claims of a nationwide class. Plaintiff then asserts that the line between individual and class discovery cannot be drawn, and asks the Court to follow three decisions, *Bronstin v. Upstart Network, Inc.*, No. 1:25CV1410, 2026 WL 893681 (M.D. Pa. Apr. 1, 2026), *Friel v. Line 5, LLC*, No. 3:24CV1866, 2025 WL 2422617 (M.D. Pa. Aug. 21, 2025), and *Hartley-Culp v. Credit Mgmt. Co.*, No. 3:14-CV-282, 2014 WL 4630852 (M.D. Pa.

1

Sept. 15, 2014), that Plaintiff contends foreclose bifurcation in this District as a matter of course. None of those decisions does the work Plaintiff assigns them, and none addresses the specific, narrow phasing Humana proposes here. Properly understood, Plaintiff's opposition confirms rather than refutes the case for bifurcation.

## II.    ARGUMENT

### A.    Humana Has Carried Its Burden of Demonstrating That Bifurcation Would Serve Judicial Economy, Avoid Inconvenience, and Not Prejudice Plaintiff.

Plaintiff correctly states that Humana, as the moving party, bears the burden of showing that bifurcation would serve judicial economy, avoid inconvenience, and not prejudice the parties. ECF No. 28 at 4 (citing *Hartley-Culp*, 2014 WL 4630852, at \*3). Humana's opening brief carries that burden. As set forth in Humana's Memorandum of Law in Support of Its Motion to Bifurcate Discovery (ECF No. 14), phasing discovery into individual merits, class certification, and class merits would allow the Court to resolve case-dispositive threshold questions before the parties expend the resources required for nationwide class discovery, would track the certification timetable Rule 23(c)(1)(A) already requires, and would impose no prejudice on Plaintiff because certification discovery under Humana's proposal still includes "all evidence necessary for Plaintiff to prove the requirements of Rule 23 can be shown." ECF No. 14 at 12. *See also* ECF No. 14 at 6–8 (collecting cases

2

phasing discovery where a threshold issue may be dispositive of the named plaintiff's claims); *id.* at 10–11 (collecting cases separating class-certification discovery from class-merits discovery). Plaintiff's opposition does not engage the specific structure of that proposal. It instead argues that bifurcation "remains the exception rather than the rule" and that courts do not grant it absent "some showing on the part of the moving party as to why bifurcation is appropriate." ECF No. 28 at 4 (quoting *Cephalon, Inc. v. Sun Pharm., Ltd.*, No. 11-5474, 2013 WL 3417416, at *3 (D.N.J. July 8, 2013)); *see also id.* (citing *Barr Labs., Inc. v. Abbott Labs.*, 978 F.2d 98, 115 (3d Cir. 1992)). Humana does not seek routine bifurcation. It has made precisely the case-specific showing *Cephalon* contemplates, and the three decisions on which Plaintiff principally relies do not hold otherwise.

**B.      *Bronstin*, *Friel*, and *Hartley-Culp* Are Each Distinguishable on Their Facts and Do Not Establish a Categorical Practice Against the Phasing Humana Proposes.**

Plaintiff reads *Bronstin*, *Friel*, and *Hartley-Culp* as establishing that this District "consistently" rejects bifurcation in TCPA class actions. ECF No. 28 at 4. But each of these three decisions denied bifurcation based on case-specific facts that are materially different from the facts pled in this case, and none addresses the combination of threshold issues—vicarious liability for a vendor the Complaint itself alleges "went rogue," the statutory two-call requirement, and personal Do Not Call registration—that Humana has identified here.

3

In *Hartley-Culp*, this Court denied a motion to bifurcate merits and class discovery in a TCPA action, concluding that bifurcation "will increase litigation expenses by protracting the discovery period and by duplicating the discovery process, including the depositions." *Hartley-Culp*, 2014 WL 4630852, at *4; ECF No. 28 at 4. But *Hartley-Culp* itself instructs that bifurcation "must be decided on a case by case basis," *Hartley-Culp*, 2014 WL 4630852, at *3, which forecloses the categorical rule Plaintiff advances. And the duplication concern that drove the result there is absent here. Humana's proposed first phase is confined to Plaintiff's own three calls, the single vendor and agent identified in the Complaint, and Plaintiff's own registration status. ECF No. 1 at ¶¶ 33–37, 42–43. The witnesses and records relevant to those issues are not the classwide custodians whose depositions bifurcation might otherwise duplicate, and if Humana's pending Motions to Dismiss and Strike resolve the case at the threshold, no second round of discovery will ever occur. Nor can phasing "protract[]" discovery that has not begun: no Rule 26(f) conference has been held, no scheduling order is in place, and no discovery has been served. Moreover, the threshold issues here are not affirmative defenses on which Humana bears the burden of proof. The requirement that Plaintiff have received "more than one telephone call within any 12-month period by or on behalf of the same entity" is an element of her own claim, 47 U.S.C. § 227(c)(5), and whether Plaintiff "has registered his or her telephone number," as Humana contends 47

4

C.F.R. § 64.1200(c)(2) requires, likewise concerns Plaintiff's own conduct alone.

Plaintiff's reliance on *Friel* fails as well. The court in *Friel* denied a motion to trifurcate discovery, which defendant Line5 had joined, because Line5's answer "does not raise any defenses unique to Friel's individual claims, only defenses common across the putative TCPA classes," specifically that "Line5 did not make or authorize any calls on its behalf" and that the calls were made to sell a different defendant's product. *Friel*, 2025 WL 2422617, at *8. Line5 had "not otherwise demonstrated why Friel's specific TCPA claims would be any different from the claims of the putative class members." *Id.* Humana's position is the inverse: its threshold defenses are unique to Plaintiff's own claim. Whether the third-party vendor that the Complaint itself alleges "went rogue," ECF No. 1 at ¶ 43, can bind Humana under actual authority, apparent authority, or ratification principles turns on Plaintiff's own three calls and the single agent and vendor she alleges were involved. ECF No. 1 at ¶¶ 33–37, 42–43. Likewise, whether Plaintiff personally registered her own telephone number on the National Do Not Call Registry, and whether she received more than one actionable call "by or on behalf of" Humana, are questions specific to Plaintiff's own telephone number and her own call history, not defenses common to the class as in *Friel*. Unlike Line5, Humana has identified exactly why Plaintiff's individual claims may fail on grounds that would not apply to the putative class as a whole.

*Bronstin* is distinguishable for similar reasons, and Plaintiff's description of it omits the case's actual posture. In *Bronstin*, the defendant Upstart did not deny that it placed the calls at issue. *Bronstin*, 2026 WL 893681, at *1. Instead, Upstart disputed whether the telephone number that received the calls belonged to the plaintiff at all, contending that the number remained assigned to Upstart's own customer and had never been reassigned to the plaintiff, while the plaintiff maintained that the number had been reassigned to him and had already produced phone bills and supporting evidence on that point. *Id*. at *2. The court found that the issues raised were "disputes over Bronstin's credibility, not threshold legal questions warranting restructured discovery," and that resolving whether Upstart "directed robocalls to reassigned phone numbers owned by individuals who did not consent to receive them" was "both a plaintiff-focused and class-focused endeavor." *Id*. at *3. The court also observed that the record there "already includes evidence that appears to demonstrate a genuine dispute of material fact," such that a dispositive motion at the close of an individual phase was unlikely to succeed. *Id*. Here, by contrast, Humana's threshold challenges are already before the Court on the pleadings themselves.

No comparable overlap exists in this case. Plaintiff has not alleged, and the record does not reflect, any dispute over whether the telephone number that received the calls belongs to her, and Plaintiff has supplied no evidence comparable to the

phone bills and reassignment records the plaintiff in *Bronstin* had already produced. The threshold issues Humana has identified—whether the "rogue" vendor's conduct binds Humana, whether Plaintiff received more than one actionable call, and whether Plaintiff personally registered her own number—concern only Plaintiff's own telephone number, her own three calls, and her own registration status. None of these questions depends on, or would resolve, whether Humana's vendors directed calls to any other person's telephone number. The issues here are accordingly plaintiff-focused only, not the dual plaintiff-and-class inquiry that drove the result in *Bronstin*—a robocall action under 47 U.S.C. § 227(b) that did not involve the two-call and registration requirements Humana has raised here.

The court in *Bronstin* also found that bifurcation would create a new dispute over whether particular discovery requests sought "individualized discovery or class discovery," and that if Upstart's dispositive motion on the individual claim were denied, "class discovery would then proceed after the parties had expended additional time and money" on the individual phase. *Bronstin*, 2026 WL 893681, at *3. Humana's proposal avoids that concern because, as proposed, Phase One has concrete boundaries: it encompasses discovery concerning Plaintiff's own three calls, her registration status, and the single vendor and agent identified in the Complaint; it does not extend to classwide call logs, records of absent consumers, or unrelated vendor files. The line Plaintiff insists cannot be drawn is thus drawn by

the proposal itself. If Humana's Motions to Dismiss and Strike do not dispose of the case at the individual phase, certification discovery proceeds next, without any class-merits discovery or repeat depositions of class witnesses having taken place in the meantime.

**C.    Humana's Proposed Threshold Issues Are Narrow, Individual, and Distinct from the Merits and Class Issues Plaintiff Describes.**

Plaintiff characterizes Humana's three threshold issues—vicarious liability, the two-call requirement, and personal registration—as "every disputed factual issue in the case." ECF No. 28 at 1–2. That characterization does not withstand scrutiny against the Complaint's own allegations. By Plaintiff's own pleading, only the October 16, 2025 call resulted in any connection to a Humana agent. ECF No. 1 at ¶¶ 33–37, 42. The February 1 call never mentioned Humana, and the September 18 call was missed entirely. ECF No. 1 at ¶¶ 33–34. Whether that single connected call, standing alone, satisfies the statutory requirement of "more than one telephone call within any 12-month period by or on behalf of the same entity," 47 U.S.C. § 227(c)(5), is a question answerable from Plaintiff's own call history and requires no discovery into any other class member's call records. The same is true of whether Plaintiff personally registered her own telephone number on the National Do Not Call Registry, a requirement the plain text of 47 C.F.R. § 64.1200(c)(2) imposes on "[a] residential telephone subscriber who has registered his or her telephone number." Plaintiff's assertion that this is "not even an element of or a legal

requirement of bringing a TCPA claim," ECF No. 28 at 5, is a merits dispute for the pending Motion to Dismiss, not a reason to treat the registration question as inseparable from class discovery.

Plaintiff's vicarious liability argument does not work either. Plaintiff argues that because vicarious liability is "notoriously fact-bound," discovery into whether an agency relationship exists cannot be deferred. ECF No. 28 at 11. But the agency relationship at issue is the relationship between Humana and the single vendor and agent identified in the Complaint—the vendor that allegedly "went rogue" and the agent to whom the October 16 call was transferred. ECF No. 1 at ¶¶ 33–37, 42–43. Discovery into that one vendor relationship, its scope of authority, and Humana's knowledge of its conduct is individual discovery into Plaintiff's own claim. It does not require, and Plaintiff does not explain why it would require, discovery into Humana's relationships with any other vendor used in connection with any other class member's calls. Resolving whether this single vendor and agent bound Humana to Plaintiff individually requires only the records concerning Plaintiff's own three calls, not classwide discovery into Humana's relationships with other vendors. That the inquiry is fact-bound does not make it classwide.

**D.    The General Proposition That Class Certification May Overlap with the Merits Does Not Defeat a Specific, Well-Supported Phasing Proposal.**

Plaintiff cites *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 351 (2011), and a string of out-of-district decisions for the unremarkable proposition that class

certification inquiries will sometimes overlap with the merits. ECF No. 28 at 7–9. That general proposition does not answer the question presented here, which is whether the specific threshold issues Humana has identified—vicarious liability for one vendor, the two-call requirement, and personal registration—can be resolved through discovery confined to Plaintiff's own claim before the parties undertake nationwide class discovery. Plaintiff's own description of the supposed overlap illustrates why bifurcation is appropriate rather than counterproductive. Plaintiff argues that "[c]all logs identify class members and prove liability," that "[c]onsent records go to Humana's central defense," and that "[v]endor and dialing records establish what happened to Plaintiff and whether the same conduct was directed at others." ECF No. 28 at 8. Each of those categories is precisely the kind of classwide, multi-vendor production that Phase One does not require. Phase One requires only the records concerning the three calls Plaintiff herself received and the single vendor and agent she alleges were involved. Plaintiff has not explained why resolving her own claim on that narrow record requires simultaneous access to classwide call logs, consent records for absent class members, or vendor records unrelated to her own calls.

Plaintiff's citations to *Nock v. PalmCo Admin., LLC*, *Bond v. Folsom Ins. Agency LLC*, *Grippo v. Sugared + Bronzed, LLC*, and *Ahmed v. HSBC Bank USA, Nat'l Ass'n*, ECF No. 28 at 8–9, are each distinguishable on their facts and posture.

In *Nock*, the parties had engaged in concurrent individual and class discovery for close to eight months, the plaintiff had already produced call recordings reflecting calls to himself and others, and the defendant moved to bifurcate only four days before the discovery deadline. *Nock*, 2025 WL 100894, at *3 & nn.4–5. Indeed, *Nock* distinguished—rather than rejected—*Akselrod v. MarketPro Homebuyers LLC*, No. CV CCB-20-2966, 2021 WL 100666, at *2 (D. Md. Jan. 12, 2021), in which the court bifurcated discovery and limited it to potentially dispositive issues where the defendant moved less than twenty days after filing its answer. *Nock*, 2025 WL 100894, at *3 n.4. Humana moved before filing any answer and before any discovery of any kind. In *Bond*, discovery had likewise begun and the court had already granted, in part, a motion to compel classwide discovery—ruling that the defendant "may not avoid appropriate classwide discovery" necessary for a future certification motion—before the defendant moved to bifurcate. *Bond*, 2025 WL 863469, at *1– 3. In *Grippo*, the court denied bifurcation in part because the agency question there— whether two outside telemarketing companies acted as the defendant's agents in sending text messages to the defendant's customers—could be established through ratification, an inquiry that, the court found, "may be informed by class discovery," including evidence of message volumes and customer-record data across the class. *Grippo*, 2025 WL 596095, at *2–3. No comparable ratification-by-volume theory is presented here: the Complaint identifies a single vendor and a single agent, ECF No.

11

1 at ¶¶ 33–37, 42–43, and whether that one alleged relationship binds Humana does not depend on volume evidence spanning Humana's vendor network. The *Grippo* court was also concerned that bifurcation would delay class certification past the date contemplated by the defendant's own proposed schedule. *Grippo*, 2025 WL 596095, at *2. Here, no schedule of any kind is in place. And in *Ahmed*, the ruling Plaintiff cites is not a ruling on a motion to bifurcate at all, but a ruling on a motion for reconsideration filed after a magistrate judge had already compelled classwide discovery and after the court had already denied a separate motion to strike the class allegations—and after the operative scheduling order had already advised the parties that the court would not "bifurcate discovery." *Ahmed*, 2018 WL 501413, at *1–2. Humana's motion was filed before any discovery had occurred and before any ruling on its pending motions—the opposite posture from each of the cases Plaintiff cites.

**E.      Humana Has Identified a Concrete and Specific Burden That Justifies Phasing Discovery Rather Than Resolving Burden Objections in the Course of Ordinary Discovery.**

Plaintiff argues that Humana's burden showing rests on "generalized assertions about the expense of class discovery" and that Humana has not identified any specific discovery request that imposes an undue burden. ECF No. 28 at 9. That criticism overstates what a motion to phase discovery must show. Humana need not identify a specific discovery request to justify phasing discovery into individual merits, certification, and class merits. The burden Humana has identified is structural

12

rather than request-specific: absent phasing, the parties would be required to conduct nationwide, multi-class discovery—including into the private records of absent consumers—before any court has determined whether Plaintiff has a viable individual claim, whether Humana can be vicariously liable for the calls at issue, or whether Plaintiff satisfies the statutory two-call requirement and the personal-registration requirement that Humana contends 47 C.F.R. § 64.1200(c)(2) imposes. *See* ECF No. 14 at 2–3, 10–12. That showing does not depend on identifying a single overbroad request, because the burden arises from the scope and timing of discovery as a whole, not the wording of any particular interrogatory or document request.

Plaintiff separately argues that the pendency of Humana's Motions to Dismiss and to Strike the Class Allegations cannot justify bifurcation because, in Plaintiff's view, a ruling on either motion would "resolve nothing uniquely as to Plaintiff while leaving the identical questions open as to the class." ECF No. 28 at 12. That argument restates the overlap theory already addressed above and fails for the same reason. Humana's threshold issues do not turn on whether Humana's vendors or agents engaged in a general practice that also happens to define the proposed classes. They turn on whether the single vendor and agent identified in this Complaint bound Humana to Plaintiff individually, whether Plaintiff personally received more than one actionable call, and whether Plaintiff personally registered her own telephone number—questions confined to Plaintiff's own three calls and her own registration

13

status. Resolving those questions would not require any discovery into Humana's relationships with other vendors, other agents, or other class members' call records, and a ruling on Humana's motions would accordingly narrow or eliminate Plaintiff's own claim without requiring any class discovery to have occurred first. Whether Humana's Motions to Dismiss and Strike are ultimately granted is a question for those motions on their own briefing, not a reason to commence class discovery now.

Plaintiff's suggestion that Humana should instead raise burden objections in the course of ordinary discovery, ECF No. 28 at 9 (citing *Wilson v. Quest Diagnostics, Inc.*, No. 18-11960 (WJM), 2019 WL 7560932, at *4 (D.N.J. Aug. 22, 2019)), ignores that the burden Humana has identified is not a single overbroad request but the cumulative cost of nationwide, multi-class discovery before the Court has determined whether any class can be certified, whether the named Plaintiff has a viable individual claim, or whether Humana can be held vicariously liable at all. Resolving burden objections request by request, after classwide discovery has already begun, does not avoid the burden. It guarantees it. *Wilson* is, in any event, far afield: the court there declined to stay or bifurcate where the defendant's motion to dismiss had already been denied, the district judge had expressly directed that the case proceed—"unlock[ing] the doors of discovery"—and the defendant "had the benefit of a stay of discovery while its motion to dismiss was pending." *Wilson*, 2019 WL 7560932, at *2–3. Humana does not seek to avoid discovery. It seeks to

14

sequence it.

III.    **CONCLUSION**

For the foregoing reasons, Humana respectfully requests that the Court grant its Motion to Bifurcate Discovery and order discovery phased into individual merits, class certification, and class merits, with each subsequent phase to proceed only as necessary following resolution of the prior phase.

Dated: July 15, 2026                              Respectfully submitted,

_/s/ V. Amanda Witts_
V. Amanda Witts
Mitchell Sandler PLLC
2020 K Street NW
Suite 760
Washington, DC 20006
Tel: 202.886.5267
v.awitts@mitchellsandler.com

AND

Eric J. Troutman (_pro hac vice)_
Puja J. Amin (_pro hac vice_)
Tori L. Guidry (_pro hac vice_)
Blake H. Landis (_pro hac vice_)
Troutman Amin, LLP
400 Spectrum Center Drive
Suite 1450
Irvine, CA 92618
Telephone: (949) 350-3663
Facsimile: (949) 203-8689
troutman@troutmanamin.com

_Attorneys for Defendant, Humana, Inc._

## <u>CERTIFICATE OF COMPLIANCE WITH WORD COUNT LIMIT</u>

Pursuant to Local Rule 7.8(b)(2), I hereby certify that this brief complies with the type-volume limitation set forth by the Local Rules of this Court. Excluding the parts of the brief exempted by the Local Rules (such as table of contents, table of authorities, and exhibits), this brief contains 3,386 words as counted by the word processing system used to prepare this brief.

*/s/ V. Amanda Witts*
V. Amanda Witts

## CERTIFICATION OF SERVICE

I hereby certify that on July 15, 2026, a copy of the foregoing was filed with the Clerk of Court for the United States District Court for the Middle District of Pennsylvania via the CM/ECF system and served to all counsel of record via the CM/ECF system.

*/s/ V. Amanda Witts*
V. Amanda Witts

17