2018 WL 501413
Only the Westlaw citation is currently available.
United States District Court, C.D. California.

Saber AHMED, et al.

v.

HSBC BANK USA, NATIONAL ASSOCIATION, et al.

Case No. ED CV 15–2057 FMO (SPx)
|
Filed 01/05/2018

**Procedural Posture(s):** Motion to Amend Scheduling Order; Motion to Stay Discovery; Motion for Reconsideration; Motion to Strike All or Part of a Pleading; Motion to Compel Discovery.

**Attorneys and Law Firms**

Alexander H. Burke, Pro Hac Vice, Burke Law Offices LLC, Chicago, IL, Joshua B. Swigart, Hyde and Swigart APC, San Diego, CA, Meghan Elisabeth George, Thomas Edward Wheeler, Todd M. Friedman, Adrian Robert Bacon, Law Offices of Todd M. Friedman PC, Woodland Hills, CA, Seyed Abbas Kazerounian, Jason A. Ibey, Matthew M. Loker, Kazerouni Law Group APC, Costa Mesa, CA, Adrienne D. McEntee, Pro Hac Vice, Beth E. Terrell, Jennifer Rust Murray, Pro Hac Vice, Terrell Marshall Law Group PLLC, Seattle, WA, Suren N. Weerasuriya, Burkhalter Kessler Clement and George LLP, Irvine, CA, for Saber Ahmed, et al.

Julia B. Strickland, Shannon Elizabeth Dudic, Arjun P. Rao, Bryan J. Weintrop, Stroock and Stroock and Lavan LLP, Kay Fitz–Patrick, Scott M. Pearson, Taylor Steinbacher, Ballard Spahr LLP, Los Angeles, CA, Daniel J. T McKenna, Pro Hac Vice, Ballard Spahr LLP, Philadelphia, PA, Matthew A. Morr, Pro Hac Vice, Ballard Spahr LLP, Denver, CO, for HSBC Bank USA, National Association, et al.

### Proceedings: (In Chambers) Order Re: Motion for Reconsideration

Fernando M. Olguin, United States District Judge

**\*1**  Having reviewed and considered all the briefing filed with respect to defendants' Motion for Reconsideration Pursuant to Federal Rule of Civil Procedure 54(b) (Dkt. 121, "Motion"), the court concludes that oral argument is not necessary to resolve the motion. See Fed. R. Civ. P. 78; Willis v. Pac. Mar. Ass'n, 244 F.3d 675, 684 n. 2 (9th Cir. 2001).

### INTRODUCTION

On October 6, 2015, plaintiff Saber Ahmed ("Ahmed") filed a Complaint, individually and on behalf of all others similarly situated, against defendant HSBC Mortgage Corporation (USA) ("HSBC") alleging violations of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, et seq. (See Dkt. 1, Complaint at ¶¶ 23–30). On March 15, 2017, Ahmed and plaintiff John Monteleone (collectively, "plaintiffs") filed a First Amended Complaint ("FAC") against HSBC and defendant PHH Mortgage Corporation ("PHH" and collectively, "defendants"), for negligent and willful violations of the TCPA. (See Dkt. 27, FAC at ¶¶ 65–73).

Defendants filed a Motion to Strike Class Allegations. (See Dkt. 76). Plaintiffs subsequently filed Motions to Compel Responses to Discovery (Dkts. 85–86), which defendants opposed. On September 25, 2017, the Magistrate Judge granted the Motions to Compel in part and denied them in part. (See Dkt. 101, Magistrate Judge's Order of September 25, 2017, at 14–15). At the time the Magistrate Judge issued her ruling, the court had yet to rule on defendants' Motion to Strike Class Allegations. Following the Magistrate Judge's ruling, defendants filed an Ex Parte Application to Stay Rulings (Dkt. 104, "Ex Parte Application"), a Motion to Modify Scheduling Order (Dkt. 105), and a Motion for Reconsideration re: Order on Motion to Compel (Dkt. 106, "Motion for Review") (collectively, "Discovery Motions"). On November 6, 2017, the court denied defendants' Motion to Strike Class Allegations and denied the Discovery Motions as moot. (See Dkt. 118, Court's Order of November 6, 2017, at 4). On November 13, 2017, defendants filed the instant Motion seeking reconsideration of the court's denial of the Discovery Motions and alternatively, requesting "that the Court facilitate an application for interlocutory appeal" pursuant to 28 U.S.C. § 1292(b).[1] (See Dkt. 121, Motion at 3–5).

## DISCUSSION

"In this district, motions for reconsideration are governed by Local Rule 7–18," Milton H. Greene Archives, Inc. v. CMG Worldwide, Inc., 568 F.Supp.2d 1152, 1162 (C.D. Cal. 2008), which provides that such a motion

> may be made only on the grounds of (a) a material difference in fact or law from that presented to the Court before such decision that in the exercise of reasonable diligence could not have been known to the party moving for reconsideration at the time of such decision, or (b) the emergence of new material facts or a change of law occurring after the time of such decision, or (c) a manifest showing of a failure to consider material facts presented to the Court before such decision.

**\*2** Local Rule 7–18. The Local Rule also admonishes that "[n]o motion for reconsideration shall in any manner repeat any oral or written argument made in support of or in opposition to the original motion." Id.

Defendants assert that the court erred in denying their Discovery Motions because the Motions were not mooted by the court's denial of defendants' Motion to Strike Class Allegations. (See Dkt. 121, Motion at 3). According to defendants, the Discovery Motions "were based on completely separate and independent grounds" and "had nothing to do with the Motion to Strike[.]" (Id.). Defendants' assertions are unpersuasive.

As the Magistrate Judge noted, "[t]he parties' discovery disputes largely stem from one overarching dispute regarding whether plaintiffs are entitled to class-wide discovery beyond what pertains to the named plaintiffs." (See Dkt. 101, Magistrate Judge's Order of September 25, 2017, at 4). With respect to the Discovery Motions, they, too, "largely stem" from defendant's contention that plaintiffs are not entitled to class-wide discovery.[2] (See Dkt. 104, Ex Parte Application at 5–6 (raising three arguments: (1) the magistrate judge's order should be reversed because defendants' Motion to Strike "is meritorious[;]" (2) plaintiffs lack standing; and (3) the magistrate judge's order was "clearly erroneous because it improperly compelled class-wide merits discovery before a class has been certified"); Dkt. 106, Motion for Review at 1–2 (raising same arguments as Ex Parte Application);[3] Dkt. 105, Motion to Modify Scheduling Order at 1–2 (arguing that modification of the Scheduling Order is warranted because class wide discovery is not appropriate as a matter of law and because "there are dispositive issues that can be determined now")). However, the court's Scheduling Order, filed on May 22, 2017, advised and cautioned the parties that the court would not "bifurcate discovery." (Dkt. 65, Court's Order of May 22, 2017, at 2). The parties were advised "that absent exceptional circumstances, discovery shall not be stayed while any motion is pending, including any motion to dismiss or motion for protective order." (Id.).

Defendants' claim that discovery should be bifurcated in class actions is largely based on a case that is more than 40 years old and involved securities fraud and a parallel state proceeding that had already resulted in a settlement. (See Dkt. 105, Motion to Modify Scheduling Order, at 9–10, relying on ⚑Kamm v. California City Dev. Co., 509 F.2d 205 (9th Cir. 1975)); ⚑Kamm, 509 F.2d at 210–11; Schwartz v. Lights of Am., Inc., 2012 WL 12883222, *10 (C.D. Cal. 2012) ("Unlike Kamm, in which remedies had 'already been instituted' and the purchasers obtained meaningful relief, here, remedies have not been determined .... Further unlike Kamm, no settlement has been reached .... Because the distribution of relief in Kamm was the primary factor in finding that the state action was superior, this case is fundamentally distinguishable.") (citing Cartwright v. Viking Indus., 2009 U.S. Dist. LEXIS 83286, *47 (E.D. Cal. 2009) (finding that the most important distinction between that case and Kamm was that in the latter relief had been accorded and in the former it had not)); Moore v. Walter Coke, Inc., 294 F.R.D. 620, 629 (N.D. Ala. 2013) ("⚑Kamm v. Cal. City Dev. Co., 509 F.2d 205 (9th Cir.1975), in which the court dismissed class claims 'without discovery where it was clear from the complaint and associated public records that the class could not satisfy Rule 23(b).' ... adds nothing new. It is distinguishable both as a securities fraud case and as a case in which well-underway parallel proceedings brought by state officials were clearly superior to the class action proposed."). [4] Defendants' argument ignores the realities of class action litigation today, which are governed by the Supreme Court's landmark decision in ⚑Wal–Mart Stores, Inc. v. Dukes, 564 U.S. 338, 131 S.Ct. 2541, 180 L.Ed.2d 374 (2011). In Dukes, the Supreme Court indicated that class certification requires a trial court to engage in a "rigorous analysis[ ] that the prerequisites of Rule 23(a) have been satisfied[.]" ⚑Id. at 351, 131 S.Ct. at 2551–52. This analysis usually frequently "entail[s] some overlap with the merits of the plaintiff's underlying claim" because the "class determination generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action." Id.; see ⚑Gusman v. Comcast Corp., 298 F.R.D. 592, 595 (S.D. Cal. 2014) ("Facts that are relevant to the class determination frequently will overlap with those relevant to the merits of the case."); McEwan v. OSP Grp., L.P., 2016 WL 1241530, *3 (S.D. Cal. 2016) ("In this regard, the Supreme Court had directed courts considering class certification motions to engage in a 'rigorous analysis' to determine whether Rule 23's prerequisites have been satisfied, an analysis that will frequently [ ]overlap with the merits of plaintiff's underlying claim.").

**\*3** In light of Dukes and the "rigorous analysis" requirement for class certification, many courts "are reluctant to bifurcate class-related discovery from discovery on the merits." [5] ⚑Chen–Oster v. Goldman, Sachs & Co., 285 F.R.D. 294, 299–300 (S.D.N.Y. 2012) (collecting cases). This is because the distinction between class certification and merits discovery is murky at best and impossible to determine at worst. See Munoz v. PHH Corp., 2016 WL 10077139, *4 (E.D. Cal. 2016) ("Courts have repeatedly acknowledged that there is no clear-cut division between discovery that relates to class certification and discovery that relates to the merits."); In re: Riddell Concussion Reduction Litig., 2016 WL 4119807, *2 (D.N.J. 2016) (explaining that the court had previously declined to bifurcate discovery because "more often than not there is no 'bright line' between class certification and merits issues."); Lakeland Regional Medical Center, Inc. v. Astellas US, LLC, 2011 WL 486123, *2 (M.D. Fla. 2011) ("Simply stated, if district courts as neutral arbiters of the law find the distinction between merits and class issues to be murky at best, and impossible to discern at worst, the Court cannot imagine how parties with an incentive to hold back damaging evidence, can properly draw the line between these categories of evidence during 'phased' discovery."). Separating merits and class discovery "raise[s] a slew of issues as to what discovery relates to the class, as opposed to the named plaintiffs, thereby causing additional litigation regarding the distinction between the two." True Health Chiropractic Inc. v. McKesson Corp., 2015 WL 273188, *3 (N.D. Cal. 2015); see Quinn v. Specialized Loan Servs., LLC, 321 F.R.D. 324, 327–28 (N.D. Ill. 2017) (observing that bifurcation "may give rise to disputes over whether a particular discovery request relates to the merits or to class certification"); Burges v. BancorpSouth, Inc., 2015 WL 13628132, *4 (M.D. Tenn. 2015) (same); City of Pontiac General Employees' Retirement System v. Wal–Mart Stores, Inc., 2015 WL 11120408, *1–2 (W.D. Ark. 2015) (bifurcation may force the court to resolve "endless discovery disputes"). For example, bifurcation often creates unnecessary gaps in the evidence as a defendant has a strong incentive to withhold evidence even if such evidence "overlap[s] with the merits of the plaintiff's underlying claim" or "involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action." [6] See ⚑Dukes, 564 U.S. at 351, 131 S.Ct. at 2551–52; see, e.g., Tyus v. Wendy's of Las Vegas, Inc., 2017 WL

Ahmed v. HSBC Bank USA, National Association, Not Reported in Fed. Supp. (2018)

Case 1:26-cv-00659-KM    Document 33-1    Filed 07/15/26    Page 4 of 46

3026403, *5 (D. Nev. 2017) ("Plaintiffs do not have the benefit of discovery into the merits of a case at the class certification stage and defendants frequently have withheld exactly the information needed to prove plaintiffs' case because it is common in putative class actions for defendants to seek 'bifurcated discovery' between class certification and merits issues, and this bifurcation results in a limited record at the class certification stage."); Tait v. BSH Home Appliances Corp., 289 F.R.D. 466, 488 (C.D. Cal. 2012) ("Indeed, it is often easy for a defendant to paint a dismal picture of plaintiffs' prospects because, at the class certification stage, plaintiffs do not have the benefit of discovery into the merits of a case and defendants frequently have withheld exactly the information needed to prove plaintiffs' case.").

In addition to "rais[ing] a slew of issues," True Health Chiropractic Inc., 2015 WL 273188, at *3, "[a]rbitrary insistence on the merits/class discovery distinction sometimes thwarts the informed judicial assessment that current class certification practice emphasizes." Mbazomo v. ETourandTravel, Inc., 2017 WL 2346981, *1–2 (E.D. Cal. 2017). For example, even if the class is not certified, the case will still continue and the discovery produced during the course of the case will be relevant and useful for the remainder of the case. See, e.g., In re Semgroup Energy Partners, L.P., Sec. Litig., 2010 WL 5376262, *2–3 (N.D. Okla. 2010) ("because of the number of investors and the enormity of losses they allege to have incurred, this case is likely to continue even if Lead Plaintiff is not found to be an adequate class representative or class certification is otherwise denied"); City of Pontiac, 2015 WL 11120408, at *1 ("Contrary to Defendant's assertions, there is no reason to believe that denial of class certification will terminate this litigation."); cf. Kelleher v. Fred Meyer Stores Inc., 302 F.R.D. 596, 599 (E.D. Wash. 2014) (granting motion to compel that sought personnel files of allegedly similarly situated employees, the identities of employees who requested leave or disability accommodation so that plaintiff could "attempt to demonstrate inconsistent treatment"); Lyoch v. Anheuser–Busch Companies, Inc., 164 F.R.D. 62, 70 (E.D. Mo. 1995) ("evidence of a pattern and practice of discrimination is relevant to an individual claim of discrimination").

**\*4**  In short, "[t]he decision to bifurcate discovery in putative class actions prior to certification is committed to the discretion of the trial court." True Health Chiropractic Inc., 2015 WL 273188, at *1; Mbazomo, 2017 WL 2346981, at *2 ("the Court is fully within its discretion to set either bifurcated or non-bifurcated discovery schedules in class action cases"). The court does not believe that bifurcation of discovery is warranted in this case. See, e.g., True Health Chiropractic Inc., 2015 WL 273188, at *3 (declining to bifurcate discovery in TCPA class action); Charvat v. Plymouth Rock Energy, LLC, 2016 WL 207677, *2–3 (E.D. N.Y. 2016) (same). Finally, the court has again reviewed the Magistrate Judge's Order of September 25, 2017, (Dkt. 101), and finds that it is neither clearly erroneous nor contrary to law, see Fed. R. Civ. P. 72, and, therefore, the court did not err in denying the Discovery Motions.

## CONCLUSION

Based on the foregoing, IT IS ORDERED THAT Defendants' Motion for Reconsideration (**Document No. 121**) is **denied**.

**All Citations**

Not Reported in Fed. Supp., 2018 WL 501413

## Footnotes

1    In their reply brief, defendants indicate they are withdrawing the request for certification. (See Dkt. 127, Reply in Support of Defendant's Motion [ ] at 5). Therefore, the court only addresses defendants' arguments with respect to reconsideration.

Case 1:26-cv-00659-KM    Document 33-1    Filed 07/15/26    Page 5 of 46

Ahmed v. HSBC Bank USA, National Association, Not Reported in Fed. Supp. (2018)

Indeed, one of the Discovery Motions, defendants' Motion for Review (Dkt. 106) directly challenged the Magistrate Judge's discovery order.

In denying the Motion to Strike Class Allegations, the court noted that defendants had failed to explain the basis for their standing argument and that such an argument was not properly raised in a Rule 12(f) motion. (See Dkt. 118, Court's Order of November 6, 2017, at 3–4).

Similarly, defendants' reliance on Harris v. comScore, Inc., 2012 WL 686709, *3 (N.D. Ill. 2012) is misplaced. First, this is non-binding authority. More importantly, the concerns that led the Harris court to bifurcate discovery are not present here. For example, in Harris, the court found that "it is possible to draw general lines in this case" severing class certification issues from merits issues. See Harris, 2012 WL 686709, at *4. Here, merits issues and class certification issues are "enmeshed" with one another. See Wal–Mart Stores, Inc. v. Dukes, 564 U.S. 338, 351, 131 S.Ct. 2541, 2552, 180 L.Ed.2d 374 (2011). Whether plaintiff is an adequate class representative, whether there is an agent/principal relationship, or other relationship giving rise to liability between HSBC and PHH, whether HSBC had knowledge of PHH's actions, and whether defendant HSBC and/or PHH used automatic telephone dialing systems to place calls, are all factual and legal issues that must be considered in determining whether Rule 23's requirements have been satisfied, i.e., it is very difficult in this case to draw a line between class certification and merits issues. (See Dkt. 27, FAC at ¶¶ 8–22, 53–54, 58–73); see also Meyer v. Portfolio Recovery Assocs., LLC, 707 F.3d 1036, 1043 (9th Cir. 2012) ("The three elements of a TCPA claim are: (1) the defendant called a cellular telephone number; (2) using an automatic telephone dialing system; (3) without the recipient's prior express consent.").

The Federal Judicial Center's "Manual for Complex Litigation cautions that '[d]iscovery relevant only to the merits delays the certification decision and may ultimately be unnecessary.' " In re Groupon, Inc. Securities Litig., 2014 WL 12746902, *2 (N.D. Ill. 2014); see Manual for Complex Litigation, Fourth § 21.14 (2004).

Bifurcation of discovery also enables a defendant to challenge the adequacy of plaintiff's counsel during the class certification proceedings. For example, in Moore v. Ulta Salon, Cosmetics & Fragrance, Inc., 311 F.R.D. 590 (C.D. Cal. 2015), a wage and hour class action, defense counsel challenged the adequacy of plaintiff's counsel, asserting that plaintiff's counsel had "done little to investigate the claims in this action—while they seek to certify a class of over 8,000 members, their motion is supported by 6 declarations covering 3 stores in one county." Id. at 607. Although plaintiff's counsel sought classwide discovery, defendant objected on a number of grounds, stating that plaintiff's discovery "seeks to elicit information that is beyond the scope of issues pertaining to class certification" and that "plaintiff should not be allowed to engage in class-wide merits discovery because discovery is limited to those issues necessary to establish class certification." Id. (internal quotation marks omitted). The Magistrate Judge limited the discovery plaintiff could receive, and required defendant to provide discovery responses only with respect to the stores where the named plaintiffs worked. This court rejected defendant's adequacy of counsel challenge, stating that "defendant's assertion that plaintiff's counsel is inadequate because of their inability to obtain the very discovery defense counsel refused to provide—because it was supposedly irrelevant to class certification—is utterly meritless, disingenuous, and not well-taken." Id.

**End of Document**

© 2026 Thomson Reuters. No claim to original U.S. Government Works.

2021 WL 100666
Only the Westlaw citation is currently available.
United States District Court, D. Maryland.

Gustave AKSELROD

v.

MARKETPRO HOMEBUYERS LLC

Civil No. CCB-20-2966
|
Signed 01/11/2021
|
Filed 01/12/2021

**Attorneys and Law Firms**

John Thomas McGowan, Jr., Kinner & McGowan PLLC, Washington, DC, Anthony I. Paronich, Pro Hac Vice, Paronich Law PC, Hingham, MA, for Gustave Akselrod.

Eric M. Hurwitz, Stradley Ronon Stevens & Young LLP, Cherry Hill, NJ, Thomas Francis Lucchesi, III, Stradley Ronon, Washington, DC, for MarketPro Homebuyers LLC.

## **MEMORANDUM & ORDER**

Catherine C. Blake, United States District Judge

**\*1** In this action, plaintiff Gustave Akselrod brings a class action complaint alleging two claims under the TCPA, 47 U.S.C. § 227, *et seq.,* against defendant MarketPro Homebuyers ("MarketPro")—(1) a violation of the TCPA's prohibitions on autodialing the telephones of individuals without their consent, and (2) making telephone solicitations to individuals who are registered on the National Do-Not-Call Registry. Before the court is MarketPro's proposed modification (ECF 13) to the court's proposed scheduling order. MarketPro seeks to stay this case pending a decision from the United States Supreme Court in *Facebook v. Duguid*, No. 19-511, or, in the alternative, to bifurcate liability and class discovery and limit discovery at this time to potentially dispositive issues. Akselrod opposes both requests. (ECF 14). The court, having considered the parties' submissions and their arguments during a scheduling conference call on December 29, 2020, will deny the request to stay the case, but will grant the request to bifurcate discovery. Discovery may be taken as to (1) the capabilities of the system used to make the communications at issue in this case; and (2) whether the communications sent to the plaintiff were "telephone solicitations" under the TCPA.

A stay of the case is not warranted. In considering whether the court should exercise its inherent authority to stay a proceeding, three factors are relevant: (1) whether the stay will promote judicial economy, measured by whether a stay would simplify or complicate the issues in the case; (2) the hardship to the moving party if the case is not stayed; and (3) the potential prejudice to the non-moving party if the stay is granted. *See Int'l Refugee Assistance Project v. Trump*, 323 F. Supp. 3d 726, 730–31 (D. Md. 2018). As to prejudice, it appears that any hardship to MarketPro from denying a stay is evenly balanced with the possibility of prejudice to Akselrod if a stay is granted. As to the ability of a stay to simplify the issues in the case, the court agrees with Akselrod that a complete stay while *Facebook v. Duguid* remains pending is likely to delay and further complicate rather than simplify this litigation.

In order to succeed on its autodialing claim, Akselrod must prove that the communications he received were made using an automated telephone dialing system ("ATDS"). The issue in *Duguid* is whether an ATDS includes technology that simply has the capacity to store numbers to be dialed automatically, as the Ninth Circuit has held, *Duguid v. Facebook*, 926 F.3d 1146, 1151 (9th Cir. 2019), or whether the technology must also use a random or sequential number generator in order to fall within the definition, as the Third and Eleventh Circuits have held, *Dominguez v. Yahoo, Inc.*, 894 F.3d 116, 119 (3d Cir. 2018); *Glasser v. Hilton Grand Vacations Co., LLC*, 948 F.3d 1301, 1306–08 (11th Cir. 2020). It appears to the court from Akselrod's complaint that the system MarketPro used to send messages to Akselrod could fall within either (or neither) of the contested definitions of an ATDS. This raises the possibility that if the case is stayed until the Supreme Court resolves the definition of an ATDS, discovery and briefing regarding whether MarketPro's system qualifies as an ATDS would still be necessary. But if the case proceeds now, the parties will be able to take targeted discovery so that when *Duguid* is decided, the case may be resolved more quickly based on the Court's definition of an ATDS and the parties' knowledge of the system's capabilities. Additionally, a stay would delay the resolution of Akselrod's Do-Not-Call Registry claim, which is distinct from the autodialing claim. Thus, the more efficient approach, as other courts have held in TCPA cases where discovery on the ATDS would be necessary regardless of the outcome of *Duguid* or where a stay would delay additional unrelated claims, is to allow at least some discovery to proceed. *See, e.g.,* *Lacy v. Comcast Cable Commc'ns, LLC*, Case No. 3:19-cv-05007-RBL, 2020 WL 4698646, *2 (W.D. Wash. Aug. 13, 2020); *Pittenger v. First Nat'l Bank of Omaha*, No. 20-CV-10606, 2020 WL 5596162, at *3 (E.D. Mich. Sept. 18, 2020).[1]

**\*2** As to the bifurcation of liability and class discovery, the court considers (1) the overlap between individual and class discovery, (2) whether bifurcation will promote Federal Rule of Civil Procedure 23's requirement that certification be decided at "an early practicable time," (3) judicial economy, and (4) any prejudice reasonably likely to flow from the grant or denial of a stay of class discovery. *See* 1 McLaughlin on Class Actions § 3:10 (11th ed. 2014). MarketPro argues that whether the system used in this case was an ATDS and whether the messages sent were telephone solicitations are potentially dispositive and that limited discovery on these issues would save the parties the time and expense of class discovery. Akselrod disagrees, arguing that class issues and liability issues substantially overlap, that bifurcation will lead to additional, time-consuming disputes regarding whether discovery relates to class issues or individual issues, and that a delay in class discovery poses a risk that the third-party MarketPro used to send the messages at issue will destroy relevant call records before Akselrod can obtain them. The court concludes that whether an ATDS was used and whether messages were telephone solicitations are issues of liability largely distinct from class certification issues (e.g., numerosity, commonality, typicality, and adequacy of representation). *See* Fed. R. Civ. P. 23. Limited discovery has the potential to simplify the case and to save both parties the time and expense of class discovery, which can be particularly resource intensive, *see, e.g.,* *Physicians Healthsource, Inc. v. Janssen Pharm., Inc.*, No. CIV.A. 12-2132 FLW, 2014 WL 413534, at *4 (D.N.J. Feb. 4, 2014) (granting motion to bifurcate discovery in TCPA case where bifurcation would promote efficiency by permitting discovery on potentially dispositive issues that did not overlap with class issues), and at any rate, it may not be practicable to determine class certification until after *Duguid* is resolved. To prevent the possibility of evidence spoliation, Akselrod may subpoena the third party at issue or take some other action to ensure the preservation of records.

During the conference call with the court, the parties raised an additional question regarding the extent of discovery that should be permitted into whether the messages at issue are telephone solicitations. Akselrod contends that discovery into MarketPro's subjective purpose in sending the messages is relevant, and MarketPro argues that the issue turns on an objective analysis of the content of the messages to determine their purpose. *See* 47 U.S.C. § 227(a)(4) (defining "telephone solicitation" as "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person, ..."). The court does not find it necessary at this time to determine how much discovery is needed as to the "purpose" of the messages. It appears that some courts have focused on the content of the message in determining their purpose, *see, e.g.,* *Murphy v. DCI Biologicals Orlando, LLC*, No. 6:12-CV-1459-ORL, 2013

Case 1:26-cv-00659-KM     Document 33-1     Filed 07/15/26     Page 8 of 46

WL 6865772, at *10 (M.D. Fla. Dec. 31, 2013), *aff'd* on other grounds 797 F.3d 1302 (11th Cir. 2015), but this issue can be more fully briefed at a later time.

Accordingly, it is hereby ORDERED that:

1. MarketPro's request to stay the case is DENIED;

2. MarketPro's request to bifurcate liability and class discovery is GRANTED;

3. Limited discovery will be permitted into (1) the capabilities of the system used to make the communications at issue in this case; and (2) whether the communications sent to the plaintiff were "telephone solicitations" under the TCPA;

4. To prevent the possibility of evidence spoliation, Akselrod may subpoena the third party at issue or take some other action to ensure the preservation of records;

5. Initially the courts sets a deadline for the limited discovery to be complete by April 15, 2021, with a status report due the same day; and

6. Counsel shall notify the court when an opinion has been issued in *Facebook v. Duguid.*

**All Citations**

Not Reported in Fed. Supp., 2021 WL 100666

---

**Footnotes**

1        Unpublished opinions are cited for the persuasiveness of their reasoning and not for any precedential value.

---

**End of Document**                                                           © 2026 Thomson Reuters. No claim to original U.S. Government Works.

Bond v. Folsom Insurance Agency LLC, Not Reported in Fed. Supp. (2025)

Case 1:26-cv-00659-KM    Document 33-1    Filed 07/15/26    Page 9 of 46

2025 WL 863469
Only the Westlaw citation is currently available.
United States District Court, N.D. Texas, Dallas Division.

Joseph BOND, on behalf of himself and all others similarly situated, Plaintiff,

v.

FOLSOM INSURANCE AGENCY LLC and Cody Folsom, Defendants.

No. 3:24-cv-2551-L-BN
|
Signed March 19, 2025

**Attorneys and Law Firms**

Anthony I. Paronich, Paronich Law PC, Hingham, MA, Andrew Roman Perrong, Perrong Law LLC, Glenside, PA, Sharon K. Campbell, Law Office of Sharon K. Campbell, Dallas, TX, for Plaintiff.

Jason Ray Jobe, Yesha Prakashcha Patel, Thompson Coe Cousins & Irons LLP, Dallas, TX, Haley S. Grissom, Dentons U.S. LLP, Dallas, TX, for Defendants.

## MEMORANDUM OPINION AND ORDER

DAVID L. HORAN, UNITED STATES MAGISTRATE JUDGE

**\*1** Defendants Folsom Insurance Agency, LLC and Cody Folsom (collectively, "Folsom") have filed a Motion to Bifurcate Discovery. *See* Dkt. No. 30.

Plaintiff Joseph Bond filed a response. *See* Dkt. No. 31.

This case has been referred to the undersigned United States magistrate judge for pretrial management under 28 U.S.C. § 636(b) and an order of reference from United States District Judge Sam A. Lindsay. *See* Dkt. No. 32.

For the reasons explained below, the Court denies Folsom's Motion to Bifurcate Discovery [Dkt. No. 30].

## Background

This case concerns a class action lawsuit alleging violations of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227.

Plaintiff Joseph Bond alleges that Defendants placed at least one prerecorded telemarketing call to his cellular phone without his prior express written consent in violation of the TCPA. *See* Dkt. No. 6.

Bond alleges the following putative class:

Bond v. Folsom Insurance Agency LLC, Not Reported in Fed. Supp. (2025)

Case 1:26-cv-00659-KM    Document 33-1    Filed 07/15/26    Page 10 of 46

> **Robocall Class:** All persons within the United States: (1) to whose cellular telephone number or other number for which they are charged for the call (2) Defendants (or an agent acting on behalf of Defendants) placed a telemarketing call (3) within the four years prior to the filing of the Complaint (4) using an identical or substantially similar pre-recorded message used to place telephone calls to Plaintiff (5) from four years prior to the filing of the Complaint through trial.

*Id.* at 9 (emphasis in original).

Folsom denies TCPA liability and contends that Bond cannot maintain his lawsuit as a class action because it fails to meet the requirements of ⚑Federal Rule of Civil Procedure 23.

The Parties have begun discovery and filed a joint status report to assist the Court in entering a scheduling order under Federal Rule of Civil Procedure 16(b). *See* Dkt. No. 29.

In the joint status report and this subsequent motion, Folsom asks the Court to bifurcate and limit discovery into two phases – individual and class-based discovery – and allow for class-based discovery only if Bond's individual claims survive dispositive motions. *See* Dkt. No.29 at 4-5; Dkt. 30 at 1.

### Legal Standards & Analysis

"Under [Federal Rule of Civil Procedure] 42(b), district courts have discretion to bifurcate trials '[f]or convenience, to avoid prejudice, or to expedite and economize.' " *Pharmerica Corp. v. Advanced HCA LLC*, No. 2:17-cv-00180-JRG, 2018 WL 3326822, at *1 (E.D. Tex. May 1, 2018) (quoting Fed. R. Civ. P. 42(b)). "The decision to bifurcate 'is a matter within the sole discretion of the trial court.' " *Id.* (quoting ⚑*First Tex. Sav. Ass'n v. Reliance Ins. Co.*, 950 F.2d 1171, 1174 n.2 (5th Cir. 1992)).

And Federal Rule of Civil Procedure "26 affords trial courts ample authority to control the sequence and timing of discovery." *E.E.O.C. v. Lawler Foods, Inc.*, 128 F. Supp. 3d 972 (S.D. Tex. 2015).

The issue before the Court is whether it should birfucate and limit discovery into two phases – individual and class-based discovery,

Folsom contends that discovery should be bifurcated because rulings on Bond's individual claims will determine the validity of his class-based claims. *See* Dkt. No. 1 at 1. And it asserts that "bifurcation will be expedient and economical because it will help determine whether [Bond] is a proper class representative before broader discovery is taken." *Id.*

**\*2** Bond contends that Folsom's bifurcation proposal is an "end-run" around the Court's Order granting in part Bond's motion to compel, which involved classwide discovery. *See* Dkt. No. 31 at 2-3; Dkt. No. 28.

In the order that Bond references, the Court stated:

> As to Interrogatory Nos. 6 and 7, "[t]he Court will not engage in a preemptive merits analysis to determine whether [Bond] is entitled to discovery on the claim that [he] has pleaded and is pursuing." *Firebirds Intl, LLC v. Firebird Rest. Grp., LLC*, No. 3:17-cv-2719-B, 2018 WL 3655574, at *16 (N.D. Tex. July 16, 2018). "The Court will not prematurely assess the balance of the evidence on the merits of [Bond's] claim[s] against [Folsom Insurance] and will not credit [Folsom Insurance's]

Case 1:26-cv-00659-KM    Document 33-1    Filed 07/15/26    Page 11 of 46

Bond v. Folsom Insurance Agency LLC, Not Reported in Fed. Supp. (2025)

assessment to cut off [Bond] from seeking relevant evidence from this named party before discovery has closed and any summary judgment motion has been filed." *Velazquez v. El Pollo Regio LP, LLC*, No. 3:15-cv-3170-M, 2017 WL 2289185, at *6 (N.D. Tex. May 25, 2017). On the Court's reading, Bond has pleaded "call" broadly enough to include ringless voicemails, and, although the Court need not now determine whether a ringless voicemail can support liability as a matter of law under the statute, Folsom Insurance's answer is incomplete as to what Bond is asking based on what he has pleaded and is pursuing. And Folsom Insurance has not supported its other boilerplate objections and may not avoid appropriate classwide discovery that is – as Bond persuasively argues – necessary for a future class certification motion.

Dkt. No. 28.

Bond also asserts that there is "significant overlap" between discovery relevant to the merits of his individual claims and issues of class certification Dkt. No. 31 at 6. And, so, Bond argues that bifurcation would lead to duplication of discovery and may result in further discovery disputes regarding the distinction between merits and class discovery. *See id.* at 6-7. In Bond's view, bifurcation of discovery in this case would lead to the "opposite of judicial economy." *Id.* at 6.

As to class certification under Rule 23, the Supreme Court has instructed that "certification is proper only if 'the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied.' " *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350-351 (2011) (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 161 (1982)).

And "[f]requently that 'rigorous analysis' will entail some overlap with the merits of the plaintiff's underlying claim" because "the class determination generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action." *Id.* at 351 (cleaned up).

Considering *Dukes* and the "rigorous analysis" requirement for class certification, district courts have been reluctant to bifurcate class-related discovery from discovery on the merits. *See Ahmed v. HSBC Bank USA, Nat'l Ass'n*, No. EDCV152057FMOSPX, 2018 WL 501413 (C.D. Cal. Jan. 5, 2018) (declining to bifurcate discovery in TCPA case and stating that "the distinction between class certification and merits discovery is murky at best and impossible to determine at worst"); *Chen-Oster v. Goldman, Sachs & Co.*, 285 F.R.D. 294, 300 (S.D.N.Y. 2012) (collecting cases).

**\*3** In another TCPA case, *Cardenas v. Resort Sales by Spinnaker, Inc.*, No. 9:20-cv-00376-RMG, 2021 WL 733393 (D.S.C. Feb. 24, 2021), the Court found that bifurcation would not serve the interests of judicial economy given the plaintiff's "persuasive argument that the evidence needed to determine whether [they] have a claim substantially overlaps with [their] ability to represent a class under [Rule] 23." *Cardenas*, 2021 WL 733393, at *3.

Similarly, here, the undersigned already found that Folsom "may not avoid appropriate classwide discovery that is – as Bond persuasively argues – necessary for a future class certification motion." Dkt. No. 28. And, so, the Court agrees with Bond that bifurcation would not promote efficiency because there is considerable overlap between discovery relevant to the merits of his individual claims and issues of class certification. *Accord True Health Chiropractic Inc. v. McKesson Corp.*, 2015 WL 273188, *2-3 (N.D. Cal. 2015) (declining to bifurcate a TCPA class action and noting that individual and class discovery claims typically overlap).

And, in light of the bulk of authority discussing the lack of a "bright line" distinction between merits and class discovery, bifurcation could lead to avoidable, future disputes over whether a particular discovery request relates to the merits or to class certification. *See Quinn v. Specialized Loan Servs., LLC*, 321 F.R.D. 324, 327–28 (N.D. Ill. 2017); *see also City of Pontiac General Employees' Retirement System v. Wal–Mart Stores, Inc.*, 2015 WL 11120408, *1–2 (W.D. Ark. 2015) (bifurcation may force the court to resolve "endless discovery disputes"); *True* Health, 2015 WL 273188, at *3 (finding that bifurcation "raise[s]

a slew of issues as to what discovery relates to the class, as opposed to the named plaintiffs, thereby causing additional litigation regarding the distinction between the two.").

And, so, considering the binding law from *Dukes* and persuasive authority from other district courts, the Court declines to bifurcate discovery in this case.

### Conclusion

For the reasons explained above, the Court denies Folsom's Motion to Bifurcate Discovery [Dkt. No. 30]. The Court will separately enter a scheduling order under Federal Rule of Civil Procedure 16(b) in accordance with this Memorandum Opinion and Order.

SO ORDERED.

**All Citations**

Not Reported in Fed. Supp., 2025 WL 863469

---

**End of Document**

© 2026 Thomson Reuters. No claim to original U.S. Government Works.

---

2026 WL 893681
Only the Westlaw citation is currently available.
United States District Court, M.D. Pennsylvania.

Asher BRONSTIN, individually and on behalf of all others similarly situated, Plaintiff

v.

UPSTART NETWORK, INC. Defendant

No. 1:25cv1410

|

Signed 04/01/2026

**Attorneys and Law Firms**

Andrew Roman Perrong, Perrong Law LLC, Glenside, PA, Anthony I. Paronich, Pro Hac Vice, Paronich Law, P.C., Hingham, MA, for Plaintiff.

Andrew T. Sarangoulis, Burr & Forman LLP, Ft. Lauderdale, FL, Jackson Cobb Burrow, Joshua Howard Threadcraft, Pro Hac Vice, Burr & Forman LLP, Birmingham, AL, for Defendant.

**<u>MEMORANDUM ORDER</u>**

JULIA K. MUNLEY, JUDGE

**\*1** Before the court is a motion to bifurcate discovery filed by Defendant Upstart Network, Inc. ("Upstart") in this putative class action, which asserts a claim under the Telephone Consumer Protection Act of 1991 ("TCPA").[1] (Doc. 16). The motion will be denied.

Upstart is involved in moneylending. Plaintiff Asher Bronstin alleges that he received three loan-related robocalls from Upstart on May 12, May 19, and June 17, 2024 on his personal, residential telephone number despite never being a customer of the defendant and never consenting to receipt of telemarketing calls. (Doc. 1, Compl., ¶¶ 16–21, 28–30). He contends that Upstart violated the TCPA, 47 U.S.C. § 227(b), by sending or causing the robocalls to be sent without his consent.[2] Id. ¶¶ 44–47. He seeks to certify this matter as a class action under Federal Rule of Civil Procedure 23. Id. ¶ 36.

Upstart denies most of Bronstin's allegations. (Doc. 9, Ans.). The defendant however, does *not* deny that the calls were made. Id. ¶¶ 21–25. Rather, Upstart challenges Bronstin's ownership and use of the telephone number that received the calls. See e.g. id. ¶¶ 21, 23–25 ("To the extent that a response is required, Upstart denies that the telephone number at issue was assigned to Plaintiff...and demands strict proof.") This challenge also forms one of Upstart's 58 asserted defenses to this case. Id., Twenty-Second Defense.

Along the same lines, Upstart filed the instant motion seeking to order discovery as follows:

(1) Bifurcate discovery for a 90-120 day period regarding:

   (a) When the telephone number at issue was assigned to him;

   (b) His relationship with Upstart's customer; and

(c) The number of telephones Mr. Bronstin has, and when and why they were obtained; and

(2) Only permit class discovery to proceed if the limited discovery outlined above does not dispose of Mr. Bronstin's claims.

(Doc. 17, Def. Br. in Supp. at 19). This proposal necessarily requires a stay of class discovery while individual discovery is completed.

With the motion, Upstart asks the court to hold several things against Bronstin in the discovery phase of this litigation, namely that: 1) he is a frequent TGPA litigant; 2) other defendants in other TCPA cases have accused Bronstin of baiting calls to trigger a TCPA lawsuit; and 3) Bronstin owns or has owned at least five other phone numbers based on allegations in his different TCPA lawsuits. Id. at 1, 5, 7, nn.1, 7.

**\*2** Upstart additionally asserts that its own investigation has uncovered some discrepancies. That is:

1) In December 2022, an individual applied for and obtained a personal loan using the Upstart lending platform, providing the telephone number at issue in this lawsuit along with consent to contact that number. Id. at 3, 9.

2) Thereafter, Upstart made calls and sent texts to that phone number and also received communications from the phone number. The person on the other end of the phone line identified themselves as Upstart's customer. Id. at 3.

3) In March 2024, prior to the calls at issue in May and June 2024, Upstart queried the Federal Communications Commission's ("FCC") reassigned number database and received information indicating that the subject phone number had not been reassigned. Id. at 4, 9.

4) Between March and May 2024, Upstart called and texted the subject phone number and received no indication that it had been permanently disconnected. Id.

5) A reverse phone number search by Upstart's counsel indicates that the phone number was associated with Bronstin from 2010 to 2017, before the 2022 loan application and Upstart's calls and texts to that phone number. Id. at 4, 9–10.

6) On April 16, 2025, Upstart received a call from its customer using a telephone number that was not the subject number. Id. at 5.

7) Upstart could not locate the customer's account with that phone number or the other number provided, which was also not the phone number at issue in this case. Id.

In short, Upstart's defense to Bronstin's claim and the request for individualized discovery are grounded in the same overarching premise: we called this phone number, but the number belonged to our customer, not a perennial TCPA litigant, who has been accused of fraud in at least one other case. [3]

In opposition, Bronstin argues that bifurcated discovery will be inefficient and prejudicial and that Upstart's argument rests on factual premises that can be easily addressed. (Doc. 19 at 2). That is, the plaintiff has already supplied Upstart with phone bills for the telephone number at the heart of this dispute and evidence that the number was reassigned to him. Id.; see also Docs. 20-1 and 20-2, Pl. Exs. A-B.

There is no Federal Rule of Civil Procedure directly addressing a motion for bifurcation of discovery. However, courts have broad discretion in managing discovery, including the decision whether to conduct discovery in phases. See FED. R. CIV. P. 1 (the Rules "should be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding"), 26(b)(1) (authorizing courts to limit the scope of discovery); 42(b) (authorizing courts to order a separate trial on one or more issues, "[f]or convenience, to avoid prejudice, or to expedite and

economize."); see also Bandai Am. Inc. v. Bally Midway Mfg. Co., 775 F.2d 70, 74 (3d Cir. 1985) ("Bifurcation orders and orders controlling the order of discovery are reviewed for abuse of discretion.").

**\*3** As the party seeking bifurcation, Upstart has the burden of demonstrating that it will be more convenient, less prejudicial, more expeditious, and more economical. Clarity Sports Int'l LLC v. Redland Sports, 400 F. Supp. 3d 161, 184 (M.D. Pa. 2019) (citation omitted). Upstart has not met that burden here. Rather, Upstart has demonstrated that bifurcation will be only more convenient, less prejudicial, more expeditious, and more economical to its interests and its interests alone, Thus, the motion will be denied.

Class determinations generally involve considerations that are enmeshed in factual and legal issues comprising plaintiff's cause of action. Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 351 (2011) (citation omitted). Where individual issues overlap with the class certification issues, a court has reason enough to deny a bifurcation motion. See e.g. Klassen v. SolidQuote LLC, No. 23-CV-00318-GPG-NRN, 2023 WL 5497865, at \*2 (D. Colo. Aug. 23, 2023).

The issues raised here are disputes over Bronstin's credibility, not threshold legal questions warranting restructured discovery. It appears as if this dispute involves Upstart calling a phone number that may or may not have been reassigned. it is both a plaintiff-focused and class-focused endeavor to uncover whether Upstart directed robocalls to reassigned phone numbers owned by individuals who did not consent to receive them. If Bronstin engaged in some elaborate scheme with a third party to swap numbers and bait calls, unified discovery will reveal that evidence along the way. A plaintiff's credibility is at issue in every case. Upstart has not demonstrated why this case requires different treatment.

The court is also not convinced that bifurcation would be more expeditious and economical. With bifurcated discovery, the court will create a new possible dispute: whether the requests exchanged are seeking information related to individualized discovery or class discovery. Additionally, if Upstart intended to file a dispositive motion at the end of this proposed phase, the record already includes evidence that appears to demonstrate a genuine dispute of material fact. If a dispositive motion is filed on the plaintiff's individual claim and is denied, class discovery would then proceed after the parties had expended additional time and money. It would be more expeditious and economical to have a single phase of individualized and class discovery that leads to a class certification motion. [4]

Accordingly, it is hereby **ORDERED** that Upstart's motion to bifurcate discovery, (Doc, 19), is **DENIED.** A case management conference will be scheduled by way of a separate order.

**All Citations**

Slip Copy, 2026 WL 893681

---

**Footnotes**

[1]    "The TCPA protects businesses and consumers from intrusive telemarketing communications." McLaughlin Chiropractic Assocs., Inc. v. McKesson Corp., 606 U.S. 146, 149 (2025).

[2]    The TCPA "makes it unlawful to use an automatic telephone dialing system or an artificial or prerecorded voice message, without the prior express consent of the called party, to call any... cellular telephone, or other service for which the receiver is charged for the call." Mims v. Arrow Fin. Servs., LLC, 565 U.S. 368, 373 (2012) (citing 47 U.S.C. § 227(b)(1)(A)). The TCPA also "forbids using artificial or prerecorded voice messages to call residential telephone lines

without prior express consent. Id. (citing 47 U.S.C. § 227(b)(1)(B)). "In plain English, the TCPA prohibited almost all robocalls to cell phones." Barr v. Am. Ass'n of Pol. Consultants, Inc., 591 U.S. 610, 615 (2020) (footnote omitted).

3    Upstart has not asserted a fraud counterclaim against the plaintiff in this case.

4    Defendants' remaining standing-adjacent arguments fare no better. Bronstin's history as a repeat TCPA litigant does not deprive him of standing. See Mey v. Venture Data, LLC, 245 F. Supp. 3d 771, 783 (N.D.W. Va. 2017). Bronstin's counsel's history as a repeat TCPA litigant does not deprive Bronstin of standing. See Perrong v. Victory Phones LLC, No. CV 20-5317, 2021 WL 3007258, at *4 (E.D. Pa. July 15, 2021) (Pratter, J.).

---

**End of Document**    © 2026 Thomson Reuters. No claim to original U.S. Government Works.

2013 WL 3417416
Only the Westlaw citation is currently available.
NOT FOR PUBLICATION
United States District Court, D. New Jersey.

CEPHALON, INC., Plaintiff,

v.

SUN PHARMACEUTICAL INDUSTRIES, LTD., and Caraco Pharmaceutical Laboratories, Ltd., Defendants.

Civil Action No. 11–5474 (FLW)(DEA).
|
July 8, 2013.

**Attorneys and Law Firms**

Allyn Zissel Lite, Mayra Velez Tarantino, Michael E. Patunas, Susana Cruz Hodge, Lite Depalma Greenberg, LLC, Newark, NJ, for Plaintiff.

Damian P. Conforti, Podvey, Meanor, Catenacci, Hildner Cocoziello & Chattman, PC, Newark, NJ, Gregory D. Miller, Podvey, Meanor, Catenacci, Hildner, Cocoziello & Chattman PC, Newark, NJ, for Defendants.

OPINION

WOLFSON, District Judge.

**\*1** In this patent infringement action filed by Plaintiff Cephalon, Inc. ("Cephalon"), Defendants Sun Pharmaceutical Industries, Ltd. and Caraco Pharmaceutical Laboratories, Ltd. ("Defendants") have appealed the April 3, 2013 Letter Order of the Magistrate Judge, Dkt. No. 227, ("Letter Order") denying Defendants' request to bifurcate the case on the issues of liability and damages for discovery and trial purposes. The Court has jurisdiction pursuant to 28 U.S.C. § 1331. For the following reasons, the Court affirms in part and vacates in part the decision of the Magistrate Judge.

**BACKGROUND**

The parties are familiar with the underlying facts in this matter, which the Court most recently detailed in its Opinion on December 20, 2012, denying Cephalon's motion for a preliminary injunction. *See* Dkt. No. 187. Thus, the Court will only briefly recite the facts necessary to deciding the instant appeal. During an Initial Scheduling Conference held on February 26, 2013, the Magistrate Judge rejected on the record the parties' Joint Discovery Plan, including Defendants' proposal to bifurcate liability and damages issues in this case. In a letter to the Magistrate Judge dated March 12, 2013, Defendants informally renewed their request to bifurcate both the discovery and trial portions of the case.[1] *See* Dkt. No. 219 at 2 ("Sun respectfully requests bifurcation of both discovery and trial of the potential issues of damages, willfulness and exceptional case ...."). Relying on the decision in ⚑ *Princeton Biochemicals, Inc. v. Beckman Instruments, Inc.,* 180 F.R.D. 254 (D.N.J.1997), for support, Defendants contended that bifurcation was necessary because of the complexity of the case, the threat of prejudice due to jury confusion, and considerations of judicial economy. *See* Dkt. No. 219 at 3–7. After thoroughly considering the arguments from both sides, although not presented by formal motion, the Magistrate Judge rejected Defendants' renewed bifurcation request, finding that: (1) the case is not complex; (2) contrary to Defendants' position, bifurcation would likely delay the litigation and result in duplication of effort rather than promote judicial economy; and (3) Defendants' reliance on the *Princeton* decision was misplaced. *See* Letter Order at 2. *Id.* Defendants then filed the instant appeal.

## STANDARD OF REVIEW

A United States Magistrate Judge may hear and determine any non-dispositive pretrial matter pursuant to 28 U.S.C. § 636(b) (1) (A). To that end, a district court will only reverse a magistrate judge's decision on these matters if it is contrary to law or clearly erroneous. *Id.;* Fed.R.Civ.P. 72(a). "The party filing the notice of appeal bears the burden of demonstrating that the magistrate judge's decision was clearly erroneous or contrary to law." *Marks v. Struble,* 347 F.Supp.2d 136, 149 (D.N.J.2004). A ruling is "contrary to law" when the magistrate judge has misinterpreted or misapplied the applicable law. *Pharmaceutical Sales & Consulting Corp. v. J.W.S. Delavau Co., Inc.,* 106 F.Supp.2d 761, 764 (D.N.J.2000). A finding is clearly erroneous when "although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Anderson v. Bessemer City,* 470 U.S. 564, 573, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985) (citing *United States v. U.S. Gypsum Co.,* 333 U.S. 364, 395, 68 S.Ct. 525, 92 L.Ed. 746 (1948)). Under this standard, "a district judge's simple disagreement with the magistrate judge's findings is insufficient to meet the clearly erroneous standard of review." *Andrews v. Goodyear Tire & Rubber Co., Inc.,* 191 F.R.D. 59, 68 (D.N.J.2000), and a district court will not reverse a magistrate judge's finding even "in circumstances where the [reviewing] court might have decided the matter differently." *Bowen v. Parking Auth. of City of Camden,* No. 00–5765(JBS), 2002 U.S. Dist. LEXIS 14585, at *3, 2002 WL 1754493 (D.N.J. July 30, 2002).

**\*2** Where a magistrate judge has ruled on a non-dispositive matter "such as a discovery motion, his or her ruling is entitled to great deference and is reversible only for abuse of discretion." *Kresefksy v. Panasonic Communications & Sys. Co.,* 169 F.R.D. 54, 64 (D.N.J.1996). An abuse of discretion "may be found where the [magistrate] judge's decision rests upon a clearly erroneous finding of fact, an errant conclusion of law or an improper application of law to fact." *In re Warfarin Sodium Antitrust Litig.,* 391 F.3d 516, 527 (3d Cir.2004) (internal quotations omitted).

## DISCUSSION

Initially, I address the scope of the Magistrate Judge's decision and the issues presented on appeal. Defendants initially raised —and the Magistrate Judge rejected—their bifurcation request in the context of the proposed Joint Discovery Plan, suggesting that Defendants sought bifurcation for discovery purposes. In Defendants' renewed letter application for bifurcation, however, Defendants raise arguments concerning bifurcation for both discovery and trial purposes, and, indeed, the Magistrate Judge's Letter Order could be read as denying bifurcation as to both the discovery and trial portions of this case. Such a determination regarding trial proceedings is premature in this matter, and, accordingly, to the extent that the Letter Order denied bifurcation at trial, I vacate that portion of the Magistrate Judge's decision. *See N.A.A.C.P. v. North Hudson Regional Fire and Rescue,* 255 F.R.D. 374, 393 (D.N.J.2009) (denying without prejudice a motion for bifurcation, filed in connection with motions for a preliminary injunction and class certification, on the basis that such a motion was premature "[g]iven the early stage of [the] litigation"). Although Defendants' application to bifurcate trial is premature at this stage, the parties may submit another application if and when trial should occur in this case—ideally, at the time of the final pretrial conference.

The sole issue, then, that remains on appeal is whether the Magistrate Judge abused his discretion in deciding not to bifurcate discovery relating to liability and damages issues. Generally, bifurcation is permitted "in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy." Fed.R.Civ.P. 42(b). To that end, the Third Circuit has stated "the trial judge is entrusted with discretion [to decide case management issues such as bifurcation] because he is in a far better position than we to appraise the effect of [a particular procedure on the parties]." *Reed v. Philadelphia, Bethlehem & New England R.R. Co.,* 939 F.2d 128, 133 (3d Cir.1999). Thus, the decision to permit or deny bifurcation rests within the sound discretion of the court. [2] *Bair Laboratories, Inc., v. Abbott Laboratories,* 978 F.2d 98, 115 (3d Cir.1992); *Gardco Mfg ., Inc. v. Herst Lighting Co.,* 820 F.2d 1209, 1212 (Fed.Cir.1987); *Princeton,* 180 F.R.D. at 256.

**\*3** Courts in this district do not routinely grant motions to bifurcate discovery, unless there is some showing on the part of the moving party as to why bifurcation is appropriate. *E.g.,* ⚑*In re GI Holdings Inc.,* 218 F.R.D. 428, 440 (D.N.J.2003) (denying motion to bifurcate discovery or trial based on finding that denial would cause no prejudice to moving party); *Glennon v. Wing Enterprises, Inc.,* CIV.A. 10–0324 JAP, 2010 WL 4782773, at \*17 (D.N.J. Nov.17, 2010) (denying bifurcation of discovery based on finding that issues were not sufficiently complex and that bifurcation would not promote settlement); *see also* ⚑*Innovative Office Prods. v. SpaceCo, Inc.,* No. 05–4037, 2006 U.S. Dist. LEXIS 29439, at \*4–5, 2006 WL 1340865 (E.D.Pa. May 15, 2006) ("bifurcation remains the exception rather than the rule"). In that connection, the moving party bears the burden of demonstrating that bifurcation would serve judicial economy, avoid inconvenience, and not prejudice any of the parties. *See Glennon,* 2010 WL 4782773, at \*17.

Notwithstanding the foregoing, Defendants argue that the Magistrate Judge clearly erred by finding that: (1) the case lacks complexity; (2) bifurcation would be less efficient, and (3) the *Princeton* decision does not mandate bifurcation. I address each of these issues in turn. First, Defendants contend that, in this case, "a full and fair evaluation of the issue of infringement— standing alone—presents a daunting task for anyone, particularly a jury." Def. Br. at 4. Similarly, with respect to damages, Defendants argue that "the question of a 'reasonable royalty' can be exceedingly complex." *Id.* at 5. Thus, Defendants reason that "this is precisely the type of case where bifurcation of liability and damages issues is necessary." *Id.* at 6. Much of that argument appears to relate to the issue of bifurcation of trial, no discovery. Defendants do not, however, point to any mistake of fact or law on this appeal showing that the Magistrate Judge abused his discretion in finding that the issues in this case were not so complex as to require bifurcation of discovery. Instead, Defendants simply reiterate the same arguments advanced before the Magistrate Judge, which he "thoroughly considered" and then rejected; indeed, Defendants have not provided any basis for this Court to determine that the Magistrate Judge erred when he found that there was "a relative lack of complexity" in the issues in this case. Letter Order at 2. Accordingly, the Court finds that the Magistrate Judge did not err in his findings or abuse his discretion in this regard.

Next, Defendants claim that bifurcation would promote judicial economy because the issue of damages is "purely contingent" upon a finding of liability. [3] Def. Br. at 8. In that respect, Defendants argue that it does not make sense "to expend the tremendous time and resources necessary to prepare damages issues for summary judgment or trial" because this Court has already denied Cephalon's preliminary injunction motion based in part on a failure to demonstrate likelihood of success on its claims. *Id.* Again, Defendants do not highlight any mistake of fact or law made by the Magistrate Judge. Rather, Defendants' argument is merely a disagreement with the Magistrate Judge's finding. Such disagreement is "insufficient to meet the clearly erroneous standard of review." ⚑*Andrews,* 191 F.R.D. at 68. Accordingly, Defendants' argument fails in this respect as well.

**\*4** Lastly, Defendants claim the Magistrate Judge abused his discretion by ignoring controlling case law, to wit, ⚑*Princeton Biochemicals, Inc. v. Beckman Instruments, Inc.,* 180 F.R.D. 254 (D.N.J.1997). To that end, Defendants rely on the following language in *Princeton:*

> In the normal case separate trial of issues is seldom required, but in a patent infringement suit considerations exist which suggest that efficient judicial administration would be served by separate trials on the issues of liability and damages. The trial of the damages question in such a suit is often difficult and expensive, while being easily severed from the trial of the questions of validity and infringement of the patent.

Def. Br. at 9 (quoting ⚑*Princeton,* 180 F.R.D. at 256). Even cursory review of this language reveals that Defendants' reliance on *Princeton* is misplaced. To begin, the issue of bifurcation in *Princeton* concerned trial, not discovery. Here, however, I am reviewing the Magistrate Judge's decision regarding bifurcation for discovery purposes only. Indeed, the complexity issue in

*Princeton* related to a concern of jury confusion, which is not implicated in discovery proceedings. [4] Thus, the Magistrate Judge did not abuse his discretion in concluding that "the concerns and considerations presented in *Princeton* are, therefore, not similarly implicated here." Letter Order at 2.

Moreover, even assuming *arguendo* that the rationale in *Princeton* should be extended to discovery, bifurcation is still not mandated in the present case. Contrary to Defendants' position, *Princeton* does not stand for the principle that bifurcation is *required* in any case; rather, the *Princeton* decision clearly explained that "the decision to bifurcate ... remains within the sound discretion of the district court." *Princeton,* 180 F.R.D. at 258. Indeed, as discussed *supra* in this Opinion, there is no bright line rule for when bifurcation is appropriate. *See id.* ("A substantial body of case law has arisen to which a court may turn to inform its discretion. However, the actual decision reached in any one of those cases is of limited value because only the specific facts and circumstances of the case before the court can provide the answer to the question of whether the advantages of bifurcation outweigh the disadvantages."). *Compare Dutch Branch of Streamserve Dev. AB v. Extream Software, LLC,* Civ. No. 08–343–SLR, 2009 WL 2706932, at *1 (D.Del. Aug.26, 2009) (stating that "bifurcation is appropriate, if not necessary, in all but exceptional patent cases"), *with* *Graco Inc. v. PMC Global, Inc.,* No. 08–1304(FLW), 2009 WL 904010, at *36 (D.N.J. Mar.31, 2009) (stating that "bifurcation is the exception rather than the rule in patent cases"). Thus, even were *Princeton* controlling in this case, it would not mandate bifurcation, and accordingly would not show that the Magistrate Judge abused his discretion in denying bifurcation.

**\*5** Overall, many of the concerns Defendants raised in the bifurcation application before the Magistrate Judge, and again here on appeal, relate to issues that would arise at trial. As explained in this Opinion, although I conclude that the Magistrate Judge did not abuse his discretion in denying bifurcation with respect to discovery, any ruling on the bifurcation of issues for trial is premature at this preliminary stage of the case. Thus, should a trial be necessary, the parties are free to revisit the issue of bifurcation at a more appropriate time, *e.g.,* during their final pretrial conference.

**CONCLUSION**

Defendants have failed to show that the Magistrate Judge abused his discretion in denying Defendants' request to bifurcate discovery, and accordingly, the Magistrate Judge's Letter Order is affirmed in that respect. To the extent that the Magistrate Judge also denied bifurcation of issues for trial, that portion of the Magistrate Judge's decision is vacated, as such an application is premature.

An appropriate order shall follow.

**All Citations**

Not Reported in F.Supp.2d, 2013 WL 3417416

---

**Footnotes**

1       Specifically, Defendants seek bifurcation of liability from the issues of "damages, willfulness and exceptional case," and wish to stay all discovery and trial matters relating to these latter issues. *See* Dkt. No. 219 at 2 n. 2. For the sake of clarity, like Defendants, I refer to these issues collectively as "damages."

2       Defendants suggest, for the first time in a footnote in their reply brief, that the Magistrate Judge's bifurcation decision is a wholly legal conclusion subject to *de novo* review on appeal. *See* Def. Reply at 2 n. 2. Although unclear from the footnote, Defendants may have asserted such a position based on their understanding that the Magistrate Judge

denied bifurcation as to both discovery and trial. As explained above, any ruling with respect to the bifurcation of trial is premature and thus vacated. With respect to discovery issues, however, the Magistrate Judge's determination regarding bifurcation necessarily entailed factual findings regarding the complexity of this case and whether bifurcation would promote judicial economy. Thus, I reject Defendants invitation to apply a *de novo* standard on this appeal to the Magistrate Judge's decision concerning bifurcation of discovery, and instead I follow the general rule that discovery disputes are subject to abuse of discretion review. *See* ⚑*Kresefksy v. Panasonic Communications & Sys. Co.,* 169 F.R.D. 54, 64 (D.N.J.1996).

3      Of course, Defendants' argument in this regard applies to *every* case, since the issue of damages is always contingent upon a finding of liability. In other words, according to Defendants, bifurcation is *always* appropriate. Such reasoning contravenes the language of Rule 42(b) and the case law cited in this Opinion. The Magistrate Judge certainly did not abuse his discretion in rejecting such reasoning.

4      In *Princeton,* I found the case to be complex and thus warranting bifurcation at trial because the jury would be require to process volumes of technical exhibits, and "this task would be surely overwhelming to even the most sophisticated jurors." ⚑*Princeton,* 180 F.R.D. at 258. Additionally, regarding judicial economy, I found that "litigating the damages issue ... may ultimately prove unnecessary" because the accused product was a multi-million dollar product line; thus, a liability determination would "define the parameters of the allegedly infringing product." ⚑*Id.* at 259. Neither of these findings exist at this point in the present case.

---

**End of Document**                                                                                              © 2026 Thomson Reuters. No claim to original U.S. Government Works.

2025 WL 2422617
Only the Westlaw citation is currently available.
United States District Court, M.D. Pennsylvania.

Joseph FRIEL, individually and on behalf of others similarly situated, Plaintiff

v.

LINE 5, LLC and Headstart Warranty Group, LLC, Defendants

No. 3:24cv1866
|
Signed August 21, 2025

**Attorneys and Law Firms**

Anthony I. Paronich, Pro Hac Vice, Paronich Law, P.C., Hingham, MA, Jeremy C. Jackson, Bower Law Associates, PLLC, State College, PA, Andrew Roman Perrong, Perrong Law LLC, Glenside, PA, for Plaintiff.

Brit J. Suttell, Barron & Newburger, P.C., Media, PA, for Defendant Line 5, LLC.

Andrew Michael Schwartz, Messer Strickler Burnette, Ltd., Downingtown, PA, Barry Guaglardi, Pro Hac Vice, Guaglardi & Meliti, LLP, Rochelle Park, NJ, for Defendant Headstart Warranty Group LLC.

**MEMORANDUM**

JULIA K. MUNLEY, JUDGE

**\*1**  This putative class action case involves automated telephone calls allegedly sent by companies selling, guaranteeing, and/or financing vehicle service contracts, otherwise known as extended car warranties. After receiving numerous unsolicited extended-warranty calls over a two-month period, Plaintiff Joseph Friel filed this action pursuant to the Telephone Consumer Protection Act of 1991, 47 U.S.C. § 227, ("TCPA"), seeking to represent a nationwide class of robocall recipients and a class of recipients on the National Do Not Call Registry ("DNCR"). Before the court is a motion to strike the class allegations from Friel's complaint prior to discovery. Also pending is a motion to bifurcate discovery, which actually requests that discovery be conducted in three separate phases. Both motions are ripe for disposition.

**Background** [1]

Friel's TCPA complaint alleges that former defendant JEA Management Services d/b/a Covered Auto ("JEA") sent prerecorded telemarketing calls on behalf of Defendants Headstart Warranty Group, LLC ("Headstart") and Line 5, LLC ("Line5"), including to recipients on the DNCR without the call recipient's express written consent. (Doc. 1, Compl. ¶ 5).

As for the extended car warranties involved in this TCPA litigation, Friel's complaint details a joint enterprise among the JEA, Headstart, and Line5 entities. Id. ¶ 17. As alleged, JEA and Headstart sell vehicle service contracts with JEA acting as a sales agent and Headstart acting as the guarantor of the contracts. id. ¶¶ 14–15. Line5 handles customer management, payment processing, and provides financing for the contracts sold by JEA and guaranteed by Headstart. Id. ¶ 16. To generate business, JEA places telemarketing calls, some of which are prerecorded, on behalf of Headstart and Line5. Id. ¶ 17.

Friel further alleges that he maintains a personal residential telephone number, which has been on the DNCR since 2011. Id. ¶¶ 18–20. According to the plaintiff, he has never been a customer of JEA, Headstart, or Line5 and never inquired into being

a customer of these entities. Id. ¶ 21. Nevertheless, Friel received at least fourteen (14) telemarketing calls from JEA between August 8, 2024 and September 27, 2024. Id. ¶ 22. The caller IDs from these incoming calls reflected different phone numbers from area codes associated with the Philadelphia, Allentown-Bethlehem-Easton, and Scranton-Wilkes-Barre metropolitan areas. Id. ¶¶ 22, 27.

Friel answered the calls. They all began with a prerecorded voice message with fake typing and office background noise. Id. ¶¶ 23, 24. A robotic voice greeted Friel by name, identified that it was calling on behalf of the "vehicle service department," and asked how the plaintiff was doing. Id. ¶ 24. Friel hung up on most of the calls. Id. ¶ 26.

Friel answered one of the calls on September 27, 2024. Id. ¶ 27. Plaintiff heard the above prerecorded message, responded to questions posed by the artificial intelligence agent, and was then transferred to a human representative. Id. ¶¶ 23–32. Next, Friel listened to that representative's sales speech about a vehicle service contract and the financing program offered by Defendant Line5. Id. ¶¶ 32–33. Subsequently, Friel received various emails and text messages from Line5 and a copy of a vehicle service contract for signature. Id. ¶ 36. From these communications, Friel discerned JEA, Headstart, and Line5's roles in the telephone calls. Id. ¶¶ 37–39.

*2  Approximately one month later, on October 29, 2024, Friel initiated this putative class action against JEA, Headstart, and Line5 under ⚑47 U.S.C. § 227(b) and ⚑47 U.S.C. § 227(c)(5) seeking to represent himself and other similarly situated individuals. (Doc. 1, Compl. ¶¶ 90–99). JEA responded by filing three motions: 1) a motion to strike class allegations, (Doc. 29); 2) a motion to dismiss for failure to state a claim, (Doc. 31), and 3) a motion to trifurcate discovery, (Doc. 33). JEA filed briefs in support of each motion. (Docs. 30, 32, 34). Defendant Line5 joined JEA's motion to strike and motion to trifurcate discovery. (Docs. 45–46).

On March 25, 2025, Friel filed a notice of voluntary dismissal regarding JEA. (Doc. 50). JEA's dismissal rendered the motion to dismiss moot. (Doc. 51). The court determined that Line5's joinder to the other motions required oppositional briefing. Id. Friel subsequently filed his briefs in opposition as ordered. (Docs. 52–53). Line5 then filed a reply brief regarding the motion to trifurcate discovery, (Doc. 54), but not the motion to strike. Based on the briefs of JEA and Friel, the motion to strike plaintiff's TCPA class allegations is ripe for disposition. Similarly, the motion seeking phased discovery is ready for a decision based upon the briefs of JEA, Friel, and Line5.

**Jurisdiction**

Because Friel brings suit under a federal statute, the court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331. See ⚑Mims v. Arrow Fin. Servs., LLC, 565 U.S. 368, 387, 132 S.Ct. 740, 181 L.Ed.2d 881 (2012) (holding that nothing in the text, structure, or legislative history of the TCPA calls for displacement of federal question jurisdiction).

**Analysis**

**1. The TCPA and the Proposed Classes**

This putative class action concerns alleged violations of the TCPA. "The TCPA protects businesses and consumers from intrusive telemarketing communications." ⚑McLaughlin Chiropractic Assocs., Inc. v. McKesson Corp., 606 U.S. 146, 149, 145 S.Ct. 2006, —— L.Ed.2d —— (2025). The TCPA "makes it unlawful to use an automatic telephone dialing system or an artificial or prerecorded voice message, without the prior express consent of the called party, to call any... cellular telephone, or other service for which the receiver is charged for the call." ⚑Mims, 565 U.S. at 373, 132 S.Ct. 740 (citing ⚑47 U.S.C. § 227(b)(1)(A)). The TCPA also "forbids using artificial or prerecorded voice messages to call residential telephone lines without prior express consent." ⚑Id. (citing ⚑47 U.S.C. § 227(b)(1)(B)). "In plain English, the TCPA prohibited almost all robocalls to cell phones." ⚑Barr v. Am. Ass'n of Pol. Consultants, Inc., 591 U.S. 610, 615, 140 S.Ct. 2335, 207 L.Ed.2d 784 (2020) (footnote omitted).

Additionally, Section 227(b) contains a private right of action based on violations of that subsection or the regulations prescribed under that subsection. 47 U.S.C. § 227(b)(3). Under Section 227(b)(3), a person or entity may: 1) obtain injunctive relief; 2) recover actual monetary loss or receive $500 in damages, whichever is greater; or 3) both. See 47 U.S.C. § 227(b)(3)(A)–(C). "The TCPA imposes tough penalties for violating the robocall restriction," including trebling the above damages for willful or knowing violations, "which can add up quickly in a class action." Barr, 591 U.S. at 616, 140 S.Ct. 2335.

Section 227(c) concerns further protections of residential telephone subscribers' privacy rights and directs the Federal Communications Commission ("FCC") to prescribe regulations regarding do-not-call systems. See 47 U.S.C. § 227(c)(1)–(4). Section 227(c) "authorizes a private right of action for violation of the FCC's implementing regulations[ ]" related to do-not-call. See 47 U.S.C. § 227(c)(5); Mims, 565 U.S. at 375 & n.5, 132 S.Ct. 740. Section 227(c)(5) permits a civil action by "[a] person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations[.]" 47 U.S.C. § 227(c)(5). [2] Under Section 227(c)(5), a person or entity may: 1) obtain injunctive relief; 2) recover actual monetary loss or receive $500 in damages, whichever is greater; or 3) both. See 47 U.S.C. § 227(c)(5)(A)–(C). A plaintiff may also seek treble damages for willful or knowing violations of the do-not-call regulations. Id.

**\*3** These statutory provisions and attendant regulations form the basis of Friel's complaint against the defendants. They also form the basis of his two proposed classes. The proposed Robocall Class stems from the alleged Section 227(b) and related regulatory violations, while the proposed National Do Not Call Registry Class ("DNCR Class") derives from the alleged Section 227(c) and related regulatory violations.

### 2. Motion to Strike Class Allegations

There are two motions presently pending before the court. First, as mentioned above, Line5 joined in JEA's motion to strike the class allegations from Friel's complaint. The motion to strike is partly premised upon Rule 12(f) of the Federal Rules of Civil Procedure. Rule 12(f) provides that the court "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." FED. R. CIV. P. 12(f). Rule 12(f) motions are designed to clean up the pleadings, streamline litigation, and avoid unnecessary forays into immaterial matters. Goode v. LexisNexis Risk & Info. Analytics Grp., Inc., 284 F.R.D. 238, 243 (E. D. Pa. 2012) (citations omitted); see also McInerney v. Moyer Lumber and Hardware, Inc., 244 F.Supp.2d 393, 402 (E.D. Pa. 2002). Providing relief under Rule 12(f) is largely disfavored and such motions are typically denied "unless the material bears no possible relation to the matter at issue and may result in prejudice to the moving party." Miller v. Group Voyagers, Inc., 912 F.Supp. 164, 168 (E.D. Pa. 1996). In the class action context, however, it is unlikely that a defendant can show that a plaintiff's class allegations constitute matters usually contemplated by Rule 12(f). See In re Ry. Indus. Emp. No-Poach Antitrust Litig., 395 F. Supp. 3d 464, 496 (W.D. Pa. 2019) (citations omitted).

The motion to strike is also premised upon Federal Rule of Civil Procedure 23, which governs the administration of class actions in federal courts. See Perrigo Institutional Inv. Grp. v. Papa, No. 24-2861, 2025 WL 2315977, at \*4 (3d Cir. Aug. 12, 2025). Although "an ingenious procedural innovationM" Eubank v. Pella Corp., 753 F.3d 718, 719 (7th Cir. 2014), "[t]he class action is 'an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only.' " Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 348, 131 S.Ct. 2541, 180 L.Ed.2d 374 (2011) (quoting Califano v. Yamasaki, 442 U.S. 682, 700–701, 99 S.Ct. 2545, 61 L.Ed.2d 176 (1979)). Thus, to ensure that named plaintiffs

are appropriate representatives of the class whose claims they wish to litigate, Rule 23(a) contains four requirements: numerosity, commonality, typicality, and adequacy of representation. See id. at 348–49, 131 S.Ct. 2541. Additionally, for a class to be certified, the requirements of Rule 23(b)(1), (2), or (3) must also be met. Marcus v. BMW of N. Am., LLC, 687 F.3d 583, 590 (3d Cir. 2012).

Friel brings this putative TCPA class action pursuant to Rule 23(b)(2) and/or Rule 23(b)(3). (Doc. 1, Compl. ¶ 73). Rule 23(b)(2) is used to pursue injunctions in class actions. See In re: Google Inc. Cookie Placement Consumer Priv. Litig., 934 F.3d 316, 323 (3d Cir. 2019). The complaint requests injunctive relief to prohibit defendants from using prerecorded voices in the future and from making telemarketing calls to telephone numbers on the DNCR. (Doc. 1, Compl. ¶¶ 94, 99). Friel, however, also seeks statutory damages on behalf of himself and the putative classes. Id. ¶¶ 92-93, 98. Rule 23(b)(2) certification is not authorized when each individual class member would be entitled to a different injunction or declaratory judgment against the defendant, or when each class member would be entitled to individualized award of monetary damages. Wal-Mart Stores, Inc., 564 U.S. at 360, 131 S.Ct. 2541. Rather, "individualized monetary claims belong in Rule 23(b)(3)." Id. at 362, 131 S.Ct. 2541. Under Rule 23(b)(3), a class action may be maintained if the numerosity, commonality, typicality, and adequacy of representation requirements of Rule 23(a) are satisfied and "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." [3] FED. R. CIV. P. 23(b)(3).

**\*4** Rule 23(c) further provides that "[a]t an early practicable time after a person sues... as a class representative, the court must determine by order whether to certify the action as a class action." FED. R. CIV. P. 23(c)(1)(A). Additionally, Rule 23(d) permits the court to issue orders that: 1) "determine the course of proceedings or prescribe measures to prevent undue repetition or complication in presenting evidence or argument[,]" FED. R. CIV. P. 23(d)(1)(A), and/or 2) "require that the pleadings be amended to eliminate allegations about representation of absent persons and that the action proceed accordingly[,]" FED. R. CIV. P. 23(d)(1)(D). Consequently, where the goal of the motion to strike is to eliminate class allegations prior to discovery, other district courts have concluded that such motions should be considered under the above provisions of Rule 23, not under Rule 12(f). See In re Ry. Indus. Emp. No-Poach Antitrust Litig., 395 F. Supp. 3d at 496; see also Johnson v. Ally Fin. Inc., No. 1:16-CV-1100, 2017 WL 3433689, at \*2 (M.D. Pa. Aug. 10, 2017) (Conner, J.) (concluding that a motion to strike class allegations is not an improper procedural device).

To determine whether the requirements of Rule 23 have been satisfied, "a district court must conduct a 'rigorous analysis.' " Landsman & Funk PC v. Skinder-Strauss Assocs., 640 F.3d 72, 93 (3d Cir. 2011) (quoting In re Hydrogen Peroxide Antitrust Litig., 552 F.3d 305, 309 (3d Cir. 2008)). [4] There are "rare few" instances in which "the complaint itself demonstrates that the requirements for maintaining a class action cannot be met." Id. at 93, n.30. Thus, "delving into the propriety of class certification" can be "the wrong focus" at an early stage of a proceeding where there has been no motion for class certification and no discovery. Id. at 93–94. After all, "[a]n order striking class allegations is functionally equivalent to an order denying class certification[.]" Microsoft Corp. v. Baker, 582 U.S. 23, 34, n.7, 137 S.Ct. 1702, 198 L.Ed.2d 132 (2017).

One of the "rare few" instances where an early motion to strike class allegations may be granted is where the class definitions create impermissible fail-safe classes. See Zarichny v. Complete Payment Recovery Servs., Inc., 80 F. Supp. 3d 610, 624

(E.D. Pa. 2015). "A fail-safe class is 'one that is defined so that whether a person qualifies as a member depends on whether the person has a valid claim.' " Id. (quoting Messner v. Northshore University HealthSystem, 669 F.3d 802, 825 (7th Cir .2012)).

Friel's Robocall Class is defined as:

> All persons in the United States who, (1) within four years prior to the commencement of this litigation until the class is certified (2) received one or more calls on their cellular telephone or any other protected telephone service (3) from or on behalf of JEA Management Services d/b/a Covered Auto, Headstart Warranty Group LLC, or Line 5, LLC, (4) sent using the same, or substantially similar, pre-recorded message used to contact the Plaintiff.

(Doc. 1, Compl. ¶ 74).

Friel's DNCR Class is defined as:

> All persons within the United States: (1) whose residential telephone numbers were on the National Do Not Call Registry for at least 31 days; (2) but who received more than one telephone solicitation call from Defendants or a third party acting on Defendants' behalf; (3) within a 12-month period; (4) within the four years prior to the filing of the Complaint.

Id.

The motion to strike asserts that the proposed class definitions are facially uncertifiable. Line5 has adopted JEA's arguments that the proposed class definitions are overbroad, lack commonality, and are defined vaguely. There are no specific arguments that the proposed classes are fail-safe, yet this consideration hangs over the analysis.

### a. Overbreadth Arguments

**\*5** Defendant Line5 has joined in former defendant JEA's argument that both the proposed Robocall Class and the DNCR Class are overbroad. The Robocall Class definition is challenged as overbroad because it fails to exclude calls to individuals who consented to their receipt. [5] Similarly, the DNCR Class is challenged because this proposed class may include calls made to individuals with an established business relationship ("EBR") with the defendants and may include individuals who did not personally place their number on the DNCR. [6]

After careful consideration, however, Friel appears to be in a situation where he is forced to choose between two vulnerable alternatives in proposing class definitions at the outset of the litigation. On one hand, Friel must define his classes with reference to objective criteria. See Lewis v. Gov't Emps. Ins. Co., 98 F.4th 452, 462 (3d Cir. 2024) (citing Byrd v. Aaron's Inc., 784 F.3d 154, 163 (3d Cir. 2015)). On the other hand, if Friel uses certain qualifiers, his proposed definitions could be deemed to advance improper fail-safe classes. [7]

As indicated above, "[a] fail-safe class bases its membership upon the validity of putative members' legal claims, meaning that 'a class member either wins or, by virtue of losing, is defined out of the class and is therefore not bound by the judgment.' " Jackson,

2023 WL 2472606, at *3 (quoting 🚩Messner, 669 F.3d at 825). More simply stated, fail-safe classes preclude membership in the class unless a putative member would prevail on the merits. See 🚩Orduno v. Pietrzak, 932 F.3d 710, 716 (8th Cir. 2019).

**\*6** Fail-safe classes cannot satisfy the ascertainability requirement of some class actions. See 🚩Zarichny, 80 F. Supp. 3d at 625 (citation omitted); see also 🚩Byrd, 784 F.3d at 163 & n.7 (explaining that a plaintiff seeking certification under 🚩Rule 23(b)(3) must prove by a preponderance that the class is ascertainable, but that ascertainability is not a requisite of a 🚩Rule 23(b)(2) class). The ascertainability standard requires a plaintiff to show that: (1) the class is defined with reference to objective criteria; and (2) there is a reliable and administratively feasible mechanism for determining whether putative class members fall within the class definition. 🚩Byrd, 784 F.3d at 163 (citations omitted).

In 🚩Zarichny, the Honorable Stewart R. Dalzell in the Eastern District of Pennsylvania determined that a putative TCPA class was defined in a fail-safe manner and granted a motion to strike. 🚩80 F.Supp. 3d at 623-26. The proposed TCPA class was comprised of "those people 'who received one or more telephone calls from [d]efendants on the individual's cellular telephone that was initiated using an automatic telephone dialing system' without prior con[s]ent[.]" 🚩Id. at 623. Because the class was defined in a manner which only would include those who did not provide the defendant with prior consent, the court determined that "there is no way to provide notice to that putative class without the sort of extensive fact-finding that class actions should avoid," and "at the conclusion of the litigation, should [the defendant] prevail against [the plaintiff], any other putative class recipient would be free to litigate the same claim against [the defendant]." 🚩Id. at 625–26. In other words, the TCPA class could not be certified as defined in the initial pleading because the issue of consent was central to the merits of the underlying dispute.

Accordingly, many district courts within the Third Circuit have determined that TCPA class definitions avoid fail-safe concerns by omitting the issue of consent or other merits-based criteria. See Jackson v. Direct Bldg. Supplies LLC, No. 4:23-CV-01569, 2024 WL 184449, at *9 & n.101 (M.D. Pa. Jan. 17, 2024) (Brann, C.J.) (collecting cases); see also Abella v. Student Aid Ctr., Inc., No. CV 15-3067, 2015 WL 6599747, at *4 (E.D. Pa. Oct. 30, 2015) (noting the lack of reference to an automatic telephone dialing system in the proposed class definition since that is a required element of a 🚩Section 227(b)(1)(A) claim). [8] Consequently, to avoid fail-safe issues with his proposed Robocall Class in this case, Friel asserts that he intentionally did not include consent language in his class definition. (Doc. 53, Pl. Br. in Opp. at 13).

As indicated above, Line5 has adopted arguments challenging the proposed Robocall Class definition because it fails to exclude calls made with consent. In joining the motion to strike, Line5 also finds fault in the proposed DNCR Class definition because it fails to exclude calls to individuals with an EBR. Adding these qualifiers to the class definitions would incorporate more elements of liability into the definitions. That would then arguably require all putative class members to have winning TCPA claims before being included in the class. Although non-binding, the above cases discussing fail-safe classes would provide defendants with different arguments to strike the class allegations if Friel included reference to a lack of consent or an EBR in his proposed definitions. The court cannot fault Friel for choosing to define his classes around TCPA merits-based criteria.

**\*7** As for authority binding on this court, "in the specific context of claims filed under the TCPA statute, it is difficult to resolve without discovery whether there are factual issues regarding class members' business relationships with defendants or whether they consented to the receipt of [automated phone calls]." 🚩⚠Landsman, 640 F.3d at 93–94. Friel's complaint alleges that the proposed classes are identifiable as presently defined through defendants' dialer records, other phone records, and phone number databases. (Doc. 1, Compl. ¶ 79). In the absence of discovery into these records, the court is unwilling to determine whether Friel's classes are defined too broadly or whether they fall short of ascertainability. Line5 thus has not demonstrated a valid reason to strike Friel's class allegations based on the potential breadth of the proposed classes.

### b. Commonality Arguments

Line5 has also adopted JEA's arguments that Friel's proposed classes lack commonality, that is, "the rule requiring a plaintiff to show that "there are questions of law or fact common to the class." ⚑Wal-Mart Stores, Inc., 564 U.S. at 349, 131 S.Ct. 2541 (citing ⚑FED. R. CIV. P. 23(a)). Commonality requires the plaintiff to demonstrate that the class members have suffered the same injury, not merely that they have all suffered violation of the same provision of law. See ⚑id. (citations omitted). The claims "must depend upon a common contention[,]" which "must be of such a nature that is capable of classwide resolution[,]" meaning that the "determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." ⚑Id. As observed, "[t]he commonality requirement is not especially arduous." Johnson, 2017 WL 3433689, at *4.

For his part, Friel's complaint alleges that he received calls related to some extended-warranty sales effort using an artificial or prerecorded voice without his consent in violation of the TCPA. (Doc. 1, Compl. ¶¶ 18–31). Only discovery will reveal whether Friel's proposed classes sustained the same injuries from those sales efforts. Accordingly, the court also rejects arguments that the proposed classes are facially uncertifiable based on a lack of commonality.

### c. Vagueness Arguments

Lastly, Line5 has adopted JEA's arguments that the Robocall Class must be stricken for vagueness because that proposed definition uses the phrase "same, or substantially similar" when describing the prerecorded messages allegedly sent by the defendants. In support, the motion to strike argues that, as presently defined, there would be no way for defendants to know which putative class members received the exact message that Friel received, and which putative class members received a "substantially similar" message. (Doc. 30, JEA Br. in Supp. at 20–21). Furthermore, per the arguments advanced in the motion to strike, the "substantially similar" definition uses improper subjective criteria and is improperly imprecise for a class action. Id.

Friel counters that such a definition is not vague under the circumstances because it essentially contemplates that defendants could have violated the TCPA as to other putative class members through the same sales efforts, but by using a different robotic voice, for example, or the same voice with a different script. (Doc. 53, Pl. Br. in Opp. at 21). Moreover, Friel explains that, even with this definition, his proposed Robocall Class is limited to calls that presumably had the same factual predicate for being sent, i.e., sales calls. ⚑Id. at 22.

Friel's argument signals that he is open to adding more qualifiers to his class definitions as this case moves forward. The court, however, will not strike the definitions or adjust any portion *sua sponte*. Discovery has not yet commenced and no motion to certify the class has been filed. To the extent that there are critical vagueness issues with Friel's proposed Robocall Class definition, those issues would be more easily understood following a period of discovery. Accordingly, the motion to strike Friel's class allegations will be denied.

### 3. Motion to Trifurcate Discovery

**\*8** On the issue of discovery, Defendant Line5 also joined in JEA's motion seeking to conduct discovery in three separate stages, that is, 1) discovery into Friel's individual claims; 2) discovery into the appropriateness of class certification if Friel's claims proceed; and 3) if any class is ultimately certified, merits discovery for the class or classes. (Doc. 34, JEA Br. in Supp.; Doc. 45, Line5 Joinder Notice). Friel opposes, arguing that, if this TCPA action has merit, a trifurcated course of discovery will lead to three rounds of written discovery, three rounds of depositions (with the same witnesses being deposed three times), three rounds of potential discovery disputes, and then three rounds of dispositive motions.[9] (Doc. 52, Pl. Br. in Opp. at 1-3).

Unlike JEA, which has been dismissed, Defendant Line5 filed an answer to Friel's complaint. (Doc. 20). Line5's answer does not raise any defenses unique to Friel's individual claims, only defenses common across the putative TCPA classes. (See Doc. 20, Affirmative and Other Defenses, ¶ 1 ("Line5 did not make or authorize any calls on its behalf."), ¶ 3 ("Upon information and

belief, the alleged calls were not selling Line5's services, but rather the calls were made for the purpose of selling an extended car warranty provided by another of the defendants.")). Line5 has not otherwise demonstrated why Friel's specific TCPA claims would be any different from the claims of the putative class members. The court thus sees no reason to bifurcate, trifurcate, or otherwise order that discovery be conducted in phases at this time. Accordingly, the discovery motion will be denied, and this case will be scheduled for a case management conference.

**Conclusion**

For the reasons set forth above, JEA's motion to strike class plaintiff's allegations and motion to trifurcate discovery will be denied. An appropriate order follows.

**All Citations**

Slip Copy, 2025 WL 2422617

---

**Footnotes**

1    This background section derives from the facts alleged in plaintiff's complaint. The court makes no determination as to the veracity of these allegations.

2    Pursuant to FCC regulations, "[n]o person or entity shall initiate any telephone solicitation to: ... A residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the Federal Government." 47 C.F.R. § 64.1200(c)(2).

3    At this juncture, it is unknown how Friel will proceed if this matter reaches a motion for class certification. Given the availability of statutory damages of up to $1500 per class member under the TCPA, it may be later determined that this case is more driven by money damages than equitable relief, which would make certification under Rule 23(b)(2) inappropriate. See e.g. Jackson v. Locust Med., LLC, No. 4:22-CV-00424, 2024 WL 2701695, at *5 (M.D. Pa. May 24, 2024) (Brann, C.J.) (denying a plaintiff's motion to certify a class under Rule 23(b)(2) where the complaint included a request for statutory damages under the TCPA).

4    Landsman is an opinion that has been reinstated in part, to the extent it is consistent with Mims. See No. 09-3105, 2012 WL 2052685 (3d Cir. Apr. 17, 2012).

5    To succeed with a cause of action under 47 U.S.C. § 227(b)(1) under the circumstances alleged in the complaint, Friel must show that defendants: 1) made "any call...using any automatic telephone dialing system or an artificial or prerecorded voice[;]" 2) to "any telephone number assigned to a...cellular telephone service[;] 3) without "the prior express consent of the called party[.]" 47 U.S.C. § 227(b)(1)(A)(iii).

6    There are certain regulatory defenses to TCPA actions premised upon 47 U.S.C § 227(c) and the do-not-call regulations. Pursuant to the regulations, a "telephone solicitation" does not include a call to any person with whom the caller has an EBR. 47 C.F.R. § 64.1200(f)(15)(ii). EBR is separately defined in 47 C.F.R. § 64.1200(f)(5). Furthermore, pursuant to the do-not-call regulations, "[n]o person or entity shall initiate any telephone solicitation to... [a] residential subscriber who has registered his or her telephone on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the Federal Government." 47 C.F.R. § 64.1200(c)(2).

Defendant Line5 adopts JEA's argument that this requires individuals to personally register their phones on the DNCR. Friel counters that personal registration is not required and would be impossible to prove in any case. (Doc. 53, Pl. Br. in Opp. at 15–17). The court need not reach this issue in disposing of the motion to strike.

7       "Although the United States Court of Appeals for the Third Circuit has not explicitly considered whether fail-safe classes are permissible, it has approvingly cited rulings by other circuits that categorically disallow fail-safe classes." Jackson v. Meadowbrook Fin. Mortg. Bankers Corp., No. 4:22-CV-01659, 2023 WL 2472606, at *3 (M.D. Pa. Mar. 10, 2023) (Brann, C.J.) (citing Byrd, 784 F.3d at 167; In re Nexium Antitrust Litig., 777 F.3d 9, 22 (1st Cir. 2015); Messner, 669 F.3d at 825).

8       On the other hand, the Honorable Christopher C. Conner reached a slightly different result when faced with this issue on a motion to strike in Johnson. 2017 WL 3433689 at *2–*3. Although the proposed TCPA class in Johnson included reference to consent, Judge Conner determined that it was not a facially uncertifiable fail-safe class because the proposed class definition contained reference to business records, which, with discovery, could reveal an ascertainable class. Id. at *1, *4.

9       Defendant Line5 indicates in its reply brief (filed after JEA's dismissal) that it only wishes to *bifurcate*, not *trifurcate* discovery. (Doc. 54). After review of Line5's reply brief, Line5 proposes a course of discovery that has no discernable distinction from the one proposed by JEA in the motion as initially filed.

---

**End of Document**                              © 2026 Thomson Reuters. No claim to original U.S. Government Works.

Grippo v. Sugared + Bronzed, LLC, Not Reported in Fed. Supp. (2025)

Case 1:26-cv-00659-KM    Document 33-1    Filed 07/15/26    Page 31 of 46

2025 WL 596095
Only the Westlaw citation is currently available.
United States District Court, C.D. California.

Zoe GRIPPO

v.

SUGARED + BRONZED, LLC

Case No. SA CV 24-01792-AB (DFMx)
|
Filed February 24, 2025

**Attorneys and Law Firms**

Adrian Robert Bacon, Todd M. Friedman, Law Offices of Todd Friedman PC, Woodland Hills, CA, Max S. Morgan, Pro Hac Vice, The Weitz Firm LLC, Philadelphia, PA, for Zoe Grippo.

Joseph R. Ashby, Mark David Johnson, Offit Kurman P.C., Los Angeles, CA, Jerome P. Doctors, Cozen O'Conner, Los Angeles, CA, Harold M. Walter, Pro Hac Vice, Offit Kurman, Timonium, MD, Nafiz Cekirge, Offit Kurman, Hackensack, NJ, for Sugared + Bronzed, LLC.

**Proceedings: (IN CHAMBERS)** Order re: Defendant's Motion to Bifurcate Discovery (Dkt. 31)

Douglas F. McCormick, United States Magistrate Judge

**\*1** Before the Court is Defendant Sugared + Bronzed's Motion to Bifurcate Discovery. See Dkt. 31. ("Mot."). Plaintiff Zoe Grippo opposed. See Dkt. 38 ("Opp'n"). Defendant replied. See Dkt. 40 ("Reply"). The matter was referred to me. See Dkt. 31.

The Court finds this matter appropriate for resolution without a hearing and therefore VACATES the March 4, 2025 hearing. See Fed. R. Civ. P. 78; C.D. Cal. L.R. 7-15. For the reasons stated below, the Court DENIES Defendant's Motion.

## I. BACKGROUND

Plaintiff asserts that Defendant violated the Telephone Consumer Protection Act, 🚩47 U.S.C. § 227, et seq., ("TCPA") by sending telemarketing text messages to Plaintiff and the putative class members without consent. See Dkt. 1 ¶¶ 14, 50-55, 57.

Defendant argues that it did not send marketing text messages during the class period because it outsourced this function to two independent telemarketing companies, Mindbody, Inc. and Klaviyo, Inc. Defendant asks the Court to bifurcate discovery to resolve whether Mindbody and Klaviyo sent the marketing text messages, and if so, whether they did so as Defendant's agents within the meaning of the TCPA. See Mot. at 7. Defendant asserts that if discovery reveals that Mindbody and Klaviyo went rogue, Defendant "will have no direct or vicarious TCPA liability, and this entire case will go away." Id. Defendant represents that bifurcated discovery can be completed in sixty (60) days and that any summary judgment motions can be filed fourteen (14) days after the close of bifurcated discovery. See id. at 7 n.2.

## II. LEGAL STANDARD

"For convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues, claims, crossclaims, counterclaims, or third-party claims." Fed. R. Civ. P. 42(b). Under Rule 42(b), courts have the

Case 1:26-cv-00659-KM    Document 33-1    Filed 07/15/26    Page 32 of 46

Grippo v. Sugared + Bronzed, LLC, Not Reported in Fed. Supp. (2025)

"power to limit discovery to the segregated issues" to "permit deferral of costly and possibly unnecessary discovery proceedings pending resolution of potentially dispositive preliminary issues." Ellingson Timber Co. v. Great N. Ry. Co., 424 F.2d 497, 499 (9th Cir. 1970).

"The decision to bifurcate discovery in putative class actions prior to certification is committed to the discretion of the trial court." True Health Chiropractic Inc. v. McKesson Corp., No. 13-02219, 2015 WL 273188, at *1 (N.D. Cal. Jan. 20, 2015). The court considers four factors in deciding whether to bifurcate: "(1) the overlap between individual and class discovery; (2) whether bifurcation will promote Rule 23's requirement that certification be decided at 'an early practicable time'; (3) judicial economy; and (4) any prejudice reasonably likely to flow from the grant or denial of a stay of class discovery." Id. "The party seeking bifurcation bears the burden of proving that bifurcation is justified given the facts in the case." Kamrava v. Cenlar Capital Corp., No. 20-11465, 2021 WL 10373035, at *2 (C.D. Cal. Oct. 7, 2021) (citation omitted).

## III. DISCUSSION

Defendant argues bifurcation of discovery is warranted to determine the viability of Plaintiff's claims "before dragging Sugared + Bronzed into disproportionately burdensome class discovery." Mot. at 8. Plaintiff responds that Defendant has not met its burden to justify bifurcation, and that bifurcation will unnecessarily delay this case. See Opp'n at 6-7. The Court has considered the four factors and finds that bifurcation is unwarranted.

### A. Overlap Between Individual and Class Discovery

**\*2** The first factor weighs against bifurcation. The Supreme Court has repeatedly emphasized that class certification requires a "rigorous analysis" of Rule 23, which will "frequently entail overlap with the merits of the plaintiff's underlying claim." Comcast Corp. v. Behrend, 569 U.S. 27, 33-34 (2013). "Thus, the distinction between merits discovery and class discovery is not always clear, and many courts are, for this reason, reluctant to bifurcate class and merits discovery." Blair v. Assurance IQ LLC, No. 23-16, 2023 WL 6622415, at *6 (W.D. Wash. Oct. 11, 2023) (citation omitted); see also Ahmed v. HSBC Bank USA, Nat'l Ass'n, No. 15-2057, 2018 WL 501413, at *3 (C.D. Cal. Jan. 5, 2018) ("[T]he distinction between class certification and merits discovery is murky at best and impossible to determine at worst.").

Here, there is overlap between the class determination inquiry and the merits of Plaintiff's underlying claim. This overlap includes whether Defendant contacted Plaintiff and/or putative class members that were on the National-Do-Not Call Registry or after Defendant received a request to stop. See Dkt. 1 ¶ 75.

Defendant argues there is no overlap between discovery regarding whether Sugared + Bronzed or any of its agents sent the text messages at issue and discovery on class certification issues. See Mot. at 12. "Considering whether questions of law or fact common to class members predominate begins, of course, with the elements of the underlying cause of action." Erica P. John Fund, Inc. v. Halliburton Co., 563 U.S. 804, 809 (2011). Whether Defendant sent the text messages at issue is a merits issue that will be relevant at the certification stage.

### B. Promote Certification at "an Early Practicable Time"

The second factor weighs against bifurcation. Federal Rule of Civil Procedure 23 indicates that class certification should occur "[a]t an early practicable time after a person sues or is sued as a class representative ...." Fed. R. Civ. P. 23(c)(1)(A). Defendant's proposed case schedule without bifurcation would have motions on class certification to be heard by August 1, 2025. See Dkt. 29-2.

Defendant submits that bifurcated discovery can be completed in sixty (60) days and any summary judgment motions can be filed fourteen (14) days after the close of bifurcated discovery. If so, discovery will not be complete until mid or late April 2025

Grippo v. Sugared + Bronzed, LLC, Not Reported in Fed. Supp. (2025)

Case 1:26-cv-00659-KM    Document 33-1    Filed 07/15/26    Page 33 of 46

and any motion for summary judgment would not be heard until June 2025. The Court would then have to rule on the motion for summary judgment, and only then could class discovery even begin. And as Plaintiff notes, Defendant's estimate does not include the possibility of any discovery-related disputes or motions. The delay would not promote Rule 23's requirement that certification be decided at an early practicable time.

### C. Judicial Economy

The third factor is either neutral or weighs slightly in favor of bifurcation. Defendant argues that the resolution of whether Sugared + Bronzed or its agents sent the text messages is a threshold issue, the resolution of which could resolve this case. See Mot. at 19.

The Court agrees with Defendant that bifurcating discovery could possibly prevent unnecessary discovery if it is correct regarding TPCA liability. However, bifurcation also "has the potential to complicate this litigation," as separating the merits and class discovery raises "a slew of issues as to what discovery relates to the class, as opposed to Plaintiff, thereby causing additional litigation regarding the distinction between the two." Kamrava, 2021 WL 10373035, at *3 (citation omitted).

**\*3** Furthermore, the Court is concerned that Defendant's "dispositive question"—whether Sugared + Bronzed is vicariously liable under the TCPA for text messages that Mindbody and Klaviyo sent after Plaintiff opted out of receiving such messages—may be informed by class discovery.

A defendant may be held vicariously liable for the TPCA violations of third-party callers "where the plaintiff establishes an agency relationship, as defined by federal common law, between the defendant and the third-party caller." Henderson v. U. Student Aid Funds, Inc., 918 F.3d 1068, 1072-73 (9th Cir. 2019). One way to establish an agency relationship is "ratification," which can be shown by the principal's "knowing acceptance of the benefit" or "willful ignorance." Id. at 1073-74. A plaintiff can establish willful ignorance if the defendant "knew facts that should led it to investigate [the third party's] work for TCPA violations." McCurley v. Royal Seas Cruises, Inc., No. 21-55099, 2022 WL 1012471, at *3 (9th Cir. Apr. 5, 2022).

Here, class discovery will likely be useful, and perhaps critical, to resolve TCPA liability. Whether there are other individuals similarly situated to Plaintiff appears relevant to the question of whether Sugared + Bronzed ratified Mindbody and Klaviyo's acts. See id. at *2-3 (considering the number of calls the principal received and the percentage of customers with mismatched data, among other things).

Defendant cites several out-of-circuit cases in which courts have bifurcated discovery in TCPA class actions where dispositive issues could be decided at the outset. Defendant's cases concern discrete issues such as Article III standing or whether an auto dialer was used. In contrast, Defendant's "threshold question" in this case is a wider endeavor that will likely bleed into class discovery. Cf. Pavelka v. Paul Moss Ins. Agency, LLC, No. 22-2226, 2023 WL 3728199 (N.D. Ohio May 30, 2023) (bifurcating discovery to first address individual liability claims); Fania v. Kin Ins., Inc., No. 22-12354, 2024 WL 2607303, at *2 (E.D. Mich. May 24, 2024) (bifurcating discovery to address the "case-dispositive questions" of whether plaintiff received a pre-recorded call and whether defendant was legally responsible for such calls); Newell v. Aliera Healthcare, Inc., No. 19-1489, 2020 WL 13568762, at *3 (N.D. Ga. Apr. 6, 2020) (bifurcating discovery to determine whether plaintiff was called by an ATDS and consent).

### D. Prejudice

The fourth factor is either neutral or weighs slightly against bifurcation. Defendant acknowledges that Plaintiff will be prejudiced, but that any prejudice will be outweighed by "expensive, exhaustive discovery." Mot. at 19-20 (citation omitted). Defendant has not demonstrated significant prejudice by its simple assertion that discovery costs money. See Kamrava, 2021 WL 10373035, at *3 ("[B]esides its simple assertions that having to engage in class-wide discovery is expensive and time

Case 1:26-cv-00659-KM    Document 33-1    Filed 07/15/26    Page 34 of 46

consuming, Defendant did not provide any estimates of the expected costs and time to be incurred."). On the flip side, Plaintiff will be prejudiced by delay in this case.

The first two factors weigh against bifurcation. The last two factors are a toss-up. Bifurcation is not warranted here. Defendant's Motion is DENIED.

**All Citations**

Not Reported in Fed. Supp., 2025 WL 596095

---

**End of Document**

© 2026 Thomson Reuters. No claim to original U.S. Government Works.

---

Case 1:26-cv-00659-KM     Document 33-1     Filed 07/15/26     Page 35 of 46

2014 WL 4630852
Only the Westlaw citation is currently available.
United States District Court, M.D. Pennsylvania.

Dawn HARTLEY–CULP, individually and on behalf of all others similarly situated, Plaintiff

v.

CREDIT MANAGEMENT COMPANY, Defendant.

Civil Action No. 3:CV–14–0282.
|
Signed Sept. 15, 2014.

**Attorneys and Law Firms**

Cynthia Levin, Law Offices of Todd M. Friedman, PC., King of Prussia, PA, for Plaintiff.

James McNally, Justin M. Tuskan, Metz Lewis Brodman Must O'Keefe LLC, Pittsburgh, PA, for Defendant.

### *MEMORANDUM AND ORDER*

THOMAS M. BLEWITT, United States Magistrate Judge.

### I. BACKGROUND.

 **\*1**  This putative class action case was instituted, through counsel, on February 17, 2014, by Plaintiff Dawn Hartley–Culp, individually and on behalf of all others similarly situated. (Doc. 1). Named as sole Defendant is Credit Management Company ("CMC"). Plaintiff alleges that Defendant CMC began placing a series of calls to her cellular telephone ("cell phone") beginning in November of 2013. Plaintiff alleges that the calls made by Defendant CMC to her cell phone violated the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. §§ 227, *et seq.,* since the calls were placed by an automated telephone dialing system ("ATDS") or, by an artificial or recorded voice without her prior express consent. Plaintiff also alleges that Defendant CMC left numerous pre-recorded messages on her cell phone.

This Court has jurisdiction over this case pursuant to 28 U.S.C. § 1331. [1]

On April 8, 2014, after being granted an extension of time, Defendant CMC filed its Answer to the Complaint with Affirmative Defenses. (Doc. 8). Defendant CMC admitted that it contacted Plaintiff for the purpose of collecting a debt which Plaintiff allegedly owed. In its Affirmative Defenses, Defendant CMC asserted that Plaintiff gave express consent to CMC's client to whom Plaintiff allegedly owed the debt, and that the calls made to Plaintiff were not placed via an ATDS. [2]

Subsequently, the Court issued a scheduling order and set case deadlines, and then extended the deadlines on two occasions. (Docs. 19, 22 & 26). The current discovery deadline is November 28, 2014. Plaintiff's Motion for Class Certification is due December 12, 2014.

Pursuant to 28 U.S.C. § 636(c), the parties consented to proceed before the undersigned for all matters. (Doc. 17).

The parties are currently engaged in discovery. Plaintiff indicates that on July 26, 2014, she served written discovery on Defendant and scheduled a Rule 30(b)(6) deposition for August 26, 2014.

Case 1:26-cv-00659-KM    Document 33-1    Filed 07/15/26    Page 36 of 46

Hartley-Culp v. Credit Management Co., Not Reported in Fed. Supp. (2014)

On August 12, 2014, Defendant CMC filed a Motion to Bifurcate Discovery, or in the alternative, to Stay Proceedings. (Doc. 23). Defendant CMC simultaneously filed its support brief with Exhibits. (Docs. 24 & 24–1 to 24–4). Plaintiff filed her opposition brief on August 28, 2014. (Doc. 28). Defendant filed its reply brief on September 9, 2014, with Exhibits. (Docs. 29, 29–1 & 29–2).

Defendant CMC seeks the Court to bifurcate discovery into two phases with the first phase limited to the issue of whether Plaintiff expressly consented to receiving calls on her cell phone. Defendant CMC maintains that if it proves Plaintiff provided her express consent, then the calls it placed to her do not violate the TCPA. Defendant CMC then states that if it can show the calls placed to Plaintiff did not violate the TCPA, then Plaintiff will not be able to proceed as the representative of the purported class.

In the alternative, Defendant CMC moves the Court to stay all proceedings in this case since it contends that many of Plaintiff's allegations in her Complaint turn on issues currently pending before the Federal Communication Commission ("FCC"). Defendant CMC states that the FCC has primary jurisdiction to determine the issues raised by Plaintiff in this case.

## II. DISCUSSION.

 **\*2**  Initially, based on the very recent Middle District of Pennsylvania case of *Fenescey v. Diversified Consultants, Inc.,* 2014 WL 2526571 (M.D. Pa. June 4, 2014, J. Conaboy), which is directly on point with our case, as well as *Gager v. Dell Financail Services, LLC,* 727 F.3d 265, 2013 WL 4463305 (3d Cir.2013), and based on the well-reasoned decision of Judge Conaboy, with which we completely concur, we will deny Defendant CMC's alternative Motion to Stay all Proceedings in this case under the primary jurisdiction doctrine. This Court in *Fenescey* largely relied upon the Third Circuit's decision in *Gager v. Dell Financail Services, LLC,* 727 F.3d 265, 2013 WL 4463305 (3d Cir.2013). This Court in *Fenescey* stated that "[g]iven the force and clarity of the [*Gager* ] precedential opinion, we have no need to further evaluate the doctrine of primary jurisdiction on the question of whether the TCPA applies to debt collection calls made to cellular phones." 2014 WL 2526571, \*2. This Court in *Fenescey* also found that based on *Gager,* there was no basis to stay its case on the ATDS issue. *Id.,* \*3.[3]

Since we concur entirely with the Court in *Fenescey,* we do not repeat its decision herein, and shall deny Defendant CMC's alternative Motion to Stay Proceedings in this case.

Next, we turn to Defendant CMC's primary Motion to Bifurcate Discovery.

As mentioned, Plaintiff alleged in her Complaint that Defendant CMC violated the TCPA by placing calls to her cellular telephone number without her prior express consent using an automatic telephone dialing system, and by leaving serval voice mail messages. The TCPA makes it unlawful to "make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice ... to any telephone number assigned to a ... cellular telephone service." 47 U.S.C. § 227(b)(1)(A)(iii). Also, as stated, the TCPA applies to debt collection calls made to cellular phones. *Fenescey,* 2014 WL 2526571, \*2(citing *Gager, supra* ). "Prior express consent is deemed to be granted only if the wireless number is provided by the consumer to the creditor, and the number was provided during the transaction that resulted in the debt owed." *Wattie–Bey v. Step hen and Michaels Assoc., Inc.,* 2014 WL 123597, \*2 (M.D.Pa. Jan.14, 2014) (citation omitted). Also, the burden is on the creditor regarding the issue of whether express consent was provided and the creditor must show that the required prior express consent was obtained. *Id.* (citation omitted).

There is no question that the Court, in its discretion, can bifurcate discovery under Fed.R.Civ.P. 42. In *Stemrich v. Zabiyaka,* 2014 WL 931069, \*1 (M.D.Pa. March 10, 2014), the Court stated:

Under Federal Rule of Civil Procedure 42, a trial court may, in its discretion, bifurcate a trial. The rule provides as follows:

**\*3** For convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues, claims, crossclaims, counterclaims, or third-party claims. When ordering a separate trial, the court must preserve any federal right to a jury trial.

Fed.R.Civ.P. 42(b). The decision to bifurcate, and the manner in which bifurcation should be ordered, is left to the trial court's informed discretion and must be decided on a case by case basis. *See Idzojtic v. Pennsylvania R.R. Co.,* 456 F.2d 1228, 1230 (3d Cir.1972) ("The district court is given broad discretion in reaching its decision whether to separate the issues of liability and damages."). In exercising its discretion, the court "must weigh the various considerations of convenience, prejudice to the parties, expedition, and economy of resources." *Emerick v. U.S. Suzuki Motor Corp.,* 750 F.2d 19, 22 (3d Cir.1984).

The moving party bears the burden of establishing that bifurcation is appropriate. *See Innovative Office Prods., Inc. v. Spaceco, Inc.,* Civ. No. 05–cv–4037, 2006 WL 1340865, \*1 (E.D.Pa. May 15, 2006).

We disagree with Defendant CMC and its contentions in its briefs that discovery at this stage of the case, *i.e.,* before Plaintiff files her Motion for Class Certification, should be limited to the issue of whether its calls to Plaintiff fall within the "prior express consent" exception. As stated, the burden is on the creditor (in this case Defendant CMC) regarding the issue of whether prior express consent was provided. Also, as stated, the burden is on Defendant CMC to demonstrate that it did not use an automated telephone service when it contacted Plaintiff. If Defendant CMC can meet either of its burdens, Defendant CMC will be entitled to summary judgment on Plaintiff's TCPA claim. On the other hand, if genuine disputes of material fact exist as to whether Defendant obtained Plaintiff's prior express consent, then Defendant will not be entitled to summary judgment on Plaintiff's TCPA claim. *Wattie–Bey v. Step hen and Michaels Assoc., Inc.,* 2014 WL 123597, \*3. Likewise, if disputed issues of fact remain as to whether Defendant CMC used automated telephone services in its contacts with Plaintiff, then summary judgment will not be appropriate. *Id.,* \*6(citations omitted). However, we concur with Plaintiff that "whether or not [Defendant] CMC had [prior express consent] to contact Plaintiff is not a threshold question that must be resolved at this stage, before the parties have had an opportunity to conduct class-wide discovery." (Doc. 28–1, p. 6, citing *Grant v. Capital Mgmt. Servs., L.P.,* 449 Fed.Appx. 598, 600 (9th Cir.2011) (" 'express consent' is not an element of a TCPA Plaintiff's prima face case, but rather is an affirmative defense for which the Defendant bears the burden of proof.").

We also agree with Plaintiff that despite Defendant CMC's contention and its Exhibits, that it would not be unduly burdensome on Defendant at this point of the case to respond to Plaintiff's discovery requests, including requests regarding the putative class action. Also, we find prejudice to Plaintiff if discovery was bifurcated as Plaintiff maintains. As Plaintiff points out, she "primarily seeks documents that are ordinarily maintained as business records, and to the extent that CMC will be burdened by having to produce any such documents, CMC can respond with the appropriate objections and substantiate them during the meet and confer process." (Doc. 28–1, p. 5). Defendant CMC will still be able to conduct any discovery it deems necessary to try and meet its burden as to its affirmative defenses, and it will be able to file a dispositive motion at the conclusion of discovery. Moreover, we agree with Plaintiff that she should have the benefit of discovery before she has to file her Motion for Class Certification, especially since Plaintiff has the burden of class certification. *See Hawk Valley, Inc. v. Taylor,* —— F.R.D. ——, 2014 WL1302097 (E.D.Pa. March 31, 2014) (citation omitted) (court granted Plaintiff's motion for class certification in a TCPA unsolicited-fax case since it found, in part, common issues of law and fact predominated).

**\*4** Finally, we concur with Plaintiff that bifurcation of discovery in this case will increase litigation expenses by protracting the discovery period and by duplicating the discovery process, including the depositions.

## III. CONCLUSION.

Accordingly, the Court will deny entirely Defendant CMC's Motion to Bifurcate Discovery, or in the alternative, to Stay Proceedings (**Doc.23**).[4]

An appropriate Order will be issued.

Case 1:26-cv-00659-KM    Document 33-1    Filed 07/15/26    Page 38 of 46

Hartley-Culp v. Credit Management Co., Not Reported in Fed. Supp. (2014)

*ORDER*

**AND NOW,** this *15* day of **September, 2014,** based on the foregoing Memorandum, **IT IS HEREBY ORDERED THAT:**

1. Defendant CMC's Motion to Bifurcate Discovery, or in the alternative, to Stay Proceedings (**Doc.23**) is **DENIED IN ITS ENTIRETY.**

2. The discovery deadline in this case is extended to **December 29, 2014,** and the deadline for Plaintiff's Motion for Class Certification is extended to **January 12, 2015.**

**All Citations**

Not Reported in Fed. Supp., 2014 WL 4630852

---

**Footnotes**

1      Jurisdiction of this Court is properly based on federal question, 28 U.S.C. § 1331, pursuant to the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. §§ 227, *et seq. See Fenescey v. Diversified Consultants, Inc.,* 2014 WL 2526571 (M.D.Pa. June 4, 2014).

2      According to Defendant CMC's Doc. 24 brief, p. 3 n. 2, Plaintiff allegedly owed a debt to Defendant CMC's client Extendicare Health Services, Inc. Defendant CMC notes that it is presently pursuing discovery to try and show that Plaintiff voluntarily provided her cell phone number to Extendicare staff during her intake interview upon becoming a patient of Extendicare's rehabilitation division.

3      *See Gager v. Dell Financail Services, LLC,* 727 F.3d 265, 2013 WL 4463305 (3d Cir. Aug.22, 2013) (Third Circuit Court reversed dismissal of case alleging violations of 47 U.S.C. § 227(b) (1)(A)(iii), "the TCPA's provision banning certain automated calls to cellular phones."). In *Gager,* Plaintiff alleged that Defendant was obliged under the TCPA to stop autodialed calls to her cellular phone since she withdrew her prior express consent to be called on said phone via an automatic dialing system. The District Court granted Defendant's Rule 12(b)(6) Motion to Dismiss since it found that Plaintiff could not revoke her prior express consent. *See Gager v. Dell Financail Services, LLC,* 2012 WL 1942079 (M.D.Pa. May 29, 2012). The Third Circuit Court reversed the dismissal and found that "(1) the TCPA affords [Plaintiff] the right to revoke her prior express consent to be contacted on her cellular phone via an autodialing system and (2) there is no temporal limitation on that right." 727 F.3d 265, 2013 WL 4463305, *2.

4      The Court notes that it will, sua sponte, extend the discovery deadline and the deadline for Plaintiff to file her Motion for Class Certification. The discovery deadline will be extended to December 29, 2014, and Plaintiff's Motion for Class Certification will be extended to January 12,2015.

---

**End of Document**                                                       © 2026 Thomson Reuters. No claim to original U.S. Government Works.

Case 1:26-cv-00659-KM    Document 33-1    Filed 07/15/26    Page 39 of 46

Nock v. PalmCo Administration, LLC, Not Reported in Fed. Supp. (2025)

2025 WL 100894
Only the Westlaw citation is currently available.
United States District Court, D. Maryland.

Robert NOCK, on behalf of himself and others similarly situated, Plaintiff,
v.
PALMCO ADMINISTRATION, LLC, et al., Defendants.

Civil Case No. 24-cv-00662-RDB
|
Signed January 15, 2025

**Attorneys and Law Firms**

Jacob U. Ginsburg, Pro Hac Vice, Kimmel & Silverman, Ambler, PA, Ethan Preston, Dallas, TX, for Plaintiff.

Charles A. Zdebski, Eckert Seamans Cherin & Mellott LLC, Washington, DC, for Defendants.

## MEMORANDUM OPINION AND ORDER

J. Mark Coulson, United States Magistrate Judge

**\*1**  Plaintiff, Robert Nock, individually and on behalf of all others similarly situated, alleges that Defendants, PalmCo Administration, LLC d/b/a Indra Energy, and PalmCo Power MD, LLC d/b/a Indra Energy, and PalmCo Energy MD, LLC d/b/a Indra Energy (collectively, "Indra" or "Defendants") violated the Telephone Consumer Protection Act, ⚑47 U.S.C. § 227, *et seq.* as well as the Maryland Telephone Consumer Protection Act, Md. Com. Law § 14-3201, *et seq.* (ECF No. 28). Specifically, Plaintiff contends Defendants contacted him and others similarly situated in violation of these statutes, and that Defendants' agents attempted to mask these violations by disguising them as in-person solicitations rather than telephone contacts so as to avoid liability. *Id.* at 15-16. [1]  Presently before the Court is Defendants' Motion to Bifurcate Discovery. (ECF Nos. 54, 68). [2] The issues have been fully briefed, (ECF Nos. 68, 70), and no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2023). For the reasons set forth below, the Court shall DENY Defendants' motion.

### I. BACKGROUND

This matter was referred to the undersigned for discovery and all related scheduling by U.S. District Judge Richard Bennett on November 7, 2024. (ECF No. 49). On November 13, 2024, the parties filed a joint letter with the Court identifying several discovery disputes, (ECF No. 50), and filed their respective position letters regarding the disputes on November 18, 2024. (ECF Nos. 54, 56). These disputes included: (1) the completeness of Defendants' production as to certain emails and document types; (2) Defense counsel's instruction to a fact witness not to answer certain questions during a deposition; and (3) bifurcation of individual and class discovery. *Id.* The Court held a telephonic discovery conference with the parties on November 26, 2024, and issued a written Memorandum Opinion and Order addressing the disputes the following day. (ECF No. 60). In the November 27, 2024 Memorandum Opinion, the undersigned ordered additional briefing on the limited issue of bifurcation, directing Defendants to file their brief by December 16, 2024, and Plaintiff to file his Opposition by January 6, 2025. *Id.* The parties' briefing deadlines were thereafter extended by seven days, to December 23, 2024, and January 13, 2025, respectively. (ECF No. 67).

Also relevant to the current dispute is Judge Bennett's July 26, 2024 Order addressing a previous discovery issue raised by the parties. (ECF No. 36). Judge Bennett directed Defendants to produce "communications with Neil St. Lous/NSL Marketing,

LLC and any other Indra sales agents who enrolled Maryland consumers with Defendants between April 1, 2021, and July 1, 2021." *Id.* Further, Judge Bennett ordered that Defendants produce a fact witness, Jonathan Cleckley, for a two-hour deposition. *Id.* As noted in the Court's November 27, 2024 Memorandum Opinion, based on the allegations of the Amended Complaint, it appears Judge Bennett concluded this information was relevant to the issue of whether Defendants knew or had notice of the alleged practice of Defendants' sales agents of substituting telephone solicitations for in-person solicitations.

## II. LEGAL STANDARD

**\*2**  "Whether to order bifurcation, during discovery or at trial, is an issue squarely within the broad discretion of the district court." *Singh v. Lenovo,* No. CCB-20-1082, 2021 WL 1516032, at \*1 (D. Md. Apr. 16, 2021) (citing Fed. R. Civ. P. 42(b)). Courts consider four factors in determining whether bifurcation of liability and class discovery is appropriate:

> (1) [T]he overlap between individual and class discovery, (2) whether bifurcation will promote Federal Rule of Civil Procedure 23's requirement that certification be decided at "an early practicable time," (3) judicial economy, and (4) any prejudice reasonably likely to flow from the grant or denial of a stay of class discovery.

*Id.* at \*2 (citing 1 McLaughlin on Class Actions § 3:10 (17th ed. 2020)); *see also Akselrod v. MarketPro Homebuyers LLC,* CCB-20-2966, 2021 WL 100666, at \*2 (D. Md. Jan. 11, 2021). Bifurcation of discovery is generally the exception rather than the rule. *Id.* at \*1 (citing *Cardenas v. Resort Sales by Spinnaker, Inc.*, No. 9:20-cv-00376-RMG, 2021 WL 733393, at \*1 (D.S.C. Feb. 24, 2021)).

In *Singh*, Judge Blake of this Court explained that following the United States Supreme Court's decision in *Wal-Mart Stores, Inc. v. Dukes*, district courts have been "reluctant to bifurcate class-related discovery from discovery on the merits." *Id.* at \*1 (first citing *Wal-Mart Stores, Inc. v. Dukes,* 564 U.S. 338 (2011), then citing *Chen-Oster v. Goldman, Sachs & Co.,* 285 F.R.D. 294, 300 (S.D.N.Y. 2012); *Cardenas,* 2021 WL 733393 at \*2 (citation omitted); *Hunichen v. Atonomi LLC,* No. C19-0615-RAJ-MAT, 2020 WL 5759782, at \*1 (W.D. Wash. Sept. 28, 2020)). This reluctance stems from *Dukes'* directive that district courts engage in a "rigorous analysis" to determine class certification requirements, an analysis which often overlaps with the merits of the individual plaintiff's underlying claims. *Id.* (quoting *Dukes,* 564 U.S. at 350-51) (citation omitted). Because the distinction between class certification and merits discovery is "murky at best and impossible to determine at worst," distinguishing between the two may raise "a slew of issues as to what discovery relates to the class, as opposed to the named plaintiffs," resulting in further litigation. *Id.* (quoting *Cardenas,* 2021 WL 733393 at \*2 (citation omitted)).

## III. ANALYSIS

Indra argues that good cause exists to bifurcate discovery because Plaintiff lacks factual support for his individual claims, and because Nock is the only named Plaintiff in this matter, whether he received calls from Indra or its agents "is a discrete, dispositive issue that will determine whether this action will proceed." (ECF No. 68 at 6). Indra further contends that there is little to no overlap between the discovery necessary to prove Plaintiff's claim and class discovery because "Plaintiff's claims lack any form of record support," and that bifurcation will still permit class certification to be determined "at an early practicable time" as required by the Federal Rules, given that Indra has proposed an "expeditious and streamlined five-month period to complete individual discovery and submit summary judgment briefs." *Id.* at 14. Finally, Indra submits that judicial economy is best served by bifurcation, as the parties will not be required to engage in class discovery unless Nock's individual claims survive dispositive motions, and that any prejudice resulting from the denial of bifurcation "will be substantially and exclusively experienced by Defendants, who have already gone to great lengths to attempt to satisfy Plaintiff's discovery demands." *Id.* Defendants additionally attach an order in a TCPA case brought by Nock and his counsel in the United States District Court

Case 1:26-cv-00659-KM    Document 33-1    Filed 07/15/26    Page 41 of 46

Nock v. PalmCo Administration, LLC, Not Reported in Fed. Supp. (2025)

for the Southern District of New York case (*Nock v. Spring Energy*, Case No. 1:23-cv-1042) where discovery was bifurcated. (ECF No. 68-1 at 2).

**\*3** Plaintiff counters that he has produced call recordings reflecting calls to Nock and others, and, as Defendants concede, one of these calls purportedly made to Nock mentions Indra. (ECF No. 70 at 6). Plaintiff additionally provides recordings of calls made to other consumers, ostensibly on behalf of Indra, and alleges these calls correspond to records of consumers enrolled with Indra. *Id.* Plaintiff further argues that bifurcation at this late stage in the litigation would compound prejudice to Nock from Indra's already-belated discovery responses and would thwart judicial economy. *Id.* at 14. Finally, Plaintiff asserts that it is impracticable to separate class and merits discovery in this matter because evidence of Indra's knowledge of the alleged scheme to disguise telemarketing as in-person solicitation is relevant to both Nock's individual claims and the claims of prospective class members. *Id.* at 14-15. Regarding the *Nock v. Spring Energy* order, Plaintiff responds that although the Southern District of New York initially bifurcated discovery, the parties jointly moved to terminate bifurcation two months later because "bifurcation [was] no longer tenable." *Id.* at 6; ECF No. 70-2 at 5.

Having considered the parties' arguments and the four factors identified in *Singh*, the Court concludes that bifurcation is not appropriate in this matter. Starting with the first factor, the undersigned agrees that evidence of notice to Indra of the alleged scheme to mask telemarketing enrollments as in-person solicitations could be relevant to Nock's individual claims and the claims of prospective class members.[3] Because individual and class discovery overlaps, the difficulty of drawing the line between the two is likely to cause further discovery disputes and place greater demands on the Court's time. This result also implicates the third factor, judicial economy, and weighs against bifurcation. *See Singh*, 2021 WL 1516032 at *3 ("The parties in this action have different ideas about what constitutes merits discovery and what constitutes class discovery. This confirms...that the line between the two is murky and that the court would be required to expend resources drawing those lines for the parties as disputes arise.").

With respect to the second factor, although Indra proposes a five-month schedule for individual discovery and dispositive motions briefing, this does not account for the time it takes the Court to decide those motions. Even if dispositive motions were decided within six months of this Order, well over one year would have passed from the date that this action was initiated in March 2024. (ECF No. 1). Permitting class and individual discovery to proceed simultaneously will best allow the Court to comply with ⚑Federal Rule of Civil Procedure 23's mandate that certification be decided at "an early practicable time" and is in the interests of judicial economy.

Turning to the final factor, prejudice, while the Court acknowledges that Indra may expend more resources in responding to discovery if bifurcation is denied, the undersigned is also concerned that Plaintiff's case will be prejudiced by further delay in this matter.[4] Further, as noted in Defendants' Memorandum of Law, Indra has already produced documents that it deems relevant primarily to class discovery, pursuant to Judge Bennett's July 26, 2024 Order. (ECF Nos. 36, 68 at 13). It seems the parties have engaged in concurrent individual and class discovery for close to eight months,[5] and it makes little sense to change course now. Accordingly, the Court will deny Defendants' Motion to Bifurcate Discovery.

### IV. CONCLUSION

**\*4** For the reasons stated, Defendants' Motion to Bifurcate Discovery (ECF No. 54) is DENIED. Accordingly, it is hereby ORDERED that:

1) Pursuant to the Court's November 27, 2024 Order, (ECF No. 60), Defendants shall produce all TPV.com data for all attempted and successful enrollments between April and July of 2021 within thirty (30) days of the entry of this Order; and

2) Pursuant to the Court's November 27, 2024 Order, (ECF No. 60), Defendants shall, within thirty (30) days of the entry of this Order, produce either (1) all recordings for quality assurance calls for door to door enrollment between April and

July of 2021 or (2) recordings for quality assurance calls for door to door enrollment where the consumer indicated that the sales agents telephoned them rather than visited them in person between April and July of 2021;[6] and

3) Pursuant to Rule 26(g) of the Federal Rules of Civil Procedure, at least one attorney of record shall sign the production to certify that the production is complete to the best of the attorney's knowledge, information and belief formed after a reasonable inquiry.

IT IS SO ORDERED.

**All Citations**

Not Reported in Fed. Supp., 2025 WL 100894

---

**Footnotes**

1    When the Court cites to a particular page number or range, the Court is referring to the page numbers located in the electronic filing stamps provided at the top of each electronically filed document.

2    ECF No. 54 is Defendants' position letter regarding the parties' discovery disputes, but is docketed as a Motion to Bifurcate Individual and Class Discovery, and does include an overview of Defendants' arguments for bifurcation. Defendants' arguments are fully briefed at ECF No. 68.

3    As before, the undersigned is guided by Judge Bennett's July 26, 2024 decision, in that Judge Bennett already found that "communications" between Defendants' sales agents and Defendants regarding Maryland consumers who were enrolled with Indra is within the scope of discovery. (ECF No. 36).

4    Defendants cite *Akselrod v. MarketPro Homebuyers LLC*, a TCPA case from this District in which Judge Blake bifurcated liability and class discovery and limited discovery to potentially dispositive issues. 2021 WL 100666 at *2. Judge Blake explained that bifurcation in *Akselrod* was appropriate because "[l]imited discovery ha[d] the potential to simplify the case and to save both parties the time and expense of class discovery, which can be particularly resource intensive." *Id.* However, the facts of *Akselrod* are distinguishable from the instant case, largely because of the different timelines between the two. The *Akselrod* defendant moved for bifurcation less than 20 days after filing its Answer, whereas Indra filed its Motion to Bifurcate Discovery four days before the discovery deadline. (ECF Nos. 36, 54). Additionally, Judge Blake noted that class certification could not be determined in *Axselrod* until a relevant Supreme Court case was decided. 2021 WL 100666 at *2.

5    Plaintiff states he served discovery requests on Indra in May 2024. (ECF No. 70 at 14).

6    As explained in the Court's November 27, 2024 Memorandum Opinion, it may be logistically easier for Defendants to produce all calls, rather than review them and identify which are responsive to Plaintiff's request. (ECF No. 60 at 4). Defendants may choose either option.

---

**End of Document**    © 2026 Thomson Reuters. No claim to original U.S. Government Works.

Case 1:26-cv-00659-KM    Document 33-1    Filed 07/15/26    Page 43 of 46

Wilson v. Quest Diagnostics, Incorporated, Not Reported in Fed. Supp. (2019)

⬛ KeyCite Yellow Flag

Distinguished by  Holton v. Finley,  M.D.Pa.,  April 14, 2022

2019 WL 7560932
Only the Westlaw citation is currently available.
United States District Court, D. New Jersey.

Judy WILSON, on behalf of herself and all others similarly situated, Plaintiff,

v.

QUEST DIAGNOSTICS, INCORPORATED, Defendant.

Civil Action No. 18-11960 (WJM)

|

Signed 08/22/2019

**Attorneys and Law Firms**

Andrew Joseph Obergfell, Bursor & Fisher PA, New York, NY, for Plaintiff.

Michael T. Hensley, Jorkeell Echeverria, Bressler Amery & Ross, PC, Florham Park, NJ, for Defendant.

## ORDER

MARK FALK, Chief U.S. Magistrate Judge

 **\*1**  **THIS MATTER** having come before the Court by way of Defendant's motion to stay the case, or in the alternative, bifurcate discovery [ECF No. 23]; and the Court having considered the papers in support of and in opposition to the motion; and for the reasons stated below, Defendant's motion is **DENIED**.

**IT APPEARING THAT:**

**1.** On July 23, 2018, Plaintiff, Judy Wilson, filed a putative class action complaint alleging violations of the Telephone Consumer Protection Act, ⬛47 U.S.C. § 227, *et seq.* ("TCPA"). Plaintiff claims that Defendant called on her cellular telephone, using an automatic telephone dialing system ("ATDS"), about a debt. However, Plaintiff alleges that she does not owe a debt to Defendant, is not a customer of Defendant, and has never provided Defendant with consent to call her. Plaintiff's Complaint seeks to certify a nationwide class, alleging that Defendant has a pattern and practice of autodialing consumers who have not provided consent.

**2.** On August 14, 2018, Defendant filed a pre-answer motion to dismiss, pursuant to Federal Rule of Civil Procedure 12(b)(6).

**3.** On August 31, 2018, Plaintiff filed an Amended Complaint. In response, Defendant filed a motion to dismiss the amended complaint on September 10, 2018. The crux of Defendant's motion was that Plaintiff's Amended Complaint failed to state a claim because Plaintiff had not sufficiently pleaded facts alleging that Quest called her cellphone using an ATDS.

**4.** On December 17, 2018, the Honorable William J. Martini, U.S.D.J., denied Defendant's motion to dismiss. Judge Martini expressly found that Plaintiff had sufficiently pleaded the use of an ATDS. (Opinion at 5; ECF No. 14.) Judge Martini also commented on the need for discovery to proceed in this case, noting that "[d]uring discovery, the parties can explore the actual configuration of the dialing equipment used to call Plaintiff," and that "[w]ith the benefit of discovery as to the type of equipment

Case 1:26-cv-00659-KM    Document 33-1    Filed 07/15/26    Page 44 of 46

Wilson v. Quest Diagnostics, Incorporated, Not Reported in Fed. Supp. (2019)

Quest used and the nature and extent of Quest's contacts with Plaintiff, the case will be well postured to assess Quest's conduct under the TCPA." Judge Martini concluded the Opinion stating "[t]he Court will thus unlock the doors of discovery." (*Id.*; quotations omitted).

**5.** On January 29, 2019, the Undersigned issued an Order scheduling an initial conference.

**6.** On February 8, 2019, Defendant filed a formal motion seeking to stay the case. As an alternative to a stay, Defendant seeks to bifurcate discovery and focus on the issue of Plaintiff's "consent." (ECF No. 23.) Defendant contends that the FCC is engaged in notice and comment rulemaking on the issue of whether certain equipment qualifies as an ATDS – equipment they claim is at issue in this case – and thus, could impact Plaintiff's ability to bring a claim. In the alternative, Defendant wants to bifurcate discovery to focus solely on the issue of Plaintiff's consent. Defendant contends that Plaintiff's husband provided the phone number that was called in this case, and that he is a "customary" user of the phone, which it claims equates to consent under the TCPA.

**\*2  7.** Plaintiff opposes the motion to stay and/or bifurcate. She contends that the FCC process is lengthy and could drag on for months or years without resolution. Moreover, Plaintiff contends that, since there has been no discovery on the subject of what dialing equipment Defendant used, the equipment might constitute an ATDS regardless of the FCC's interpretation. Finally, Plaintiff opposes bifurcation on the grounds that whether her husband used her cell phone or not, consent is not implied and she is the only person with the authority to consent, which she did not do. She also contends that bifurcation will delay the case, cause discovery inefficiency and disputes, and result in duplication, such as deposing Plaintiff twice.

**8.** On July 3, 2019, while the motion to stay and/or bifurcate was pending, Defendant filed a motion for reconsideration of Judge Martini's decision on the motion to dismiss. Plaintiff opposes reconsideration as both untimely and substantively deficient.

**9.** Defendant seeks a stay of the case pursuant to (1) the Court's inherent authority; and (2) the primary jurisdiction doctrine.

A stay pursuant to the Court's inherent authority is completely discretionary. *See, e.g.,* *Bechtel Corp. v. Local 215 Laborers' Int'l Union of N.A.*, 544 F. 2d 1207, 1215 (3d Cir. 1976). Deciding whether to stay a case requires "an exercise in judgment, which must weigh competing interests and maintain an even balance." *Landis v. North Am. Co.*, 299 U.S. 248, 255-56 (1936). Considerations generally include: the hardship to the moving party should the case proceed; the potential prejudice to the non-moving party; the length of the requested stay; the similarity of issues; and judicial economy. *See, e.g.,* *Ford Motor Credit v. Chiorazzo*, 529 F. Supp. 2d 535, 542 (D.N.J. 2008).

With respect to the primary jurisdiction doctrine, courts in the Third Circuit consider the following factors when determining whether the doctrine applies: (1) whether the question at issue is within the conventional experience of judges or whether it involves technical or policy considerations within the agency's particular field of expertise; (2) whether the question at issue is particularly within the agency's discretion; (3) whether there exists a substantial danger of inconsistent rulings; and (4) whether a prior application to the agency has been made. *See* *Baykeeper v. NL Indus., Inc.*, 660 F.3d 686, 691 (3d Cir. 2011).

**10.** Requests to bifurcate discovery are controlled by Rule 42(b). *See, e.g.,* *Cephalon, Inc. v. Sun Pharm., Indus., Ltd.*, 2013 WL 3417416, at \*2 (D.N.J. Aug. 31, 2016). "Bifurcation is the exception and the moving party bears the burden of demonstrating that bifurcation is needed." *Hanover 3201 Realty, LLC v. Vill. Supermarkets, Inc.*, 2016 WL 4541870, at \*2 (D.N.J. Aug. 31, 2016). "Whether the advantages of bifurcation outweigh the disadvantages is a factual inquiry assessed on a case by case basis." *Id*. As a practical matter, bifurcation of discovery in this District, which is in a serious judicial emergency, is extremely rare, since bifurcation often delays cases and leads to serial motion practice.

**11.** Defendant's motion to stay is **denied**. At the outset, the parties' briefs read like briefs on the merits of the case. However, Defendant already had an opportunity to make a pre-answer motion to dismiss and it did not prevail. Indeed, Judge Martini's

decision expressly states that the Court is "unlock[ing] the doors of discovery." We are now at the discovery stage; disagreement with a pre-answer decision is no basis to seek to stay the case and hope that intervening events from the FCC change its course. Putting that aside, consideration of the traditional factors do not support a stay in this case.

**\*3  12.** There is no basis for a stay under the primary jurisdiction doctrine.

First, determining what constitutes an ATDS is something that courts routinely consider and decide, and is well within the "conventional" role of judges. Case law supporting this view is expansive. *See, e.g., Baum v. ADT, LLC*, 2018 WL 5255219, at \*3 (W.D. Pa. Oct. 22, 2018); *Grogan v. Aaron's Inc.*, 2018 WL 6040195, at \*7 (N.D. Ga. Oct. 26, 2018); *Pieterson v. Wells Fargo Bank, N.A.*, 2018 WL 3241069, at \*3 (N.D. Cal. July 2, 2018); *Bieler v. GC Servs. L.P.*, 2014 WL 5531169, at \*3 (M.D.N.C. Nov. 3, 2014). Thus, the first primary jurisdiction factor does not support a stay.

Second, while the parties agree that what constitutes an ATDS is within the FCC's discretion, that does not mean that this case is a ripe for a stay. As cited with respect to factor one, judges are routinely called upon to, and do, decide what constitutes an ATDS. *See, e.g., Grogan*, 2018 WL 6040195, at \*7 ("While it is beyond cavil that the issues implicated in this case ... fall within the FCC's purview, that does not lead to the inexorable conclusion that they are beyond ... this Court to analyze and adjudicate, even in the absence of binding regulatory guidance from the FCC."). Nothing about this case suggests that is an exceptional case that warrants abstention on primary jurisdiction grounds.

Third, the risk of inconsistent rulings does not require a stay. The case is already more than a year old and no discovery has taken place. There is no certainty with respect to when the FCC will issue anything, and even if something was issued soon, it would still be subject to further appeals and proceedings. Thus, while some risk of inconsistent determinations is theoretically conceivable, it is not definite enough as to warrant halting TCPA litigation and waiting an undetermined period of time for the FCC to issue guidance and then for that guidance to be further challenged. *See, e.g., Grogan*, 2018 WL 6040195, at \*8 ("While the Court is mindful that a concrete pronouncement from the FCC would prove beneficial in navigating the turbulent waters that lie ahead, neither is the Court willing to stay this matter for what could end up being years."). Moreover, as Plaintiff notes, it's "wholly possible" that Defendant's system could constitute an ATDS regardless of any future FCC guidance.

Finally, Defendant has not itself made an application to the FCC, which the majority of Courts generally deem necessary for the final factor to weigh in favor of a stay. *See, e.g., Demmick v. Cellco Partnership*, 2011 WL 1253733, at \*6 (D.N.J. Mar. 29, 2011).

**13.** The Court also declines to stay this case pursuant to its inherent authority. First, Defendant has not established any prejudice that will result from proceeding with the case. Defendant had the benefit of a stay of discovery while its motion to dismiss was pending - and the case is now more than year old. Judge Martini denied the motion to dismiss and directed discovery to proceed. It is time to proceed with the case. To the extent Defendant claims that Plaintiff's discovery demands themselves are burdensome or disproportionate or expensive, that can be addressed pursuant to the discovery rules, *see* Fed. R. Civ. P. 26; it is not, however, a basis to avoid discovery altogether. Nor does engaging in balanced and appropriate discovery constitute any prejudice.

**\*4  **Second, there is likely prejudice to the non-moving party. The case has been pending for a fairly lengthy period of time with no discovery. The longer the case sits dormant, the longer the wait for the case to be decided on the merits.

Third and Fourth, the length of the stay and judicial economy are addressed together – and neither supports a stay. The period of stay sought here could be lengthy. No one knows when the FCC may act. It could be many months, and with no certainty whatsoever that what the FCC does will affect this case. It certainly may not be binding. At the same time, Plaintiff will be precluded from discovery, and the case will potentially be years away from trial.

**14.** Bifurcation would be inefficient and contrary to judicial economy. Bifurcation of discovery is a discretionary matter that is considered on a case-by-case basis. Here, no special basis for bifurcation has been shown. Defendant contends that the issue of

Case 1:26-cv-00659-KM    Document 33-1    Filed 07/15/26    Page 46 of 46

Wilson v. Quest Diagnostics, Incorporated, Not Reported in Fed. Supp. (2019)

consent could be dispositive of the case and thus should proceed first. However, that position is untenable and unfair. The Court should not allow one side to pick one defense of its choosing, limit discovery to that issue, and then presumably try a summary judgment motion. Both sides have a right to discovery. Further, if the ensuing summary judgment motion was denied, the case would just be starting and there would likely be subsequent rounds of dispositive motion practice – a completely impractical approach. Also, Defendant's argument that considering its chosen issue first would dispose of the case could be (and often is) made in every case. However, allowing that approach to case management would not only be unfair to plaintiff, it would wreak havoc on the docket, extending resolution of cases for years. For example, following a motion on the consent issue, one would assume Defendant (and perhaps Plaintiff) would seek to make additional, merits-based summary judgment motions after the close of fact discovery. Generally, one round of summary judgment motions following the close of discovery is the Court's practice. And nothing in this case suggests that it is unique or different such that it should be permitted two different dispositive motions before any discovery is taken. For that reason, bifurcation will only delay the disposition of the entire case, and therefore, is contrary to judicial economy.

**FOR THE REASONS STATED ABOVE**,

**IT IS on this 22** nd **day of August 2019,**

**ORDERED** that, Defendant's motion to stay, or in the alternative to bifurcate discovery [ECF No. 23] is **DENIED**. The parties are directed to confer and submit a joint discovery plan within 14 days.

**SO ORDERED**.

**All Citations**

Not Reported in Fed. Supp., 2019 WL 7560932

---

**End of Document**                                    © 2026 Thomson Reuters. No claim to original U.S. Government Works.